UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOE I, et al.,                          )
                                             )
                 Plaintiffs                  )
                                             )        Civil Action No. 01-1357 (LFO)
        v.                                   )
                                             )
EXXON MOBIL CORPORATION, et al.,             )
                                             )
                 Defendants                  )
_____          )

MEMORANDUM

Currently pending in the above-captioned case is Plaintiffs' Motion to Amend the

Complaint [dkt no. 123] and Defendants' Opposition to Plaintiffs' Motion to Amend the

Complaint [dkt no. 125].  For the following reasons, plaintiffs' Motion to Amend is granted.

Treating defendants' Opposition as a Motion to Dismiss, their Motion is granted in part with

respect to plaintiffs' negligent infliction of emotional distress claims, and otherwise denied

without prejudice.[1]

I.      **Subject Matter Jurisdiction**

Plaintiffs have amended their Complaint to plead diversity jurisdiction pursuant to 28

U.S.C. § 1332(a)(2).  Allegedly, plaintiffs are citizens of a foreign state (Indonesia), defendants

are citizens of the United States, and the amount in controversy exceeds $75,000.  See Am.

Comp. ¶ 4.  Defendants do not dispute these allegations.  See Defs' Mot. for Leave to File

Surreply in Opp. to Pltffs' Mot. to Amend Compl. (3/1/06), at 2.  Therefore, subject matter

---

[1]The factual allegations and procedural history of this case appear at Doe v. Exxon Mobil
Corp., 393 F. Supp. 2d 20 (D.D.C. 2005).

jurisdiction exists over plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(2) based on the

diversity of the parties' citizenship.

## II.        Choice of Law

The parties have fully briefly the issue of what law should apply to plaintiffs' remaining

state tort law claims.  As explained below, the law of the forum – the District of Columbia – will

apply to all tort law claims, except that Delaware law will apply to plaintiffs' wrongful death

claim.  It is assumed *arguendo* that Indonesian law differs from U.S. state tort law.

"To determine the applicable law in a diversity case, a federal court must follow the

choice of law rules of the forum state."  Klaxon Co. v. Stentor Elec. Mgf. Co., 313 U.S. 487, 496

(1941).  The District of Columbia uses a "governmental interests" analysis.

> Under this analysis, when the policy of one state would be advanced by
> application of its law, and that of another state would not be advanced by
> application of its law, a false conflict appears and the law of the interested state
> prevails.  A true conflict arises when both states have an interest in applying their
> own laws to the facts of the case, in which case the law of the forum will be
> applied unless the foreign state has a greater interest in the controversy.  In order
> to facilitate the governmental interests analysis, we consider four factors: a) the
> place where the injury occurred; b) the place where the conduct causing the injury
> occurred; c) the domicile, residence, nationality, place of incorporation and place
> of business of the parties; and d) the place where the relationship is centered.

Herbert v. D.C., 808 A.2d 776, 779 (D.C. 2002) (citations and internal quotation marks omitted).

This test equally applies in balancing the interests of the United States in the matter as against

that of another nation.  See Tramontana v. Varig Airlines, 350 F.2d 468, 471 (D.C. Cir. 1965).

The first question is whether Indonesian or U.S. state law governs.

Applying the Herbert analysis, the injury occurred in Indonesia.  Some (perhaps most) of

the conduct occurred in Indonesia, although plaintiffs argue that ExxonMobil knew about and

participated in, indeed directed, from the United States the allegedly culpable conduct to the

detriment of plaintiffs.  The place of incorporation and place of business of all the defendants are

in the United States, except that Indonesia is the principal place of business of Exxon Mobil Oil

Indonesia, albeit a United States (Delaware) corporation.  The relationship between it and

plaintiffs is likely centered in Indonesia.

Although these factors tilt in favor of Indonesia, the United States has an overriding

interest in applying its own laws to defendants, all of whom are U.S. companies.  Indeed, this

Court's October 14, 2005 opinion explained that the proper focus of this litigation is whether

U.S. companies violated U.S. law by its conduct in protecting their pipeline in Indonesia.  See

Doe, 393 F. Supp. 2d at 29-30.  Moreover, U.S. law provides for punitive damages, which are

particularly appropriate to apply if the question is whether to sanction U.S. companies.

Indonesian law does not authorize punitive damages.  See Winarta Decl. ¶ 4 (12/9/05); Hornick

Decl. ¶ 18 (2/3/06).  Ultimately, the United States, the leader of the free world, has an

overarching, vital interest in the safety, prosperity, and consequences of the behavior of its

citizens, particularly its super-corporations conducting business in one or more foreign countries.

In sum, Indonesia's interest in applying its own law here is not as strong as the interest of

the United States.  See De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. 1995) (Texas had greater

interest in applying its own law when Mexican plaintiffs sued Texas companies for Mexicana

airliner crash in Mexico); Friends for All Children, Inc. v. Lockheed Aircraft Corp., 587 F. Supp.

180, 191 (D.C. law applied when Vietnamese orphans injured in plane crash in Vietnam sued

U.S. corporations; "[f]oreign jurisdictions have no interest in applying their law to damages

issues if it would result in less protection to their nationals in a suit against a United States

corporation.") (citations omitted).  U.S. law would also be easier for this court to apply.  Cf. In re

Korean Air Lines Disaster of Sept. 1, 1983, 935 F. Supp. 10, 14 (D.D.C. 1996).  Because the

United States has a stronger interest (see Herbert, 808 A.2d at 779), U.S. law is the proper one to

apply.

The next question is what U.S. state tort law to apply.

Based on the parties' submissions, the only conflict between D.C. law and the law of

other states is regarding the wrongful death claim.  At this point it appears that the actions of

Exxon Mobil Oil Indonesia, a Delaware corporation, are the most relevant to this question.  As a

result, the law of Delaware will apply to the wrongful death claim.  D.C. law, as the law of the

forum, will otherwise apply.

**III.    Defendants' Motion to Dismiss**

Defendants filed an Opposition to Plaintiffs' Motion to Amend the Complaint.  Their sole

objection is that amendment would be futile because plaintiffs have failed to state a claim.

Accordingly, defendants' Motion will be treated as one to dismiss the complaint for failure to

state a claim.  Defendants' arguments are addressed below.

A.      The Foreign Affairs Doctrine

Defendants move to dismiss the Complaint based on the foreign affairs doctrine.  Under

this doctrine, state laws are preempted when there is a conflict between the state law and the

"exercise of the federal executive authority."  Am. Ins. Ass'n v. Garamendi, 539 U.S. 396, 421

(2003).  In Garamendi, California's Holocaust Victim Insurance Relief Act of 1999 mandated

disclosure by insurance companies of any policies issued in Europe between 1920 and 1945.  The

statute was designed to facilitate relief for families of Holocaust victims who were not

compensated under their insurance policies.  The federal government, meanwhile, was reaching a

comprehensive agreement with Germany on how to settle Nazi-era insurance claims.  The Court

held that the California statute conflicted with the federal government's powers to regulate and

manage foreign affairs.  Id. at 420.

As plaintiffs note and Garamendi holds, this doctrine relates to the federal government's

preemption over state governments when a case concerns areas of foreign affairs.  The doctrine is

compelled by respect for the constitutional grant of power to the executive branch – and not state

governments – to control the United States' foreign relations with other countries.  Here, in

contrast, no state government has passed any statute in conflict with U.S. foreign policy.  The

Garamendi analysis is simply not applicable here, because there is no encroachments by any state

on to the federal field of foreign affairs.[2]  Accordingly, defendants' argument in this regard must

be rejected.

B.      Failure to Allege Causation

Defendants maintain that plaintiffs fail to allege that defendants controlled the actions of

the Indonesian military; the Indonesian soldiers were not employees of defendants, and

defendants are not liable for their conduct.  Plaintiffs counter that D.C. law does not require a

showing of control to establish liability under its theory of the case.

Plaintiffs are largely correct.  Plaintiffs have alleged that defendants knew that the

_____

[2]Defendants rely on Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1164 (C.D.
Cal. 2005) and In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig., 340 F. Supp. 2d 494
(S.D.N.Y. 2004) to press the point that the doctrine precludes state tort law claims as well.  For
the foregoing reasons, Mujica misconstrues and misapplies the foreign affairs doctrine.  To the
extent defendants are arguing that finding Exxon liable would interfere with U.S. foreign policy
in general (as in Assicurazioni), this issue of course has already been decided, and is now the law
of the case.  See Doe, 393 F. Supp. 2d at 28-29.

Indonesian soldiers had been committing human rights abuses, but nevertheless hired them to

provide security for the pipeline.  These allegations, if true, in general are sufficient to establish

liability based on the allegations that the soldiers acted as defendants' independent contractors

and engaged in inherently dangerous activity.  See Restatement (Second) of Torts § 411 (1965)

ill. 1.

The general rule is that employers are not liable for the actions of their independent

contractors.  But several exceptions apply.  See Wilson v. Good Humor Corp., 757 F.2d 1293

(D.C. Cir. 1985).  In Wilson, the D.C. Circuit (applying D.C. local law) held that the employer

was liable because of the "inherently dangerous" exception to the no-liability rule.  In that case,

Good Humor before 1980 directly hired individuals to work as vendors, selling ice cream

products from Good Humor trucks.  During this time it undertook extensive safety training

measures, recognizing that selling ice cream in an urban high-traffic environment could be

potentially dangerous to its young customers.  However, in 1980 it adopted a new employment

model and sought to establish its vendors as independent contractors.  Under this arrangement,

"vendors 'purchased' their trucks from Good Humor, with the aid of Good Humor financing, and

entered into a 'vendor's agreement' authorizing them to sell Good Humor products which they

bought wholesale from Good Humor.  The vendors could then sell ice cream at any price and at

any location, they were not on the company payroll, and Good Humor did not supervise their

day-to-day activities."  Id. at 1296.  Pursuant to its independent contractor plan, after 1980 Good

Humor dropped its safety program, and otherwise did nothing to train its independent contractors

on the safety risks involved.

On June 24, 1981, a girl was struck by a car as she was crossing the street and attempting

to reach a Good Humor ice cream truck.  The girl died, and her family brought suit against, inter

alia, Good Humor.  The district court entered a directed verdict in favor of Good Humor, on the

theory that the evidence presented by the plaintiff did not establish the vicarious or direct liability

of Good Humor for the actions of its vendors.

The court of appeals reversed.  It recognized that as a general rule employers are not

liable for the actions of its contractors, although there is an exception if independent contractors

perform "inherently dangerous" work.  Id. at 1303 (citations omitted).  Work is inherently

dangerous either if (1) it is "generically" hazardous, in that it is dangerous regardless of the skill

level with which it is performed; or (2) it is dangerous in the particular circumstances in which it

is to be performed.  Id.  "The applicability of the 'inherent danger' exception, then, depends not

only on the generic nature of an independent contractor's work but also on the fact-specific,

particular circumstances under which any task is to be performed."  Id. at 1304.  In sum,

> one who employs an independent contractor to do work involving a special danger
> to others which the employer knows or has reason to know to be inherent in or
> normal to the work, *or which he contemplates or has reason to contemplate when
> making the contract*, is subject to liability for physical harm caused to such others
> by the contractor's failure to take reasonable precautions against such danger.

Id. (quoting Restatement (Second) of Torts § 427 (1965)) (emphasis added by court).  The

appellate court concluded that Good Humor could be liable under this doctrine because it knew

of the dangers to its customers of a curbside ice cream vendor service, but did nothing to

alleviate or address this risk.

Defendants only cite this case in passing, and do not discuss its substantive holding.  Nor

do they rebut the idea that providing security in a country afflicted by civil war may be inherently

dangerous.

Plaintiffs have adequately alleged that defendants knew or had to reason to know that

paying the Indonesian military personnel to provide security for defendants' pipeline posed a

danger to others as evidenced by the alleged history of human rights abuses by Indonesian

soldiers.  For that reason, except as stated below, defendants' motion to dismiss is denied.[3]

     C.     Negligent Infliction of Emotional Distress

Defendants contend that plaintiffs' claim of negligent infliction of emotional distress

based on an underlying intentional tort cannot proceed.  The case of Brown v. Argenbright Sec.,

Inc., 782 A.2d 752 (D.C. 2001) controls this issue.  In that case, a twelve-year-old girl, who was

accused of shoplifting, alleged that she was sexually touched by a security guard at Safeway as he

frisked her.  The girl's mother filed suit on her behalf against Safeway and Argenbright, the

security guard's employer; she did not sue the security guard.  She brought claims for negligence,

intentional infliction of emotional distress, and negligent infliction of emotional distress.  The

trial court dismissed the complaint, ruling that Safeway and Argenbright are not liable as a matter

of law for the actions of the security guard.  The court of appeals reversed as to Argenbirght only,

holding that it was vicariously liable.  However, it affirmed the trial court's dismissal of the

negligent infliction of emotional distress claim based on the security guard's alleged sexual

misconduct.  It held that

> damages for negligent infliction of emotional distress are recoverable only 'if the
> plaintiff was in the zone of physical danger and was caused by [the] defendant's
> negligence to fear for his or her own safety' . . . . [S]ince the conduct alleged, even
> when viewed in the light most favorable to appellant, is not negligence but an
> intentional tort, appellant cannot recover damages for negligent infliction of

---

[3]At the motion to dismiss stage, it is sufficient that there is one legal theory to support
liability.  This ruling is without prejudice to parties' right to plead at the summary judgment level
that defendants are or are not liable under the inherent danger exception or other theories.

emotional distress based on that conduct.

Id. at 759 n.9 (citations omitted).  In other words, the security guard's intentional act of sexually touching the girl cannot support a claim of negligent infliction of emotional distress.

Similarly, here plaintiffs claim negligent infliction of emotional distress against the employer-defendants, but the cause of the distress for these purposes was the intentional act of Indonesian soldiers.  Defendants did not create the zone of danger or commit the act that directly caused plaintiffs emotional distress.  Consistent with Brown, this claim must be dismissed.[4]

D.     Conversion

Defendants also seek to dismiss the conversion claims raised by John Does II and V based on their homes being burned down on the theory that conversion under D.C. law concerns only the wrongful taking of personal – not real – property.  See, e.g., Duggan v. Keto, 554 A.2d 1126, 1137 (1989) (citation and internal quotation marks omitted).  Real property is "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land."  Black's Law Dictionary 1254 (8th ed. 2004).

Plaintiffs respond that, even under defendants' theory, conversion includes the personal property inside their homes.  Moreover, plaintiffs argue that some other tort, like trespass, would cover destruction of plaintiffs' homes.  Plaintiffs did not plead trespass, however.  Nevertheless, defendants' motion to dismiss the conversion claims will be denied, because this claim arguably covers the property inside the plaintiffs' homes, which was allegedly destroyed or taken by the Indonesian soldiers.  See Amen. Compl. ¶¶ 68; 71; 141-43.

---

[4]To the extent that Parker v. Grand Hyatt Hotel, 124 F. Supp. 2d 79, 96-97 (D.D.C. 2000) is to the contrary, the D.C. Court of Appeals' holding in Brown is binding on this Court.

E.      John Doe V

Defendants argue that John Doe V did not sufficiently state a claim for battery, assault, or false arrest.  Plaintiffs concede this point, noting that listing John Doe V as a victim of these torts was a typographical error.  Accordingly, plaintiffs have filed a corrected version of the amended Complaint.  John Doe V's only claims are for conversion and intentional infliction of emotional distress.

## IV.     Conclusion

In an Order accompanying this memorandum, Plaintiffs' Motion to Amend the Complaint is granted.  Defendants' Opposition to Plaintiffs' Motion to Amend the Complaint, to the extent it seeks dismissal of plaintiffs' Complaint, is denied, except that plaintiffs' claims for negligence infliction of emotional distress are dismissed.

/s/

Louis F. Oberdorfer
UNITED STATES DISTRICT JUDGE

Dated: March 2, 2006