## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE I, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      Civ. No. 01-1357 (LFO) |
| | ) |
| EXXON MOBIL CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANT EXXONMOBIL OIL INDONESIA, INC.'S
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### REDACTED PUBLIC VERSION

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................ 1

Statement of Facts...................................................................................... 1

I.   EMOI Transacted Business in the District of Columbia ...................... 2

II.  The Parent Companies Dominated EMOI ............................................ 4

III. All Disputed Facts Must Be Resolved in Plaintiffs' Favor ................ 7

IV.  The Court Has Jurisdiction Under D.C. Code § 13-423 ...................... 7

    A.   EMOI Transacted Business in the District of Columbia Directly and Through Its Agent ........................................................................ 9

        1.   EMOI Directly Transacted Business in the District ................ 10

        2.   EMOI Transacted Business in the District Through its Agent ............... 12

        3.   The Government Contacts Exception Does Not Apply to EMOI's Contacts with the District........................................................ 18

    B.   Plaintiffs' Claims Relate to EMOI's Contacts with the District of Columbia........................................................................................ 21

V.   The Jurisdictional Contacts of the Parent Companies Should Be Attributed to EMOI Under an "Alter Ego" or "Integrated Enterprise" Analysis................................. 26

    A.   EMOI Is the Alter Ego of the Parent Companies ............................. 27

        1.   A Unity of Interests Exists Between EMOI and EMC, MC, and MOC ............... 28

        2.   Inequitable Results Would Follow a Failure to Find EMOI the Alter Ego of the Parent Companies ....................................... 41

    B.   EMOI and the Parent Companies Constituted an Integrated Enterprise.............. 44

Redacted Public Version

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*C & E Services, Inc. v. Ashland, Inc.*,
498 F. Supp. 2d 242 (D.D.C. 2007) ................................................................13

*Abramson v. Wallace*,
706 F. Supp. 1 (D.D.C. 1989) ........................................................................7

*In re Acushnet River & New Bedford Harbor Proceedings*,
675 F. Supp. 22 (D. Mass. 1987) ..................................................................36

*AGS Int'l Services v. Newmont USA Ltd.*,
346 F. Supp.2d 64 (D.D.C. 2004) ................................................................21

*In re American Honda Motors Co., Inc. Dealerships Relationship Litig.*,
941 F. Supp. 528 (D. Md. 1996) ..................................................................34

*Anderson v. Abbott*,
321 U.S. 349 (1944) ....................................................................................33

*Arista Records, Inc. v. Sakfield Holding Co.*,
314 F. Supp. 2d 27 (D.D.C. 2004) ..............................................................7

*Bechtel & Cole v. Graceland Broadcasting, Inc.*,
18 F.3d 953 (D.C. Cir. 1994) ......................................................................14

*Bingham v. Goldberg, Marchesano, Kohlman, Inc.*,
637 A.2d 81 (D.C. 1994) ..............................................................................33

*Biton v. Palestinian Interim Self-Government Authority*,
310 F. Supp.2d 172 (D.D.C. 2004) ..............................................................13

*BMC Software Belgium, N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002) ..........................................................................30

*Brunson v. Kalil & Co., Inc.*,
404 F. Supp.2d 221 (D.D.C. 2005) ..............................................................18

*Burnett v. Al Baraka Inv. & Devel. Corp.*,
274 F. Supp.2d 86 (D.D.C. 2003) ................................................................2

*C.I.R. v. Banks*,
543 U.S. 426 (2005) ....................................................................................14

*Cases on which Plaintiffs principally rely.

Redacted Public Version

*Chalfant v. Tubb*,
    453 F. Supp.2d 1308 (N.D. Okla. 2006) ..................................................................10

*Chase v. Pan-Pacific Broadcasting, Inc.*,
    617 F. Supp. 1414 (D.D.C. 1985) ..........................................................................12

*Chrysler Corp. v. Gen. Motors, Corp.*,
    589 F. Supp. 1182 (D.D.C. 1984) ............................................................................9

*City of Moundridg v. Exxon Mobil Corp.*,
    244 F.R.D. 10 (D.D.C. 2007) ................................................................................36

*\*Cohane v. Arpeia-Cal., Inc.*,
    385 A.2d 153 (D.C. 1978) ....................................................................................18

*Color Sys., Inc. v. Meteor Photo Reproduction Sys.*,
    No. 86-2516, 1988 WL 13187 (D.D.C. Feb. 11, 1998) ............................................27

*Commodities Specialists Co. v. Brummet*,
    No. Civ. 02-1459, 2002 WL 31898166 (D. Minn. Dec. 27, 2002) ..............................12

*Cook v. Arrowsmith Shelburne, Inc.*,
    69 F.3d 1235 (2nd Cir. 1995) ................................................................................46

*Crane v. Carr*,
    814 F.2d 758 (D.C. Cir. 1987) ................................................................................8

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
    290 F.3d 42 (1st Cir. 2002) ..................................................................................13

*Dooley v. United Tech. Corp.*,
    786 F. Supp. 65 (D.D.C. 1992) ................................................................................7

*Dudley v. Dittmer*,
    795 F.2d 669 (8th Cir. 1986) ................................................................................10

*Dunn v. A/S Em. Z. Svitzer*,
    885 F. Supp. 980 (S.D. Tex. 1995) ........................................................................36

*Empson & Co., S.R.L. v. Mar-Salle Imports, Ltd.*,
    No. 86-1944, 1987 WL 12793 (D.D.C. June 12, 1987) ............................................42

*Fasolyak v. The Cradle Soc'y., Inc.*,
    Civ. A. No. 06-01126, 2007 WL 2071644 (D.D.C. July 19, 2007) ............................20

*First American Corp. v. Al-Nahyan*,
    948 F. Supp. 1107 (D.D.C. 1996) ............................................................................9

*Flynn v. Ohio Building Restoration, Inc.,*
  317 F. Supp.2d 22 (D.D.C. 2004) ................................................................................28

*Ford v. RDI/Caesars Riverboat Casino, LLC,*
  503 F. Supp.2d 839 (W.D. Ky. 2007 ...........................................................................12

*\*Frummer v. Hilton Hotels International, Inc.,*
  19 N.Y.2d 533 (1967) ...................................................................................................16

*Genesis Ins. Co. v. Alfi,*
  425 F. Supp.2d 876 (S.D. Ohio 2006) .........................................................................14

*Gibbons & Co. v. Roskamp Inst.,*
  No. 06-720, 2006 WL 2506646 (D.D.C. Aug. 28, 2006) .............................................20

*Hart v. Dep't of Agric.,*
  112 F.3d 1228 (D.C. Cir. 1997) ...................................................................................28

*Hukill v. Auto Care, Inc.,*
  192 F.3d 437 (4th Cir. 1999) .......................................................................................46

*\*Hummel v. Koehler,*
  458 A.2d 1187 (D.C.1983) ...........................................................................................10

*Hunting v. Elders,*
  359 S.C. 217 (S.C. App. 2004) ....................................................................................33

*Int'l. Shoe Co. v. Washington,*
  326 U.S. 310 (1945)........................................................................................................8

*Jacobsen v. Oliver,*
  201 F. Supp.2d 93 (D.D.C. 2002) ..................................................................................7

*Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.,*
  456 F. Supp. 831 (D. Del. 1978)...................................................................................31

*Johns v. Rozet,*
  770 F. Supp. 11 (D.D.C. 1991) .....................................................................................18

*Johnson v. Bechtel Assoc. Prof'l. Corp.,*
  717 F.2d 574 (D.C. Cir. 1983), *rev'd on other grounds sub nom, Washington Metro.*
  *Area Transit Auth. v. Johnson,* 467 U.S. 925 (1984)................................................13

*Johnson-Tanner v. First Cash Fin. Servs., Inc.,*
  239 F. Supp.2d 34 (D.D.C. 2003) ..................................................................................7

*Jung v. Ass'n of Am. Med. Colls.,*
  300 F. Supp.2d 119 (D.D.C. 2004) ................................................................................7

*Keeton v. Hustler Magazine, Inc.,*
   465 U.S. 770 (1984) .................................................................................................17

*Kroger v. Legalbill.com, LLC,*
   Civ. A. No. 04-2189, 2005 WL 4908968 (D.D.C. Apr. 7, 2005) ..............................25

*Labadie Coal Co. v. Black,*
   672 F.2d 92 (D.C. Cir. 1982) ...................................................................................27

*\*Langarten v. York Research Corp.,*
   1988 WL 7392 (Del. Ch. Feb. 3, 1988) ...................................................................35

*\*Lawlor v. District of Columbia,*
   758 A.2d 964 (D.C. 2000) ........................................................................................42

*\*Lex Tex Ltd., Inc. v. Skillman,*
   579 A.2d 244 (D.C. 1990) ........................................................................................21

*Lucas v. Texas Industries, Inc.,*
   696 S.W.2d 372 (Tex. 1984) ....................................................................................41

*Lusk v. Foxmeyer Health Corp.,*
   129 F.3d 773 (5th Cir. 1997) ...................................................................................44

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,*
   62 F. Supp. 2d 13 (D.D.C. 1999) .............................................................................27

*MCI Commc'ns Corp. v. AT&T,*
   No. 79-1182, 1983 WL 1881 (D.D.C. Oct. 4, 1983) ...............................................28

*Mobil Oil Corp. v. Linear Films, Inc.,*
   718 F. Supp. 260 (D. Del. 1989) ..............................................................................41

*Mutual Int'l Export Co. v. Napco Indus., Inc.,*
   316 F.2d 393 (D.C. Cir. 1963) .................................................................................20

*Naartex Consulting Corp v. Watt,*
   722 F. 2d 779 (D.C. Cir. 1983) ................................................................................19

*Nat'l Paintball Supply, Inc. v. Cossio,*
   996 F. Supp. 459 (E.D. Pa. 1998) ............................................................................12

*Newman v. Motorola,*
   125 F. Supp.2d 717 (D. Md. 2000) ..........................................................................34

*Patent Incentives, Inc. v. Seiko Epson Corp.,*
   No. 88-1407, 1988 WL 92460 (D.N.J. Sept. 6, 1988) .............................................35

*PHC-Minden LP v. Kimberly Clark Corp.*,
   235 S.W.3d 163 (Tex. 2007)....................................................................................39

*Reiman v. First Union Real Estate Equity & Mortgage Invs.*,
   614 F. Supp. 255 (D.D.C. 1985) ...............................................................................9

*Richard v. Bell Atlantic Corp.*,
   946 F. Supp. 54 (D.D.C. 1996) ...............................................................................44

*\*Rose v. Silver*,
   394 A.2d 1368 (D.C. 1978) ....................................................................................12

*\*Safeway Stores, Inc. v. Kelly*,
   448 A.2d 856 (D.C. 1982) ......................................................................................13

*Schwartz v. CDI Japan, Ltd.*,
   938 F. Supp. 1 (D.D.C. 1996)...................................................................................7

*Shapiro, Lifschitz & Schram, P.C. v. Hazard*,
   90 F. Supp.2d 15 (D.D.C. 2000) ...............................................................................8

*\*Shoppers Food Warehouse v. Moreno*,
   746 A.2d 320 (D.C. 2000) ........................................................................................8

*In re Ski Train Fire in Kaprun, Austria*,
   342 F. Supp.2d 207 (S.D.N.Y. 2004).......................................................................34

*SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*,
   No. Civ. 03-3302, 2004 WL 415257 (D. Minn. March 2, 2004).............................10

*\*Smith v. Jenkins*,
   452 A.2d 333 (D.C. 1982) ......................................................................................13

*Snyder v. Hampton Indus., Inc.*,
   521 F. Supp. 130 (D. Md. 1981) .............................................................................13

*\*State Dep't of Env't Prot. v. Ventron Corp.*,
   468 A.2d 150 (N.J. 1983)........................................................................................30

*Steinberg v. Int'l Criminal Police Org.*,
   672 F.2d 927 (D.C. Cir. 1981) (Skelly Wright, J., concurring).................................9

*Transamerica Leasing, Inc. v. La Republica de Venezuela*,
   200 F.3d 843 (D.C. Cir. 2000) ................................................................................14

*Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*,
   332 F.3d 188 (3d Cir. 2003)....................................................................................32

*U.S. v. BCCI Holdings (Luxembourg), S.A.*,
  795 F. Supp. 477 (D.D.C. 1992) ............................................................................32

*Ulico Cas. Co. v. Fleet Nat. Bank*,
  257 F. Supp.2d 142 (D.D.C. 2003) .........................................................................18

*Unidex Sys. Corp. v. Butz Eng'g Corp.*,
  406 F. Supp. 899 (D.D.C. 1976) .............................................................................16

*United Elec. Radio and Mach. Workers of America v. 163 Pleasant St. Corp.*,
  987 F.2d 39 (1st Cir. 1993) ....................................................................................17

*Verni v. Harry M. Stevens, Inc.*,
  903 A.2d 475 (N.J. Super. 2006) ............................................................................35

*Vuitch v. Furr*,
  482 A.2d 811 (D.C. 1984) ......................................................................................35

*Wiwa v. Royal Dutch Petroleum*,
  226 F.3d 88 (2d Cir. 2000) .....................................................................................14

*World Wide Minerals Ltd. v. Republic of Kazakhstahn*,
  116 F. Supp.2d 98 (D.D.C. 2000) ..........................................................................20


**STATUTES**

D.C. Code § 13-334 ........................................................................................................20

D.C. Code § 13-423 ..............................................................................................1, 10, 13


**OTHER AUTHORITIES**

Restatement (Second) of Agency § 1 (1958) .................................................................14

Fed. R. Civ. P. 30(b)(6) .................................................................................................33

Stephen B. Presser, PIERCING THE CORPORATE VEIL §2:9 (2007) ................................27

U.S. Const. amend. I ......................................................................................................18

U.S. Const. amend. XIV ..................................................................................................8

## INTRODUCTION

This Court has personal jurisdiction over Defendant ExxonMobil Oil Indonesia, Inc.

("EMOI") for two independent reasons. First, the Court has jurisdiction under D.C. Code

§ 13-423, because EMOI transacted business in the District of Columbia directly and through its

agent             and because Plaintiffs' claims relate to those jurisdictional contacts.

Second, and separately, the Court has jurisdiction because the jurisdictional contacts of

Defendants ExxonMobil Corporation ("EMC"), Mobil Corporation ("MC"), and Mobil Oil

Corporation ("MOC") (collectively the "Parent Companies"), over which the Court concededly

has jurisdiction, should be attributed to EMOI under an "alter ego" or "integrated enterprise"

analysis. Either of these grounds is sufficient for the Court to deny EMOI's motion to dismiss.

Here, the limited discovery allowed by this Court pursuant to its Orders of March 2, 2006 and

May 3, 2006 (Docket Nos. 138, 158) makes clear that both jurisdictional tests are met.

Resolving any issues of fact in Plaintiffs' favor, as it must, the Court should therefore deny

EMOI's motion.[1]

## STATEMENT OF FACTS

Plaintiffs filed suit in the United States District Court for the District of Columbia on

June 19, 2001. Defendants EMC, MC, and MOC did not contest this Court's jurisdiction.

Defendant EMOI, then a Delaware corporation, moved to dismiss for lack of personal

jurisdiction. Dkt. 13, Oct. 1, 2001. The Court denied EMOI's motion, without prejudice, and

authorized Plaintiffs to conduct limited jurisdictional discovery outside of Indonesia.[2] Dkt. 103,

---

[1]     Even were the Court to decide that it does not have jurisdiction over EMOI, the case against the other
defendants should continue because Plaintiffs' allegations sufficiently reach the Parent Companies. See Plaintiffs'
Memorandum in Response to Defendants' Summary Judgment Motion.

[2]     The limited discovery allowed by this Court pursuant to its Orders of March 2, 2006 and May 3, 2006
(Docket Nos. 138, 158) did not permit discovery from EMOI's headquarters in Indonesia. This limitation curtailed

Mem. and Opinion, Oct. 14, 2005.  Contrary to the self-serving factual recitation in EMOI's motion, the evidence in this case establishes that EMOI transacted business in the District of Columbia directly and through its agent,                    ;, and the Parent Companies so dominated EMOI that it had no separate corporate personality.

## I.   EMOI TRANSACTED BUSINESS IN THE DISTRICT OF COLUMBIA

EMOI transacted business in the District of Columbia directly and through its agent,

**REDACTED**

---

Plaintiffs' access to evidence establishing EMOI's jurisdictional contacts with the District of Columbia, as well as EMOI's alter ego or integrated enterprise relationship to the Parent Companies.  Although even this limited discovery clearly establishes jurisdiction over EMOI, if the Court nevertheless finds the current Record insufficient to establish personal jurisdiction over EMOI, it should order further discovery of EMOI on these issues. *See Burnett v. Al Baraka Inv. & Devel. Corp.*, 274 F. Supp. 2d 86, 97 (D.D.C. 2003) (permitting personal jurisdiction discovery over Saudi Arabia bank); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 51 (D.D.C. 2000) ("[T]he Court does not believe that the sovereign interests of these foreign signatory nations would be any more offended by this narrowed jurisdictional discovery than they would be by the broader, merits-related discovery allowed by [*Societe Nationale Industrielle Aerospatiale*, 482 U.S. 522 (1987)].").

**Redacted Public Version**

**REDACTED**

Redacted Public Version

**REDACTED**

## II.   THE PARENT COMPANIES DOMINATED EMOI

The Parent Companies so dominated EMOI that it had no separate corporate personality. As such, EMOI was merely the alter ego of the Parent Companies and part of a single, integrated enterprise.  SMF ¶¶ 7–31; Devor Decl. ¶¶ 8–65.  Although the facts are discussed in detail below, a few key examples serve to illustrate how EMOI lacked its own separate corporate personality.

**REDACTED**

**Redacted Public Version**

**REDACTED**

Redacted Public Version

**REDACTED**

## ARGUMENT

### III.   ALL DISPUTED FACTS MUST BE RESOLVED IN PLAINTIFFS' FAVOR

While Plaintiffs have the burden to prove personal jurisdiction by a preponderance of the

evidence, this burden is "only a minimal [one,]" *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 104

(D.D.C. 2002); *see also Abramson v. Wallace*, 706 F. Supp. 1, 2 (D.D.C. 1989), and all factual

discrepancies must be resolved in Plaintiffs' favor, even after jurisdictional discovery has

occurred.  *See Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 128 (D.D.C. 2004);

*Arista Records, Inc. v. Sakfield Holding Co.*, 314 F. Supp. 2d 27, 30 (D.D.C. 2004) (citing *Crane*

*v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)); *see also Johnson-Tanner v.*

*First Cash Fin. Servs., Inc.*, 239 F. Supp. 2d 34, 37 (D.D.C. 2003).  This rule is necessary

because disputed facts "are for the trier of fact at trial, not a court determining the sufficiency of

a motion to dismiss for want of jurisdiction." *Dooley v. United Tech. Corp.*, 786 F. Supp. 65, 73

(D.D.C. 1992); *cf. Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 7 (D.D.C. 1996) (whether

agency relationship existed, subjecting defendant to personal jurisdiction under the District's

long-arm statute, was question of fact precluding finding of no jurisdiction).

## IV.    THE COURT HAS JURISDICTION UNDER D.C. CODE § 13-423

The Court has jurisdiction under D.C. Code § 13-423 because EMOI transacted business

in the District of Columbia directly and through its agent,                    nd because Plaintiffs'

claims relate to these transactions.[4]  Under § 13-423,

> (a) A District of Columbia court may exercise personal jurisdiction over a person,
> who acts directly or by an agent, as to a claim for relief arising from the person's
> (1) transacting any business in the District of Columbia . . . . (b) When jurisdiction
> over a person is based solely upon this section, only a claim for relief arising from
> acts enumerated in this section may be asserted against him.

D.C. Code § 13-423.

The first prong of this standard, § 13-423(a)(1), "allows for jurisdiction to the fullest

extent possible under the due process clause of the United States constitution, and 'its

construction is subsumed by a due process analysis.'" *Shapiro, Lifschitz & Schram, P.C. v.*

*Hazard*, 90 F. Supp. 2d 15, 19 (quoting *Fisher v. Bander*, 519 A.2d 162, 163 (D.C. 1986)); *see*

---

[4]       A federal district court is authorized to assert personal jurisdiction over a nonresident to the extent
permissible under the law of the state where the district is located.  *See Tavoulareas v. Comnas*, 720 F.2d 192, 193
(D.C. Cir. 1983).

Redacted Public Version

*also Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) ("§ 13-423(a)(1) is coextensive in reach with the personal jurisdiction allowed by the Due Process Clause of the United States Constitution"); *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987).  Thus, the question is whether EMOI had "minimum contacts" with the District such that exercising jurisdiction would not offend "traditional notions of fair play and substantial justice" under the due process standard the Supreme Court established in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  *Abramson*, 706 F. Supp. at 2.

The second prong, § 13-423(b), has been interpreted broadly to be synonymous with "relate to" or "have a substantial connection with." *Shoppers Food Warehouse*, 746 A.2d at 332. Importantly, "there are no 'mechanical tests' or 'talismanic formulas' for the determination of personal jurisdiction under § 13-423(a)(1) and (b), and the facts of each case must be weighed against notions of fairness, reasonableness and substantial justice." *Id.* at 329.

**REDACTED**

- 8 -

should be denied.

### A.   EMOI Transacted Business in the District of Columbia Directly and Through Its Agent

Section 13-423(a)(1) has a "broad reach" covering "the transaction of 'any business.'"

*Steinberg v. Int'l Criminal Police Organization*, 672 F.2d 927, 932 (D.C. Cir. 1981) (Skelly

Wright, J., concurring).  A "nonresident defendant may be considered to have transacted

business within the meaning of § 13-423(a)(1) without ever having been physically present in the

District, and, under certain circumstances, even a single act may be sufficient to bring a

defendant within the purview of the statute." *Reiman v. First Union Real Estate Equity &

Mortgage Investments*, 614 F. Supp. 255, 256-57 (D.D.C. 1985); *see also First American Corp.

v. Al-Nahyan*, 948 F. Supp. 1107, 1121 (D.D.C. 1996) (citing *Mousavires v. Baxter*, 434 A.2d

988, 992 (D.C. 1981)); *Chrysler Corp. v. General Motors, Corp.* 589 F. Supp. 1182, 1205

(D.D.C. 1984) (holding that under §13-423(a), less of a nexus between the defendant and the

District of Columbia is required for a finding of jurisdiction than under the "doing business" test

used to determine corporate presence).

EMOI's contacts with this jurisdiction include EMOI's own business transactions with

and in the District and the actions of Robert Haines, EMOI's agent.  These contacts should be

examined in the aggregate when determining whether EMOI is subject to the Court's

jurisdiction. *See SL Montevideo Technology, Inc. v. Eaton Aerospace, LLC*, No. Civ. 03-3302,

2004 WL 415257, at *3 (D. Minn. March 2, 2004) (even where "none of these contacts alone

would be sufficient to establish jurisdiction, taken cumulatively" they are enough to establish

jurisdiction).

### 1.   EMOI Directly Transacted Business in the District

EMOI's direct contacts with the District of Columbia included

Redacted Public Version

**REDACTED**

Redacted Public Version

**REDACTED**

Redacted Public Version

**REDACTED**

*[See, e.g., Ford v.*
*RDI/Caesars Riverboat Casino, LLC*, 503 F. Supp. 2d 839, 841–42 (W.D. Ky. 2007) (relevant

factor in jurisdictional analysis was defendant's activity in the state as a sponsor of events and

charitable donor); *National Paintball Supply, Inc. v. Cossio*, 996 F. Supp. 459 (E.D. Pa. 1998)

(finding general jurisdiction where forum contacts consisted of sponsoring two trade shows and

selling an insurance policy in the state).

2.      EMOI Transacted Business in the District Through its Agent

In *Rose v. Silver*, 394 A.2d 1368 (D.C. 1978), the District of Columbia Court of Appeals

found that a foreign corporation was transacting business in the District of Columbia by virtue of

hiring an agent to represent it before the FDA: "even without regard to the occasional visits to

the District by appellees' other representatives, [that] appellees were 'transacting . . . business' in

- 12 -

the District 'by an agent' within the meaning of 13-423(a)(1)." *Id.* at 1371 (ellipsis in original);

*see also Biton v. Palestinian Interim Self-Government Authority*, 310 F. Supp. 2d 172, 180

(D.D.C. 2004) (finding personal jurisdiction over Palestinian Authority because it had a

Washington Representative and employed a lobbying firm to provide advocacy training and

assistance with developing a public relations campaign)

**REDACTED**

To determine if a party is an "agent," courts look to the entire relationship for evidence of

a sufficient degree of control exercised by the principal and mutual consent by the agent.

*Johnson v. Bechtel Assoc. Professional Corp.*, 717 F.2d 574, 580 (D.C. Cir. 1983), *rev'd on*

*other grounds sub nom, Washington Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925 (1984);

*C & E Services, Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 264 (D.D.C. 2007); *Smith v. Jenkins*,

452 A.2d 333, 334 (D.C. 1982).  This can be shown by the actual course of dealings between the

parties, and not just the formalities of the relationship. *Safeway Stores, Inc. v. Kelly*, 448 A.2d

856, 860 (D.C. 1982); *Snyder v. Hampton Industries, Inc.*, 521 F. Supp. 130, 142 (D. Md. 1981)

(agency may be implied from the words and conduct of the parties and the circumstances);

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 56 (1st Cir. 2002)

(jurisdiction based on agency appropriate where principal accepted and encouraged agent's

assistance).[7]  A principal-agent relationship can be established for the purpose of a single

---

[7]      In order to establish the agency relationship, EMOI need not have "exercised complete dominion" over the agent. *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000) ("If such

- 13 -

transaction or series of transactions and need not constitute a master-servant relationship. Restatement (Second) of Agency § 1 (1958), comment (e) ("[T]he attorney-at-law, the broker, the factor, the auctioneer, and other similar persons employed either for a single transaction or for a series of transactions, are agents, although as to their physical activities they are independent contractors."). "[W]hether an agency relationship exists is a question of fact." *Smith*, 452 A.2d at 335; *see also Schwartz*, 938 F. Supp. at 8 (converting motion to dismiss for lack of jurisdiction into motion for summary judgment, and finding that agency was question of fact about which material disputes remained, precluding summary judgment on jurisdictional question).

It is axiomatic that the activities of an agent in the District are attributable to the principal for the purposes of establishing personal jurisdiction. *Rose*, 394 A.2d 1368; *Chase*, 617 F. Supp. at 1424; *Biton*, 310 F. Supp.2d 172; *see also Bechtel & Cole v. Graceland Broadcasting, Inc.*, 18 F.3d 953 (D.C. Cir. 1994); *Wiwa v. Royal Dutch Petroleum*, 226 F.3d 88 (2d. Cir. 2000) (investor relations office within the forum was an agent of the defendant oil company for personal jurisdiction purposes). The activities of EMOI's agent               can therefore establish that EMOI was transacting business in the District under D.C. Code § 13-423(a)(1).


**REDACTED**


domination were required, then agency principles would be superfluous because . . . the sovereign would be subject to suit on the ground that instrumentality and sovereign were in fact a single entity.").

Redacted Public Version

**REDACTED**

Redacted Public Version

**REDACTED**

Redacted Public Version

**REDACTED**

\*   \*   \*

Thus, the jurisdictional contacts of EMOI—both on its own and through its agent—
constitute "transacting business" and satisfy the requirements of D.C. Code § 13-423(a)(1).
EMOI's substantial contacts with the District of Columbia were not random, fortuitous,
accidental or attenuated.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).  Rather,

**REDACTED**

Redacted Public Version

**REDACTED**

3.     The Government Contacts Exception Does Not Apply to EMOI's Contacts
       with the District

The Court should reject EMOI's argument that its contacts with the District of Columbia

should be excluded from the personal jurisdiction analysis under the "government contacts"

exception.  The government contacts exception is a narrow doctrine designed only to protect a

person's right to petition the United States government under the First Amendment.  *Rose* at

1374 (D.C. 1978); *Johns v. Rozet*, 770 F. Supp. 11, 19 (D.D.C. 1991) ("[T]he First Amendment

provides the only principled basis for exempting a foreign defendant from suit in the District of

Columbia, when its contacts are . . . sufficient to withstand a traditional due process attack.").

As the District of Columbia Circuit has explained, a "'blanket exemption for governmental

contacts no longer exists in the District of Columbia.'"  *Steinberg*, 672 F.2d at 932; *Chrysler v.*

*General Motors*, 589 F. Supp. 1182, 1198 (D.D.C. 1984).

---

[12]     EMOI's contacts are far more substantial than the meager connection to the District found in Defendants' cases. *See, e.g., Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 229 (D.D.C. 2005) (no specific jurisdiction where the Defendant had only two contacts with the District—an unrelated conversation with a lawyer and communications with a non-party corporation).  In fact, *Cohane v. Arpeia-Cal., Inc.*, 385 A.2d 153 (D.C. 1978), on which EMOI relies, found specific personal jurisdiction over a California corporation being sued by a Delaware resident for breach of contract based only on the fact that the plaintiff's sales territory included the District and that the defendant occasionally shipped goods to the District, even though the damages in the case resulted only from activity outside the District.  385 A.2d at 158-59 ("Once . . . the claim is related to acts in the District, § 13-423 does not require that the scope of the claim be limited to activity within this jurisdiction.").

- 18 -

Redacted Public Version

The "government contacts" exception precludes the assertion of personal jurisdiction over a non- resident if the *only* contact in the District of Columbia is with Congress or a federal agency. *Bechtel*, 18 F.3d at *1; *Chase*, 617 F. Supp. at 1425; *Chrysler Corp.*, 589 F. Supp. at 1199. "As the extent of a non-resident's contacts with this district increase, and include both governmental and private contacts, the force of the rule is lessened." *Id.* EMOI's contacts with the District of Columbia were *not* solely, or even predominantly, with the federal government. Instead, its contacts were primarily private contacts with no relation to the federal government. Thus, the government contacts exemption, which exempts "getting information from or giving information to the government, or getting the government's permission to do something," *Naartex Consulting Corp v. Watt*, 722 F. 2d 779, 786 (D.C. Cir. 1983), does not apply.

Moreover, the contacts upon which Plaintiffs rely to establish personal jurisdiction are plainly not "government contacts." For example, con ot "government contacts." *Bechtel*, 18 F.3d at *2 (contacts between client and agent fall outside government contacts exception, even where agent was hired to conduct government business); *Dooley*, 786 F. Supp. at 75 (memoranda, phone calls, emails and meetings, even when related to contacts with the United States government, are not excluded under the exception). As *Chase* explains, "in other cases which have invoked the governmental contacts doctrine the contacts in issue have always been direct contacts between the defendant and the 'federal instrumentality' and not ones between the defendant and his attorney or agent." 617 F. Supp. at 1427.

As in *Chase*, "this is not a case where the 'minimum contacts' are between the defendant[] and a federal agency" *Id.* at 1418. The bulk of EMOI's contacts in the District were

Redacted Public Version

**REDACTED**

---

13       EMOI's misplaced attempt to expand the government contacts exception to exclude "contacts with foreign embassies" therefore must fail. *See* Def. Mem. at 12. The cases EMOI itself cites stand for no such proposition. *See, e.g., Gibbons & Co. v. Roskamp Inst.*, No. 06-720, 2006 WL 2506646, at *3 (D.D.C. Aug. 28, 2006) (defendant's "only connection with the District was its meeting with Congressional officials," squarely within the government contacts exception); *Fasolyak v. The Cradle Society, Inc.*, Civ. A. No. 06-01126, 2007 WL 2071644, at *10 (D.D.C. July 19, 2007) (plaintiff did not allege that defendants had any contact with foreign government representatives or embassies); *World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116 F. Supp. 2d 98 (D.D.C. 2000) ("[T]he alleged meetings at the Republic of Kazakhstan Embassy will be considered."). *Fandel v. Arabian American Oil Co.*— in which the defendant had insufficient contacts to support jurisdiction under D.C. Code § 13-334, a statute used to convey general jurisdiction that is not at issue here—does not support EMOI's contention that the government contacts exception should exclude EMOI's contacts with the District. *See* 345 F.2d 87, 89 (D.C. Cir. 1965). Contacts can be insufficient for jurisdiction under § 13-334, but still sufficient to find jurisdiction under the long-arm statute, where even a single contact can suffice. *See Arista Records*, 314 F. Supp. 2d at 31, (finding jurisdiction under § 13-423(a), and requiring further discovery to determine if jurisdiction under D.C. Code § 13-334 also obtained). *AGS Int'l Services v. Newmont USA Ltd.*, 346 F. Supp.2d 64 (D.D.C 2004), is a case where, as *Chase* explained, the contacts were not between the defendants and their agent, but direct contacts of the defendants with the government. 617 F. Supp. at 1427.

Redacted Public Version

Moreover, proprietary contacts do not fall with the government contacts exemption, even if the contacts are with the United States government. *Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244, 250 (D.C. 1990). Here, Plaintiffs do not rest their argument on *any* contacts with the United

**REDACTED**

### B.  Plaintiffs' Claims Relate to EMOI's Contacts with the District of Columbia

Plaintiffs' claims relate to the business transacted by EMOI an            EMOI's behalf.  District of Columbia courts interpret the "arise from" language found in § 13-423(b) "flexibly and synonymously with 'relate to' or having a 'substantial connection with,' in the same way that the Supreme Court's due process analysis has used these terms interchangeably." *Shoppers Food Warehouse*, 746 A.2d at 332, 335.  The Court can therefore exercise personal jurisdiction over EMOI so long as Plaintiffs' tortious allegations are related to or substantially connected with EMOI's business activity in the District of Columbia.  Under this standard, all that is required is a "discernable relationship" between EMOI's activities in the District and Plaintiffs' claims. *Shoppers Food Warehouse*, 746 A.2d at 335–36 (citing *Trerotola v. Cotter*, 601 A.2d 60, 64 (D.C. 1991)).[14]

*Shoppers Food Warehouse* is particularly instructive.  In that case, the plaintiff slipped

---

[14]    In evaluating the nexus between the forum and the litigation, it is immaterial whether EMOI's activities in the District were directed at Plaintiffs. *Jacobsen*, 201 F. Supp. 2d 93, 106 (D.D.C. 2002).

Redacted Public Version

and fell in the defendant's supermarket in Takoma Park, Maryland. *See* 746 A.2d at 323. The defendant's only contacts with the District of Columbia consisted of advertisements placed in the *Washington Post*, and there was no evidence that the plaintiff ever saw the advertisements. *See id.* Nevertheless, the court concluded that the plaintiff's injury was "related to" the advertisements, giving the court personal jurisdiction over the defendant. *Id.* at 336. Thus, the nexus requirement of § 13-423(b) is not demanding and is clearly met here. Against the backdrop of this standard, Plaintiffs' claims which result from injuries sustained by EMOI's security actions, relate to EMOI's District of Columbia contacts in at least three ways:

**REDACTED**

**Redacted Public Version**

**REDACTED**

**REDACTED**

Redacted Public Version

REDACTED

Redacted Public Version

## V.   THE JURISDICTIONAL CONTACTS OF THE PARENT COMPANIES SHOULD BE ATTRIBUTED TO EMOI UNDER AN "ALTER EGO" OR "INTEGRATED ENTERPRISE" ANALYSIS

A second, independent, basis for this Court's exercise of personal jurisdiction over EMOI is that the jurisdictional contacts of EMOI's Parent Companies—which have conceded jurisdiction before this Court—should be attributed to EMOI under an "alter ego" or "integrated enterprise" analysis. *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 19–20 (D.D.C. 1999). Under the facts of this case, both tests are satisfied such that the forum contacts of the Parent Companies should be attributed to EMOI for jurisdictional purposes.

### A.   EMOI Is the Alter Ego of the Parent Companies

The Court has jurisdiction over EMOI as an alter ego of the Parent Companies, for which personal jurisdiction is not in doubt. *See* Docket 104. "[I]f a parent and subsidiary 'are not really separate entities,' . . . or one acts as an agent of the other," the local company's contacts can be imputed to the foreign affiliate. *Johnson-Tanner*, 239 F. Supp. 2d at 38. In such cases, the affiliate will be found to be transacting business in the forum state through the activities of the local entity. *Id.* Thus, the alter ego test does not require a showing that the defendant deliberately engaged in actions directed toward the forum state. *Color Systems, Inc. v. Meteor Photo Reproduction Systems*, No. 86-2516, 1988 WL 13187, at *3–4 (D.D.C. Feb. 11, 1998).[15]

To determine whether the jurisdictional contacts of the Parent Companies should be imputed to EMOI under an alter ego analysis, the Court should apply a two-prong test: (1) whether a unity of interests and ownership exists between EMOI and the Parent Companies such that the separate personalities between the entities no longer exists; and (2) whether an

---

[15]     The alter ego test in other jurisdictions is sometimes articulated using similar language to that found in the District of Columbia. Notably, different jurisdictions have taken somewhat different approaches to the alter ego analysis. "[I]t is undeniably true that few if any American jurisdictions have been as willing to pierce the veil as have the courts of the District of Columbia." Stephen B. Presser, PIERCING THE CORPORATE VEIL §2:9 (2007).

inequitable result would follow if the Court were to treat them as separate entities. *Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982); *Johnson-Tanner*, 239 F. Supp. 2d at 38. The first prong considers "the degree to which formalities have been followed to maintain a separate corporate entity." *Labadie Coal Co.*, 672 F.2d at 96. The second "looks to the basic issue of fairness under the facts." *Id.* Both prongs of the test are met in this case.

1.    A Unity of Interests Exists Between EMOI and EMC, MC, and MOC

In determining whether a unity of interests exists, courts look to the "totality of the relationship between the parent and its subsidiary." *MCI Communications Corp. v. AT&T*, No. 79-1182, 1983 WL 1881, at *7–8 (D.D.C. Oct. 4, 1983). A unity of interests is established if the parent companies had "active and substantial control" of the subsidiary during the relevant period in the lawsuit. *Johnson-Tanner*, 239 F. Supp. 2d at 38 (citing *Shapiro, Lifschitz & Schram*, 90 F. Supp. 2d 15, 23 (D.D.C. 2000).

Adherence to a few corporate formalities does not immunize a corporation from veil piercing. *Hart v. Dep't of Agriculture*, 112 F.3d 1228, 1231 (D.C. Cir. 1997) ("Even a 'valid corporation' may be so dominated by its principal shareholder as to lose its separate personality."). Moreover, while a given formality "may be true in a technical sense," it should not be given weight if it "does not accurately reflect the reality of" the relationship. *Flynn v. Ohio Building Restoration, Inc.*, 317 F. Supp. 2d 22, 33 (D.D.C. 2004).

Among the factors the Court should consider when making the alter ego determination are: (1) whether parent and subsidiary have common business departments; (2) whether the parent finances the subsidiary, commingles funds or other assets, and diverts one corporation's funds to the other's uses; (3) whether the parent incorporated the subsidiary; (4) whether the subsidiary is inadequately capitalized; (5) whether the entities file consolidated financial statements and tax returns; (6) whether the entities have overlapping directors and officers; (7)

- 27 -

Redacted Public Version

whether the parent controlled the subsidiary day-to-day; (8) whether any employee of the parent made hiring and firing decisions for the subsidiary; (9) whether there was a transfer of personnel back and forth between the entities; and (10) whether the parent headquarters maintained records for the subsidiary and shared a business location. *See Johnson-Tanner*, 239 F. Supp. 2d at 39; *Material Supply*, 62 F. Supp. 2d at 20. Consideration of these factors in this case leads to the conclusion that there is sufficient unity of interest and ownership between EMOI and the Parent Companies to "blur any distinction" between their corporate personalities for the purpose of establishing personal jurisdiction. *See Johnson-Tanner*, 239 F. Supp. 2d at 39.

*Johnson-Tanner* illustrates how these factors are applied in the District of Columbia given a factual scenario very similar to the record here. In *Johnson-Tanner*, the district court found a subsidiary to be the alter ego of its parent corporation because of the parent's control over "supervisory employees and [the parent's] high degree of oversight and management activity." *Johnson-Tanner*, 239 F. Supp. 2d at 40. The court concluded that there was a unity of interests between the parent and subsidiary after finding that the companies had at least three common officers and directors, the companies had undifferentiated use of office equipment such as phones and computers, directors of the parent company initiated the transfer of an employee within the subsidiary, records of the subsidiary were stored at the parent's offices, and the companies shared payroll and accounting systems. *Id.* at 39–41. These facts are substantially

**REDACTED**

Redacted Public Version

**REDACTED**

.

Redacted Public Version

**REDACTED**

Redacted Public Version

**REDACTED**

Redacted Public Version

**REDACTED**

Redacted Public Version

**REDACTED**

Redacted Public Version

REDACTED

REDACTED

---

[21]    EMOI attempts to undermine the significance of overlapping management by pointing to cases in which it was found to be a relevant, but ultimately insufficient, indication of an alter ego relationship.  The only significance of EMOI's case law is to emphasize that the alter ego analysis is a "fact-specific inquiry" that requires a balancing of many relevant factors. *Verni v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. Super. 2006); *see also Langarten v. York Research Corp.*, 1988 WL 7392 (Del. Ch. Feb. 3, 1988); *Patent Incentives, Inc. v. Seiko Epson Corp.*, No. 88-1407, 1988 WL 92460, at *7–8 (D.N.J. Sept. 6, 1988).

Redacted Public Version

REDACTED

REDACTED

---

[22]    The extent of reporting, review, approval, and intervention imposed on EMOI by its Parent Companies far exceeded the "quarterly and annual reports" made to the parent in *In re Acushnet River & New Bedford Harbor Proceedings*, 675 F. Supp. 22, 34 (D. Mass. 1987), cited by EMOI.  Indeed, *Dunn v. A/S Em. Z. Svitzer*, 885 F. Supp. 980, 988 (S.D. Tex. 1995), relied on by EMOI, makes clear that "day-to-day business and operational decisions may not be made by the parent" without it "being considered to exercise domination" over the subsidiary.

    EMOI also cites dicta in a footnote in *City of Moundridg v. Exxon Mobil Corp.*, 244 F.R.D. 10 (D.D.C. 2007), to show that a supervisory relationship between parent and subsidiary is insufficient to pierce the corporate veil.  *Moundridge*—a case about the admission of evidence and discovery, not the existence of personal jurisdiction— stated that the evidence of supervision by the parent "does not *necessarily* establish personal jurisdiction."  *Id.* at 13 (emphasis added).  Contrary to what EMOI claims, this statement implies that the supervisory relationship between parent and subsidiary *was indicative of an alter ego relationship*, just as it is here.

**REDACTED**

**Redacted Public Version**

**REDACTED**

Redacted Public Version

**REDACTED**

Redacted Public Version

**REDACTED**

Individually and in the aggregate, this evidence is more than sufficient to show that EMOI and the Parent Companies evince a unity of interest and ownership.[25]

2.      Inequitable Results Would Follow a Failure to Find EMOI the Alter Ego of the Parent Companies

Contrary to Defendants' contention, "fraud is not a prerequisite in a suit to disregard the corporate fiction." *Labadie*, 672 F.2d at 99; *see Shapiro*, 90 F. Supp.2d at 26 ("A finding of unfairness does not require fraud, or willfully wrongful conduct."). The very cases cited by Defendants support this point of law. *See, e.g., Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 375 (Tex. 1984) ("In a tort case, it is not necessary to find an intent to defraud" to disregard the corporate form); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989) (holding that fraud is not the only basis for finding an alter ego relationship and piercing the corporate veil). A case "must only present an element of injustice or fundamental unfairness to justify the court's piercing the veil." *Labadie*, 672 F.2d at 99. Under *Labadie*,

---

[25]      The few District of Columbia cases EMOI cites do not dictate a different result. In *Gonzalez v. Internacional De Elevadores, S.A.*, 891 A.2d 227 (D.C. 2006), the court found that it lacked personal jurisdiction under an alter ego theory because, inter alia, the two companies "did not share any employees, managers, officers, office equipment, or office space." *Id.* at 237. Crucially, the plaintiff did not offer any evidence to the contrary. The facts of *Gonzalez* could not be further from the facts presented here. Similarly, in *Diamond Chemical, Inc. v. Atofina Chemicals, Inc.*, the only connection between the subsidiary and the parent were shared executive positions and joint promotion of the two entities, Total Fina Elf and Atofina, after the TotalFinaElf Aquitaine merger. 268 F. Supp. 2d at 8–9. These limited connections do not compare to the volume of evidence Plaintiffs offer demonstrating how the Parent Companies exercised control over EMOI.

Redacted Public Version

The "errant" party need not have willfully wronged the other party, nor need he have engaged in anything amounting to fraud in their relationship. The essence of the fairness test is simply that an individual businessman cannot hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell.

*Labadie*, 672 F.2d at 100.

**REDACTED**

**REDACTED**

---

[26]     *See also Vuitch*, 482 A.2d at 819 ("insolvency or undercapitalization is often an important factor evidencing injustice"); *Verni*, 903 A.2d at 500 (a hallmark of the injustice prong is "the undercapitalization of the subsidiary rendering it judgment-proof"); *Lucas*, 696 S.W.2d at 375 (piercing corporate veil is appropriate if the subsidiary "is not reasonably capitalized in light of the nature and risk of its business"); *State Dep't of Environmental Protection v. Ventron Corp.*, 468 A.2d 150, 165 (N.J. 1983) (capitalization key inquiry in determining propriety of piercing the corporate veil).

Redacted Public Version

**REDACTED**

**Redacted Public Version**

**REDACTED**

**B.      EMOI and the Parent Companies Constituted an Integrated Enterprise**

This Court also has personal jurisdiction over EMOI because EMOI and the Parent

Companies are an integrated enterprise under District of Columbia law.  Pursuant to the

integrated enterprise test, courts find that interrelated operations, centralized control of matters

underlying the litigation, common management, and common ownership or financial control

between a parent corporation and its subsidiary make the two corporations an integrated

enterprise.  *Richard v. Bell Atlantic Corp.*, 946 F. Supp. 54, 62 (D.D.C. 1996).  "This analysis

ultimately focuses on the question whether the parent corporation was a final decision-maker in

connection with" the matters underlying this litigation.  *Lusk v. Foxmeyer Health Corp.*, 129

F.3d 773, 777 (5th Cir. 1997).  Jurisdiction over the subsidiary is proper in such an integrated

enterprise because the contacts of the parent are treated as the contacts of the subsidiary.  *See*

*Material Supply*, 62 F. Supp. 2d at 20 (integrated enterprise test can be used to establish

jurisdiction over a subsidiary that is involved in an integrated enterprise with parent

corporations); *Procaccino-Hague v. Boll Filter Corp.*, No 303CV1560, 2004 WL 78155, at *3

(D. Conn. Jan. 13, 2004).

**REDACTED**

Redacted Public Version

**REDACTED**

Redacted Public Version

**REDACTED**

Redacted Public Version

*Richard*, 946 F. Supp. at 66–67 (finding overarching corporate guidelines relevant to establishing integrated enterprise).

**REDACTED**

see *Procaccino-Hague*, 2004 WL 78155, at *3 (concluding that jurisdiction was proper under the integrated enterprise test because, *inter alia*, the subsidiary "operated more as a branch office of" the parent than a separate entity).

Thus, the jurisdictional contacts of the Parent Companies are attributable to EMOI under either an "alter ego" or "integrated enterprise analysis. The Parent Companies do not contest this Court's jurisdiction. Accordingly, jurisdiction over EMOI is also proper.

<u>**CONCLUSION**</u>

This Court has personal jurisdiction over EMOI for two independent reasons: (1) the Court has jurisdiction under D.C. Code § 13-423, because EMOI transacted business in the District of Columbia directly and through its agent,                  and because Plaintiffs' claims relate to those jurisdictional contacts; and (2) the Court has jurisdiction because the jurisdictional contacts of the Parent Companies should be attributed to EMOI under an "alter ego" or "integrated enterprise" analysis. On either or both of these grounds, the Court should deny Defendant ExxonMobil Oil Indonesia Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction.

Confidential Subject to Protective Order
Filed Under Seal

Dated:  March 21, 2008

Respectfully submitted,

*Agnieszka Fryszman*

COHEN MILSTEIN HAUSFELD & TOLL P.L.L.C.
Michael D. Hausfeld, DC Bar No. 153742
Agnieszka M. Fryszman, DC Bar No. 459208
1100 New York Avenue, N.W.
West Tower - Suite 500
Washington, DC  20005-3964
Tel:  (202) 408-4600
Fax:  (202) 408-4699

Brent W. Landau, DC Bar No. 479251
COHEN MILSTEIN HAUSFELD & TOLL P.L.L.C.
One South Broad Street, Suite 1850
Philadelphia, PA  19107
Tel:  (215) 825-4012
Fax:  (215) 825-4001

Seth R. Gassman
COHEN MILSTEIN HAUSFELD & TOLL P.L.L.C.
150 East 52nd Street, Thirtieth Floor
New York, NY 10022
Tel:  (212) 838-7797
Fax:  (212) 838-7745

Terrence Collingsworth, DC Bar No. 471830
CONRAD & SCHERER
731 8th St., S.E.
Washington, D.C.  20003
Tel:  (202) 543-5811
Fax:  (202) 347-4885

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2008, a redacted copy of the foregoing Plaintiffs' Memorandum in Opposition to Defendant ExxonMobil Oil Indonesia, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction was served via the Court's electronic filing system and an unredacted copy was hand delivered to the following counsel:

Alex Young K. Oh
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1615 L Street, NW, Suite 1300
Washington, DC 20036

Martin J. Weinstein
Nikhil Singhvi
Willkie Farr & Gallagher, LLP
1875 K Street, NW
Washington, DC  20006


/s/ Linda Aono
Linda Aono