**REDACTED PUBLIC VERSION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN DOE I, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 01-1357 (RCL/AK) |
| | ) | |
| EXXON MOBIL CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS, OR
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ......................................2
II.   ARGUMENT............................................................................................................4
      A.    Standard of Review ................................................................................4
      B.    Limited "Phase II" Discovery Does Not Implicate the Political
            Question Doctrine....................................................................................5
            1.    The United States Has Never Sought Dismissal of the State
                  Law Claims...............................................................................5
            2.    The Court Contemplated Discovery on the State Law
                  Claims.......................................................................................9
            3.    Reconsideration of the Denial of Exxon's Motion to
                  Dismiss on Political Question Grounds Is Not Warranted...........14
      C.    Due Process Does Not Entitle Defendants to the Overly Broad
            Discovery They Seek..............................................................................20
      D.    Exxon's Motion for Summary Judgment Must be Denied.......................32
III.  CONCLUSION .............................................................................................32

# TABLE OF AUTHORITIES

Page

**CASES**

*Abebe-Jira v. Negewo,*
  72 F.3d 844 (11th Cir. 1996) ................................................6

*Adickes v. S. H. Kress & Co.,*
  398 U.S. 144 (1970) ................................................5

*Alfadda v. Fenn,*
  149 F.R.D. 28 (S.D.N.Y. 1993) ................................................13

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ................................................4

* *Baker v. Carr,*
  369 U.S. 186 (1962) ................................................15, 16

*Bankers Trust Co. v. Bethlehem Steel Corp.,*
  752 F.2d 874 (3d Cir. 1985) ................................................21

* *Bardoff v. United States,*
  628 A.2d 86 (D.C. 1993) ................................................22, 30

*Beaty v. Republic of Iraq,*
  480 F. Supp. 2d 60 (D.D.C. 2007) ................................................6

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) ................................................4

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ................................................5

*Christianson v. Colt Indus. Operating Corp.,*
  486 U.S. 800 (1988) ................................................15

*DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.,*
  810 F.2d 1236 (D.C. Cir. 1987) ................................................17

*Doe I v. Unocal Corp.,*
  395 F.3d 932 (9th Cir. 2001) ................................................31

* *Doe v. Exxon Mobil Corp.,*
  473 F.3d 345 (D.C. Cir. 2007) ................................................*passim*

-ii-
* Cases on which Plaintiffs principally rely.

## TABLE OF AUTHORITIES

Page

*Doe v. Provident Life & Accident Ins. Co.*,
   247 F.R.D. 128 (D.D.C. 2008) .................................................................................................21

*Erickson v. Pardus*,
   127 S. Ct. 2197 (2007)...............................................................................................................4

*Ex parte Republic of Peru*,
   318 U.S. 578 (1943) .................................................................................................................18

\* *Exxon Mobil Corp. v. Doe*,
   128 S. Ct. 2931 (2008)................................................................................................................1

*Fudali v. Pivotal Corp.*,
   No. 03-1460, 2005 WL 607880 (D.D.C. Mar. 16, 2005) ........................................................32

*Geter v. Horning Bros. Mgmt.*,
   537 F. Supp. 2d 206 (D.D.C. 2008).............................................................................................4

*Gray v. Netherland*,
   518 U.S. 152 (1996) .................................................................................................................20

*In re Guantanamo Bay Detainee Litigation*,
   No. 06-cv-1690, 2009 WL 50155 (D.D.C. Jan. 9, 2009) ........................................................13

*Harbury v. Hayden*,
   522 F.3d 413 (D.C. Cir. 2008)..................................................................................................29

*Hill v. McDonald*,
   442 A.2d 133 (D.C. 1982) ........................................................................................................24

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
   478 U.S. 221 (1986) .................................................................................................................17

*Johnson v. Weinberg*,
   434 A.2d 404 (D.C. 1981) ........................................................................................................28

*Judicial Watch, Inc. v. Clinton*,
   880 F. Supp. 1 (D.D.C. 1995).....................................................................................................4

*Klinghoffer v. S.N.C. Achille Lauro*,
   937 F.2d 44 (2d Cir. 1991) .......................................................................................................17

*Krieger v. Fadely*,
   211 F.3d 134 (D.C. Cir. 2000)....................................................................................................4

\* Cases on which Plaintiffs principally rely.

# TABLE OF AUTHORITIES

Page

*Lande v. Menage Ltd. P'ship,*
  702 A.2d 1259 (D.C. 1997) .......................................................................................... 30

*LaShawn A. v. Barry,*
  87 F.3d 1389 (D.C. Cir. 1996) ..................................................................................... 15

*Linder v. Portocarrero,*
  963 F.2d 332 (11th Cir. 1992) ...................................................................................... 17

*Lyon v. Carey,*
  533 F.2d 649 (D.C. Cir. 1976) ..................................................................................... 29

*McKesson Corp. v. Islamic Republic of Iran,*
  138 F.R.D. 1 (D.D.C. 1991) .......................................................................................... 16

*McKesson HBOC, Inc. v. Islamic Republic of Iran,*
  226 F.R.D. 56 (D.D.C. 2004) ........................................................................................ 21

*Midway Motor Lodge v. Innkeepers' Telemanagement & Equip. Corp.,*
  54 F.3d 406 (7th Cir. 1995) .......................................................................................... 20

*NCGUB v. Unocal, Inc.,*
  176 F.R.D. 329 (C.D. Cal. 1997) ................................................................................. 31

*Nixon v. United States,*
  506 U.S. 224 (1993) ....................................................................................................... 16

*Oscar Gruss & Son v. Lumbermens Mutual Casualty Co.,*
  41 F.R.D. 279 (S.D.N.Y. 1966) .................................................................................... 28

*Plain v. AT&T Corp.,*
  424 F. Supp. 2d 11 (D.D.C. 2006) ................................................................................. 4

*Population Inst. v. McPherson,*
  797 F.2d 1062 (D.C. Cir. 1986) ................................................................................... 17

*Powell v. McCormack,*
  395 U.S. 486 (1969) ................................................................................................ 15, 17

*Republic of the Philippines v. Marcos,*
  862 F.2d 1355 (9th Cir. 1988) ....................................................................................... 6

*Romero v. Drummond Co.,*
  552 F.3d 1303 (11th Cir. 2008) .................................................................................... 19

* Cases on which Plaintiffs principally rely.

# TABLE OF AUTHORITIES

**Page**

*Rowland v. U.S.*,
  840 A.2d 664 (D.C. 2004) ............................................................................................ 13

*Sarei v. Rio Tinto*,
  456 F.3d 1069 (9th Cir. 2006) ...................................................................................... 18

*Sarei v. Rio Tinto PLC*,
  221 F. Supp. 2d 1116 (C.D. Cal. 2002) ........................................................................ 18

*Sharon v. Time, Inc.*,
  599 F. Supp. 538 (S.D.N.Y. 1984) ........................................................................... 26,31

*Soc'y of Lloyd's v. Asheden*,
  233 F.3d 473 (7th Cir. 2000) ........................................................................................ 20

*Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v.
  Rogers*,
  357 U.S. 197 (1958) ...................................................................................................... 31

*Strauss v. Credit Lyonnais, S.A.*,
  249 F.R.D. 429 (E.D.N.Y. 2008) .................................................................................. 13

*Tel-Oren v. Libyan Arab Republic*,
  726 F.2d 774 (D.C. Cir. 1984) ................................................................................ 15, 17

*In re Terrorist Attacks on September 11, 2001*,
  538 F.3d 71 (2d Cir. 2008) ........................................................................................... 19

*Ungar v. Palestinian Liberation Organization*,
  402 F.3d 274 (1st Cir. 2005) ........................................................................................ 17

* *United States v. Dean*,
  55 F.3d 640 (D.C. Cir. 1995) .................................................................................. *passim*

* *United States v. Haim*,
  218 F. Supp. 922 (S.D.N.Y. 1963) ........................................................................... 28,30

*United States v. Tarantino*,
  846 F.2d 1384 (D.C. Cir. 1988) .................................................................................... 20

* *United States v. Valenzuela-Bernal*,
  458 U.S. 858 (1982) ............................................................................................... *passim*

*Wardius v. Oregon*,
  412 U.S. 470 (1973) ...................................................................................................... 20

* Cases on which Plaintiffs principally rely.

# TABLE OF AUTHORITIES

**Page**

*Weatherford v. Bursey*,
  429 U.S. 545 (1977) ...................................................................................................20

*Weaver v. Gross*,
  Nos. 84-1944, 84-1945, 1986 WL 2396 (D.D.C. Feb. 13, 1986)............................................32

*Whiteman v. Dorotheum GmbH & Co. KG*,
  431 F.3d 57 (2d Cir. 2005) ......................................................................................19

*Zearley v. Ackerman*,
  116 F. Supp. 2d 109, 114 (D.D.C. 2000) ............................................................................32

## OTHER AUTHORITIES

Brief for the United States as Amicus Curiae,
  *Exxon Mobil Corp., et al. v. John Doe I, et al.*, No. 07-81 (U.S. 2008)........................2, 8, 19

D.C. Mun. Regs. title 6A § 200.4 (2007) .....................................................................29

Fed. R. Civ. P. 12...................................................................................................3, 4

\* Cases on which Plaintiffs principally rely.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

On June 16, 2008, the Supreme Court added its rebuff to that of this Court and the

Court of Appeals to Defendants'[1] six-year-long attempt to have Plaintiffs' common law

tort claims dismissed as nonjusticiable. *Exxon Mobil Corp. v. Doe*, 128 S. Ct. 2931

(2008).  Now, seven months later, and after having lost their challenge to personal

jurisdiction and been denied summary judgment, Defendants have renewed their

challenge to the case on political question grounds and also seek dismissal on due process

grounds.  Defendants' motion is meritless and should be rejected.  Furthermore, Exxon's

argument is not new. It has been made, and rejected, before.

Exxon argues not that Plaintiffs' claims pose a political question, but that its

defense will require discovery in Indonesia which, Exxon asserts, will necessitate

dismissal pursuant to the political question doctrine.  *Defendants' Memorandum of Law*

in Support of their Motion to Dismiss, or, in the Alternative, for Judgment on the

Pleadings, or for Summary Judgment, at 4, Dkt. 389 (Jan. 21, 2009) ("Defs.' Mem.").

Simultaneously, Exxon asserts a right to broad and intrusive discovery, without which,

Exxon argues, the case cannot proceed on due process grounds.  *Id.*  Exxon attempts to

place Plaintiffs and the Court into a Catch-22 situation, requiring dismissal regardless of

how the Court proceeds.  But Exxon's argument is no more than smoke and mirrors,

---

[1]      Defendants Exxon Mobil Corporation and ExxonMobil Oil Indonesia ("EMOI")
are referred to herein as "Defendants" or "Exxon."

**REDACTED PUBLIC VERSION**

and rests on mischaracterizations of the past history of the case, the law, and the facts.[2]

First, at no time during the eight years that this litigation has been pending has the State Department said that discovery on Plaintiffs' state law claims implicates foreign policy concerns such that the case must be dismissed. In fact, the United States has **never** requested that the case be dismissed in its entirety. To the contrary, the most recent statement of the United States – conspicuously absent from Exxon's chronology – informed the Supreme Court that Exxon's petition for certiorari should be denied:

> the court of appeals reasonably regarded petitioners' interlocutory appeal as one from the denial of a motion to dismiss state-law tort claims *based on an assertion by private defendants, not by the Executive*, that the litigation itself would have adverse consequences for the Nation's foreign policy interests....

Brief for the United States as *Amicus Curiae*, *Exxon Mobil Corp. v. Doe I*, No. 07-81 (U.S. 2008) ("United States *Amicus*"), attached hereto as Ex. 1. Exxon implies that this Court, the Court of Appeals, and the Supreme Court all misapprehended the nature of the claims and the proof involved in denying (or refusing to reconsider the denial of) Exxon's prior motion to dismiss on political question grounds. But that motion did not rise or fall with the scope of discovery on the state law claims. Both this Court and the Court of Appeals disagreed with Exxon's characterization of the State Department's views and rejected Exxon's arguments about the foreign policy effects of this litigation. *Doe I v. Exxon Mobil Corp.*, 473 F.3d 345, 354 (D.C. Cir. 2007) (Court of Appeals "disagree[s] with Exxon's contention that there is a conflict between the views of the State Department and those of the district court"); Order at 1-2, Dkt. 109 (Nov. 17, 2005)

---

[2]     Plaintiffs note that, at the very least, this motion is premature. The Court has yet to issue a discovery order or to make any pronouncements about how it will require the parties to proceed in this litigation.

**REDACTED PUBLIC VERSION**

("Nov. 17, 2005 Order") ("Defendants also argue that discovery itself would inevitably violate Indonesian sovereignty, and that the U.S. State Department wholly opposed discovery and litigation in this case. This is not an accurate summary of the State Department's position.").

Second, Exxon does not have a due process right to take wide ranging discovery of the Indonesian government. Exxon's argument for such discovery ignores the test for establishing a constitutional violation based on a lack of access to evidence and further ignores the substantive law underlying Plaintiffs' claims. For example, the Court has already ruled that "there is sufficient evidence" that EMOI was a joint employer of the security personnel. Memorandum and Opinion, Dkt. 365 (Aug. 27, 2008) at 27 (available at *Doe I v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16 (D.D.C. 2008). Exxon's proposed discovery, as a matter of law, would not absolve it of joint and several responsibility under the joint employer doctrine. Furthermore, Exxon's proposed discovery seeks to contradict Exxon's own documents,

**REDACTED**

Exxon thus cannot make the showing required for a due process violation.

The measured discovery proposed by Plaintiffs balances the needs of the parties and would not impinge on Indonesian sovereignty. Exxon has presented no more than a

**REDACTED PUBLIC VERSION**

last-ditch attempt to further delay these proceedings, re-casting an argument already rejected by the courts of this jurisdiction. Exxon's motion should be denied.

## II.  **ARGUMENT**

### A.  **Standard of Review**

A court may grant a defendant's motion to dismiss only if a plaintiff fails to state a claim upon which relief could be granted.  Fed. R. Civ. P. 12(b)(6).  In stating a claim, plaintiffs are not required to "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000).  In resolving a motion to dismiss, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences in the plaintiff's favor.  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  A motion to dismiss may be granted only if the complaint cannot be supported by "any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007); *accord Erickson*, 127 S. Ct. at 2200.

The standard of review under Fed. R. Civ. P. 12(c) "is essentially the same as that for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Geter v. Horning Bros. Mgmt.,* 537 F. Supp. 2d 206, 209 (D.D.C. 2008) (citing *Plain v. AT&T Corp.,* 424 F. Supp. 2d 11, 20 n.11 (D.D.C. 2006)).  The Court must accept the nonmovant's allegations as true and should view the facts in the light most favorable to the nonmoving party.  *See Judicial Watch, Inc. v. Clinton,* 880 F. Supp. 1, 7 (D.D.C. 1995).

Defendants entitled their motion as "in the alternative" a motion for summary judgment.  Summary judgment is an extreme remedy that is only available if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

REDACTED PUBLIC VERSION

as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The inquiry performed is a "threshold inquiry" to determine whether there are genuine factual issues that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Any doubt as to the existence of a genuine issue for trial should be resolved against the moving party and the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158-59 (1970).

### B.   Limited "Phase II" Discovery Does Not Implicate the Political Question Doctrine

#### 1.   The United States Has Never Sought Dismissal of the State Law Claims

Defendants present a lengthy – yet incomplete – chronology of the statements of the Executive Branch in this case. During the eight years that this litigation has been pending, the State Department has never once said that discovery on Plaintiffs' state law claims implicates foreign policy concerns such that the case must be dismissed. Moreover, this Court, the Court of Appeals, and the Supreme Court considered, and accorded great weight to, the United States' views when each court, in turn, permitted this litigation to proceed.

In August 2002, at the District Court's request, the State Department submitted a short letter regarding the impact of adjudication of Plaintiffs-Appellees' claims[3] on United States interests. Letter to Hon. Louis Oberdorfer from U.S. Dep't of State Legal Adviser William H. Taft (July 29, 2002), Attachment A to Dkt. 38 ("Taft Letter"). As

---

[3]    In their original Complaint, Plaintiffs had alleged claims under the Alien Tort Statute, 28 U.S.C. §1350 ("ATS"), and the Torture Victim Protection Act, 28 U.S.C. § 1350 note ("TVPA"), in addition to their state law tort claims.

this Court found, the Taft Letter was "carefully qualified" and "'necessarily predictive

and contingent' on how the case proceeded." Nov. 17, 2005 Order at 2, Dkt. 109

(quoting Taft Letter).[4]

The Department of Justice submitted a second Statement of Interest in 2003,

relating to Plaintiffs-Appellees' ATS claims. Supplemental Statement by the United

States, Dkt. 62 (July 14, 2003). The United States informed the District Court that its

foreign policy and national security concerns "*can be avoided*" by holding, as the United

States contends, that the ATS does not create an independent right of action." *Id.* at 2

(emphasis added). The second Statement of Interest did not seek the dismissal of

Plaintiffs' TVPA or state tort claims. Finally, in 2005, prior to ruling on the motion to

dismiss, this Court asked the United States to comment on Plaintiffs' proposed discovery

plan. Order at 1, Dkt. 85 (May 4, 2005). That plan contemplated discovery on the broad

---

[4] The factors cited by the Taft Letter included "*E.g.*, the nature, extent, and intrusiveness of discovery; the degree to which the case might directly implicate matters of great sensitivity to the Government of Indonesia and call for judicial pronouncements on the official actions of the GOI with respect to the conduct of its military activities in Aceh; the effect that a decision in favor of plaintiffs might encourage secessionist activities in Aceh and elsewhere in Indonesia; whether the case were to go to a jury and, if so, whether a substantial monetary award were to be imposed on Exxon Mobil; how other large commercial interests might interpret such a judgment when making investment decisions in Indonesia." Taft Letter at 2 n.1, Dkt. 38. Now that the civil war in Aceh has been resolved, at least one of the factors is no longer relevant. In addition, the Government of Indonesia has changed hands. Any "pronouncements" would relate to the conduct of individuals associated with a past regime now widely criticized within and outside Indonesia for its human rights abuses, and would not reflect on the current democratically elected government. *Cf. Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1361 (9th Cir. 1988) (litigation against former Philippine ruler Ferdinand Marcos did not present political question); *Abebe-Jira v. Negewo*, 72 F.3d 844 (11th Cir. 1996) (litigation against former official of Ethiopian military dictatorship did not present political question); *Beaty v. Republic of Iraq*, 480 F. Supp. 2d 60, 70-74 (D.D.C. 2007) (litigation against Iraq for actions of former regime did not present political question despite U.S. efforts to rebuild Iraq and support for current government).

**REDACTED PUBLIC VERSION**

range of claims in Plaintiffs' original complaint.[5]  The one-page State Department response reaffirmed the Taft letter and transmitted Indonesian objections to the discovery plan.  Statement of Interest by the United States of America, Dkt. 91 (July 18, 2005).

All three United States submissions were made prior to the Court's dismissal of the ATS and TVPA claims.  The United States did not submit a statement of interest in connection with Exxon's motion to dismiss the remaining state tort law claims, *see* Memorandum and Opinion, Dkt. 137 (Mar. 2, 2006) ("Mar. 2, 2005 Mem."), and has expressed no concern regarding the conduct of the litigation.  After this Court dismissed the ATS claims as requested by the State Department, the United States made only one additional statement to the District Court.  On December 15, 2005, during a hearing on which state law would apply to the remaining claims in the case, the Court asked whether the United States had anything it wished to convey to the Court.  Hr'g Tr. 31:3-5, Dkt. 121 (Dec. 15, 2005).  The United States representative responded that "the State Department very much appreciates the sensitivity you've shown to its foreign policy concerns."  *Id.* 31:7-9.  The United States asked to be served with any discovery requests, was provided with copies, and was given the opportunity to submit comments.  *Id.* 31-32.  The United States did not offer any comments or object to the discovery, which has since taken place without incident.  The United States did not suggest that the state tort law claims remained a matter for concern.

Similarly, the United States did not submit a statement of interest to the Court of Appeals during Exxon's appeal to that court.  Like the District Court, the Court of

---

[5]      Unlike the discovery plan Plaintiffs submitted in May 2005, the current plan does not involve any ATS or TVPA claims or claims against an Indonesian parastatal entity.

REDACTED PUBLIC VERSION

Appeals viewed the State Department's July 2002 letter "not as an unqualified opinion

that this suit must be dismissed, but rather as a word of caution to the district court

alerting it to the State Department's concerns." *Doe I*, 473 F.3d at 354. Indeed, the

Court of Appeals pointed out that "the fact that the letter refers to 'how the case might

unfold in the course of the litigation'" indicates that the State Department did not expect

the District Court to dismiss the case. *Id.* The Court of Appeals emphasized that, if it

had misinterpreted the Executive's sentiment, or if the State Department had additional

concerns about the litigation, it was "free to file further letters or briefs with the district

court expressing its views." *Id.* No further letters, briefs, or other information were

provided by the Executive to this Court.

The most recent statement by the United States regarding this case is its Brief as

*Amicus Curiae*, submitted to the Supreme Court by the Solicitor General and the Legal

Advisor of the Department of State, which recommended that the Supreme Court deny

Exxon's petition for certiorari. In that brief, the United States explained that:

> In light of that procedural history and the absence of a
> request by the United States that the case be dismissed in
> its entirety, the court of appeals reasonably regarded
> petitioners' interlocutory appeal as one from the denial of a
> motion to dismiss state-law tort claims based on an
> assertion by private defendants, not by the Executive, that
> the litigation itself would have adverse consequences for
> the Nation's foreign policy interests . . . .
>
> The Executive had not "requested the dismissal of the
> action against Exxon" in its entirety, and the majority noted
> that the United States "did not intervene" or otherwise
> participate in the court of appeals in support of petitioners'
> appeal or its petition for mandamus. No decision of this
> Court or any other court of appeals supports the availability
> of a collateral order appeal by a private party in these
> circumstances . . . .
>
> The majority's discussion of the mandamus issue indicates
> that, if it had believed the circumstances of this case to be

8

> as petitioners paint them, petitioners would have been
> granted the relief they seek, albeit under the procedural
> heading of mandamus rather than appeal as of right.

United States *Amicus*, Ex. 1, at 8-18 (internal citations omitted).

Despite repeated invitations, the State Department has not intervened, submitted a

statement of interest, or suggested that this case not proceed to trial at any time after

Exxon's petition for a writ of certiorari was denied.

### 2.     The Court Contemplated Discovery on the State Law Claims

While Exxon pursued its challenge to the denial of its motion to dismiss up to the

Supreme Court, discovery proceeded on the state law claims.[6] At Exxon's request,

discovery in this case was bifurcated.  The Court limited the subject matter of Phase I

discovery to:

> (1)     Personal jurisdiction over EMOI; and
>
> (2)     Acts or omissions in the United States by the U.S.-
> based Defendants or regarding knowledge on the part of
> U.S.-based defendants of tortious conduct by any defendant
> in Indonesia.

Order, Dkt. 158 (May 3, 2006) ("May 3, 2006 Order").

The Court, even in the initial discovery phase, did not prohibit all discovery of

materials within Indonesia.  Indeed, Defendants served, and Plaintiffs, who reside in

---

[6]     Exxon filed five separate motions for a stay of discovery, all based on the
irreparable harm allegedly to be inflicted on the United States from discovery in this case.
All of the motions were denied. *See* Office of the Clerk, Supreme Court of the United
States, Notification of Denial of Petitioners' Application for Stay of Proceedings (Jan. 7,
2008); *Doe I v. Exxon Mobil Corp.*, No. 05-7162 (D.C. Cir. June 30, 2006) (order
denying motion for reconsideration of stay denial); *Doe I v. Exxon Mobil Corp.*, No. 05-
7162 (D.C. Cir. Mar. 21, 2006) (order denying motion to stay at 1); Memorandum and
Order Denying Defendants' Motion for Stay, Dkt. 252 (Dec. 19, 2007) ("Dec. 19, 2007
Mem."); Nov. 17, 2005 Order, Dkt. 109.  Defendants also filed a separate motion for a
"postponement" of proceedings, which was also denied.  Dec. 19, 2007 Mem. at 5, Dkt.
252.

REDACTED PUBLIC VERSION

Indonesia, answered, extensive interrogatories relating to their claims. Defendants

insisted on signed, verified interrogatories, and Plaintiffs provided them from Indonesia.

The Court also required Defendants to produce any documents in Indonesia or in the

possession of EMOI that Defendants anticipated using in their defense (after any

necessary authorization by the Indonesian government), and ordered that no document

located outside Indonesia should be exempted from discovery merely because a copy of

the document also exists in Indonesia. See May 3, 2006 Order, Dkt. 158. Finally, the

Protective Order clearly contemplates the hiring and use of investigators in Indonesia by

the parties. See Protective Order ¶¶ 25, 27, Dkt. 217 (Apr. 25, 2007) (setting forth

specific procedures for the parties' hiring and conduct of investigators and medical

examiners in Indonesia). It is clear that Defendants' statement that they "have not been

permitted to conduct *any* investigation or discovery in Indonesia," Defs.' Mem. at 20, is

an overstatement.[7]

    In response to Plaintiffs' request that Defendants be ordered to index and log

Indonesia documents during Phase I discovery, the Court did not find that any action in

Indonesia threatened the justiciability of the instant suit. Rather, the Court stated, "[s]uch

a step is not necessary *at this time*." Memorandum and Opinion at 3, Dkt. 159 (May 3,

2006) (available at *Doe I v. Exxon Mobil Corp.,* No. 01-1357, 2006 WL 1193855, at *2

(D.D.C. May 3, 2006)) (emphasis added). The Court contemplated a "two-phase method

of discovery," and stated that "for the sake of convenience, time, and expense, . . . the

parties [should] first determine the issue of jurisdiction over EMOI and the knowledge

---

[7]    It is, moreover, belied by Defendants' counsel's own representations to the Court
that they have conducted an investigation in Indonesia and "not found one scintilla of
evidence." Tr. of Hr'g, Jan. 22, 2008, statement of Paul Wright, counsel for Defendants.

**REDACTED PUBLIC VERSION**

and acts of the non-EMOI defendants." *Id.* The Court did suggest that "it should be feasible, for example, for plaintiffs to perpetuate testimony and satisfy document discovery requirements outside Indonesia," Memorandum and Opinion, Dkt. 103 (Oct. 14, 2005) ("Oct. 14, 2005 Mem. Op.") (available at *Doe I v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20 (D.D.C. 2005)), but explicitly did not hold that this limitation on discovery was the lynchpin of its decision on justiciability.[8] Moreover, Plaintiffs propose, consistent with the Court's suggestion, to take witness depositions in Singapore or other locations outside Indonesia.

Exxon raised the same dire warnings about the first round of discovery as they do now, and attempted to withhold documents and limit deposition questioning specifically on the issue of who controlled the security personnel. *See* Motion to Compel Production of 156 Documents Withheld, Dkt. 256 (Jan. 14, 2008); Motion to Compel Rule 30(b)(6) Designations, Dkt. 227 (Oct. 11, 2007). This Court rejected Exxon's arguments and permitted questioning regarding control of the security personnel. *See* Memorandum Order at 5-6, Dkt. 249 (Nov. 27, 2007) (permitting Fed. R. Civ. P. 30(b)(6) questioning on the "deployment, control, and monitoring of security personnel who were responsible for securing the Exxon facility in Indonesia."). Significantly, the Court did not refuse to permit the questioning on the chance that the answer might have been that the Indonesian

---

[8]     Similarly, the Court of Appeals and the Solicitor General cited the Court's careful control over discovery not as the basis for upholding the Court's decision on justiciability, but as evidence of the Court's prudent case-management in light of the State Department's concerns.

government told the security forces what to do.[9]  The depositions in question took place

without any foreign policy effect or protest from the State Department.

Similarly, the Court denied Exxon's motion to repossess and withhold certain

documents on the grounds that they concerned Indonesian national security.

Memorandum Order, Dkt. 318 (June 20, 2008).  The documents were reviewed *in*

*camera* by the Court, and the relevant documents were ordered produced with no

discernable foreign policy impact.  *Id.*  One example of the documents

Defendants claimed concerned Indonesia's national security and could not be produced

without risking harm to foreign affairs, `

**REDACTED**

This document has nothing to do with Indonesia's national security or the civil

war in that country and everything to do with EMOI's use of and control over military

---

[9]     The depositions were taken without objections being raised about information
being disclosed in violation of Indonesian law.  The absence of any objections is
significant in light of Magistrate Judge Kay's invitation that

**REDACTED**

Mem. Order, Dkt. 249 (Nov. 27, 2007).

personnel to provide corporate security for EMOI's operations. The other documents that were produced as the result of the Court's order, Dkt. 318, likewise did not bear out Exxon's contention that they would reveal Indonesian national security secrets.

Furthermore, "[b]ecause a confidentiality order has been entered in this case, the likelihood that the disclosure will be discovered or will cause injury is greatly reduced." *Alfadda v. Fenn*, 149 F.R.D. 28, 35 (S.D.N.Y. 1993); *see also In re Guantanamo Bay Detainee Litigation*, No. 06-cv-1690, 2009 WL 50155 (D.D.C. Jan. 9, 2009) (protective order issued to protect secret and sensitive national security information disclosed to plaintiffs' counsel); *Rowland v. U.S.*, 840 A.2d 664, 684 (D.C. 2004) (protective order serves to preserve confidentiality of police documents); *cf. Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 455 (E.D.N.Y. 2008) (protective order lessens potential hardship where foreign sovereign blocks discovery under a "blocking statute").

Following the close of Phase I discovery, this Court considered and denied Defendants' motion for summary judgment on the merits. Memorandum and Opinion, Dkt. 365 (Aug. 27, 2008) ("Aug. 27, 2008 Mem. Op.") (available at *Doe I v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16 (D.D.C. 2008)). Specifically, the Court concluded, after considering over 400 exhibits, that there was sufficient evidence that members of EMOI's military security force committed the atrocities alleged in the complaint. *Id.* at 8-9. The Court also found that ample evidence supported EMOI's control of its paid military security force's deployment and management such that EMOI's liability for the torts committed by members of that force would be appropriate, *id.* at 9-17, and that EMOI had sufficient knowledge of the risk inherent in employing members of the Indonesian military as security such that a reasonable jury could find the company

REDACTED PUBLIC VERSION

negligent for hiring and retaining its force. *Id.* at 17-21. Finally, the Court found that

Exxon Mobil Corporation "exerted significant control over EMOI's security," and that

claims of the parent corporation's liability as the principal pursuant to agency law should

reach a jury. *Id.* at 23-25.

It strains credulity to suggest that this Court put itself and the litigants through the

time and expense of discovery and summary judgment, all the while anticipating that if

Plaintiffs' claims proved meritorious, the case would have to be dismissed. This Court's

decision to allow Plaintiffs' state-law tort claims to proceed was not based, as Defendants

argue, on the notion that the claims could be resolved without permitting any discovery in

Indonesia, but on a determination that the case as limited by the Court did not pose a

political question. *See* Nov. 17, 2005 Order at 1-2, Dkt. 109 (explaining that Exxon

misunderstood or misconstrued the Court's dismissal order: the genocide and crimes

against humanity claims were dismissed because they required adjudication of whether

the "Indonesian military was engaged in a plan allegedly to eliminate segments of the

population" but "on the other hand," the claims of extrajudicial killing, torture and

arbitrary detention were more targeted to actions by individuals and were not dismissed

on justiciability grounds). The Court placed "firm control" on discovery, *id.* at 3, and can

continue to do so in a manner that balances the needs of the parties and the concerns of

the State Department.

### 3.  Reconsideration of the Denial of Exxon's Motion to Dismiss on Political Question Grounds Is Not Warranted

Defendants have now renewed their call for dismissal on political question

grounds, but noticeably absent from their brief is an articulation of the standard for

dismissal on those grounds. The political question doctrine is a narrow body of law

**REDACTED PUBLIC VERSION**

rooted in separation of powers principles. *See Baker v. Carr*, 369 U.S. 186, 217 (1962);

*Powell v. McCormack*, 395 U.S. 486, 512 (1969); *Tel-Oren v. Libyan Arab Republic*, 726

F.2d 774, 798 (D.C. Cir. 1984) (Edwards, J. concurring) (political question doctrine "a

very limited basis for nonjusticiability").

The Supreme Court established a six-part test for identifying separation of powers

concerns, holding that "unless one of these formulations is inextricable from the case at

bar, there should be no dismissal for non-justiciability." *Baker,* 369 U.S. at 217.  The six

factors are: (1) "a textually demonstrable constitutional commitment of the issue to a

coordinate political department"; (2) "a lack of judicially discoverable and manageable

standards for resolving it"; (3) "the impossibility of deciding without an initial policy

determination of a kind clearly for nonjudicial discretion"; (4) "the impossibility of a

court's undertaking independent resolution without expressing lack of the respect due

coordinate branches of government"; (5) "an unusual need for unquestioning adherence

to a political decision already made"; and (6) "the potentiality of embarrassment from

multifarious pronouncements by various departments on one question." *Id.*

This Court has already held that none of the factors are "inextricable" from

Plaintiffs' tort claims.  Oct. 14, 2005 Mem. Op., Dkt. 103.  Plaintiffs' claims have not

changed since the entry of that Order, which controls here under the doctrine of law of

the case. *E.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)

(lower courts should be "loathe" to reconsider issues already decided "in the absence of

extraordinary circumstances such as where the initial decision was clearly erroneous and

would work a manifest injustice") (internal quotations omitted); *LaShawn A. v. Barry*, 87

F.3d 1389, 1393 (D.C. Cir. 1996) ("the *same* issue presented a second time in the *same*

*case* in the *same court* should lead to the *same result*"). As this Court explained in

rejecting Exxon's motion to dismiss on preemption grounds, "to the extent defendants are

arguing that finding Exxon liable would interfere with U.S. foreign policy in general (as

in *Assicurazioni* ), this issue of course has already been decided, and is now the law of

the case." Mar. 2, 2006 Mem. at 5 n.2, Dkt. 137 (citing *Doe*, 393 F. Supp. 2d at 28-29,

Dkt. 109 at 14-15).

Nonetheless, Defendants assert that the discovery they now seek warrants re-

opening the *Baker* inquiry.  Defendants make this argument on the basis of *proposed*

discovery plans and without providing this Court an opportunity to craft appropriate

parameters for additional discovery that will ensure fairness to the parties without

impermissibly impinging on the sovereign interests of Indonesia. *See McKesson Corp. v.*

*Islamic Republic of Iran*, 138 F.R.D. 1, 3 (D.D.C. 1991) (structuring discovery of Iran to

balance needs of plaintiffs and sovereignty interests of defendant).

Defendants' renewed argument appears to rely only on the first and fourth Baker

factors. Defs.' Mem. at 23. But even if it were proper to undertake the *Baker* analysis a

second time on the same facts and same claims, Defendants have failed to show why the

outcome now would be any different.

Defendants assert a conflict with "the constitutionally-assigned duties of a

coordinate branch of the federal government," yet they fail to marshal any support for

why their own request for a second stage of merits discovery should fundamentally alter

the Court's separation of powers analysis. The first *Baker* factor authorizes an Article III

court to decline to adjudicate a case only when that task has been demonstrably textually

assigned by the Constitution to another branch. *Baker,* 369 U.S. at 217; *Nixon v. United*

REDACTED PUBLIC VERSION

*States*, 506 U.S. 224 (1993). A change in the scope of discovery does not alter the textual

commitment of the Constitution. As when this issue was first considered, there is no

textual commitment to a coordinate branch here. Determining whether defendants

breached a duty of care to plaintiffs "falls within the traditional role of courts to interpret

the law." *Powell*, 395 U.S. at 548; *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478

U.S. 221, 230 (1986); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 49 (2d Cir. 1991)

("[W]e are faced with an ordinary tort suit, alleging that the defendants breached a duty

of care owed to the plaintiffs or their decedents. The department to whom this issue has

been 'constitutionally committed' is none other than our own – the Judiciary."); *see also*

*Ungar v. Palestinian Liberation Org.*, 402 F.3d 274, 280 (1st Cir. 2005); *Linder v.*

*Portocarrero*, 963 F.2d 332, 337 (11th Cir. 1992) (no political question where "complaint

challenges neither the legitimacy of the United States foreign policy toward the contras,

nor does it require the court to pronounce who was right and who was wrong in the

Nicaraguan civil war"); *DKT Mem'l. Fund, Ltd. v. Agency for Int'l Dev.*, 810 F.2d 1236,

1238 (D.C. Cir. 1987) (effect on foreign affairs does not render case nonjusticiable:

plaintiffs did not seek to litigate wisdom of foreign policy); *Population Inst. v.*

*McPherson*, 797 F.2d 1062, 1068-70 (D.C. Cir. 1986) ("more than an impact on foreign

relations is required before a political case becomes a political question"); *Tel-Oren*, 726

F.2d at 798 (Edwards, J. concurring) (tort suit arising out of terrorist acts presents no

clash between branches of government).

Exxon argues that the Executive Branch's opinion must be given serious weight

(a conclusion that Plaintiffs do not dispute), but this general point of law provides no

support for Exxon's motion to dismiss this case. *Doe I*, 473 F.3d at 354 (given the

**REDACTED PUBLIC VERSION**

guarded nature of the State Department letter, the District Court did not err in declining to dismiss the plaintiffs' claims under the political question doctrine, no matter what level of deference is owed to the State Department). Further, Exxon relies on cases that the Court of Appeals has specifically distinguished as failing to support Exxon's position. *See Doe I*, 473 F.3d 345, 354-55 (finding *Ex parte Republic of Peru*, 318 U.S. 578, 586-87 (1943) inapposite and noting *Sarei v. Rio Tinto*, 456 F.3d 1069 (9th Cir. 2006) supports finding no political question is posed here).[10] In rejecting Exxon's petition for mandamus, the Court of Appeals observed "that several other circuits have refused to invoke the political question doctrine to dismiss claims that were very similar to those in the instant case . . . . Exxon cites no cases in which a federal court has held that, in a matter involving like issues and comparable circumstances (*i.e.*, claims by a private party against a private United States corporation), the complaint *must* be dismissed under the political question doctrine. And we are aware of no such authority." *Id.* at 354-55.

Similarly, the continued litigation of Plaintiffs' claims demonstrates no lack of respect for the Executive where the Executive has not sought dismissal of Plaintiffs' state law claims. As the Solicitor General pointed out, if the Executive had sought dismissal because the pendency of this litigation adversely effected foreign relations, then the United States would have recommended immediate appeal under the collateral order

---

[10]     Defendants cite *Sarei v. Rio Tinto PLC*, 221 F. Supp. 2d 1116, 1992 (C.D. Cal. 2002), for the principle that no case has been allowed to proceed "in the face of an expression of concern such as that communicated by the State Department" but the Ninth Circuit reversed the district court's dismissal on political question grounds, holding that the Executive Branch Statement of Interest in that case, which was "guarded" like the one here, "even when given serious weight" does not establish that a political question is posed. *Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1205-06 (2007) (internal citations omitted), *remanded on other grounds by* 550 F.3d 822 (9th Cir. 2008) (*en banc*).

doctrine (and, presumably, a grant of certiorari), but this case does not present that

premise. United States *Amicus*, Ex. 1, at 13.[11]  Instead, the Executive declined to

intervene in Exxon's appeal to the D.C. Circuit and advocated a denial of certiorari to the

Supreme Court. *Id.*

In fact, Defendants' renewed political question argument has even less merit than

their prior motions, as the conduct of discovery over the past two years amply

demonstrates that the case in no way interferes with U.S. foreign relations.  This Court

carefully managed the first phase of discovery, which, while limited in scope, involved

the production of over one hundred fifty thousand pages of documents, the exchange of

interrogatories, and eight depositions – including documents and testimony on the

question of who controlled the soldiers who patrolled the Exxon facility.  The dire

foreign policy consequences predicted by Defendants in their past motions to stay or

dismiss the case have not occurred.  Given this record, there is every reason to believe

that this Court will continue to conduct discovery prudently and in a manner that avoids

constitutional concerns.

Plaintiffs' most recent discovery proposal provides for only limited discovery in

Indonesia that does not differ from the discovery already conducted except to the extent

---

[11]    Defendants' few case citations do not involve remotely similar circumstances.
For instance, in *Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57 (2d Cir. 2005), a
holocaust reparations case, the action was dismissed because the United States had
entered into a comprehensive executive agreement with the defendants (including the
Republic of Austria) to settle the claims, and the lawsuit was "reported to be the sole
remaining obstacle to the implementation of a fund to compensate Austrian Jewish
victims." *Id.* at 59.  The need for or scope of discovery played no role in the court's
decision, and the justiciability of the case had not been confirmed in earlier rulings, as it
has here. *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008), and
*Romero v. Drummond Co.*, 552 F.3d 1303 (11th Cir. 2008), are likewise inapplicable;
neither decision so much as mentions the political question doctrine.

REDACTED PUBLIC VERSION

that it reaches certain of ExxonMobil Oil Indonesia's own documents in Indonesia,

including documents related to corporate structure, and permits the parties access to the

Plaintiffs and eyewitnesses for deposition, depositions that can be taken outside

Indonesia. *See* Statement of Plaintiffs Pursuant to the Court's August 28, 2008 Order,

Dkt. 378 (Sept. 12, 2008) ("Pls.' Stmt."). This discovery poses no political question

concerns.

### C.   Due Process Does Not Entitle Defendants to the Overly Broad Discovery They Seek

The flip-side of Exxon's argument, that there is a due process right to wide-

ranging discovery, Defs.' Mem. at 25-27, likewise fails. The Supreme Court has

repeatedly made clear that "'[t]here is no general constitutional right to discovery in a

criminal case.'" *Gray v. Netherland*, 518 U.S. 152, 168 (1996) (quoting *Weatherford v.

Bursey*, 429 U.S. 545, 559 (1977)); *accord Wardius v. Oregon*, 412 U.S. 470, 474 (1973);

*see United States v. Tarantino*, 846 F.2d 1384, 1416 (D.C. Cir. 1988) (no constitutional

right to pretrial discovery of "all relevant material"). Not surprisingly, given the relative

constitutional interests at stake, courts have readily found that there is also no due process

right to pretrial discovery in a civil case. *See Midway Motor Lodge v. Innkeepers'

Telemanagement & Equip. Corp.*, 54 F.3d 406, 408 (7th Cir. 1995) (rejecting defendants'

due process challenge to abbreviated discovery: the due process "clause says nothing

about pretrial discovery . . . . *Even* in criminal cases there is no constitutional right to

pretrial discovery.") (emphasis added); *Soc'y of Lloyd's v. Asheden*, 233 F.3d 473, 480

(7th Cir. 2000) ("[T]he right to pretrial discovery is not a part of the U.S. concept of due

process.").

**REDACTED PUBLIC VERSION**

The Court plainly has broad discretion to limit and manage discovery. *E.g., Doe v. Provident Life & Accident Ins. Co.*, 247 F.R.D. 128 (D.D.C. 2008); *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 226 F.R.D. 56 (D.D.C. 2004). Defendants can present no cognizable due process challenge from limitations on pre-trial civil discovery unless "the acts complained of [are] of such quality as necessarily prevents a fair trial." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (the fairness of the trial must be so infected as to make it "more a spectacle or trial by ordeal than a disciplined contest"). Such an absence of fairness is not demonstrated unless the defendant makes a "plausible showing" that the evidence to which he has been denied access would have been both "material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *Id.* at 873. "A witness' testimony is material if its absence actually prejudiced the defendant's ability to mount a defense." *United States v. Dean*, 55 F.3d 640, 662 (D.C. Cir. 1995).[12]

The standard is a high one. In *Valenzuela-Bernal*, the defendant raised a due process challenge to his criminal trial after the U.S. government deported two eyewitnesses to defendants' alleged transportation of an illegal alien without first

---

[12]     None of the cases cited by Defendants hold to the contrary. The only case that arguably deals with discovery or the so-called "constitutionally guaranteed access to evidence," *Bankers Trust Co. v. Bethlehem Steel Corp.*, 752 F.2d 874, 886-887 (3d Cir. 1985), took issue with the fact that the lower court's decisions to both exclude any evidence of a previous commission in India and to deny the institution of a new commission effectively prohibited the plaintiff from eliciting any evidence supporting her allegations of fraud for which she had the burden of proof. To the contrary, Defendants are fully at liberty to support their defenses regarding a lack of control over Plaintiffs' assailants through their documents and the testimony of their employees. Additionally, Defendants will be able to fully cross-examine Plaintiffs and eyewitnesses regarding the attacks and injuries in question as well as Plaintiffs' identification of their assailants as members of Defendants' paid security force. Moreover, Defendants amd *Bankers Trust* fail to apply or even cite the test set forth by the Supreme Court.

REDACTED PUBLIC VERSION

granting access to the witnesses to defendant and his counsel. *Valenzuela-Bernal*, 458 U.S. at 860-61. The Supreme Court rejected the defendant's constitutional challenge, holding there was no due process violation because the defendant failed to demonstrate that the deported witnesses would have been material, favorable, and non-cumulative to his defense. *Id.* at 873. In so holding, the Court specifically rejected the "conceivable benefit" test utilized by certain courts of appeals which was effectively met anytime the inaccessible evidence was an eyewitness, *id.* at 862-63, and found that a much greater showing was necessary.

Following *Valenzuela-Bernal*, the D.C. Court of Appeals rejected a due process challenge and upheld the quashing of subpoenas to U.S. Senators in a trial alleging disruptive conduct during the Iran-Contra hearings. *Bardoff v. United States*, 628 A.2d 86 (D.C. 1993). While the court did not contest allegations by defendants that the Senators' position on the dais would have "placed them in a position to observe, and therefore to testify, that appellants' conduct did not disrupt the proceedings," *id.* at 90, the court reiterated that "a high official's testimony should not be compelled if it would be merely cumulative," *id.* at 92, and found that defendants failed to demonstrate "why others in the hearing room that day, who did not hold such high office as those subpoenaed, could not testify to the same events." *Id.* at 93. The Court of Appeals emphasized that "the record makes clear that any hope [defendants] had for favorable testimony from the subpoenaed witnesses was purely speculative." *Id.*; *see also Dean*, 55 F.3d at 662-63 (upholding quashing of subpoenas directed to a Senator, Senate committee investigator, and for certain documents where defendant "does not demonstrate how her lack of access to these items actually prejudiced her defense.").

REDACTED PUBLIC VERSION

Defendants here utterly fail to make the showing required by *Valenzuela-Bernal*.

Defendants point to what they describe as factual "disputes" in the Court's opinion denying the motion for summary judgment and incorrectly assert that these issues require extensive discovery in Indonesia and the fact-finder to "assess" or "adjudicate" the conduct of the Indonesian government. Defs.' Mem. at 16. To the contrary, these examples depict precisely why this case does not present the clash of constitutional principles that Defendants allege. The Court's findings in its summary judgment opinion specifically obviate the need to adjudicate the conduct of the Government of Indonesia and, therefore, the discovery now sought by Exxon. Any discovery on these questions and the related categories of evidence cited by Defendants does not implicate due process concerns because it is unlikely to generate evidence that is material, favorable, and not merely cumulative to Exxon's defense. *See Valenzuela-Bernal*, 458 U.S. at 872.[13]

For example, Defendants concede that the Court found that sufficient evidence existed to support a master-servant relationship between EMOI "and its paid military security forces," but argue that discovery of Pertamina is necessary, pointing to the Court's statement that "Pertamina may have exercised control over the military as well." Defs.' Mem. at 15-16 (quoting Aug. 27, 2008 Mem. Op. at 15, Dkt. 365). Contrary to Defendants' contention, and as clearly understood by the Court, the Court's holding that

---

[13]    As an apparent corollary to their discussion of these "disputes," Exxon claims it is entitled to discovery from the government of Indonesia regarding "who had control over the selection, engagement, and activities of Indonesian soldiers who protected the gas facilities operated by EMOI"; "all evidence concerning the deployment status of each Indonesian soldiers [sic] at issue"; and interviews and depositions of all soldiers involved in the assaults on Plaintiffs, as well as high-ranking Indonesian officials, who, based on a few lines in certain Indonesian press reports, may have had some involvement in or knowledge of "the deployment of Indonesian military to provide security for the Aceh gas facility." Defs.' Mem. at 16, 18, 20-22.

REDACTED PUBLIC VERSION

"a finder of fact could conclude that EMOI is fully liable as a joint employer" specifically

obviates the need to assess the conduct of Pertamina. *See id.* (citing *Faison v.*

*Nationwide Mortg. Corp.*, 839 F.2d 680 (D.C. Cir. 1987) (noting that joint tortfeasors in

the District of Columbia are generally jointly and severally liable)); *see also* Aug. 27,

2008 Mem. Op. at 25, Dkt. 365 (finding Pertamina not a necessary party).[14]

"It is well-established in this jurisdiction that one cannot escape liability for one's

own negligence merely because another person . . . may have contributed to the injury by

his wrongful or negligent act." *Hill v. McDonald*, 442 A.2d 133, 137 (D.C. 1982). Thus,

"[t]wo persons whose concurrent negligence causes injury to a third are liable jointly and

severally, and their liability will not be affected by the relative degree of negligence, or

the care required of each." *Id.* In other words, where the wrongful conduct of two

entities may have contributed to the single injury suffered by each Plaintiff, the Plaintiffs

are entitled to maintain an action for the full judgment against any one of those entities,

without consideration of the relative or degree of contribution that each entity's wrongful

conduct provided. *See* Restatement (Second) of Torts § 879, Comment b. Thus, if, as the

Court has already found, Plaintiffs can demonstrate that Defendants sufficiently

controlled their paid security force such that a reasonable jury could find liability,

Pertamina's concurrent control or lack thereof is immaterial. *See Dean*, 55 F.3d at 662-

63 (evidence is not material where "the jury could still have found from the evidence

---

[14]     Although Exxon discusses the "joint action" test for determining whether a party
acted under color of law, Defs.' Mem. at 16, which this Court declined to apply under the
TVPA, that test is analytically distinct from the "joint employer" or "borrowed servant"
doctrine at issue here.  The "joint action" color of law analysis has no applicability here.

that" defendant committed the crime charged).[15]  Thus, Exxon cannot show that

discovery of Pertamina will result in material evidence favorable to its defense.

Moreover, the Court has found that Defendants' own documents supported

Defendants' control of their paid military security.  Dkt. 365 at 12-15;

**REDACTED**

Exxon's current effort to uncover evidence to contradict its own documents, particularly

without any showing that such evidence exists, cannot satisfy the requirement that the

evidence sought will be favorable or that its existence is more than "purely speculative."

---

[15]      Similarly, Defendants reiterate their claim, disputed by Plaintiffs, that they were
required to contract with the military for security because Arun Field was designated a
"Vital National Object," by the Indonesian government. Defs.' Mem. at 16.  The Court
has previously found this dispute immaterial, because "a legal requirement to have
certain personnel present does not undercut the separate question of the *right to control
the personnel*." Aug. 27, 2008 Mem. Op. at 11-12, Dkt. 365.  Moreover, whether or not a
legal requirement exists, in statute or otherwise, is a question of law that does not require
intrusive discovery.

REDACTED PUBLIC VERSION

In addition, less intrusive alternatives to the depositions of high ranking Indonesian

officials, including the testimony of Defendants' own employees, are available.

Additionally, any evidence that Defendants could procure from Indonesia is

merely cumulative. Exxon admits that EMOI was a signatory to the Production Sharing

Contract ("PSC") that governed its relationship with Pertamina. Defs.' Mem. at 15-16.

Thus, Defendants presumably possess full information regarding control of their facility's

paid military security without resort to Pertamina or high-ranking Indonesian officials.

*See Valenzuela-Barnal*, 458 U.S. at 871 ("No one knows better than [the defendant] what

the deported witnesses actually said to him . . . ."); *see also Sharon v. Time, Inc.*, 599 F.

Supp. 538, 562 (S.D.N.Y. 1984) (even a constitutional privilege cannot justify need for

cumulative evidence under due process analysis). Such cumulative evidence provides no

basis for a due process challenge. *See id.* at 873 (sought evidence must be favorable to

the defense "in ways not merely cumulative to the testimony of available witnesses").

Defendants also claim a material factual dispute as to whether the "Indonesian

soldiers alleged to have committed the torts were even assigned . . . to protect the Aceh

facilities during the relevant time period," and "whether these soldiers were acting in

their public capacity as soldiers engaged in a civil war at the time of the alleged torts."

Defs.' Mem. at 17-18. As the Court has already found when it denied Defendants' first

motion for summary judgment, the fact finder at trial will need to resolve the question of

whether Plaintiffs' attackers were more likely than not members of Defendants' paid

security force. *See* Aug. 27, 2008 Mem. Op. at 11, Dkt. 365. The resolution of this

question, however, does not translate to Defendants' need for broad discovery of the

Indonesian government or military.

Defendants fail to show that their alleged lack of access to Plaintiffs' assailants "actually prejudice[s their] ability to mount a defense." *See Dean*, 55 F.3d at 662. As noted by the Court in its opinion denying summary judgment, Defendants do not "dispute that the injuries . . . suffered by Plaintiffs [occurred and] were caused by members of the Indonesian military." Aug. 27, 2008 Mem. Op. at 8-9, Dkt. 365. Defendants have information regarding the deployments of their own security forces.

**REDACTED**

Thus, particularly without any showing from Defendants to the contrary, any additional evidence regarding the "deployment status" of Plaintiffs' attackers is reasonably deemed merely cumulative.

Moreover, Plaintiffs tie their assailants to Defendants and their paid security force primarily by virtue of the soldiers' use of the Exxon complex, vehicles, or other property in the perpetration of their offenses, statements of the soldiers referencing their ties to Defendants and the Exxon complex, and the soldiers' and the attacks' immediate and close proximity to the Exxon complex, and not primarily by the soldiers' names or descriptions. For example, several of the Plaintiffs were injured within or just outside facilities operated by EMOI. *E.g.*, Jane Doe VI (EMOI security forces shot at John Doe III as he approached Cluster II at the EMOI facility on his motorbike); John Doe VII (John Doe VII was taken inside the fence at Point A-1 of EMOI's facilities and beaten);

Jane Doe V (EMOI's security personnel accosted John Doe I and took him to a post near

Point A of EMOI's facilities). It is unlikely that each individual soldier can be identified

and located, even when his name is known. Thus, there is no reasonably-available means

of discovery, for either Plaintiffs or Defendants, of the individual soldiers. Defs.' Mem.

at 18. *See United States v. Haim*, 218 F. Supp. 922, 925-27 (S.D.N.Y. 1963) (defendants'

due process rights are not offended when witnesses abroad cannot be subpoenaed by the

court and discovery from them cannot be obtained).

Defendants make no showing to the contrary. They do not claim that they can

credibly provide positive identifications for these individual soldiers, that, if found, these

soldiers could provide favorable evidence to them, or that any evidence provided by these

soldiers could be obtained in a manner admissible and recognized by this Court – in

Indonesia, witnesses cannot be compelled to provide oral testimony under oath. *See*

*Oscar Gruss & Son v. Lumbermens Mutual Casualty Co.,* 41 F.R.D. 279, 283 (S.D.N.Y.

1966) (denying request for letters rogatory to Switzerland, where, as in Indonesia,

witnesses cannot be compelled to provide oral testimony under oath, because such

abrogated access to evidence would not serve the search for truth).

Pursuant to Plaintiffs' discovery plan, Defendants will have the opportunity to

depose Plaintiffs and may probe and attempt to discredit the articulated nexus between

Plaintiffs' attackers and themselves. Under the circumstances, this is a reasonable means

of discovery regarding Plaintiffs' identification of their attackers as members of Exxon's

paid security force and does not impinge on Indonesian sovereignty.

Defendants also claim that the fact finder will need to determine whether "these

soldiers were acting in their public capacity as soldiers engaged in a civil war at the time

of the alleged torts." Defs.' Mem. at 18. This, however, does not pose an appreciably

different question than the nexus issue discussed above. Exxon security personnel were

"dedicated exclusively to providing security for [EMOI's] operations;" "they did 'not

perform a broader role with respect to military activities within the region.'" Aug. 27,

2008 Mem. Op. at 14, Dkt. 365. Thus, if Plaintiffs prove that their assailants were

employed by Defendants, they effectively disprove that they were serving "the general

maintenance of law and order in Aceh."

**REDACTED**

Exxon's attempt to apply a local District of Columbia Municipal Regulation

discussing the requirements for Metropolitan Police Department ("MPD") Officers is

unpersuasive. This regulation provides that MPD officers are not absolved of their duty

to "tak[e] proper police action in any matter coming to their attention requiring that

action" even in their off-duty hours. *See* D.C. Mun. Regs. title 6A § 200.4 (2007). It has

been interpreted to negate liability of private employers of off-duty officers when those

officers are exercising their arrest powers, powers that may only be conferred by the

government. *See Lande v. Menage Ltd. P'ship*, 702 A.2d 1259 (D.C. 1997). This

---

[16]   The fact that Defendants may not have specified the need for, ordered, authorized
or even condemned heavy-handed violence by its paid forces is of no moment. The
relevant inquiry is whether such acts were "not unexpected in view of the duties of the
servant." *Johnson v. Weinberg*, 434 A.2d 404, 408 (D.C. 1981). A broad spectrum of
tortuous activity, including sexual assault by a mattress deliveryman, has been found to
meet this threshold. *See Lyon v. Carey*, 533 F.2d 649, 651 (D.C. Cir. 1976); s*ee also
Harbury v. Hayden*, 522 F.3d 413, 422 (D.C. Cir. 2008) (criminal and violent conduct –
including a shooting, armed assault, and rape – may fall within the scope of employment
under D.C. law). As found by the Court, the performance of armed security easily
foresees the potential for unauthorized acts of violence. *See* Aug. 27, 2008 Mem. Op. at
16-17, Dkt. 365 (citing Exxon internal document evidencing Defendants' concern
regarding the use of deadly force by their paid military security).

REDACTED PUBLIC VERSION

regulation has no apparent applicability to the Indonesian military and Defendants cite no

authority for so extending its application.  Regardless, Exxon's own documents support

that its security forces did not participate in general police functions during their

employment. *See supra.*

In sum, "[t]he record makes it clear that any hope [Defendants have] for

favorable" evidence or testimony from the Indonesian sources they cite in their motion is

"purely speculative." *See Bardoff*, 628 A.2d at 93.  In light of Plaintiffs' great interest in

resolving this nearly eight-year-old suit, and the Court's interest in crafting appropriate

discovery parameters that effectively serve the interests of the parties and the sovereign

interests of a foreign nation, such speculative requests are plainly insufficient.

The Court can only provide the due process within its power to bestow.  For

example, in *Haim*, 218 F. Supp. 922, defendants, charged with fraudulent importing

practices, argued, similar to Defendants' argument here, that the indictment against them

must be dismissed because "information vital to their defense is outside the jurisdiction

of this court." *Id.* at 925.  The defendants pointed out that "the indictment renders them

helpless to call potential witnesses who would have knowledge of the facts in dispute . . .

the same disability faces them with respect to foreign corporate records." *Id.* at 926.

Rejecting the defendants' argument, the court held that the Constitution can only provide

those rights that "it is within the power of the federal government to provide," and

defendants' "inability to subpoena foreign based witnesses," does "not deprive [them] of

any constitutional right." *Id.* at 926-27; *cf. Societe Internationale Pour Participations

Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 212 (1958) (dismissal not

30

appropriate where foreign plaintiff was unable to comply with discovery production orders due to foreign blocking statute).

Similarly, in the instant case, this Court's ability to allow or order discovery in Indonesia beyond depositions and document discovery of Plaintiffs and EMOI is abridged by Indonesia's acquiescence or lack thereof in the process and the extremely limited rubric of discovery recognized by Indonesian courts. Pls.' Stmt. at 7, Dkt. 378. However, Plaintiffs should not be penalized with dismissal of their suit based on Defendants' likely inability to obtain discovery from the Indonesian government or individual members of its military. *See Sharon,* 599 F. Supp. at 560 ("Where a party to a litigation is denied information by a third party, the established rule is that the litigation simply proceeds without the information sought."); *see also Weaver v. Gross*, Nos. 84-1944, 84-1945, 1986 WL 2396 at *2 (D.D.C. Feb. 13, 1986). Resolution of a case pursuant to these limitations is not without precedent. In the Unocal cases, no discovery in Burma, which is ruled by a military junta, was possible. Nonetheless, the case proceeded through discovery and settled after the close of discovery just prior to trial. *See NCGUB v. Unocal, Inc.*, 176 F.R.D. 329 (C.D. Cal. 1997); *Doe I v. Unocal Corp.*, 395 F.3d 932 (9th Cir. 2001).[17]

In short, none of Exxon's claimed "critical disputed fact[s]," Defs.' Mem. at 17, *require adjudication of actions or policies of the Indonesian government as a matter of law,* and their related categories of "needed" discovery are largely unobtainable or

---

[17]    In Unocal, as in this case, the plaintiffs' theory did not require positive identifications of their assailants, but rather, proof that Unocal was legally responsible for the group of soldiers that caused plaintiffs' injuries. *Id.*

REDACTED PUBLIC VERSION

cumulative, and Defendants make no claim, let alone a "plausible" showing that the evidence they seek would be material or favorable to their defense.

### D.   Exxon's Motion for Summary Judgment Must be Denied

Exxon's motion is improperly captioned a motion for summary judgment. Exxon does not contend that there is no genuine issue as to any material fact, which is the sole basis for granting summary judgment under Federal Rule 56, but instead refers to "numerous disputed issues of fact." *E.g.*, Defs. Mem. at 15. Exxon likewise failed to file an accompanying statement of material facts as to which there is no genuine issue, as required by Local Rule 7(h). Finally, Defendants fail to provide any evidentiary basis for their motion. *See, e.g.*, *Zearley v. Ackerman*, 116 F.Supp.2d 109, 114 (D.D.C. 2000) ("On a motion for summary judgment, a party may not rest upon its pleadings or repeat allegations, but must provide affirmative evidence supporting its claim"). For these reasons, Defendants' motion for summary judgment should be denied.[18]

## III.   CONCLUSION

The Court's opinion denying Defendants summary judgment and its discussion of the facts and circumstances of this case do not present the conundrum alleged by Defendants where the Court is effectively trapped between two constitutional provisions. Neither separation-of-powers nor due process is implicated by the progression of this case through appropriate Phase II discovery and eventual trial. Defendants' arguments to the contrary should be rejected.

---

[18]   In the alternative, Defendants should be instructed to refile in compliance with the local rules. *See, e.g.*, *Fudali v. Pivotal Corp.*, No. 03-1460, 2005 WL 607880 (D.D.C. Mar. 16, 2005).

**REDACTED PUBLIC VERSION**

For the reasons stated above, this Court should deny Defendants' motion to dismiss, or for summary judgment.

Dated:  February 19, 2009

Respectfully submitted,

_____/s/ Agnieszka M. Fryszman_____
Joseph M. Sellers  (DC Bar 318410)
Agnieszka M. Fryszman  (DC Bar 459208)
Kathleen M. Konopka  (DC Bar 495257)
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave, N.W.
West Tower, Suite 500
Washington, DC 20005
Tel:  (202) 408-4600
Fax: (202) 408-4699

Terrence Collingsworth
(DC Bar 471830)
**Conrad & Scherer**
731 8th St., S.E.
Washington, DC 20003
Tel:  (202) 543-5811
Fax: (202) 347-4885

*Plaintiffs' Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of February, 2009:

▪       Plaintiffs' Opposition to Defendants' Motion to Dismiss, Or, in the Alternative, for Judgment on the Pleadings, Or for Summary Judgment and accompanying exhibit, were served on the Court and counsel of record via hand delivery; and

▪       A redacted public version of Plaintiffs' Opposition to Defendants' Motion to Dismiss, Or, in the Alternative, for Judgment on the Pleadings, Or for Summary Judgment and accompanying exhibit, was served via the Court's electronic filing system.

___/s/ Sara El Hashem___
Sara El Hashem

441413.1 1