# Exhibit 1

**No. 07-81**

# In the Supreme Court of the United States

EXXON MOBIL CORP., ET AL., PETITIONERS

*v.*

JOHN DOE, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

PAUL D. CLEMENT
  *Solicitor General
    Counsel of Record*
GREGORY G. KATSAS
  *Acting Assistant Attorney
  General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
DOUGLAS HALLWARD-DRIEMEIER
  *Assistant to the Solicitor
  General*
DOUGLAS N. LETTER
ROBERT M. LOEB
MELISSA N. PATTERSON
  *Attorneys*
  *Department of Justice
  Washington, D.C. 20530-0001
  (202) 514-2217*

JOHN B. BELLINGER, III
  *Legal Adviser
  Department of State
  Washington, D.C. 20520*

**QUESTION PRESENTED**

Whether a district court's denial of a private defendant's motion to dismiss state-law tort claims on the ground that the litigation will interfere with the Nation's foreign relations is immediately appealable under the collateral order doctrine.

**TABLE OF CONTENTS**

Page

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**TABLE OF AUTHORITIES**

Cases:

*Abney* v. *United States*, 431 U.S. 651 (1977)  . . . . . . . . . . 11

*Banco Nacional de Cuba* v. *Sabatino,* 376 U.S. 398
   (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Allstate Ins. Co.* v. *Hague*, 449 U.S. 302 (1981)  . . . . . . . . . 16

*American Ins. Ass'n* v. *Garamendi,* 539 U.S. 396
   (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*BMW of N. Am., Inc.* v. *Gore*, 517 U.S. 559 (1996)  . . . . . . 16

*Cheney* v. *United States District Court for D.C.*, 542
   U.S. 367 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20

*Cohen* v. *Beneficial Indus. Loan Corp.,* 337 U.S. 541
   (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Coopers & Lybrand* v. *Livesay*, 437 U.S. 463 (1978) . . . . . . 6

*Crosby* v. *NFTC*, 530 U.S. 363 (2000)  . . . . . . . . . . . . . . . . 16

*Digital Equip. Corp.* v. *Desktop Direct, Inc.*, 511 U.S.
   863 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Healy* v. *Beer Inst.*, 491 U.S. 324 (1989) . . . . . . . . . . . . . . 16

*Helstocki* v. *Meanor*, 442 U.S. 500 (1979) . . . . . . . . . . . . . 11

*Hines* v. *Davidowitz*, 312 U.S. 52 (1941) . . . . . . . . . . . . . . 17

*Japan Line, Ltd.* v. *County of L.A.*, 441 U.S. 434
   (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mitchell* v. *Forsyth*, 472 U.S. 511 (1985) . . . . . . . . . . . . . . 11

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr.*
   *Corp.*, 460 U.S. 1 (1983)  . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV

Cases—Continued:                                                    Page

*Nixon* v. *Fitzgerald*, 457 U.S. 731 (1982) . . . . . . . . . . . . . 11

*Osborn* v. *Haley*, 549 U.S. 225 (2007) . . . . . . . . . . . . . . . . 11

*Phillips Petroleum Co.* v. *Shutts,* 472 U.S. 797 (1985) . . . 16

*Puerto Rico Aqueduct & Sewer Auth.* v. *Metcalf &*
    *Eddy, Inc.*, 506 U.S. 139 (1993) . . . . . . . . . . . . . . . . . . 9, 11

*Quackenbush* v. *Allstate Ins. Co.*, 517 U.S. 706 (1996) . . . 15

*Republic of Argentina* v. *Weltover, Inc.*, 504 U.S. 607
    (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Republic of Austria* v. *Altmann*, 541 U.S. 677
    (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 18

*Republic of Peru, In re*, 318 U.S. 578 (1943) . . . . . . . . . . 12

*767 Third Ave. Assocs.* v. *Consulate Gen. of Socialist*
    *Fed. Republic of Yugoslavia*, 218 F.3d 152 (2d Cir.
    2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sosa* v. *Alvarez-Machain*, 542 U.S. 692 (2004) . 3, 13, 17, 18

*South African Apartheid Litig., In re*, 346 F. Supp.
    2d 538 (S.D. N.Y. 2004), aff 'd in part, vacated in
    part, and remanded, 504 F.3d 254 (2d Cir. 2007),
    aff'd under 28 U.S.C. 2109, No. 07-919 (May 12,
    2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Tenet* v. *Doe*, 544 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . 12

*Thomas* v. *Washington Gas Light Co.*, 448 U.S. 261
    (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Totten* v. *United States*, 92 U.S. 105 (1875) . . . . . . . . . . . 12

*Will* v. *Hallock*, 546 U.S. 345 (2006) . . . . . . . . . . 6, 9, 10, 11

*Zschernig* v. *Miller*, 389 U.S. 429 (1968) . . . . . . . . . . . . . . 16

V

Constitution and statutes:                                    Page

U.S. Const.:
   Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   Amend. XI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Alien Tort Statute, 28 U.S.C. 1350 . . . . . . . . . . . . . . . . . . . 1
Federal Advisory Committee Act, 5 U.S. 3(2) . . . . . . . . . . 13
Foreign Sovereign Immunities Act of 1976, 28 U.S.C.
   1605(a) (Supp. V 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Torture Victims Protection Act of 1991, 28 U.S.C.
   1350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
28 U.S.C. 1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

# In the Supreme Court of the United States

No. 07-81

EXXON MOBIL CORP., ET AL., PETITIONERS

*v.*

JOHN DOE, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

This brief is submitted in response to the order of this Court inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

## STATEMENT

This case concerns the application of the collateral order doctrine of appellate review to a district court order declining to dismiss state-law tort claims on the basis of a private defendant's assertion that the litigation could interfere with the United States' foreign relations.

1. Petitioners are corporations that operate a natural gas extraction and processing facility in the Aceh province of Indonesia pursuant to a contract with the Indonesian government. Respondents are eleven Indonesian villagers from Aceh who brought suit under the Alien Tort Statute (ATS), 28 U.S.C. 1350, the Torture Victims Protection Act

(1)

2

(TVPA), 28 U.S.C. 1350 note, and common law tort princi-
ples, alleging that petitioners' security forces (at least some
of whom were members of the Indonesian military) had
committed murder, torture, sexual assault, battery, false
imprisonment, and other torts.

a. After petitioners filed a motion to dismiss the com-
plaint as presenting nonjusticiable political questions, the
district court solicited the views of the State Department as
to whether adjudication of respondents' claims would inter-
fere with the United States' conduct of foreign policy but
did not request the views of the Department on the legal
issues before the court. The United States' July 2002 state-
ment of interest attached a letter from the State Depart-
ment (see Pet. App. 133a-138a), which stated at the outset
that "adjudication of this lawsuit at this time would in fact
risk a potentially serious adverse impact on significant in-
terests of the United States, including interests related
directly to the on-going struggle against international ter-
rorism." *Id.* at 133a. The letter further stated that adjudi-
cation "may also diminish our ability to work with the Gov-
ernment of Indonesia (GOI) on a variety of important pro-
grams, including efforts to promote human rights in Indo-
nesia." *Ibid.*

At the same time, the letter stated that the Depart-
ment's views were "necessarily predictive and contingent
on how the case might unfold in the course of litigation,"
depending on such factors as "the nature, extent, and intru-
siveness of discovery" and "the degree to which the case
might directly implicate matters of great sensitivity to the
Government of Indonesia and call for judicial pronounce-
ments on the official actions of the GOI with respect to the
conduct of its military activities in Aceh." Pet. App. 134a &
n.1. The State Department raised particular concern that
"adjudication of this case will be perceived in Indonesia as

3

a U.S. court trying the [Government of Indonesia] for its conduct of a civil war in Aceh," *id.* at 134a, and undermine Indonesia's stability by deterring foreign investment, thereby depriving the Indonesian Government of financial resources, *id.* at 136a-137a.

b. A year later, in July 2003, the United States filed a supplemental statement of interest addressing legal arguments relating to the defendants' motion to dismiss, arguing that the ATS did not permit the court to infer a cause of action, especially for conduct occurring in a foreign country. Pet. App. 141a-163a. The statement of interest referred to the foreign policy concerns that had been articulated in the government's earlier filing and informed the court that "[t]hose concerns can be avoided by holding, as the United States contends, that the ATS does not create an independent right of action." *Id.* at 142a. The supplemental statement noted in particular the government's concern that ATS claims such as respondents' "involve our courts in deciding suits between foreigners regarding events that occurred within the borders of other nations, and in the exercise of foreign governmental authority." *Id.* at 157a.

2. In October 2005, after this Court issued its opinion addressing the ATS in *Sosa* v. *Alvarez-Machain*, 542 U.S. 692 (2004), the district court ruled on petitioners' motion to dismiss. In its discussion, the court specifically addressed the United States' statements of interest, noting both the government's concern that the litigation risks a "potentially serious adverse impact" on the Nation's foreign relations and the fact that State Department's assessment was "necessarily predictive and contingent" on such questions as the extent of discovery and whether adjudication of the suit would require "judicial pronouncements on the official actions of the [Government of Indonesia] with respect to its military activities in Aceh." Pet. App. 50a (quoting July

4

2002 statement of interest). The district court's order dismissed all of respondents' claims under the ATS and TVPA as well as all of their claims against PT Arun LNG Co. (PT Arun), "an entity that is 55% owned by Indonesia's state-owned oil and gas company." *Id.* at 52a-61a.

To the extent that respondents based their ATS claims on an aiding-and-abetting theory of liability, the district court rejected that theory for the same reasons articulated by the district court in *In re South African Apartheid Litigation*, 346 F. Supp. 2d 538, 549-551 (S.D.N.Y. 2004), aff'd in part, vacated in part, and remanded, 504 F.3d 254 (2d Cir. 2007), aff'd under 28 U.S.C. 2109, No. 07-919 (May 12, 2008). In particular, the district court pointed to "'the admonition in *Sosa* that Congress should be deferred to with respect to innovative interpretations' of the Alien Tort Statute" and "the collateral consequences and possible foreign relations repercussions that would result from allowing courts in this country to hear civil suits for the aiding and abetting of violations of international norms across the globe." Pet. App. 53a (quoting *South African Apartheid Litig.*, 346 F. Supp. 2d at 550-551). The district court further concluded that adjudicating respondents' ATS claims based on allegations regarding genocide and crimes against humanity would require the court to "evaluate the policy or practice of [a] foreign state" and that "assessing whether Exxon is liable for these international law violations would be an impermissible intrusion in Indonesia's internal affairs." *Id.* at 55a. The district court held that respondents' other ATS and TVPA claims also failed. *Id.* at 54a, 55a-59a.

In addition, the district court dismissed as "nonjusticiable" all claims against defendant PT Arun because of the risk that adjudication of such claims would interfere with the internal affairs of Indonesia and disrupt relations between the United States and Indonesia. Pet. App. 61a.

5

The court rejected, however, petitioners' assertion that the complaint was nonjusticiable in its entirety and denied petitioners' motion to dismiss the state-law tort claims against the remaining defendants. *Ibid.* The court summarized its ruling as having tailored respondents' claims "to a narrower question:  did U.S. corporations in their effort to secure their pipeline in Indonesia violate U.S. state tort law?" *Id.* at 63a. The court expressed the view that "[l]itigation and discovery on this issue, if conducted with care, should alleviate the State Department's concerns about interfering with Indonesia's sovereign prerogatives." *Ibid.*

Although the district court declined to dismiss the suit in its entirety, the court stressed that the remaining state-law claims would be allowed to proceed, "with the proviso" that "the parties are to tread cautiously." Pet. App. 61a. In particular, discovery was to be "conducted in such a manner so as to avoid intrusion into Indonesian sovereignty" and would remain under the court's "firm control." *Ibid.* The United States had, in July 2005, before the district court's ruling on the motion to dismiss, raised a specific objection to the broad discovery sought by respondents, informing the court that "[t]he proposed discovery plan triggers the concerns set forth in the State Department letter of July 2002, which remain valid today," *id.* at 183a. In an order dated May 3, 2006, the district court specifically referred to those concerns and explained that the court would address them by "avoid[ing] discovery in Indonesia." *Id.* at 87a. The court further declined to require respondents to search for, review, and prepare a log of responsive documents located in Indonesia. *Id.* at 88a.

3. Petitioners appealed from the district court's interlocutory order denying their motion to dismiss the entire complaint as nonjusticiable. Petitioners argued that the denial of their motion to dismiss was immediately appeal-

6

able under the collateral order doctrine.  In the alternative, petitioners sought a writ of mandamus directing the district court to dismiss the remaining claims.

The court of appeals dismissed petitioners' appeal for lack of jurisdiction, and a majority of the panel concluded that petitioners had not satisfied the requirements for mandamus.  Pet. App. 3a-22a.  The court of appeals acknowledged that the district court's ruling satisfied the first two requirements of the collateral order doctrine: that the order "conclusively determine the disputed question" and that it "resolve an important issue completely separate from the merits of the action."  *Id.* at 8a-9a (quoting *Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 468 (1978)).  The court found that the appeal faltered on the third requirement, that the "order in question will be 'effectively unreviewable on appeal from final judgment.'" *Id.* at 10a (quoting *Coopers & Lybrand*, 437 U.S. at 468).  To satisfy that element, it is not enough that the defendant claims a "right to avoid trial"; rather, the "'interest in avoiding trial' must be buttressed by 'some particular value of a high order.'" *Id.* at 11a (quoting *Will* v. *Hallock*, 546 U.S. 345, 352 (2006)).  The court noted that "*Will* did refer to the separation of powers as a 'value of a high order,'" but reasoned that *Will* "does not support the broad principle" asserted by petitioners "that all district court orders that reject separation of powers defenses are immediately appealable under the collateral order doctrine." *Id.* at 12a.  Reviewing this Court's decisions, the court of appeals observed that in all the cases in which separation-of-powers concerns had been held to satisfy the standard for appeal under the collateral order doctrine, a claim of immunity had been involved. *Id.* at 12a-14a.

A majority of the court of appeals, with Judge Kavanaugh dissenting, also denied petitioners' alternative

7

request for a writ of mandamus.  The majority concluded that petitioner had "not established a 'clear and indisputable' right to have these claims dismissed under the political question doctrine."  Pet. App. 22a.  In reaching this conclusion, the majority emphasized the high standard for granting mandamus relief, *id.* at 16a, the qualified nature of the United States' description of the risks of the litigation (noting that it was "predictive and contingent" upon such factors as "the nature, extent, and intrusiveness of discovery"), *id.* at 17a (quoting July 2002 statement of interest), and that "the State Department ha[d] made no further request of the district court" after the district court's order and had not joined petitioners' request for mandamus in the court of appeals, *id.* at 22a.  The majority concluded that it was unnecessary to "decide what level of deference would be owed to a letter from the State Department that *unambiguously* requests that the district court dismiss a case as a non-justiciable political question," while noting that if it had misconstrued the State Department's filings, the government could clarify its position with a new filing in district court.  *Id.* at 18a.  Finally, the majority distinguished "the instant case, in which the district court allowed a common law tort suit to proceed against a private defendant," from cases raising a more direct interference with a foreign sovereign's property or independence or the Executive's conduct of foreign relations.  *Id.* at 20a-21a.

Judge Kavanaugh, while not addressing the majority's collateral order analysis, stated that he would have granted the petition for a writ of mandamus.  Pet. App. 23a-45a.  Citing *Sosa*, Judge Kavanaugh noted that the Executive Branch's views must be given "serious weight."  *Id.* at 31a-34a.  He reasoned that "the key question for purposes of mandamus (as it is for assessing justiciability) is whether the Executive Branch has reasonably explained that the

8

foreign policy interests of the United States would be adversely affected." *Id.* at 43a.  He believed that standard was satisfied by the Department's July 2002 statement of interest, which he read as having called for dismissal of respondents' lawsuit, not just for narrowing its scope to reduce foreign policy concerns. *Id.* at 39a.  Judge Kavanaugh also noted that it was "common ground" between himself and the majority that, on remand, "the District Court should dismiss the case if the State Department reasonably and unambiguously states that litigation of the state-law claims would affect U.S. foreign policy interests." *Id.* at 44a-45a.

### DISCUSSION

The district court carefully considered concerns identified by the United States in its submissions to that court. Largely on the basis of those concerns (and reaching the result the United States had advocated with respect to respondents' ATS claims), the court dismissed respondents' federal-law claims, and dismissed all claims against a defendant indirectly owned by the Indonesian government.  The court did not, however, dismiss respondents' state-law tort claims against the private defendants.  While the motion to dismiss was pending, the United States expressed concern that the extensive discovery sought by respondents would have adverse consequences for the Nation's foreign affairs. The district court responded by limiting discovery in a manner intended to avoid offending Indonesia's sovereign interests.  In light of that procedural history and the absence of a request by the United States that the case be dismissed in its entirety, the court of appeals reasonably regarded petitioners' interlocutory appeal as one from the denial of a motion to dismiss state-law tort claims based on an assertion by private defendants, not by the Executive, that the

9

litigation itself would have adverse consequences for the Nation's foreign policy interests and thus raised separation-of-powers concerns.

In those circumstances, the court of appeals' determination that the district court's refusal to dismiss respondents' state-law tort claims under the political question doctrine was not immediately appealable under the collateral order doctrine was correct and does not warrant this Court's review. There is no circuit conflict on that issue. Moreover, the court of appeals concluded that this case did not clearly involve the premise on which petitioners rest their question presented—*i.e.*, that there was a warning by the Executive that the litigation itself, even as substantially narrowed by the district court, would risk a potentially serious adverse impact on significant foreign policy interests of the United States. See Pet. i. And the majority below appeared to contemplate that appellate review may be available through mandamus relief in that situation in any event. In this case, however, petitioners have not sought review of the court of appeals' denial of mandamus relief. For those reasons, the petition for a writ of certiorari should be denied.

1. The collateral order doctrine, recognized in *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), permits immediate appeal from a "small class" of rulings that do "not conclud[e] the litigation, but conclusively resolv[e] claims of right separable from, and collateral to, rights asserted in the action." *Will* v. *Hallock*, 546 U.S. 345, 349 (2006) (internal quotation marks omitted). To be immediately appealable under the collateral order doctrine, an order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Puerto Rico Aqueduct & Sewer Auth.* v. *Metcalf & Eddy, Inc.*, 506

10

U.S. 139, 144 (1993) (internal quotation marks and citation omitted).  The Court applies "stringent" conditions on the collateral order doctrine so that it does not "overpower the substantial finality interests [28 U.S.C.] § 1291 is meant to further."  *Will*, 546 U.S. at 349-350.

In this case, the court of appeals correctly recognized that the first two criteria for a collateral order appeal were satisfied.  Pet. App. 9a.  The district court's order denying petitioners' motion to dismiss conclusively determined that respondents' state-law claims did not present a nonjusticiable political question, an important issue separate from the merits of those state-law claims.  *Ibid.*  The court of appeals held, however, that the district court's order failed to satisfy the third prong of the test—that it be effectively unreviewable after final judgment in the litigation.  *Id.* at 10a.

There is no doubt that a political question claim can be reviewed in an appeal from final judgment.  It is equally true that in some cases much, if not all, of the value of a political question defense may be lost if discovery and trial take place.  But it does not follow that the third *Cohen* factor is satisfied in every case in which a political question defense is raised.  In recent cases, this Court has stressed that not every "claim of right to prevail without trial" satisfies the third element.  *Will*, 546 U.S. at 351.  Rather, the determination whether a particular type of order qualifies for immediate appeal requires "a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement."  *Digital Equip. Corp.* v. *Desktop Direct, Inc.*, 511 U.S. 863, 878-879 (1994).  Among the types of orders that have been held to qualify are those denying a motion to dismiss on the ground of a constitutional right to be free from the burdens of litigation, such as the right of non-consenting States under the Elev-

11

enth Amendment to be free from trial, *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 142-147, a criminal defendant's right under the Fifth Amendment not to be put twice in jeopardy, *Abney* v. *United States*, 431 U.S. 651, 660 (1977), and a Member of Congress's right under the Speech or Debate Clause to be free from the burden of defending himself in court, *Helstoski* v. *Meanor*, 442 U.S. 500, 508 (1979).

Beyond instances in which the Constitution itself confers a right not to be subjected to litigation, the Court has recognized other circumstances in which "a trial * * * would imperil a substantial public interest" and delaying appeal until after trial would "effectively" deny protection for that substantial interest. *Will*, 546 U.S. at 353. Many of the instances in which the Court has recognized such a "substantial public interest" are ones in which the litigation itself implicates concerns relating to the "separation of powers." *Id.* at 352. For example, *Nixon* v. *Fitzgerald*, 457 U.S. 731 (1982), upheld immediate appeal from the denial of a claim of absolute Presidential immunity because failure to honor a meritorious assertion of such a right would compromise "compelling public ends," *id.* at 758, "rooted in * * * the separation of powers," *id.* at 749. The Court has similarly recognized that the threat of litigation against lower level government officials for conduct taken within the scope of their employment threatens the efficiency and initiative of the Executive Branch sufficiently to warrant immediate appeal from the denial of a motion to dismiss on grounds of qualified immunity, *Mitchell* v. *Forsyth*, 472 U.S. 511, 530 (1985), or under the Westfall Act, *Osborn* v. *Haley*, 549 U.S. 225 (2007).

In the foreign affairs context, the Court has exercised jurisdiction over collateral order appeals by foreign sovereigns asserting immunity from suit. See, *e.g.*, *Republic of*

12

*Austria* v. *Altmann*, 541 U.S. 677, 681 (2004); *Republic of Argentina* v. *Weltover, Inc.*, 504 U.S. 607, 610 (1992). Such suits, which could undermine the Executive's' conduct of the Nation's relations with foreign states, plainly satisfy the collateral order doctrine's third criterion. As the Court recognized in *Ex Parte Republic of Peru*, 318 U.S. 578 (1943), which came to the Court on a petition for a writ of mandamus, "it is of public importance that the action of the political arm of the Government" in recognizing a foreign state's claim of immunity "be promptly recognized, and that the delay and inconvenience of a prolonged litigation be avoided by prompt termination of the proceedings in the district court." *Id.* at 587.

2. To the extent that the court of appeals' opinion suggests that separation-of-powers considerations could support the right to avoid the burdens of trial and therefore warrant collateral order appeal only in cases involving a claim of immunity, Pet. App. 12a, the United States does not agree. Although the Court has not addressed the precise issue of the availability of a collateral order appeal in other separation-of-powers contexts, it has recognized, in cases not involving claims of "immunity," that substantial public interests would be frustrated if a defense based on the separation of powers was not vindicated at the very outset of the litigation. The rule announced in *Totten* v. *United States*, 92 U.S. 105 (1875), that courts will not entertain a breach of contract claim based on an asserted agreement between the government and the plaintiff to conduct espionage is one example of a defense rooted in the separation of powers that would satisfy the third prong of the collateral order doctrine. As the Court observed in *Tenet* v. *Doe*, 544 U.S. 1 (2005), in which the district court certified its order for immediate appeal under 28 U.S.C. 1292(b), *Tenet*, 544 U.S. at 6, the *Totten* bar was "designed not

13

merely to defeat the asserted claims, but to preclude judicial inquiry" into the subject at all, and therefore the defense could be decided even before resolving questions of subject matter jurisdiction, *id.* at 7 n.4.

In *Cheney* v. *United States District Court for D.C.*, 542 U.S. 367 (2004), the Court likewise recognized the importance of resolving, at the outset of the litigation, the question whether the President's energy task force, composed of cabinet-level officers and chaired by the Vice President, was subject to the public disclosure requirements of the Federal Advisory Committee Act, 5 U.S.C. App. 3(2), at 2. There, although the Court reserved the question whether the Vice President could appeal as of right under the collateral order doctrine, *Cheney*, 542 U.S. at 378-379, it observed in the context of granting the petition for a writ of mandamus that "[a]ccepted mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities," *id.* at 382.

In the foreign affairs context, the Court has recognized that the views of the Executive Branch with regard to the implications of certain litigation for the Nation's foreign affairs would be entitled to deference. See *Sosa*, 542 U.S. at 733 n.21; *Altmann*, 541 U.S. at 702. When the Executive Branch determines that the very pendency of litigation in United States courts involving the conduct of foreign governments will frustrate the Nation's foreign policy goals, "there is a strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy." *Sosa*, 542 at 733 n.21. See *Altmann*, 541 U.S. at 702 (State Department's "opinion on the implications of exercising jurisdiction over *particular* [foreign government defendants] in connection with *their* alleged conduct  *  *  *  might well be entitled to deference

14

as the considered judgment of the Executive on a particular question of foreign policy"). When the Executive explicitly seeks dismissal because the *pendency* of the litigation will adversely affect foreign relations, a district court's refusal to defer to that determination would satisfy the third prong of the collateral order doctrine. For, in that situation, "a trial * * * would imperil a substantial public interest," such that delaying appellate review until after such a trial would "effectively" deny relief, *Will*, 546 U.S. at 353. In that case, but not in all cases in which a political question defense is raised, the very import of the defense will be lost if the suit proceeds to discovery and trial. Thus, the court of appeals was incorrect to the extent it suggested that only when an immunity from suit is asserted can separation-of-powers values support a collateral order appeal.

3. While the court of appeals was in error to that extent, it is not true that every case raising a political question defense merits collateral order review. In a case like this, when the United States identifies the manner in which further proceedings in the district court will interfere with foreign policy interests, an order designed to limit proceedings to that extent, but not going further, need not be automatically appealable. In those circumstances, the standards for mandamus review, as a complement to the Section 1292(b) certification process, are sufficient to allow appellate review when necessary. Accordingly, review is not warranted in this case to consider when separation-of-powers considerations warrant a collateral order appeal outside the context of a claim of immunity.

a. There is no circuit conflict on the question presented. The only appellate decision that petitioners cite as contrary to that of the court below is *767 Third Avenue Associates* v. *Consulate Gen. of Socialist Federal Republic of Yugoslavia*, 218 F.3d 152 (2d Cir. 2000). There is no conflict be-

15

tween the decisions.  In *767 Third Avenue Associates*, the
district court had *upheld* the defendant's assertion that the
political question doctrine rendered the case nonjusticiable,
*id.* at 158, and, on that basis, entered an indefinite stay of
the proceedings, *id.* at 159.  The court of appeals addressed
the question whether the entry of an indefinite stay, as op-
posed to an outright dismissal, deprived the court of appel-
late jurisdiction.  It held, following this Court's decisions in
*Quackenbush* v. *Allstate Insurance Co.*, 517 U.S. 706
(1996), and *Moses H. Cone Memorial Hospital* v. *Mercury
Construction Corp.*, 460 U.S. 1 (1983), that the stay order
was appealable.  *767 Third Ave. Assocs.*, 218 F.3d at 159.
The court did not confront the question presented here,
whether an order *denying* a motion to dismiss on political
question grounds would satisfy the third element of the
collateral order doctrine.

   b.  This case is not in any event a suitable vehicle for
resolving the question petitioners raise.  Petitioners frame
the question presented (Pet. i) as whether collateral order
appeal is available when the "lawsuit challenges the activi-
ties of a foreign government, and the Executive warns that
the litigation itself, and not just the effects of a final judg-
ment, would risk a potentially serious adverse impact on
significant foreign policy interests of the United States."
The court of appeals did not decide that question, however,
because it did not believe that the factual predicate of the
question as framed by petitioners was satisfied.  To the
contrary, the court rejected petitioners' assertion of a "con-
flict between the views of the State Department and those
of the district court."  Pet. App. 17a.

   The court of appeals emphasized that the case, as it
came before that court, was not one that challenged the
conduct of the Indonesian government.  Thus, the court
pointed out that the district court had "dismissed [respon-

16

dents'] claims against a natural gas company that was par-
tially owned by the Indonesian government," Pet. App. 17a,
which the district court recognized as posing a "risk of in-
terfering in Indonesian affairs," *id.* at 61a. Moreover, the
United States had said that its "concerns can be avoided by
holding * * * that the ATS does not create an independ-
ent right of action," *id.* at 142a, and the district court re-
sponded by granting petitioners' motion to dismiss the ATS
and TVPA claims, which were premised on alleged viola-
tions of international law by the Indonesian government, *id.*
at 52a-60a. The court of appeals therefore regarded respon-
dents' case as having been narrowed to one involving state
"tort claims by private plaintiffs against a private corpora-
tion." *Id.* at 20a.[1]

---

[1] Of course, state-law tort claims may, under appropriate circum-
stances, be subject to dismissal as nonjusticiable. State-law claims,
such as those asserted here, may also be subject to dismissal based
upon federal preemption. Projection by a State of its legal norms onto
conduct that occurs wholly outside the State is subject to constitutional
limitations, even within the domestic context. See, *e.g.*, *BMW of N.
Am., Inc.* v. *Gore*, 517 U.S. 559, 572 (1996) (Due Process Clause); *Healy*
v. *Beer Inst.*, 491 U.S. 324, 336 (1989) (Commerce Clause); *Thomas* v.
*Washington Gas Light Co.*, 448 U.S. 261, 272 (1980) (plurality) (Full
Faith and Credit Clause). Those limitations also restrict a court's abil-
ity to apply the forum state's law to extraterritorial conduct pursuant
to choice-of-law analysis. See *Phillips Petroleum Co.* v. *Shutts*, 472
U.S. 797, 816-817 (1985); *Allstate Ins. Co.* v. *Hague*, 449 U.S. 302, 308
(1981) (plurality). Projection by a State of its legal norms onto conduct
that took place within the sovereign territory of a foreign nation pre-
sents even more serious problems of extraterritoriality, disuniformity,
and interference with United States foreign policy, as this Court has
recognized in cases involving preemption of conflicting state law. See
*Crosby* v. *NFTC*, 530 U.S. 363, 384-386 (2000); *American Ins. Ass'n* v.
*Garamendi*, 539 U.S. 396, 420-425 (2003); *Japan Line, Ltd.* v. *County
of L.A.*, 441 U.S. 434, 447-449 (1979); *Zschernig* v. *Miller*, 389 U.S. 429,

17

For similar reasons, the court of appeals did not regard petitioners' appeal as one in which the Executive Branch had warned that the litigation itself would interfere with the Nation's foreign policy interests. The Executive had not "requested the dismissal of the action against Exxon" in its entirety, and the majority noted that the United States "did not intervene" or otherwise participate in the court of appeals in support of petitioners' appeal or its petition for mandamus. Pet. App. 22a. No decision of this Court or of any other court of appeals supports the availability of a collateral order appeal by a private party in these circumstances.

Petitioners place considerable emphasis on this Court's recognition in *Sosa* and *Altmann* of the important concerns relating to the separation-of-powers that are at stake in litigation that implicates the Nation's foreign affairs. See Pet. 15-26. But as a result of the district court's rulings narrowing the scope of respondents' suit, the case now presents neither of the particular situations discussed in *Sosa* and *Altmann*. In *Sosa*, the Court addressed the deference owed to the Executive Branch by the courts in exercising their federal-common-law-making authority under the ATS with respect to claims alleging violations of international law. 542 U.S. at 725-733. Here, the district court dismissed respondents' claims under the ATS, as the

---

434-435 (1968); *Hines* v. *Davidowitz*, 312 U.S. 52, 65-68, 73-74 (1941). In such situations, where litigation implicates the United States' foreign relations, the unique federal interests at stake may require application of federal, rather than state, law. See *Banco Nacional de Cuba* v. *Sabbatino*, 376 U.S. 398, 424-427 (1964).

In his dissent, Judge Kavanaugh referred to the possibility that plaintiffs' state-law claims were preempted. Pet. App. 37a. The court of appeals did not resolve that issue however, *ibid.*, and the issue is not presented for this Court's consideration at this time.

18

United States had requested, as well as those under the TVPA. Pet. App. 52a-60a, 163a.[2]  In *Altmann*, the Court addressed the question whether a suit against a foreign government, although within the terms of one of the exceptions to immunity in the Foreign Sovereign Immunities Act, 28 U.S.C. 1605(a) (Supp. V 2005), might nonetheless present a sufficient threat to the Nation's foreign policy interests that it should be dismissed.  *Altmann*, 541 U.S. at 701-702.  Here, respondents' claims against PT Arun, an Indonesian corporation that is majority owned by Indonesia's state-owned oil and gas company, were dismissed by the district court out of concern that "[a]djudicating the liability of an entity owned by the Indonesian government would create a significant risk of interfering in Indonesian affairs."  Pet. App. 61a.  The petition's emphasis on the troublesome nature of claims brought under the ATS and TVPA, Pet. 18-20, 23-26, and suits against foreign states, Pet. 15-17, 21-22, ignores those rulings by the district court.  And in so doing, it asks the Court to resolve a question that the court of appeals did not believe was presented, and that it therefore could not have purported to answer.

---

[2]  At times, the petition appears to conflate the question whether a case is nonjusticiable under the political question doctrine and whether the court should recognize a cause of action under the ATS.  See, *e.g.*, Pet. 26.  The two inquiries, while possibly overlapping in some cases, are distinct.  As this Court explained in *Sosa*, there is only a "narrow class of international norms" upon which claims may be brought under the ATS, and "the potential implications for the foreign relations of the United States of recognizing such causes should make courts particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs."  542 U.S. at 727, 729.  Under *Sosa*, foreign policy concerns can support the conclusion that a cause of action should not be recognized under the ATS regardless of whether the case presents nonjusticiable political questions.

19

c. Petitioners do not ask this Court to review the court of appeals' denial of their request, in the alternative, for a writ of mandamus, see Pet. i, but the court of appeals' analysis of that issue offers a further reason why review is not warranted.  The majority's discussion of the mandamus issue indicates that, if it had believed the circumstances of this case to be as petitioners paint them, petitioners would have been granted the relief they seek, albeit under the procedural heading of mandamus rather than appeal as of right.  The majority declined to grant mandamus on the basis of "the [State Department] letter before us in the record" because that letter did not "*unambiguously* request[]" that the district court dismiss [the] case as a non-justiciable political question."  Pet. App. 18a.  Moreover, the majority noted that "if we have misinterpreted this letter, or if the State Department has additional concerns about this litigation, it is free to file further letters or briefs with the district court expressing its views."  *Ibid.*  See *id.* at 44a-45a (Kavanaugh, J., dissenting) (noting "common ground" with the majority that the district court should dismiss the remaining claims if the State Department makes a further submission that "unambiguously states that litigation of the state-law claims would affect U.S. foreign policy interests").

The court of appeals' indication that relief *may well* have been afforded (under the rubric of mandamus) had the United States explicitly sought dismissal, and the court's acknowledgment that the government could make further filings on remand to clarify its views about this case, lessen the need for this Court's review at this time of the question whether appellate review is available under the collateral order doctrine when litigation would interfere with the Nation's foreign policy interests, especially as assessed by the Executive Branch.  This Court's references in *Sosa* and *Altmann* to the deference due Executive Branch state-

20

ments of interest are of relatively recent vintage, and there have been no decisions other than the case at bar that have considered the intersection of those decisions and the collateral order doctrine.  Thus, further consideration of the issue by the courts of appeals could be of assistance to the Court.  In the meantime, the apparent availability of mandamus relief from the D.C. Circuit in appropriate cases will help avoid significant interference with our relations with foreign governments.  *Cf. Cheney*, 542 U.S. at 378-379 (declining to resolve question of collateral order appellate jurisdiction in light of holding that mandamus relief was appropriate).

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

PAUL D. CLEMENT
*Solicitor General*

GREGORY G. KATSAS
*Acting Assistant Attorney General*

EDWIN S. KNEEDLER
*Deputy Solicitor General*

DOUGLAS HALLWARD-DRIEMEIER
*Assistant to the Solicitor General*

JOHN B. BELLINGER, III
*Legal Adviser*
  *Department of State*

DOUGLAS N. LETTER
ROBERT M. LOEB
MELISSA N. PATTERSON
*Attorneys*

MAY 2008