UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE I, *et al.*<br><br>      Plaintiffs,<br>  v.<br><br>Exxon Mobil Corporation, *et al.*<br><br>      Defendants. | Civil Case No. 01-1357 (RCL/AK) |
| JOHN DOE VIII, *et al.*<br><br>      Plaintiffs,<br>  v.<br><br>Exxon Mobil Corporation, *et al.*<br><br>      Defendants. | Civil Case No. 07-1022 (RCL/AK) |

**DECLARATION OF GARY F. BELL**

1. My name is Gary F. Bell. My qualifications to render this opinion are indicated in my curriculum vitae (see Attachment A) and can be summarized as follows. I am an advocate qualified to practice law in the Province of Quebec, Canada. I have obtained a degree in civil law at McGill University where I have also obtained a degree in common law. The law of obligations (including delictual liability or torts) taught at McGill in the civil law degree is in the Roman / French tradition and the civil codes of France and Quebec are studied at length. The same legal tradition applies to the law of obligations in Indonesia – the Indonesian Civil Code, an old Dutch colonial code still in force in Indonesia, is for the most part, a translation in Dutch with a few modifications of the French Code Napoléon with which I am very familiar. In fact, in most matters relevant for this opinion, the provisions of the Civil Code of Indonesia and the provisions of the Civil Code of France are the same, almost word for word (though in translation).

2. In the last 18 years I have conducted research on Indonesian law generally and Indonesian law of obligations in particular in the course of my employment at the National University of Singapore. I have written law review articles on Indonesian law, and have recently published a chapter giving a general introduction to the Indonesian Legal System, see: Gary F Bell, "Indonesia: The challenges of legal diversity and law reform" in Ann Black and Gary F Bell (ed.), Law and Legal Institutions of Asia – Traditions, Adaptations and Innovations (Cambridge University Press: 2011). I have also written legal opinions on the Indonesian law of obligations for a number of Indonesian and non-Indonesian firms and have been consulted by various Singapore law firms about Indonesian law. I am however not licensed to practice law in Indonesia.

3. I have been teaching the civil law of obligations in the French tradition since 1994, first at the Faculty of Law of McGill and since 1996 at the Faculty of Law of the National University of Singapore. I have taught courses on the civil law of obligations as well as introductory comparative law courses that included lectures on the civil law of obligations in the French tradition. In 2001, I started teaching a course entitled "Introduction to Indonesian Law" at the National University of Singapore. In this course I also teach the Indonesian law of obligations.

4. French is my mother tongue and although my Indonesian needs improvement, I can read Indonesian legal texts.

5. I have consulted Indonesian and French laws, cases and law books before writing this opinion. I have consulted Indonesian and English translations of the Indonesian Civil Code as well as the original French version of the French Civil Code which in these matters almost always uses the same wording. As is the case for the vast majority of Indonesian lawyers, I do not read or speak Dutch and I have therefore relied on Indonesian translations of relevant Dutch sources. When reading the civil code in Indonesian, I used the highly

regarded, and most relied upon translation made by Prof. R. Subekti and R. Tjitrosudibio, Kitab Undang-Undang Hukum Perdata (Jakarta: PT Pradnya Paramita, 2003). The English translation is usually my own.

6. Although I have been retained by the Plaintiffs, I understand that my duty is to the Court. I have formed my opinion independently and am not stating any views that are not my own.

7. Before writing this opinion I have read the following:

    a. Supplemental Declaration of Frans Hendra Winarta, filed on Oct. 30, 2013;
    b. Declaration of Judge Bismar Siregar, filed on Oct. 1, 2001;
    c. Declaration of Frans Hendra Winarta, filed on Dec. 9, 2005;
    d. Declaration of Robert B. Hornick, filed Feb. 3, 2006;
    e. Supplemental Declaration of Robert B. Hornick, filed March 1, 2006;
    f. Declaration of Abdul Harris Semendawai, filed on Dec. 13, 2005 and filed on Nov. 2, 2007; and
    g. Declaration of Johnson Panjaitan, filed on Feb. 16, 2006.

8. The general principle of delictual (tort) liability is found at article 1365 of the Indonesian Civil Code:

> Article 1365: Any unlawful act that causes damage to another person obliges the person by whose fault the damage was caused to compensate such loss.

9. The Indonesian Civil Code also provides for liability for negligence.

> Article 1366: An individual shall be responsible, not only for the damage which he has caused by his act, but also for that which was caused by his negligence or carelessness.

10. While there are some specific provisions on defamation, on damages caused by things, and as we will see below on vicarious liability, most civil liability ("torts") falls under the two general articles above (1365 and 1366).

11. I have read the declaration of Defendants' expert, Judge Bismar Siregar. Judge Bismar Siregar, at paragraph 3 of his Declaration dated 27 September 2001 stated the following:

> The plaintiffs' claims in the case at hand for wrongful death, theft by coercion, conversion, assault, battery, false imprisonment, arbitrary arrest and detention, kidnapping, torture, violence against women, negligence, recklessness, intentional and negligent infliction of emotional distress and negligent [in] hiring and supervision are, in their essence if not exactly in the

form known to the common law, *fully cognizable in Indonesia*. [emphasis added]

12. I agree with this statement by Judge Siregar, Defendants' expert.

13. I am of the opinion that what the common law would call "negligent supervision" and "negligent hiring" of an employer are sources of liability under Articles 1365 and 1366 quoted above.

14. I have also been asked to opine on the scope of Article 1367 of the Indonesian Civil Code (which provides for vicarious liability in delict i.e. in tort, including for employers and principals) and on whether Plaintiffs' claims of vicarious liability are cognizable under Indonesian law.

15. Paragraph 1 of Article 1367 of the Indonesian Civil Code provides for vicarious delictual liability (in common law terminology: vicarious liability in tort) as follows (in translation):

> Article 1367, para. 1:  A person is responsible not only for the damages caused by his own deed but also for damage caused by the deed of persons under his responsibility or by property under his supervision.

16. The article then provides three specific examples of vicarious liability: paragraph 2 provides for the vicarious liability of parents and guardians for the deeds of minors, paragraph 3 provides for the vicarious liability of employers and principals for the deeds of employees and representatives hired to manage their affairs and paragraph 4 provides for the vicarious liability of teachers and artisan for the deeds of pupils and apprentices.  Paragraph 3 on the vicarious liability of employers and of those who hire others to manage their affaires reads as follows:

> Article 1367, para. 3:  Employers and those who appoint other persons to manage their affairs [principals] are responsible for the damage caused by their employees and representatives in the performance of the duties for which they were engaged.

17. Therefore a plaintiff must prove the existence of a 'fault' or 'wrongful act' on the part of the employees or representatives. However, according to J Satrio, the leading author on the Indonesian law of obligations (which includes delictual liability or tort), it is not necessary

for a fault or wrongful act to exist on the part of the employer or principal. [See J Satrio, *Hukum Perikatan: Perikatan yang Lahir dari Undang-Undang, Part II* (PT Citra Aditya Bakti: Bandung, 1994), at 78]. Satrio cited a case in the Supreme Court of the Netherlands regarding the application of Article 1403 of the Dutch civil code (which is identical to Article 1367), where the court stated that an employer is responsible for the damages caused by the wrongful act of his employee, even if there exist no fault or wrongful act on the part of the employer [Satrio, *ibid,* at 82].

18. Paragraph 5 of Article 1367 provides that the responsibilities of parents, guardians, teachers and artisans over the fault or wrongful behavior of their children, students and apprentices ends if they can prove that they could not have prevented the fault or wrongful act from occurring.

> Article 1367, para. 5:  The above-mentioned responsibility shall cease, if the parents, guardians, teachers and artisans can prove that the deed for which they could be held responsible, could not have been prevented.

19. Satrio highlights the fact that paragraph 5 of Article 1367 does not extend the possibility of an exemption of liability to employers and principals – the paragraph does not mention them.  Unlike parents and guardians (Article 1367 paragraph 2) and teachers and foremen (Article 1367 paragraph 4), employers and principals are distinctively missing from this paragraph. This means that even if an employer or principal can prove that he could not have prevented the wrongful act of the employees or representatives, the employer or principal will still bear the responsibility of any damages caused by that wrongful act. Satrio went even further and stated that employers are responsible for the damages caused by the wrongful act of its employees in performing their duties, even if the employees acted without the authorization or against the order of the employers [Satrio, *ibid,* at 79].

20. Thus, under Article 1367(3), it is not necessary to show the fault or wrongful act on the part of the employer or principal. It is enough for a plaintiff to show the fault or wrongful act of the employees or representatives in performing their duties, that the employees or

representatives were engaged by the employer or principal at the time the wrongful act was performed, and that such fault or wrongful act caused damages to a third party.

21. I understand that Defendants have also argued that Plaintiffs must name the alleged employees of Defendants, the unnamed soldiers described in Plaintiffs' Complaint, as additional defendants and must also show that these soldiers were employed and instructed by Defendants at the time they attacked Plaintiffs.  I have therefore been asked to opine on whether under Indonesian law, a Plaintiff must sue both the employee/representative and the employer/principal or whether a Plaintiff can sue only the employer/principal without naming the employees or representatives.

22. As mentioned above, Article 1367(3) provides that an employer or principal is responsible for injury caused by a wrongful act of their employee or representative.  Article 1365 imposes responsibility on anyone who committed a wrongful act that caused injury to others. If more than one party is liable for an injury, each of those parties will be responsible as whole for such injury [J Satrio, *Hukum Perikatan: Perikatan yang Lahir dari Undang-Undang, Part I* (PT Citra Aditya Bakti: Bandung, 1993), at 252]. This was also the view taken by the Supreme Court of Netherlands, in the case of *Aldebaran, Supreme Court of Netherlands, 30 October 1925, reprinted in Hoetink, at 314*, as cited by Satrio, which stated that Article 1365 does not impose any limit on the responsibility of those who caused injury to others to pay damages to the injured party; and that if more than one party are liable, each of those party is wholly responsible to compensate the injury in full. If the injured party chose not to demand damages from one party, it does not free the other party from responsibility.

23. This means that when an employer is liable for the injury caused by the wrongful act of its employee, both and each of the employer and the employee are responsible to compensate for the injury. Since the employer is wholly responsible for such injury, failure to also sue

the employee who conducted the wrongful act does not free the employer from liability. So long as the plaintiff can prove the relationship between the employer and an employee, and that it was such an employee who committed a wrongful act in performing his duty and that this cause an injury to the plaintiff, then a legal claim based on Article 1367(3) is cognizable.

24. There is no legal requirement in the civil code that the employees or representatives be named as defendants.

25. This is consistent with how the very same article of the code has been interpreted in France. Article 1384 of the French civil code is the article which was translated into Dutch and is part of the Indonesian civil code today. Paragraphs 1 and 5 of that article, which are essentially identical to Article 1367 paras 1 and 3 of the Indonesian Civil Code, read as follows:

> Art. 1384 A person is responsible not only for the damages caused by his own deed but also for damage caused by the deed of persons under his responsibility or by property under his supervision
> […]
> Employers and those who appoint other persons to manage their affairs [principals] [are responsible] for the damage caused by their employees and representatives in the performance of the duties for which they were engaged.

26. In 1971, the French *Cour de Cassation*, the highest court in France, rendered a judgement on this very point. The Court reports that it was argued by the defendant that "since the person who committed the fault [the employee] was not sued as a party, it would be impossible for the Court of Cassation to find whether a fault [wrongful deed] existed and to decide whether it was imputable to an employee of [the employer]." This is essentially the argument the Defendants are making in the present case. The court rejected that argument and held that the "the liability of the employer can be sought directly by the person who suffered a damage who is not at all required to also sue the employee the fault of whom caused the damage"

27. French cases are not binding in Indonesia but this case is consistent with what Satrio has written and in my view is an accurate reflection and illustration of the substantive Indonesian law on the topic.

28. Also, as noted above, even if an employer can prove that he could not have prevented the wrongful act of the employees, the employer will still bears the responsibility of any damages caused by that wrongful act. Indeed, employers are responsible for the damages caused by the wrongful act of its employees in performing their duties, even if the employees acted without the authorization or against the order of the employers [Satrio, ibid, at 79].

29. As I have mentioned above, I have read the declaration of Defendants' expert, Judge Bismar Siregar. Judge Bismar Siregar, expert for the Defendant, at paragraph 3 of his Declaration dated 27 September 2001, stated the following:

> The plaintiffs' claims in the case at hand for wrongful death, theft by coercion, conversion, assault, battery, false imprisonment, arbitrary arrest and detention, kidnapping, torture, violence against women, negligence, recklessness, intentional and negligent infliction of emotional distress and negligent [in] hiring and supervision are, in their essence if not exactly in the form known to the common law, ***fully cognizable in Indonesia***. [emphasis added]

30. Judge Siregar in the same paragraph further stated that the Indonesian courts are empowered by the Indonesian Constitution and by Indonesian statutes to afford remedies for plaintiffs asserting such claims.

31. As mentioned above, I agree with Judge Siregar that Plaintiffs' claims are fully cognizable under Indonesian law and I further agree that intentional or negligent infliction of emotional distress is fully cognizable under Indonesian law.

32. Under Indonesian law, it is true that generally the plaintiff must prove his or her damages. Article 1365 provides compensation for damages. Under Indonesian law, a damage can be material (measurable in money) or moral (not measurable in money and therefore also

known as "immaterial"), such as pain and suffering or emotional distress. The courts recognize the difficulty in calculating the amount of compensation for moral damages, as such damages cannot be quantified or calculated from medical bills, hospital stays, operations costs and other out of pocket expenses. Nonetheless, the courts recognize that compensation can be claimed for moral damages [see Satrio, *Part I,* at 273]. Satrio cited a case in the Supreme Court of the Netherlands where the court stated that compensation for immaterial damages is proper, and should be considered in awarding compensation. The judge will have the discretion to determine the amount of such compensation (*Kreuningen – Bessem, Supreme Court of the Netherlands, 21 May 1943, reprinted at Hoetink, at 363*).

33. To the extent there is a pleading requirement regarding the specific amount of damages to be specified, that is a procedural rule.

34. As mentioned above, damages can be material or moral (immaterial). To obtain compensation for material damages, a plaintiff must prove all costs incurred or to be incurred as direct consequences of the wrongful act, this include evidence such as medical bills, hospital stays, operations costs and other out of pocket expenses. Proof of costs, however, is irrelevant to show moral damages, such as emotional distress, as it cannot be quantified in money [see also Declaration of Robert N Hornick dated 3 February 2006, paragraph 16].

35. In principle, moral damages are available for all torts: there is nothing in the code that specifically prevents the recovery of moral damages.  In fact article 1371 specifically mentions the recovery of moral damages in cases of injury or disability in addition to the material damages recoverable for the losses and expenditures caused by such injury and disability.  See article 1371 and its interpretation by Satrio [see Satrio, Part II, at 130].

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 11, 2013

_____
Gary F. Bell

# ATTACHMENT 1

# Curriculum Vitae of Gary F. Bell

*Office:*                                                                 *Home:*

Faculty of Law                                                    23 Jalan Merah Saga #05-02
National University of Singapore                      Singapore 278102
NUS- Bukit Timah Campus                             Phone:             +65 6475-4151
469G Bukit Timah Road                                  Handphone:    +65 9838-0662
Singapore 259776
Tel:        +65 6516-3635
Fax:       +65 6491-6490
E-Mail:   lawbellg@nus.edu.sg


## Date and place of birth, nationality and residence

Born in Quebec City, Canada on 6 April 1962.
Canadian citizen (French Canadian).
Singapore permanent resident.


## Languages

Fluent:                          French (mother tongue) and English.
Working Knowledge:    Bahasa Indonesia


## Academic Qualifications

**Summary:**     Was trained in both the civil law tradition (mainly the French tradition) and the common law tradition (mainly Commonwealth law) at McGill University in both French and English.  Was also trained in American law at Columbia University.

1991-93   :   LL.M. (Masters in Law), Columbia University School of Law, New York, U.S.A.

1991-93   :   Full scholarship (tuition waiver, apartment and living stipend) from the Columbia Law School.

1991-93   :   Full scholarship from the Social Sciences and Humanities Research Council of Canada.

1991        :   Granted a Commonwealth Scholarship for studies at Oxford (declined).

1989-90   :   Attended and graduated from the Quebec Bar School.

| | | |
|---|---|---|
| 1985-89 | : | B.C.L. (Bachelor of Civil Law) and LL.B. (Bachelor of Laws, i.e. common law), Faculty of Law, McGill University. |
| 1985-89 | : | Wainwright Scholar (four-year scholarship renewed annually based on academic performance) Faculty of Law, McGill University. |
| 1989 | : | University Scholar (top 10% of the graduating class). |
| 1989 | : | Rosa B. Gualtieri Prize (graduating student with high academic standing and exceptional personal qualities). |
| 1981-84 | : | B. Th. (Bachelor of Theology), *Université Laval*. Took some courses on Canon Law. |
| 1981-84 | : | Air Canada Scholar. |

**Employment**

**Summary:** Was Editor-in-Chief of the *McGill Law Journal*. Clerked at the Supreme Court of Canada, taught part-time for two years at Columbia University (New York) while pursuing graduate studies, taught three years at McGill University's Faculty of Law and Institute of Comparative Law (Montréal) and has been teaching since 1996 at the National University of Singapore. Was the founding Director of the Asian Law Institute (ASLI).

2009 (Jan-May): Visiting at the Centre for Transnational Legal Studies, London.

2003 – 2008: Founding Director of the Asian Law Institute, National University of Singapore.

2002 to now: Associate Professor, Faculty of Law, National University of Singapore.

1999 to 2001: Assistant Professor, Faculty of Law, National University of Singapore.

1997-99 : Lecturer, Faculty of Law National University of Singapore.

1996-97 : Visiting Fellow, Faculty of Law National University of Singapore.

1994-96 : Assistant Professor, Faculty of Law and Institute of Comparative Law, McGill University

1993-95 : Director of the Legal Methods Programme, Faculty of Law, McGill University.

| | | |
|---|---|---|
| 1993-94 | : | Boulton Fellow, Faculty of Law, McGill University. |
| 1991-93 | : | Associate in Law, Columbia University School of Law (teaching Legal Research and Writing to first-year law students). |
| 1990-91 | : | Law clerk to Justice Stevenson of the Supreme Court of Canada. |
| 1989-90 | : | Assistant Director of the Legal Methods Programme, Faculty of Law, McGill University. |
| 1987-89 | : | Worked three summers at the law firm Ogilvy Renault, one of the largest and oldest law firms in Montreal. |
| 1988-89 | : | Editor-in-Chief of the *McGill Law Journal*. |

**Memberships and responsibilities**

| | |
|---|---|
| 2001 to 2008 2011 to now: | Member of the Search Committee (faculty hiring committee) of the Faculty of Law, National University of Singapore. |
| 2005 – now: | Member of the Board of Trustees of the Institute of South East Asian Studies (ISEAS) (appointed by the Singapore Ministry of Education). |
| 2007 – 2008: | Member of the Management Board of the Asia Research Institute (ARI) at the National University of Singapore. |
| 2003 – now: | Member of the Regional Panel of Arbitrators of the Singapore International Arbitration Centre (SIAC) |
| 1999 to 2007: | Member of the Executive Committee of the Graduate Studies Division of the Faculty of Law, National University of Singapore. |
| 2002 to 2004 | Coordinator, Indonesia Study Group, Asia Research Institute, National University of Singapore. |
| 1997 to 2005: | Member of the Editorial Board of the Singapore Journal of International and Comparative Law. |

1991 to now: Member of the *Barreau du Québec* (Bar of the Province of Quebec) and of the *Barreau de Montréal* (Montreal section of the Bar).

1981-84   : Elected member of the Ancienne-Lorette School Board (primary schools) and the Chauveau Regional School Board (secondary schools).  Represented my constituency to the school boards and administer all the primary and secondary schools for a population of about 200,000 people.

**Activities in Indonesia relating to the law of obligations**

1996 – now: I have spent numerous study leaves and sabbatical leaves in Indonesia to conduct research on Indonesian law.  I have spent a total of more than 3 years on such leaves in Indonesia.

1997 to now: Research in Indonesia on the Indonesian law of obligations in many occasions financed by the National University of Singapore.

1993 – 2001: Language training in Indonesia (six stays).


**Courses taught**

**At NUS, presently teaches:**

Comparative Legal Traditions
Introduction to Indonesian Law
International and Comparative Law of Sale
International Commercial Arbitration


**At NUS have taught:**

Civil Law Tradition
Common Law II
Comparative Law I and II
Legal Methods
International Business Transactions


**At McGill:**

Law of Obligations
Domestic and International Documentary Sales
Legal Traditions
Legal Research, Writing and Mooting

**Publications relating to Indonesia**

CHAPTERS IN BOOK

Accepted for publication:

"Codification and Decodification: the State of the Civil and Commercial Codes in Indonesia". Thematic Congress of the International Academy of Comparative Law on Codification (Invited paper) (24 ‑ 26 May 2012, National Taiwan University, Taipei, Taiwan).

Published:

"Indonesia: The Challenges of Legal Diversity and Law Reform" in Ann Black and Gary F. Bell eds., *Law and Legal Institutions of Asia ‑‑ Traditions, adaptations and innovations*, Sydney: Cambridge University Press, 2011 at 262‑ 298.

"The Importance of Developing Private Law Doctrine - Restructuring Debts in Indonesia Without a Developed Civil Law Doctrine of Novation" in Tim Lindsey, ed., *Indonesia: Law and Society*, 2nd ed. Foundation Press, 2007.

"Division of Powers between the Executive and Parliament", in IDEA International, ed. *Comparative Perspectives in Continuing Dialogues towards Constitutional Reform in Indonesia - Report of a Conference held in Jakarta, Indonesia, October 2001*, Jakarta: Idea International, 2002.


ARTICLES IN JOURNAL

"Multiculturalism in Law Is Legal Pluralism? Lessons from Indonesia, Singapore and Canada". (2006) Singapore Journal of Legal Studies 315-330.

"Decentralisation in Indonesia - Theory and Practice", (2004) Jurnal Hukum Bisnis 1.

"Indonesia: The New Regional Autonomy Laws, Two Years Later", (2003) Southeast Asian Affairs, 117-131.

"Minority Rights and Regionalism in Indonesia - Will Constitutional Recognition Lead to Disintegration and Discrimination?" 5 Singapore Journal of International & Comparative Law 784-806 (2001).

"The 1945 Constitution - Constitutions do not Perform Miracles". Van Zorge Report on Indonesia - Commentary and Analysis on Indonesian Politics and Economics, III, no. 6 (2001): 4.

"The New Indonesian Laws Relating to Regional Autonomy: Good Intentions, Confusing Laws". 2 Asian-Pacific Law and Policy Journal 1 (2001).

**Other publications not related to Indonesia**

ARTICLES IN JOURNAL

"Religious Legal Pluralism Revisited – The Status of the Roman Catholic Church and Her Canon Law in Singapore" 7 Asian Journal of Comparative Law 49-84 (2012).

(With Tan Cheng Han, et al.): "Legal Education in Asia", 1 Asian Journal of Comparative Law 184-207 (2006).

"Harmonisation of Contract Law in Asia – Harmonising Regionally or Adopting Global Harmonisations – The Example of the CISG", 2005 Singapore Journal of Legal Studies 362-372 (2005)

"Why Singapore should withdraw its reservation to the United Nations Convention on Contracts for the International Sale of Goods (CISG)",  9 Singapore Year Book of International Law 55‑73 (2005).

"How the Fact of Accepting Good Faith as a General Principle of the CISG Will Bring More Uniformity",  2005-2006 Review of the Convention on Contracts for the International of Sale of Goods 3-22 (2006)

"Law and Religious Pluralism in Contemporary Asia – A Foreword",  7 Asian Journal of Comparative Law 1-4 (2013)

REVIEWS OF BOOKS

Review of Stacey Steele and Kathryn Taylor, eds. "Legal education in Asia – Globalisation, change and context", 12 Australian Journal of Asian Law 147‑155 (2010)

EDITORIAL WORK ON BOOK

Ann E. Black and Gary F Bell, eds., *Law and Legal Institutions of Asia – Traditions, Adaptations and Innovations*, Sydney: Cambridge University Press, 2011.

CHAPTERS IN BOOK

"En quête d'un droit de l'arbitrage concurrentiel: ce que le Québec pourrait apprendre de Singapour et de Hong Kong [The Search for a Competitive Arbitration Law: What Quebec Could Learn from Singapore and Hong Kong]", in Fabien Gélinas and Frédéric Bachand, eds., *D'une réforme à une autre: Regards croisés sur l'arbitrage au Québec* [From One Reform to Another: Criss-crossing look at arbitration in Quebec] at 193-220.  Montreal: Yvon Blais / Thomson Reuters, 2013.  (In French).

"Commentary on the International Arbitration Law [of Singapore]", in Eric Bersten, ed., *International Commercial Arbitration*, New York: Oxford University Press, 2012.

"Taking the Languages of the CISG Seriously", in Andrea Büchler and Markus Müller Chen, eds., *Private Law, national – global – comparative – Festschrift für Ingeborg Schwenzer zum 60. Geburtstag*, Bern, 2011: Stämpfli Verlag AG, 2011 at 143-157.

"New challenges for the uniformisation of laws: how the CISG is challenged by "Asian values" and Islamic law" in Ingeborg Schwenzer and Lisa Spagnolo, eds., *Towards Uniformity: The 2nd Annual MAA Schlechtriem CISG Conference*, International Commerce and Arbitration Series, vol. 8, ed.,  The Hague: Eleven International Publishing, 2011 at 11-29.

"Remedies for breach of contract by the buyer (Articles 61-65)" in *UN Convention on the International Sales of Goods (CISG)*, ed. Stefan Kröll, Loukas Mistelis, Pilar Perales Viscasillas,  Oxford: Hart Publishing, 2011 at 854-877.

"Introduction"  in Ann Black and Gary F Bell, eds., *Law and Legal Institutions of Asia – Traditions, adaptations and innovations*, Sydney: Cambridge University Press, 2011 at 1-23.

"Comparative Legal Traditions" in Tang Hang Wu and Michael Hor, eds., *Reading Law in Singapore*, Hong Kong, Singapore: LexisNexis, 2009.

"Comparative Law: The U.S. Legal Tradition Among the Legal Traditions of the World" in Jane Ginsburg, *Legal methods: cases and materials*, 3d ed.,  St. Paul, Minn.: Foundation Press, Thomson/West, 2008

"Uniformity through Persuasive International Authorities — Does Stare Decisis really Hinder the Uniform Interpretation of the CISG?" in Camilla B. Andersen and Ulrich G. Schroeter, eds., *Sharing International Commercial Law across National Boundaries -- Festschrift for Albert H. Kritzer on the occasion of his Eightieth Birthday*, London: Wildy, Simmonds & Hill, 2008.

"D. Comparative Law:  The U.S. Legal Tradition Among the Legal Traditions of the World" in Jane Ginsburg, *Legal Methods – Cases and Materials*, 2 ed., New York: Foundation Press, 2003 at 65-72.

With V V Ramraj, M Y M Hor and McGill Law Journal, "Parts on Singapore Law", in *Canadian Guide to Uniform Legal Citation*, 5th ed. Carswell, 2002.

"World-Class Law Schools will Teach (and are already teaching) the Laws of the World" in ed. Kevin Tan, ed., *Change and Continuity: 40 Years of the Law Faculty*, Singapore: Times Editions, 1999 at 174-177.

"Chapter 1: The Singapore Legal System in Context – Whither the Concept of the National Legal System?" in Kevin YL Tan, ed., *The Singapore Legal System*, 2nd ed., Singapore: Singapore University Press, 1999 at 1-25.

Bell, G F, "The U.S. Legal Tradition in Western Legal Systems (Section D of "General Background")" in Jane C Ginsburg, *Legal Methods – Cases and Materials*, Westbury, NY: Foundation Press, 1996 at 19-25.