UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOE I, *et al*.,

               Plaintiffs,

    v.

EXXON MOBIL CORPORATION, *et al*.,

               Defendants.

Civil Case No. 01-1357 (RCL/AK)

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL DISCOVERY

Agnieszka M. Fryszman
DC Bar No. 459208
**Cohen Milstein Sellers &
Toll PLLC**
1100 New York Ave., N.W.
Suite 500, East Tower
Washington, DC  20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699

Terrence P. Collingsworth
D.C. Bar No. 471830
**Conrad & Scherer LLP**
1301 Connecticut Ave., N.W.
Suite 350
Washington, DC  20036
Tel:  (202) 543-581
Fax:  (866) 803-1125

Paul L. Hoffman
Catherine Sweetser
**Schonbrun, DeSimone,
Seplow, Harris,
Hoffman & Harrison LLP**
723 Ocean Front Walk
Venice, CA  90291
Tel: (310) 396-0731
Fax: (310) 399-7040

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

STANDARD OF REVIEW ........................................................................................................ 5

BACKGROUND ........................................................................................................................ 6

    A.    Exxon's Real Quarrel Is With the Limitations on Discovery that Exxon Itself Sought ................................................................................................... 6

    B.    Exxon's Assertions Regarding Discovery Are Factually Inaccurate and Misleading ..................................................................................................... 7

    C.    Exxon Misrepresents the History of the Depositions, Passports and Visas: Plaintiffs Have Repeatedly Suggested Depositions and Exxon Has Refused, Except to Insist Plaintiffs Come to the United States, Which They Cannot Do Without Visas ............................................................... 11

    D.    Exxon's Discovery Requests Are Not Relevant to the Merits of this Action ....... 17

ARGUMENT ........................................................................................................................... 18

    A.    Plaintiffs' Retainer Agreements Are Not Relevant. ............................................. 19

    B.    Plaintiffs' Passports, Visa Applications and Other Documents Related to Plaintiffs' Efforts to Come to the United States for Depositions Are Not Relevant. ........................................................................................................ 21

        1.    Identification documents ............................................................................ 22

        2.    Passports and visa documents ................................................................... 23

    C.    Documents Regarding Third-Party Funding Are Not Relevant ........................... 25

    D.    Sanctions, Including Dismissal or Preclusion of Plaintiffs' Testimony, Are Not Appropriate ............................................................................................. 27

    E.    Costs Are Inappropriate or Should Be Imposed Against Exxon .......................... 29

CONCLUSION ........................................................................................................................ 31

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Barton v. RCI, LLC,
   2013 WL 1338235 (D.N.J. Apr. 1, 2013) ........................................................................21

Brady v. Lauderhill Auto Investors I, LLC,
   2010 WL 4135329 (S.D. Fla. Oct. 19, 2010) ...................................................................19

Burlington Ins. Co. v. Okie Dokie, Inc.,
   368 F. Supp. 2d 83 (D.D.C. 2005) .....................................................................................5

Cobell v. Norton,
   213 F.R.D. 43 (D.D.C. 2003) ...........................................................................................28

Cobell v. Norton,
   226 F.R.D. 67 (D.D.C. 2005) ...........................................................................................31

Crawford-El v. Britton,
   523 U.S. 574 (1998) ............................................................................................................5

Devon IT, Inc. v. IBM Corp.,
   2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) ..................................................................26

Doe VIII v. Exxon Mobil Corp.,
   527 F. App'x 7 (D.C. Cir. 2013) ......................................................................................11

Doe VIII v. Exxon Mobil Corp.,
   654 F.3d 11 (D.C. Cir. 2011) ...........................................................................................11

Doe VIII v. Exxon Mobil Corp.,
   No. 09-7125 (D.C. Cir. Nov. 14, 2011) ...........................................................................11

El-Hadad v. United Arab Emirates,
   496 F.3d 658 (D.C. Cir. 2007) .........................................................................................28

Embassy of Fed. Republic of Nigeria v. Ugwuonye,
   292 F.R.D. 53 (D.D.C. 2013) .....................................................................................27, 29

In re Estate of Singh,
   22 Misc. 3d 288, 865 N.Y.S.2d 902 (N.Y. Sur. 2008) ....................................................25

Feulufai v. Pac. Princess P'Ship Ltd.,
   2009 WL 3789668 (D. Nev. Sept. 10, 2009) ...................................................................24

*Founding Church of Scientology of Washington D.C., Inc. v. Webster*,
  802 F.2d 1448 (D.C. Cir. 1986) .................................................................29

*In re Front Loading Washing Mach. Class Action Litig.*,
  2010 WL 3025141 (D.N.J. July 29, 2010) ...............................................21

*Gaines v. Law Office of Patenaude & Felix, A.P.C.*,
  No. 3:13-cv-1556, Dkt. No. 25 (S.D. Cal. May 5, 2014) .........................20

*Gaines v. Law Office of Patenaude & Felix, A.P.C.*,
  2014 WL 3894348 (S.D. Cal. June 12, 2014) ......................................20, 21

*Garcia v. Bana*,
  2012 U.S. Dist. LEXIS 87727 (N.D. Cal. Apr. 14, 2015) ........................29

*Gillen v. Kohn Law Firm S.C.*,
  2014 WL 3784488 (W.D. Wis. July 31, 2014) .....................................19, 20

*Haimdas v. Haimdas*,
  2010 WL 2342377 (E.D.N.Y. June 8, 2010) ............................................28

*Herbert v. Lando*,
  441 U.S. 153 (1979) ...................................................................................5

*Julicher v. Town of Tonawanda*,
  2008 WL 4415226 (W.D.N.Y. Sept. 24, 2008) .......................................19

*Kiobel v. Royal Dutch Petroleum Co.*,
  133 S. Ct. 1659 (2013) .............................................................................11

*Lopez v. NTI, LLC*,
  748 F. Supp. 2d 471 (D. Md. 2010) .........................................................28

*Luna v. Del Monte Fresh Produce (Se.), Inc.*,
  2007 U.S. Dist. LEXIS 36893 (N.D. Ga. May 18, 2007) ........................25

*McBride v. Infinity Prop. & Cas. Corp.*,
  2014 WL 1218912 (M.D. Pa. Mar. 24, 2014) .........................................24

*Miller UK Ltd. v. Caterpillar, Inc.*,
  17 F. Supp. 3d 711 (N.D. Ill. 2014) .........................................................26

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A.*,
  292 F.R.D. 19 (D.D.C. 2013) ...................................................................28

*Piazza v. First Am. Title Ins. Co.*,
  2007 WL 4287469 (D. Conn. Dec. 5, 2007) ...........................................21

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ........................................................................................31

*Pizel v. Monaco Coach Corp.*,
    224 F.R.D. 642 (N.D. Ind. 2004) ....................................................................19

*Pub. Citizen Health Research Grp. v. Young*,
    909 F.2d 546 (D.C. Cir. 1990) ........................................................................31

*Ran v. Infinite Energy*,
    2009 WL 5031343 (N.D. Fla. Dec. 14, 2009) ................................................24

*Stanich v. Travelers Indem. Co.*,
    259 F.R.D. 294 (N.D. Ohio 2009) ..................................................................21

*State Farm Mut. Ins. Co. v. Polichela*,
    2009 WL 2170183 (E.D. Mich. July 20, 2009) ..............................................24

*Stephens v. 1199 SEIU*,
    2011 WL 2940490 (E.D.N.Y. July 19, 2011) ................................................29

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
    235 F.R.D. 521 (D.D.C. 2006) (Lamberth, J.) ................................................6

*United States v. Kellogg Brown & Root Servs., Inc.*,
    284 F.R.D. 22 (D.D.C. 2012) (Lamberth, C.J.) ..............................................5

*United States v. Microsoft Corp.*,
    56 F.3d 1448 (D.C. Cir. 1995) ........................................................................23

*United States v. Naegele*,
    468 F. Supp. 2d 165 (D.D.C. 2007) ................................................................21

*United States v. Philip Morris USA, Inc.*,
    2004 WL 3253681 (D.D.C. Aug. 30, 2004) ....................................................28

**STATUTES**

8 U.S.C. § 1184(b) ....................................................................................................15

**OTHER AUTHORITIES**

8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2288 (3d ed. 2014) ........................31

*Aceh's Sharia Police*, BBC News (Feb. 2, 2010), http://news.bbc.co.uk/2/hi/asia-
    pacific/8491195.stm ........................................................................................10

Fed. R. Civ. P.

11 ................................................................................................................2, 30

30(b)(6) ................................................................................................................7

26(b)(1) ................................................................................................................5

37(a) ................................................................................................6, 29, 30

37(b) ................................................................................................................27

43(a) ................................................................................................................28

Palash Ghosh, *Sukarno, Suharto, Megawati: Why do Some Indonesians Only Have One Name?* Int'l Business Times (Sept. 19, 2013) ................................8, 9

Yenni Kwok, *Gang Rape then Caning: Welcome to Aceh's Bizarre Moral Crusade*, TIME Magazine (May 8, 2014) ................................................................10

*Indonesia:  Aceh's New Islamic Laws Violate Rights*, Human Rights Watch (Oct. 2, 2014) ................................................................................................................10

9 U.S. Dep't of State, State, *Foreign Affairs Manual App'x F* ................................8, 9

9 U.S. Dep't of State, *Foreign Affairs Manual 41* ................................................15

## INTRODUCTION AND SUMMARY OF ARGUMENT

Exxon filed a 29-page "motion," but only seven of those 29 pages relate to the documents Exxon purportedly seeks. The three categories of documents sought by Exxon fall far outside the bounds of discovery permitted by the Federal Rules. Moreover, Plaintiffs' counsel have confirmed they each undertook a search and have no documents responsive to the request regarding third-party litigation funding, making that portion of the motion moot.

Exxon seeks to compel the production of retainer agreements and documents related to Plaintiffs' efforts to obtain U.S. visas, but cites no relevant authority in support of its motion. To the contrary, Exxon's limited authority confirms that the documents sought are not subject to discovery. Exxon bases its requests on speculation that counsel filed this litigation without authorization from their clients and that Plaintiffs' efforts to obtain passports and visas were a sham. Exxon is wrong. Counsel has provided Exxon two declarations under penalty of perjury refuting Exxon's accusations, as well as supporting documents including counsel's letter of support for the visa applications and the visa denial letters. Moreover, Plaintiffs offered Exxon's counsel an opportunity to review the contested documents to confirm their existence, but after scheduling an appointment, Exxon's counsel failed to turn up. Exxon's motion to compel discovery to "investigate" these issues is therefore unwarranted and should be denied. Neither Exxon's cases nor Plaintiffs own research have identified any authority permitting such a far-reaching fishing expedition into documents wholly untethered to the claims and defenses in an action.

Particularly galling are Exxon's accusations regarding the Plaintiffs' efforts to obtain visas. Plaintiffs invested a considerable amount of time and expense to renew their passports, apply for visas, and travel to Jakarta—over a thousand miles from their homes—for their interviews with the United States Embassy. When Plaintiffs asked Exxon for a letter to support

their visa applications and confirm the need for depositions in the United States, Exxon replied: "As to your request for a letter from ExxonMobil, it is not our job to assist Plaintiffs with entry to the United States."[1]  Plaintiffs have also repeatedly offered to make themselves available outside the United States for prompt deposition, but Exxon has refused, demonstrating that Defendants are more interested in mudslinging than in a genuine resolution on the merits.

The remainder and vast majority of Exxon's filing is a transparent effort to muddy the waters and besmirch the Plaintiffs by hurling misleading and unsubstantiated accusations about the Protective Order in place in this case, the conduct of discovery, and two of the counsel who have entered an appearance in this action.

Exxon complains about the "cloak of anonymity," Mot. to Compel Prod. of Disc. 1, Dkt. 484 (Apr. 2, 2014) ("Mot."), but the Order permitting Plaintiffs to proceed under pseudonyms was entered by former Chief Judge Hogan and repeatedly re-affirmed by this Court.  *See* Order, Dkt. 2 (June 19, 2001); Order, Dkt. 200 (Feb. 7, 2007); Mem. Order, Dkt. 220 (July 13, 2007). Although Exxon has sought to lift the pseudonym order, its efforts have been rejected.  *E.g.*, Order, Dkt. 200; Mem. Order, Dkt. 220.  Indeed, when this Court denied Exxon's last motion to reconsider the use of pseudonyms in this action, this Court simultaneously ordered counsel to accompany any future motions with a certificate attesting he or she has re-read Federal Rule of Civil Procedure 11 within ten days before the filing.  Mem. Order, Dkt. 220 at 6 (denying Exxon's motion and imposing certification requirement).[2]  Instead of moving yet again to lift the pseudonym order, Exxon choses to hurl mud, accusing counsel of, among other things, failing to consult with their clients (which is untrue) and complaining that Plaintiffs have not appeared in

---

[1] *See* Email from Jaren Janghorbani to Agnieszka Fryszman (Feb. 17, 2015, 12:15 PM), attached as Ex. 20 to the Decl. of Alex Young K. Oh ("Oh Decl."), Dkt. 485 (Apr. 2, 2015).

[2] Exxon failed to attach the required certification to its motion.

person to substantiate their concerns for their physical safety (which is not required).[3]  Mot. at 3.

Exxon's accusations are meritless. Moreover, the pseudonym order is not at issue in this motion.

But given the well-documented history of abuse—including killings and torture—visited upon

human rights defenders in Indonesia,[4] Exxon's relentless criticism of the pseudonym order is

troubling.

Exxon also complains about the discovery produced so far, but Exxon's real quarrel is

with the limitations on discovery sought by Exxon in 2006 and agreed to by the Court.  The

merits remained "beyond the reach of [] discovery," Mot. at 1, because the Court limited

discovery to threshold issues and precluded discovery in Indonesia, as Defendants themselves

explained in 2008, not because of anything Plaintiffs have or have not done.  *See* St. of Defs.'

Pursuant to the Court's Aug. 28, 2008 Order 2, Dkt 377 (Sept. 12, 2008).  Indeed, Exxon

continues to shield its own documents in Indonesia, out of the reach of Plaintiffs' document

requests, in reliance on the Court's past prohibitions.  A bar on discovery in Indonesia impacts

both parties.  Plaintiffs respectfully suggest that a status conference would be appropriate on

whether documents in Indonesia, including EMOI's corporate documents, should be subject to

---

[3] Indeed, a review of the docket would have revealed, for example, the declaration filed by Derek Baxter confirming that he personally traveled to Indonesia where he met with the clients and confirmed that they fear violent retaliation and rely on the Court's grant of anonymous status for their safety.  Opp. to Defs.' Mot. to Lift Pre-Filing Provisional Pseudonym Order, Ex. C, Dkt. 179 (Sept. 28, 2006).

[4] *See, e.g.*, Supp. Decl. of Ross Clarke ¶ 7, Dkt. 446-1 (Feb. 18, 2014) (observing that "human rights activists and other individuals seeking to combat human rights violations in Indonesia are often monitored, harassed, and threatened with violence"); Amnesty Int'l, The State of the World's Human Rights 2014/15, at 183 (2015) (documenting instances in which Indonesian military tortured or killed individuals seeking accountability for abuses); U.S. Dep't of State, Country Reports on Human Rights Practices for 2013, Indonesia 23 (2014) ("[G]overment officials, . . . particularly in Papua and Aceh, subjected [human rights] organizations to monitoring, harassment, and interference as well as threats and intimidation.").

discovery.  An even-handed decision that applies to both sides, rather than one-sided complaining and misleading misrepresentations, is the reasonable path forward.

Moreover, Exxon's document requests relate not to the merits of this action, but are a fishing expedition into ethical violations that have not been committed.  Exxon's complaints that Plaintiffs "resist" discovery, Mot. at 5, are meritless.  Plaintiffs have already informed Exxon, in response to Exxon's improper, intrusive, and harassing requests that they have not improperly paid witnesses, do not have third-party funders who are improperly paying witnesses, did not file litigation without authorization from their clients, and so forth.  The remainder and vast majority of Exxon's filing consists of personal attacks upon the character and alleged conduct in another case, not this case, of Terry Collingsworth, and to a lesser extent, Paul Hoffman, two of Plaintiffs' counsel.  No allegations have been raised against the majority of Plaintiffs' counsel, including the attorneys at Cohen Milstein Sellers & Toll or Professor Charles Ogletree.  Terry Collingsworth and Paul Hoffman reply to the misleading and unwarranted accusations in the attached declarations based on their own personal knowledge and under penalty of perjury.  Ex. 1, Decl. of Paul Hoffman ("Hoffman Decl."); Ex. 2, Decl. of Terrence Collingsworth.  For example, Exxon dredges up allegations regarding other attorneys in the *Unocal* case.  But Mr. Hoffman won an award for his work on the *Unocal* case, which was settled ten years ago. Hoffman Decl. ¶ 8.  In another example, Exxon accuses Mr. Hoffman of misinforming a court, Mot. at 2, but Mr. Hoffman was never counsel in the case Exxon cites.  Hoffman Decl. ¶ 5 (remarks quoted by Exxon "do not pertain to me. . . . Indeed, there is no document or information anywhere that could possibly have justified Exxon's lawyers in attributing the Court's statements made in that case to me.").  An additional declaration rebutting Exxon's allegations regarding the *Unocal* case has been submitted by Marco Simons, the legal director of

4

EarthRights International, who was also involved in the case.  Ex. 3, Declaration of Marco

Simons ("Simons Decl.").[5]

Exxon's motion should be denied.

## STANDARD OF REVIEW

"Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly" to

ensure that discovery remains within proper bounds.  *Crawford-El v. Britton*, 523 U.S. 574, 598

(1998).  In particular, Rule 26 limits discovery to matters "relevant to any party's claim or

defense."  Fed. R. Civ. P. 26(b)(1).  "[T]he requirement of Rule 26(b)(1) that the material sought

in discovery be 'relevant' should be firmly applied."  *Herbert v. Lando*, 441 U.S. 153, 177

(1979).  A motion to compel is therefore properly denied where a party seeks irrelevant

information.  *See, e.g.*, *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 37

(D.D.C. 2012) (Lamberth, C.J.) ("[A]lthough Courts should read relevance broadly, they should

not endorse fishing expeditions, discovery abuse and inordinate expense involved in overbroad

and far-ranging discovery requests.") (internal quotation marks and citation omitted); *Burlington*

*Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D.D.C. 2005) ("relevancy does not

---

[5] For example, in response to Exxon's charge that plaintiffs in that case fabricated evidence about the death of an infant, Mr. Simons states that EarthRights International interviewed and obtained declarations from two witnesses present in the refugee camp when the mother in question arrived with her injured child and witnessed the child's death from her injuries.  Simons Decl. ¶ 14; *see also id.* ¶ 9 (noting unrebutted testimony that baby had died).  Mr. Simons further states that the attack was connected to the pipeline, not the railway as suggested by one of the newspaper articles Exxon cites, by two other lines of evidence.  *Id.* ¶ 13.  Finally, Mr. Simons points out the Unocal declined to use the news articles at the depositions of the mother when any inconsistencies might have been cleared up.  *Id.* ¶ 9.

Exxon's reckless statement, Mot. at 16, that the allegations were "proved" "in fact" to be false is not borne out by the facts, as a reasonable inquiry would have revealed.

Defendants' unsubstantiated claim that Plaintiffs' counsel have committed misconduct in other cases, without providing any information that would allow Plaintiffs an opportunity to rebut those allegations, *see* Mot. at 17 n.17, is improper and should be struck.

encompass discovery of information with 'no conceivable bearing on the case'") (citation omitted).

A party may not move for an order compelling discovery until after the "movant has in good faith conferred or attempted to confer with the person or party." Fed. R. Civ. P. 37(a)(1). This requirement is a "prerequisite" to any Rule 37 motion to compel, and a motion to compel should be denied where a party fails to confer in good faith. *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529-30 (D.D.C. 2006) (Lamberth, J.).

## BACKGROUND

### A. Exxon's Real Quarrel Is With the Limitations on Discovery that Exxon Itself Sought

At ExxonMobil's request, "Phase One" discovery in this case was limited to:

(1)    Personal jurisdiction over EMOI; and

(2)    Acts or omissions in the United States by the U.S.-based Defendants or regarding knowledge on the part of U.S.-based Defendants of tortious conduct by any Defendant in Indonesia.

Order 1, Dkt. 158 (May 3, 2006). Given that discovery was limited to knowledge of the U.S.-based Defendants, acts or omissions in the United States, and personal jurisdiction over EMOI, it can hardly come as a surprise that most of the responsive documents came from Defendants. Plaintiffs, villagers living in Indonesia, possessed very few documents concerning personal jurisdiction the United States over EMOI or the knowledge of U.S-based corporate officers.

The Court also excluded from discovery documents located in Indonesia. Order 2, Dkt. 158. As a result, Exxon has refused to produce documents located in Indonesia, although those documents could plainly be imaged and transmitted to the United States. Most of Plaintiffs' documents, unsurprisingly, are also located in Indonesia, although Plaintiffs have transmitted some documents, such as the identification cards already produced to Exxon, to the United

States.  Indeed, even the identification cards sought by Exxon were outside the scope of "Phase One" discovery because they did not concern personal jurisdiction over EMOI or acts or omissions in the U.S., but Plaintiffs produced them nonetheless—a courtesy Exxon now criticizes.  Mot. at 5.

Exxon has interpreted this limitation so strictly that it sought to limit its corporate F.R.C.P. 30(b)(6) deposition testimony to "information physically residing outside Indonesia," although it is hard to imagine how information, once it is known by corporate officers, "resides" anywhere other than where the officers are located.  Ex. 4, Letter from Brent Landau, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Oct. 3, 2007).

Because Exxon has refused to produce documents located in Indonesia, Plaintiffs similarly do not have the documents they wish to have.  For example, Plaintiffs have been unable to obtain lists of the military personnel assigned to or employed by Exxon, so they cannot match the names or unit numbers Plaintiffs provided against any documents.  Plaintiffs also have not been able to obtain photographs or identification cards of the security personnel that they can show to their clients.[6]

B.    **Exxon's Assertions Regarding Discovery Are Factually Inaccurate and Misleading**

Exxon's assertions regarding discovery are inaccurate and misleading.  Exxon asserts that Plaintiffs interrogatory responses "fail[ed] to include ***any*** specifics about the identities of the Indonesian soldiers allegedly involved in the attacks on Plaintiffs."  Mot. at 4 (emphasis added).

---

[6] Moreover, contrary to Exxon's assertion that it has "fully satisfied Plaintiffs' further requests," Mot. at 5, Exxon knows it has refused to produce several categories of documents relevant to Plaintiffs' claims because the parties have satisfied their meet and confer obligations on Plaintiffs' requests.  Plaintiffs will shortly file a motion to compel documents from Exxon.

That is not so.  To the contrary, Plaintiffs identified their attackers by name and unit number, when that information was known, or by location:



Pls. Supplemental Resps. to ExxonMobil Oil Corp.'s First Set of Interrogs. (July 31, 2007) (Oh Decl., Ex. 4).

Defendants' representations concerning Plaintiffs' names similarly lack merit.  Mot. at 21.  Indeed, given EMOI's lengthy history of operations in Indonesia, Defendants' lack of familiarity with Indonesian naming conventions comes as a surprise.  Using single-word names is prevalent in Indonesia, particularly in rural areas.  Ex. 5, Palash Ghosh, *Sukarno, Suharto, Megawati: Why do Some Indonesians Only Have One Name?* Int'l Business Times (Sept. 19, 2013) (noting that "the average citizen will have only one name" and that even Indonesian Presidents Suharto and Sukarno only had one name each).  At times, Indonesians may be called by a patronymic name to indicate a family relationship, but such a name is not the equivalent of a Western surname.  *Id.*  These names are not "family names" shared by other members of the family.  *Id.*  For example, Indonesian politician Megawati used the "surname" Sukarnoputri, which simply means "daughter of Sukarno."  *Id.*  Other Indonesians may use the term "bin" or "binti" followed by a parent's name, or just the parent's name, to similarly create a patronymic when appropriate.  Ex. 6, 9 U.S. Dep't of State, *Foreign Affairs Manual App'x F* 2-3, 17-18

(instructing State Department officials to include the patronymic as a surname if provided).  As a result, "it is quite common for Indonesians to have their names depicted differently in different kinds of records" and "there have always been discrepancies and variations between the names found in official documents and the names used in daily life."  Ex. 5, Ghosh, *Sukarno, Suharto, Megawati: Why do Some Indonesians Only Have One Name?* Int'l Business Times (Sept. 19, 2013).  Many of the differences between the names on Plaintiffs' visa denial documents, attached as Exhibit 22 to the Oh Decl., and the names provided to Defendants are due to the use of these unofficial patronymics.

The other inconsistencies result from variations in transliteration.  Depending on the transliteration system, a single name of Arabic origin can be spelled with many different variations.  Ex. 6, 9 U.S. Dep't of State, *Foreign Affairs Manual App'x F* 2-4.  For instance, the name ███████████████████████████ but both spellings clearly refer to the same name. *Compare* Aff. of Terry Collingsworth in Support of Ex Parte Mot. to Proceed with Commencement of Action Using Pseudonyms 8 (June 13, 2001) (Oh Decl., Ex. 1), *with* Pls.' Visa Denial Forms (Oh Decl., Ex. 22).  Exxon's argument is frivolous.

Exxon also cites a dispute over one Plaintiff, Jane Doe I.  Mot. at 4.  The parties had a dispute over the extent to which and with what safeguards Exxon's investigators should be able to identify Jane Doe I as a sexual assault survivor, describe the allegations in detail to other villagers, and inquire about Jane Doe's sexual history in her conservative Muslim community, given that Jane Doe has not told any local villagers of the nature of the assault and there was no witness to the attack inside her home other than her toddler child.  Ex. 7, Email from Brent Landau, Pls.' Counsel, to Nikhil Singhvi, Def. Counsel (Aug. 8, 2007, 1:46 PM).  Plaintiffs believed that without proper safeguards, Exxon's proposed conduct would put Jane Doe at

significant risk in her community.  *See, e.g.,* Yenni Kwok, *Gang Rape then Caning: Welcome to Aceh's Bizarre Moral Crusade*, TIME Magazine (May 8, 2014) (rape victim sentenced to public caning), http://time.com/91873/aceh-sharia-law-islam-rape-kelantan-brunei; *Indonesia:  Aceh's New Islamic Laws Violate Rights*, Human Rights Watch (Oct. 2, 2014) (sexual relations outside of marriage carries penalty of 100 lashes under Sharia criminal code), http://www.hrw.org/news/2014/10/02/indonesia-aceh-s-new-islamic-laws-violate-rights; Karishma Vaswani, *On Patrol with Aceh's Sharia Police*, BBC News (Feb. 2, 2010), http://news.bbc.co.uk/2/hi/asia-pacific/8491195.stm.  Regardless, the parties reached some resolution in 2009 and Plaintiffs provided her name and address to Exxon.  Letter from Kathleen Konopka, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Sept. 9, 2009) (Oh Dec., Ex. 8).

Exxon also asserts that the relationship between the deceased prior Plaintiffs and the substitute Plaintiffs is "impossible to verify."  Mot. at 21.  It is not.  This Court, after reviewing the documents submitted, which included identification documents and letters from the village chiefs, approved the last substitution of a wife and mother for two deceased Plaintiffs.  Mem. Order 3-4, Dkt. 220.  This Court specifically found that the family identification cards and statement letters from village authorities submitted by Plaintiffs with their motion were sufficient documentation and that Exxon's expert had agreed on the method of proof.  *Id.* at 3 (noting agreement of party experts on methods of proof).  This Court's Order casts significant doubt on Exxon's claim that the relationship between the deceased Plaintiffs and the substitutes is "impossible to verify."  Mot. at 21.  Plaintiffs are preparing the documents necessary for an additional substitution motion, and Exxon will have the opportunity, as before, to oppose Plaintiffs' motion.

Finally, Exxon's statement that Plaintiffs "resist" discovery post-remand, Mot. at 5, is simply untrue.  It is true that Plaintiffs objected to producing documents that are outside the scope of permissible discovery.  But Plaintiffs have produced relevant documents and offered to make themselves available for deposition.  Moreover, as described in more detail below, Exxon's discovery was improper and harassing, and wholly unrelated to the merits of this action.

     **C.**     **Exxon Misrepresents the History of the Depositions, Passports and Visas: Plaintiffs Have Repeatedly Suggested Depositions and Exxon Has Refused, Except to Insist Plaintiffs Come to the United States, Which They Cannot Do Without Visas**

Plaintiffs (not Exxon) first sought depositions of the individual Plaintiffs in 2008. Plaintiffs proposed to be deposed in Singapore.  Exxon, however, refused to participate stating "we decline your request to discuss dates for the so-called 'preservation' depositions . . . there is no legal basis for Plaintiffs to notice any depositions at this time.  We are happy to discuss dates for any depositions if the Court denies the pending Motion to Dismiss and orders discovery in Indonesia."  Letter from Alex Young K. Oh, Def. Counsel, to Agnieszka Fryszman, Pls.' Counsel (Aug. 24, 2009) (Oh Decl., Ex. 7).  At that time, in preparation for deposition and trial, each Plaintiff obtained a passport.  Decl. of Agnieszka Fryszman ¶¶ 2-4 ("Fryszman Decl.") (Oh Decl., Ex. 18).  Due to Exxon's opposition, the depositions were never scheduled.

Shortly thereafter, this case was dismissed, appealed to the D.C. Circuit, stayed until the resolution of *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), and ultimately remanded to this Court.  Order, Dkt. 412 (Sept. 30, 2009); Notice of Appeal, Dkt. 413 (Oct. 22, 2009); *Doe VIII v. Exxon Mobil Corp.*, 654 F.3d 11 (D.C. Cir. 2011); Per Curiam Order, *Doe VIII v. Exxon Mobil Corp.*, No. 09-7125 (D.C. Cir. Nov. 14, 2011).  The case was remanded in July 2013.  *Doe VIII v. Exxon Mobil Corp.*, 527 F. App'x 7 (D.C. Cir. 2013).

This Court denied Exxon's renewed motion to dismiss in September 2014, setting the stage for additional discovery.  Mem. Op., Dkt. 455 (Sept. 24, 2014).  On October 23, 2014, without consulting Plaintiffs on the dates or location of depositions, Exxon noticed Plaintiffs depositions for December 2, 2014, through January 8, 2015 at defense counsel's offices in Washington, D.C.  The depositions were scheduled to start just after Plaintiffs' Amended Complaint was due.

Plaintiffs will spare the Court a long-winded recitation of the back and forth between counsel.  The upshot is that Plaintiffs complained that Defendants had noticed the depositions without the courtesy of conferring regarding the timing or location of depositions that would require extensive international travel and a significant time commitment, and were obviously scheduled so that the preparation time would conflict with the due date of the Amended Complaint.  Email from Paul Hoffman, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Oct. 25, 2014, 2:13 PM) (Oh Decl., Ex. 11); Email from Agnieszka Fryszman, Pls.' Counsel, to Jaren Janghorbani, Def. Counsel (Feb. 16, 2015, 9:48 AM) (Oh Decl., Ex. 20) ("When your clients asked to postpone depositions, we didn't ask for evidence of scheduling conflicts or a doctor's note.  We accepted your representations.  We also worked out the schedule cooperatively.").

Plaintiffs' counsel also learned from their clients that the passports Plaintiffs obtained back in 2008 had, unsurprisingly, expired.  Email from Agnieszka Fryszman, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Nov. 15, 2014 2:09 PM) (Oh Decl., Ex. 12); Fryszman Decl. ¶¶ 4-5 (Oh Decl., Ex. 18).  Counsel informed Defendants that Plaintiffs would need additional time to obtain new passports and apply for visas to enter the United States.  Email from Paul Hoffman, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Oct. 25, 2014, 2:13 PM) (Oh Decl., Ex. 11).

Counsel also offered to make the Plaintiffs available for deposition outside the United States, where a visa would not be required and have reiterated that offer on several occasions. Email from Paul Hoffman, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Jan. 6, 2015, 4:18 PM) (Oh Decl., Ex. 13); Email from Agnieszka Fryszman, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Feb. 25, 2015, 3:27 PM) (Oh Decl., Ex. 23).  Indeed, had Exxon agreed, the Plaintiffs would have already been deposed by now.

In order to meet Exxon's demands, Plaintiffs retained an agent in Indonesia (at considerable expense) to assist the Plaintiffs with obtaining passports and applying for visas. Fryszman Decl. ¶ 6 (Oh Decl., Ex. 18).  The Plaintiffs obtained passports and applied for visas to enter the United States.  The visa applications were completed online, the fees paid, and interviews scheduled at the U.S. Embassy.  *Id.* ¶¶ 7-10; Email from Agnieszka Fryszman, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Feb. 25, 2015, 3:27 PM) (Oh Decl., Ex. 23).  The process entailed significant costs, including passport fees, visa application fees and the purchase of airline tickets for the flight to Jakarta, as well as a hotel stay in Jakarta for the interview process.  Counsel also had to retain an agent to manage the process for the individual plaintiffs, who are indigent villagers.  *Id.* at ¶ 6.

Plaintiffs asked Exxon for a letter to support their visa applications and confirm the need for depositions in the United States, but Exxon refused, replying:  "As to your request for a letter from ExxonMobil, it is not our job to assist Plaintiffs with entry to the United States."  Email from Jaren Janghorbani, Def. Counsel, to Agnieszka Fryszman, Pls.' Counsel (Feb. 17, 2015, 12:15 PM) (Oh Decl., Ex. 20).

Contrary to Exxon's implication, Mot. at 6-7, Counsel provided their clients with a number of documents to support their visa applications, including:

13

- Copies of the deposition notices served by Exxon; and

- Copies of counsel's correspondence with the Ambassador.

Exxon asserts that counsel was "careful to note" that the letter to the Ambassador "had merely been provided to Plaintiffs to transmit," as if that indicated a grand conspiracy to omit supporting documentation at the visa interviews. Mot. at 6-7. In fact, Counsel **_also_** corresponded with the Embassy directly regarding the interviews, and the Embassy staff helpfully accommodated our requests to schedule the interviews on the same day. *See* Ex. 8, Email from Jenny Xie, Paralegal to Pls.' Counsel, to Jakarta Consul (Feb. 13, 2015, 2:55 PM); Ex. 9, Email from David Moo, Deputy Non-immigrant Visa Chief, U.S. Embassy Jakarta, to Terrence Collingsworth, Pls.' Counsel (Feb. 18, 2015, 2:43 AM); Ex. 10, Email from David Moo, Deputy Non-immigrant Visa Chief, U.S. Embassy Jakarta, to Alysson Ouoba, Pls.' Counsel (Mar. 03, 2015, 12:06 AM). Indeed, the letter to the Ambassador had already been transmitted directly to the Embassy in addition to being provided to the plaintiffs. Ex. 8, Email from Jenny Xie, Paralegal to Pls.' Counsel, to Jakarta Consul.

As the correspondence with the Embassy makes clear, the Embassy staff stated they had "reviewed our systems and see that [Plaintiffs] currently have appointments scheduled for Monday, Tuesday and Wednesday of next week" and offered to "reschedule all appointments for Wednesday and come in together." Ex. 9, Email from David Moo, Deputy Non-immigrant Visa Chief, U.S. Embassy Jakarta, to Terrence Collingsworth, Pls.' Counsel. Exxon's sarcastic suggestion that the timing was "miraculous[]" and "strains credulity," Mot. at 23, is wholly unwarranted.

The Deputy Visa Chief also noted that the Plaintiffs would have to demonstrate a purpose for travel and "demonstrate to the consular officer's satisfaction that they have sufficient economic, social, and family ties in Indonesia to compel them to return after their visit." Ex. 9,

Email from David Moo, Deputy Non-immigrant Visa Chief, U.S. Embassy Jakarta, to Terrence

Collingsworth, Pls.' Counsel.  With regard to purpose, the Deputy Visa Chief confirmed that the

applicants "will have" a clear trip plan.  *Id*.  This correspondence with the Embassy undercuts

Exxon's unwarranted and baseless charge that the visa applications were a "sham."  Mot. at 23.

Exxon's cites a 90% success rate for Indonesian visa applicants but Plaintiffs are indigent

villagers, largely engaged in informal employment, without ongoing formal professional activity,

work, or school in Indonesia.  Round trip airfare to the United States costs around $2,000.  *See*

Ex. 11, Round Trip Airfare Price Comparison from Banda Aceh, Indonesia to Washington, DC,

www.kayak.com (last visited Apr. 16, 2015).  Because Indonesians face high travel costs to the

U.S., it is likely that the majority of applications are submitted by those from higher

socioeconomic backgrounds who can afford the travel.  Wealthier applicants are more likely to

have the types of professional jobs and property that consular officials rely on to overcome the

214(b) presumption.[7]

Pursuant to the Immigration and Naturalization Act, "every alien . . . shall be presumed to

be an immigrant . . . ."  8 U.S.C. § 1184(b).  The burden is on the applicant to provide

documentation of "permanent employment [and] meaningful business or financial connections"

to overcome the presumption of immigration.  *See* Ex. 13, 9 U.S. Dep't of State, *Foreign Affairs*

*Manual 41.31* N3.4.  This presumption is particularly difficult to overcome for poor individuals,

---

[7] Comparing non-immigrant visa denial rates in countries close to the U.S., where travel to the U.S. is more affordable, suggests that that the low denial rate in Indonesia reflects a skewed sample.  For example, travel between Haiti and the U.S. is much cheaper than travel between Indonesia and the U.S.  Ex. 12, Round Trip Airfare Price Comparison from Port-au-Prince, Haiti, to Washington, DC, www.kayak.com (last visited Apr. 16, 2015).  It is likely that a larger cross section of the Haitian population can afford to travel to the United States.  As one would expect, the visitor visa denial rate in Haiti for 2014 was 58.2%.  U.S. Dep't of State, Bureau of Consular Affairs, Adjusted Refusal Rate – B-Visas Only by Nationality Fiscal Year 2014, available at http://travel.state.gov/content/dam/visas/ Statistics/Non-Immigrant-Statistics/RefusalRates/FY14.pdf.

particularly in a region like Aceh where farming and other informal employment are common.

Of the 2,230,296 nonimmigrant visa applications denied in 2013, over 64% were rejected for

failing to overcome the presumption of immigration.  Ex. 14, U.S. Dep't of State, Bureau of

Consular Affairs, Report of the Visa Office 2013, Table XX:  Immigrant and Nonimmigrant Visa

Ineligibilities (by Grounds for Refusal Under the Immigration and Nationality Act), Fiscal Year

2013.

After their visas were denied, Plaintiffs again contacted the Embassy.  Mr. Moo

confirmed that Plaintiffs are "welcome to apply again if desired" but that they would still have to

overcome section 214(b) of the Immigration and Nationality Act.  Ex. 10, Email from David

Moo, Deputy Nonimmigrant Visa Chief, U.S. Embassy Jakarta, to Alysson Ouoba.  Plaintiffs'

counsel are examining other possible alternatives under the immigration laws and may, at the

appropriate time, seek the Court's assistance.  Plaintiffs can also be deposed outside the United

States or by video link.

Finally, Plaintiffs' counsel offered Exxon's counsel an opportunity to review the relevant

documents, including the 2008 passports, the 2014 passports, and other visa-related documents,

at Plaintiffs' offices when Exxon's counsel asked for confirmation that the passports had been

obtained.  Email from Agnieszka Fryszman, Pls.' Counsel, to Jaren Janghorbani, Def. Counsel

(Feb. 16, 2015, 9:48 AM) (Oh Decl., Ex. 20).  But after agreeing upon a day and time, Exxon's

counsel failed to show up for his scheduled appointment.  Email from Jaren Janghorbani, Def.

Counsel, to Agnieszka Fryszman, Pls.' Counsel (Feb. 17, 2015, 12:15 PM) (Oh Decl., Ex. 20);

Ex. 15, Email from Alysson Ouoba, Pls.' Counsel, to Sean Jansen, Def. Counsel (Feb. 23, 2015,

9:23 PM) ("As a courtesy, we offered to let Defendants verify that progress by reviewing copies

of Plaintiffs' passports and visa application receipts, and set up an appointment with you for that

very purpose – an appointment you chose to skip without any notice.").  If Exxon truly sought to confirm Plaintiffs' names and efforts, it could have done so.

### D.    Exxon's Discovery Requests Are Not Relevant to the Merits of this Action

Exxon's requests for production appear designed to harass.

Exxon served document requests on January 12, 2015, but none of the requests sought information about the torts at issue in this case.  Instead, Exxon engaged in a fishing expedition, seeking evidence of improper witness payments, filing litigation without proper authorization, litigation funding from third parties, counsel's communications with reporters and news organizations, and similar topics.  Many requests were exceedingly broad, seeking "all communications, regardless of date" between Plaintiffs or their counsel and "any third party" concerning the subject matter of this litigation.  Defs.' Third Req. for Produc. of Docs. to Pl. Jane Doe I ("Defs.' Third Req. for Produc."), Req. No. 6 (Jan. 12, 2015) (Oh Decl., Ex. 14).

With regard to the requests that are the subject of this motion:

(1)    Plaintiffs confirmed under penalty of perjury that Counsel have a retainer agreement for each Plaintiff, but provided caselaw showing that retainer agreements are not relevant and need not be produced.  Ex. 16, Email from Alysson Ouoba, Pls.' Counsel, to Sean Jansen, Def. Counsel (Feb. 24, 2015, 3:31 PM) (attaching Decl. of Alysson Ouoba); Ex. 15, Email from Alysson Ouoba, Pls.' Counsel, to Sean Jansen, Def. Counsel (Feb. 23, 2015, 9:23 PM) (providing caselaw); Pls.' Objs. and Resps. to Defs.' Third Req. for Produc. of Docs. ("Pls.' Objs. and Resps."), Resp. to Req. No. 1 (Feb. 11, 2015) (Oh Decl., Ex. 19).

(2)    Plaintiffs confirmed under penalty of perjury that Plaintiffs had applied for and obtained passports in 2008 and 2014, and later confirmed via email that Plaintiffs had applied for but had not been granted visas.  Fryszman Decl. ¶¶ 2-10 (Oh Decl., Ex. 18); Email from Agnieszka Fryszman, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Feb. 25, 2015, 3:27 PM) (Oh

Decl., Ex. 23).  In addition, Plaintiffs' counsel offered Exxon's counsel an opportunity to review the relevant documents at Plaintiffs' offices in an effort to resolve the dispute over whether the Plaintiffs had applied for visas.  But after agreeing upon a day and time, Exxon's counsel failed to show up for the scheduled appointment.  Ex. 15, Email from Alysson Ouoba, Pls.' Counsel, to Sean Jansen, Def. Counsel (Feb. 23, 2015, 9:23 PM).

(3)    Plaintiffs explained that documents related to litigation funding are not relevant and need not be produced, but in order to narrow the issues in dispute confirmed to Exxon's counsel that they do not have any responsive documents showing "the contribution of financial support from third parties to Plaintiffs or Plaintiffs' counsel for this litigation."  Pls.' Objs. and Resps., Resp. to Req. 10 (Oh Decl., Ex. 19); Ex. 17, Email from Alysson Ouoba, Pls.' Counsel, to Sean Jansen, Def. Counsel (Apr. 3, 2015, 5:24 PM).

Plaintiffs also agreed to produce sufficient identification documents, including marital certificates, as well as Plaintiffs' prior statements to reporters and news organizations, if any exist, and other categories of documents.  *E.g.*, Pls.' Objs. and Resps., Resps. to Req. Nos. 5-7 (Oh Decl., Ex. 19).  Plaintiffs confirmed that there were no responsive documents to many of Exxon's other requests because Plaintiffs had not, for example, paid witnesses for their testimony.  *Id.*, Resps. to Req. Nos. 8-10; Ex. 16, Email from Alysson Ouoba, Pls.' Counsel, to Sean Jansen, Def. Counsel (Feb. 24, 2015, 3:31 PM).

## ARGUMENT

Exxon seeks to compel the production of documents wholly unrelated to the claims and defenses in this action.  Neither Exxon's few cited cases nor Plaintiffs' own research have identified any authority permitting such a far-reaching fishing expedition beyond the scope of the federal rules governing discovery.  Moreover, for one of the three categories, counsel have informed Exxon that no responsive documents exist, making a portion of this motion moot.

18

A.    **Plaintiffs' Retainer Agreements Are Not Relevant**

Exxon seeks the retainer or engagement agreements between Plaintiffs and their counsel. Defs.' Third Req. for Produc., Req. No. 1 (Oh Decl., Ex. 14).  Plaintiffs objected to producing the agreements as outside the permissible scope of discovery.  Pls.' Objs. and Resps., Resp. to Req. No. 1 (Oh Decl., Ex. 19).

Courts routinely deny requests for retainer agreements on relevancy grounds.  *See, e.g.*, *Gillen v. Kohn Law Firm S.C.*, 2014 WL 3784488, at *2 (W.D. Wis. July 31, 2014); *Brady v. Lauderhill Auto Investors I, LLC*, 2010 WL 4135329, at *4 (S.D. Fla. Oct. 19, 2010); *Julicher v. Town of Tonawanda*, 2008 WL 4415226, at *5 (W.D.N.Y. Sept. 24, 2008); *Pizel v. Monaco Coach Corp.*, 224 F.R.D. 642, 644 (N.D. Ind. 2004).  For example, in *Gillen v. Kohn Law Firm S.C.*, the plaintiff sought to compel production of a retainer agreement between the defendant law firm and Capital One.  2014 WL 3784488 at *2.  The court agreed with Kohn that "its retainer agreement . . . would appear to bear no relevance to [plaintiff's] claims as pled.  It has no bearing on whether Kohn validated Gillen's debt, continued collection efforts on the debt or wrongfully obtained Gillen's credit report."  *Id.*

Here, Plaintiffs have pled claims of wrongful death; battery; assault; arbitrary arrest, detention and false imprisonment; negligence; negligent hiring; negligent supervision; conversion; and ATS claims for violations of international law, including extrajudicial killing, torture, arbitrary detention, disappearance, and cruel, inhuman and degrading treatment. Proposed Second Am. Compl. ¶¶ 193-254, Dkt. 461 (Nov. 24, 2014).  Plaintiffs' retainer agreements are not relevant to whether Exxon's military security personnel tortured Plaintiffs, whether Exxon exercised sufficient care in hiring and supervising its military security personnel, or any of the other elements of Plaintiffs' claims.  Indeed, Exxon's failure to argue that Plaintiffs' retainer agreements are relevant to ***any*** of Plaintiffs' claims is an implicit admission

that Plaintiffs' retainer agreements "bear no relevance to [plaintiffs'] claims as pled." *Gillen*, 2014 WL 3784488 at *2.

There is absolutely no basis for Exxon's spurious allegation that Plaintiffs have not authorized this lawsuit. Plaintiffs answered verified interrogatories, provided documents to counsel for production in the United States, and applied for passports and visas to come to the United States so that their depositions could be taken. In light of this conduct, it strains credulity to argue that the Plaintiffs are unaware that they are participating in litigation in the United States against Exxon.

Apparently unable to find any case law contradicting the well-established rule that retainer agreements are not relevant unless they bear on a specific claim or defense, Defendants misrepresent the case law they cite. For example, in *Gaines*, the Defendant was not only a law office, but also a collection agency. Ex. 18, Pl.'s Joint Mot. for Determination of Disc. Dispute 8, *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 3:13-cv-1556, Dkt. No. 25 (S.D. Cal. May 5, 2014). Plaintiff alleged that Defendant had an agreement with the National Collegiate Trust ("NCT"), who was Plaintiff's creditor, to collect her debt. *Id.* She sought those agreements in order to determine whether Defendant had received any information from NCT that would indicate that Plaintiff had given NCT, and by extension Defendant, express prior consent to contact her on her cell phone. *Id.* Prior express consent is an affirmative defense, and thus Plaintiff argued that any such agreements were relevant to the defenses in the case. *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, 2014 WL 3894348, at *5 (S.D. Cal. June 12, 2014). On that basis, the Court concluded that the legal services agreement "***may*** be relevant to Plaintiff's claims" and ordered Defendant to submit the agreement to chambers for *in camera* review to determine whether it was, in fact, relevant. *Id.* (emphasis added). The Court did not

"deem[] retainer agreements relevant," Mot. at 19, nor did it hold that it would order the agreement produced if its review found that the retainer agreement was not relevant to the express prior consent defense.[8]  *Gaines*, 2014 WL 3894348, at *6.[9]

Because the retainer agreements in this case are not relevant to any party's claim or defense, Exxon's motion must be denied.

### B.    Plaintiffs' Passports, Visa Applications and Other Documents Related to Plaintiffs' Efforts to Come to the United States for Depositions Are Not Relevant

Exxon has moved to compel passport, visa and other documents related to Plaintiffs' efforts to come to the United States for deposition.  Mot at 18.  The requests relevant to Exxon's motion are:

> REQUEST FOR PRODUCTION NO. 3:  Produce any and all passports and visas you have ever obtained, including but not limited to the passport you obtained in 2007 or 2008, in anticipation of depositions abroad or trial in the United States in connection with this litigation.
>
> REQUEST FOR PRODUCTION NO. 4:  Produce any and all documents concerning your efforts to obtain any passports or visas at any time up until and including the present, including but not limited to any applications for a passport or visa, and communications with Indonesian officials, United States officials, or

---

[8] Exxon likewise fails to inform this Court that one of the other cases it cites relates to class actions.  *See Barton v. RCI, LLC*, 2013 WL 1338235, at *25-26 (D.N.J. Apr. 1, 2013).  In the unique context of class action lawsuits, courts sometimes finds that retainer agreements are relevant to determine whether Plaintiffs are adequate class representatives and whether Plaintiffs' counsel is adequate class counsel.  *Id.* (permitting discovery of retainer agreements in class action where Defendant raised the adequacy of the class representatives and class counsel).  Even in this context, however, courts deny motions to compel the production of retainer agreements as irrelevant where these concerns are not present.  *See, e.g.*, *In re Front Loading Washing Mach. Class Action Litig.*, 2010 WL 3025141, at *4 (D.N.J. July 29, 2010); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009); *Piazza v. First Am. Title Ins. Co.*, 2007 WL 4287469, at *2 (D. Conn. Dec. 5, 2007).  Exxon's third and final case, *United States v. Naegele*, is simply irrelevant as the court did not consider the question of relevancy.  *See* 468 F. Supp. 2d 165 (D.D.C. 2007).

[9] Defendants also claim that they seek Plaintiffs' retainer agreements so that they can ask questions about the circumstances of their execution.  But such questions are likewise not relevant to any claim or defense in this action.

any other parties concerning any passport or visa sought in connection with this litigation.

Defs.' Third Req. for Produc., Req. No. 6 (Oh Decl., Ex. 14).

       1.    <u>Identification documents</u>

As an initial matter, Exxon spends much time discussing identification documents. Identification documents were called for in another request. *Id.*, Req. No. 5. Plaintiffs do not understand Exxon to be moving to compel the identification documents called for by Request No. 5, as Exxon states that it is seeking an order compelling only "identification documents relevant to Plaintiffs' supposed efforts to come to the United States to prosecute this action." Mot. at 18. Nonetheless, because Exxon did not bother to identify by request number the requests that are the subject of this motion, in an abundance of caution Plaintiffs address identification documents here.

With regard to Request No. 5, the only Plaintiffs who have not produced an identification card are those Plaintiffs who have not transmitted copies of their identification cards to the United States. Defendants explicitly excluded documents located in Indonesia from their requested discovery. Defs.' Third Req. for Produc., Instruction No. 2 (Oh Decl., Ex. 14). For example, Plaintiff John Doe V produced the driver's license issued to him by the Republic of Indonesia. Plaintiffs John Doe VI and VII produced identification cards issued by the Province of Aceh. Plaintiffs objected to providing all identification documents ever issued to the Plaintiffs—presumably including every school ID, library card, or any other photo ID ever issued for any purpose—as cumulative, unduly burdensome, overly broad and because the burden and expense of the discovery outweighs its likely benefit.[10] Pls.' Objs. and Resps., Resp.

---

[10] Exxon states that Plaintiffs' objected to the documents it seeks "purely on relevance grounds" and that "Plaintiffs do not claim any burden." Mot. at 18. Since Plaintiffs clearly objected to Request No. 5 on multiple grounds, including that the request was needlessly

to Req. No. 5 (Oh Decl., Ex. 19).  But Exxon has not challenged those objections or sought to reach agreement on a reasonable number of identification cards (one? two? ten?) that would be produced once discovery is permitted in Indonesia.[11]  Thus, there is no basis for a motion to compel on this request.

As discussed above, Exxon's complaints about any minor inconsistencies in Plaintiffs' names are frivolous:  as Exxon should know, the differences are due to the use of patronymics in some documents or differences in transliteration.  *Supra* pp. 8-9.  Exxon cites *United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995), but that case has no bearing here.  There, the *amici* proposed to be anonymous so the defendant would not know their names.  Here, Exxon knows Plaintiffs' names, knows where they live, and has their sworn interrogatory answers detailing their claims.  It is simply not true that Exxon does "not know[] who Plaintiffs are." Mot. at 21.

### 2.    Passports and visa documents

Plaintiffs' research has turned up ***no*** cases in which a Court has agreed that passports obtained a decade after the torts at issue are subject to discovery.  The same holds true for the visa application materials sought by Exxon.  The passports and visa application materials are not relevant to any party's claim or defense.  These documents shed no light on Plaintiffs' injuries or who inflicted them.  For Plaintiffs who are suing as representatives or survivors of the deceased victims, neither the passports nor the visa applications establish the relationship between the

---

cumulative and the burden outweighed any benefit, the only possible explanation is that Defendants do not seek documents responsive to Request No. 5.

[11] No additional identification cards are in the United States with one exception:  a deceased Plaintiff who is the subject of a forthcoming motion to substitute.  Additional family documentation will be submitted with the forthcoming motion.

survivor and the victim.  Moreover, Plaintiffs agreed to produce (and have already produced) the relevant family or marital documentation.

There is no dispute that the visas for the purpose of deposition testimony were denied, so to the extent Exxon wrongly believes that fact is relevant to any of its defenses, Mot. at 23, Plaintiffs provided the visa denial forms to Exxon and no further discovery is necessary.   Exxon musters only two cases regarding the production of passports but neither supports its argument.  In *State Farm Mut. Ins. Co. v. Polichela*, 2009 WL 2170183, at *6 (E.D. Mich. July 20, 2009), the plaintiffs sought defendant's passport to prove the defendant had been out of the country on the dates he allegedly performed medical services.  There is no such relevancy argument here.  Here, there is no dispute that the victims were in Indonesia when they were assaulted, tortured, or killed, and the after-acquired passports and visa applications of the victims or their surviving spouses would not establish that fact in any event.  In *Feulufai v. Pac. Princess P'Ship Ltd.*, 2009 WL 3789668 (D. Nev. Sept. 10, 2009), a maritime case, the Plaintiff voluntarily produced his passport and travel documents to Defendants.  The Court recorded each parties' argument, made no findings regarding the passports, and declined to require the Plaintiff to produce any additional visa extension documents.  Exxon cites two cases (*McBride v. Infinity Prop. & Cas. Corp.*, 2014 WL 1218912 (M.D. Pa. Mar. 24, 2014) and *Ran v. Infinite Energy*, 2009 WL 5031343 (N.D. Fla. Dec. 14, 2009)) concerning identification documents but Plaintiffs have agreed to produce identification documents.  Moreover, in *McBride*, domicile was an issue, so a variety of documents showing the Plaintiffs' domicile (voter identification card, real property records, vehicle titles and registrations, and tax returns) were ordered produced.  *McBride*, 2014 WL 1218912 at *2-3.  Domicile is not at issue in this case.  In *Ran*, the Plaintiff did not respond to or object to the discovery requests.  *Ran*, 2009 WL 5031343 at *5-6.

Without evidentiary support, Exxon wrongly argues that Plaintiffs' efforts to obtain visas were a sham. As Plaintiffs describe above, Plaintiffs undertook a costly and time-consuming effort to obtain passports and visas. Their efforts were not a sham. Indeed, Courts routinely recognize—although Exxon apparently does not—that it is difficult for indigent Plaintiffs to obtain visas to travel to the United States. *E.g.*, *Luna v. Del Monte Fresh Produce (Se.), Inc.*, 2007 U.S. Dist. LEXIS 36893, at *9 (N.D. Ga. May 18, 2007) (observing that visas are rarely granted to poor foreign plaintiffs so that they may have their depositions taken in the United States); *In re Estate of Singh*, 22 Misc. 3d 288, 289, 865 N.Y.S.2d 902, 903 (N.Y. Sur. 2008) (court permitted videoconference deposition after party was unable to obtain visa "notwithstanding his presentation to the [e]mbassy" of court order requiring testimony). But nonetheless Exxon's argument does not convert documents wholly unrelated to any party's claims or defenses into a proper subject for discovery. Exxon's unwarranted fishing expedition should be rejected.

### C.    Documents Regarding Third-Party Funding Are Not Relevant

Exxon has moved to compel on Request for Production 10, *see* Defs.' Third Req. for Produc., Request No. 10 (Oh Decl., Ex. 14), regarding third-party payments to Plaintiffs or their counsel.

Plaintiffs do not have any responsive documents showing "the contribution of financial support from third parties to Plaintiffs or Plaintiffs' counsel for this litigation," Mot. at 23, which information Plaintiffs have confirmed to Defendants. Defendants' motion to compel such documents is therefore moot.

Exxon misleadingly suggests that it seeks "documents concerning the contribution of financial support from third parties to Plaintiffs . . . , which Plaintiffs again have refused solely on relevance." Mot. at 23. Plaintiffs did not refuse to produce these documents. To the

contrary, in their responses and objections to Exxon's requests for production, Plaintiffs

confirmed that they had conducted a reasonable search for documents regarding the contribution

of financial support from third parties to Plaintiffs and that no responsive documents were

located.  Pls.' Objs. and Resps., Resp. to Req. No. 10 (Oh Decl., Ex. 19).  Exxon provides no

basis for moving to compel non-existent documents.

  During the meet-and-confer process, Exxon explained that it also sought information

regarding the contribution of financial support from third parties to Plaintiffs' counsel, not just to

Plaintiffs' themselves.  As Plaintiffs explained to Defendants, such documents are irrelevant and

subject to the work product privilege.[12]  Despite the relative novelty of litigation financing,

courts that have considered the issue find that such agreements and documents related to such

financing are not discoverable unless relevant to a claim or defense.  *See, e.g.*, *Miller UK Ltd. v.*

*Caterpillar, Inc.*, 17 F. Supp. 3d 711, 728 (N.D. Ill. 2014) (holding documents evidencing third-

party funding not relevant).  In addition, courts have recognized that many of the

communications between a party's counsel and a litigation funder are subject to the work product

protection.  *E.g.*, *id.* at 734-39; *Devon IT, Inc. v. IBM Corp.*, 2012 WL 4748160, at *1 n.1 (E.D.

Pa. Sept. 27, 2012).  Defendants' sole argument for the relevance of litigation financing

documents—that they might show payments to witnesses—is belied by the fact that Plaintiffs

have made no payments to any witness in exchange for testimony (the parties have agreed that

this request does not call for disclosures related to expert witnesses).  *See* Pls.' Objs. and Resps.,

Resp. to Req. No. 10 (Oh Decl., Ex. 19).

---

[12] Defendants falsely claim that Plaintiffs did not assert any objection other than
relevancy.  Mot. at 23.  In fact, Plaintiffs responses and objections clearly include an objection
on the basis of work product.  Pls.' Objs. and Resps. to Defs.' Third Req. for Produc., Resp. to
Req. No. 10 (Oh Decl., Ex. 19).

Notwithstanding Plaintiffs' firm belief that this issue is not a proper one for discovery, in order to narrow the issues in dispute, and after confirming that Exxon was not seeking standard banking information or general law firm partnership or financial information, counsel for Cohen Milstein confirmed by phone that Cohen Milstein did not have any responsive documents.  Ex. 17, Email from Alysson Ouoba, Pls.' Counsel, to Sean Jansen, Def. Counsel (Apr. 3, 2015, 5:24 PM).  Counsel further stated that Cohen Milstein did not have any information as to whether co-counsel on this case had any responsive documents and would have to check with them.  *Id.*  In its rush to file its mudslinging brief, Exxon did not bother to complete the meet and confer process.  If it had, Exxon would have learned that both Paul Hoffman and Terry Collingsworth have confirmed that they have no responsive documents as no third-party funding was utilized for this litigation.  *Id.*  Exxon's motion to compel is therefore moot.  There are no responsive documents to this request.

### D.    Sanctions, Including Dismissal or Preclusion of Plaintiffs' Testimony, Are Not Appropriate

Consistent with the rest of their meritless motion, Defendants baselessly urge this Court to impose sanctions—dismissal of Plaintiff's claims or preclusion of Plaintiffs' testimony at trial—that are absolutely not applicable where, as here, there has never been a court order compelling the discovery Defendants seek nor any indication that Plaintiffs would disobey a court order.  *See* Fed. R. Civ. P. 37(b)(2) (permitting sanctions where a party fails to obey a discovery order).  Indeed, Defendants cannot cite to a single instance in which Plaintiffs' counsel has refused to produce documents pursuant to a court order in this litigation.  On these facts, Defendants' own caselaw demonstrates the impropriety of any sanctions here.  *E.g.*, *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 292 F.R.D. 53, 57 (D.D.C. 2013) (imposing sanctions *after* defendant failed to comply with a court order to respond to plaintiff's discovery requests).

27

Defendants' unsubstantiated speculation that Plaintiffs would refuse to produce documents compelled by this Court is a dishonorable attempt to besmirch Plaintiffs for conduct they have not engaged in nor ever suggested they would engage in.[13]

Nor should this Court reward Defendants for noticing and then resetting the date of the depositions before Plaintiffs could complete the visa process—thereby guaranteeing that Plaintiffs would not be able to appear. *See supra* pp. 11-17; Email from Agnieszka Fryszman, Pls.' Counsel, to Jaren Janghorbani, Def. Counsel (Feb. 16, 2015, 9:48 AM) (Oh Decl., Ex. 20).

Defendants' unfounded assertion that Plaintiffs failed to make a genuine effort to appear in the United States, Mot. at 25, does not entitle them to conduct a fishing expedition through Plaintiffs' documents.[14] Nonetheless, in a good faith effort to resolve the dispute, Plaintiffs'

---

[13] Defendants imply that Plaintiffs' refusal to produce documents shows an intent not to prosecute their claims. Mot. at 26 & n.21. This suggestion is absurd—as Plaintiffs demonstrate above, the discovery requested by Exxon is harassing and irrelevant, and therefore not subject to discovery under the Federal Rules. *See supra* pp. 17-27. Defendants' threat to file yet another motion if Plaintiffs are unable to appear at trial is pure grandstanding—no motion for failure to prosecute is before the Court, nor would it have any merit. *See, e.g., El-Hadad v. United Arab Emirates*, 496 F.3d 658, 669 (D.C. Cir. 2007) (affirming district court's decision to permit plaintiff to testify at trial by Internet video); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479-80 (D. Md. 2010) (permitting testimony by video conferencing of plaintiffs located in Honduras due to cost and inconvenience of international travel); *Haimdas v. Haimdas*, 2010 WL 2342377, at *1 (E.D.N.Y. June 8, 2010) (permitting testimony via video link because party was unable to obtain a visa to travel from London to the United States); *cf. United States v. Philip Morris USA, Inc.*, 2004 WL 3253681, at *2 (D.D.C. Aug. 30, 2004) (permitting depositions and trial testimony of witnesses by video conference, noting "a video of their testimony is no different and no less satisfactory than their actual testimony in open court"); *see also* Fed. R. Civ. P 43(a) (authorizing presentation of trial testimony "by contemporaneous transmission from a different location").

[14] Defendants' implied accusation that Plaintiffs would prefer not to be deposed while nonetheless appearing for trial, *see* Mot. at 27 ("Plaintiffs should not be permitted to have it both ways."), is unfounded and contrary to the record. Plaintiffs initially proposed that they be deposed in 2008, which Exxon refused. *See* Letter from Alex Young K. Oh, Def. Counsel, to Agnieszka Fryszman, Pls.' Counsel (Aug. 24, 2009) (Oh Decl., Ex. 7). Moreover, Defendants' caselaw is inapposite. In both cases, the party sought to hold depositions in other fora because of the expense or burden involved in conducting depositions in the United States. *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A.*, 292 F.R.D. 19, 22 (D.D.C. 2013); *Cobell v. Norton*, 213 F.R.D. 43, 47 (D.D.C. 2003) (Lamberth, J.). Plaintiffs have not complained of the

provided Defendants with the letter Counsel submitted to the Embassy in support of the

applications, a declaration under penalty of perjury confirming that plaintiffs received new

passports and paid the visa application fees, and offered Defendants an opportunity to view the

passports and visa application fee receipts at Counsel's offices.  *See supra* pp. 11-17.  Again,

Defendants' own caselaw demonstrates that sanctions would be inappropriate here.  *See, e.g.*,

*Founding Church of Scientology of Washington D.C., Inc. v. Webster*, 802 F.2d 1448, 1458

(D.C. Cir. 1986) (affirming sanctions where Defendant actively sought to prevent the depositions

sought); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 292 F.R.D. 53, 57 (D.D.C. 2013)

(sanctions where party did not appear after failing to object to the timing or location of the

deposition and without suggesting rescheduling).  None of the factors present in the cases Exxon

cites are present in this case.

### E.      Costs Are Inappropriate or Should Be Imposed Against Exxon

Where, as here, a motion to compel was unjustified, the Court should "require the

movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its

reasonable expenses incurred in opposing the motion, including attorney's fees."  Fed. R. Civ. P.

37(a)(5)(B).  As explained in detail above, ***none*** of the discovery sought by Exxon is relevant

and discoverable under the Federal Rules.  *See supra* pp. 19-27.  In addition, although Plaintiffs

---

expense of holding depositions in the United States—though it is considerable—but rather were
impeded from entering the United States due to the denial of their visa applications by the U.S.
government.  Defendants' own caselaw recognizes that if a party is "unable to travel to
Washington, D.C.", it may be appropriate to hold a deposition elsewhere.  *Cobell*, 213 F.R.D. at
47; *see also Garcia v. Bana*, 2012 U.S. Dist. LEXIS 87727, *9 (N.D. Cal. Apr. 14, 2015)
(permitting plaintiff to be deposed via video conference where plaintiff was unable to enter the
United States); *Stephens v. 1199 SEIU*, 2011 WL 2940490, at *2-3 (E.D.N.Y. July 19, 2011)
(same).  Plaintiffs have repeatedly offered to hold depositions elsewhere, but Exxon has refused.
*See* Email from Paul Hoffman, Pls.' Counsel, to Alex Young K. Oh, Def. Counsel (Oct. 25,
2014, 2:13 PM) (Oh Decl., Ex. 11); Email from Paul Hoffman, Pls.' Counsel, to Alex Young K.
Oh, Def. Counsel (Jan. 6, 2015, 4:18 PM) (Oh Decl., Ex. 13).  Exxon clearly has less interest in
engaging in discovery than it does in hurling unsubstantiated allegations.

strenuously dispute that there is any basis for Exxon's alleged concerns, Plaintiffs offered allow Exxon's counsel to view the passports and visa application fee receipts and set up a time to do so. Yet after making an appointment to view these documents, Exxon's counsel failed to show up. *See* Ex. 15, Email from Alysson Ouoba, Pls.' Counsel, to Sean Jansen, Def. Counsel (Feb. 23, 2015, 9:23 PM). Exxon's conduct demonstrates that its professed concerns are a mere sham to enable it to harass Plaintiffs and needlessly increase the cost of litigation by hurling unsubstantiated and scurrilous attacks at Plaintiffs' counsel. After denying a different unnecessary motion by Exxon, this Court ordered that future motions be accompanied by a certificate confirming that counsel has re-read Rule 11. Having warned against filing motions for an improper purpose, this Court should sanction Exxon and its counsel by imposing costs against it.[15] Fed. R. Civ. P. 37(a)(5)(B).

Even if this Court were to compel Plaintiffs to produce some or all of the discovery Exxon professes to seek, costs would not be appropriate. Exxon mischaracterizes the rule on costs by describing costs as mandatory under the Rules, *see* Mot. at 28 (quoting Rule 37(a)(5)(A) but failing to include its exceptions), when, in fact, the Rule provides three exceptions, two of which are applicable here. First, Exxon filed its motion without engaging in a good faith effort to meet and confer with Plaintiffs to narrow the issues in dispute. *See* Fed. R. Civ. P 37(a)(5)(A)(i). For example, part of Exxon's motion seeks third-party financing documents. *Supra* pp. 25-27. Rather than complete the meet and confer discussions, Defendants prepared

---

[15] Rule 37 contains an exception "if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). But because the only apparent reason for this motion was to harass Plaintiffs and increase the cost of litigation, such an exception is not applicable here.

and filed a motion to compel.[16]  Second, as described in detail above, Plaintiffs' objections are substantially justified.  A party's objection is "substantially justified" where "there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations omitted); *Cobell v. Norton*, 226 F.R.D. 67, 90-91 (D.D.C. 2005) (Lamberth, J.) (where court denies a majority of the requested discovery, a party's objections to those requests "are by definition substantially justified"); *see also* 8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2288 (3d ed. 2014) (an objection to a motion is substantially justified "if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule"); *accord Pub. Citizen Health Research Grp. v. Young*, 909 F.2d 546, 552 (D.C. Cir. 1990) (in the context of the Equal Access to Justice Act, stating that the question "is whether there was a reasonable basis in fact and law for the [party's] litigating position").  Here, Plaintiffs have provided substantial caselaw demonstrating that courts often deny the discovery Exxon seeks.  Under these circumstances, "reasonable people could differ" as to whether such documents are discoverable. *Cobell*, 226 F.R.D. at 91 (party's objections were substantially justified where party squarely addressed the law and correctly recognized the required elements, even though the court ultimately compelled discovery).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel should be denied.

Dated:  April 16, 2015

---

[16] Exxon has complained that Plaintiffs produced responsive documents after Exxon filed its motion.  But Plaintiffs had already agreed in their responses to, for example, produce sufficient identification for each Plaintiff, *see* Pls.' Objs. and Resps., Resp. to Request No. 5 (Oh Decl., Ex. 19), which is precisely what they did.  The timing of that production shows nothing more than that Exxon filed its motion before the meet and confer process and Plaintiffs' production were complete.

Respectfully submitted,


  /s/ Agnieszka M. Fryszman
Agnieszka M. Fryszman  DC Bar No. 459208
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
1100 New York Ave., N.W.
East Tower, Suite 500
Washington, DC  20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699
afryszman@cohenmilstein.com


Terrence P. Collingsworth    DC Bar No. 471830
**CONRAD & SCHERER, LLP**
1301 Connecticut Ave., N.W.
Suite 350
Washington, DC  20036
Tel:  (202) 543-5811
Fax:  (866) 803-1125
tc@conradscherer.com

Paul L. Hoffman
Catherine Sweetser
**Schonbrun, DeSimone, Seplow, Harris,
  Hoffman & Harrison LLP**
723 Ocean Front Walk
Venice, CA  90291
Tel:  (310) 396-0731
Fax:  (310) 399-7040

*Attorneys for Plaintiffs*