## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE I, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| EXXON MOBIL CORPORATION, et al., | ) | Civ. No. 01-1357 (RCL) |
| Defendants. | ) | Electronically Filed |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION AND MOTION TO DISMISS <u>FOR LACK OF PERSONAL JURISDICTION</u>

## **TABLE OF CONTENTS**

I. Relevant Background ........................................................................................ 2

    A.    *Bristol-Meyers* applied settled principles of specific jurisdiction and did
              not alter the standard applicable to this case.......................................... 2

    B.    This Court's personal jurisdiction ruling considered EMOI's contacts with
              the District of Columbia under *Helicopteros* and determined this suit arose
              out of or was related to those contacts ................................................... 3

II. Argument........................................................................................................ 6

    A.    *Bristol-Meyers* provides no basis for reconsidering this Court's decision
              on personal jurisdiction over EMOI ...................................................... 6
              1.    The legal standard for reconsideration requires the movant to show
                    there has been a controlling or significant change in the law .................... 6
              2.    *Bristol-Meyers*, which engaged in a "straightforward application"
                    of "settled principles of personal jurisdiction" did not change the
                    standard for specific jurisdiction................................................ 7

    B.    *Bristol-Meyers* does not provide a basis for reviving a personal jurisdiction
              defense that was waived long ago......................................................... 11
               1.    Personal jurisdiction is waived if not asserted, unless the defense
                    was unavailable, which is not the case here.............................. 11
               2.    EMC concedes it never raised personal jurisdiction in this Court........... 12
               3.    *Bristol-Meyers* applied settled principles of personal jurisdiction; it
                    did not make a new defense available...................................... 12
               4.    *Bristol-Meyers* does not apply to the ATS claim..................................... 15

    C.    Defendants' requested relief cannot be granted: Plaintiffs' remaining
              jurisdictional arguments related to EMOI must be considered,
               jurisdictional discovery of EMC is necessary, and, finally, transfer to
               Delaware or New Jersey, not dismissal, is the presumptive remedy for lack
               of jurisdiction ................................................................................... 16

III. Conclusion .................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alvarez v. NBTY, Inc.*,
    No. 17-CV-00567-BAS-BGS, 2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) ...................13, 14

*Azamar v. Stern*,
    662 F. Supp. 2d 166 (D.D.C. 2009) ........................................................................9

*Beck v. Test Masters Educ. Servs. Inc.*,
    7 F. Supp. 3d 46 (D.D.C. 2013).........................................................................6, 7

*Bristol-Meyers Squibb v. Superior Court of California*,
    137 S. Ct. 1773 (2017).............................................................. 1-3, 7, 11-13, 15

*Britell v. United States*,
    318 F.3d 70 (1st Cir. 2003).................................................................................17

*Chatman-Bey v. Thornburgh*,
    864 F.2d 804 (D.C. Cir. 1988)........................................................................12, 13

*Chavez v. Dole Food Co., Inc.*,
    863 F.3d 205 (3d Cir. 2016)................................................................................17

*Cockrum v. Donald J. Trump for President*,
    Civ. A. No. 17-1370 (ESH), 2018 WL 3250445 (D.D.C. July 3, 2018) .................................8

*Colbert v. District of Columbia*,
    110 F. Supp. 3d 251 (D.D.C. 2015).......................................................................7

*Cruz-Aguilera v. I.N.S.*,
    245 F.3d 1070 (9th Cir. 2001) ............................................................................17

*Dem. Rep. Congo v. FG Hemisphere Assocs., LLC*,
    508 F.3d 1062 (D.C. Cir. 2007)...........................................................................14

*Diamond Chem. Co. v. Atofina Chemicals, Inc.*,
    268 F. Supp. 2d 1 (D.D.C. 2003)........................................................................16

*Fasolyak v. The Cradle Soc'y, Inc.*,
    Civ. A. No. 06 01126 TFH, 2007 WL 2071644 (D.D.C. July 19, 2007) .................................9

*Freedman v. Suntrust Banks, Inc.*,
    139 F. Supp. 3d 271 (D.D.C. 2015).......................................................................17

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
  8 F. Supp. 3d 9 (D.D.C. 2014), aff'd, 843 F.3d 958 (D.C. Cir. 2016).....................................14

*Goldlawr v. Heiman*,
  369 U.S. 463 (1962)..........................................................................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)................................................................................................2, 3, 7, 13

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000)........................................................................................9, 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)............................................................................... 1-3, 7, 8, 11, 13

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982)......................................................................................................11, 12

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945)..............................................................................................................3

*Kabbani v. Int'l Total Servs.*,
  Civ. A. No. 91-0391, 1991 WL 251863 (D.D.C. Nov. 12, 1991) ....................................11, 12

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)..............................................................................................................1

*Lindsley v. Am. Honda Motor Co., Inc.*,
  No. CV 16-941, 2017 WL 3217140 (E.D. Pa. July 28, 2017)................................................7

*In re Morning Song Bird Food Litig.*,
  No. 12CV01592 ....................................................................................................................7

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*,
  308 U.S. 165 (1939)............................................................................................................11

*O'Brien v. R.J. O'Brien & Assocs., Inc.*,
  998 F.2d 1394 (7th Cir. 1993) ...........................................................................................11

*Rundquist v. Vapiano SE*,
  Civ. A. No. 09-2207 BAH, 2012 WL 5954706 (D.D.C. Nov. 9, 2012) ................................10

*Shatsky v. Syrian Arab Rep.*,
  No. 02-02280 (RJL), slip op., Dkt. 300 (D.D.C. Oct., 29, 2014) ..............................12, 13, 15

*Shea v. Clinton*,
  850 F. Supp. 2d 153 (D.D.C. 2012) ......................................................................................6

*Sinclair v. Kleindienst*,
    711 F.2d 291 (D.C. Cir. 1983) ................................................................17

*Singh v. George Washington Univ.*,
    383 F. Supp. 2d 99 (D.D.C. 2005) .......................................................6, 8

*Sloan v. Gen. Motors LLC*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018) ..................................................15

*Sobol v. Imprimis Pharm.*,
    Civ. A. No. 16-14339, 2018 WL 2424009 (E.D. Mich. May 29, 2018)................13

*Travelers Cas. & Sur. Co. of Am. v. Unistar Fin. Serv. Corp.*,
    35 F. App'x 787 (10th Cir. 2002) ........................................................14

*Triple Up Ltd. v. Youku Toudo*,
    235 F. Supp. 3d 15 (D.D.C. 2017) ........................................................8

*Ukiah Adventist Hosp. v. F.T.C.*,
    981 F.2d 543 (D.C. Cir. 1992) ..............................................................17

*Williams v. GEICO Corp.*,
    792 F. Supp. 2d 58 (D.D.C. 2011) ........................................................18

**STATUTES**

28 U.S.C. 1406 ......................................................................................17, 18

28 U.S.C. § 1631 ..............................................................................2, 17, 18

**OTHER AUTHORITIES**

4A Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1069 (3d ed.
    2008) ..............................................................................................15

Exxon brings this motion to reconsider in an attempt to prevent a decision on the merits of Plaintiffs' claims.  Over the past 17 years of litigation, Exxon has repeatedly moved to dismiss or reconsider.  This motion, like the others, is without merit and should be denied.

*Bristol-Meyers*, as the decision itself explains, concerns a "straightforward application" of "settled principles of personal jurisdiction."  *Bristol-Meyers Squibb v. Superior Court of California*, 137 S. Ct. 1773, 1783 (2017).  Exxon seeks to capitalize on the fact that *Bristol-Meyers* and this case both involve claims of "non-residents."  But the relevant conduct for personal jurisdiction has always been the conduct of the Defendant, not a plaintiff's connection to the forum.  *E.g.*, *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775 (1984).  *Bristol-Meyers* did not change the standards for jurisdiction applicable to the claims in this case and therefore does not present any basis for reconsideration or for reviving a personal jurisdiction defense waived well over a decade ago, as numerous courts faced with similar motions have already concluded.

As to EMOI, Exxon's motion mischaracterizes this Court's prior jurisdictional ruling which applied the same test for specific jurisdiction as the Supreme Court and fully comports with the Supreme Court's jurisprudence.  This Court, unlike the lower court in *Bristol-Meyers*, did not rest its personal jurisdiction analysis on parallel claims or aggregate unrelated contacts, but rather applied the traditional test for specific jurisdiction found in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  *See* Mem. & Op, Dkt. 340-1.  This Court's analysis remains sound.

As to EMC, EMC concedes that in the past 17 years it never once raised a personal jurisdiction objection.  EMC long ago consented to this Court's jurisdiction and *Bristol-Meyers* does not make a new personal jurisdiction defense available.  Moreover, *Bristol-Meyers* was

decided over a year ago, during which time EMC has continued to litigate this case, reiterating by its conduct that it has consented to the jurisdiction of this Court.

Finally, even if personal jurisdiction should be reconsidered (it should not) and is found lacking (it is not), the appropriate remedy would not be dismissal but first evaluation of Plaintiffs' remaining jurisdictional arguments, including alter ego, as well as jurisdictional discovery of EMC, and, in the unlikely event jurisdiction is afterwards found lacking, transfer to New Jersey or Delaware under 28 U.S.C. § 1631. Given the amount of time and energy the parties, this Court, and the Court of Appeals have invested in this litigation over the past 17 years, Exxon's continued efforts to delay the trial date and resolution on the merits should not be countenanced. This Court should deny Exxon's latest motion and set this case for trial.

## I.  RELEVANT BACKGROUND

**A.**  ***Bristol-Meyers* applied settled principles of specific jurisdiction and did not alter the standard applicable to this case**

*Bristol-Meyers* applied "settled principles regarding specific jurisdiction" to a class action filed in California state court and found that those "settled principles" "control this case." *Bristol-Meyers*, 137 S. Ct. at 1781. The Supreme Court reiterated that in order for a state court to exercise to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum, citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). *Bristol-Meyers*, 137 S. Ct. at 1780. The Court reiterated its explanation in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011), that under the existing standard "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Meyers*, 137 S. Ct. at 1780 (citing *Goodyear* 564 U.S. at 919).

The Supreme Court applied this standard to a class action, and held that the claims of non-resident class members had no relationship to California, because none of Defendants' relevant conduct occurred in that State: "BMS did not develop Plavix in California, did not create a marketing strategy in California, and did not manufacture, label, package or work on the regulatory approval of the product in California." *Id*. at 1778. The fact that other plaintiffs were injured in state and sustained the same injuries (as to which specific jurisdiction was conceded) did not authorize the State to assert specific jurisdiction over the parallel claims of nonresidents. *Id*. at 1781.

The Supreme Court concluded that California had erroneously adopted a "sliding scale" approach to specific jurisdiction, aggregating unrelated contacts because the claims of the non-residents were similar to the claims of California residents. *Id*. at 1778-79. The Supreme Court cited *Goodyear*, 564 U.S. at 918 and *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) as support for its holding that "the California Supreme Court's 'sliding scale approach' is difficult to square with our precedents." *Bristol-Meyers*, 137 S. Ct. at 1781. Despite the requirement that the claims "arise out of or relate to" the defendants' contacts with the forum, the California Supreme Court had found specific jurisdiction "without identifying ***any*** adequate link between the State and the non-residents' claims." *Id*. (emphasis added). The existence of parallel claims was not a sufficient basis for specific jurisdiction. *Id*.

**B.      This Court's personal jurisdiction ruling considered EMOI's contacts with the District of Columbia under *Helicopteros* and determined this suit arose out of or was related to those contacts**

This court utilized the same test for specific jurisdiction as did the Supreme Court in *Bristol-Meyers*, citing the same authority: "specific jurisdiction exists where the suit arises out of or is related to a defendant's contacts with the forum," citing *Helicopteros*, 466 U.S. at 414 n. 8. Mem. & Op., Dkt. 340, at 9.

This Court began its opinion by observing that "the pending motion turns on EMOI's contacts—including those of its alleged agents—with the District of Columbia **_and the relationship of those contacts to Plaintiffs' claims_**." Mem. & Op., Dkt. 340-1, at 2 (emphasis added).

This Court did not apply a sliding scale, aggregate unrelated contacts, or rely on parallel claims. This Court divided Plaintiffs' evidence into three categories of contacts and evaluated the first two categories (EMOI direct contacts and the contacts of EMOI's agent, Robert Haines), finding "Plaintiffs easily meet their burden to make a sufficient showing of personal jurisdiction." Mem. & Op., Dkt. 340-1, at 12. Unlike the California court, this Court evaluated EMOI's contacts with the District of Columbia and found they sufficiently related to Plaintiffs claims. *Id*. at 13 (EMOI's contacts with the District and Plaintiffs' claims "both center on EMOI's security policies and practices in Indonesia"); 17. This Court concluded it did not need to evaluate Plaintiffs' third jurisdictional argument, alter ego, at that time. *Id*. at 18

Plaintiffs' claims against EMOI include negligence, including negligent hiring and negligent supervision, and intentional tort claims based on liability, *inter alia*, for the conduct of joint employees and agents. Am. Compl., Dkt. 465. As such, conduct relevant to these claims includes setting and disseminating minimum standards, policies and practices, training, risk management, as well as conduct that was crucial to continuing operations, such as deflecting attention from the abuses and coordinating with the Indonesian government. This Court found that such conduct, as well as conduct relevant to the Exxon's decision to hire, retain, and supervise the security personnel, occurred in the District of Colombia.

For example, Robert Haines worked in the District of Colombia on contacting and coordinating with the Government of Indonesia including on "reimbursement to the military for

maintaining security," and "how to provide security for Mobil operations."  Mem. & Op., Dkt. 340-1, at 3, 4.  According to documents reviewed by the Court, "security was a key topic" of Mr. Haines' meetings with Indonesian representatives in Washington D.C.  *Id*. at 4.  Mr. Haines drafted statements and testimony for EMOI to present to the government of Indonesia on security issues.  *Id*. at 6.  Mr. Haines was also involved in the decision-making on the use of the troops, frequently communicating with the President of EMOI, Mobil's CEO, and the Indonesian government directly on issues related to the military security personnel, including on concerns regarding their training. *Id*. at 3.

Mr. Haines also worked to reduce opposition to the use of military security personnel and deflect scrutiny of their human rights abuses.  He arranged and attended multiple meetings in the District of Columbia with human rights groups, business groups, the Indonesian government and the State Department specifically "to discuss the Aceh security situation and the alleged tortious conduct of the security personnel" as well as "to discuss torts allegedly committed in Aceh and EMOI's control over the military personnel guarding EMOI's facilities."  *Id*. at 4, 6.  In addition, EMOI employees traveled to DC to receive training on how to handle these types of public relations matters. *Id*. at 5.

Exxon also held a security conference in Washington, D.C., where Exxon security policies and practices were developed and employees, including EMOI employees, received training on security related issues, including on standards and training for security guards and using host government security.  *Id*. at 3, 14-15 (describing conference documents regarding the "Security Guard Program" which "defines training requirements, minimum standards" for security personnel).  The conference included a management meeting regarding the Asia/Pacific region (which included EMOI), as well as meetings and trainings, including on "Risk

Management."  *Id*. at 14-15.  The court concluded that "this single conference presents a strong

case for personnel jurisdiction."  *Id*.

This conduct was sufficient under *Helicopteros*.  *Bristol-Meyers* did not alter that test,

and indeed noted that in-forum conduct such as creating a marketing strategy or working on

regulatory approval would have been sufficient in that case. *Id*. at 1778.

## II.  ARGUMENT

**A.**    *Bristol-Meyers* **provides no basis for reconsidering this Court's decision on personal jurisdiction over EMOI**

1.    **The legal standard for reconsideration requires the movant to show there has been a controlling or significant change in the law**

EMOI seeks reconsideration under Rule 54(b) because it argues that "a controlling or

significant change in the law has occurred."  Defs' Mem., Dkt. 633, at 9; *see also Shea v.

Clinton*, 850 F. Supp. 2d 153, 158 (D.D.C. 2012) (reconsideration may be granted "where a

significant change in the law occurred after the decision was rendered").  EMOI, the moving

party, has the burden of showing that reconsideration is warranted and that some harm or

injustice would result if reconsideration were to be denied.  *Beck v. Test Masters Educ. Servs.

Inc*., 7 F. Supp. 3d 46, 48 (D.D.C. 2013) (observing "[t]hese grounds are quite narrow"); *Shea*,

850 F. Supp. 2d at 158.

 "The district court's discretion to reconsider a non-final ruling is, however, limited by the

law of the case doctrine and 'subject to the caveat that where litigants have once battled for the

court's decision, they should neither be required, nor without good reason permitted, to battle for

it again.'" *Singh v. George Washington Univ*., 383 F. Supp. 2d 99, 101 (D.D.C. 2005); *see also

Shea*, 850 F. Supp. 2d at 157 ("as a rule [a] court should be loathe to [revisit its own prior

decisions] in the absence of extraordinary circumstances" (brackets in original)).

The narrow standard for reconsideration is not met here.

2.     ***Bristol-Meyers***, **which engaged in a "straightforward application" of "settled principles of personal jurisdiction" did not change the standard for specific jurisdiction**

EMOI argues only one basis for reconsideration, that it is entitled to reconsideration because "a controlling or significant change in the law has occurred." Defs' Mem., Dkt. 633, at 9. But *Bristol-Meyers* is not a controlling or significant change in the law relevant to this case. EMOI has not met its burden to show reconsideration is warranted, particularly as this Court applied the same standard as the standard cited by the Supreme Court in *Bristol-Meyers*. *See Colbert v. District of Columbia*, 110 F. Supp. 3d 251, 257–58 (D.D.C. 2015) (denying reconsideration where here has been no controlling or significant change in the law); *Beck*, 7 F. Supp. 3d at 48 ("there has been no change in controlling law … the only change in this case since Judge Bates ruled is that the matter is now before these chambers...").

*Bristol-Meyers*, as the opinion itself states, engaged in a "straightforward application" of "settled principles of personal jurisdiction." *Bristol-Meyers*, 137 S. Ct. at 1783. The Supreme Court applied the same standard for specific jurisdiction articulated by *Helicopteros*, 466 U.S. at 414, and reiterated in *Goodyear*, 564 U.S. at 918. *Bristol-Meyers*, 137 S. Ct. at 1781. That is the same standard this Court applied in this case. Mem. & Op., Dkt. 340-1, at 9 (relying on standard found in *Helicopteros*, 466 U.S. at 414). *Supra* p. 3.

Because *Bristol-Meyers* engaged in a "straightforward application" of "settled principles of personal jurisdiction," *Bristol-Meyers*, 137 S. Ct. at 178, it is not an intervening change in controlling law. Courts faced with motions similar to Exxon's have, as this Court should, rejected motions for reconsideration on this basis. *See, e.g., In re Morning Song Bird Food Litig*., No. 12CV01592 JAH-AGS, 2018 WL 1382746, at *2 (S.D. Cal. Mar. 19, 2018) ("This Court finds *Bristol-Myers* is not an intervening change in controlling law."); *Lindsley v. Am. Honda Motor Co., Inc*., No. CV 16-941, 2017 WL 3217140, at *2 (E.D. Pa. July 28, 2017)

(rejecting argument that *Bristol-Meyers* was an intervening change in controlling law: contrary to defendant's assertions, the Supreme Court "made its decision through a 'straightforward application' of 'settled principles of personal jurisdiction'" and denying reconsideration).  To the extent Exxon argues *Bristol-Meyers Squib* is a change in controlling law that forms the basis for reconsideration of the District of Columbia's "discernable relationship" test, its own authority contradicts that argument.  First, as Exxon's own authority points out: *Bristol-Meyers* did not address the contours of the causal connection between a defendant's in forum contacts and a plaintiff's claims.  *See Cockrum v. Donald J. Trump for President*, Civ. A. No. 17-1370 (ESH), 2018 WL 3250445, at *11 (D.D.C. July 3, 2018).  Indeed, the initial case cited by Exxon as support for rejecting the "discernable relationship" test was decided before *Bristol-Meyers* and relies largely on Third Circuit authority decided in 2007.  *Triple Up Ltd. v. Youku Toudo*, 235 F. Supp. 3d 15, 26 (D.D.C. 2017).  More importantly, as Exxon's authority also points out, to this day the proper standard for the "arising out of or related to" test "remains an open question in this Circuit" and the "Supreme Court has yet to pass on this issue." *Triple Up*, 235 F. Supp. 3d at 26; *see also Helicopteros*, 466 U.S. at 416 n.10; *Cockrum*, 2018 WL 3250445 at *11.  As such, there has been no change in controlling law that would justify reconsideration of this Court's opinion, particularly as this Court's decision fully comports with due process.  *See, e.g., Singh* , 383 F. Supp. 2d at 102 ("Such an argument is not a valid argument for reconsideration. First, none of the cases the [movant] cites are binding precedent in the District of Columbia Circuit. The Court would be free to disagree with the reasoning contained in any or all of the cited cases.").

Finally, even if Exxon had met its burden to justify reconsideration, reconsideration would show that this Court's prior opinion fully comports with Supreme Court precedent.

Exxon repeatedly asserts that this Court neglected to consider whether there was any connection between its contacts in the District of Columbia and Plaintiffs' claims because "such an analysis was not required at the time."  Defs' Mem., Dkt. 633, at 4, 10.  That is incorrect.  This Court began its analysis by observing that "the pending motion turns on EMOI's contacts—including those of its alleged agents—with the District of Columbia ***and the relationship of those contacts to Plaintiffs' claims***."  Mem. & Op., Dkt. 340-1, at 2 (emphasis added).  That is because "to establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  *GTE New Media Servs. Inc. v. BellSouth Corp*., 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir.1995); *Azamar v. Stern*, 662 F. Supp. 2d 166, 172 (D.D.C. 2009); *Fasolyak v. The Cradle Soc'y, Inc*., Civ. A. No. 06 01126 TFH, 2007 WL 2071644, at *4 (D.D.C. July 19, 2007) ("[e]ven when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause").

To evaluate EMOI's contacts, this Court applied the traditional test for specific jurisdiction which was first enunciated by the Supreme Court in *Helicopteros* and is the same standard that the Supreme Court utilized in *Bristol-Meyers*.  *See* Mem. & Op., Dkt. 340-1, at 9 ("specific jurisdiction exists where the suit arises out of or is related to a defendants' contacts with the forum."); *see also Supra* p. 3.

This Court did not employ a "sliding scale," aggregate unrelated contacts, rely on "general activities" or rest its finding on "parallel injuries."  *Bristol-Meyers* found the California court erred because it did not identify "***any***" adequate connection between the state and the non-

resident's claims and specifically criticized the California court's reliance on unrelated contacts and parallel claims by other plaintiffs as inconsistent with well-established precedent.  *Supra* p. 3. That is not the case here, where this Court found the in-forum contacts were, in fact, related to Plaintiffs claims and concerned the very security policies and practices in Indonesia at issue, as described in more detail above.  *Supra* pp. 4-6.

Exxon overlooks the nature of Plaintiffs claims, which include negligent supervision, negligent hiring, and aiding and abetting intentional torts by providing logistical and other support, as well as supervision, from the United States.  Plaintiffs alleged that Exxon knew that the security personnel were unfit and dangerous, but hired and continued to retain them despite reports of abuses, and failed to adequately supervise the security personnel or take steps to prevent the forseeable abuses.  Am Compl., Dkt. 465, ¶¶ 66-130.  This Court found, for example, that Mr. Haines specifically coordinated with the Government of Indonesia, in the District of Columbia, on how to provide security, on the reimbursement for maintaining security, and on other issues related the security personnel including training and human rights abuses.  *Supra* pp. 4-6.  This Court also found that Mr. Haines was involved in the decision making on the use of the troops and that he worked to minimize and deflect scrutiny of the abuses, enabling the conduct to continue.  Mem. & Op., Dkt. 340-1, at 2, 6, 7.  This Court also found that training was provided to EMOI employees in the District of Columbia on policies and practices for managing security guards.  *Id.* at 5.  Defendants criticize the "related to" test employed by this Court, but that test is the test employed by the D.C. Court of Appeals and remains in use – not withstanding Exxon's citation of two critical cases – in this jurisdiction.  E.g. *Rundquist v. Vapiano SE*, Civ. A. No. 09-2207 BAH, 2012 WL 5954706, at *8 (D.D.C. Nov. 9, 2012) (D.C. Court of Appeals has endorsed third approach, that claims must be related to or substantially connected with forum

contacts).  Even if *Bristol-Meyers* were to call into question some applications of the D.C.

statute, this Court's analysis fully comports with the Constitution.  The test as applied by this

Court is consistent with *Bristol-Meyers*, and with longstanding caselaw.  *Bristol-Meyers*, 137 S.

Ct. at 1780, 1778 (suit must be "deriving from, or connected with" in forum conduct and

describing qualifying in-forum conduct including the creation of a marketing strategy or work on

regulatory approval); *Helicopteros*, 466 U.S. at 416 (suit must "arise out of or relate to" in forum

conduct).  This Court found the in-forum conduct "easily" satisfied the *Helicopteros* relatedness

test.  Mem. & Op., Dkt. 340-1, at 12.  The conduct also easily satisfies the test Defendants

advocate, but which has not been adopted by the D.C. Court of Appeals.

**B.**  ***Bristol-Meyers* does not provide a basis for reviving a personal jurisdiction defense that was waived long ago**

    1.  **Personal jurisdiction is waived if not asserted, unless the defense was unavailable, which is not the case here**

It is well settled that the defense of personal jurisdiction is "lost by failure to assert it

seasonably, by formal submission in a cause, or by submission through conduct."  *E.g.*, *Neirbo*

*Co. v. Bethlehem Shipbuilding Corp*., 308 U.S. 165, 168 (1939); *Ins. Corp. of Ir. v. Compagnie*

*des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal

jurisdiction represents first of all an individual right, it can, like other such rights, be waived").

Once waived, the defense can neither be reclaimed by a defendant nor restored by the court.

*E.g.*, *O'Brien v. R.J. O'Brien & Assocs., Inc*., 998 F.2d 1394, 1399 (7th Cir. 1993) (once the

defendant has waived objections and submitted to the jurisdiction of the court, "the court is

powerless to dismiss the suit for lack of personal jurisdiction"); *Kabbani v. Int'l Total Servs*.,

Civ. A. No. 91-0391, 1991 WL 251863, at *1 (D.D.C. Nov. 12, 1991).  An exception to this

strict rule is where the defense was unavailable, *see* Fed. R. Civ. Pro. 12(g), as Exxon argues

here.

2.      **EMC concedes it never raised personal jurisdiction in this Court**

Exxon concedes that EMC never raised personal jurisdiction in this Court.  Defs' Mem.,

Dkt. 633, at 13 ("EMC has never challenged personal jurisdiction in this court.").  EMC long ago

waived any available personal jurisdiction defense and consented to this Court's jurisdiction.

EMC filed Answers in 2006 and 2015 without raising a personal jurisdiction defense.  Dkt. 153

& July 25, 2015 Answer (filed under seal).  EMC not only moved for summary judgment

without arguing raising a personal jurisdiction, but filed an appeal and a cross appeal without

raising personal jurisdiction.  *See* Dkts. 412, 415.  EMC has continued to litigate this case for 17

years without raising personal jurisdiction.  Defs' Mem., Dkt. 633, at 13.  This conduct

indisputably waives EMC's objection to personal jurisdiction. *E.g.*  *Ins. Corp. of Ir. v.*

*Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (defense of lack of personal

jurisdiction is waived if not timely raised in answer or responsive pleading); *Chatman-Bey v.*

*Thornburgh*, 864 F.2d 804, 813 (D.C. Cir. 1988); *Shatsky v. Syrian Arab Rep.*, No. 02-02280

(RJL), slip op., Dkt. 300, at 2 (D.D.C. Oct., 29, 2014) (waiver appropriate where defendants filed

for summary judgment without arguing personal jurisdiction); *Kabbani,* 1991 WL 251863, at *1.

3.      ***Bristol-Meyers* applied settled principles of personal jurisdiction; it did not
        make a new defense available**

EMC argues that it can raise personal jurisdiction at this late date because it had no basis

to challenge personal jurisdiction "until last year" when *Bristol-Meyers Squib* was decided.

Defs' Mem., Dkt. 633, at 13.  The plain text of *Bristol-Meyers Squib* dooms this argument.

*Bristol-Meyers Squib* did not make a new defense available to EMC, contrary to Exxon's

argument.  *Bristol-Meyers Squib*, as the opinion itself states, engaged in a "straightforward

application" of "settled principles of personal jurisdiction."  *Bristol-Meyers*, 137 S. Ct. at 1783.

The Supreme Court applied the standard for specific jurisdiction articulated by *Helicopteros* 466

U.S. at 414, and reiterated in *Goodyear*, 564 U.S. at 918.  *Bristol-Meyers*, 137 S. Ct. at 1781.

That is the same standard this Court applied in this case.  Mem. & Op., Dkt 340-1, at 9 (relying

on standard found in *Helicopteros*, 466 U.S. at 414).   Exxon filed its Answers without raising a

personal jurisdiction defense well after these bedrock cases were decided.

Because *Bristol-Meyers* did not announce a new standard for specific jurisdiction that is

applicable here, it is not an intervening change in controlling law and no "new" previously

unavailable defense has become available.  Courts have, as a result, rejected efforts to revive a

waived defense based on *Bristol-Meyers*.  *See, e.g., Sobol v. Imprimis Pharm.,* Civ. A. No. 16-

14339, 2018 WL 2424009, at *2 (E.D. Mich. May 29, 2018) ("But the *Bristol-Myers'* majority

did not state that it had created a new personal jurisdiction defense; it said, 'Our settled

principles regarding specific jurisdiction control this case.'); *Alvarez v. NBTY, Inc.,* No. 17-CV-

00567-BAS-BGS, 2017 WL 6059159, at *6 (S.D. Cal. Dec. 6, 2017) ("Although *Bristol-Myers*

is arguably instructive to federal courts handling class actions, its holding did not create a new

defense for Defendants that was not available before its decision.").  EMC cannot use *Bristol-*

*Meyers* to revive an indisputably waived personal jurisdiction defense. *E.g. Chatman-Bey v.*

*Thornburgh*, 864 F.2d at 813, n.9; *Shatsky*, No. 02-02280 (RJL), slip op., Dkt. 300.

EMC argues that it "reasonably believed" that EMC's maintaining an office, along with

other factors, would make a challenge to jurisdiction futile until *Bristol-Meyers* was decided.

Defs. Mem., Dkt. 633, at 13-14.  But *Bristol-Meyers* says nothing about the jurisdictional

significance of a branch office.  On the other hand, *Goodyear*, 564 U.S. 915, an earlier Supreme

Court case concerning personal jurisdiction, limited general jurisdiction to a corporation's place

of incorporation or its principal place of business, rather than a branch office.  *Goodyear* was

decided in 2011.  EMC filed an Answer in 2015, without raising a personal jurisdiction defense

based on *Goodyear* and continued to litigate this action in the intervening six years, filing motions and submitting to the jurisdiction of the court.  No personal jurisdiction objection based on *Goodyear* can be raised now.  *E.g. Gilmore v. Palestinian Interim Self-Gov't Auth.*, 8 F. Supp. 3d 9, 13 (D.D.C. 2014), aff'd, 843 F.3d 958 (D.C. Cir. 2016) (defense must be raised as soon as it is apparent).

To the extent, EMC argues that *Bristol-Meyers* made a new defense available based on a change in the "arising out of related to" test, as discussed above, *supra* pp. 10-11, Exxon's own authority dooms that argument.  *Alvarez* 2017 WL 6059159, at *5 ("It is difficult to reconcile Defendants' argument that this defense was unavailable to them before the *Bristol-Myers* decision when they cite to case law that provides otherwise.").  As Exxon's own authority demonstrates, *Bristol-Meyers* does not speak to the contours of the causal test for specific jurisdiction at all, therefore it plainly cannot create a basis for reviving a waived personal jurisdiction defense on that ground.  *Supra* p. 8.

Finally, even if all of the above were not true, EMC continued to litigate in this Court after *Bristol-Myers* was decided, including by conducting discovery and responding to and filing motions without raising personal jurisdiction objections.  This conduct constitutes a waiver. *E.g. Dem. Rep. Congo v. FG Hemisphere Assocs., LLC*, 508 F.3d 1062, 1065 (D.C. Cir. 2007) (13 months of litigation constitutes waiver); *Travelers Cas. & Sur. Co. of Am. v. Unistar Fin. Serv. Corp.*, 35 F. App'x 787, 789 (10th Cir. 2002) (Rule 12 mandates a waiver of defenses if not presented at the first available opportunity).

4.      *Bristol-Meyers* **does not apply to the ATS claim**

*Bristol-Meyers* concerned the due process limitation on the exercise of specific

jurisdiction by a state court, which is governed by the Fourteen Amendment.  *Bristol-Meyers*,

137 S. Ct. at 1783.  Where a federal statute authorizes jurisdiction in a federal court, the

constitutional outer limits are governed by the Fifth Amendment. 4A Charles Alan Wright &

Arthur Miller, Fed. Prac. & Proc. Civ. § 1069 (3d ed. 2008).  *Bristol-Meyers* limited its holding

to the exercise of jurisdiction by a state court, and expressly did not opine on whether the Fifth

Amendment imposes the same restrictions on the exercise of specific jurisdiction by a federal

court. *Bristol-Meyers*, 137 S. Ct. at 1783.

As a result, *Bristol-Meyers* has no impact on personal jurisdiction over EMC for the ATS

claim. *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 859 (N.D. Cal. 2018), order clarified,

No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018) ("where a federal court

presides over litigation involving a federal question, the due process analysis does not

incorporate the interstate sovereignty concerns that animated *Bristol-Myers*").

EMC has repeatedly manifested its consent to this Court's jurisdiction through its

conduct.  The parties have litigated a summary judgement motion on the merits, taken

depositions, exchanged documents, filed multiple discovery motions, and litigated two appeals.

Having actively participated in this litigation for a lengthy time period and sought affirmative

relief from this Court on multiple occasions, EMC may not now "pull its personal jurisdiction

defense out of the hat like a rabbit."  *Shatsky*, No. 02-02280 (RJL), slip op., Dkt. 300, at 2.

(quoting *Hunger v. U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, No.

994042, 2000 WL 147392 at *3 (10th Cir. 2000).

**C.     Defendants' requested relief cannot be granted: Plaintiffs' remaining jurisdictional arguments related to EMOI must be considered, jurisdictional discovery of EMC is necessary, and, finally, transfer to Delaware or New Jersey, not dismissal, is the presumptive remedy for lack of jurisdiction**

Finally, Defendants' requested relief cannot be granted.

As to EMOI, even if personal jurisdiction should be reconsidered (it should not) and is found lacking (it is not), additional briefing and consideration of Plaintiffs' remaining arguments for jurisdiction are required.  First, this Court did not reach Plaintiffs' remaining jurisdictional arguments, including alter ego.  Mem. & Op., Dkt. 340-1, at 18.   Those arguments must be considered.  Second, Plaintiffs must have an opportunity to gather evidence and submit updated briefing to meet whatever new standard might be adopted.

As to EMC, Plaintiffs must have the opportunity to take jurisdictional discovery and to submit briefing on EMC's contacts with the District of Columbia.  *GTE New Media*, 199 F.3d at 1351–52 (granting jurisdictional discovery where "record now before this court is plainly inadequate" and holding "there is absolutely no merit to GTE's bold claim that the parent companies and subsidiaries involved in this lawsuit should be treated identically. Jurisdictional discovery will help to sort out these matters … [plaintiff] is entitled to pursue precisely focused discovery aimed at addressing matters relating to personal jurisdiction.").  "This Circuit's standard for permitting jurisdictional discovery is quite liberal," and is permitted even where the "Plaintiff has not made out a prima facie case of jurisdiction as required by other jurisdictions." *Diamond Chem. Co. v. Atofina Chemicals, Inc*., 268 F. Supp. 2d 1, 15 (D.D.C. 2003).  Only jurisdictional discovery of EMOI was undertaken.  Given the high volume of United States-based activity evident in this case and alleged in the Amended Complaint, e.g. Am. Compl., Dkt. 465, ¶¶ 75-104, Plaintiffs should be permitted to determine how much of the conduct was routed through the District of Colombia.

Finally, if the Court were, after jurisdictional discovery and briefing, find a lack of jurisdiction, there is a clear presumption in favor of transfer, not dismissal.  Under 28 U.S.C. § 1631, "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action [ ] to any other such court in which the action . . . could have been brought at the time it was filed . . . ." (Emphasis added); see also 28 U.S.C. § 1406(a) (authorizing transfer).  Thus, in the unlikely event this Court finds personal jurisdiction is lacking, the claims should be transferred to districts where they would have been subject to personal jurisdiction in 2001, when this case was filed. *See, e.g., Goldlawr v. Heiman*, 369 U.S. 463, 467 n. 11 (1962) (transfer is in the "interest of justice," given "difficulties which may arise in determining where corporations can be found or transact business"); *Chavez v. Dole Food Co., Inc.*, 863 F.3d 205 (3d Cir. 2016) (holding lower court "had a statutory obligation to transfer" claims against one defendant to another district rather than dismiss); *Britell v. United States*, 318 F.3d 70, 73-74 (1st Cir. 2003) (noting "presumption in favor of transfer"); *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1075 (9th Cir. 2001); *Ukiah Adventist Hosp. v. F.T.C.*, 981 F.2d 543, 549 (D.C. Cir. 1992); *Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983) (reversing district court which refused to transfer an "old case").

Under the law of this Circuit, transfer is "in the interest of justice" where otherwise the cause of action would be barred by the statute of limitations.  *See Sinclair*, 711 F.2d at 294 ("Transfer is particularly appropriate where, as here, without a transfer the cause of action would be barred by the running of the applicable statute of limitations" citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 430 (1965)); *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 284-86 (D.D.C. 2015) (transfer furthers "interest of justice" where plaintiffs' claims would be time

barred); *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 64 (D.D.C. 2011) ("Given the presumption in favor of transfer over dismissal, and the prospect of time-barring Williams if the case is dismissed, the Court concludes that the interest of justice requires transfer" (internal citations omitted).

EMC was at all times incorporated in New Jersey and EMOI was incorporated in Delaware in 2001.  Jurisdiction in both districts existed at the time of filing.  Transfer to those jurisdictions in lieu of dismissal is mandated by 28 U.S.C. § 1631 and 28 U.S.C. 1406.

## III.  <u>CONCLUSION</u>

For the above reasons, Exxon's motion for reconsideration and dismissal must be denied.

Dated: September 17, 2018                    Respectfully submitted,

/s/ Agnieszka M. Fryszman
Agnieszka M. Fryszman, DC Bar No.
459208
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave., N.W.
East Tower, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
afryszman@cohenmilstein.com

Paul L. Hoffman
**SCHONBRUN DESIMONE SEPLOW HARRIS HOFFMAN & HARRISON, LLP**
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Tel: 310-396-0731
Fax:  310-399-7040

Terrence P. Collingsworth, DC Bar No.
471830
**INTERNATIONAL RIGHTS
ADVOCATES**
621 Maryland Ave., N.E.
Washington, DC 20002
Tel: (202) 255-2198
tc@iradvocates.org

*Attorneys for Plaintiffs*