**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN DOE I, *et al.*, | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| EXXON MOBIL CORPORATION, et al., | ) Civ. No. 01-1357 (RCL) |
| Defendants. | ) Electronically Filed |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS THE ATS CLAIMS</u>**

## <u>TABLE OF CONTENTS</u>

I. Introduction ................................................................................................................... 1

II. Relevant Background ................................................................................................... 3

III. Argument .................................................................................................................... 4

      A.     Legal Standard ................................................................................................ 4

            1.     *Jesner* did not change the legal landscape applicable to this case .............. 5

      B.     The Supreme Court has repeatedly declined to eliminate liability for
            domestic corporations under the ATS ........................................................... 6

            1.     *Jesner* did not alter the prevailing view that domestic corporations
                  can be liable under the ATS ................................................................ 6
            2.     The correct application of *Sosa* in light of federal common law
                  mandates that corporations are liable for tort claims, including
                  under the ATS ..................................................................................... 8

      C.     Exxon's arguments regarding "diplomatic strife" are unavailing: this Court
            and the Court of Appeals have consistently given substantial weight to
            Executive Branch foreign policy concerns ................................................... 9

      D.     *Jesner* does not require this Court to reconsider its prior decision that
            aiding and abetting liability exists under the ATS ..................................... 12

IV. Conclusion ................................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adhikari v. Kellogg Brown & Root, Inc.*
    845 F.3d 184 (5th Cir. 2017) ................................................................................2, 6, 14

*Al Shimari v. CACI Premier Tech., Inc.*,
    758 F.3d 516 (4th Cir. 2014) .................................................................................6

*Al Shimari v. CACI Premier Tech., Inc.*,
    No. 1:08-CV-827, 2018 WL 3118183 (E.D. Va. June 25, 2018) ...........................7

*Aziz v. Alcolac, Inc.*,
    658 F.3d 388 (4th Cir. 2011) .................................................................................14

*Beck v. Test Masters Educ. Servs. Inc.*,
    7 F. Supp. 3d 46 (D.D.C. 2013) .............................................................................5

*Blackmer v. United States*,
    284 U.S. 421 (1932) ..............................................................................................9, 11

*Brokaw v. N.J. R. & T. Co*
    32 N.J.L. 328 (1867) .............................................................................................8

*Cabello v. Fernandez-Larios*,
    402 F.3d 1148 (11th Cir. 2005) ............................................................................14

*Central Bank of Denver v. First Interstate Bank*,
    511 U.S. 164 (1994) ..............................................................................................13

*Chestnut Hill & Spring House Turnpike Co. v. Rutter*,
    4 Serg. & Rawle 6 (Pa. 1818) ...............................................................................8

*Cook Cty., Ill. v. U.S. ex rel. Chandler*,
    538 U.S. 119 (2003) ..............................................................................................8

*Doe I v. Nestle USA, Inc.*,
    766 F.3d 1013 (9th Cir. 2014) ..............................................................................14

*Doe v. Drummond Co., Inc.*,
    782 F.3d 576 (11th Cir. 2015) ..............................................................................14

*Doe v. Exxon Mobil Corp.*,
    473 F.3d 345 (D.C.Cir. 2007) ..............................................................................2, 9, 12

*Doe v. Exxon Mobil Corp.*,
    654 F.3d 11 (D.C. Cir. 2011), *vacated in part on other grounds*, 527 F. App'x
    7 (D.C. Cir. 2013) ............................................................................... 2, 3, 6, 7, 9-13

*Doe v. Exxon Mobil Corp.*,
    69 F. Supp. 3d 75 (D.D.C. 2014) ................................................................ 1, 2, 4, 10, 12

*Doe v. Exxon Mobil Corp.*,
    No. 01-1357(RCL), 2015 WL 5042118 (D.D.C. July 6, 2015) ......................... 1, 2-4, 7, 11-13

*Flomo v. Firestone Nat. Rubber Co., LLC*,
    643 F.3d 1013 (7th Cir. 2011) ......................................................................... 6

*Jesner v. Arab Bank, PLC*,
    138 S. Ct 1386 (2018) ................................................................... 1, 2, 5-9, 11-14

*Khulumani v. Barclay Nat. Bank Ltd.*,
    504 F.3d 254 (2d Cir. 2007) ........................................................................... 2

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013) ...................................................................... 1, 2, 6-8, 10, 11

*Laker Airways, Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984) ................................................................... 9, 11

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) .......................................................................... 5

*Licci v. Lebanese Canadian Bank, SAL*,
    834 F.3d 201 (2nd Cir. 2016) ......................................................................... 14

*Mastafa v. Chevron Corp.*,
    770 F.3d 170 (2nd Cir. 2014) ......................................................................... 14

*Nahl v. Jaoude*,
    2018 U.S. Dist. LEXIS 100056 (S.D.N.Y. June 14, 2018) ................................. 14

*Owens v. BNP Paribas*,
    897 F.3d 266 (D.C. Cir. 2018) ........................................................................ 13

*Philadelphia, W., & B.R. Co. v. Quigley*,
    62 U.S. 202 (1859) .................................................................................... 2, 8

*Riddle v. Proprietors of Merrimack River Locks & Canals*,
    7 Mass. 169 (1810) ......................................................................................... 8

*Rose v. Himely*,
    8 U.S. (4 Cranch) 241 (1808) ..................................................................... 9, 11

*Shea v. Clinton*,
   850 F. Supp. 2d 153 (D.D.C. 2012) ........................................................................5

*Sierra Club v. Khanjee Holding (US) Inc.*,
   655 F.3d 699 (7th Cir. 2011) ...................................................................................5

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) .............................................................................................1, 8

*Steele v. Bulova Watch Co.*,
   344 U.S. 280 (1952) ...........................................................................................9, 11

STATUTES

18 U.S.C. § 1091 ...........................................................................................................11

18 U.S.C. § 1651 ...........................................................................................................11

18 U.S.C. § 2340 ...........................................................................................................11

OTHER AUTHORITIES

18B Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Juris. § 4478.5 (2d
   ed. 1986) ...................................................................................................................5

Restatement (Third) of Foreign Relations Law §111 (1987) ........................................8

# I.  INTRODUCTION AND SUMMARY OF ARGUMENT

This Court has repeatedly rejected Defendants' argument that domestic corporations cannot be defendants under the Alien Tort Statute, including as aiders and abettors, *see, e.g., Doe v. Exxon Mobil Corp.*, No. 01-1357(RCL), 2015 WL 5042118 at *2 (D.D.C. July 6, 2015); ***Doe v. Exxon Mobil Corp.***, 69 F. Supp. 3d 75, 93 (D.D.C. 2014), and should deny Defendants' renewed motion to dismiss.  Defendants base their renewed motion on *Jesner v. Arab Bank, PLC*, 138 S. Ct 1386 (2018), but *Jesner* does not upend these holdings which were correct when decided and remain correct today.

In *Jesner*, the Supreme Court ruled narrowly on the issue of *foreign* corporate liability. *Jesner*, 138 S. Ct. at 1408.  Defendants ask this Court to hold, based on *Jesner*, that United States corporations, like foreign corporations, are not subject to the ATS.  Defs' Mem. in Support of Motion to Dismiss to Dismiss ATS Claims, Dkt. 634, at 8 ("Defs' ATS Mem.").  However, despite being squarely presented with its second opportunity to do so, the Supreme Court chose not to foreclose liability for domestic corporations, nor did it reinterpret *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) or *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013), which remain governing authority here.

Defendants' arguments are without merit for three primary reasons.  First, *Jesner's* holding on the question of corporate liability under the ATS was expressly limited to foreign corporations.  *Jesner*, 138 S. Ct. at 1406–07.  In so doing, the Court plainly and intentionally chose to preserve ATS liability for domestic corporations.  The Supreme Court has repeatedly declined to foreclose domestic corporate liability when squarely presented with this question. *See, e.g.*, *Jesner,* 318 S. Ct. at 1406; *Kiobel*, 569 U.S. at 125.  Multiple circuits – including the D.C. Circuit –  have concluded that corporations can be held liable for their wrongful conduct as long as that conduct "touches and concerns" the United States.  *See, e.g., Doe v. Exxon Mobil*

*Corp.*, 654 F.3d 11, 61–62 (D.C. Cir. 2011), *vacated in part on other grounds*, 527 F. App'x 7 (D.C. Cir. 2013); *see also Kiobel*, 569 U.S. at 125.  Moreover, federal common law permits corporations to be held liable for tort claims.  *See, e.g.*, *Philadelphia, W., & B.R. Co. v. Quigley*, 62 U.S. 202 (1859).  *Jesner* does nothing to alter this landscape.

Second, Circuit Courts, including this Circuit, uniformly hold that liability for aiding and abetting is available under the ATS.  *See, e.g.*, *Adhikari v. Kellogg Brown & Root, Inc.* 845 F.3d 184, 197, 199 (5th Cir. 2017); *Exxon Mobil*, 654 F.3d at 28 – 38; *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007).  This Court also previously determined that aiding and abetting liability exists under the ATS.  *E.g.*, *Exxon Mobil*, 2015 WL 5042118 at *9; *Exxon Mobil*, 69 F.Supp.3d at 93.  *Jesner*, which did not rule on aiding and abetting liability, provides no basis for reconsideration on this issue.  Under the ATS, this Court may impose liability on the Defendants for their own conduct, including for aiding and abetting torture and extrajudicial killing committed by Defendants' own paid security personnel.

Finally, Exxon highlights the concerns about diplomatic strife that prompted Supreme Court to reach its conclusion in *Jesner*.  This Court and the D.C. Circuit have consistently given substantial weight to the views of the Executive Branch.  This Court and the D.C. Circuit have considered Exxon's repeated requests for dismissal based on foreign policy concerns, and both the Court of Appeals (twice) and this Court have concluded and repeatedly reaffirmed – after giving the views of the Executive Branch substantial weight – that dismissal is not warranted. *E.g.*, *Exxon Mobil*, 654 F.3d at 61*; Doe v. Exxon Mobil Corp*., 473 F.3d 345, 354 (D.C.Cir. 2007); *Exxon Mobil*, 69 F. Supp. 3d at 92.  There have been no factual developments since this Court's 2015 decision to cause this Court to revisit the issue, particularly in light of the Court's

diligent and careful case management, which has been commended by the Court of Appeals in its opinions.

For all these reasons, the motion should be denied.

## II.  <u>RELEVANT BACKGROUND</u>

The relevant facts are set forth in the most recent opinion of the Court of Appeals, *Exxon Mobil*, 654 F.3d at 15-17 and of this Court, *Exxon Mobil*, 2015 WL 5042118, at *13 - *15.  In brief summary:

> [P]laintiffs claim that Exxon's security forces were comprised of members of the Indonesian military and that Exxon and its subsidiaries, which were incorporated at the time of the filing of the first complaint in New Jersey and Delaware, Doe I Compl. ¶¶ 17, 20, 23, retained these soldiers as guards for its natural gas facility even though Exxon was aware that the Indonesian army had committed human rights abuses in the past, id. ¶¶ 39–47; Doe I Am. Compl. ¶¶ 55–66; Doe VIII Compl. ¶¶ 39–59, and knew that performance of the security contract would lead to human rights violations by Indonesian soldiers against the residents of Aceh.

*Exxon Mobil*, 654 F.3d at 15.

"According to the complaints, these actions of the Indonesian military could be attributed to Exxon because they were committed by a unit dedicated only to Exxon's Aceh facility and Exxon had the authority "to control and direct[ ]" the soldiers' actions."  *Id*. at 16.

> Plaintiffs have alleged that EMC executives in the United States received briefings on abuses committed by Exxon security personnel in Aceh against the local population. Current Compl. ¶¶ 46–47, 49. Plaintiffs allege that this information was heard prior to plaintiffs' injuries. In particular, plaintiffs allege that EMC executives in the United States received reports that Exxon security personnel engaged in rape, torture, unlawful detention, assault, and killings. *Id.* ¶¶ 50–51. They also allege that EMC executives in the United States received reports from employees and advisors that the Indonesian military had a "poor reputation ... especially in the area of respecting human rights" and that their deployment in support of Exxon's operations risked "more of a possibility of an unfortunate incident." *Id.* ¶¶ 46, 48.

*Exxon Mobil*, 2015 WL 5042118, at *13.

"Plaintiffs have also alleged that EMC executives in the United States received reports that Exxon security personnel were committing human rights violations on Exxon property, using Exxon equipment. Current Compl. ¶¶ 50, 52. Additionally, staff allegedly warned EMC executives in the United States that supplying additional vehicles to the security personnel could lead to a greater likelihood of abuses by security personnel. Current Compl. ¶ 70." *Id.* at *14.

This Court concluded that "Plaintiffs have made numerous and detailed allegations of U.S.-based decision making":

> First, plaintiffs have alleged that EMC executives in the United States "planned and authorized the deployment of military security personnel." Current Compl. ¶ 106. EMC executives were allegedly involved in planning and authorizing the location of deployments, the tasks undertaken by the personnel, and the logistical support provided. *Id.*; *see also id.* ¶ 82 (describing specific deployment plans). Plaintiffs allege that "[t]hese deployments placed military security in proximity to and in contact with the local community, including Plaintiffs." *Id.* ¶ 83. Second. plaintiffs have alleged that U.S.-based EMC executives ordered the provision of supplies and vehicles for the Indonesian security personnel and that the underlying international law violations were committed using these supplies and vehicles. *Id.* ¶¶ 43, 89–91. Plaintiffs also allege that EMC employees in the United States sourced and priced the supplies provided. *Id.* ¶ 97.

*Id*. at *15.

Plaintiffs allege that they, or their decedents, were tortured, sexually assaulted, killed or otherwise abused by Exxon's paid military security personnel, who were under Exxon's direction and control. *Exxon Mobil*, 69 F.Supp. 3d at 83 (citing Complaint).

## III.  <u>ARGUMENT</u>

### A.  **Legal Standard**

Exxon seeks reconsideration of this Court's past orders on corporate liability and aiding and abetting, including *Exxon Mobil*, 2015 WL 5042118 and *Exxon Mobil*, 69 F. Supp. 3d 75. Because these questions implicate subject matter jurisdiction, Exxon argues that the Court "has a

continuing obligation to consider Defendants' objections to subject matter jurisdiction at any time." Defs' ATS Mem., Dkt. 634, at 8.

But there is no subject matter jurisdiction exception to the legal standard for reconsideration or to the law of the case doctrine. As Wright Miller points out, "[a]lthough a federal court is always responsible for assuring itself that it is acting within the limits of subject-matter jurisdiction statutes and Article III, this duty need not extend to perpetual reconsideration. A court may accept its own earlier determination supporting subject-matter jurisdiction…" 18B Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Juris. § 4478.5 (2d ed. 1986); *see also Sierra Club v. Khanjee Holding (US) Inc*., 655 F.3d 699, 703-705 (7th Cir. 2011) (declining to reconsider subject matter jurisdiction as "there are no 'significant differences' in the legal landscape that warrant re-examination of our jurisdictional ruling"); *LaShawn A. v. Barry*, 87 F.3d 1389, 1394, 1396 (D.C. Cir. 1996) (there is no  "jurisdictional question" exception to the law-of-the-case doctrine: "To repeat, no such exception exists.")

The legal standard for reconsideration requires the movant to show there has been a controlling or significant change in the law. *See also Shea v. Clinton*, 850 F. Supp. 2d 153, 158 (D.D.C. 2012) (reconsideration may be granted "where a significant change in the law occurred after the decision was rendered"); *see also* Dkt. 633 at 9 (Defendants cite same standard). Exxon, the moving party, has the burden of showing that reconsideration is warranted and that some harm or injustice would result if reconsideration were to be denied. *Beck v. Test Masters Educ. Servs. Inc*., 7 F. Supp. 3d 46, 48 (D.D.C. 2013); *Shea*, 850 F. Supp. 2d at 158.

1.     *Jesner* did not change the legal landscape applicable to this case

*Jesner* did not alter the legal landscape applicable to this case. *Jesner's* holding on the question of corporate liability in ATS cases was expressly limited to foreign corporations. *Jesner*, 138 S. Ct. at 1406–07. And *Jesner* did not address aiding and abetting liability. This

Court can therefore decline to revisit its prior rulings and reject Exxon's renewed motion. But, out of an abundance of caution, Plaintiffs will nonetheless address the merits of Exxon's argument.

**B.    The Supreme Court has repeatedly declined to eliminate liability for domestic corporations under the ATS**

In *Jesner*, the Supreme Court specifically declined to rule that ATS claims could not be brought against domestic corporations even though the question was squarely presented. The Court initially granted certiorari to determine "[w]hether the [ATS] categorically forecloses corporate liability[.]" Pet. for a Writ of Certiorari at i, *Jesner*, 138 S. Ct. 1386 (No. 16-499). However, the Court intentionally limited its holding to foreign corporations only.

The Court also had the opportunity to decide the issue of corporate liability in *Kiobel*, 569 U.S. at 125, and chose not to. After extensive briefing and oral argument on the applicability of corporate liability under the ATS, the Supreme Court ultimately decided the case on other grounds: the presumption against extraterritoriality. *Id.* Given the multiple opportunities presented to the Supreme Court to exempt domestic corporations from liability under ATS claims and the Supreme Court's repeated unwillingness to do so, Exxon's arguments have little traction.

1.    *Jesner* did not alter the prevailing view that domestic corporations can be liable under the ATS

Every Circuit Court to consider the issue of corporate liability in ATS cases prior to *Jesner*, except for the Second Circuit, has held that corporations can be held liable for their wrongful conduct as long as that conduct touches and concerns the United States. *Compare Adhikari*, 845 F.3d at 198-199 (considering liability of corporation); *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 530-31 (4th Cir. 2014); *Exxon Mobil*, 654 F.3d at 400-17 (extensive

analysis of corporate liablity); *Flomo v. Firestone Nat. Rubber Co., LLC,* 643 F.3d 1013, 1017–21 (7th Cir. 2011); *with Kiobel*, 621 F.3d at 120 (finding no corporate liability under the ATS).

Defendants' arguments on corporate liability have previously been rejected in this case by both this Court and the Court of Appeals.  *See Exxon Mobil*, 654 F.3d at 57; *Exxon Mobil*, 2015 WL 5042118, at *13-*15.  In an extensive and thorough analysis, the Court of Appeals concluded that "the law of every jurisdiction in the United States and of every civilized nation, and the law of numerous international treaties" all support corporate liability.  *Exxon Mobil*, 654 F.3d at 57.[1]  *Jesner*, which declined to eliminate domestic corporate liability although it was squarely presented with that question, does not provide a basis for this court to vacate its prior holding on this issue.

To date, no court has applied *Jesner* to overrule a previous decision on domestic corporate liability under the ATS.  Indeed, *Al Shimari v. CACI Premier Tech., Inc.*, No. 1:08-CV-827 (LMB/JFA), 2018 WL 3118183, *5 n. 6  (E.D. Va. June 25, 2018), observed that "[t]he vast majority of the circuits to have considered the question have adopted a rule allowing ATS claims to proceed against corporate defendants, see Pet. for a Writ of Certiorari at 3, 14–16, *Jesner*, 138 S.Ct. 1386 (No. 16-499), and *Jesner*'s careful limiting of the analysis and holding suggests to this Court that the *Jesner* Court did not intend to disturb this status quo with respect to domestic corporations."

---

[1] Exxon notes that the Circuit opinion has been vacated, Defs' ATS Mem., Dkt. 634 at 15, but as this Court explained, that "the expressed reasons for the order vacating the opinion had nothing to do with the issue of corporate liability under the ATS."  *Exxon Mobil*, 2015 WL 5042118, at *2.

2.      The correct application of *Sosa* in light of federal common law mandates that corporations are liable for tort claims, including under the ATS

*Jesner* does not undercut this Court's prior ruling allowing Plaintiffs' ATS claims to proceed against the domestic defendants. This Court's prior ruling was correct when it was decided, and remains so.[2]

*Sosa* held that courts may recognize claims based violations of specific, universal, and obligatory norms of customary international law. *Sosa,* 542 U. S., at 732.  International law, however, permits states to determine the means of enforcement, including whether corporations may be held liable, civilly or criminally, for such violations.[3]

Corporations have historically been subject to civil liability for torts under federal common law. *See, e.g.*, *Quigley*, 62 U.S. at 210, ("At a very early period, it was decided in Great Britain, as well as in the United States, that actions might be maintained against corporations for torts); *Chestnut Hill & Spring House Turnpike Co. v. Rutter*, 4 Serg. & Rawle 6, 17 (Pa. 1818); *Cook Cty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 125-26 (2003); *Brokaw v. N.J. R. & T. Co.*, 32 N.J.L. 328, 330-31 (1867); *Riddle v. Proprietors of Merrimack River Locks & Canals*, 7

---

[2] *See, e.g.,* Brief for the United States as Amicus Curiae Supporting Neither Party at 8–17, *Jesner*, 138 S. Ct. 1386 (No. 16-499), 2017 WL 2792284 at *8-*17; Brief of International Law Scholars as Amici Curiae in Support of Petitioners, *Jesner*, 138 S. Ct. 1386 (No. 16-499), 2017 WL 2859943. *See also* Brief of Amici Curiae Professors of Federal Jurisdiction and Legal History in Support of Plaintiffs-Appellants Seeking Petition for Rehearing En Banc at 2 n.3, *Kiobel*, 642 F.3d 268 Nos. 06-4800-CV, 06-4876-CV, 2010 WL 6288875.

[3] S*ee, e.g.*, L. Henkin, Foreign Affairs and the United States Constitution 245 (2d ed. 1996) ("International law itself . . . does not require any particular reaction to violations of law"); Denza, The Relationship Between International and National Law, in International Law 423 (M. Evans ed. 2006) ("[I]nternational law does not itself prescribe how it should be applied or enforced at the national level"); Restatement (Third) of Foreign Relations Law §111 cmt. h (1987) ("In the absence of special agreement, it is ordinarily for the United States to decide how it will carry out its international obligations"); Brief of International Law Scholars as Amici Curiae in Support of Petitioners at 9-10, *Jesner*, 138 S. Ct. 1386 (No. 16-499), 2017 WL 2859943.

Mass. 169, 188 (1810); *See also* Amicus Curiae Brief of Procedural and Corporate Law Professors in Support of Petitioners, *Jesner*, 138 S. Ct. 1386 (No. 16-499), 2017 WL 2822779.

Domestic corporations have consistently been held liable for torts outside of U.S. territory. *The Apollon*, 22 U.S. (9 Wheat.) 362, 370 (1824); *see also Rose v. Himely*, 8 U.S. (4 Cranch) 241, 279 (1808); *Steele v. Bulova Watch Co.*, 344 U.S. 280, 282-83 (1952); *Blackmer v. United States*, 284 U.S. 421 (1932); *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984). Thus, federal common law permits domestic corporations to be held liable under the ATS, as long as they have committed or aided and abetted a violation of the law of nations.

**C.     Exxon's arguments regarding "diplomatic strife" are unavailing: this Court and the Court of Appeals have consistently given substantial weight to Executive Branch foreign policy concerns**

The Court of Appeals (twice) and this Court have repeatedly given "substantial weight" to the foreign policy concerns of the Executive Branch. *E.g. Exxon Mobil*, 654 F.3d at 61; *Exxon Mobil*, 473 F.3d at 354.

The Court's view of Executive Branch concerns, however, differs from Exxon's view. As the Court of Appeals last described it in 2011:

Before this court are only:

(1) an ambiguous statement of interest by the State Department in 2002 regarding the plaintiffs' litigation, respecting both the federal statutory and non-federal tort claims;

(2) an *amicus* brief filed by the Solicitor General and the State Department's Legal Advisor emphasizing that the statement of interest did not constitute an explicit request for dismissal and affirming that the district court had mitigated the concerns of the United States regarding discovery;

(3) silence from the United States in the years since the United States' statement as *amicus* to the Supreme Court, notwithstanding this court's invitation in *Doe I* to file a further statement of interest; and

(4) an *amicus* brief filed by the United States in another circuit emphasizing that the United States will make an explicit request for dismissal when appropriate. Also lodged but not filed in this court is a letter of January 24, 2011 from the Indonesian Embassy expressing continuing objection to plaintiffs' lawsuits.

Given the United States' subsequent filings—and subsequent silence—the court concludes that it did not misinterpret the Legal Advisor's 2002 statement of interest.

*Exxon Mobil*, 654 F.3d at 61.  This is still the status quo, as Exxon concedes.  Defs' ATS Mem., Dkt. 634 at 12-13 (citing 2002 and 2008 submissions from the State Department).  In the past, even the Executive Branch has distanced itself from Exxon's descriptions of the foreign policy impact of this litigation. *E.g.* Brief for the United States as Amicus Curiae at 19, *Exxon Mobil Corp. v. Doe*, (No. 07-81) (recommending Exxon's petition for certiorari be denied, noting "the majority's discussion of the mandamus issue indicates that, if it had believed the circumstances of this case to be as petitioners paint them, petitioners would have been granted the relief they seek").  Exxon raised the same foreign policy concerns it raises now after *Kiobel* was decided, and those concerns are less, not more, compelling now that the passage of time has demonstrated that Exxon's projected consequences have not come to pass.

Moreover, ATS jurisdiction over domestic corporations is not an affront to foreign sovereignty, because the U.S. has its own sovereign interests in exercising jurisdiction over the conduct of its own citizens, including its corporate citizens.  Holding U.S. corporations liable for customary law violations is primarily a matter of U.S. responsibility to police the actions of its own citizens.  Moreover, as this Court has noted, Exxon Mobil Corporation is not amenable to suit in Indonesia, *Exxon Mobil*, 69 F. Supp. 3d at 91, making this the only forum available to Plaintiffs.

As early as 1824, The Supreme Court held that "[t]he laws of no nation can justly extend beyond its own territories, except so far as regards its own citizens." *The Apollon*, 22 U.S. at 370;

*see also Rose*, 8 U.S. at 279; *Steele*, 344 U.S. at 282-83; *Blackmer*, 284 U.S.; *Laker Airways*, 731 F.2d. Congress has also passed multiple statutes indicating that domestic corporations could be held liable for conduct abroad. 18 U.S.C. § 1091 (criminalizing genocide; applicable to both natural and juridical persons); 18 U.S.C. § 2340A (criminalizing torture; applicable to both natural and juridical persons); 18 U.S.C. § 1651 (criminalizing piracy; applicable to both natural and juridical persons).

Because U.S. corporations can retreat to the United States after committing grave human rights violations abroad, and shelter their assets in the United States, failure to hold such corporations accountable may increase diplomatic tensions.  In such cases, corporate liability would decrease diplomatic strife and "the United States may have an interest in policing the international law violations of its citizens as a matter of foreign policy." *Exxon Mobil*, 2015 WL 5042118, *7. Indeed, the Court of Appeals noted that "a foreign country could deem the United States an accomplice or abettor, of a violation of the law of nations if it does not censure a U.S. citizen who has violated that law[.]" *Exxon Mobil*, 654 F.3d at 28 (internal quotations omitted) (citing 4 Blackstone's Commentaries *67-68).

During oral argument in *Jesner*, the United States noted that categorically foreclosing corporate liability would raise the possibility of diplomatic friction. Transcript of Oral Argument at 33, *Jesner*, 138 S.Ct., (No. 16-499), 2017 WL 4551614. The Executive Branch has affirmed that the Executive supports corporate liability in ATS cases, despite potential diplomatic issues, in at least two Amicus Briefs in the Supreme Court. Brief for United States as Amicus Curiae Supporting Petitioners, *Kiobel,* 569 U.S. 108, (No. 10-1491), 2011 WL 6425363; Brief for United States as Amicus Curiae Supporting Neither Party, *Jesner*, 138 S. Ct. 1386 (No. 16-499), 2017 WL 2792284.  Rather than increasing diplomatic tensions, domestic corporate liability

advances the original goals of the ATS by creating a domestic remedy for violations of the laws

of nations committed by U.S. defendants against foreign plaintiffs, whether those violations were

committed domestically or abroad, particularly when those U.S. defendants are not amendable to

suit elsewhere, as is the case here.

Contrary to Exxon's assertions, aiding and abetting liability creates no unique reason for

eliminating corporate liability.  Defendant's characterization of Exxon as a "surrogate" for the

government of Indonesia ignores that Exxon's conduct was independently wrongful and that the

United States has the right to hold its corporations accountable for such violations.  Moreover,

Exxon's specific arguments have been repeatedly rejected by this Court and the Court of

Appeals.  For example, Exxon cautions against a U.S. court sitting in judgment of a foreign

nation's "official actions taken within their own territory." Defs' ATS Mem., Dkt. 634, at 18.

But the act of state doctrine protects against such judgments and Exxon's attempted invocation

of that doctrine has repeatedly been rejected as inapplicable in this case. *E.g., Exxon Mobil*, 69 F.

Supp. 3d at 88 (holding act of state doctrine inapplicable: "Exxon has made no showing that

plaintiffs were injured pursuant to official military orders as required by the act of state

doctrine."); *cf. Exxon Mobil*, 473 F.3d at 355 ("Exxon cites no cases in which a federal court has

held that, in a matter involving like issues and comparable circumstances (i.e. claims by a private

part against a private United States corporation) the complaint must be dismissed under the

political question doctrine. And we are aware of no such authority").

**D.**     ***Jesner* does not require this Court to reconsider its prior decision that aiding and abetting liability exists under the ATS**

Both this Court and the Court of Appeals have held that aiding and abetting liability is

available under the ATS.  *Exxon Mobil*, 654 F.3d at 28-38; *Exxon Mobil*, 2015 WL 5042118 at

\*9 - \*12; *Exxon Mobil*, 69 F. Supp. 3d at 93-94.  *Jesner* did not reach the question of aiding and

abetting and contains no analysis and no holding on that issue. *Jesner* does not support Exxon' request that this Court reconsider its prior decision.

Recognizing the limits of *Jesner*, Exxon argues, again, that the statutory presumption set forth in *Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164 (1994), bars aiding and abetting liability under the ATS and cites *Owens v. BNP Paribas*, 897 F.3d 266 (D.C. Cir. 2018) in support. Defs' ATS Mem., Dkt. 634, at 17. *Owens* is a statutory construction case. It held that a subsequent amendment to the Anti-Terrorism Act adding aiding and abetting liability was not "clarifying" but rather confirmed that the prior version of the statute, consistent with *Central Bank*, did not encompass aiding and abetting. *Owens*, 867 F.3d at 278.

The Court of Appeals has already explained, in a thorough analysis, why "[t]he rule of statutory construction set forth in *Central Bank* does not preclude aiding and abetting under the ATS." *Exxon Mobil*, 654 F.3d at 28.[4] The Court of Appeals explained that in the ATS, Congress "directed that the courts derive the rule of law from the law of nations, and that law extends responsibility for conduct violating its norms to aiders and abetters." *Id* at 29. The statutory presumption is thus inapposite. *Id*. Both the Court of Appeals and this Court have definitively analyzed the status of aiding and abetting liability under international law and its content. *Id*.; Exxon Mobil, 2015 WL 5042118 at *8 -*12. Because international law determines the availability of and standards for aiding and abetting liability, *Central Bank* is inapplicable, as the D.C. Circuit has already held. 654 F.3d at 28.

---

[4] The opinion was vacated on other grounds. Judge Kavanaugh did not express disagreement with this portion of the opinion. Indeed, the analysis conducted by the Court of Appeals to determine whether aiding and abetting liability exists under the ATS is the analysis – an inquiry into whether international norms are sufficiently definite – called for by the Supreme Court.

Every Circuit to reach this issue, including the D.C. Circuit, has found that aiding and abetting liability exists under the ATS.  *E.g. Adhikari*, 845 F.3d at 197, 199; *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 597 (11th Cir. 2015); *Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 213 (2nd Cir. 2016); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 181 (2nd Cir. 2014); *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1023 (9th Cir. 2014);  *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 401 (4th Cir. 2011); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005).  Post-*Jesner* decisions continue to recognize aiding and abetting liability under the ATS. *See, e.g., Nahl v. Jaoude*, 2018 U.S. Dist. LEXIS 100056, at *10 (S.D.N.Y. June 14, 2018) (listing aiding and abetting as meeting one of the requisites for stating an ATS claim).

*Jesner* provides no basis for overturning this consensus.

## IV.  <u>CONCLUSION</u>

For the above reasons, Defendants' motion should be denied.

Dated: September 17, 2018                    Respectfully submitted,

/s/ Agnieszka M. Fryszman
Agnieszka M. Fryszman, DC Bar No. 459208
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave., N.W.
East Tower, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
afryszman@cohenmilstein.com

Paul L. Hoffman
**SCHONBRUN DESIMONE SEPLOW
HARRIS HOFFMAN & HARRISON,
LLP**
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Tel: 310-396-0731
Fax:  310-399-7040


Terrence P. Collingsworth, DC Bar No.
471830
**INTERNATIONAL RIGHTS
ADVOCATES**
621 Maryland Ave., N.E.
Washington, DC 20002
Tel: (202) 255-2198
tc@iradvocates.org

*Attorneys for Plaintiffs*

15