REDACTED PUBLIC VERSION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN DOE I, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 01-1357 (RCL/AK) |
| | ) | |
| v. | ) | |
| | ) | |
| EXXON MOBIL CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MOTION FOR PHASE II DISCOVERY OF RELEVANT CORPORATE DOCUMENTS LOCATED IN INDONESIA

Agnieszka M. Fryszman
DC Bar No. 459208
Rylee Sommers-Flanagan
DC Bar No. 1552582
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
Suite 500, East Tower
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Terrence P. Collingsworth
D.C. Bar No. 471830
**International Rights Advocates**
621 Maryland Ave., N.E.
Washington, DC 20002
Tel: (202) 255-2198

Paul L. Hoffman
*Pro Hac Vice*
**Schonbrun Seplow Harris & Hoffman LLP**
11543 W. Olympic Blvd
Los Angeles, CA 90064
Tel: (310) 396-0731

REDACTED PUBLIC VERSION

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. RELEVANT BACKGROUND .................................................................................... 2

III. STANDARD OF REVIEW ......................................................................................... 6

IV. ARGUMENT ................................................................................................................ 7

      A.      The Time to Consider Limited, Tailored Discovery in Indonesia Is Now. ............ 7

      B.      Plaintiffs' Discovery Requests Are Normal and Appropriate. ............................... 8

      C.      Plaintiffs Seek Relevant Corporate Documents.................................................... 10

      D.      Exxon Relies on the Documents' Storage Location as the Basis for
             Refusing to Produce Relevant Corporate Documents but International
             Discovery Is Routine............................................................................................. 14
             1.    International Discovery Is Routine, Including in Indonesia. .................... 14
             2.    Exxon's Parade of Horribles Has Not Come to Pass ............................... 16
             3.    Plaintiffs Do Not Seek Documents Subject to Contractual or Legal
                    Restrictions ............................................................................................... 18

      E.      Plaintiffs Will Defer to the Court Should Defendants Raise Any
             Particularized Foreign Policy or National Security Concern................................ 20

V. CONCLUSION .............................................................................................................. 22

REDACTED PUBLIC VERSION

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Alexander v. FBI,
  193 F.R.D. 1 (D.D.C. 2000).................................................................7

Barnes v. Dist. of Columbia,
  289 F.R.D. 1 (D.D.C. 2012)................................................................7

Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria,
  308 F.R.D. 27 (D.D.C. 2015)...........................................................15

Cooper Indus., Inc. v. British Aerospace,
  102 F.R.D. 918 (S.D.N.Y. 1984) .....................................................20

Costa v. Kerzner Int'l Resorts, Inc.,
  277 F.R.D. 468 (S.D. Fla. 2011).....................................................20

Doe v. Exxon Mobil Corp.,
  473 F.3d 345 (D.C. Cir. 2007) cert. denied, 554 U.S. 909 (2008) ...........................................3

Doe v. Exxon Mobil Corp.,
  654 F.3d 11 (D.C. Cir. 2011) vacated, 527 F. App'x 7 (D.C. Cir. 2013)................................5

*Doe v. Exxon Mobil Corp.,
  No. 01-1357 (RCL/AK), Mem. Op., Dkt. 647 (June 3, 2019)...................................3

In re Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.,
  No. 03–08554, 2009 WL 1055673 (S.D.N.Y. April 17, 2009) ...........................14

FG Hemisphere Assocs., LLC v. Dem. Rep. of Congo,
  603 F. Supp. 2d 1 (D.D.C. 2009), aff'd, 637 F.3d 373 (D.C. Cir. 2011)..........................15, 16

In re Grand Jury Subpoena dated Aug. 9, 2000,
  218 F. Supp. 2d 544 (S.D.N.Y. 2002)................................................19

Hansen v. Native Am. Refinery Co.,
  No. 2:06–CV–109, 2009 WL 8755441 (D. Utah Aug. 25, 2009), appeal
  dismissed sub nom. Hansen v. PT Bank Negara Indonesia (Persero), TBK,
  601 F.3d 1059 (10th Cir. 2010) .........................................................14

Harris v. United States,
  933 F. Supp. 972 (D. Idaho 1995) .....................................................13

*Laker Airways v. Pan Am. World Airways,
  103 F.R.D. 42 (D.D.C. 1984)...................................................9, 19, 20

*Lapsley v. Xtek, Inc.*,
  689 F.3d 802 (7th Cir. 2012) ............................................................13

*Linde v. Arab Bank, PLC*,
  463 F. Supp. 2d 310 (E.D.N.Y. 2006) ...............................................16

*Mannington Mills, Inc. v. Congoleum Indus., Inc.*,
  610 F.2d 1059 (3d Cir. 1979)............................................................13

*Matter of Marc Rich*,
  707 F.2d 663 (2d Cir. 1983)...............................................................9

*McKesson Corp. v. Islamic Rep. of Iran*,
  185 F.R.D. 70 (D.D.C. 1999).................................................9, 15, 16

*Projects Mgmt. Co. v. Dyncorp Int'l LLC*,
  734 F.3d 366 (4th Cir. 2013) ............................................................13

*Rep. of Argentina v. NML Capital, Ltd.*,
  573 U.S. 134 (2014)............................................................................9

*Estate of Rubinstein v. United States*,
  94 Fed. Cl. 51 (Fed. Cl. 2010) .........................................................13

*Schlesinger v. CIA*
  591 F. Supp. 60 (D.D.C. 1984)..........................................................22

*In re Sealed Case*,
  832 F.2d 1268 (D.C. Cir. 1987) *abrogated on other grounds by Braswell v.
  United States*, 487 U.S. 99 (1988) .................................................9, 15

*In re Sealed Case*,
  932 F.3d 915 (D.C. Cir. 2019)............................................................8

*Societe Internationale Pour Participations Industrielles Et Commerciales, S. A.
  v. Rogers*,
  357 U.S. 197 (1958)..........................................................................19

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of
  Iowa*,
  482 U.S. 522 (1987).....................................................................9, 19

*Ungar v. Palestine Liberation Org.*,
  402 F.3d 274 (1st Cir. 2005).............................................................15

*United States v. AT & T Inc.*,
  No. 1:11–cv–01560, 2011 WL 5347178 (D.D.C. Nov. 6, 2011)............7

*United States v. Kellogg Brown & Root Servs., Inc.*,
    284 F.R.D. 22 (D.D.C. 2012)..................................................................................6

*\*In re Vitamins Antitrust Litig.*,
    120 F. Supp. 2d 45 (D.D.C. 2000) ...........................................................................9

*Wilson v. Sundstrand Corp.*,
    Nos. 99 C 6944, 99 C 6946, 2003 WL 22012673 (N.D. Ill. Aug. 25, 2003)..........................15

*\*Work v. Bier*,
    106 F.R.D. 45 (D.D.C. 1985).................................................................................9

*Wye Oak Tech., Inc. v. Republic of Iraq*,
    No. 1:10-CV-01182-RCL, 2018 WL 4473506 (D.D.C. Sept. 18, 2018).................................7

**REDACTED PUBLIC VERSION**

# I.  INTRODUCTION

Plaintiffs seek an order permitting discovery of Defendants' corporate documents stored in Indonesia.[1] Discovery has now entered the second phase previously contemplated by both the Court and the parties. The requested documents are of the type routinely produced in response to normal discovery requests; they are necessary to upcoming depositions, including in Indonesia; and they go to the core of Plaintiffs' state law tort claims, including negligence, assault, and battery.

The Court should thus grant the requested relief for three reasons. First, the timing is right; after many rounds of dispositive motions, the first phase of discovery is complete, and the time for setting appropriate bounds for the second phase of merits discovery is now. Second, the corporate documents Plaintiffs seek are relevant, their disclosure is permissible, and they are preserved in (highly portable) electronic form. Third, this Court's judgment regarding specific documents remains paramount should Defendants raise any particularized foreign policy or national security concerns. Moreover, permitting discovery of corporate documents will correct the one-sided discovery Exxon has sought in Indonesia. Even while pursuing access to individuals residing in Indonesia, many of whom fear for their safety, Exxon has been uncompromising in its refusal to produce corporate documents they maintain in Indonesia without a court order. Plaintiffs hereby ask this Court to compel Exxon—corporate Defendants subject to this Court's jurisdiction—to produce Exxon's own corporate documents responsive to Plaintiffs' long-standing document requests from storage in Indonesia. The parties have met and conferred pursuant to Local Civil Rule 7(m). Exxon opposes the relief sought herein.

---

[1] Defendants are Exxon Mobil Corporation ("Exxon Mobil") and ExxonMobil Oil Indonesia, Inc. ("EMOI") (together, "Exxon" or "Defendants").

## II.  RELEVANT BACKGROUND

Exxon Mobil Corporation is a citizen of the United States. Answer to SAC ¶ 4, Dkt. 523 (July 27, 2015). ExxonMobil Oil Indonesia (EMOI) was incorporated in Delaware when this case was filed and until 2005. *Id*. EMOI is presently incorporated in the Cayman Islands. *Id*. ¶ 20. Neither company is a citizen of Indonesia.

When the original complaint was filed nearly twenty years ago, this Court ordered the parties to preserve potentially responsive documents located in Indonesia. Order, Dkt. 54 (Sept. 20, 2002). In 2005, Judge Oberdorfer dismissed Plaintiffs' Alien Tort Statute (ATS) and Torture Victim Protection Act (TVPA) claims, and also dismissed Defendant PT Arun LNG Company from the suit, but denied Defendants' motion to dismiss Plaintiffs' state tort law claims. Mem., Dkt. 103, at 1 (Oct. 14, 2005). In allowing the tort claims to proceed, the Court admonished the parties "to tread cautiously," and "to avoid intrusion into Indonesian sovereignty." *Id*. at 15. Without precluding discovery in Indonesia permanently, the Court commented that it "should be feasible … to perpetuate testimony and satisfy document discovery requirements outside Indonesia." *Id.* at 16–17. Shortly thereafter, Magistrate Judge Kay set a discovery schedule. Mem. Order, Dkt. 138 (Mar. 3, 2006). Plaintiffs filed a motion for clarification, which this Court granted in part and denied in part, observing that Exxon agreed that limiting discovery "to personal jurisdiction over EMOI and the non-EMOI defendants' knowledge of and participation in allegedly tortious conduct in Indonesia *in the first phase*" of discovery would address concerns about incursions into Indonesian sovereignty. Mem., Dkt. 159 at 2 (May 3, 2006) (emphasis added). The Court also ordered Exxon to produce the documents located in Indonesia that it reasonably anticipated using in its defense. *Id*. At that time, the Court found it unnecessary to begin indexing and logging Indonesian documents as Plaintiffs proposed but requested that Exxon confirm the preservation of potentially responsive documents. *Id*. at 3 & n.2. Exxon thus

**REDACTED PUBLIC VERSION**

assured the Court that hardcopy and electronic documents were preserved in two secure locations in Indonesia. Letter from R. Meyer to Oberdorfer, J., Dkt. 157 (May 3, 2006).

Meanwhile, Exxon had petitioned the D.C. Circuit for a writ of mandamus compelling the district court to dismiss all claims against it; that petition was denied, as was Exxon's subsequent petition for certiorari to the Supreme Court. *Doe v. Exxon Mobil Corp.*, 473 F.3d 345 (D.C. Cir. 2007) *cert. denied*, 554 U.S. 909 (2008). As relevant here, the Solicitor General weighed in to recommend against granting certiorari in part because, in its view, "as a result of the district court's rulings narrowing the scope of respondents' suit, the case now presents neither of the particular situations discussed in *Sosa* and *Altmann*." *See* Br. for the U.S. as Amicus Curiae at *17, *Exxon Mobil Corp. v. Doe*, 554 U.S. 909 (2008) (No. 07-81), 2008 WL 2095734 (hereinafter "S.G. 2008 Amicus Br.") (referring to *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) and *Rep. of Austria v. Altmann*, 541 U.S. 677 (2004)). The Solicitor General also emphasized that this Court had "dismissed [Plaintiffs'] federal-law claims, and dismissed all claims against a defendant indirectly owned by the Indonesian government." S.G. 2008 Amicus Br. at *8. And, the D.C. Circuit had "reasonably regarded [Exxon's] interlocutory appeal as one from the denial of a motion to dismiss state-law tort claims based on an assertion by private defendants, not by the Executive, that the litigation itself would have adverse consequences for the Nation's foreign policy interests." *Id.* at *8–9.

Before this Court, the parties proceeded with Phase I discovery pursuant to the 2006 discovery orders. Documents and information produced since that time are covered by a Protective Order that defines confidential and highly confidential designations. Protective Order, Dkt. 217 (April 25, 2007).

In 2008, the parties litigated over the return of 20 inadvertently produced documents and the production of 137 documents Exxon claimed were prohibited from disclosure under Indonesian law or privileged. Mem. Order, Dkt. 318 at 1–2 n.1 (June 20, 2008). Exxon argued that "the court's prior orders and oft-stated concern not to intrude on Indonesian sovereignty prevent disclosure" and that Exxon risked "sanctions abroad." Defs.' Opp. to Pls.' Mot. to Compel 156 Documents Wrongly Withheld, Dkt. 263 at 2 (Jan. 28, 2008). But after in camera review, this Court ordered the production or disclosure of 82 of these documents in whole or in part. Mem. & Op., Dkt. 351 at 2, 11 (July 28, 2008); Mem. Order, Dkt. 318 at 11–12. Exxon has not reported any repercussions as a result of this ruling.

Also around this time, the Court denied Exxon's motion to dismiss for lack of personal jurisdiction, Mem. & Op., Dkt. 340 at 1 (July 18, 2008), as well as its motions for summary judgment as to Plaintiffs' state tort claims, ruling that Plaintiffs had "provided sufficient evidence … for their allegations of serious abuse," Mem. & Op., Dkt. 365 at 30 (Aug. 27, 2008). The Court then ordered the parties to confer and advise on "whether the matter [was] ripe for trial or if additional discovery [was] necessary." Order, Dkt. 367 (Aug. 28, 2008).

Both parties agreed that additional discovery, including in Indonesia, would be necessary in order to proceed to trial. *See* Defs.' Statement re: Aug. 28 Order, Dkt. 377 at 1 (Sept. 12, 2008); Pls.' Statement re: Aug. 28 Order, Dkt. 378, at 2 (Sept. 12, 2008). Explaining that "discovery in the first phase of this case was limited to materials located outside of Indonesia," Dkt. 377, at 2, Exxon argued that discovery in Indonesia was critical "if this case proceeds to the next phase of discovery," *id.* at 7. Exxon simultaneously argued that if the Court permitted discovery in Indonesia, it would necessarily proceed "over Defendants' objections" because of the "intrusion on Indonesian sovereignty." *Id.* at 9. Plaintiffs proposed limited discovery,

**REDACTED PUBLIC VERSION**

including "no discovery of the Government of Indonesia." Dkt. 378 at 2. Plaintiffs also noted

that extensive interrogatories had been "served and answered without engendering any protest

from the Government of Indonesia and without any discernable foreign policy effect." *Id.* at 2–3.

It was at this point that the case was transferred from Judge Oberdorfer to Judge

Lamberth. Order, Dkt. 382 (Sept. 25, 2008). A year later, the Court granted Exxon's renewed

motion to dismiss, finding that Plaintiffs' lacked standing. *Doe VIII v. Exxon Mobil Corp.*, No.

07-cv-1022, Mem. Op., Dkt. 47 at 1 (Sept. 30, 2009). Plaintiffs appealed and the D.C. Circuit

reversed in an opinion that reinstated both the ATS and state tort claims, *Doe v. Exxon Mobil

Corp.*, 654 F.3d 11, 15 (D.C. Cir. 2011) *vacated*, 527 F. App'x 7 (D.C. Cir. 2013), and remanded

to this Court, *see* Mem. Op., Dkt. 455 at 5 (Sept. 24, 2014). Discovery resumed but was stayed

again at the request of the parties pending the resolution of *Jesner v. Arab Bank*, 138 S. Ct. 1386

(2018). Scheduling Order, Dkt. 630 (Aug. 25, 2017). In June, after a detailed examination of the

history of this litigation, including the various submissions by Indonesia and the United States

State Department, this Court once again dismissed the ATS claims. Mem. Op., Dkt. 647 at 28

(June 3, 2019). As a result, "Plaintiffs only remaining claims are therefore the claims for

wrongful death; battery; assault; arbitrary arrest, detention, and false imprisonment; negligence,

negligent hiring; negligent supervision; and conversion. These tort claims are governed by

Indonesian law." *Id*. at 1 (internal citations omitted).

In sum, personal jurisdiction over Defendants has been established. The Alien Tort

Statute claims have been dismissed. The Indonesian law claims, which center on tortious conduct

in Indonesia, remain. Since 2008, the Court has not revisited the appropriateness of limited

discovery in Indonesia, although the parties did previously contemplate that such discovery

would likely become necessary in Phase II.

Plaintiffs have served document requests, interrogatories and requests for admission relevant to their tort claims. *See, e.g.*, Ex. 1, Pls.' Third Req. for Produc., Req. Nos. 6–10, 12–13, 19–20, 22–27, 35–36 (Jan. 29, 2014); Ex. 2, Pls.' Second Req. for Produc. (Nov. 27, 2013).[2] EMOI possesses responsive documents, including some in electronic form, preserved pursuant to this Court's order. *See* Order, Dkt. 54. Nonetheless, Exxon refuses to produce its own corporate documents stored in Indonesia. Indeed, Exxon has in effect instructed Plaintiffs to approach the Court. Ex. 5, Email from J. Morton to A. Fryszman (Oct. 25, 2019 1:56 PM) ("[W]e are not willing to open Indonesian document discovery…. We are unable to produce such documents in accordance with the Court order, which plaintiffs have never challenged with the Court."). This motion follows.

### III.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure entitle Plaintiffs to discovery of information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). So long as the information sought is not privileged, its relevance to the subject matter for purposes of discovery "is broadly construed." *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 33 (D.D.C. 2012) (Lamberth, C.J.). Once a party seeking discovery makes a showing of relevance, the objecting party bears the burden of demonstrating "why discovery should not be

---

[2] While the Second RFP is entitled "conduct in the United States," it describes the type of corporate documents Plaintiffs seek in Indonesia. In addition to objecting to producing documents, Exxon has also objected to interrogatories and requests for admissions based on the location of information. *See, e.g.*, Ex. 3, Defs.' Supp. Resp. & Objections to Pls.' Jan. 2016 RFAs to All Defendants at 2, 17, (March, 23, 2016) (generally objecting to all requests for admission related to the locations of security personnel based on directive to "avoid discovery in Indonesia" and stating Exxon lacks sufficient information to admit or deny location of security personnel); Ex. 4, Defs' Resp. & Objections to Pls.' Affirmative Defense Interrogs., Resp. to Interrog. at 2 (Dec. 23, 2015) (objecting to interrogatories regarding affirmative defenses based on directive to "avoid discovery in Indonesia").

permitted." *Wye Oak Tech., Inc. v. Republic of Iraq*, No. 1:10-CV-01182-RCL, 2018 WL

4473506, at *1 (D.D.C. Sept. 18, 2018) (Lamberth, J.); *see also Alexander v. FBI*, 193 F.R.D. 1,

3 (D.D.C. 2000) (Lamberth, J.) (same); *United States v. AT & T Inc.*, No. 1:11–cv–01560, 2011

WL 5347178, at *5 (D.D.C. Nov. 6, 2011) ("The party opposing a motion to compel carries a

'heavy' burden of persuasion.").

    If "a party fails to respond to a proper discovery request … the other party may—after

first attempting to resolve the issue … —file a motion to compel." *Barnes v. Dist. of

Columbia*, 289 F.R.D. 1, 5 (D.D.C. 2012) (Lamberth, C.J.) (citing Fed. R. Civ. P. 37(a)(1)). In

evaluating such a motion, courts consider "the prior efforts of the parties to resolve the dispute,

the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C)." *Id.* at 5–

6 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–52 (1978)). In refusing to

produce documents responsive to Plaintiffs' requests, Defendants assert that the fact of the

documents' location in Indonesia is enough to prevent their disclosure.

## IV.  **ARGUMENT**

### A.    **The Time to Consider Limited, Tailored Discovery in Indonesia Is Now.**

    More than a decade ago, this Court decided that "a review and search of the documents to

determine which documents are responsive" could and should wait until after the parties "first

determine[d] the issue of jurisdiction over EMOI and the knowledge and acts of the non-EMOI

defendants." Mem., Dkt. 159 at 3. Over this case's long history, the Court has not ruled to

preclude document discovery in Indonesia but has delayed and limited such discovery for an

appropriate time within appropriate parameters to promote efficiency and fairness.

    The text of this Court's previous discovery orders contemplates that the parties would

eventually need to revisit the scope of discovery—as do transcripts from relevant hearings.

During the May 1, 2006 status conference, Defendants argued that the first phase of discovery

should remain narrow as it was a prerequisite to later potential international discovery. Ex. 6, May 1, 2006 Hr'g Tr. at 17. Defendants affirmed that "all of the documents [in Indonesia] are preserved and protected just as we promised they would be many years ago." Mem., Dkt. 159, at 3 (quoting May 1, 2006 Hr'g Tr. at 17). In addition, Defendants made clear that those documents would be available "if the process moves to a point where it becomes necessary." Ex. 6, May 1, 2006 Hr'g Tr at 17, 25. The Court memorialized portions of these assurances. Mem., Dkt. 159, at 3. To the extent Defendants suggest the contrary—that discovery of documents stored in Indonesia was never contemplated—that suggestion is inconsistent with the record.

While the issue of jurisdiction was pending, this Court was properly cautious to protect the interests of the Indonesian government and the United States State Department. *See* Mem., Dkt. 159 at 2 (noting that "discovery limited to personal jurisdiction over EMOI and the non-EMOI defendants' knowledge of and participation in allegedly tortious conduct in Indonesia *in the first phase* was consistent with these two governments' objections") (emphasis added). Merits discovery of documents located in Indonesia is appropriate because Phase I discovery has confirmed that EMOI, a former Delaware corporation now incorporated in the Cayman Islands, is subject to this Court's jurisdiction. These documents are squarely within Exxon Mobil's control and accessible, preserved pursuant to this Court's directive as described above.  The EMOI corporate documents stored in Indonesia relevant to Plaintiffs' claims are properly subject to discovery.

**B.    Plaintiffs' Discovery Requests Are Normal and Appropriate.**

Plaintiffs' request for EMOI corporate documents located in Indonesia is well within the realm of discovery ordinarily permitted. Indeed, comparable examples abound. *See, e.g.*, *In re Sealed Case*, 932 F.3d 915, 924 (D.C. Cir. 2019) ("Federal courts have long required the

production of documents held abroad."); *In re Sealed Case*, 832 F.2d 1268, 1283 (D.C. Cir.

1987) ("[T]here is little doubt that '[a] United States Court has the power to order any party

within its jurisdiction to testify or produce documents regardless of a foreign sovereign's views

to the contrary.'") *abrogated on other grounds by Braswell v. United States*, 487 U.S. 99 (1988);

*Matter of Marc Rich*, 707 F.2d 663, 667 (2d Cir. 1983) (test for production is control not

location: witness may not "resist the production of documents on the ground that the documents

are located abroad"); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45 (D.D.C. 2000) (granting

motions to compel international jurisdictional discovery against eight foreign defendants);

*McKesson Corp. v. Islamic Rep. of Iran*, 185 F.R.D. 70, 77 (D.D.C. 1999) (despite history of

tenuous relations between United States and Iran, granting motion to compel discovery in Iran

was necessary for fair resolution); *Work v. Bier*, 106 F.R.D. 45, 50 (D.D.C. 1985) (a federal

court has the power to require a foreign corporation "with reference to documents and records

located in foreign country, to reproduce copies thereof, and ship them to local counsel in the

forum jurisdiction for production pursuant to Rule 34"); *Laker Airways v. Pan Am. World

Airways*, 103 F.R.D. 42, 48 (D.D.C. 1984) ("Nowhere in these Rules is there the slightest

suggestion that a party properly before the Court may not avail itself of these discovery rights

against another party within the jurisdiction of the Court merely because the documents sought

or the persons to be deposed are not located in the United States. Indeed, the Rules clearly

contemplate their applicability abroad."); *cf. Rep. of Argentina v. NML Capital, Ltd.*, 573 U.S.

134, 140–46 (2014) (finding that the Foreign Sovereign Immunities Act does not preclude

discovery of a judgment debtor's assets from third-party banks located outside the United

States); *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482

U.S. 522, 539-540 (1987) ("[T]he Hague Convention did not deprive the District Court of the

REDACTED PUBLIC VERSION

jurisdiction it otherwise possessed to order a foreign national party before it to produce evidence physically located within a signatory nation.").

Plaintiffs seek documents that are relevant to their claims and courts routinely grant foreign discovery when documents are housed abroad, including in Indonesia. At this stage in the litigation, no legal rule or factual circumstance should prevent Plaintiffs from accessing information relevant to establishing their claims against Exxon.

## C.      Plaintiffs Seek Relevant Corporate Documents.

The universe of documents Plaintiffs seek is relevant to Plaintiffs' pending claims for wrongful death, battery, assault, arbitrary arrest, detention, and false imprisonment, negligence, negligent hiring, negligent supervision, and conversion. Mem. Op., Dkt. 647 at 28. Examples illustrate the significance of the documents that Exxon is withholding.

For example, Plaintiffs requested payment records and rosters of security personnel. *See* Ex. 2, Second RFP, Req. Nos. 2(d), (e), (j), (n); 3(d), (e), (j), (n). Defendants produced a single box of such records which was fortuitously located in Dallas. Ex. 7, Log of Custodian/Bates Range Per Box (CA251 – CA340). These documents included a handful of payment requests with corresponding checks showing payments that EMOI made to individually named Indonesian security personnel. *See, e.g.*, Ex. 8, CA0001144260–61 (Anwar Iska payment); Ex. 9, CA0001150857–58 (second Anwar Iska payment); Ex. 10, CA0001152426–30 (Muchsin Hasan Asri two payments); Ex. 11, CA000114447–48 (Ramdhan Husein payment). Plaintiffs have made specific requests for additional documentation of this sort. *See, e.g.*, Ex. 12, Pls.' Fifth Req. for Produc. (June 28, 2016), Req. Nos. 32–33. Exxon has declined to produce additional similar records, because they are located in Indonesia. Ex. 13, Letter from S. Jansen to A. Ouoba at 1–2 (Aug. 13, 2015) ("Our search revealed no additional financial records located outside of Indonesia responsive to your document requests.").

Payment information is especially salient because Exxon denies a supervisory relationship over the personnel involved in attacking Plaintiffs. *See, e.g.*, Reply Mem. in Supp. of Defs.' Mot. for Summ. J. & Dismissal, Dkt. 311 at 7 (Apr. 16, 2008); Defs.' Mot. to Dismiss, Dkt. 426 at 5, 43 (Oct. 30, 2013); Answer to SAC, Dkt. 523 ¶ 289. And, as this Court has observed, compensation information may help establish whether Defendants had a master-servant relationship with their security personnel. Mem. & Op., Dkt. 365 at 14. In addition, some Plaintiffs, including John Doe V, identified by name several soldiers who detained and tortured him. *See* Ex. 14, Pl. John Doe V's Supp. Resp. to Exxon Mobil's First Set of Interrogs., Resp. to Interrog. No. 1(a) & (c) (identifying Andreas Letda Danpos, Andreas Serda, Boniman Pratu, and Bahrun Serda-Danru). The requested records may confirm that these individuals served as Exxon's security personnel.[3] These records are therefore plainly relevant.

Other documents sought also relate to Exxon's exercise of direction, supervision, or control over the military security personnel. For example, Plaintiff requested documents related to:

> "any training or advising provided to Security Personnel at the Arun Project, including any manuals, guidelines, policies, or procedures"

> "any exercises or drills with Security Personnel"

> "any directions, instructions, requirements, plans, coordination, or deployment logistics developed for, provided to, shared with, or communicated to Security Personnel at the Arun Project, including any security plan, logistics or Deployment"

---

[3] When Plaintiffs asked Defendants to admit that the soldiers John Doe V named were among Exxon's military security personnel, Defendants stated that the "Request seeks information beyond Defendants' knowledge and control," and claimed that they "lack sufficient information to admit or deny this Request." *See* Ex. 15, Defs.' Resp. & Objs. to Pls.' Jan. 2016 Reqs. for Admissions, Resp. to Reqs. No. 105–08 (Feb. 22, 2016).

Ex. 2, Second RFP, Req. Nos. 3(f), (g), (i). Whether Exxon has the authority to exercise control is a factor in determining Exxon's liability as an agent or under *respondeat superior* for abuses perpetrated by its personnel. As this Court explained, "[t]he right to control and direct the servant in the performance and manner the work is to be done is determinative to establishing a master-servant relationship." Mem. & Op., Dkt. 365 at 10. Defendants' own expert has confirmed that the same standard applies under Indonesian law. Decl. of Robert N. Hornick, Dkt. 127 ¶¶ 33–34 (Feb. 3, 2006) (quoting Civil Code Article 1367(a) subsection (3), which governs vicarious liability in Indonesia, and stating that "[i]n practice … courts focus more on the extent to which the purported employer/principal has authority to control and instruct the employee/representative regarding his work, rather than on the formalities of the relationship."). Exxon contests liability on the basis that it did not supervise or control its military security personnel. *See, e.g.*, Mem. & Op., Dkt. 365 at 11 ("Defendants contend that EMOI did not have a right to control the forces assigned to protect it."); Answer to SAC, Dkt. 523 ¶ 287. Exxon's documents stored in Indonesia are undeniably relevant, but Exxon has declined to produce them on the grounds that they are beyond the scope of discovery permitted by this Court's prior orders. *See, e.g.*, Ex. 16, Defs.' Resp. to Pls.' Third Req. for Produc. at 1 (Feb. 28, 2014); Ex. 17, Defs.' Resp. to Pls.' Second Req. for Produc., Resp. to Req. Nos. 3–5 (Dec. 27, 2013); Ex. 5, Email from J. Morton to A. Fryszman.

Finally, in their revised Rule 26 disclosures recently provided to Plaintiffs, Defendants have listed ten persons as possessing relevant information. Ex. 18, Defs.' Am. Rule 26 Disclosures at 2, 4 (Aug. 30, 2019). Three of the ten are Indonesian EMOI employees. Plaintiffs intend to depose at least Karimuddin A. Thahir and Maman Budiman and Defendants have proposed that their depositions be conducted in Indonesia, among other locations. Ex. 5,

Email from J. Morton to A. Fryszman (proposing depositions in Jakarta or Singapore). And yet

Defendants nevertheless refuse to produce documents concerning their employees because they

"remain in Indonesia and therefore are not subject to discovery pursuant to the Court's order."

Ex. 19, Letter from J. Stanley to A. Ouoba (Oct. 29, 2015); *see also* Ex. 5. These and other

witnesses' documents stored in Indonesia should be produced in advance of their depositions.

*See* Fed. R. Civ. P. 30(b)(2); *Mannington Mills, Inc. v. Congoleum Indus., Inc.*, 610 F.2d 1059,

1074 (3d Cir. 1979) (documentary discovery is "necessary … to effective deposition"); *see*

*also Estate of Rubinstein v. United States*, 94 Fed. Cl. 51, 53 (Fed. Cl. 2010) ("[T]he court

notes two critical components to defendant's ability to conduct an effective deposition: (1) the

presence of the witness; and (2) the possession of all available, pertinent documents.").

Lacking access to necessary documents deprives Plaintiffs of a meaningful opportunity to

conduct a proper deposition. *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th

Cir. 2013) (delayed document production "depriv[ed] DynCorp of the opportunity to

effectively depose"); *Harris v. United States*, 933 F. Supp. 972, 976 (D. Idaho 1995) ("[I]t is

impossible to take an effective deposition without all the related documents."). Indeed, the

failure to produce documents frequently serves as a basis for ordering a second deposition of a

person already deposed. *Projects Mgmt. Co.*, 734 F.3d at 371; *Lapsley v. Xtek, Inc.*, 689 F.3d

802, 807 (7th Cir. 2012); *Estate of Rubinstein*, 94 Fed. Cl. at 53.

      Exxon's position – that Plaintiffs' may depose persons in Indonesia but may not review

their documents stored in Indonesia – makes no sense. Moreover, it appears that many of these

documents are stored electronically and can therefore easily be transmitted to the United States

Ex. 20, Letter from J. Stanley to A. Ouoba, at 1 (Nov. 17, 2015) ("EMOI has electronic

documents preserved electronically in Indonesia."). Exxon should be required to produce

relevant documents that would ordinarily be disclosed.

**D.      Exxon Relies on the Documents' Storage Location as the Basis for Refusing to Produce Relevant Corporate Documents but International Discovery Is Routine.**

Exxon justifies its refusal to produce documents by citing an order from this Court that

did not permanently bar the production of documents located in Indonesia. *Infra* Section I. Yet,

Exxon has sought and obtained discovery, including documents, interrogatory answers and now

depositions, from Plaintiffs and other witnesses who reside in Indonesia. E.g., Ex. 5 (proposing

Indonesian cities Jakarta and Medan as deposition locations). What's more, in 2008, Exxon

informed this Court that discovery in Indonesia was necessary before any trial could proceed.

Defs.' Statement in Resp. to Aug. 28, 2008 Order, Dkt. 373 at 4 (Sept. 12, 2008).  In any case,

the discovery at issue here is routinely permitted and is moreover, not precluded by contract or

by law.

1.      International Discovery Is Routine, Including in Indonesia.

Defendants are not Indonesian corporations. Both were U.S. citizen corporations when

this suit was filed; EMOI has reincorporated in the Cayman Islands.

Federal courts regularly order depositions and document production when individuals or

documents are located in Indonesia. *See, e.g.*, *Hansen v. Native Am. Refinery Co.*, No. 2:06–CV–

109, 2009 WL 8755441, at *1 (D. Utah Aug. 25, 2009) (permitting jurisdictional discovery

against Indonesia-owned bank), *appeal dismissed sub nom. Hansen v. PT Bank Negara

Indonesia (Persero), TBK*, 601 F.3d 1059 (10th Cir. 2010) (district court did not err in denying

defendant's motion for judgment on the pleadings regarding limited discovery in Indonesia); *In

re Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, No. 03–08554, 2009 WL

1055673, at *4 (S.D.N.Y. April 17, 2009) (determining that defendants failed to show an

Indonesian injunction "constrain[ed] their duty of disclosure" and granting plaintiff's motion to compel interrogatory responses in aid of judgment); *Wilson v. Sundstrand Corp.*, Nos. 99 C 6944, 99 C 6946, 2003 WL 22012673, at *1–2 (N.D. Ill. Aug. 25, 2003) (compelling a deposition in Indonesia by phone and barring testimony from Indonesian plaintiffs who failed to respond to properly served discovery requests).

Courts regularly enforce discovery even against foreign nations directly. *See, e.g.*, *In re Sealed Case,* 832 F.2d at 1283 (rejecting the Swiss government's argument that securing documents concerning a corporate defendant's actions in Switzerland would "trammel Swiss sovereignty" and holding that "although courts recognize comity as an important objective, there is little doubt that 'a United States Court has the power to order any party within its jurisdiction to testify or produce documents regardless of a foreign sovereign's views to the contrary'"); *Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 308 F.R.D. 27, 33 (D.D.C. 2015) (reiterating that "a foreign sovereign is a proper subject of a Rule 30(b)(6) deposition"); *FG Hemisphere Assocs., LLC v. Dem. Rep. of Congo*, 603 F. Supp. 2d 1, 2 (D.D.C. 2009), *aff'd*, 637 F.3d 373 (D.C. Cir. 2011) (holding foreign sovereign in contempt for failure to produce documents); *McKesson Corp. v. Islamic Rep. of Iran*, 185 F.R.D. 70, 77 (D.D.C. 1999) (enforcing discovery even though "defendant Iran is a sovereign nation").

Even in circumstances of political upheaval or regional violence, *see, e.g.*, *Ungar v. Palestine Liberation Org.*, 402 F.3d 274, 278, 294 (1st Cir. 2005) (although Palestine's permanent observer at the United Nations wrote a letter stating that "defendants could not be expected to respond to discovery due to the unremitting violence in the region," the First Circuit affirmed the granting of a default, noting that defendants "refused either to answer the amended complaint or to comply with the court's discovery orders"), when a foreign government's law

might otherwise prohibit it, *see, e.g.*, *Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 314

(E.D.N.Y. 2006) ("[I]t is beyond dispute that the Federal Rules of Civil Procedure provide the

court with authority to issue discovery orders requiring the disclosure of information protected

by foreign bank secrecy laws."), and when it is intrusive, *see, e.g.*, *McKesson*, 185 F.R.D. at 76–

77 (compelling Iran to permit plaintiff's expert to enter and inspect a facility located in Iran),

courts grant international discovery. Plaintiffs' request is thus entirely within normal bounds.

### 2.      Exxon's Parade of Horribles Has Not Come to Pass

Exxon has previously argued that disclosure of documents like those requested here

would result in a parade of horribles. *See, e.g.*, Defs.' Opp. to Pls.' Mot. to Compel 156

Documents Wrongly Withheld, Dkt. 263 (Jan. 28, 2008).  At the time, Plaintiffs were seeking

both to retain certain documents inadvertently produced and to compel production of other

documents withheld and logged by Exxon as "considered by the Indonesian government to be

confidential and privileged and may be prohibited from disclosure under Indonesian law."  Ex. A

to Pl's. Mot. to Compel Production of 156 Documents Wrongly Withheld, Dkt. 256-1.  These

documents represented a small fraction of the responsive documents produced in this case.

Exxon described the documents as "Indonesian military documents" and argued that deciding

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████  Reply Mem. in Supp.of Defs.'  Cross-Mot. to

Compel Return of Documents, Dkt. 283, at 2; *see also* Defs.' Opp. to Pls.' Mot. to Compel 156

Documents Wrongly Withheld, Dkt. 263at 1 (arguing that the motion "illustrates exactly the type

of intrusion into Indonesian sovereignty this case will inevitably create").  Defendants also

argued disclosure violated Indonesian law and that they risked sanctions if the documents were

not returned.  *Id.* at 15.

Despite Exxon's claims, after *in camera* review, the Court ultimately ordered that it produce more than half of the 156 documents on the log. Mem. & Op., Dkt. 351 at 11 (July 28, 2008); Mem. Order, Dkt. 318 at 11–12 (documents "do not implicate Indonesian security concerns and are not privileged or protected"). The documents produced turned out to be largely internal e-mails, not "Indonesian military documents." The correspondence ████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████

████████████████████████ These documents fell within the purview of discovery this Court has permitted. *See* Order, Dkt. 158 at 1 (May 3, 2006); Mem. Order, Dkt. 249, at 5–6 (Nov. 27, 2007) (permitting questioning on the "deployment, control, and monitoring of security personnel who were responsible for securing the Exxon facility in Indonesia"). The documents Plaintiffs now seek fall into the same category. *See, e.g.*, Ex. 1, Pls.' Third RFP, Req. Nos. 6–10, 12–13, 19–20, 22–27, 35–36; Ex. 2, Pls.' Second RFP. The documents sought are, as before, relevant to establishing the nature of the relationship between Exxon and its military security.

Plaintiffs believe the EMOI corporate documents housed in Indonesia will, like the documents produced in response to Plaintiffs' 2008 motion, show facts that demonstrate negligence and negligent supervision.

In the decade since these documents were produced, Exxon has not reported that any Exxon employee has been sanctioned as a result of the disclosure of these documents. Nor has there been any report that the production of these documents has impacted Indonesia's national security or the foreign relations of the United States. Now that the EMOI corporate documents sought are over twenty years old, they are even less likely to be significant to anyone other than Plaintiffs (particularly as they will remain confidential under the protective order). These long-withheld documents are likely relevant to show that Exxon supervised and controlled the individuals responsible for violent attacks that are the basis for this case.

3.    **Plaintiffs Do Not Seek Documents Subject to Contractual or Legal Restrictions**

Defendants have in prior briefings contended that contractual and statutory provisions prohibit disclosure of certain documents. *See* Defs.' Opp. to Pls.' Mot. to Compel 156 Documents, Dkt. 263, at 4, 11–12. These two categories include (1) original geological and geophysical data relating to petroleum operations and (2) secret documents related to Indonesia's defense and security against foreign attack.  Pls.' Mot. To Compel 156 Documents, Dkt. 256 at 2 (summarizing the bases for the Vint Declaration, Dkt. 93).  Plaintiffs do not intend to seek secret documents that reveal national security information or any data related to petroleum operations. It is inconceivable that all of the EMOI documents stored in Indonesia fall within those two categories.  The resolution of the 156 documents motion shows that relatively few documents will fall into these categories and that when this Court considered these arguments they have not won the day. Mem. Order, Dkt. 318, at 9, 11–12 ("Defendants' reliance on Indonesian law … is

REDACTED PUBLIC VERSION

insufficient to mandate the return" of the documents); *see also* Mem. & Op., Dkt. 351, at 1–2. Should Defendants choose to reinvoke these arguments, the Court should require particularized arguments for particular documents—whether Defendants claim privilege or Indonesian security concerns—rather than permit Defendants to broadly state that any and all documents located in Indonesia fall within the purview of contractual or statutory prohibitions, particularly as the record in this case, as discussed above, demonstrates the opposite. *See also* Mem. & Op., Dkt. 351 at 8 ("Defendants have things backwards: it is *their burden*, regardless of what Plaintiffs say, to establish that a privilege insulates these documents from the presumption of disclosure.").

In any case, even if Indonesian law barred discovery of the EMOI corporate documents requested here (it does not), United States federal courts retain the power to order production in contravention of a foreign statute. *See, e.g.*, *Societe Nationale*, 482 U.S. at 544 n.29 (it "is well settled" that foreign statutes "do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute"); *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 205 (1958) (broadly giving effect to foreign secrecy laws would "invite efforts to place ownership of American assets in persons or firms whose sovereign assures secrecy of records"); *In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 564 (S.D.N.Y. 2002) (concluding that a grand jury was entitled to corporate documents located in a region of an unnamed foreign where production was prohibited both by local law and by specific opinions of legal officials); *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 42, 47 (D.D.C. 1984) ("It is not *ipso facto* a defense to a discovery request that the law of a foreign country may prohibit production or disclosure."). Likewise, even if a valid contractual bar to the production of the requested documents existed—which it does not—Exxon could not hide

behind contractual "ownership" provisions to avoid production either. *See, e.g.*, *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470 (S.D. Fla. 2011) ("Pursuant to Rule 34(a), a party must produce documents in response to a request for production where those documents are 'in the responding party's possession, custody, or control.'") (quoting Fed. R. Civ. P. 34(a)); *Cooper Indus., Inc. v. British Aerospace*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984) (granting motion to compel materials held by corporate parent and holding that "[t]he fact that the documents are situated in a foreign country does not bar their discovery"); *cf. Laker Airways*, 103 F.R.D. at 46 ("If … [any] party to a lawsuit pending in a court, considers a discovery request … improper, its appropriate course is to oppose such request … [I]t cannot simply sit back, without even making an effort to secure whatever foreign permission may be required, on the basis of its unilateral judgment that the request is improper.").[4] Exxon undeniably owns, possesses, and controls the requested documents because Exxon assured the Court that it would preserve all potentially relevant documents located in Indonesia. *See* Ex. 6, Hr'g Tr. at 17 (May 1, 2006). The Court memorialized Exxon's assurances to this effect. Mem., Dkt. 159 at 3.

E.    **Plaintiffs Will Defer to the Court Should Defendants Raise Any Particularized Foreign Policy or National Security Concern.**

Plaintiffs have respected Indonesian sovereignty and U.S. foreign policy interests during the course of this litigation. Concerns expressed by the State Department and the

---

[4] The production sharing contract between Pertamina and Mobil Oil Indonesia, Inc., provides that the Indonesian government owns technical data related to oil and gas. *See* Ex. 28, Pertamina & EMOI Production Sharing Contract § 5.3(e) (Pertamina has "title to all original data resulting from the Petroleum Operations including but not limited to geological, geophysical, petrophysical, engineering, well logs and completion, status reports and any other data as Contractor may compile during the term hereof."). No part of the contract speaks to EMOI's internal corporate documents, such as memoranda related to supervision of security personnel. Plaintiffs are not seeking geological data, well logs and such. The Production Sharing Contract is thus not relevant to this motion.

Indonesian government, *see* Mem. Op., Dkt. 647 at 15–18, have been significantly abated, however, by this Court's recent dismissal of Plaintiffs' ATS claims and less recent dismissal of several Defendants including the PT Arun LNG Company, Mem. & Op., Dkt. 365 at 5.

In 2008, the U.S. government filed an amicus brief with the Supreme Court, urging denial of Exxon's petition for certiorari that requested dismissal of the only claims that remain at issue today. *See* S.G. 2008 Amicus Br. "The government's brief reiterated its position that the District Court 'reach[ed] the result the United States had advocated with respect to respondents' ATS claims' when it dismissed those claims." Mem. Op., Dkt. 647 at 16. The Solicitor General's brief also made clear that it was reasonable for the D.C. Circuit to regard Exxon's interlocutory appeal as one "based on an assertion by private defendants, not by the Executive, that the litigation itself would have adverse consequences for the Nation's foreign policy interests." S.G. 2008 Amicus Br. at *8–9. Indeed, the Solicitor General wrote that in "a case like this, when the United States identifies the manner in which further proceedings in the district court will interfere with foreign policy interests, an order designed to limit proceedings to that extent, but not going further, need not be immediately appealable." *Id.* at *14. The government's opposition to certiorari in that circumstance certainly reflected a trust in the judgment exercised by this Court. *See id.* at *16 (noting that "the United States had said that its 'concerns can be avoided by holding … that the ATS does not create an independent right of action,' and the district court responded" by granting motions to dismiss ATS and TVPA claims, such that the D.C. Circuit "regarded [Plaintiffs'] case as having been narrowed to one involving state 'tort claims by private plaintiffs against a private corporation'" *Id.* at *16). The government thus expressly discouraged the Supreme Court from becoming involved for the purpose of dismissing the common law tort claims that remain.

REDACTED PUBLIC VERSION

Nonetheless, Plaintiffs are cognizant that concerns have been expressed about the potential invasiveness of discovery in Indonesia. Mem. Op., Dkt. 647 at 15. Accordingly, Plaintiffs request a special procedure be adopted to aid in the careful and tailored production of Exxon's corporate documents. Plaintiffs request that the Court compel Exxon to produce responsive corporate documents as called for in Plaintiffs' requests for production. As Exxon proceeds to review and search for responsive documents, should any concern about the contents of specific documents arise, Exxon shall identify these documents and submit them to the Court for *in camera* review. *See Schlesinger v. CIA*, 591 F. Supp. 60, 63, 66–67 (D.D.C. 1984) (conducting, at plaintiff's request, *in camera* review of a CIA "classified affidavit and several sample documents" where the CIA had claimed FOIA Exemption 1, which applies to documents authorized "to be kept secret in the interest of national defense or foreign policy"). Plaintiffs propose that this procedure should allay any remaining foreign policy related anxieties.

The happenstance of these twenty-year-old corporate documents' location should not bar their disclosure.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

REDACTED PUBLIC VERSION

December 20, 2019                              Respectfully submitted,


                                              /s/ Agnieszka M. Fryszman
                                              Agnieszka M. Fryszman (# 459208)
                                              Rylee Sommers-Flanagan (# 1552582)
                                              **Cohen Milstein Sellers & Toll PLLC**
                                              1100 New York Ave., N.W.
                                              Suite 500, East Tower
                                              Washington, DC 20005
                                              Tel: (202) 408-4600
                                              Fax: (202) 408-4699
                                              afryszman@cohenmilstein.com
                                              rsommers-flanagan@cohenmilstein.com

                                              Paul L. Hoffman (*Pro Hac Vice)*
                                              **Schonbrun Seplow Harris & Hoffman
                                                LLP**
                                              11543 W. Olympic Blvd
                                              Los Angeles, CA 90064
                                              Tel: (310) 396-0731
                                              hoffpaul@aol.com

                                              Terrence P. Collingsworth (# 471830)
                                              **International Rights Advocates**
                                              621 Maryland Ave., N.E.
                                              Washington, DC 20002
                                              Tel: (202) 255-2198


                                              *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2019, I electronically filed the foregoing Plaintiffs'

Motion for Phase II Discovery of Relevant Corporate Documents Located in Indonesia with the

Clerk of the Court using the ECF, who in turn sent notice to all counsel of record.

Dated:    December 20, 2019                          /s/ Agnieszka M. Fryszman
                                                     Agnieszka M. Fryszman