**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN DOE I, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 01-1357 (RCL/AK) |
| ) | |
| v. ) | |
| ) | |
| EXXON MOBIL CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **PLAINTIFFS' RESPONSE TO DEFENDANTS' "NOTICE"**

Without conferring with Plaintiffs, Defendants have submitted a "Notice" representing to the Court that (a) "Exxon has accepted Plaintiffs' proposal to take their discovery depositions remotely in August"; (b) Plaintiffs' pending motion (Dkt. 711) "is moot on the question of whether the Court should order Plaintiffs' discovery depositions to be taken remotely"; and (c) Plaintiffs Motion "remains pending on the question of whether Plaintiffs have demonstrated cause for leave to take their own trial depositions." Dkt. 716 at ¶¶ 1, 5.  Each of those representations is untrue.

On May 19, Plaintiffs' filed "Plaintiffs' Motion for (A) Leave to Take Plaintiffs' Trial Depositions; and (B) Leave to Take All Depositions Remotely Pursuant to Federal Rule of Civil Procedure 30(b)(4) and (b)(5)."  That motion requests entry of a proposed order and deposition protocol providing the following relief:

- "Plaintiffs shall have leave to take trial depositions of the individual Plaintiffs (as previously agreed by the parties and in accord with relevant law)."

- "If it will not be safe and practicable to take "in-person" discovery and trial depositions of the individuals Plaintiffs commencing by August 3, 2020, the parties shall proceed with remote depositions of the individual Plaintiffs as soon as it is safe and practicable to do so."

- "The parties should be granted leave to take remote depositions of all third-party witnesses in this action pursuant to Fed. R. Civ. P. 30(b)(4) and 30(b)(5)."

Dkt. 711 at 1. That motion was filed after Defendants were unwilling to agree to *any* of these depositions or even discuss the process for doing so.

Defendants' "Notice" neither accepts Plaintiffs' proposal nor moots the pending motion. Indeed, this would have been obvious to Defendants if they had made any effort to confer with Plaintiffs, rather than filing a "Notice" making these representations to the Court at the close of business on Thursday, July 2.[1] Consistent with Exxon's retraction of its earlier agreement to take sequential discovery and trial depositions of each Plaintiff, its failure to agree to any schedule or terms for deposing third-party witnesses, and its vehement opposition to remote depositions, Exxon now takes the following tact:

\*        Exxon continues to renege upon its prior agreement that discovery and trial depositions will be taken of each Plaintiff.

---

[1] The Court can draw its own conclusions about the reasons this "Notice" was filed by Defendants shortly before a holiday weekend – more than three weeks after Plaintiffs' motion was fully briefed -- without any effort to confer with Plaintiffs. Simultaneously with filing its brief, Exxon sent a letter to Plaintiffs' counsel which it then appended to its "Notice." Obviously this letter served no purpose other than to support the "Notice" being filed by Defendants.

Defendants' statement that they have only now determined that "government-imposed restrictions and safety concerns likely will prevent safe travel to Malaysia" after briefing "was fully submitted" (Notice at ¶ 2) is not credible. As Exxon (which has offices in Malaysia) certainly knew, restrictions prohibiting foreign nationals from entering Malaysia were already in place when this matter was previously briefed. This was, in fact, explicitly called to Defendants' attention more than three weeks ago when Plaintiffs filed their Reply Memorandum. *See* Dkt. 715 at 9 n.13 (explaining that "proceeding in August as proposed by Defendants appears impossible" because "Malaysia's borders are currently closed to entry by foreign nationals and on June 9 Malaysia announced this restriction will remain in place until at last August 31.").

* Exxon does not accept the relief Plaintiff has requested from this Court – authorizing Plaintiffs' depositions to be taken remotely "as soon as it is safe and practicable to do so" pursuant to a protocol submitted to the Court that would allow depositions to proceed in a workable manner. Instead, Exxon has only indicated that it is willing to proceed with videoconference depositions "*subject to* Plaintiffs' agreement to [Defendants' Replacement] protocol" (Dkt. 716, Exh. A at ¶ 2) (emphasis added) – a Replacement Protocol that completely rewrites the terms submitted to the Court seven weeks ago (and proposed to Defendants prior to that) and contains poison pills and other provisions that would sabotage any prospect for viable or fair remote depositions.

* Plaintiffs' pending motion explains that while both parties have recognized and agreed that third-party depositions are essential to this case, Defendants have repeatedly rejected proposals to move forward with those depositions remotely. This stratagem continues in Defendants' notice where they do not agree to proceed with third-party depositions remotely, instead submit a Replacement Protocol that makes no provision (or sense) for third-party depositions, and disingenuously suggest they will "meet and confer" about the matter "when Plaintiffs identify the third-party witnesses they intend to depose." Dkt. 716 at ¶ 4. As Defendants are well aware, they already have detailed information about numerous third-party depositions Plaintiffs plan to take, *see* Dkt. 715, Exh. A, and have been assured they will be given many weeks of advance notice prior to any third-party deposition. This does not provide the slightest basis for Defendants' continuing failure to agree that third-party depositions can proceed by videoconference deposition – a conclusion that is obvious from Defendants' belated effort to suggest they are finally amenable to videoconference depositions of the Plaintiffs.

The relevant history is meticulously set forth and documented in Plaintiffs' earlier memoranda, Dkt. 711 & 715.  When Defendants' declined to proceed with in-person depositions in February, March and April, Plaintiffs repeatedly urged Defendants (on April 22, April 24, May 5 and May 13) to confer about remote depositions as counsel all over the United States were doing.  Each time Defendants declined even to discuss the topic.  They provided no response when a deposition protocol was provided to them almost two months ago and again did not comment – or raise any specific objections (other than their refusal to agree to any videoconference depositions) – when substantially the same deposition protocol was submitted to the Court seven weeks ago.

There is a straightforward, sensible and fair way to proceed with videoconference depositions (a subject Plaintiffs have discussed extensively with videoconference services).  The Plaintiffs and third-party witnesses reside in various small rural villages located in Banda Aceh, Indonesia.  All of the videoconference depositions can be taken in an agreed upon, central location that will afford both electricity and internet service during regular business hours.  Not surprisingly, the individual Plaintiffs have limited means and are entirely unfamiliar with deposition proceedings.  To ensure that depositions proceed in as efficient and timely manner as possible, Plaintiffs' litigation team in Aceh will transport the clients to and from the correct deposition location.  The only individuals that needs to be in the room while a deposition is conducted are the witness and a neutral person (provided by the videoconference service or otherwise agreed to by the parties) that can address any technical issues that arise.  In the covid-era, it is common practice for other persons – counsel, the parties, the court reporter and videographer, and other support personnel, to participate remotely (much like the audio or

videoconference process that commonly occurs now for court proceedings, mediations and many other contexts).[2]

Because of the rural location, it can be anticipated that this process will require cooperation by counsel and reasonableness as technical or other issues arise. The proposed order and protocol submitted by Plaintiffs seven weeks ago provides a workable and sensible way to effectuate this. Rather than conferring about that process, as they were repeatedly asked to do, or even commenting on it in their submission to the Court more than a month ago, Defendants have now belatedly filed a "Notice" that purports to "accept" Plaintiffs' proposal and "moot" much of Plaintiffs' motion). In reality, Defendants condition this on Plaintiffs' agreement on an entirely new protocol (hereafter "Replacement Protocol") that completely rewrites the terms filed with the Court by Plaintiffs. And it does so in a manner that would effectively sabotage remote depositions from the outset and was filed by Defendants without making the *slightest* effort to discuss any of these issues with Plaintiffs prior to submitting this entirely rewritten Replacement Protocol to the Court.

Although Defendants have had *almost two months* to raise any objections to Plaintiffs' deposition protocol with the Court, they instead elected never to address the matter. Even their untimely "notice" provides *no* rationale for rejecting the protocol submitted to the Court on May 19, let alone entirely rewriting its terms without justification or explanation. Indeed, that rewriting is so complete, and any willingness by Defendants to proceed is expressly pre-

---

[2] Defendants' Replacement Protocol unreasonably provides that a "representative of Defendants" – but none of the Plaintiffs (other than the witness) – may be present. That is contrary to well-established law, which permits any party to attend (or view) deposition testimony except in rare circumstances. Plaintiffs are prepared to discuss with Defendants whether it is safe for anyone other than the witness and neutral technical support person to be physically present but, in either case, the parties can make arrangements so that an appropriate corporate representative as well as Plaintiffs can view a deposition remotely should they wish to do so.

conditioned on videoconference depositions being "subject to … agreement" on the Replacement Protocol, that it is readily apparent there is no agreement at all, let alone one that moots the pending motion.

To show how completely Defendants have now rewritten the relief sought in Plaintiffs' proposed order and protocol, Plaintiffs append a chart as Exhibit A that shows (in Column 1) the relief and terms proposed to the Court by Plaintiffs in the motion filed May 19 (Dkt. 711); the very different terms now appended to Defendants' "Notice" (Column 2); and the myriad problems that Defendants' belated rewriting of Plaintiffs' request for relief would create (Column 3).  Here, we will simply highlight some of the respects in which Defendants' "Notice" neither accepts nor moots Plaintiffs' motion and requested relief:

\*	Defendants' Notice acknowledges, as it must, that Defendants will no longer agree to any trial depositions of Plaintiffs (notwithstanding Defendants' prior agreement on sequential discovery and trial depositions documented in Dkt. 711 and 715).  Indeed, in stating that they are now prepared to go forward only with discovery depositions of the Plaintiffs (and even then only "subject to" Defendants' Replacement Protocol), Defendants would foreclose the successive discovery and trial depositions of each Plaintiff they previously agreed to and scheduled.

\*	Plaintiffs' motion requests the Court to authorize videoconference discovery and trial depositions of the Plaintiffs "as soon as it is safe and practicable to do so." (Dkt. 711 at 1). Defendants' Notice rewrites this and states that "Exxon has accepted Plaintiffs' proposal to take their discovery depositions remotely in August." Dkt. 716 at ¶ 3.  But that purported "acceptance" is expressly contingent on Plaintiffs' "agreement to" Defendants' Replacement Protocol – a Replacement Protocol that was never presented, discussed or even mentioned to

Plaintiffs before Defendants' filed their "Notice," has never been agreed to by Plaintiffs, and is replete with provisions that would sabotage videoconference depositions before they even begin. Even then, Defendants' Replacement Protocol makes clear that they are continuing to raise and preserve every objection they have heretofore made to remote depositions. *See* Defendants' Replacement Protocol at ¶ 2 ("Defendants do not waive, and expressly reserve, all objections" to proceeding with videoconference depositions).[3]

\*       Plaintiffs' motion to the Court proposed that depositions would proceed as follows:

> 11. All depositions shall commence at or about 9:00 a.m. in the location where the witness is located if practicable for the witness and technical personnel, unless otherwise agreed to by counsel or authorized by the Magistrate Judge or this Court. The deposition shall continue for 3.5 hours (and may be continued the following day, except Saturdays), unless otherwise agreed to by counsel.

This is the same time that depositions would have commenced had the Defendants' proceeded with in-person depositions in Malaysia, as *Defendants* had previously proposed.

Defendants' Replacement Protocol completely replaces this and provides that depositions will commence at 5:00 a.m. Eastern (United States) time, 2:00 a.m. for Plaintiffs' counsel in the Western United States, and will then continue for the full seven hours of testimony (plus additional time that will be necessary for meals and appropriate breaks in the deposition). (*See* Defendants' Replacement Protocol at ¶ 18. This would mean that each deposition would begin in Aceh after the close of business (at 5:00 p.m.) and Defendants would continue with the deposition until well after midnight.

---

[3] As soon as the pending issues are resolved, Plaintiffs are fully prepared to commence depositions on dates that are workable for both sides. Although Plaintiff counsel have some scheduling commitments for other litigation, Plaintiffs will confer with Defendants to determine mutually-agreeable dates and the parties can confirm that proceeding on those dates will be consistent with any covid-based restrictions in Aceh at the time of the depositions.

7

By insisting that depositions not be taken during regular business hours where the witness is located – as they would be with the "in-person" depositions Defendants previously proposed – Defendants are rewriting the protocol to exhaust witnesses and impede their ability to testify. Many of these individuals are older witnesses or have infirmities; all of them are completely unfamiliar with the deposition process; and all have been subjected to (or their decedents were subjected to) torture, sexual assault and/or other abuse by the military guards used by Exxon at its facilities. If Defendants' objective was to learn what occurred to them and the basis for their claims, it could accomplish this by questioning them during normal business hours where they are testifying. But Defendants have instead conditioned their willingness to proceed on taking each deposition during hours guaranteed to exhaust each witness and maximize Defendants' ability to secure inconsistent or inaccurate testimony. If Defendants are genuinely interested in learning and testing the facts, this is neither realistic nor appropriate.

This is not only inappropriate for the Plaintiffs; Defendants know that it will make it virtually impossible to secure essential testimony from the many third-party witnesses. Those witnesses cannot be compelled to travel from their rural homes to appear for depositions that commence late in the day and may continue well past midnight (when the witness will then have to travel home). This is an approach designed to prevent third-party witnesses from agreeing to testify at all, or testify without being exhausted, rather than promote the search for truth.[4]

---

[4] Defendants' insistence that depositions begin after the close of business and potentially continue well past midnight also creates unnecessary risks that depositions may be disrupted by risks of technical problems because of limitations in electrical or internet service after the close of business in this rural area. This is compounded by an additional provision in Defendants' Replacement Protocol providing that if any technical or other issues arises in a deposition that counsel cannot agree to resolve, the deposition will be adjourned. (Defendants' Replacement Protocol at ¶ 20). And Defendants' Proposal now rejects the expedited process for resolving such disputes proposed in Plaintiffs' motion and protocol (providing expedited briefing to the Magistrate Judge with strict page limits) and instead proposes that those issues will be briefed to this Court over a two-week period with no page limits.

Notably, in conditioning their agreement on these terms, Defendants do not even take an approach that materially reduces the burdens on counsel. The Defendants' Replacement Protocol would require all counsel in the Eastern United States to begin taking each deposition at 5:00 a.m. (and presumably start their day an hour earlier), and counsel in the Western United States to begin each deposition at 2:00 a.m., and then proceed for seven – and more likely eight or more -- hours. This is *not* a requirement that is designed to reduce burdens on counsel – but instead serves primarily to exhaust witnesses and impede their ability to testify accurately.

The protocol filed by Plaintiffs' seven weeks ago provides a practical and sensible way to proceed. Although it creates some burdens for all counsel – but much less than entailed by the multiple weeks of travel to Malaysia and multiple weeks of travel to Indonesia that Defendants' previously proposed – it is a reasonable way for experienced and able counsel to proceed, it best ensures that both party and third-party witnesses can and will testify without doing so, if at all, in a state of exhaustion.

\*       Defendants' Replacement Proposal would allow the following persons – *in addition to* the witness and an individual providing any necessary technical support – to "be present in the room where the deposition is being taken": "counsel of record for either party"; "the court reporter"; "a videographer"; "an interpreter"; and "a representative of Defendants." (Defendants' Replacement Protocol ¶ 7). This is wholly unnecessary and would exactly the dangers of asymptomatic transmission of covid-19 that remote depositions are intended to avoid. In fact, Defendants' Replacement Protocols would effectively transform the remote depositions into "in-person" depositions as Defendants' election. Plaintiffs are fully prepared to work with Defendants to ensure that an appropriate corporate representative and Plaintiffs other than the

9

testifying Plaintiff have an opportunity to view deposition testimony, but the terms of Defendants' Replacement Protocol are impractical, unsafe and patently unfair.[5]

    \*      Paragraph 1 of the protocol submitted by Plaintiffs provides that it "does not preclude a party from taking a deposition in-person if safe and practical, with the agreement of counsel or approval by the Magistrate Judge or the United States District Court Judge." Defendants have rejected this language and their Replacement Protocol instead provides that "Defendants reserve all rights to travel to and attend Plaintiffs' discovery depositions in person should it be safe and feasible to do so." Defendants' Replacement Protocol at ¶ 2. This would allow Defendants to decide unilaterally that it is safe – for not only counsel, but the witness – to attend a deposition and then show up at the deposition of Plaintiffs' clients without any assurance that Plaintiffs' counsel agrees it is safe, has been given advance notice, or is afforded notice with sufficient time to then re-arrange their schedule and make travel arrangements (if that is even possible on short notice) for travel to Aceh, Indonesia.

    \*      As explained above, to ensure that these depositions proceed as smoothly as possible, it is *critical* that Plaintiffs' Litigation team have the ability to transport witnesses to and

---

[5] Tellingly, Defendants' Replacement Protocol authorizes a "representative" *of the Defendants* to be present at a deposition, but prohibits any Plaintiff (other than the witness) from doing so, even though they are parties to the litigation. This is contrary to well-established law and Defendants have not made *any* showing, let alone the extraordinary showing that this would require. *See, e.g., Alexander v. F.B.I.*, 186 F.R.D. 21, 53 (D.D.C. 1998) (rejecting request to exclude party from deposition where adverse party (plaintiffs) "have failed to identify any compelling or extraordinary circumstances warranting the exclusion …") (Lamberth, J.); *Hines v. Wilkinson*, 163 F.R.D. 262, 265-66 (S.D. Ohio 1995) ("Under Rule 26(c)(5), the courts may exclude a party from a deposition only in `extraordinary circumstances.' 8 C.A. Wright, A.R. Miller and R.L. Marcus, Fed. Pract. & Proc., § 2041 at 536 (1994). … That standard is fully consistent with the notion that a party's right to attend a deposition has a constitutional dimension and is therefore entitled to special protection."). As the depositions approach, Plaintiffs are prepared to discuss with Defendants whether this attendance would be safe and, in any event, agree that arrangements should be in place that will allow an appropriate corporate representative and Plaintiffs to observe deposition testimony. The requirement in Defendants' Replacement Protocol that this opportunity is available *only* to Defendants, but not Plaintiffs, is both unfair and contrary to law.

from depositions, ensure that witnesses find the deposition location in a timely manner, and assist and communicate about logistical issues such as meals and any necessary accommodations. Because Plaintiffs' counsel will not be in Indonesia, this is essential to Plaintiffs' ability to make witnesses available, facilitate the depositions and avoid disagreements that could result in the extended adjournments that Defendants' Replacement Protocol contemplates. This is assistance that is routinely and appropriately provided by litigation counsel or their support team, and it is most obviously appropriate where Plaintiffs' counsel cannot attend the depositions, does not speak the same language as their clients, and the witnesses are located in rural areas, have limited means, and are entirely unfamiliar with the deposition process.

Plaintiffs do not believe members of either side's litigation teams should be present while a deposition is being taken, and Paragraph 6 of the Protocol submitted by Plaintiffs in May further provides that during the deposition "the witness will not communicate with anyone but the examining attorney, the court reporter, translators, the technical support personnel, and the witness's counsel." To the extent that Defendants' Replacement Protocol prohibit Plaintiffs' litigation team from transporting witnesses to and from a deposition, waiting outside until it is completed so the witness can be returned home, and making arrangements for food as necessary, *see* Defendants' Replacement Protocol at ¶ 9 (prohibiting any member of Plaintiffs' litigation team from "attend[ing]" a deposition, viewing a deposition "through remote means," or seeking "to communicate with any Plaintiffs during any Plaintiffs' deposition), it is entirely inappropriate and would serve simply to impede the ability of witnesses to attend a deposition.

Nor is there the slightest basis for categorically prohibiting members of Plaintiffs' litigation team from viewing a deposition "through remote means" or communicating with all

11

*other* Plaintiffs during the time period that a witness is being deposed. The Plaintiffs, as parties to this litigation, have a well-established right to view deposition testimony remotely (just as Defendants' corporate representatives are entitled to do), *see* note 5 *supra,* and the assistance of Plaintiffs' litigation team is required to accomplish this. Aside from their characteristic aspersions, the Defendants' have never presented a scintilla of evidence that there is *anything* wrong with this.

Similarly, there is not the slightest basis for, or *any* evidence supporting, a prohibition on Plaintiffs' litigation support team communicating with Plaintiffs *other than the witness*, while depositions are being conducted. To the contrary, communications with other Plaintiffs are essential during a period in which there will be numerous depositions and schedules are certain to be changing as depositions are completed more quickly than expected, potentially encounter disruptions, or other unanticipated circumstances arise. The ability of Plaintiffs' counsel to coordinate such matters with its litigation team in Indonesia is essential where numerous depositions are being conducted overseas on a daily basis, Plaintiffs' counsel cannot be present, and the litigation team is required even to communicate in Acehnese with counsel's clients. The new restrictions imposed by Defendants' Replacement Protocol serve no legitimate purpose, are completely unsupported by the record, and are designed simply to make it impossible for counsel to work with their litigation team – as counsel does in every case and is of particular importance here, where depositions are proceeding in a different country and the clients speak a different language – so that videoconference depositions can proceed in a fair and efficient manner.

\*         As explained above, Defendants' Replacement Protocol does *nothing* to facilitate third-party depositions, which – in contrast to the Protocol submitted to the Court in May – are *excluded* from its terms. *See* Defendants' Replacement Protocol at ¶ 3 (stating that Defendants

12

"agree to this protocol only for the discovery depositions of Plaintiffs," and Defendants "do not agree to, and expressly oppose any remote trial depositions of Plaintiffs or for any third-party witnesses"). Thus, without ever disputing the necessity or importance of the third-party depositions, Defendant has again postponed any agreement to proceed with them by videoconference, now offering the excuse that they will only meet and confer about this subject "when Plaintiffs identify the third-party witnesses they intend to depose." Dkt. 716 at ¶ 4. But Plaintiffs have already identified numerous third-party witnesses that Plaintiffs plan to depose[6] and there is *no* justification for not making the videoconference deposition protocol applicable to those witnesses, as Plaintiffs' protocol does, so those depositions can proceed.

\*	The protocol submitted by Plaintiffs to the Court also includes specific provisions directing the parties to minimize inappropriate speaking objections, avoid interrupting the witness or opposing counsel, and otherwise conduct themselves in a professional manner that will allow depositions taken remotely and using translators to proceed in an efficient and workable manner. *See* Plaintiffs' Protocol at ¶¶ 8, 13. These provisions are eliminated in Defendants' Replacement Protocol.

\*	Indeed, in virtually every respect, Defendants have now rejected and/or rewritten the protocol they received almost two months ago (and repeatedly declined to confer about) and the terms that were proposed to this Court in Plaintiffs' motion and proposed order seven weeks ago. The many additional respects in which Defendants' now belatedly propose to restrict the

---

[6] Plaintiffs have previously identified specific third-party corroborating witnesses for almost all of the Plaintiffs and provided contact information to the Defendants, identification of the plaintiff(s) that each witness relates to, and the subject areas they are expected to address. Although the covid-pandemic and shelter-in-place restrictions has impeded efforts to supplement this for a limited number of Plaintiffs, supplemental information will be provided shortly. As Defendants already know the identity of almost all of the third-party witnesses that Plaintiffs may depose – and, in fact, have known this since 2019 – and have been assured they will have ample notice before any third-party deposition, this provides no excuse for Defendants' exclusion of third-party witnesses from their Replacement Protocol.

ability of Plaintiffs to proceed with videoconference depositions – long opposed in any form by Defendants – in a manner that is practical, fair to the parties, and appropriate are further detailed in Exhibit A.

## CONCLUSION

Defendants have had literally months to confer with Plaintiffs about the process for moving forward with videoconference depositions or to object to the terms proposed by Plaintiffs' when this matter was submitted to the Court seven weeks ago.  Defendants have now – again without ever conferring with Plaintiffs – submitted a "Notice" to the Court which incorrectly tells the Court that "Exxon has accepted Plaintiffs' proposal to take their discovery depositions remotely in August" and then incorrectly tells the Court that much of Plaintiffs' pending motion is "moot."

In reality, Defendants have simply recognized (many months after counsel in cases around the country reached this conclusion) that their continuing and categorical opposition to all videoconference depositions is untenable.  As a result, they have now adopted a strategy in which they have again bypassed the meet and confer process and instead submitted a proposal that rejects and/or re-writes virtually every term submitted by Plaintiffs' seven weeks ago, seeks the imposition of new restrictions that would undermine feasible and fair videoconference depositions before they even begin, and expressly conditions their willingness to proceed on videoconference depositions being "subject to" Defendants' Replacement Protocol.  Contrary to Defendants' claim, their "Notice" has neither accepted the relief sought in Plaintiffs' motion nor mooted the pending motion.  Accordingly, Plaintiffs' respectfully request that Plaintiffs' Motion for (A) Leave to Take Plaintiffs' Trial Depositions; and (B) Leave to Take All Depositions

Remotely Pursuant to Federal Rule of Civil Procedure 30(b)(4) and (b)(5) be granted so that these depositions can proceed as soon as it is safe and practicable to do so.

Dated:  July 6, 2020                                             Respectfully submitted,

                  /s/ Kit A. Pierson
                  Agnieszka M. Fryszman (#495208)
                  Kit A. Pierson (#398123)
                  Cohen Milstein Sellers & Toll PLLC
                  1100 New York Ave., N.W.
                  Suite 500, East Tower
                  Washington, DC 20005
                  Tel: (202) 408-4600
                  Fax: (202) 408-4699
                  afryszman@cohenmilstein.cm
                  kpierson@cohenmilstein.com

                  Poorad Razavi
                  Cohen Milstein Seller & Toll PLLC
                  2925 PGA Blvd., Suite 200
                  Palm Beach Gardens, FL. 33410
                  Tel: (561) 515-1400
                  Fax: (561) 515-1401
                  prazavi@cohenmilstein.com

                  Paul L. Hoffman (Pro Hac Vice)
                  Schonbrun Seplow Harris & Hoffman LLP
                  11543 W. Olympic Blvd
                  Los Angeles, CA
                  Tel: (310) 396-0731
                  hoffpaul@aol.com

                  Terrence P. Collingsworth (# 471830)
                  International Rights Advocates 621
                  Maryland Ave., N.E.
                  Washington, DC 20002 Tel:
                  (202) 255-2198
                  *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2020, I electronically filed the Plaintiffs' Response to Defendants' Notice with the Clerk of the Court using the ECF, who in turn sent notice to counsel of record in this matter.

/s/ Kit A. Pierson

2681676 v1