UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JOHN DOE I**, et al.,

    *Plaintiffs,*

**v.**

**EXXON MOBIL CORPORATION**, et al.,

    *Defendants.*

Case No. **1:01-cv-1357 (RCL/AK)**

**UNDER SEAL**

## MEMORANDUM OPINION

Before the court is another discovery battle in a nearly two-decade-old war between fourteen individual plaintiffs and defendants Exxon Mobil Corporation (EMC) and its subsidiary Exxon Mobil of Indonesia (EMOI) (together "Exxon"). The plaintiffs allege that that they (or their next of kin) suffered human rights abuses as a result of Exxon's Indonesian operations.

Through three motions (ECF Nos. 657/659, 702, and 711) the plaintiffs present five discovery disputes to the court. They ask the Court to determine (1) whether they may conduct discovery of documents located in Indonesia, (2) whether Exxon representatives must sit for another round of depositions, (3) whether Exxon must respond to their requests to admit that documents are authentic and regularly maintained business records, (4) whether they may take depositions by videoconference, and (5) whether they may take their own trial depositions.

Upon consideration of the motions, briefs, replies, surreply, notices, and exhibits, the Court will (1) deny the request to compel production of documents stored only in Indonesia, (2) permit a limited continuation of Rule 30(b)(6) depositions, (3) defer ruling on the request to compel Exxon to admit that documents are authentic and regularly maintained business records, (4) grant leave to take depositions remotely, and (5) deny without prejudice leave to take trial depositions.

## I.   BACKGROUND

The Court refers to its previous decisions extensively discussing this case's factual background and procedural history. *See Doe v. Exxon Mobil Corp.*, 391 F. Supp. 3d 76 (D.D.C. 2019); *Doe v. Exxon Mobil Corp.*, No. 01-cv-1357-RCL, 2019 WL 2348100, (D.D.C. June 3, 2019); *Doe v. Exxon*, Mem. Op. (Dec. 7, 2016) (ECF No. 586); *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75 (D.D.C. 2014); *Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16 (D.D.C. 2008); *Doe v. Exxon Mobil Corp.*, No. 01-cv-1357-LFO, 2006 WL 1193855, (D.D.C. May 3, 2006); *Doe v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20 (D.D.C. 2005).

Briefly, this case arises out of harms that the plaintiffs allege they (or their next-of-kin) suffered because of Exxon's efforts to secure its natural gas facility in Aceh, Indonesia. The remaining claims are for torts governed by Indonesian law. *See Doe*, 391 F. Supp. 3d at 93.

## II.   LEGAL STANDARDS

The Court has "broad discretion" in defining the scope of discovery. *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 968 (D.C. Cir. 2016).

In general:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court, S.D. Iowa*, 482 U.S. 522, 546 (1987). And the Court must "demonstrate due respect for any special problem confronted by the foreign litigant

2

on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Id.*

Upon motion and demonstration that the parties cannot resolve their dispute without judicial intervention, the Court may order a party to meet its discovery obligations. Fed. R. Civ. P. 37.

## III.   ANALYSIS

### A.  Motion to Discover Documents Located in Indonesia

The plaintiffs request an order permitting discovery of corporate documents stored in Indonesia. The Indonesian Embassy and the State Department, however, have objected to even limited discovery in Indonesia. *See* Letter from Embassy of the Republic of Indonesia to the Court (Sept. 25, 2018) (ECF No. 644-1); Letter from Hon. John B. Bellinger, III, Legal Advisor, U.S. Dep't of State to the Court (June 15, 2005) (ECF No. 91-1); *see also* Br. of United States as Amicus Curiae 8–9, *Exxon Mobil Corp. v. Doe*, 554 U.S. 909 (2008) (No. 07-81). When the State Department expresses its opinion on a particular course of litigation, the Court defers to "the considered judgment of the Executive on a particular question of foreign policy." *Cf. Republic of Austria v. Altmann*, 541 U.S. 677, 702 (2004).

From the start of this litigation, the Court directed that "[d]iscovery should be conducted in such a manner so as to avoid intrusion into Indonesian sovereignty" and warned that "there will be firm control over any discovery conducted by [the] plaintiffs." *Doe*, 393 F. Supp. 2d at 29. The Court may limit the scope of discovery for good cause. Fed. R. Civ. P. 26(c). And both protecting American foreign-policy interests and respecting Indonesian sovereignty constitute good cause to limit discovery. *See Aérospatiale*, 482 U.S. at 546; *see also Simon v. Republic of Hungary*, No. 10-cv-1770 (BAH), 2012 WL 13069771, at *8 (D.D.C. Sept. 30, 2012) (declining to permit discovery on comity grounds). Therefore, the Court will continue to limit the scope of discovery

3

to preclude the plaintiffs from compelling the disclosure of documentary evidence located exclusively in Indonesia.

The plaintiffs' counter-arguments are unavailing. First, most of the plaintiffs' arguments go to the Court's authority to issue the order they seek. The Court has no doubt that it may order a party before it to submit to extraterritorial discovery. But the Court declines to exercise its discretion to issue that order given the State Department's concerns. Second, despite the plaintiffs' arguments to the contrary, limiting discovery is consistent with the Court's prior rulings. The Court has permitted the plaintiffs to discover documents when copies exist both within and outwith Indonesia. *See* Order 2 (May 3, 2006) (ECF No. 158). But it has not permitted discovery of documents located exclusively in Indonesia. Third, whether Exxon has agreed to conduct some depositions in Indonesia does not alter this Court's general prohibition on Indonesian discovery. The Court would consider a foreign-policy based objection to holding those depositions, but it will not ratchet down its protections for American foreign policy interests. Fourth, the fact that discovery in other cases occurs in Indonesia does not change the calculus in this case, which intrinsically concerns the Indonesian military. Finally, *in camera* review of the documents would not change the harms to Indonesian sovereignty from ordering discovery in Indonesia. *In camera* review might protect Indonesian confidentiality interests but not would not respect Indonesian sovereignty interests because the Court would substitute its judgment for the Government of Indonesia's. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 921 (D.C. Cir. 1984) ("The prerogative of a nation to control and regulate activities within its boundaries is an essential, definitional element of sovereignty.").

The plaintiffs may not compel Exxon to produce documents exclusively stored in Indonesia. To the extent, however, that any documents can be found outside of Indonesia, the plaintiffs may discover those non-Indonesian copies.

## B. Motion to Compel Rule 30(b)(6) Testimony

In 2007, the plaintiffs deposed three 30(b)(6) witnesses as part of jurisdictional discovery. The plaintiffs now request an order compelling EMC and EMOI to designate 30(b)(6) representatives to be deposed on fifty-four topics. Exxon argues that the plaintiffs covered or could have covered all of the grounds in their 2007 depositions.

A party deposes a corporation by outlining the topics of the deposition and asking the corporation to designate persons to testify. Fed. R. Civ. P. 30(b)(6). A 30(b)(6) representative "must testify about information known or reasonably available to the [corporation}. *Id.* Generally, a deponent, including a 30(b)(6) corporate representative, may only be deposed once without leave of court. Fed. R. Civ. P. 30(a)(2)(A)(ii). Upon motion, however, the Court must grant leave unless the second deposition would be unreasonably cumulative or burdensome or the information could be obtained from another source. *See* Fed. R. Civ. P. 30(a)(2) (citing Fed. R. Civ. P. 26(b)(1)–(2)); *see also Judicial Watch, Inc. v. Dep't of Commerce*, 34 F. Supp. 2d 47, 55 (D.D.C. 1998).

Consistent with these principles, the Court will direct EMC and EMOI to designate representatives for depositions because the two-stage discovery process curtailed the scope of the 2007 depositions. *See* Mem. 3–4 (May 3, 2006) (ECF No. 159); Mem. Order (Mar. 6, 2006) (ECF No. 138); *see also* Pls.' Reply Br. on Mot. Compel 30(b)(6) Testimony 11–12 (collecting examples of limited scope of depositions). To avoid unreasonably cumulative depositions, however, the plaintiffs may not ask the representatives about any documents that it had access to at the time of the original depositions. This condition should address Exxon's concerns about both limiting the

scope of the depositions and maintaining the bar on discovering materials located in Indonesia.  If Exxon is correct that the plaintiffs have no new ground to cover, preparing for the depositions should pose little burden.  If Exxon is incorrect, however, the plaintiffs must have the opportunity to question EMC and EMOI representatives about new evidence — particularly about the allegations of negligent supervision and hiring.[1]

### C.  Motion to Compel Responses to Requests for Admission

The plaintiffs request an order compelling Exxon to respond to their requests to admit that at least 20,000 pages of documents are authentic and subject to the business-records exception to the hearsay rule.  Exxon objects that the requests are unclear (because they only include the Bates number associated with the first page of each document and not the Bates range for each document) and that the request is unduly burdensome.

Under Rule 36(a):

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying.

Fed. R. Civ. P. 36(a).  The "function [of the rule] is to define and limit the matters in controversy between the parties" and thus "expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry." 8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure Civil* § 2252 (3d ed., April 2020 update).  The Court may limit or quash

---

[1] The Court precluded the plaintiffs from seeking documents in Indonesia. *See supra* Section III.A. To ensure that the plaintiffs can prove their claim despite that bar, the Court will accord a little latitude to the plaintiffs in their efforts to secure evidence from Exxon.

requests for admission that are unduly burdensome. Fed. R. Civ. P. 26(b)(2)(C); *see Sparton Corp. v. United States*, 77 Fed. Cl. 10, 19 (2007) (collecting cases). The Court may defer consideration of requests for admission until a pretrial conference. Fed. R. Civ. P. 36(a)(6).

Because the record has not been narrowed for trial and because plaintiffs will gain nothing from requiring Exxon to authenticate documents that will never be introduced into evidence, the Court will defer consideration of this motion until the pre-trial conference. By that time, the Court expects the plaintiffs to have narrowed the scope of their requests to only those documents they intend to rely on at trial; the Court further expects Exxon to be prepared to respond rapidly to a narrowed request.

### D. Motion for Leave to Take Remote Depositions

The plaintiffs seek leave to take both discovery and trial depositions by videoconference due to COVID-19-caused impediments to traveling safely to Malaysia and Indonesia for in-person depositions. Exxon argues that depositions should be put on hold until in-person depositions can be held safely, but it has agreed to videoconference depositions of the plaintiffs.

While the Federal Rules of Civil Procedure contemplate that parties ordinarily will take depositions in person, the rules permit remote depositions by stipulation or court order. Fed. R. Civ. P. 30(b)(4).

In the midst of a pandemic — when personal and public health requires minimizing travel and close confinement — the parties must rely on technology to continue with discovery. In accord with many other federal courts that have authorized remote depositions during the pandemic, the Court will order that all remaining depositions be taken by videoconference under Rule 30(b)(4). *See, e.g.*, Nat. Res. Def. Council, Inc. v. EPA, No. 16-cv-1861 (JDB), 2020 WL 2849624, at *5

n.5 (D.D.C. June 2, 2020); *Fouad v. Milton Hershey Sch.*, No. 1:19-cv-253, 2020 WL 4228278, at *1 (M.D. Pa. July 23, 2020) (collecting cases).

The parties shall confer about and agree to procedures for taking remote depositions fairly and safely. The Court does not anticipate the need to issue an order setting those procedures, provided that counsel for both parties negotiate in good faith.

### E. Motion for Leave to Take Plaintiffs' Trial Depositions

The plaintiffs seek leave to take their own trial depositions, arguing that they meet the requisite standards and that Exxon had, at one point, agreed to trial depositions. Exxon argues that the plaintiffs have not shown that they will be unavailable for trial, that it would be prejudiced by the plaintiffs' only appearing at trial through recorded videos, and that it never consented to trial depositions. The parties did not brief whether the Due Process Clause requires the plaintiffs to appear in person at trial — a question the Court has yet to decide. *See* Mem. Op. 44–45 (Dec. 7, 2016).

A party may offer a deposition at trial in lieu of live testimony, among other circumstances, when a witness is outside the United States through no fault of the party offering the witness or when presenting the deposition serves the interests of justice. *See* Fed. R. Civ. P. 32(a)(4). In evaluating whether to allow trial depositions, the Court looks to (1) unavailability, (2) prejudice, and (3) risk of unfair surprise after discovery has closed. *Wye Oak Tech, Inc. v. Republic of Iraq*, 2018 WL 4901075, at *1 (D.D.C. Oct. 9, 2018).

At this stage, the plaintiffs' motion fails on all three criteria. First, the question of whether the plaintiffs will be unavailable for trial is still unsettled. Second, allowing the plaintiffs to take their own trial depositions prior to the close of discovery would unfairly prejudice Exxon because Exxon would not be able to cross-examine the plaintiffs based on the entire evidentiary record.

Third, for the same reason, prematurely allowing trial depositions risks unfair surprise. Therefore, the Court will deny the motion.

The plaintiffs offer three counterarguments. None are availing. First, they argue that Exxon already agreed to the trial depositions. Exxon in turn claims that they agreed to the timing of the depositions but did not waive their objections to the plaintiffs' motion for leave to take trial depositions. The Court will not mediate the parties' internecine squabbling. *See* Mem. Op. 9 (May 18, 2017) (ECF No. 621) (cautioning parties against bitter discovery disputes). It is not apparent to the Court that Exxon waived its right to object to trial depositions, and the Court will not infer a waiver from a series of ambiguous communications — especially when that ambiguity appears strategic. Moreover, even if Exxon had agreed to trial depositions, the Court would not find the *Wye Oak* factors satisfied here. Second, they argue that some of the plaintiffs may die before trial. But Federal Rule of Civil Procedure 32(4)(A) and Federal Rule of Evidence 804(b)(1) alleviate that concern by allowing the depositions to be admitted if the deponent dies prior to trial. Third, they argue that taking the discovery and trial depositions at the same time would be more efficient. This the Court does not deny. But the Court will not sacrifice a fair opportunity to cross-examine the plaintiffs for efficiency, especially because taking remote depositions should already be less expensive and more efficient than taking live depositions.

The plaintiffs may renew their motion to conduct trial depositions after the close of discovery. At that time, the Court will also consider the due process implications of allowing the plaintiffs to appear at trial solely by videotaped deposition or live video. For now, however, the motion is premature.

## IV.   CONCLUSION

Based on the foregoing, the Court will (1) deny the request to compel production of documents stored only in Indonesia, (2) permit a limited continuation of Rule 30(b)(6) depositions,

(3) defer ruling on the request to compel Exxon to admit that documents are authentic and regularly maintained business records, (4) grant leave to take depositions remotely, and (5) deny without prejudice leave to take trial depositions.

A separate order accompanies this memorandum opinion.


Date: _____8/10/20_____

Royce C. Lamberth
United States District Judge