**Public Redacted Copy**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE I, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>EXXON MOBIL CORPORATION, *et al.*,<br><br>    Defendants. | Case No. 01-cv-01357-RCL |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION REQUESTING RELIEF REGARDING EMOI AND EMC RULE 30(b)(6) DEPOSITIONS

Patrick J. Conlon (Bar No. 414621)
patrick.j.conlon@exxonmobil.com
EXXON MOBIL CORPORATION
22777 Springwoods Village Parkway
N1.4B.388
Spring, TX 77389
Telephone: (832) 624-6336

Theodore V. Wells, Jr. (Bar No. 468934)
twells@paulweiss.com
Jaren E. Janghorbani (admitted *pro hac vice*)
jjanghorbani@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

Alex Young K. Oh (Bar No. 499955)
aoh@paulweiss.com
Justin Anderson (Bar No. 1030572)
janderson@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006-1047
Telephone: (202) 223-7300

**Public Redacted Copy**

Plaintiffs submitted nearly 300 pages of briefing and appendices to this Court, purportedly in support of a motion to accelerate a deposition by fifteen days within the discovery period. No motion should have been filed at all, much less one presenting volumes of extraneous material meant to unfairly prejudice Exxon and its counsel.[1] Exxon respectfully requests that the Court deny Plaintiffs' motion.

Consistent with this Court's orders and the applicable rules, Exxon offered five options during the week of February 15 for Plaintiffs to depose Exxon's Rule 30(b)(6) witness. Without identifying any conflict or other impediment to proceeding on those dates, Plaintiffs requested instead that the deposition take place on or before January 31. In response, Exxon's counsel explained that the sixty broad topics noticed by Plaintiffs require substantial preparation, in addition to the need to accommodate the year-end holidays, time-zone differences, and other logistical hurdles.[2] Plaintiffs do not question that the February dates Exxon proposed are within the fact discovery period, that Plaintiffs' counsel are available on those dates, or that the noticed topics—covering decades-old events—require substantial preparation.

In fact, Plaintiffs say very little about why the deposition must proceed on their timetable, devoting only a few pages to the dispute that is purportedly the subject of their Motion. The majority of their submission seeks to present a deeply inaccurate account of the merits of Plaintiffs' case through carefully selected excerpts and misleading characterizations of deposition testimony to date. No doubt this is by design

---

[1] Defendants Exxon Mobil Corporation ("EMC") and ExxonMobil Oil Indonesia, Inc. ("EMOI") are collectively referred to as "Exxon," herein.

[2] *See* Ex. 1. "Ex. __" refers to exhibits to the Declaration of Justin Anderson, dated December 4, 2020.

**Public Redacted Copy**

to get ahead of Exxon's summary judgment motion, which will show that Plaintiffs lack any proof to support their contention that the unnamed Indonesian soldiers who injured them—during a violent Indonesian civil war—were controlled or hired by Exxon. Exxon submits that the Court should disregard the irrelevant and inaccurate portrayal of the record that Plaintiffs have included in their Motion. Exxon responds briefly below only to avoid any possibility that the grossly misleading depiction of the record takes hold.

**I.     Plaintiffs Lack Any Basis for Burdening This Court with a Manufactured Scheduling Dispute**



see Dkt. 621 at 10; Dkt. 719 at 8

Consistent with this directive, Exxon has not moved for a protective order against the broad Rule 30(b)(6) topics noticed by Plaintiffs, choosing instead to designate and prepare a witness for each topic. Likewise, Exxon has not sought any relief from the Court when Plaintiffs have unilaterally selected and withdrawn dates for their own depositions and those of their witnesses, sometimes with mere hours' notice.[3]

Plaintiffs apparently do not feel similarly constrained by the Court's directive. But their desire to accelerate a deposition by two or three weeks—presumably to impose maximum inconvenience on Exxon over the holiday period—does not provide a valid basis for seeking the Court's intervention: "Discovery problems are the

---

[3] *See, e.g.*, Ex. 2; Ex. 3; Ex. 4; Ex. 5. Exxon of course does not refer here to the rescheduling that was necessitated by the illness and passing of Jane Doe VI's son, which Exxon accommodated without issue. *See* Exs. 5, 6, 7.

**Public Redacted Copy**

quintessence of disputes that lawyers should be able to work out without resort to judicial intervention." *Jacobs* v. *George Washington Univ.*, No. CIV.A. 87-1762, 1988 WL 53419, at *1 (D.D.C. May 13, 1988); *see also Scruggs* v. *Getinge USA, Inc.*, 258 F.R.D. 177, 180 (D.D.C. 2009) ("[I]t is the Court's hope—indeed, its expectation—that the parties will resolve any remaining discovery disputes through negotiation and compromise."); *U.S. ex rel. Pogue* v. *Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006) ("It is a waste of this Court's time and resources to adjudicate a dispute that could have been resolved by the parties themselves.").

Plaintiffs' assertion that Exxon "refused" to negotiate over the dates, Mot. at 5, is false. Exxon has made every effort to avoid burdening this Court with further motion practice over the Rule 30(b)(6) notices by offering to make its witness available on any of five different dates.[4] Exxon exchanged multiple letters and participated in two meets and confers with Plaintiffs in an effort to reach agreement on these depositions. Moreover, Exxon clearly explained why it needed the additional time after January 31 to prepare for the deposition: the breadth of the sixty topics in Plaintiffs' notice, the intervening holiday schedules, and the witness's other responsibilities. In short, there was nothing out of the ordinary—and certainly not warranting an invective-laden motion with nearly 300 pages of materials—about Exxon's request to have fifteen additional days to prepare in these circumstances. *See* Ex. 1.

---

[4] Instead of burdening the Court with a detailed point-by-point response to Plaintiffs' depiction of the parties' meet-and-confer process, Exxon will let its correspondence and formal responses and objections to the Rule 30(b)(6) notices speak for themselves in demonstrating Exxon's good faith effort to meet and confer. Ex. 1; Ex. 8; Ex. 9; Ex. 10; Ex. 11.

**Public Redacted Copy**

Plaintiffs do not seriously dispute that the sixty topics in Plaintiffs' revised Rule 30(b)(6) notices require substantial preparation for Exxon.[5] The relevant events occurred nearly two decades ago and most of the employees who could provide information on the topics no longer work for Exxon, with some of them now refusing to participate in the case.[6] These sixty topics are exceedingly broad: they are limited only by date range (which was initially broader than the parties had previously agreed to) and the bar on Indonesian discovery. *See* Ex. 13 at 2–3; Ex. 14 at 2. These topics include, for example, EMC's "policies and practices regarding the use of host government security, including any consideration or use of alternative security providers and the costs thereof," Ex. 13 at 5, and EMOI's "policies and practices regarding security for the Arun Project" on twelve separate topics, including, by way of example,

- "The use of, or request for, host government security, including any consideration of alternative security providers and the costs thereof;"

---

[5] Plaintiffs do suggest that Exxon does not need time to prepare until February because Exxon had been prepared to put up its Rule 30(b)(6) witness before the prior October 2020 discovery cut-off. Mot. at 10–11. Plaintiffs ignore the fact that such schedule was before this Court granted Plaintiffs' motion for reconsideration on the scope of the Rule 30(b)(6) deposition. Dkt. 730. Before the Court granted Plaintiffs' reconsideration motion, the universe of documents that could be used by Plaintiffs during the deposition had been limited to only those produced after September 18, 2007, Dkt. 720, which would have drastically reduced the burden on Exxon to prepare for the depositions.

[6] Plaintiffs rehash their recurring complaint that Exxon removed certain former-employee witnesses, Tommy Chong and Maman Budiman, from its witness disclosures. Mot. at 10; Dkt. 705-2. It is hardly surprising in a case that has been pending for nearly twenty years that witnesses' memories fade and circumstances change. Indeed, Plaintiffs themselves have amended their witness lists as recently as October. Ex. 12. In any event, Defendants informed Plaintiffs months ago that neither Messrs. Chong nor Budiman, who are former employees, wishes to participate in the matter further, and provided their current contact information so that Plaintiffs can contact them if they so wish. Dkt. 707-1.

**Public Redacted Copy**

- "Any oversight, monitoring, management, supervision of, or conduct standards or best practices for security personnel, including your policies and practices relating to the prevention of physical abuses and human rights abuses; disciplinary practices and procedures; and reporting regarding security personnel conduct and activities, as well as the identities of the EMOI staff responsible for such oversight, monitoring, management or supervision;" and

- "Any goods, supplies, or equipment requested or provided, including any limitations on the use of such goods, supplies or equipment, as well as any goods, supplies or equipment sourced or procured by You in response to requests, ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████" Ex. 14 at 3–5.

Plaintiffs' revised topics, and the parties' meet and confer over them, were not finalized until early November, after which Exxon began to collect the information known by each corporation and compile it for the purpose of preparing a witness. The corporate representative who will provide testimony is a senior executive with extensive experience in Indonesia who has both a demanding work schedule and a family with whom he wishes to spend time during the year-end holiday period, thereby further limiting the time available to prepare the witness. And of course, preparing the witness will be complicated and slowed by the restrictions related to the ongoing global pandemic and time-zone differences.

**Public Redacted Copy**

Exxon has explained to Plaintiffs all of its reasons for requiring the additional two or three weeks after Plaintiffs' preferred date—but within the discovery period.[7] And Plaintiffs themselves have demanded that Exxon's witness should be thoroughly prepared on each topic. *See* Ex. 16 at 4. Yet, Plaintiffs simply refused to accept Exxon's proffered dates, and insisted that the deposition must proceed on their schedule without providing any legitimate reason.

Plaintiffs cannot explain how holding the deposition a mere two or three weeks after Plaintiffs' preferred date would cause them prejudice. Instead, they simply argue that opaque "problems" and delays may ensue. Mot. at 1. But speculative reference to possible "problems" falls well short of Plaintiffs' burden. *Lurensky* v. *Wellinghoff*, 258 F.R.D. 27, 30 (D.D.C. 2009) (stating that to establish good cause, the movant must "include[e] specific, articulable facts and not merely speculative or conclusory statements"); s*ee also Stanissis* v. *Dyncorp Int'l LLC*, No. 3:14-CV-2736-D, 2015 WL 5603722, at *2 (N.D. Tex. Sept. 23, 2015) (upholding magistrate's application of "good cause" standard to question of where and when depositions should be taken).

Plaintiffs' vague references to the possibility of the need for "follow-up" after the depositions are purely hypothetical and unpersuasive. Plaintiffs have been in possession of the vast majority of Exxon's documents for well over a decade, and have previously deposed both corporate entities and numerous fact witnesses, taking more than fifty hours of testimony. And, despite their apparent hindsight regret over not having

---

[7] Ex. 1. Exxon has also been transparent about its intention to designate one witness for both the EMC and EMOI depositions, *see id.*, which will substantially streamline the deposition process given the significant overlap in topics noticed for EMC and EMOI. Plaintiffs have posited that a deposition of EMC may not even be necessary. *See* Dkt 735–2 at 10; Ex. 15 at 4.

6

**Public Redacted Copy**

asked better questions in the first round of Rule 30(b)(6) depositions in 2007, Plaintiffs' conduct speaks volumes: Plaintiffs never moved—in 2007 or ever—to compel answers to any questions from the 2007 depositions. In short, the likelihood of any significant "follow-up" being necessary from these final depositions is quite low. And if a valid basis does arise after the depositions, then Plaintiffs may seek relief from the Court based on the new information at that time. *See, e.g.*, *Flowers-Carter* v. *Braun Corp.*, No. CV-18-03836-PHX-DWL, 2020 WL 4462174, at *3 (D. Ariz. June 25, 2020) (finding a "textbook example of good cause to extend a discovery deadline" where the party promptly sought an extension from the court upon learning previously undisclosed information).[8]

Finally, Plaintiffs' complaints about Exxon's refusal to identify the Rule 30(b)(6) designee in advance of the deposition, Mot. at 4 n.4, lack merit. There is no legal obligation on Exxon to disclose the identity of its corporate designee in advance of the depositions. In fact, the Advisory Committee on Rules of Civil Procedure recently rejected an amendment that would require this disclosure. *See Memorandum from the Honorable David G. Campbell, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States*, *to Scott S. Harris, Clerk, Supreme Court of the*

---

[8] Plaintiffs' complaint about the proposed start time for the Rule 30(b)(6) depositions, Mot. at 1; Ex. 17 at 3, is without basis. *All* depositions of Plaintiffs and their third-party witnesses have begun between 7:00 p.m. and 10:00 p.m. Eastern, per the deposition protocol. This start time was demanded by Plaintiffs purely for their convenience and that of their witnesses who reside in Indonesia. Exxon's corporate designee for both EMOI and EMC—a senior executive who resides in Singapore—is similarly entitled to a start time convenient to his time zone. *See* Ex. 11. Plaintiffs offer no reason why the Rule 30(b)(6) witness should be treated differently than Plaintiffs and their witnesses.

**Public Redacted Copy**

*United States* 63 (Oct. 23, 2019); *see also Proposed Amendment, Tab 23 – Comment of Ford Motor Company* dated Jan. 7, 2019.

More importantly, Plaintiffs' demands that Exxon must go above and beyond what it is legally obligated to do ring particularly hollow in light of their obstructive conduct throughout the deposition phase of discovery. For example, Plaintiffs still refuse to provide—without justification—deposition dates for many of their witnesses. After obtaining their requested extension of discovery from the Court on September 24, Dkt. 750, Plaintiffs have ignored their proposed schedule and to date have taken only five of the twenty-five "third-party" depositions that served as the basis for that motion.[9] Plaintiffs have not explained why these witnesses are no longer available

---

9   *Compare* Dkt. 742-2 at Ex. V (proposed schedule for Plaintiffs' third-party witnesses through January) *with* Ex. 18.

In addition to the unexplained refusal to set dates for the vast majority of their witnesses, Plaintiffs' counsel notified Exxon shortly before depositions of third-party witnesses began that they "now" represent several of them, including all the "third-party" witnesses deposed to date. *See* Exs. 18, 19. By placing such "third-party" witnesses under a cloak of privilege, Plaintiffs have prevented Exxon from conducting a thorough cross-examination of what witnesses actually saw or understood, and into whether there has been any improper witness collusion or coaching. This is precisely why the practice of one lawyer representing both party and so-called "neutral third-party" witnesses is generally disfavored. *See, e.g.*, *Mid-State Aftermarket Body Parts, Inc.* v. *MQVP, Inc.*, No. 4:03CV00733JLH, 2009 WL 1211440, at *5 (E.D. Ark. May 4, 2009) ("No matter how pure a lawyer's motives might be, whenever a lawyer for a party solicits a nonparty witness to be his client, the appearance will be given, whether justified or not, that the lawyer is trying to influence the witness's testimony."). Plaintiffs' counsel has cut off questioning about how the attorney-client relationship formed by asserting attorney-client privilege. *See, e.g.*, Ex. 20 at 19:6–34:9, 37:10–40:14.

**Public Redacted Copy**

on the dates proposed to the Court, and only assert vague generalities about the threat of the pandemic and unspecified witness conflicts.[10]

> II. **The Materials Cited in Plaintiffs' Motion that are Extraneous to the Relief Sought Should Be Discarded**

The lack of a legitimate basis for Plaintiffs' Motion about a fifteen-day difference in scheduling underscores that the real purpose of their Motion is to unfairly prejudice Exxon with carefully selected accounts of deposition testimony that create a highly misleading impression about the merits of their case and conduct of counsel. "As case after case has held, counsel in a discovery dispute are not to use the briefing as vehicles to snipe at the other side." *Park Ridge Sports, Inc.* v. *Park Ridge Travel Falcons*, No. 20 C 2244, 2020 WL 6896090, at *4 (N.D. Ill. Nov. 24, 2020). Yet, a full half of Plaintiffs' Motion is dedicated to reciting information that is irrelevant to the scheduling question before the Court. *See* Mot. at 5–10. The Court should strike and disregard this extraneous material. *Park Ridge Sports, Inc.*, 2020 WL 6896090, at *4 (citing Fed. R. Civ. P. 12(f)) ("[G]iven what the parties have filed on a simple discovery dispute . . ., any future briefs in which materials extraneous to the issue at hand are appended will be stricken. . . . A court is not obliged to sift through mountains of

---

[10] Plaintiffs' counsel have engaged in other "deposition-by-ambush" tactics. On several occasions, counsel waited until the very day of a deposition to produce documents relevant to the witness's testimony, including documents purportedly suggesting that the witness had worked for Exxon or its contractors in Aceh, the witness's identification documents, and photographs allegedly depicting relevant locations. *See* Ex. 21; Ex. 22; Ex. 23.

9

**Public Redacted Copy**

extraneous or irrelevant material in the hope of discovering something that might be pertinent to the motion at hand.").

Moreover, Plaintiffs' ploy ultimately fails. As Exxon will demonstrate at summary judgment—the appropriate time to make arguments based on all of the facts uncovered during discovery—Plaintiffs lack any factual support for their claims. The out-of-context excerpts Plaintiffs include in their Motion are designed to deflect attention from the glaring holes in Plaintiffs' case. The testimony of Plaintiffs and their "third-party" witnesses confirm that Exxon, like so many others in Aceh, was caught in the midst of an escalating Indonesian civil war. Plaintiffs' witnesses testified ▮

▮ Ex. 24 at 48:25–49:13; Ex. 25 at 71:25–72:8, 72:25–73:7. ▮

▮ *See* Ex. 25 at 72:9–20, 73:8–12. ▮

▮ *See, e.g.*, Ex. 24 at 77:9–79:14; Ex. 25 at 74:4–75:14; Ex. 26 at 73:8–74:6.

Plaintiffs attempt to distract from this failure in evidence by focusing the Court's attention on a mischaracterization of Mr. Duffin's deposition. ▮

▮ Mot. at 6–8. ▮

10

**Public Redacted Copy**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Ex. 27 at 202:22–24, 209:21–22; Ex. 28 at 170:12–15; Ex. 29 at 102:13–25; Ex. 30 at 211:15–21.  Exxon will demonstrate Plaintiffs' utter failure of proof—and the failure to investigate the claims—at the appropriate time.

## CONCLUSION

Perhaps recognizing that Exxon will soon demonstrate to this Court the shameful lack of evidence supporting Plaintiffs' grave allegations—which have baselessly tarnished Exxon's reputation for nearly two decades—Plaintiffs have chosen to go on the offensive, in a transparent attempt to unfairly prejudice Exxon with a distorted version of events.  Exxon respectfully requests that the Court deny Plaintiffs' pretextual request to intervene in a minor scheduling dispute, discard the extraneous materials in the motion, and order that Plaintiffs depose Exxon's corporate witness on any of the dates proposed by Exxon.

**Public Redacted Copy**

| | |
|---|---|
| Washington, D.C.<br>December 4, 2020 | Respectfully submitted,<br><br>      /s/ Alex Young K. Oh<br>Theodore V. Wells, Jr. (Bar No. 468934)<br>twells@paulweiss.com<br>Jaren E. Janghorbani (admitted *pro hac vice)*<br>jjanghorbani@paulweiss.com<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>Telephone: (212) 373-3000<br><br>Alex Young K. Oh (Bar No. 499955)<br>aoh@paulweiss.com<br>Justin Anderson (Bar No. 1030572)<br>janderson@paulweiss.com<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>2001 K Street, N.W.<br>Washington, DC 20006-1047<br>Telephone: (202) 223-7300<br><br>Patrick J. Conlon (Bar No. 414621)<br>patrick.j.conlon@exxonmobil.com<br>EXXON MOBIL CORPORATION<br>22777 Springwoods Village Parkway<br>N1.4B.388<br>Spring, TX 77389<br>Telephone: (832) 624-6336<br><br>*Attorneys for Defendants Exxon Mobil Corporation and ExxonMobil Oil Indonesia Inc.* |

12