REDACTED PUBLIC COPY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE I, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 01-1357 (RCL/AK) |
| | ) | |
| v. | ) | |
| | ) | |
| EXXON MOBIL CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MOTION TO
## COMPEL DISCOVERY AND IMPOSE SANCTION

REDACTED PUBLIC COPY

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ................................................................................. 1

I.   FACTUAL BACKGROUND. ............................................................................... 7

    A.   Factual Background Preceding the Deposition. ..................................... 7

    B.   The EMOI 30(b)(6) Deposition. ......................................................... 11

II.  THE DEFENDANT'S CONDUCT AT THE RULE 30(B)(6) DEPOSITION
    SHOULD BE SANCTIONED. ............................................................................ 33

    A.   The Conduct by Defendant EMOI and Defense Counsel is Sanctionable. ........... 33

    B.   The Court Should Impose Just and Appropriate Sanctions. ................................. 40

REDACTED PUBLIC COPY

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beach Mart, Inc. v. L&L Wings, Inc.*,
    302 F.R.D. 396 (E.D.N.C. 2014) ........................................................................10

*Brooks v. Phoenix Metals Co.*,
    1:15-cv-3612-ODE-JKL, 2016 WL 11588061 (N.D. Ga. Aug. 19, 2016) ............................11

*CitiMortgage, Inc. v. Chicago Bancorp, Inc.*,
    No. 4:12-CV-00246 CDP, 2013 WL 3946116 (E.D. Mo. July 31, 2013) ..............................34

*FedEx Corp. v. United States*,
    No. 08-2423 Ma/P, 2011 WL 2023297 (W.D. Tenn. Mar. 28, 2011) ....................................41

*Frangoli v. Abbott Labs., Inc.*,
    No. 13-cv-00324-NJR, Dkt. 147 (S.D. Ill. Mar. 28, 2014) ....................................................34

*GMAC Bank v. HTFC Corp.*,
    248 F.R.D. 182 (E.D. Pa. 2008) ............................................................................................40

*Landmark Legal Found. v. EPA*,
    82 F.Supp.3d 211 (D.D.C. Mar. 2, 2015) (Lamberth, J.) .....................................................41

*Luangisa v. Interface Operations*,
    No. 2:11-cv-00951-RCJ-CWH, 2011 WL 6029880 (D. Nev. Dec. 5, 2011) .............33, 40, 41

*In re: Neurontin Antitrust Litig.*,
    2:02-cv-01390-MCA-JBC, Dkt. 414 (D.N.J. Jan. 25, 2011) ...........................................36, 40

*In re Neurontin Antitrust Litig.*,
    MDL No. 1479, 2011 WL 2357793 (D. N.J. June 9, 2011) .............................35, 36, 41, 42

*New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*,
    242 F.R.D. 164 (D. Mass. 2007) ...........................................................................................11

*Paice, LLC v. Hyundai Motor Co.*,
    Civ. No. WDQ-12-0499, 2014 WL 3819204 (D. Md. June 27, 2014) .............................34, 41

*Reed v. Lackawanna Cty*,
    No. 3:16-CV-02143, 2018 WL 6322966 (M.D. Pa. Dec. 4, 2018)........................................34

*Rembrandt Diagnostics, LP v. Innovacon, Inc.*,
    16-cv-069 CAB (NLS), 2018 WL 692259 (S.D. Cal. Feb. 2, 2018) ......................................10

*Robinson v. Quicken Loans, Inc.*,
    3:12-cv-00981, 2013 WL 1776100 (S.D.W.V. Apr. 25, 2013) ..............................................11

*Rutherford v. Evans Hotels, LLC*,
    18cv435-JLS(MSB), 2018 WL 6246516 (S.D. Cal. Nov. 29, 2018)......................................11

*Sciarretta v. Lincoln Nat'l Life Insur. Co.*,
    778 F.3d 1205 (11th Cir. 2015) ............................................................................................36

*Shephard v. Am. Broad. Cos., Inc.*,
    62 F.3d 1469 (D.C. Cir. 1995)..............................................................................................42

*United States v. Taylor*,
    166 F.R.D. 356 (M.D.N.C. 1996) .........................................................................................36

*Vargas v. Fla. Crystals Corp.*,
    No. 16-81399-CV-MARRA/MATTEWMAN, 2017 WL 1861775 (S.D. Fla.
    May 5, 2017) .........................................................................................................................33

*Wild Fish Conservancy v. Cooke Aquaculture Pac., LLC*,
    No. C17-1708-JCC, 2019 WL 1755306 (W.D. Wash. Apr. 19, 2019)...................................34

OTHER AUTHORITIES

Fed. R. Civ. P. 30(b)(2)...................................................................................................................40

Fed. R. Civ. P. 30(b)(6)..............................................................6, 10, 11, 12, 31, 32, 33, 34, 35

Fed. R. Civ. P. 30(c)(2)...................................................................................................................43

Fed. R. Civ. P. 30(d)(2).................................................................................................1, 34, 40, 42

Fed. R. Civ. P. 37.......................................................................................................................34, 42

Fed. R. Civ. P. 37(a)(3)(B)(i).........................................................................................................41

Fed. R. Civ. P. 37(a)(5)..............................................................................................................40, 41

Fed. R. Civ. P. 37(b)(2)..............................................................................................................41, 42

Fed. R. Civ. P. 37(d) .......................................................................................................................34

Fed. R. Civ. P. 37(d)(1)...................................................................................................................41

Fed. R. Civ. P. 37(d)(3)...................................................................................................................41

REDACTED PUBLIC COPY

## <u>Introduction and Summary</u>

Plaintiffs respectfully file this motion to address conduct that occurred during the February 14 deposition of EMOI's Rule 30(b)(6) witness, Mark Snell. Pursuant to Federal Rules of Civil Procedure 30 and 37, Plaintiffs respectfully request the imposition of appropriate sanctions and resumption of his deposition and the EMC Rule 30(b)(6) deposition (also of Mr. Snell).  Plaintiffs repeatedly communicated our objections to this conduct during the deposition, reiterated those objections in written communications dated February 16 and 22, and conferred with Defendants regarding this motion on February 22.  Defendants will not consent to the relief requested herein.  A proposed order is appended as Exhibit A.

In support of this motion, Plaintiffs are filing these additional materials (and relevant correspondence):  the deposition transcript (Exh. B); the video of the deposition (Exh. C); the "Notes" (i.e., script) apparently used by the witness at the deposition (Exh. D); the Notice of EMOI's Rule 30(b)(6) deposition (Exh. E); and Plaintiffs' Annotation of much of the Rule 30(b)(6) testimony and colloquy (Exh. F).  The left column of the Annotation sets forth Plaintiffs' annotation (in BOLD CAPS), followed by the relevant testimony.  The right column quotes the relevant language in the witness's "notes," which are either identical or virtually identical to the words used in the associated testimony.

As this record makes clear, Defendant and counsel failed to comply with the requirements of Federal Rule of Civil Procedure 30(b)(6) and this Court's Orders by repeatedly engaging in conduct that impeded, delayed and frustrated "the fair examination of the deponent" Fed. R. Civ. P. 30(d)(2).

- Instead of answering the specific questions that were posed, the witness and/or counsel would first insist that Plaintiffs' counsel identify which of the broader topic areas each

REDACTED PUBLIC COPY

question fell within.  Then, without the responding to the actual question posed, the witness
would apparently read *verbatim* from a lengthy and *non-responsive* script that was not visible
from the video camera angle.  (As the strategy of defense counsel and the witness became
clearer – and Plaintiffs' counsel declined to facilitate this charade -- the witness made clear
how he would respond:  taking a full 7 minutes and 40 seconds on the record to review his
notes before even responding to a question.  *See* Exh. F at 6; Exh. C (Video Disk 2) at 9:57-
18:00).[1]

- This tactic was clearly pre-planned and actively assisted by defense counsel (who lodged
  many hundreds of objections during the deposition).  For example, when the witness was
  asked a simple question to identify EMOI locations on a map produced by Defendants – a
  basic question that would serve as a starting point for other questions, the witness said
  "███████████████████████████████████████████."  Exh. B at 16:12-13.
  Having already told the witness that questions about locations on the map would necessarily
  relate to multiple topics, Plaintiffs' counsel quite appropriately responded:  "████████
  ███████████████████████████████████████████████████████
  ████████████████████████████████████████████" Exh. B at 16:14-
  18.  This entirely proper and innocuous response prompted defense counsel to interject that
  the witness "████████████████████████████████████████

---

[1] Based on counsels' experience, it was also evident that the witness was also pursuing a
strategy of using excessive time to review documents before answering a question.  This became
evident early when the witness was asked simply to identify locations on a map of the EMOI
facilities and insisted on reading every page of the five page document before examining the map
on the last page.  The review of exhibits at depositions typically proceeds with the good faith of
both sides and perhaps no more can be said about witnesses who try to use this as a delaying
tactic at depositions than one "knows it when one sees it."  That occurred here, but is secondary
to the other conduct at issue.

REDACTED PUBLIC COPY

████████████████████████████████████████████████████████"[2]  As the defense

tactic became clearer and Plaintiffs' counsel made clear he would not engage in this

gamesmanship, defense counsel interjected: "████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████"[3]

- After insisting that the general topic area be identified, the witness made no effort to answer

  the actual question posed.  The witness instead looked down and appeared to *read from a*

  *script*, parroting the defense team's position on the *general topic area* at great length without

  attempting to answer the actual question posed.  It became quite clear during the deposition

  that these *non-responsive*, *scripted* speeches were the central defense tactic at this deposition.

  At numerous points, Plaintiffs' counsel asked defense counsel to instruct their witness to

  answer the specific question posed.  These requests were not only disregarded – defense

  counsel instead continued to encourage the witness's tactical evasion of questions throughout

  the deposition.

- As the witness continued to look down (and apparently read from something outside the view

  of the camera), Plaintiffs' counsel asked numerous questions to determine if the witness was

  simply reading verbatim from a script and, if so, whether the script had been prepared by

  defense counsel.  These questions were *fundamental*.  They went to the very words the

  witness was uttering for the jury's consideration – was he reading from a script?  Who had

  written the words?  The Court can assess whether the proper word to describe the witness's

  response to these questions is evasive, misleading or false.  What is clear is that when pressed

---

[2] Exh. B at 16:23-17:3.

[3] Exh. B at 26:18-23.

with these questions the witness went to extraordinary length to avoid telling the truth – i.e.,

that he was reading scripted and non-responsive answers *verbatim* – and instead repeatedly

testified that ███████████████████████████████████████████████."

At other points, the witness testified that he was only reading his answer when he was

quoting from a *deposition* transcript, plainly suggesting that the remainder of his answer was

not a verbatim reading.  That testimony was not truthful.

- The witness was just as evasive when asked questions about whether the testimony he was

  uttering had been written by counsel or the witness.  Although this straightforward question

  was posed repeatedly, a review of the transcript will not reveal a straight answer.  Instead of

  answering this simple yes or no question, the witness repeatedly incanted that the notes were

  a "distillation" of his discussions with counsel.  When asked who wrote the answer, the

  witness asked "███████████████████████████" Exh. B at 68:15-16. At

  other times, he avoided a straight answer to the question by testifying that he doesn't "know

  who the typist is."  (Exh. B at 96:18-20: "████████████████████████

  ████████"; *id.* at 100:6-11: "████████████████████████████

  ████████████████████").

- The protocol entered in an Order by this Court included the following explicit requirement:

  > **16.  Records Available to Witness**. While the deposition is on the record, *the witness shall not have access to any form of information related to the litigation other than exhibits specifically marked and identified for the record* by either side, including but not limited to the internet, phones or other devices or materials that contain any notes, files or documents that relate to the subject matter of the litigation. …

Dkt. 750, Dep. Protocol ¶ 16 (appended hereto as Exhibit G) (emphasis added).  Although

this *required* disclosure and production of the witness's "notes" as soon as the deposition was

on the record, the witness was plainly relying on written materials (indeed, a script) that was

*not* disclosed at the outset of the deposition or marked as an exhibit.  Instead, after the

witness had been pressed *multiple times* on whether he was simply reading an answer from a

prepared script, defense counsel instructed the witness "███████████████████████

███████████████████████"  Exh. B at 60:11-13).  When Plaintiffs' counsel persisted,

defense counsel belatedly stated that ████████████████████████████████████

███████████████████████████"  *Id.* at 61:20-23 (emphasis added).  This was a

clear violation of the Court's Order that "the witness *shall not have access to any form of*

*information related to the litigation other than exhibits specifically marked and identified for*

*the record ...*"  Exhibit G, Dep. Protocol ¶ 16 (emphasis added).  The document that

contained the exact, or virtually exact, words for much of the witness's testimony was finally

produced *after* the all questioning had been completed and the deposition was off the record.

Exh. B at 362:14-15.

- Instead of directing the witness to provide responsive answers to the questions posed, defense
  counsel facilitated and encouraged this behavior.  Defense counsel compounded this by
  creating a written record that was demonstrably untrue.  *See* Exh. B at 208:23-24 and 210:11-
  13) (stating on the record that Plaintiffs' counsel is ████████████████████████████
  ███████████████); and Exh. C, Video 4 at 0:10-3:11 (deposition videotape showing that
  none of these statements by defense counsel were true).

- When Plaintiffs' counsel finally had an opportunity to review the witness's "notes" after the
  deposition was concluded, they confirmed what had become obvious.  When he embarked on
  lengthy, non-responsive answers the witness was not simply "relying" on his notes, or using
  note as an "aide-mémoire," or quoting deposition testimony (as he later suggested) – he was
  often testifying word-for-word from the written materials prepared for him.

**REDACTED PUBLIC COPY**

The foregoing conduct and other efforts to impede, delay and frustrate a fair examination of the deponent, was repeated at numerous points in the deposition.  It continued notwithstanding Plaintiffs' requests that it stop, including multiple requests to defense counsel to have the witness answer the specific question that was being posed.  Stated succinctly, rather than complying with the process set forth in this Court's Order (i.e., meeting and conferring in good faith if the Defendants' had objections to the scope of any topic and, if any concerns were unresolved, filing a motion for a protective order by the November 9, 2020 deadline established in the Court's Order), Defendants engaged in tactics which are squarely at odds with the requirements of Federal Rule of Civil Procedure 30(b)(6).  If countenanced, such misconduct would destroy the purpose of that rule by displacing live (and truthful) testimony presented in a manner replicating trial testimony, with what amounted to an infomercial of non-responsive and self-serving readings which may or may not have been entirely prepared by defense counsel.

Needless to say, this is not a motion Plaintiffs file lightly.  Plaintiffs' counsel understands that this Court expects and demands that all counsel comport themselves in a highly professional manner.  Although defense counsel compounded the misconduct by threatening to seek sanctions *against Plaintiffs' counsel,* the record makes clear that Plaintiffs' counsel's conduct throughout this deposition was entirely professional and, in fact, showed considerable restraint despite the conduct of the witness and defense counsel.  Although it has become essential to memorialize carefully our communications with Defendants, Plaintiffs have *no* interest in over-heated language or using recriminations to advance litigation goals.  Accordingly, in this motion we will endeavor to describe what has occurred in as straightforward a manner as possible.  Indeed, we believe the deposition transcript largely speaks for itself.

**REDACTED PUBLIC COPY**

## I.      FACTUAL BACKGROUND.

### A.      Factual Background Preceding the Deposition.

Although Plaintiffs' motion is based on conduct that occurred at the February 14/15 deposition (*see* I.B *infra*), the following should provide helpful context for the Court.

In April 2020, Plaintiffs filed a motion to compel Defendants EMOI and EMC to produce Rule 30(b)(6) witnesses during this Phase 2 discovery period.  Dkt. 702.  Plaintiffs appended the new Rule 30(b)(6) notices that had been served on Defendants.  In the ensuing briefing, Plaintiffs explained that these depositions were appropriate because of the limitations in Phase 1 discovery and actions by Defendants and their witnesses that made the use of Rule 30(b)(6) especially appropriate.[4]  Over Defendants' vigorous opposition, the Court entered an Order on August 10, 2020, granting "in part the plaintiffs' Motion [702] to Compel insofar as it related to 30(b)(6) depositions and **ORDERS** Exxon to designate 30(b)(6) witnesses to be deposed; provided, however, the plaintiffs may not question the deponents about documents that plaintiffs had access to before September 18, 2007."  Dkt. 720 at 1.

On August 24, Plaintiffs filed a motion requesting that the Court modify the Order to permit use of documents at the Rule 30(b)(6) depositions.  Defendants opposed this relief, arguing that Plaintiffs' request was "frivolous."  Dkt. 732 at 1.  The Court granted Plaintiffs' motion for modification and entered an Order providing, in relevant part, that the Court:

---

[4] For example, after advising Plaintiffs that several Mobil or Exxon employees who had apparently spent significant time at EMOI's operations in Aceh – and were identified as having relevant knowledge – were represented by Defendants and would be made available for depositions.  Defendants subsequently indicated these fact witnesses would not be produced for depositions, meaning that only one Mobil/Exxon fact witness (John Connor) who spent significant time at EMOI's operations in Aceh has ever been deposed.  During the deposition of EMOI's President, Ron Wilson (who worked in Jakarta), Wilson repeatedly would not acknowledge even the authenticity of his own e-mails from Defendants' records.  These are exactly the kind of problems that Rule 30(b)(6) is designed to address.

**REDACTED PUBLIC COPY**

- **MODIFIES** its August 10, 2020 Order so that the second bullet point reads:  "**GRANTS** in part the plaintiffs'' Motion [702] to Compel insofar as it relates to 30(b)(6) depositions and **ORDERS** Exxon to designate 30(b)(6) witnesses to be deposed; provided, however, the plaintiffs may not re-ask questions to which a responsive answer was provide in a previous 30(b)(6) deposition of the same corporation.";

- **ORDERS** the parties to meet and confer by October 23, 2020 to discuss the scope of and schedule times for the Rule 30(b)(6) depositions, which shall be taken no earlier than January 11, 2021;

- **ORDERS** the plaintiffs to notice the Rule 30(b) depositions no later than October 26, 2020;

- **ORDERS** that any motion for a protective order to further limit the scope of the Rule 30(b)(6) depositions be filed no later than November 9, 2020; …

Dkt. 758 at 4-5.

Pursuant to this Order, Plaintiffs made arrangements to confer with Defendants on October 22, 2020 regarding the Rule 30(b)(6) notices that had been pending for months and were the subject of the briefing and Court Orders.  When the parties conferred, however, Defendants declined to discuss *any* of the specific requests, instead insisting that they be re-drafted by Plaintiffs before Defendants would even discuss specific requests.[5]  As it was apparent that no progress could be made with Defendants unless Plaintiffs proceeded in this manner, Plaintiffs scheduled a second conference with the Defendants for Monday, October 26, and spent the weekend revising the long-pending notices.  On the Monday, October 26 conference, Defendants again had no interest in discussing specific requests, but the parties agreed to confer again after the revised notices were served and Defendants provided objections.  In accordance with the Court's Order, Plaintiffs served the revised notices later that day.  *See* Exhibit E (EMOI Notice).

---

[5] *See* Exhibit H and Exhibit I at 2 (letter from Plaintiffs' counsel following October 22 conference: "While we were available to talk through each topic, Exxon declined to do that or, for that matter, agree that any of the requests were appropriate.  Exxon instead took the position that it would not agree to or discuss any of the requests until it was presented with a redrafted set of requests for discussion.").

**REDACTED PUBLIC COPY**

On October 30, Defendants indicated they were "gratified" that Plaintiffs "have served drastically revised Rule 30(b)(6) notices from the originals served in February," and served responses and objections to the revised Rule 30(b)(6) notices. Exh. J at 1. Defendants asked Plaintiffs to "advise promptly if you are unwilling to proceed subject to Defendants' objections so that we can determine whether a motion for protective order is necessary." *Id.* at 2. Of particular relevance here, Defendant EMOI made various "General Objections," but for each of the first ten topics (and subparts) – and as slightly modified for Topic 11– Defendant EMOI stated: "Subject to and without waiving the foregoing objections, consistent with the Discovery Orders, *EMOI will designate a witness to respond to questions on this Topic that are not duplicative of those asked at the Previous Deposition*" [i.e., the Phase 1 deposition of EMOI Rule 30(b)(6) witness John Boydell] (emphasis added). *Id.*

On November 2, Plaintiffs sent a letter responding to Exxon's request that Plaintiffs "advise promptly if you are unwilling to proceed subject to Defendants' objections so that we can determine whether a motion for protective order is necessary." Plaintiffs made clear that Plaintiffs did not agree to EMOI's general objections and, absent an agreement, the depositions would proceed as noticed. Plaintiffs proposed that the parties "meet and confer promptly to discuss these issues and try to work through areas of disagreement." Exh. K at 2.

When the parties met and conferred on November 6, Defendants *again* declined to confer about any of the specific Topics presented in the notices. Plaintiffs nevertheless agreed, with limited exceptions, to limit questioning to information known or reasonably available to Defendants between July 1, 1998 – June 30, 2001 and, for many of the subtopics, the shorter

period January 1, 1999 – June 30, 2001).[6]  After that conference, Defendants confirmed that "we

do not intend to file a motion for protective order on November 9."  Exh. L at 2 (Nov. 6 letter).

As explained *supra*, this Court has ordered that "any motion for a protective order to

further limit the scope of the Rule 30(b)(6) depositions be filed no later than November 9, 2020."

Dkt. 758 at 5.  Defendants elected to have this date pass without seeking a protecting order

limiting the scope of the Rule 30(b)(6) depositions.  Defendants were aware that the depositions

would then proceed as noticed and if they continued to object to the scope of any topic,

Defendants were *required* to seek a protective order.  This was required both by this Court's

Order and well-established law.[7]

---

[6] *See* Exh. M at 3-4 (Plaintiffs' letter of November 7, noting that "[w]e were prepared to
discuss the scope of any particular topics during our meet and confer yesterday and Exxon
elected not to do so.").  We note that there was a typo in Plaintiffs' letter (referencing June 30,
*2011* as an end date that was corrected by agreement of the parties).

We note that there are other written communications between the parties before and after
this meeting, but they do not seem germane to this motion (for example, letters discussing the
dates for the depositions).  If Defendants consider any of the other letters germane, they will of
course submit them (or Plaintiffs can certainly do so).

[7] *See* Exh. N at 3 (November 20 letter advising Defendants that "the law is clear that Exxon
has an obligation to prepare witnesses to testify about the deposition topics as noticed.  As Exxon
knows, it is not legally sufficient to simply make written objections and then restrict a Rule
30(b)(6) witness's testimony on that basis.  The Court's Order set a deadline for Exxon to file
any motion for a protective order and Exxon decided not to do so.  Accordingly, the depositions
will proceed on the basis of the topics as noticed subject to the limitations Plaintiffs have agreed
to as referenced above."); Exh. O at 3 (Plaintiffs' letter of December 23, 2020 advising
Defendants that they could not *unilaterally* insist on time limitation for depositions other than
that provided by the Federal Rules and observing that if Defendants "wished to impose such a
limitation, it was required to seek a protective order by the deadline established by the Court.
Exxon made a tactical decision not to do so.").

*See, e.g., Beach Mart, Inc. v. L&L Wings, Inc.*, 302 F.R.D. 396, 406 (E.D.N.C. 2014) ("The
proper procedure to object to a Rule 30(b)(6) deposition notice is not to serve objections on the
opposing party, but to move for a protective order.  'Put simply and clearly, absent agreement, a
party who for one reason or another does not wish to comply with a notice of deposition must
seek a protective order.'") (citation omitted); *accord Rembrandt Diagnostics, LP v. Innovacon,
Inc.*, 16-cv-069 CAB (NLS), 2018 WL 692259, at *3 (S.D. Cal. Feb. 2, 2018) ("[T]he 'proper
procedure to object to a Rule 30(b)(6) deposition notice is not to serve objections on the

REDACTED PUBLIC COPY

Subsequent communications by the parties focused primarily on the date (and time allowed) for the EMOI and EMC depositions.[8]  As the Court is aware, Plaintiffs filed a motion requesting that the EMOI deposition commence in January, in significant part because of actions by Defendants at earlier depositions.  Defendants took the position that the EMOI and EMC depositions should both be taken in a five day period between February 14-18 (US dates).  The Court agreed and denied Plaintiffs' motion.  Dkt. 767.  Accordingly, the EMOI deposition was scheduled to proceed at 7 p.m. Eastern US time on February 14, and the EMC deposition was scheduled for the same time on February 18.

### B.        The EMOI 30(b)(6) Deposition.

As previously advised, Defendant EMOI declined requests to identify its Rule 30(b)(6) witness in advance of the deposition.  At the deposition, Defendant EMOI elected *not* to use one

---

opposing party, but to move for a protective order.'  A corporate deponent cannot simply make 'objections and then provide a witness that will testify only within the scope of its objections.'") (citation omitted); *Rutherford v. Evans Hotels, LLC*, 18cv435-JLS(MSB), 2018 WL 6246516, at *3 (S.D. Cal. Nov. 29, 2018) (same); *Brooks v. Phoenix Metals Co.*, 1:15-cv-3612-ODE-JKL, 2016 WL 11588061, at *2 (N.D. Ga. Aug. 19, 2016) (same); *Robinson v. Quicken Loans, Inc.*, 3:12-cv-00981 , 2013 WL 1776100, at *3 (S.D.W.V. Apr. 25, 2013) (same); *New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*, 242 F.R.D. 164, 166 (D. Mass. 2007) ("[A] party cannot decide on its own to ignore [a Rule 30(b)(6)] notice.  Rather, if counsel …was of the view that the plaintiff's 30(b)(6) deposition notice was defective or improper in some way … it was [the defendant]s] burden to seek a protection pursuant to Rule 26(c) … Put simply and clearly, absent agreement, a party who for one reason or another does not wish to comply with a notice of deposition must seek a protective order.")

[8] Plaintiffs rejected Defendants' subsequent requests that they be given the questions Plaintiffs would ask and documents that might be used well in advance of the depositions, explaining that there is no such requirement in the Federal Rules and it was not consistent with the parties' prior practice (in Rule 30(b)(6) depositions or otherwise).

The notice to EMOI made clear that the deposition would include "e-mails and other communications produced by Defendants in this litigation" sent to or received by (or referencing), Tommy Chong that related to security issues in Aceh between January 1, 1999 and December 31, 2000; similar documents (as described in the notice) relating to Chee Khoon Oh or K. Jayadev for a later time range; and certain other documents listed in the notice.  *See* Exh. E. This did not exclude the use of other relevant documents.

of the many witnesses it has previously identified as knowledgeable about EMOI's activities, including many individuals Defendants' counsel are representing, and instead use an attorney named Mark Snell as EMOI's corporate representative, even though Mr. Snell testified that he did not have any personal knowledge of the events in question.[9]  Although a corporation can make that tactical choice, Rule 30(b)(6) then *requires* that the witness be able to testify about information EMOI knows or reasonably should know, and do so in a manner that does not impede, delay or frustrate a fair examination of the witness.

Shortly after the deposition commenced, Mr. Snell and defense counsel essentially engaged in a two-step to avoid a substantive response to the question posed and instead substitute a scripted and non-responsive answer, that Mr. Snell read *word-for-word* into the record (without any acknowledgement that he was doing so).  This began early in the deposition when Plaintiffs' counsel asked "█████████████████████████████████████ █████████████████████████████████████████████████████████████"  Exh. B at 25:22-25.  At the witness's request, Plaintiffs' counsel identified the broader topics this inquiry fell within.  Defense counsel then continued to press the point and, among other things, told Plaintiffs' counsel "████████████████████████████████████████████████████" (Exh. B at 26:19-23).  After Plaintiffs again posed the question, the witness embarked on a long, scripted and non-responsive answer.  The following compares the witness's answer (Column 1)

---

[9] Mr. Snell testified that ███████████████████████████████████████████████████ ███████████████████████████.  Although the record indicates that ████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████

REDACTED PUBLIC COPY

with the exact same words in the script (or what the witness called "notes") that were produced

after the deposition was off the record:



REDACTED PUBLIC COPY



As it appeared that the witness was simply reading a long, non-responsive speech, Plaintiffs' counsel tried to ascertain if this was the case and, if so, who had written the words:



---

[10] Exh. B at 27:18-29:23.

[11] Exh. D at 6.

REDACTED PUBLIC COPY



Exh. B at 30:2-32:18. After being instructed by defense counsel to "continue" the witness

again read at length and *verbatim* from his script:

| DEPOSITION TRANSCRIPT | DEFENDANTS' SCRIPT |
|---|---|
|  |  |



REDACTED PUBLIC COPY



At this point in the scripted answer, Plaintiffs' counsel objected that ▮▮▮▮





▮▮▮▮   Exh. B at 34:18-24.  After extended comments by defense counsel, Plaintiffs' attorney

again tried to pose a specific question to the witness:



---

[12] Exh. B at 32:3-34:8.

[13] Exh. D at 7.

REDACTED PUBLIC COPY



Exh. B at 38:11-40:17.

After further back and forth in which Plaintiffs' counsel again tried to get an answer to a specific question (and avoid the lengthy, scripted and non-responsive answers the witness was providing). Plaintiffs' counsel asked: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Exh. B at 51:25-52:6.

Instead of answering this question – which could easily have been answered with a yes or no – the witness again appeared to be reading a non-responsive answer from a lengthy script:

18

REDACTED PUBLIC COPY



REDACTED PUBLIC COPY



REDACTED PUBLIC COPY



After this lengthy and scripted speech, Plaintiffs' counsel again moved to strike the answer as non-responsive and made the following request to defense counsel: "



" Exh B at 56:19-57:7.  This was an entirely appropriate request in these circumstances.  Defense counsel

---

[14] Exh. B at 51:25-56:18.

[15] Exh. D at 35-36.

nevertheless responded by "█████████████████████████████████

█████████████████." *Id.* at 58:19-21.

      As both the nature of the witness's answers and his repeated glances below him suggested he was simply reading a script, Plaintiffs' counsel again tried to get a straight answer to simple but fundamental questions for the jury to evaluate the witness's videotaped testimony: Was he simply reading answers verbatim from a document that had prepared for him?  And if yes, were the words he was using to testify written by counsel or the witness?  Plaintiffs' counsel endeavored at length to get an answer to these basic questions:



Exh. B at 59:8-60:13.  After defense counsel instructed the witness that "" and tried to break from the record, Plaintiffs' counsel persisted in seeking a straight answer:



Exh. B at 60:14-61:19. At this point, defense counsel indicated that "                          " *Id.* at 60:20-23.  This was

a clear violation of the Court's deposition protocol Order, which explicitly requires that "While

the deposition is on the record, the witness shall not have access to any form of information

related to the litigation other than exhibits specifically marked and identified for the record by

either side."[16]

---

[16] The script (or – in Mr. Snell's words – "notes") used by the witness were not put into the record by defense counsel until Mr. Snell had completed answering all questions and the deposition was no longer on the record at approximately 4:55 a.m. (US time).  Exh. B at 362:14-15.

The witness was then again ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████.  As a subsequent

comparison of his testimony and the script makes clear, this was not true.





Plaintiffs then tried to determine whether the words used in the witness's sworn

testimony were his own or had been drafted by the defense counsel:



---

[17] Exh. B at 61:24-63:25.

REDACTED PUBLIC COPY



REDACTED PUBLIC COPY



**REDACTED PUBLIC COPY**



[18]

---
[18] Exh. B at 64:2-69:19.

REDACTED PUBLIC COPY





[19]

Even after this extended questioning, it is impossible to tell whether the words are actually the witness's own or were simply written for him by the defense team. What we do know is that the witness had virtually nothing to say beyond the exact words that had been written for him; that instead of trying to respond to the actual questions posed, he simply read that script in front of him; and he then made extraordinary efforts to deny or obfuscate what had become obvious and was confirmed when the "notes" were later produced.

It would be a relief to report that this conduct ended at this point in the deposition. It did not, but instead continued in various forms throughout the deposition. It requires no further discussion here, but we provide a detailed analysis of the remaining testimony in the deposition in Exhibit F (Plaintiffs' Annotation). For present purposes, several points bear emphasis:

First, by this point in the deposition, the two-step tactic by the witness and defense counsel had become abundantly clear: identify the Topic area that Plaintiffs' specific question

---

[19] Exh. B at 69:20-73:19.

falls within and the witness will respond by reciting a pre-packaged and self-serving defense speech on the general Topic area that ignores the actual question posed; if the answer is responsive at all, it will include often include large amounts of non-responsive material designed to make any actual responsive material worthless or unusable; and the witness will, if at all possible, simply parrot the words prepared for him in advance of the deposition.

Second, after many of these exchanges, the witness was repeatedly asked whether he was reading his answer and whether the answer had been written by defense counsel. His answers continued to be evasive, misleading, and/or demonstrably false.

Third, the role of the attorneys defending the deposition was not passive. It is perfectly clear that this was a pre-planned strategy that was then executed with the active involvement and encouragement of defense counsel. This persisted despite repeated requests that the witness be instructed to answer the specific question posed, as he was obligated to do.

Fourth, defense counsel compounded this misconduct by also making demonstrably untrue accusations about Plaintiffs' counsel on the record and threatening to seek sanctions, costs, etc. – i.e., threats that have become a far too frequent tactic in the Defendants' playbook. The Court should be advised of the following colloquy (it is viewable at 0:59-1:48 of the fourth video filed as Exhibit C), which unequivocally shows the falsity of defense counsel's statement on the record that Plaintiffs' counsel was "screaming", "yelling" and "shouting" at defense counsel. In all candor, it is very troubling that counsel would pursue a strategy of making statements of this kind on the written record, when they are demonstrably untrue.

Fifth, inevitably the course of conduct described above completely disrupted and undermined the purpose of the Rule 30(b)(6) deposition this Court had ordered to proceed (over Defendants' opposition). As the disruptive, non-responsive and extremely time-consuming

nature of the Defendant's (and witness's) strategy became clear, Plaintiffs' counsel had to

completely re-evaluate their objectives for the deposition on the fly (with most of this done as

questioning proceeded long after midnight), limiting the questions they asked in an effort to

avoid the deposition simply becoming a vehicle for the defense witness to flood the record with

lengthy testimony, presumably drafted in whole or substantial part by defense counsel, that did

not even respond to the question posed.  This turns the purpose of Rule 30(b)(6) on its head –

allowing a witness with no personal knowledge essentially to become a testifying interrogatory

response – providing self-serving answers crafted by counsel in the guise of actual testimony.

Sixth, this tactic was implemented in complete disregard for the process established by

this Court.  If the Defendants had objections to the scope of any of the noticed topics, the Court

directed that a process be followed in which the parties would meet and confer about the topics

and, if Defendants believed further limitations were appropriate, they were given a deadline for

filing a protective order (a legal requirement that would have existed even absent a Court Order).

Defendants made a calculated decision not to confer about any of the specific topics (indeed,

they repeatedly declined invitations to do so) and then elected not to seek a protective order by

the Court-ordered deadline.  In short, rather than conferring in good faith, or adhering to the

process established by the Court, they decided upon a strategy that, if accepted, would utterly

defeat the purpose of Federal Rule of Civil Procedure 30(b)(6) and this Court's Order that these

depositions proceed.

These actions not only undermined the EMOI Rule 30(b)(6) deposition, they made it

impossible to proceed with the EMC Rule 30(b)(6) deposition, which was scheduled to be taken

at 7 p.m. (Eastern) on February 18.  Because Mr. Snell and the same counsel would appear at

that deposition on behalf of EMC – and defense counsel made clear at the deposition and in

subsequent communications that their conduct would be unchanged – Plaintiffs promptly advised

defense counsel that, following a meet confer process, Plaintiffs would bring this conduct to the

attention of the Court and request appropriate sanctions.[20]

## II.   THE DEFENDANT'S CONDUCT AT THE RULE 30(B)(6) DEPOSITION SHOULD BE SANCTIONED.

### A.   THE CONDUCT BY DEFENDANT EMOI AND DEFENSE COUNSEL IS SANCTIONABLE.

After opposing any Rule 30(b)(6) depositions during Phase 2 discovery for many months,

and being ordered to proceed with those depositions, Defendant EMOI and counsel implemented

a strategy that contravened this Court's orders and the requirements of Federal Rule of Civil

Procedure 30(b)(6).  Rule 30(b)(6) is a critical mechanism for discovery, particularly where, as

here, almost all of the Defendants' witnesses who were actually in Aceh have never been made

available and the President of EMOI's operations has disputed even the authenticity of his own

documents and communications.

The fundamental rules governing conduct at a Rule 30(b)(6) deposition are well

established.  "[E]xamination and cross-examination of a deponent proceed as they would at trial.

"In general, counsel should not engage in any conduct during a deposition that would not be

allowed in the presence of a judicial officer."  *See* Advisory Committee's Note to 1993

Amendment."[21]  The foregoing makes clear that the witness and counsel repeatedly engaged in

---

[20] The parties' written communications following Mr. Snell's deposition are appended as Exhibits P-T.  The parties conferred about this motion on February 22 and Defendant indicated it will not consent to any of the relief requested.

[21] *Luangisa v. Interface Operations,* No. 2:11-cv-00951-RCJ-CWH, 2011 WL 6029880, at *6 (D. Nev. Dec. 5, 2011) (granting motion for sanctions, ordering resumption of deposition, and ordering defendants to pay all of plaintiffs' costs and attorney fees (a) incurred in connection with original deposition; (b) incurred in filing sanctions motion (and opposing defense countermotion); and (c) incurred in connection with renewed deposition); *Vargas v. Fla. Crystals*

**REDACTED PUBLIC COPY**

conduct "that would not be allowed in the presence of a judicial officer." This conduct violates the requirements of Rule 30(b)(6) and this Court's orders in numerous respects:

1.      The Defendant violated the clear terms of the protocol set forth in a Court Order at the very outset of the deposition, which mandates that "[w]hile the deposition is on the record, the witness shall not have access to any form of information related to the litigation other than exhibits specifically marked and identified for the record by either side." This provision was intended to prevent precisely the kind of misconduct that occurred here. Needless to say, the seriousness of this violation is greatly magnified by the conduct that followed this violation.

2.      The witness, with the encouragement of counsel, repeatedly provided testimony that was both evasive and non-responsive to the questions posed. Where, as here, a witness repeatedly provides evasive and non-responsive testimony it is a violation of Rule 30(b)(6) – and tantamount to a failure to appear – and Rule 30(d)(2) (providing that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent.").[22]

---

*Corp.*, No. 16-81399-CV-MARRA/MATTEWMAN, 2017 WL 1861775, at *5 (S.D. Fla. May 5, 2017)

[22] *See, e.g.*, *Paice, LLC v. Hyundai Motor Co.*, Civ. No. WDQ-12-0499, 2014 WL 3819204, at *20 (D. Md. June 27, 2014) (under Fed. R. Civ. P. 37(d), "[p]roviding evasive, incomplete answers to relevant questioning is … tantamount to a failure to appear"); *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, No. 4:12-CV-00246 CDP, 2013 WL 3946116, at *4 (E.D. Mo. July 31, 2013) (imposing sanctions based on conduct at Rule 30(b)(6) deposition and warning counsel that additional sanctions would be imposed if witness's misconduct persisted, including many answers that "were evasive or non-responsive"); *Wild Fish Conservancy v. Cooke Aquaculture Pac., LLC,* No. C17-1708-JCC, 2019 WL 1755306, at *2-3 (W.D. Wash. Apr. 19, 2019) (explaining that "Rule 37 instructs courts to treat a deponent's `evasive or incomplete' answer as a failure to answer" and witness's answers were evasive where, *inter alia,* they "failed to provide a responsive answer"); *Reed v. Lackawanna Cty*, No. 3:16-CV-02143, 2018 WL 6322966, at *3 (M.D. Pa. Dec. 4, 2018) (explaining that "[c]ourts have determined sanctions to be warranted where there is a continual failure to answer questions at deposition, or answers are evasive or non-responsive," but finding that witness in case at hand had not done this); *Frangoli v. Abbott Labs., Inc.*, No. 13-cv-00324-NJR, Dkt. 147 at 3 (S.D. Ill. Mar. 28, 2014) (appended as

REDACTED PUBLIC COPY

Mr. Snell's lengthy, scripted and non-responsive testimony was neither accidental nor minor.  It was clearly pursuant to a pre-planned strategy, the non-responsive answers proceeded for literally pages of testimony, and it persisted despite repeated requests that the witness answer the actual question posed.  Because of this tactic, the deposition became a vehicle for the Defendant simply to inject huge amounts of non-responsive and self-serving testimony into the record, even though the witness lacked personal knowledge regarding these non-responsive statements.  This utterly distorts the purpose of Rule 30(b)(6), turning into a vehicle for the defense to provide scripted and non-responsive recitations of their positions – without any regard to the questions asked – in the guise of a live witness.

3.      The non-responsive nature of Mr. Snell's extended readings is gravely compounded by the fact that he was simply parroting non-responsive defense scripts.  This is simply turning the witness into a mouth-piece for defense counsel, most obviously where Snell simply read these lengthy scripts into the record *verbatim* without adding *any* information beyond the non-responsive script that had been prepared for him.  This utterly defeats the purpose of a Rule 30(b)(6) deposition.  The situation is not unlike – and in many respects is far worse – that the conduct that was sanctioned in *In re Neurontin Antitrust Litig.*, MDL No. 1479, 2011 WL 2357793 (D. N.J. June 9, 2011), where a Rule 30(b)(6) witness had met with defense counsel, reviewed documents counsel provided, had been provided with an outline for use in responding to questions and then "essentially began reading from the outline to answer questions about specific allegations."  *Id.* at *7.  In upholding the Magistrate Judge's imposition of sanctions, the District Court explained:

---

Exhibit V) (imposing sanction where witness's testimony was "often evasive" and witness often "*answered the question and then proceeded to provide an observation or a speech and was entirely unresponsive to the question asked*") (emphasis added).

**REDACTED PUBLIC COPY**

Magistrate Judge Shwartz … concluded that "the use of an outline created entirely by litigation counsel contradicts the purpose of Rule 30(b)(6) and turned the witness into something even less than a 'mere document gatherer….' Further, "the outline and conduct of PHV counsel during the deposition reflect that the corporation and its counsel have inverted their respective roles and duties…. [I]t appears that PHV counsel have 'manufacture[d] the corporation's contentions' rather than having the antitrust defendants designate a person to speak about the facts and their contentions."[23]

4.      At least in *Neurontin*, the witness and counsel openly acknowledged that the

witness was reading from an outline prepared by counsel.  Here, the witness and counsel not only

failed to disclose the witness's script at the outset of the deposition – as they were required to do

by Court Order – they then acted to impede questioning by counsel to determine if the witness

was just reading his answer.  This exchange bears repeating:

[23] *Neurontin*, 2011 WL 2357793 at *4. *See also In re: Neurontin Antitrust Litig.,* 2:02-cv-01390-MCA-JBC, Dkt. 414 at 21-22 (D.N.J. Jan. 25, 2011) (appended hereto as Exhibit U) (sanctioning defendant based on conduct of Rule 30(b)(6) witness and counsel and explaining that the Rule 30(b)(6) witness "cannot simply be a conduit for counsel's contentions."  "Likewise, the outline and conduct of PHV counsel during the deposition reflect that the corporation and its counsel have inverted their respective roles and duties.  The clients are to possess the facts while counsel are to advocate the legal significance of these facts.  Here, however, it appears that PHV counsel have 'manufacture[d] the corporation's contentions' rather than having the antitrust defendants designate a person to speak about the facts and their contentions."), citing *United States v. Taylor*, 166 F.R.D. 356, 361-62 (M.D.N.C. 1996) (imposing sanctions based on testimony of Rule 30(b)(6) witness and explaining that "[t]he attorney for the corporation is not at liberty to manufacture the corporation's contentions" – Rule 30(b)(6) witness must be knowledgeable, able to present positions and be subject to cross-examination.  "A party's trial attorney normally does not fill that bill. … Otherwise, it is the attorney who is giving evidence, not the party."); *Sciarretta v. Lincoln Nat'l Life Insur. Co.*, 778 F.3d 1205, 1213 (11th Cir. 2015) (sanctions were properly imposed where District Court determine that defendant "had *selectively* prepared" Rule 30(b)(6) witness, "not that it had failed to prepare him at all.  The court pointed out that [the 30(b)(6) witness] was prepared to answer questions in ways that were helpful to [defendant], but that he lacked knowledge when the questions turned to areas that might cast [defendant] in a bad light or otherwise harm it.  *Preparing a designated corporate witness with only the self-serving half of the story that is the subject of his testimony is not an act of good faith."*) (emphasis added).

REDACTED PUBLIC COPY



Exh. B at 59:8-60:13.  It was only after Plaintiffs' counsel insisted on continuing and sought an answer to the most fundamental questions about the witness's testimony – i.e., was he reading from a script?  Who had written it? – that the witness even responded to these questions.  And, even after extensive questioning, the witness's evasive and non-responsive testimony –

– makes it impossible for the Court to know whether any of the words uttered by this witness in the long scripted answers were his own.

It bears emphasis that both the witness and defense counsel *knew the answers* to these straightforward questions.  As subsequently became clear, the witness was *not* simply referring to or relying on notes – he was giving long, non-responsive answers that were *verbatim* readings

of the undisclosed materials below him.  And his counsel – who were in possession of the notes – were fully aware of this.  And, as Plaintiffs endeavored to determine whether the witness was reading many of his answers from a script – and who had prepared the script – the Court can determine the term that best characterizes this testimony:  "evasive," "misleading" or "false."  In Plaintiffs' view, each of these words is apt, as the witness – with the active support of counsel – went to extraordinary lengths to avoid admitting he was reading answers verbatim (at various points suggesting, for example, that this was only being done when he was quoting deposition testimony) and obfuscating whether these "distillations" – i.e., the *exact words* of his testimony – were written by defense counsel or the witness.

5.      While the witness continues to give evasive, non-responsive and often scripted answers, his counsel – including both outside counsel and Exxon's inside counsel – did nothing to address this.  To the contrary, counsel's conduct compounded this in multiple ways:

- It is evident that this was a calculated strategy, prepared in advance of the deposition and then aggressively implemented.

- This strategy was pursued from the outset of the deposition, when counsel failed to comply with the Court's Order that "[w]hile the deposition is on the record, the witness shall not have access to any form of information related to the litigation other than exhibits specifically marked and identified for the record by either side."

- Once the deposition started, defense counsel actively assisted implementation of the witness's strategy for reading scripted answers rather than answering the actual question that had been posed and castigated Plaintiffs' counsel for entirely proper efforts to get straight answers from the witness.  *See, e.g.,* Exh. B at 39:16-19 ("█ █"); *id.* at 60:2-

5 ("█████████████████████████████████████████████

████████████████████").

- Defense counsel also remained silent – or worse, encouraging – as the witness continued to give multiple answers that were non-responsive and many answers that were evasive, misleading or false. **Defense counsel was certainly aware that the witness was not** ███████████████████████████ **but was in fact reading answers *verbatim*.**  And defense counsel was obviously aware of the role they had played in writing these answers, even while the witness repeatedly tried to avoid providing a straight answer to this fundamental question about his testimony.

- Although silence itself was improper, this continued despite repeated requests by Plaintiffs' counsel to have the witness provide responsive answers to the questions being posed.  Those entirely appropriate requests were ignored.

- Defense further compounded this by making other statements on the record that were entirely inappropriate.  It is not appropriate for defense counsel to instruct the Plaintiffs' attorney to ██████████████████████ even when the record makes it abundantly clear that Plaintiffs' counsel was both calm and entirely professional.  It is not appropriate for defense counsel to try to create a written record that Plaintiffs' counsel is ████████████████████████ – statements the video record shows to be demonstrably false.

- As Plaintiffs' counsel tried to make progress in the face of all these obstacles – and quite appropriately cautioned defense counsel and the Defendant that this conduct was improper and sanctionable, defense counsel chose not to correct or end the misconduct, but instead repeatedly threatened to seek sanctions, fees and costs against

REDACTED PUBLIC COPY

Plaintiffs.  (This has now become a familiar practice in this case, with defense counsel repeatedly invoking such threats, presumably in the hope that this may dissuade Plaintiffs efforts to secure relief at trial in a human rights case Plaintiffs have remained committed to for two decades).  Indeed, defense counsel did so even though – in their own words – "███████████████████████████

██████"  Exh. Bat 58:20-21.

All of this conduct was improper and sanctionable.[24]

## B.   THE COURT SHOULD IMPOSE JUST AND APPROPRIATE SANCTIONS.

The conduct of Defendant EMOI, the witness and the defense counsel involved is subject to sanctions pursuant to each of the following:

- Fed. R. Civ. P. 30(b)(2) provides that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any

---

[24] *See, e.g.*, *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 197 (E.D. Pa. 2008) (imposing sanctions on witness's attorney pursuant to Fed. R. Civ. P. 30(d)(2), 37(a)(3)(B)(i) and 37(a)(5)(A), where attorney "did not actively counsel" the witness "on the record to provide evasive or incomplete answers," but repeatedly "failed to take remedial steps to curb his client's misconduct"); *id.* at 197-98 (equating counsel's silence in the face of such conduct as ""endorsement and ratification" of the misconduct and the "functional equivalent" of advising this misconduct); *GMAC Bank*, 252 F.R.D. 253, 261 ("[O]nce a witness deponent conducts himself or herself in the manner which is designed to obstruct the proceedings, I don't think counsel can just sit idly by and do nothing.  I would equate it to a situation where a witness is providing false and perjurious testimony and counsel is aware of it, and under the Rules it requires that counsel has an obligation to correct it and/or withdraw from the proceedings.") (quoting from hearing); *Luangisa*, 2011 WL 6029880, at *11 (imposing sanctions on defense counsel where "he repeatedly objected throughout the deposition on relevance grounds, and demands on multiple occasions that Plaintiff's counsel explain, on the record, the relevance of the proffered question.  *It is inappropriate to interrogate opposing counsel during the course of a deposition.  Moreover, objections that result in an incomplete answer or in the witness's adoption of counsel's statement are suggestive.*") (emphasis added); *id.* ("[D]efense counsel *made no effort to advise his client of his obligation to answer the questions which were asked*.  It is not enough for an attorney to refrain from instructing a client not to answer.  In fulfilling his or her duties as an officer of the court an attorney must take some affirmative step to ensure the deponent complies with deposition rules.") (emphasis added); *In re Neurontin*, 2:02-cv-01390, Dkt. 414 at 23.

party – on a person who impedes, delays, or frustrates the fair examination of the deponent."

- Fed. R. Civ. P. 37(a)(5) provides that where a party moves to compel discovery and the motion is granted, the party or attorney advising the conduct shall pay the movant's reasonable expenses in making the motion, including attorney's fees, unless one of the exceptions provided in the rule is applicable.[25]

- Fed. R. Civ. P. 37(b)(2) provides that if "a party ... or a witness designated under Rule 30(b)(6) ... fails to obey an order to provide or permit discovery," the court may issue further orders, including the relief enumerated in subsection (b)(2)(A)(i)-(vii). Subsection (b)(2)(C) further provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."[26]

- Fed. R. Civ. P. 37(d)(1) provides that a court may "order sanctions if: ... a party ... or a person designated under Rule 30(b)(6) ... fails, after being served with proper notice, to appear for that person's deposition ..." This provision is applicable to the situation presented here, where a Rule 30(b)(6) witness appears but then provides evasive, non-responsive or untruthful answers.

- Fed. R. Civ. P. 37(d)(3) further provides that the sanctions imposed may include "any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of, or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."[27]

---

[25] *See, e.g., Luangisa,* 2011 WL 6029880 at *14 (ordering "Defendants to pay *all* costs and fees, including attorney's fees, associated with the new deposition" and also stating that "[p]ursuant to Fed.R.Civ.P. 37(a)(5), if a court grants a motion to compel it must, after giving an opportunity to be heard, require the non-moving party to 'pay the movant's reasonable expenses incurred in making the motion, including attorney's fees'"); *FedEx Corp. v. United States*, No. 08-2423 Ma/P, 2011 WL 2023297, at *11 (W.D. Tenn. Mar. 28, 2011); *Paice, LLC v. Hyundai Motor Co.*, No. WDQ-12-0499, 2014 WL 3819204, at *27 (D. Md. June 27, 2014); *Neurontin,* 2:02-cv-01390, Dkt. 414 at 32 (Exh. V).

[26] The misconduct here is in violation of the Court's Order directing the Rule 30(b)(6) deposition to go forward and the Court's Order establishing the protocol for all depositions. *See* Dkt. 720; Dkt. 758; and Dkt. 750 (appended as Exh. G).

[27] The Court also has inherent powers to "'protect their integrity and prevent abuses of the judicial process,'" but these powers are subject to the limitations explained by this Court in *Landmark Legal Foundation* and other cases. *Landmark Legal Found. v. EPA*, 82 F.Supp.3d

**REDACTED PUBLIC COPY**

This Court has broad authority to determine an appropriate sanction.  "Under Rule 37(b)(2), the Court may impose 'just' sanctions for noncompliance, and similarly, under Rule 30(d)(2), the Court may issue 'appropriate' sanctions.  'Just' sanctions are those that impose proportional discipline for the harm caused."  *Neurontin*, 2:02-cv-01390, Dkt. 414 at 31.  The Court's authority includes the sanctions enumerated in Federal Rule 37, the imposition of fees and costs, and defense preclusion or adverse inferences in appropriate circumstances.

Although this is a matter for the Court's discretion, Plaintiffs respectfully submit that the following sanctions are appropriate here:

1.     The parties should resume the deposition of EMOI's Rule 30(b)(6) deposition, and proceed with the deposition of EMC's Rule 30(b)(6) deposition, at dates agreed to by the parties.  Plaintiffs' counsel should be permitted to proceed with ten hours of questioning of these witnesses, to be allocated between these depositions as Plaintiffs' counsel considers necessary. (We note that, per the Court's prior order and the Federal Rules, Plaintiffs had a right to depose the EMC Rule 30(b)(6) witnesses for seven hours of questioning.  That deposition was postponed by Plaintiffs because of the conduct of the same witness (Mr. Snell) and his counsel at the EMOI Rule 30(b)(6) deposition.  Because the conduct at EMOI's Rule 30(b)(6) deposition *severely* impeded questioning, Plaintiffs anticipate that seven of the requested ten hours will be allocated to the EMOI Rule 30(b)(6) deposition.

2.     Defendants should be instructed that their Rule 30(b)(6) witnesses should give responsive and reasonably concise answers to the questions that are posed.  If defense counsel

---

211, 218 (D.D.C. Mar. 2, 2015) (Lamberth, J.) (quoting *Shephard v. Am. Broad. Cos., Inc.,* 62 F.3d 1469, 1474 (D.C. Cir. 1995).

has an objection to a question (other than privilege), they should be stated "concisely in a nonargumentative and nonsuggestive manner."  Fed. R. Civ. P. 30(c)(2).

3.       If the witness will again use "notes" or other information subject to Paragraph 16 of the Protocol entered by the Court's Order, those materials should be made available to Plaintiffs' counsel at least one hour before the deposition is scheduled to begin, so they can be printed and reviewed in a manner that will permit appropriate examination at the deposition.

4.       Defendant or their counsel should be ordered to pay all attorney's fees and expenses incurred in connection with (a) the filing of this motion and any pleadings addressing responsive pleadings submitted by the Defendants; and (b) and the preparation for, and taking of, the resumed deposition of EMOI's Rule 30(b)(6) witness.  Under applicable law, the Court would have discretion to award fees and costs incurred in preparation for, and taking, EMOI's original Rule 30(b)(6) deposition, but Plaintiffs acknowledge that that work has been voluminous and is intermingled with other case preparation efforts.  In these circumstances, an appropriate sanction is imposition of fees and costs related to preparation for and taking the renewed deposition of EMOI's Rule 30(b)(6) witness and the costs associated with these filings.

Although Plaintiffs believe the foregoing sanctions are appropriate, if the conduct described herein continues at the resumed depositions, Plaintiffs would anticipate requesting additional relief including, if warranted, appropriate instructions and adverse inferences at trial. As Plaintiffs have made clear, our overriding interest is to develop an appropriate factual record in this case and move this matter to trial as expeditiously as practicable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Plaintiffs' motion to compel discovery and impose sanctions be granted.

**REDACTED PUBLIC COPY**

Date:  February 23, 2021                          Respectfully submitted,

/s/ Kit A. Pierson
Kit A. Pierson (# 398123)
Agnieszka M. Fryszman (# 459208)
Nicholas J. Jacques (#1673121)
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
Suite 500, East Tower
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
afryszman@cohenmilstein.com
kpierson@cohenmilstein.com
njacques@cohenmilstein.com

Poorad Razavi
**Cohen Milstein Seller & Toll PLLC**
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL. 33410
Tel: (561) 515-1400
Fax: (561) 515-1401
prazavi@cohenmilstein.com

Paul L. Hoffman (*Pro Hac Vice*)
**Schonbrun Seplow Harris Hoffman & Zeldes
  LLP**
11543 W. Olympic Blvd
Los Angeles, CA 90064
Tel: (310) 396-0731
hoffpaul@aol.com

Terrence P. Collingsworth (# 471830)
**International Rights Advocates**
621 Maryland Ave., N.E.
Washington, DC 20002
Tel: (202) 255-2198

*Attorneys for Plaintiffs*

REDACTED PUBLIC COPY

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2021, I filed a paper copy of Plaintiffs' Motion to Compel Discovery and Impose Sanctions with the Clerk of the Court and emailed an electronic copy to counsel of record in this matter.

Dated:    February 23, 2021                    /s/ Kit A. Pierson
                                               Kit. A. Pierson