**Public Redacted Copy**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN DOE I, *et al.*,

        Plaintiffs,

        v.

EXXON MOBIL CORPORATION, *et al.*,

        Defendants.

Case No. 01-cv-01357-RCL

## DEFENDANTS' MEMORANDUM OPPOSING PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND IMPOSE SANCTIONS AND SUPPORTING DEFENDANTS' CROSS-MOTION FOR SANCTIONS

Patrick J. Conlon (Bar No. 414621)
patrick.j.conlon@exxonmobil.com
EXXON MOBIL CORPORATION
22777 Springwoods Village Parkway
N1.4B.388
Spring, TX 77389
Telephone: (832) 624-6336

Theodore V. Wells, Jr. (Bar No. 468934)
twells@paulweiss.com
Jaren E. Janghorbani (admitted *pro hac vice*)
jjanghorbani@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

Alex Young K. Oh (Bar No. 499955)
aoh@paulweiss.com
Justin Anderson (Bar No. 1030572)
janderson@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006-1047
Telephone: (202) 223-7300

**Public Redacted Copy**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT BACKGROUND ...................................................................................4

    A. Plaintiffs' Motions for Additional Rule 30(b)(6) Depositions ........................5

    B. The October 2020 Rule 30(b)(6) Notices ........................................................5

    C. Exxon's Preparation for the Rule 30(b)(6) Depositions ..................................6

    D. The EMOI Rule 30(b)(6) Deposition ..............................................................8

ARGUMENT .............................................................................................................14

I.   PLAINTIFFS ARE NOT ENTITLED TO ADDITIONAL RULE 30(b)(6)
      DEPOSITIONS AND SANCTIONS. ...............................................................14

    A. Exxon complied with the Court-entered Deposition Protocol (Rule 37(b))....14

    B. Mr. Snell and Defense Counsel did not impede, delay, or frustrate the
       deposition (Rule 30(d)(2)). ............................................................................15

       1. There was no "two-step tactic."............................................................16

       2. Mr. Snell did not use his notes to "filibuster[]" the deposition. ..............19

       3. Mr. Snell was truthful about how his notes were prepared and how he
          used them. ..............................................................................................20

       4. Defense counsel's conduct and objections were entirely appropriate. ......23

    C. Exxon's designee was adequately prepared to testify (Rule 37(d)). ..............24

    D. Exxon is entitled to attorneys' fees and costs incurred defending
       Plaintiffs' Motion (Rule 37(a)(5)(B)). ..........................................................25

II.   PLAINTIFFS' CONDUCT IMPEDING THE EMOI DEPOSITION IS
      SANCTIONABLE UNDER FEDERAL RULE 30(d)(2). ...................................27

CONCLUSION..........................................................................................................32

**Public Redacted Copy**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander* v. *F.B.I.*,
  186 F.R.D. 137 (D.D.C. 1998) (Lamberth, J.)............................................................20

*Alexander* v. *F.B.I.*,
  186 F.R.D. 144 (D.D.C. 1999) (Lamberth, J.)............................................................26

*United States* v. *All Assets Held at Bank Julius Baer & Co.*,
  No. CV 04-798, 2017 WL 4183450 (D.D.C. Sept. 20, 2017) ..............................15, 23

*Covad Commc'ns Co.* v. *Revonet, Inc.*,
  267 F.R.D. 14 (D.D.C. 2010) ...................................................................................23

*Paparelli* v. *Prudential Ins. Co.*,
  108 F.R.D. 727 (D. Mass. 1985)...............................................................................16

*QBE Ins. Corp.* v. *Jorda Enterprises, Inc.*,
  277 F.R.D. 676 (S.D. Fla. 2012)...............................................................................24

*Tajonera* v. *Black Elk Energy Offshore Operations, L.L.C.*,
  No. CV 13-0550, 2015 WL 9311968 (E.D. La. Dec. 23, 2015).....................29, 30, 31

*Zeng* v. *Elec. Data Sys. Corp.*,
  No. 1:07CV310 (JCC), 2007 WL 2713905 (E.D. Va. Sept. 13, 2007) .....................19

**OTHER AUTHORITIES**

Local Rule 7(m) ...........................................................................................................1

Rule 30(b)(6) .......................................................................................................passim

Rule 30(c)(2)................................................................................................................24

Rule 30(d)(2) .......................................................................................................passim

Rule 37(a)(5)(B) ...................................................................................................25, 26

Rule 37(b) ...................................................................................................................14

Rule 37(d) ...................................................................................................................24

**Public Redacted Copy**

Defendants Exxon Mobil Corporation ("EMC") and ExxonMobil Oil Indonesia Inc. ("EMOI") (collectively, "Defendants" or "Exxon") respectfully submit this memorandum in opposition to Plaintiffs' Motion to Compel Discovery and to Impose Sanctions, ECF No. 777 ("Pls.' Mot."), and in support of Defendants' Cross-Motion for Sanctions.[1]

## PRELIMINARY STATEMENT

Plaintiffs examined EMOI's corporate representative for a full seven hours on the record. They used much of that time badgering the witness about the origins of notes on which he relied, arguing with the witness about the notes, and reading documents into the record. After the deposition ended, Plaintiffs were left with a record showing EMOI's corporate representative appropriately relying on notes to try to respond to thirty-four broad topics pertaining to events that occurred more than twenty years ago, but being impeded and frustrated by counsel for Plaintiffs who had absolutely no interest in hearing any responses to the topics that they noticed. Once their charade of a Rule 30(b)(6) deposition was exposed for what it was—a bad faith effort to impose maximum burden on Exxon without any genuine discovery purpose—Plaintiffs have gone on the offensive, making spurious allegations of misconduct against the witness, Exxon and their counsel. Plaintiffs are not entitled to *any* relief from the Court, much less the extreme remedy of sanctions.

Exxon undertook considerable efforts to prepare its designee to testify on behalf of both EMOI and EMC. It selected the general counsel of the Asia Pacific region

---

[1] Pursuant to Local Rule 7(m), Defendants have met and conferred with Plaintiffs' counsel about this cross-motion, but the parties were unable to reach agreement.

1

Public Redacted Copy

(and former general counsel of EMOI) as its corporate representative.  The witness spent over seventy hours to prepare, including reviewing dozens of binders of corporate records, prior deposition transcripts, and other materials, speaking with key former employees, and meeting with counsel.  Together with counsel, the witness prepared eighty-five pages of tables and notes summarizing factual information responsive to each one of Plaintiffs' thirty-four topics.  At the deposition itself, the witness answered more than 300 substantive questions, the vast majority of them without referring to notes.

While the parties have many areas of disagreement, the use of notes during a Rule 30(b)(6) deposition is not one of them.  The parties agree that corporate representatives may rely on notes when providing testimony pursuant to Rule 30(b)(6).  That leaves Plaintiffs grasping for manufactured grievances about how the notes were used.  First, Plaintiffs claim it was improper for the witness to use notes that were not pre-marked as exhibits prior to the deposition.  No court order or procedural rule requires any such thing.  Moreover, defense counsel volunteered to mark the notes as exhibits within the first hour of the deposition, but the questioning attorney ignored her offer.  In any event, under the order governing remote depositions in this case, the notes were required to be marked for the record.  Plaintiffs have conceded that they were.  Pls.' Mot. at 23 n.16.  Nothing more was required.

Plaintiffs next fault the witness for periodically asking counsel to identify which of the thirty-four topics his question pertained to.  Plaintiffs claim this was an improper "two-step tactic" because it allowed the witness to locate the relevant portion of his notes when answering the question.  There is nothing improper about this, nor can Plaintiffs cite any authority in support.  The witness asked for clarification about which

**Public Redacted Copy**

topics were under discussion in order to orient himself to the topic and answer Plaintiffs' questions accurately with the aid of notes. Had Plaintiffs any genuine interest in information responsive to the noticed topics, they readily would have referred the witness to the relevant topics, just as they had in the three prior Rule 30(b)(6) depositions.

Plaintiffs next claim the witness engaged in "filibustering" by reading from his notes. The record shows there was no filibuster at all. Adding up all the time on the record where the witness's testimony aligns with his notes yields a little more than forty-four minutes out of seven hours. That is approximately 10% of the examination. If filibustering was the strategy (and it certainly was not), then it was not effective.

Finally, Plaintiffs accuse Exxon's corporate witness of misconduct for refusing to agree with Plaintiffs' false claim that the notes were "written" by counsel without the witness's participation, and for allegedly concealing the fact that he was using notes. Neither claim has any basis in fact. Each time he was asked about his notes, the witness answered truthfully that the notes were developed collaboratively with counsel, and that they were ultimately memorialized by Exxon's attorneys but reflected the witness's own preparation, understanding, and responses to the noticed topics. The witness also testified within the first hour—the first time he used notes—that he was reading from his notes. In short, Plaintiffs offer nothing but unfounded and offensive accusations and innuendo to impugn the conduct of the witness and counsel.

In fact, it is Plaintiffs' counsel's conduct during the recent deposition that is sanctionable, and Exxon therefore cross-moves for such sanctions. Plaintiffs' two Rule 30(b)(6) notices presented a daunting task for Exxon. Together, they contained over fifty broad topics, including subtopics—many of which were cumulative and redundant

3

**Public Redacted Copy**

of areas of examination covered during the first round of Rule 30(b)(6) depositions, during which Exxon's corporate representatives provided over seventeen hours of testimony.  Exxon's witness and counsel combined spent hundreds of hours preparing meticulously to respond to each topic, including preparing eighty-five pages of notes containing detailed, factual information responsive to each topic.  All of this effort was devoted to complying with the Court's order for a second round of Rule 30(b)(6) depositions.

But Plaintiffs' counsel had no interest in receiving accurate information responsive to the noticed topics during EMOI's deposition.  He spent most of the deposition harassing and berating the witness and baselessly threatening sanctions for using notes, presumably in an effort to intimidate the witness from using his notes.  After so abusing the witness for seven hours, Plaintiffs unilaterally cancelled EMC's Rule 30(b)(6) deposition with three days' notice.  In short, Plaintiffs used Exxon's diligent preparation as a bludgeon to harass the witness and now baselessly accuse Exxon and counsel of sanctionable conduct.  Respectfully, Exxon is entitled to the costs incurred in preparing for Plaintiffs' two Rule 30(b)(6) depositions that were served in bad faith, and in responding to Plaintiffs' baseless motion for sanctions.

## RELEVANT BACKGROUND

Plaintiffs' motion stems from the February 14–15, 2021 deposition of EMOI's designated Rule 30(b)(6) witness, Mark Snell.  The deposition was conducted pursuant to Plaintiffs' Rule 30(b)(6) Notice to EMOI, dated October 26, 2020 (the

Public Redacted Copy

"EMOI Notice").  *See* Ex. 1.[2]

### A.    Plaintiffs' Motions for Additional Rule 30(b)(6) Depositions

In late 2007, Plaintiffs took three Rule 30(b)(6) depositions of then-Defendants EMC, EMOI, Mobil Corporation, and ExxonMobil Oil Corporation.[3] Plaintiffs examined the three corporate representatives on 147 discrete topics, for more than seventeen hours on the record.  *See* ECF No. 704 at 6.  Following those depositions, as well as the depositions of five fact witnesses, Plaintiffs notified the Court that they had conducted sufficient discovery to proceed to trial.  *See* ECF Nos. 299, 299-1 at 4 (Pls.' Unopposed Request for a Status Conference, requesting a June 2008 trial date).

Thirteen years later, Plaintiffs served two new Rule 30(b)(6) notices, each with fifty-four discrete subparts, many of which were redundant of prior Rule 30(b)(6) topics covered in the 2007 Rule 30(b)(6) depositions.  *See* ECF No. 703-3 at Exs. 8, 9. When Exxon refused, Plaintiffs moved to compel, ECF No. 702, which the Court allowed subject to certain limitations.  After further motion practice to clarify the scope, the Court allowed Plaintiffs to serve revised notices, but cautioned that Plaintiffs' topics and questions "must be tailored to avoid unreasonably cumulative discovery" and ordered that "plaintiffs may not re-ask questions to which a responsive answer was provided in a previous 30(b)(6) deposition of the same corporation."  ECF No. 758 at 2, 4.

### B.    The October 2020 Rule 30(b)(6) Notices

On October 26, 2020, Plaintiffs served their final revised notices for the

---

[2]    "Ex. __" refers to exhibits to the Declaration of Justin Anderson, dated March 9, 2021 ("Anderson Decl.").

[3]    Mobil Corporation and ExxonMobil Oil Corporation were subsequently granted summary judgment and dismissed from the case.  *See* ECF Nos. 365, 366.

Public Redacted Copy

EMOI and EMC depositions.  *See* Exs. 1, 2 (collectively, the "Notices").  Combined, the Notices contained over fifty discrete topics, including subparts.  The relevant time period of most topics in the Notices covered events occurring twenty years ago, from January 1, 1999 to December 31, 2001 (later negotiated to January 1, 1999 through June 30, 2001).  *See* Pls.' Mot., Ex. B, Transcript of the Deposition of Mark Snell ("Tr.") at 14:2–6.

Having already burdened the Court twice before challenging Plaintiffs' overbroad demand for additional Rule 30(b)(6) depositions, Exxon chose not to move for a protective order.  Instead, Exxon agreed to designate a witness to testify, subject to the Court-ordered limitations and other appropriate objections, about every one of the over fifty topics in the two Notices.  *See* Exs. 3, 4.

### C.      Exxon's Preparation for the Rule 30(b)(6) Depositions

Exxon designated Mark Snell to serve as its corporate representative for the two depositions.  Mr. Snell is the current regional general counsel of the Asia Pacific region for Exxon and its affiliates.  *See* Tr. at 7:22–8:4.  While Plaintiffs never bothered to ask, Mr. Snell served as the general counsel of defendant EMOI in Jakarta for four-and-a-half years, and has worked for ██████████████████████████████ ███████  *See* Tr. at 8:7–9:4.

Mr. Snell began preparing for the depositions in early September 2020. *See* Tr. at 10:17–23.  Over the next five months, Mr. Snell, who is based in Singapore, met regularly with counsel by videoconference for ███████████████████ Tr. at 10:17–11:20.  In addition, Mr. Snell spent over forty hours ███████████████████ ████████████████████████████████████████████████████ Tr. at 12:6–11.  Mr. Snell also spoke with two key former EMOI employees—the EMOI

Public Redacted Copy

country manager for the entire relevant time period and EMOI's principal security

advisor on the ground in Aceh.  *See* Tr. at 159:9–11.

        As Mr. Snell's preparation progressed, it became apparent that it would be

impossible for him to substantively and accurately respond to each one of the thirty-four

broad topics for EMOI alone without the assistance of notes.  Counsel and Mr. Snell thus

worked together to create a set of notes that Mr. Snell could bring with him to the

Rule 30(b)(6) depositions and mark as an exhibit pursuant to the Court's order governing

remote depositions.  *See* Tr. at 71:10–19; *see* Pls.' Mot., Ex. D (Mr. Snell's notes,

introduced at Defendants' Exhibit 32).  Mr. Snell's notes contained, among other things:

- References to and explanations of key contracts, emails, employees, and other records that Mr. Snell had reviewed and to which he may refer when questioned about certain topics.  *See, e.g*., Pls. Mot., Ex. D at pp. 49, 64, 73.

- Excerpts from transcripts of other witnesses with first-hand knowledge who were deposed by Plaintiffs in 2007–2008—far closer in time to the events at issue— which were responsive to several noticed topics.  *See, e.g*., Pls., Mot., Ex. D at pp. 4, 18, 29–30.

- Information, including prior testimony, about the thirty-nine documents specifically identified in the EMOI Notice.  *See, e.g*., Pls. Mot., Ex. D at pp. 32– 34, 49–58.[4]

        Mr. Snell's notes contained a summary of factual information responsive

to each topic.  For example, Topic 1 in the EMOI Notice asks about "[y]our policies and

---

[4]   Plaintiffs introduced only one of the referenced documents during the EMOI deposition.  *See* Tr. at 266:15–19 (Pls.' Ex. 8).

**Public Redacted Copy**

practices related to the Vital Projects Designations[.]"  *See* Ex. 1 at Topic 1.  Mr. Snell's

notes on Topic 1 summarized the fact that Vital Objects Designation was a matter of

Indonesian law; that once designated Vital Objects, Indonesian law required the

Indonesian military to secure such Vital Objects; and that the facilities operated by EMOI

in Aceh were, at all times relevant to this case, so designated as Vital Objects, as were the

other state-owned companies in Aceh, and thus required by Indonesian law to be secured

by the Indonesian military.  Pls.' Mot., Ex. D at 3.  Mr. Snell's notes included excerpts

from the declaration of an Indonesian law expert that provided additional details on the

Indonesian law responsive to Topic 1.  *Id.* at 3–4.  Mr. Snell was never asked any

questions about Topic 1.

The notes for each of the thirty-four noticed topics expressly stated that

████████████████████████████████████████████████████████

████████████████████████  *See, e.g.*, Pls.' Mot, Ex. D at 3, 6, 10, 12.  In other words,

Mr. Snell was fully prepared to address any follow-up questions that may be posed after

he gave his responses.  However, no follow-up questions were asked by the questioning

attorney to any responses Mr. Snell gave from his prepared notes.

### D.     The EMOI Rule 30(b)(6) Deposition

The parties agreed that the EMOI deposition would proceed first,

beginning Sunday night, February 14 (U.S. time), with the EMC deposition following on

Thursday night, February 18 (U.S. time).  *See* Exs. 1, 2, 5.  The deposition was taken

remotely, with the witness in Singapore and counsel for all parties in the United States.

Tr. at 4:24–5:2.

**Public Redacted Copy**

Early in the EMOI deposition, Mr. Snell asked which topic in the EMOI

Notice an exhibit marked by Plaintiffs' counsel pertained to.  Counsel flatly refused to

identify the topic: ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████  Tr. at 16:8–18.  Variations on this exchange recurred throughout

the deposition, with Plaintiffs' counsel repeatedly refusing to tell the witness which of the

thirty-four topics in the EMOI Notice his documents and questions referred to, and

becoming agitated and combative when asked to identify the topic.[5]  *See, e.g.*, Tr. at

47:16–25, 75:6–13, 207:10–210:2, 322:10–17.[6]

In the first hour of the deposition, in response to a question about whether

EMOI ███████████████████████████████████████████████

███████████████████████████  Mr. Snell read a portion of his prepared

notes to Topic 2.  *Id.* at 27:18–29:23; Pls. Mot., Ex. C, at Video Disk 1 at 25:45–28:38.[7]

The record shows that Mr. Snell's answer was fully responsive to both the topic and

---

[5]  The questioning attorney was asked and refused to identify the topic to which his
questions pertained no fewer than seventy times during the deposition.

[6]  The questioning attorney also sought to pressure the witness from reviewing
Plaintiffs' exhibits in their entirety before answering questions.  *See* Tr. at 21:13–16
████████████████████████████████; Tr. at 20:8–13, 187:6–188:16.
Plaintiffs' lawyer even took the deposition off the record unilaterally when the
witness asked for more time to review a lengthy document, and threatened to do so
again later in the deposition, in order to pressure the witness from reviewing lengthy
exhibits in their entirety.  *See* Tr. at 179:15–189:11.

[7]  The question overlapped with Topic 2 of the EMOI Notice.  *See* Ex. 1 at Topic 2
("Your knowledge of abuses, including human rights abuses, assaults, batteries,
sexual abuse, torture, violence, and other torts by (a) security personnel at the Arun
Project; or (b) Indonesian military personnel, including any history or reputation for
such abuses.").

**Public Redacted Copy**

question, and that he was fully transparent about reading from his notes and how they were prepared:



Tr. at 30:8–31:10 (emphasis added).  The questioning attorney became agitated by Mr. Snell's use of notes and proceeded to interrupt and threaten Mr. Snell, claiming—without any basis—that his use of notes was improper and sanctionable, and moved to strike his entire response (even though it was fully responsive to the pending question). *See* Tr. at 34:9–22.

A short time later, as the questioning attorney again argued with Mr. Snell about the notes, defense counsel, unprompted, offered to mark the notes and introduce them as an exhibit to the deposition.  *See* Tr. at 61:20–23; Pls. Mot., Ex. C, Video Disc 1 at 1:03:28–1:03:32.  The questioning attorney ignored defense counsel's offer.

For the remainder of the deposition, whenever Mr. Snell sought to use his notes, the questioning attorney berated Mr. Snell and counsel and threatened to seek sanctions against both, presumably to intimidate the witness from relying on his notes.

Public Redacted Copy

*See, e.g.*, Tr. at 59:8–73:21, 94:15–96:20, 99:5–100:11, 172:24–176:5, 225:18–229:25.

The questioning attorney also moved to strike most answers for which Mr. Snell used his

notes, even though his answers were fully responsive to the questions posed. *See, e.g.*,

Tr. at 91:5–94:12, 169:22–172:23, 173:4–23, 238:18–239:12, 315:7–319:19.[8]

Over the course of the entire seven hours on the record, Mr. Snell

answered more than 300 substantive questions, but used the prepared notes to respond to

only forty-five questions.[9]  In fact, Mr. Snell spent only approximately forty-four minutes

on the record reading from his notes in response to various questions posed by the

questioning attorney.[10]

And of the 363 pages in the EMOI deposition transcript, approximately

forty-five pages consist of the questioning attorney repeatedly badgering Mr. Snell and

defense counsel for the use of notes.[11]  At no time, however, did the questioning attorney

take up the offer by defense counsel to mark the notes as an exhibit, or ask for a break to

review the notes, or insist that he would not proceed without first marking the notes as an

---

[8]   The questioning attorney moved to strike Mr. Snell's answers twenty-five times
during the deposition.

[9]   In tallying "substantive" questions for this memorandum, Exxon excluded:  all
questions about Mr. Snell's personal background and preparation for the deposition;
all questions related to his notes; all repetitive questions (*i.e.*, even if the same
question was asked twice, it was counted as one); and all colloquy between counsel
that were not directed at the witness.

[10]  Exxon added all of the time that Mr. Snell spent reading from his notes as identified
by Plaintiffs, *see* Exhibit F to the Motion (cataloguing instances where Mr. Snell's
answers were almost identical to his notes), then added a few additional brief
instances identified by Exxon that were not included in Plaintiffs' Motion or Exhibits.

The forty-four minutes included approximately ten minutes Mr. Snell spent adopting
and reciting verbatim responsive prior testimony.  *See, e.g.*, Tr. at 231:14–233:8.

[11]  *See, e.g.*, Tr. at 56:19–73:19, 94:15–96:20, 225:18–229:25.

**Public Redacted Copy**

exhibit.[12]  Defense counsel marked the notes as a defense exhibit after Plaintiffs' counsel

exhausted his seven hours of questioning and passed the witness.  *See* Tr. at 362:14–15.

Most of the seven hours was spent by Plaintiffs' counsel not in obtaining

answers to the noticed topics, but in attempting to elicit misleading "gotcha" moments or

sound-bites.  For example, despite Mr. Snell's answer—in response to Topic 5—that

EMOI had no knowledge during the relevant time period of any injuries alleged by any

Plaintiffs, the questioning attorney proceeded to ask what EMOI knew about, or did, to

investigate every instance of abuse alleged by each Plaintiff.  *See, e.g.*, Tr. at 96:21–

153:14, 237:21–258:24, 327:9–331:22 █████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████.

Plaintiffs' counsel well knew that EMOI had no knowledge of any

Plaintiffs' allegations, and thus could not have investigated their claims during the

relevant time period.  Indeed, Plaintiffs had already conceded that they do not allege that

any Defendant met any Plaintiffs or specifically directed or caused any Plaintiffs'

injuries,[13] and not a single Plaintiff testified that they alerted EMOI of any of their

---

[12]   The parties took regular breaks during the deposition, including a fifty-five-minute
lunch break long after defense counsel offered to mark the notes as an exhibit.  *See*
Tr. at 206:13–207:3.

[13]   *See* ECF No. 160 at 34–35, 45 (statement of Terry Collingsworth, Esq., counsel for
Plaintiffs, at a May 16, 2006 discovery conference: "We've not said any [Exxon
employees] ever met our clients, had anything to do with going out and ordering
people to do things in terms of the security force. . . .  They have nothing to do with
this particular question of who ordered or who personally and directly harmed our

Public Redacted Copy

injuries prior to filing their lawsuit.  Yet, questioning counsel generated over eighty pages

of testimony—nearly a quarter of the deposition—with this line of repetitive, unfounded

and misleading questions about what EMOI did to investigate information that all parties

agree EMOI was unaware of at the time.  *See* Tr. at 96:21–153:14, 237:21–258:24,

327:19–331:22.

        The questioning attorney also spent a substantial portion of his seven

hours reading selected documents into the record.  *See, e.g.*, Tr. at 213:2–220:3, 268:17–

281:16, 303:25–311:4, 332:17–339:25.  When Mr. Snell tried to add background or

context to the documents, the questioning attorney either belittled Mr. Snell as someone

who ███████████ at the time (*see, e.g.*, Tr. at 351:15–354:10), or moved to strike

answers that he did not like as non-responsive.  *See, e.g.*, Tr. at 276:19–277:19.

        The questioning attorney did not inquire about the vast majority of the

topics in the EMOI Notice during his seven hours.  For example, in addition to Topic 1

noted above, Plaintiffs did not ask a single question or introduce a single document

related to Topic 3(j) ("Any payments, stipends, honoraria, bonuses, food or housing

provided, directly or indirectly, to security personnel . . . ."), or Topic 11, which

demanded facts supporting and contrary to eight of Defendants' affirmative defenses,

among others.  In short, despite EMOI's extensive efforts undertaken in good faith to

prepare Mr. Snell, Plaintiffs' counsel impeded and prevented Mr. Snell from responding

to many of the thirty-four topics in their Notice, and baselessly moved to strike answers

that were given to certain topics.

---

clients. . . . There's none of these [Exxon] folks, we're certain, that have ever met our
clients, that have ever ordered our clients to be harmed[.]").

**Public Redacted Copy**

## ARGUMENT

**I.    PLAINTIFFS ARE NOT ENTITLED TO ADDITIONAL RULE 30(B)(6) DEPOSITIONS AND SANCTIONS.**

Plaintiffs raise four arguments in support of their Motion: (i) Exxon violated the Court's order by failing to pre-mark Mr. Snell's notes; (ii) Mr. Snell's requests to identify the topics to which Plaintiffs' questions pertained impeded counsel's examination; (iii) Mr. Snell "filibuster[ed]" by using his notes and was allegedly not forthright about who prepared the notes or when he read the notes; and (iv) defense counsel engaged in sanctionable conduct by allowing all of the above.  None of these grounds is based in fact; furthermore, none is an adequate justification—much less "substantial" justification—for any additional Rule 30(b)(6) depositions or sanctions. Exxon is thus entitled to costs incurred in opposing this baseless Motion.

**A.    Exxon complied with the Court-entered Deposition Protocol (Rule 37(b)).**

Plaintiffs incorrectly claim that they are entitled to sanctions under Rule 37(b) because Exxon violated the Court-entered Deposition Protocol governing the procedures for remote depositions.  *See* Pls.' Mot. at 4–5, 23, 34, 41 n.26.  The Deposition Protocol requires that deponents "shall not have access to any form of information related to the litigation other than exhibits specifically marked and identified for the record."  ECF No. 750, Dep. Protocol ¶ 16.  Mr. Snell's notes were marked for the record, and it was defense counsel herself who offered, near the beginning of the deposition, that they be so introduced but was ignored by Plaintiffs' counsel.

Plaintiffs claim that the Protocol "*required* disclosure and production of the witness's 'notes' as soon as the deposition was on the record."  Pls.' Mot. at 4 (emphasis in original).  Plaintiffs do not cite any language in the Deposition Protocol

supporting such a requirement, because there is none.  Paragraph 16 of the Deposition

Protocol merely requires that any notes accessed by the witness during the deposition be

"specifically marked and identified for the record by either side."  ECF No. 750, Dep.

Protocol ¶ 16.  That is what Exxon did.  *See* Tr. 362:14–15 ███████████████████

██████████████<sup>14</sup>  Plaintiffs grudgingly admit that Mr. Snell's notes were marked for the

record, as required by the Deposition Protocol.  *See* Pls.' Mot. at 23 n.16.  That is the end

of the matter.[15]

## B. Mr. Snell and Defense Counsel did not impede, delay, or frustrate the deposition (Rule 30(d)(2)).

FRCP 30(d)(2) permits courts in their discretion to "impose an appropriate

sanction . . . on a person who impedes, delays, or frustrates the fair examination of the

deponent."  Fed R. Civ. P. 30(d)(2).  This rule should be used sparingly and only where

the alleged conduct was so obstructionist as to unreasonably prolong the deposition.  *See*

*United States* v. *All Assets Held at Bank Julius Baer & Co.*, No. CV 04-798 (PLF/GMH),

2017 WL 4183450, at *5 (D.D.C. Sept. 20, 2017) (citing Fed. R. Civ. P. 30(d) advisory

committee's note to 1993 amendment).  Generally, to warrant sanctions, the non-moving

party must have obstructed, impeded, or frustrated the deposition "without a good faith

---

[14] Even assuming, *arguendo*, that there was a requirement that the witness's notes be presented for introduction at or near the beginning of the deposition—and there is not—Exxon would have satisfied such a requirement when defense counsel offered, unprompted and early in the deposition, to mark and introduce Mr. Snell's notes.  *See* Tr. at 61:20–2 ████████████████████████████████████. Inexplicably, Plaintiffs' counsel ignored the offer.

[15] Plaintiffs' specific request for relief in this Motion, that Exxon be ordered to produce any notes on which the witness will rely an hour before any renewed deposition, *see* Pls.' Mot. at 43, is a glaring concession that no current order actually requires such pre-deposition production of notes.

basis in law or fact for doing so." *Id.* (citations omitted).  No sanctions are warranted

here because the use of notes by the witness was entirely reasonable and lawful, and in no

way frustrated or impeded the examination.

        1.     *There was no "two-step tactic."*

        Plaintiffs claim that by asking for clarification about the topics to which

Plaintiffs' questions pertained, Mr. Snell was partaking in some improper "two-step

tactic" with defense counsel to deliver non-responsive, scripted answers.  *See* Pls.' Mot.

at 1–2, 12, 14–18, 30–32, 34–35, 38–40.  Nothing could be further from the truth.  The

witness's questions about topics were entirely reasonable and proper, and plainly

intended to answer Plaintiffs' questions as completely and accurately as possible.

        Attorneys taking Rule 30(b)(6) depositions routinely identify and frame

their examinations around the topics in their deposition notices.[16]  They ask the witness

what he or she did to prepare for a given topic, ask questions about that topic, and then

proceed to the next topic.  And that is precisely how Plaintiffs' counsel—also attorneys at

Cohen Milstein—conducted the prior three Rule 30(b)(6) depositions in 2007.  At each of

the 2007 Rule 30(b)(6) depositions, the questioning attorneys themselves volunteered the

noticed topics about which they were asking and often simply asked the witnesses to

---

[16]   Although there is disagreement in case law about whether all questions in a
     Rule 30(b)(6) deposition must pertain to the noticed topics—Exxon is not arguing
     here that they must—courts have noted that the purpose of the Rule is thwarted when
     noticing parties do not examine witnesses on the noticed topics.  *See, e.g.*, *Paparelli*
     v. *Prudential Ins. Co.*, 108 F.R.D. 727, 729-30 (D. Mass. 1985) ("It makes no sense
     for a party to state in a notice that it wishes to examine a representative of a
     corporation on certain matters, have the corporation designate the person most
     knowledgeable with respect to those matters, and then to ask the representative about
     matters totally different from the ones listed in the notice.").

**Public Redacted Copy**

recite what they knew about the topics. *See, e.g.*, Ex. 6 (Tr. of Dep. of M. Ward) at

202:8–205:7, 214:11–217:20[17]; Ex. 7 (Tr. of Dep. of J. Boydell) at 201:17–204:5,

205:25–207:25,[18] 210:8–212:17; Ex. 8 (Tr. of Dep. of B. Fitzpatrick) at 181:15–184:9,

184:10–186:18,[19] 190:17–194:21.  It defies logic to suggest that Mr. Snell and defense



[17]   Ex. 6 at 214:11–215:11

[18]   Ex. 7 at 205:25–207:4

[19]   Ex. 8 at 184:10–185:3

17

**Public Redacted Copy**

counsel now should be sanctioned simply because they expected the questioning to unfold in the same manner and prepared to respond accordingly.

The identification of the topic was significant for other reasons. Mr. Snell, as a corporate designee, had the ability to bind EMOI with his answers. Accordingly, he had every right to know which of the thirty-four topics was being discussed in order to ensure that he was providing appropriate, responsive, and accurate answers.

Had Plaintiffs any genuine interest in gathering information requested by their notice, then there was no reason for the questioning attorney to have refused to identify the topics. The record here shows that Plaintiffs' counsel did all he could to conceal the topics relevant to his questions. In fact, he lashed out at the witness merely for asking about topics.[20] One can only speculate as to the motive behind such "hide-the-ball" tactics: perhaps the questioning attorney had served too many topics for him to recall and was embarrassed to admit it; or perhaps he hoped the witness would become disoriented and provide erroneous testimony.

---

[20] *See, e.g.*, 41:9–42:18; 47:16–48:25; 75:6–76:22. While Plaintiffs' counsel contends that defense counsel's comments to him to calm down distorted the record because he was "calm and entirely professional" throughout the deposition, *see* Pls. Mot. at 39, the record demonstrates the opposite: the deposition became contentious from the beginning because the questioning attorney became unhinged upon discovering that the witness had notes, and repeatedly attacked and baselessly threatened to seek sanctions against the witness and counsel for using notes and asking clarifying questions. *See, e.g.*, Tr. at 32:19–34:22; 51:20–57:7; 143:20–144:5. Defense counsel had no choice but to speak up repeatedly to defend her client and herself against the questioning attorneys' browbeating and disrespectful behavior. *See, e.g.*, Tr. at 56:19–59:5, 64:2–70:1, 80:11–81:25.

Public Redacted Copy

In any event, Plaintiffs cannot cite a single case in support of their claim for sanctions based on a witness's request to clarify the topics being examined. That is because there is no support for such a baseless assertion. Mr. Snell's asking which of the thirty-four topics from the EMOI Notice the questions pertained to did not impede, delay, or frustrate the deposition in any way. His good faith requests to help facilitate complete and accurate answers to the questions are reasonable and commendable, not sanctionable.

### 2. *Mr. Snell did not use his notes to "filibuster[]" the deposition.*

Despite the baseless threats to seek sanctions for using notes during the deposition, Plaintiffs have now conceded that there is nothing improper about a witness—especially a corporate representative who is not required to have personal knowledge of the matters under examination—using notes during a deposition. Plaintiffs fail to cite a single authority holding otherwise,[21] and in their meet and confer with Exxon and in their request for relief Plaintiffs have conceded that a witness can use notes during a Rule 30(b)(6) deposition. *See* Ex. 9; Pls.' Mot. at 43 (requesting that "[i]f the witness will again use 'notes'" at a renewed Rule 30(b)(6) deposition that they be turned over an hour ahead of time).

---

[21] Indeed, the case law makes clear that it is appropriate for a witness, especially a Rule 30(b)(6) witness, to use notes during a deposition. *See, e.g.*, *Zeng* v. *Elec. Data Sys. Corp.*, No. 1:07CV310 (JCC), 2007 WL 2713905, at *4 (E.D. Va. Sept. 13, 2007) ("[G]iven the duty of a corporate designee to testify to all information reasonably known to the corporation, including matters beyond the designee's personal knowledge, a well-prepared deposition notebook has the potential to enhance the accuracy and depth of a designee's testimony. . . . The notebook's summary contained information pertaining to the topic headings from the Rule 30(b)(6) Notice, and consisted of condensed summaries of Defendants' answers to Plaintiff's interrogatories.").

Public Redacted Copy

Plaintiffs have no choice but to concede this point.  This Court has made clear that Rule 30(b)(6) imposes a duty of preparation on designated witnesses, but they "need not be subjected to a 'memory contest.'" *Alexander* v. *F.B.I.*, 186 F.R.D. 137, 143 (D.D.C. 1998) (Lamberth, J.) (quoting *Zappia Middle East Construction Co.* v. *Emirate of Abu Dhabi*, No. 94-CIV-1942, 1995 WL 68715 (S.D.N.Y. Nov. 17, 1995)). Rule 30(b)(6) "puts several duties on the designating party and on the deponent, but one of them is not omniscience."  *Id.*

Over the course of the entire seven hours on the record, Mr. Snell, who was responsible for all information known and reasonably available to EMOI in response to the noticed topics, read from his notes for a grand total of a little over forty-four minutes.  S*ee supra* at 11 & n.10.  He used his notes to answer fewer than 15% of Plaintiffs' 300 substantive questions.  *Id.*  Although Plaintiffs call Mr. Snell's prepared answers "self-serving," Pls.' Mot. at 6, 31, 32, 35, the answers that Mr. Snell provided with the use of his notes were fact-based, non-argumentative, and accurate.  Plaintiffs do not claim otherwise, nor can they identify a single answer that was not factual, or a single follow-up question to the prepared answers that went unanswered in the deposition.  In short, there is simply no justification for Plaintiffs to seek to sanction Mr. Snell for relying on notes.

3.    *Mr. Snell was truthful about how his notes were prepared and how he used them.*

Plaintiffs also baselessly impugn Mr. Snell's character and accuse him of providing false testimony about who created his notes or when he was reading them. Pls.' Mot. at 37.  In fact, Mr. Snell left no room for uncertainty on either matter. Mr. Snell explained how he and counsel worked collaboratively to arrive at the answers

**Public Redacted Copy**

in the notes, which he testified were his.  Mr. Snell also stated near the beginning of the

deposition—on page 30 of the 363-page transcript—that he was reading from his notes.

*See* Tr. 30:8–10; *see supra* at 9–10.  There is simply no basis whatsoever for Plaintiffs'

counsel to accuse Mr. Snell of testifying falsely about either topic.

      In response to repeated, badgering questions, Mr. Snell consistently

explained that his notes were created as part of his preparation in consultation with

counsel, that he did not know who at defense counsel's firm actually typed the notes, that

the notes accurately reflected the distillation of his own preparation, and that the notes

were his own responses to each of the noticed topics.[22]  *See* Tr. at 59:8–73:21, 94:15–

96:20, 99:5–100:11, 172:24–176:5, 225:18–229:25, 313:18–320:12.  Mr. Snell could not

have said it any clearer than he did when Plaintiffs' counsel first questioned him about

the notes:



---

[22]  It is for this reason, among others, that Plaintiffs' reliance on *In re Neurontin Antitrust Litig.*, is misplaced.  In *In re Neurontin*, the deponent was not involved in the preparation of the script that he mindlessly read during his Rule 30(b)(6) deposition. MDL No. 1479, 2011 WL 2357793, at *6 (D.N.J. June 9, 2011).  It was created entirely by counsel and provided to the witness to be read at the deposition.  *Id.* at *2. Mr. Snell, in contrast, testified clearly that he was not "parroting what he had been told," as the witness did in *In re Neurontin, id.* at *6, but in fact prepared extensively, developed his notes in close collaboration with counsel, and that his notes reflected his own knowledge based on his preparation.  *See supra* 6–7, 9–10.  Indeed, the designee in *In re Neurontin* did not know and could not "add anything besides what was in the outline," "repeatedly indicated that he had nothing to add to what he was able to recite from the outline," and the witness's counsel "would not let [the witness] testify without" the outline."  *Id.* at *3, *6, *7.  That is plainly not the case here, where Mr. Snell used his notes for only a small portion of the deposition and answered the vast majority of substantive questions without using his notes.  *See supra* at 6–7, 9-11.

**Public Redacted Copy**



Tr. at 71:6–72:6.  The questioning attorney did not like these answers and re-asked the same questions nearly every time Mr. Snell tried to use his notes.[23]  But the answers were accurate, and Plaintiffs' counsel cannot point to any evidence to suggest that they were not.  Although Plaintiffs claim they were asking "simple yes or no question[s]" about who "wrote" Mr. Snell's notes, a simple yes or no answer would have been misleading given Mr. Snell's full explanation of how the notes were prepared.  Pls.' Mot. at 4.[24]

---

[23]   On four occasions in their Motion, Plaintiffs' misleadingly suggest defense counsel improperly instructed Mr. Snell not to answer valid questions.  *See* Pls. Mot. at 5, 22, 23, 37 (quoting Tr. at 60:11–13).  Defense counsel gave that instruction because the questioning attorney asked the same questions about the preparation of notes many times.

[24]   Plaintiffs also falsely claim that Mr. Snell pretended to need notes only to accurately read prior deposition testimony, when he was reading other answers.  Pls.' Mot. at 4–5.  Mr. Snell made clear that he needed notes because he could not remember all of the information needed to fully and accurately respond to the thirty-four broad topics.  *See, e.g.*, Tr. at 67:3–13.  And Mr. Snell could not have made it clearer when he read from and adopted prior deposition testimony by announcing "Question" and "Answer" before every question and answer in the testimony excerpts.  *See, e.g.*, Tr. 55:3–9 ██████████████████████████

**Public Redacted Copy**

4.    *Defense counsel's conduct and objections were entirely*
      *appropriate.*

Finally, Plaintiffs' request to sanction defense counsel for

"encourag[ing]," "pre-plann[ing]," and "actively assist[ing]" Mr. Snell's alleged

misconduct, including by "lodg[ing] many hundreds of objections during the deposition,"

Pls.' Mot. 2–3, is specious.  Because there was nothing improper or remotely

sanctionable about Mr. Snell's conduct, defense counsel cannot be sanctioned for doing

"nothing to address" it.  Pls.' Mot. at 38.  Nor is defense counsel at fault for interposing

objections (nearly all of which were "to form") to Plaintiffs' counsel's numerous

objectionable questions, and for speaking up to defend herself and her client against

counsel's unfounded attacks and threats.

The request for sanctions here is offensive.[25]  The standard for sanctioning

counsel for "imped[ing], delay[ing], or frustrat[ing]" a deposition is high.  *See* Fed. R.

Civ. P. 30(d)(2); *see United States* v. *All Assets Held at Bank Julius Baer & Co.*, No. CV

04-798 (PLF/GMH), 2017 WL 4183450, at *6 (D.D.C. Sept. 20, 2017) (requiring

evidence of "bad faith" or "an effort to intimidate the witness from cooperating")

(quotations and citation omitted).  Lodging objections, standing alone, are insufficient

grounds for imposing sanctions.  *See Covad Commc'ns Co.* v. *Revonet, Inc.*, 267 F.R.D.

---

Tr. at 288:3–14

55:10–21, 288:15–291:22.  Any suggestion that Mr. Snell was unclear
about what part of his answers incorporated prior deposition testimony, is simply
disingenuous.

[25]   Until this Motion, Defense counsel had never been accused of engaging in
sanctionable conduct during the entirety of her career.  *See* Ex. 9.

**Public Redacted Copy**

14, 26 (D.D.C. 2010) (declining to impose sanctions where the Court "reviewed the transcript of the deposition and . . . found that, for the most part, [counsel] made non-speaking objections to preserve a record of his objection and that the objections were not more than a sentence long."). Nothing in the record remotely suggests any bad faith on the part of defense counsel or any effort to prevent the witness from providing responsive testimony. As for objections, defense counsel was forced to make hundreds of objections because the questioning attorney asked hundreds of objectionable questions. Nonetheless, defense counsel's objections were nearly all to form, "stated concisely in a nonargumentative and nonsuggestive manner" pursuant to Rule 30(c)(2).[26] The request for sanctions is simply a baseless attack against counsel who is simply doing her job.

### C.   Exxon's designee was adequately prepared to testify (Rule 37(d)).

Plaintiffs half-heartedly argue at the end of their motion that the Court should also impose sanctions under Rule 37(d) for failure to appear. Pls.' Mot. at 41. Plaintiffs do not attempt to apply any facts to the Rule or cite any case law—and for good reason. The record is uncontroverted that Exxon selected an appropriate witness who prepared more than adequately under Rule 30(b)(6) for his depositions. A request for sanctions under Rule 37(d) borders on the frivolous.

Rule 30(b)(6) "does not expressly or implicitly require the corporation or entity to produce the 'person most knowledgeable' for the corporate deposition." *See QBE Ins. Corp.* v. *Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012). In fact,

---

[26]   In the vast majority of cases, defense counsel's full objection was either exactly or a near variation of: ███████████ (*see, e.g.*, Tr. at 24:2, 65:6, 281:4); ███████████ (*see, e.g.*, Tr. at 23:10–11, 217:22–23); or ███████████ (*see, e.g.*, Tr. at 63:21–22, 315:21–22).

"the witness/designee need not have any personal knowledge" to serve as an effective

30(b)(6) witness.  *Id.*  Here, the noticed topics concern events occurring more than twenty

years ago at a facility in Indonesia, which has ceased operations years ago.  *See* Exs. 1, 2.

There is virtually no one left at Exxon with any personal knowledge of the project during

the relevant time period.  Exxon selected as its designee a senior executive, with deep

personal experience in the region, who spent several years in Indonesia as general

counsel of EMOI.  *See* Tr. at 7:22–8:4, 8:7–9:4.

There is also no dispute that Exxon's corporate representative was more

than adequately prepared.  He ███████████████████████████████████

███████████████████████████████████ Tr. at 12:6–11, and ███████████████

███████████████████████████████ Tr. at 10:17–11: 6; *see also* Tr. at  64:9–20,

129:18–130:8.  Indeed, Mr. Snell's notes—eighty-five pages of facts responsive to all

thirty-four topics in the EMOI Notice—are a testament to the breadth and depth of

Mr. Snell's preparation.[27]  The suggestion—without any basis whatsoever—that

Mr. Snell "failed to appear," only proves the utter lack of justification for this Motion.

> **D.    Exxon is entitled to attorneys' fees and costs incurred defending
> Plaintiffs' Motion (<u>Rule 37(a)(5)(B)</u>).**

As demonstrated above, Plaintiffs' Motion is nothing but a spurious attack

on Exxon and counsel for being thoroughly prepared to respond to Plaintiffs' thirty-four

---

[27]  Plaintiffs claim, without support, that Mr. Snell ████████████████████████████
███████████████ beyond his initial, notes-aided responses, Pls.' Mot. at 12 n.9.
When Mr. Snell tried to use his notes, the questioning attorney frequently cut him off
and moved to strike his answer as non-responsive.  The attorney did not ask a single
follow-up question to any substantive testimony that Mr. Snell provided with the use
of his notes.  Moreover, Mr. Snell answered the vast majority of substantive questions
put to him without referring to his notes.  *See supra* at 10–11 & n.9.

noticed topics.  Plaintiffs cannot identify a single question or topic that was unanswered by Mr. Snell.  Plaintiffs have conceded that there was nothing wrong with Mr. Snell's use of notes as a corporate designee.  Mr. Snell only read from his notes for approximately forty-four minutes out of seven hours of on-the-record testimony, and he was prepared to answer any follow-up questions from counsel on the prepared answers, but was never asked.  In short, Plaintiffs' Motion lacks any—much less substantial—justification and Exxon is entitled to its "reasonable expenses incurred in opposing the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(B).[28]

Under Fed. R. Civ. P. 37(a)(5)(B), if a motion to compel is denied, the movant is required to pay the reasonable expenses associated with opposing the motion unless the motion was "substantially justified."  A party's actions are "substantially justified" when there "is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion." *Alexander* v. *F.B.I.*, 186 F.R.D. 144, 147 (D.D.C. 1999) (Lamberth, J.) (*quoting Pierce* v. *Underwood*, 487 U.S. 552, 565 (1988)).  Here, Plaintiffs threatened to seek sanctions without any basis almost as soon as the deposition began.[29]  And even after conceding after the deposition that Mr. Snell's use of notes was proper, Plaintiffs proceeded to bring this Motion based on a phony controversy about an

---

[28]  This would not be the first time the Court has ordered Plaintiffs to pay Exxon's attorneys' fees and costs under Rule 37.  In 2016, the Court sanctioned Plaintiffs and ordered them to pay attorneys' fees and costs incurred by Exxon as a result of Plaintiffs' violation of a Court order to produce documents.  *See* ECF Nos. 585 at 2, 586 at 24–25.  The award of specific costs is still pending before the Court.  *See* ECF No. 598, 599.

[29]  The questioning attorney threatened to seek sanctions on seven separate occasions during the EMOI deposition.  *See* Tr. at 34:18–22, 36:15–21, 50:6–8, 56:19–57:7, 81:10–14, 143:20–144:5, 209:5–210:2.

Public Redacted Copy

entirely collateral matter, the witness's testimony about who prepared the notes and when he read them.  There is simply no justification, let alone a substantial one, for Plaintiffs' Motion.

## II.   PLAINTIFFS' CONDUCT IMPEDING THE EMOI DEPOSITION IS SANCTIONABLE UNDER FEDERAL RULE 30(D)(2).

Plaintiffs' Motion only underscores that it was their own misconduct that impeded the fair examination of the witness on the noticed deposition.  The record plainly shows that Plaintiffs served two Rule 30(b)(6) notices in bad faith—requiring Exxon, Mr. Snell, and counsel to incur hundreds of hours of preparation collectively— with no intention of asking the witness questions about the noticed topics.  This entire exercise has been a stunt.  Plaintiffs should be sanctioned, at minimum, under Rule 30(d)(2) for their conduct at the EMOI deposition during which they impeded the witness's ability to fairly proceed and provide testimony on behalf of EMOI in response to the deposition notice.

Plaintiffs obstructed the fair examination of Mr. Snell by refusing to identify which of the noticed topics in the EMOI Notice the questioning attorney was purportedly asking about without justification, moving to strike responsive answers when the questioning attorney did not like the answers, and threatening to sanction the witness baselessly, presumably to intimidate the witness from relying on notes.

In the months leading up to the deposition, Plaintiffs demanded that Exxon prepare the witness to respond to each of the fifty-plus broad topics set forth in both of the Notices:

> Third, the law is clear that Exxon has an obligation to prepare witnesses to testify about the deposition topics as noticed. . . . The Court's Order set a deadline for Exxon to file any motion for a

**Public Redacted Copy**

protective order and Exxon decided not to do so.  Accordingly, the
deposition will proceed on the basis of the topics as notices subject
to the limitations Plaintiffs have agreed to as referenced above.

Ex. 10.

As demonstrated above, Exxon and Mr. Snell took their responsibilities
seriously and prepared in good faith to respond to each of the topics.  Based on the
questioning counsels' conduct in the earlier Rule 30(b)(6) depositions that took place in
2007, Exxon had every reason to believe that Plaintiffs would proceed in similar fashion,
describing the topics and asking the witness to respond to each topic.  This particular
attorney, however, obviously had a different intent and purpose for this deposition.  *See
supra* at 16–18.

*First*, the questioning attorney impeded and frustrated the witness's ability
to respond to the noticed topics by refusing—at least seventy times throughout the
deposition—to identify the topics to which his questions related.  When asked for such
clarification, the questioning attorney brushed aside or snapped at both witness and
counsel.  *See supra* at 18 & n.20.  For example, he asked repeatedly about State
Department reports that were not the subject of EMOI's notice, but EMC's notice, *see,
e.g.*, Tr. at 37:16–20, 38:11–15, 40:18–22, 45:4–9, 48:2–15, 51:20–52:6.  When defense
counsel tried to point out the questioning attorney's apparent confusion, he brushed her
aside.  *See* Tr. at 49:19–50:8.[30]  When Mr. Snell or counsel tried to ask how these and

---

30



other questions related to the topics in the EMOI Notice, the questioning attorney became indignant and adversarial.[31]

       *Second*, Plaintiffs impeded and frustrated the fair examination of Mr. Snell by refusing to let him answer the questions put to him and badgering him with frivolous objections, motions to strike, and sanctions.  These are precisely the types of behaviors for which the questioning party at a deposition can be sanctioned under Rule 30(d)(2).  *See, e.g.*, *Tajonera* v. *Black Elk Energy Offshore Operations, L.L.C.*, No. CV 13-0550, 2015 WL 9311968 (E.D. La. Dec. 23, 2015).

- **Interrupting the witness.**  The questioning attorney repeatedly cut off Mr. Snell mid-answer or altogether refused to let him answer a pending question.  *See Tajonera*, 2015 WL 9311968, at *2 (imposing sanctions for "the countless number of times [the questioning attorney] lecture[d] the witness as to the type of answer he must give and aggressively interrupt[ing the witness] while he attempts to answer[.]").  He did so repeatedly when Mr. Snell tried to answer a question with the aid of his notes.  *See, e.g.*, Tr. at 34:9–14, 227:3–228:3, 233:9–234:8, 283:4–5.  And then, for the better part of an hour, as the questioning attorney

---

█████████████████████████████

█████████████████████████████

Tr. at 49:19–50:8.

[31] Plaintiffs' argument that if Exxon thought the Notice was overbroad, then it should have moved for a protective order, *see* Tr. at 209:15–210:2; Pls.' Mot. at 10, 32, is beside the point.  Defendants do not claim that they are entitled to sanctions because the topics were improper.  Rather, Defendants contend that Plaintiffs served broad Notices in bad faith to impose an improper burden with no intention to actually obtain discovery.

**Public Redacted Copy**

sought to read several documents into the record, he cut off and scolded Mr. Snell
if Mr. Snell tried to say anything more than that the questioning attorney had read
the documents accurately. *See, e.g.*, Tr. at 276:19–277:19; 336:3–16, 351:24–
352:19.

- **Frivolous motions to strike.** The questioning attorney also repeatedly threatened
  frivolous motions to strike for nonresponsiveness when Mr. Snell's answers were
  plainly responsive. *See Tajonera*, 2015 WL 9311968, at *2 (imposing sanctions
  where the questioning attorney issued twenty-two objections to the witness's
  responsiveness, which were "almost uniformly invalid and . . . simply a tool
  employed" to shorten the witness's responses). To give an example, the
  questioning attorney at one point asked Mr. Snell whether, as the use of military
  guards at EMOI increased, ███████████████████████████████████
  ███████████████████████████████ Tr. at 313:18–23. Mr. Snell answered
  that senior Exxon officials ████████████████████████████████████
  ████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████
  Tr. at 316:7–317:7. Every aspect of Mr. Snell's answer was directly responsive to
  the question posed. Yet, before Mr. Snell could complete his answer, the
  questioning attorney interrupted him and moved to strike his answer as

nonresponsive.  *See* Tr. at 319:14–19.  The same thing happened repeatedly.[32]
*See, e.g.*, Tr. at 91:5–94:14, 217:7–17.

- **Repetitive, harassing questions.**  As discussed above, *supra* at 19–22, during the
  EMOI deposition, the questioning attorney berated Mr. Snell no fewer than
  fourteen different times for using his notes.  *See Tajonera*, 2015 WL 9311968,
  at *8 ("[R]epetitive and harassing questioning of [the witness] and [counsel's]
  interrupting, arguing and lecturing [of] the witness impeded, delayed and
  frustrated the fair examination of the deponent.").  He asked the same accusatory
  and argumentative questions over and over, for no apparent purpose other than to
  harass the witness and falsely suggest that the use of notes was improper, in order
  to intimidate him into forgoing use of his notes.  *See* Tr. at 30:8–31:20, 59:6–
  73:13, 94:15–96:20, 98:25–100:11, 101:24–102:5, 113:20–114:3, 124:13–17,
  133:15–19, 142:2–21, 172:24–176:3, 225:18–229:25, 283:6–15, 293:5–296:9,
  319:20–320:10.  Plaintiff's counsel spent nearly thirty minutes on the record
  accosting Mr. Snell about his notes.

          In summary, the record demonstrates that Plaintiffs served the deposition
notices in bad faith, proceeded with the EMOI deposition in a manner plainly intended to
prevent and impede the witness from providing responses to the noticed topics, and
unilaterally cancelled the EMC deposition with little notice when they realized that

---

[32]   At the end of seven hours on the record, Mr. Snell had used his notes to give
       testimony on only twelve of the thirty-four topics in the EMOI Notice.  Nearly every
       time he did so, Plaintiffs' counsel moved to strike Mr. Snell's answer, even though it
       was responsive to the question posed.  *See, e.g.*, 91:5–94:14; 169:22–172:23; 199:9–
       200:10; 315:7–319:19.

**Public Redacted Copy**

Exxon was prepared to address the topics in full.  Exxon's cross-motion for sanctions under Rule 30(d)(2) should be granted in an amount sufficient to compensate Exxon for the reasonable costs incurred in preparing Mr. Snell for the EMOI and EMC Rule 30(b)(6) depositions.

## CONCLUSION

The Court gave Plaintiffs the opportunity to take a second round of Rule 30(b)(6) depositions to obtain evidence that they claimed not to have received in Phase I.  Plaintiffs proceeded to impose a heavy burden on Exxon to prepare to respond to fifty-plus topics, but then conducted the EMOI deposition in a manner that made plain that Plaintiffs had no interest in obtaining any actual evidence.  Plaintiffs issued their Notices and took the EMOI deposition in bad faith, and now falsely blame Exxon for their own misbehavior.  Plaintiffs' Motion should be denied and they should be sanctioned for the time and resources they wasted.

**Public Redacted Copy**

Washington, D.C.                              Respectfully submitted,
March 9, 2021


                                              _____
                                                   /s/ Alex Young K. Oh
Patrick J. Conlon (Bar No. 414621)            Theodore V. Wells, Jr. (Bar No. 468934)
patrick.j.conlon@exxonmobil.com               twells@paulweiss.com
EXXON MOBIL CORPORATION                       Jaren E. Janghorbani (admitted *pro hac vice*)
22777 Springwoods Village Parkway             jjanghorbani@paulweiss.com
N1.4B.388                                     PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Spring, TX  77389                             1285 Avenue of the Americas
Telephone:  (832) 624-6336                    New York, NY  10019-6064
                                              Telephone: (212) 373-3000

                                              Alex Young K. Oh (Bar No. 499955)
                                              aoh@paulweiss.com
                                              Justin Anderson (Bar No. 1030572)
                                              janderson@paulweiss.com
                                              PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                              2001 K Street, N.W.
                                              Washington, DC  20006-1047
                                              Telephone:  (202) 223-7300

                                              *Attorneys for Defendants Exxon Mobil Corporation*
                                              *and ExxonMobil Oil Indonesia Inc.*

**Public Redacted Copy**

## CERTIFICATE OF SERVICE

I, Alex Young K. Oh, hereby certify that on March 9, 2021, true and

accurate copies of the foregoing Defendants' Memorandum Opposing Plaintiffs' Motion

to Compel Discovery and Impose Sanctions and Supporting Defendants' Cross-Motion

for Sanctions ("Defendants' Opposition and Cross-Motion"); the Declaration of Justin

Anderson in support of Defendants' Opposition and Cross-Motion, dated March 9, 2021,

and exhibits attached thereto; and the Proposed Order denying Plaintiffs' Motion to

Compel Discovery and to Impose Sanctions and granting Defendants' Cross-Motion for

Sanctions were electronically filed through the Court's ECF filing system, which sent

notice to all counsel of record.

/s/ Alex Young K. Oh
Alex Young K. Oh (Bar No. 499955)
aoh@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC  20006-1047
Telephone:  (202) 223-7300