**Public**
**Redacted Copy**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE I, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EXXON MOBIL CORPORATION, *et al.*, <br><br> Defendants. | Case No. 01-cv-01357-RCL |

## DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS'
## CROSS-MOTION FOR SANCTIONS

Patrick J. Conlon (Bar No. 414621)
patrick.j.conlon@exxonmobil.com
EXXON MOBIL CORPORATION
22777 Springwoods Village Parkway
N1.4B.388
Spring, TX  77389
Telephone:  (832) 624-6336

Theodore V. Wells, Jr. (Bar No. 468934)
twells@paulweiss.com
Jaren E. Janghorbani (admitted *pro hac vice*)
jjanghorbani@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  (212) 373-3000

Alex Young K. Oh (Bar No. 499955)
aoh@paulweiss.com
Justin Anderson (Bar No. 1030572)
janderson@paulweiss.com
Mitchell Webber (Bar No. 1024005)
mwebber@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC  20006-1047
Telephone:  (202) 223-7300

**Public**
**Redacted Copy**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 4

I.     Defendants Prepared Diligently to Testify about the Noticed Topics. ................... 5

II.    Plaintiffs Disregarded Their Own Noticed Topics despite Imposing on Exxon
       a Heavy Burden to Prepare. ................................................................................. 7

III.   Plaintiffs Obstructed the Witness's Testimony about the Noticed Topics. ........... 11

IV.    Plaintiffs Unilaterally Cancelled the EMC Deposition without Conferring
       with Exxon. ....................................................................................................... 15

CONCLUSION .............................................................................................................. 17

**Public**
**Redacted Copy**

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander* v. *F.B.I.*,
  186 F.R.D. 137 (D.D.C. 1998) (Lamberth, J.)................................................................6

*United States ex rel. Baltazar* v. *Warden*,
  302 F.R.D. 256 (N.D. Ill. 2014)...................................................................................13

*Mezu* v. *Morgan State University*,
  269 F.R.D. 565 (D. Md. 2010) ....................................................................................13

*Peronis* v. *United States*,
  No. 2:16-cv-01389-NBF, 2017 WL 696132 (W.D. Pa. Feb. 17, 2017) .....................14

*QBE Ins. Corp.* v. *Jorda Enterprises, Inc.*,
  277 F.R.D. 676 (S.D. Fla. 2012)....................................................................................6

*Sedie* v. *U.S. Postal Serv.*,
  No. C-08-04417 EDL, 2009 WL 4021666 (N.D. Cal. Nov. 19, 2009) ......................14

*Tri-State Hosp. Supply Corp.* v. *United States*,
  226 F.R.D. 118 (D.D.C. 2005) ......................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30(b)(6) ........................................................................................passim

Fed. R. Civ. P. 30(d)(2) ..............................................................................4, 11, 17

Fed. R. Civ. P. 37(a)(5)(B) .............................................................................................17

District of Columbia Local Civil Rule 7(e) ..................................................................1

**Public**
**Redacted Copy**

## PRELIMINARY STATEMENT

Plaintiffs willfully abused the Rule 30(b)(6) discovery process and impeded and frustrated Exxon's corporate representative from giving testimony in response to the depositions ordered by the Court.  Rather than explain their conduct, Plaintiffs offer a self-indulgent forty-three-page Reply and Opposition ("Opp.") that curates self-serving passages of EMOI's Rule 30(b)(6) deposition transcript accompanied by counsel's personal musings.  It contains little in the form of a legal or factual response to Exxon's Cross-Motion ("Cross-Mot.").[1]  Plaintiffs' unapologetic and cavalier response further underscores the necessity for sanctions to deter Plaintiffs from similar misconduct in the future.

The following facts are not in dispute:  During two rounds of motions about the necessity of additional Rule 30(b)(6) discovery, Plaintiffs represented that they needed additional essential discovery on certain topics despite having taken over seventeen hours of Rule 30(b)(6) depositions in 2007.  *See* Pls.' Mot. to Compel Discovery and Impose Sanction ("Pls.' Mot.") at 7.  After the Court allowed Plaintiffs to take limited additional discovery on certain topics that would not impose an undue burden on Exxon, *see* ECF No. 758 at 2, 4, Plaintiffs served two Rule 30(b)(6) notices on EMOI and EMC that contained over fifty topics (including subtopics) combined, and

---

[1]  Plaintiffs' forty-three-page brief contains a thirty-three-page section entitled "The Conduct at the EMOI Rule 30(b)(6) Deposition," which appears to be an argumentative "fact" section relating to the EMOI deposition.  *See* Opp. at 3–36. Because it is not clear on the face of the brief whether this section relates to Plaintiffs' Reply or their Opposition, and because the length far exceeds the page limitation for reply briefs, *see* Local Rule 7(e) ("[A] reply memorandum shall not exceed 25 pages, without prior approval of the Court."), Exxon will treat this section as applying to both the Reply and the Opposition and respond accordingly.

**Public**
**Redacted Copy**

demanded that Exxon prepare its witness to respond to each and every one of these topics.  To avoid burdening the Court with more motion practice on this issue, Exxon expended significant effort and prepared to respond to all fifty-plus topics.  As its witness, Exxon designated Mark Snell, the General Counsel of EMOI from 2007 through early 2012, who is currently the General Counsel of the Asia Pacific region, including Indonesia.  Mr. Snell spent more than seventy hours preparing to answer questions about events that occurred more than twenty years ago in a facility that Exxon has long ceased operating.

As the transcript of EMOI's deposition demonstrates, however, Plaintiffs dropped all pretense of seeking additional Rule 30(b)(6) discovery as soon as the deposition began.  To start, Plaintiffs' counsel expressed zero interest in obtaining responses to their noticed topics.  Indeed, counsel brushed off requests by Exxon's counsel and witness to identify the topics that related to his questions, and even refused to explain why he would not identify the topics.  Much of the deposition was spent on the questioning attorney's attempt to score points with "gotcha" questions designed to elicit misleading "admissions" that Exxon did not do or know about certain things—tactics that would not be countenanced in a courtroom.  *See* Cross-Mot. at 12 (citing Tr. at 96:21–153:14, 237:21–258:24, 327:9–331:22).  Plaintiffs admit in their Opposition that Mr. Snell spent only 10% of the seven-hour deposition (approximately forty-four minutes) reading from his eighty-five pages of notes that contained responses to all of the thirty-four topics in the EMOI Notice.  *See id.* at 3, 11, 11 n.10; Opp. at 34.  This small percentage alone proves that Plaintiffs' counsel willfully—and effectively—impeded and

**Public**
**Redacted Copy**

frustrated EMOI's witness from giving full testimony in the deposition ordered by the Court.

   Further demonstrating Plaintiffs' misuse of the Rule 30(b)(6) deposition, the vast majority of the time on the record was taken up by Plaintiffs' counsel's efforts to manufacture yet another dispute to bring to the Court.  For example, counsel repeatedly and baselessly threatened sanctions against both witness and counsel for the witness's reliance on notes, which Plaintiffs now acknowledge—as they must—was entirely appropriate.  Moreover, instead of marking the notes as an exhibit when offered by Exxon's counsel in the first hour of the deposition—which would have made plain once and for all whether the witness was reading his notes or not—the questioning attorney ignored counsel's offer and chose instead to repeatedly badger and accuse the witness of testifying falsely about how the notes were prepared or when he was reading them, an accusation that continues in the Opposition without any basis other than counsel's personal views.  *See* Opp. at 34, 35–36 n.47.

   The pièce de résistance, however, was Plaintiffs' unilateral cancellation of EMC's Rule 30(b)(6) deposition with just three days' notice, rendering all of Exxon's prep work to be wasted.  Tellingly, Plaintiffs never made any demands or otherwise sought to meet and confer about the EMC deposition before cancelling it unilaterally.  If gaining access to Mr. Snell's notes an hour before the EMC deposition were Plaintiffs' goal, as they profess here, that could have been easily accommodated had they asked.  It was only *after* taking the deposition off the calendar that Plaintiffs informed Exxon that it would file a motion to compel EMC to turn over its witness's notes an hour before the deposition.

**Public**
**Redacted Copy**

Plaintiffs' conduct was egregious and intentional, and impeded and frustrated a fair examination of Exxon's corporate representative in the additional depositions ordered by the Court.  Plaintiffs' conduct also made a mockery of the Court's careful balancing of Plaintiffs' purported need for additional Rule 30(b)(6) discovery against undue burden on Exxon.  For all of the reasons in Exxon's Cross-Motion and set forth below, the Court should impose sanctions under Rule 30(d)(2).

## ARGUMENT

Plaintiffs' Opposition contains no serious argument (or law in support) that Exxon failed to designate an appropriate corporate representative or that Exxon failed to adequately prepare its witness under Rule 30(b)(6).  Plaintiffs' conduct during the deposition, however, rendered all of the preparation of little use and frustrated a fair examination of EMOI's witness.  For example, the questioning attorney refused to identify the topics his questions related to or explain his refusal, failed to ask about the vast majority of the topics, and instead devoted most of his time to attacking both witness and counsel in order to manufacture disputes for a baseless sanctions motion—the threat of which Plaintiffs' counsel raised a mere thirty-five minutes into the deposition.  In short, rather than seeking discovery that they purportedly needed, as they represented to the Court, Plaintiffs used the Rule 30(b)(6) deposition as an opportunity to impose an undue burden, and to attack, harass, and confuse the witness, presumably in order to catch the witness in unguarded moments that may bind Exxon—all tactics that were objectionable and would never be tolerated in a courtroom.

**Public**
**Redacted Copy**

### I.   DEFENDANTS PREPARED DILIGENTLY TO TESTIFY ABOUT THE NOTICED TOPICS.

In preparation for the EMOI deposition, Mr. Snell spent over forty hours on his own ███████████████████████████████████████████ ███████████████████████████████████ Tr. at 12:6–11, ██████████████████ ████████████████████████████████████████ Tr. at 10:17–11:20.  Mr. Snell also spoke with two key former EMOI employees—the President of EMOI during the relevant time period and EMOI's principal security advisor in Aceh, both of whom have been deposed in this matter.  ████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████ *See* Tr. at 71:10–19, 158:18–159:11; Pls.' Mot., Ex. D.  Exxon and Mr. Snell more than fulfilled their obligations under Rule 30(b)(6) by preparing extensively to testify fully and accurately about the topics noticed by Plaintiffs, and Plaintiffs do not contend otherwise.

Instead, Plaintiffs resort to claiming that EMOI should have chosen a different corporate representative for the deposition.  *See* Opp. at 6–7 (alleging that Exxon selected Mr. Snell as a "tactical decision not to have knowledgeable witnesses used").  That accusation is frivolous.

Mr. Snell is Exxon's General Counsel of the entire Asia Pacific region, which includes EMOI, and previously spent more than four years in Jakarta serving as the General Counsel of EMOI.  *See* Cross-Mot. at 6.  He has deep personal knowledge of the region, of EMOI, and of Exxon based on his more than twenty years with Exxon and its affiliates.  But even if Mr. Snell lacked that extensive, relevant background, Rule 30(b)(6) does not require that the designee "have any personal knowledge" to serve as an

**Public**
**Redacted Copy**

effective witness, as long as he or she is properly prepared to testify about the noticed topics.  *QBE Ins. Corp.* v. *Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012); *see also Alexander* v. *F.B.I.*, 186 F.R.D. 137, 141 (D.D.C. 1998) (Lamberth, J.) ("Obviously, the purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the noticing party, not to simply get answers limited to what the deponent happens to know.").

   Plaintiffs argue that instead of Mr. Snell, Exxon should have designated former employees whose names appeared in discovery or who were disclosed as potential fact witnesses.  Rule 30(b)(6) requires no such thing, and Plaintiffs cite no authority in support.  Such a proposition also would not be practical here.  A company cannot simply demand that its former employees—some of whom left the company two decades ago— spend countless hours with counsel to educate themselves about long ago facts in order to serve as a company representative in a litigation.  This is particularly so of former employees who do not wish to participate in the litigation.[2]  Moreover, Plaintiffs have

---

[2] Plaintiffs insinuate that Mr. Snell's preparation was somehow defective because he did not speak with Tommy Chong, a former security advisor who provided services to Mobil Oil Indonesia prior to Mobil's merger with Exxon in April 2000.  *See* Opp. at 23–24, 29; *see* Pls.' Mot., Ex. D at p. 63.  This accusation ignores the fact that Mr. Snell testified that counsel had interviewed numerous witnesses over the course of the litigation and that his preparation had incorporated relevant information from such interviews.  *See* Tr. at 158:18–159:11.

More importantly, this accusation is yet another example of Plaintiffs' relentless campaign of misinformation to turn an ordinary act taken by Exxon—amending witness disclosures made six years before to delete individuals who no longer wish to participate—into something more sinister.  Defendants disclosed Mr. Chong and other former employees as potential fact witnesses in 2013.  *See* Declaration of Justin Anderson, dated March 30, 2021 ("Anderson Decl."), at Ex. 1.  Plaintiffs first expressed any interest in deposing Mr. Chong *six years later, in October 2019.  See* Anderson Decl. at Ex. 2.  When contacted, Mr. Chong, who had left the company nearly twenty years prior and lives in Singapore, indicated he was not interested in

**Public**
**Redacted Copy**

already deposed retirees Ron Wilson, President of EMOI during the relevant time period,

and Neil Duffin, Senior Vice President of Mobil Oil Indonesia (predecessor to EMOI)

during the relevant time period.  On this record, there was no more suitable designee than

Mr. Snell, and Plaintiffs have no valid basis to claim that his selection was a "tactical

decision."  Opp. at 5, 6–7.

## II.     PLAINTIFFS DISREGARDED THEIR OWN NOTICED TOPICS DESPITE IMPOSING ON EXXON A HEAVY BURDEN TO PREPARE.

Plaintiffs' conduct during the deposition defeated the very purpose of the

notice requirement of a Rule 30(b)(6) deposition, which is meant to facilitate targeted

preparation and questioning of designees whose testimony binds the corporations they

represent.  *See Tri-State Hosp. Supply Corp.* v. *United States*, 226 F.R.D. 118, 125

(D.D.C. 2005) ("The purpose of designating matters for the 30(b)(6) deposition is to give

the opposing party notice of the areas of inquiry that will be pursued so that it can

identify appropriate deponents and ensure they are prepared for the deposition.").  The

Court specifically instructed that additional Rule 30(b)(6) depositions "be tailored" to

certain topics that Plaintiffs claimed they did not have the opportunity to inquire about

during the 2007 depositions.  ECF No. 758 at 2.

Plaintiffs' counsel disregarded the Court's instruction—and the Rule's

notice provision—when he refused to identify the topics to which his examination

---

participating in this litigation.  Exxon promptly amended its disclosures in April 2020
to reflect that it no longer intended to rely on Mr. Chong and certain other former
employees at trial.  *See* Anderson Decl. at Ex. 3.  Exxon also provided Plaintiffs with
the contact information for Mr. Chong and the other former employees who no longer
wished to cooperate so that Plaintiffs could contact them directly if they so wished, a
fact not disclosed by Plaintiffs.  *See* Anderson Decl. at Ex. 4.

**Public**
**Redacted Copy**

pertained.  Due to the large number of topics in the EMOI Notice, many of which appear

to overlap with others, Mr. Snell had gathered and organized the company's responses, in

his mind and in his notes, according to the topics.  Based on the 2007 depositions,

Mr. Snell had every reason to believe that the questioning attorney would readily

volunteer the topics, and might even ask him what he knew generally about the topics.[3]

*See* Cross-Mot. at 16–18.

Yet, from the outset of the deposition, the questioning attorney not only

refused to identify the topics that his questions related to,[4] but became agitated and

aggressive with the witness for even asking the question.  *See* Cross-Mot. at 9 (citing

examples).  The questioning attorney declined to say *why* he refused to identify the

topics, and in their eighty-plus pages of briefing Plaintiffs still cannot provide a credible

reason.  Plaintiffs now claim that the questioning attorney refused to clarify which topics

he was discussing because he did not want Mr. Snell to use his notes.  *See* Opp. at 8, 13,

19, 21, 25–28, 32, 40.  But the questioning attorney refused to identify the topic even

before Mr. Snell first referred to his notes.  *See* Tr. at 16:8–18 ██████████████████

████████████████████████████████████████████████

██████████████████████████████████████  Moreover,

Plaintiffs' claimed reason for refusing to identify the topics—because they did not want

---

[3]   Although Plaintiffs now seek to disparage the stature of their own counsel who
conducted the 2007 Rule 30(b)(6) depositions as a "junior associate," Opp. at 39 n.51,
Plaintiffs cannot dispute that the questions posed in the prior depositions
appropriately followed the topics and generally asked the designee to provide
information responsive to the noticed topics.  *See* Cross-Mot. at 16–18, 17 nn.17–19.

[4]   The questioning attorney refused to identify the topic relating to his questions at least
seventy times during the deposition.

Mr. Snell to use his notes—is effectively a concession that Plaintiffs intended a game of "gotcha." They never intended to give Mr. Snell a full and fair opportunity to respond to the topics in the EMOI Notice, despite having caused Mr. Snell and counsel to spend hundreds of hours preparing.

Plaintiffs mischaracterize Mr. Snell's notes as a "script" of litigation positions dictated by counsel. Opp. at 18 n.20. The fact that Plaintiffs only characterize the notes, without quoting extensively from them, speaks volumes about the accuracy of Plaintiffs' characterization. As demonstrated in the Cross-Motion, Mr. Snell's notes were accurate, factual, non-argumentative responses to all thirty-four topics in the EMOI Notice. *See, e.g.*, Cross-Mot. at 7–8 (citing Mr. Snell's notes on Topic 1 as an example); Pls.' Mot. Ex. D at pp. 35–36; 75–77 (Topics 3(k), 3(l), and 10, respectively). Moreover, Mr. Snell answered the vast majority of substantive questions without reference to his notes, *see* Cross-Mot. at 11, 11 n.9, 20, and the relatively few times when Mr. Snell did have the opportunity to read from his notes, his answers were fully responsive to Plaintiffs' questions, *see, e.g.*, Cross-Mot. at 9–11, 30–31.[5] Finally, although Mr. Snell was prepared to and would have answered any follow-up questions about his answers, the

---

[5] Plaintiffs unfairly criticize Mr. Snell for taking several minutes on one occasion to find the information responsive to a question in his notes, because the questioning attorney inexplicably refused to identify the relevant topic. *See* Opp. at 19–20, 19 n.23, 24–25, 24 n.29. Had the questioning attorney identified the topic, Mr. Snell would have promptly located the information in his notes and provided the answer. In any event, in nearly all cases in which the questioning attorney did not identify the topic, Mr. Snell nevertheless was able to quickly identify the topic on his own. *See, e.g.*, Tr. at 84:11–86:2 ███████████████████████ 101:8–23 ███████████████████████ ██████████.

**Public**
**Redacted Copy**

questioning attorney did not ask even one substantive follow-up question. *See* Cross-Mot. at 8, 25 n.27, 26.

Instead of asking about the topics in Plaintiffs' own notice, the questioning attorney's examination was largely focused on creating misleading "jury moments" suggesting that EMOI failed to do anything about the alleged injuries suffered by Plaintiffs, even though Mr. Snell had testified clearly and repeatedly that Exxon was not aware of any such injuries during the relevant time period. *See* Cross-Mot. at 12, 12 n.13. Plaintiffs' campaign of misinformation continues in the Opposition, where it baldly asserts—without any support—that Plaintiffs "had literally been tortured, dismembered, sexually abused, or killed by military personnel *engaged by Exxon*." Opp. at 22 (emphasis added). Plaintiffs are fully aware, however, that no such evidence has ever been adduced in this litigation. No Plaintiff or witness has provided any evidence that an Indonesian soldier who injured any Plaintiff was "engaged" by Exxon, and there is no dispute that Indonesian law required Indonesian soldiers to guard Indonesian Vital Objects—such as the Arun Field operated by EMOI—during an Indonesian civil war. *See* Cross-Mot. at 7–8. Respectfully, Exxon submits that such inflammatory and false assertions will continue unless Plaintiffs are deterred by appropriate sanctions.

The questioning was secondarily focused on whether Plaintiffs' counsel had accurately read passages from documents into the record. *See* Cross-Mot. at 13. Plaintiffs claim that this questioning was appropriate because Plaintiffs did not want the witness and defense counsel to later claim that the questioning attorney was mischaracterizing the exhibits. *See* Opp. at 30. But the questioning attorney did not pose any questions about the referenced exhibits beyond whether he read from them

**Public**
**Redacted Copy**

accurately, and he interrupted Mr. Snell when he tried to say anything more about the exhibits.  *See* Tr. at 213:2–220:3 ███████████████████ 268:17–283:5 ████████████████ 303:25–311:4 ██████████████████ 332:17–340:14 ████████████.  Had Mr. Snell ignored the noticed topics and done virtually nothing to prepare for the EMOI deposition, he would have been just as suited to answer Plaintiffs' questions.

To be clear, and contrary to Plaintiffs' claim, Exxon does not argue that the questioning attorney was required to structure his examination by topic, Opp. at 39 n.51, or that it was sanctionable for the questioning attorney merely to refuse to disclose the topics about which he was asking, Opp. at 39.  Rather, the questioning attorney's refusal to identify the topics was symptomatic of Plaintiffs' overall disregard for the Court's order allowing further limited discovery and the Rule 30(b)(6) process requiring notification of topics to facilitate targeted preparation and testimony.  Due to counsel's refusal to identify the topics, Mr. Snell's was unable to provide the company's responses to the noticed topics, which he gathered with the help of counsel through hundreds of combined hours of preparation.  *See* Cross-Mot. at 7–8, 20–22.  This conduct was inconsistent with the Court's order allowing further discovery and with Rule 30(b)(6).

## III.    PLAINTIFFS OBSTRUCTED THE WITNESS'S TESTIMONY ABOUT THE NOTICED TOPICS.

The questioning attorney also impeded and frustrated Mr. Snell's testimony in other ways, in violation of Rule 30(d)(2).

Plaintiffs appear to justify the questioning attorney's conduct by claiming—incorrectly—that the witness obfuscated the use of notes, testified falsely about how the notes were prepared or when he was using them, and defense counsel

enabled all of the above through various improper actions.  *See* Opp. at 2, 7, 12–13, 15–18, 18 n.20, 20, 24, 27, 31–32, 34, 40.  In short, Plaintiffs' counsel engaged in "self-help" by going on the attack because the witness and defense counsel deserved it.  Plaintiffs' "victim-blaming" is baseless and should be rejected.

Plaintiffs cannot dispute that Mr. Snell acknowledged that he had notes as soon as he referred to them for the first time, which is captured on video.  *See* Opp. at 12; *see also* Cross-Mot. at 9–10.  They also do not dispute that Mr. Snell spent only approximately forty-four minutes of the seven-hour deposition reading from his notes. *See* Opp. at 34; *see also* Cross-Mot. at 3, 11, 20, 26.  They admit that defense counsel offered the notes to the questioning attorney within the first hour of the EMOI deposition, *see* Opp. at 16; *see also* Cross-Mot. at 10, 15, 15 n.14, yet offer no explanation in their Opposition why the questioning attorney did not accept defense counsel's offer, which would have made plain to all when and how Mr. Snell was relying on notes.

Plaintiffs' inability to explain their conduct leads to only one conclusion: Plaintiffs' attorney engaged in a tactical decision not to mark Mr. Snell's notes, but instead use the notes as a battering ram to attack both witness and counsel.  Indeed, the questioning attorney spent virtually as much time on the record examining Mr. Snell about his notes as Mr. Snell spent reading from them.  *See* Cross-Mot. at 31.  Mr. Snell forthrightly and credibly answered all of Plaintiffs' counsel's questions about his notes (Was he reading from them?  Who created them?) the first time he read from his notes, within the first hour of the deposition.  *See* Cross-Mot. at 9–10, 20–22.  That, however, did not stop the questioning attorney from accosting Mr. Snell about his use of notes more than a dozen more times, *see* Cross-Mot. at 31, for no discernable purpose other

**Public**
**Redacted Copy**

than to intimidate and embarrass Mr. Snell and improperly deter him from using his notes. *See, e.g.*, *United States ex rel. Baltazar* v. *Warden*, 302 F.R.D. 256, 262–64 (N.D. Ill. 2014) (granting sanctions where, among other things, the questioning attorney's "repetitive, irrelevant questions . . . seemed solely designed to unreasonably annoy, harass, and embarrass [the witness]"); *Mezu* v. *Morgan State Univ.*, 269 F.R.D. 565, 584 (D. Md. 2010) ("An attorney should not repeatedly ask the same or substantially identical question of a deponent if the question already has been asked and fully and responsively answered by the deponent.") (quotations and citation omitted).

        When Mr. Snell was able to read from his notes to respond to specific questions, the questioning attorney cut Mr. Snell off, *see* Cross-Mot. at 29–31 (citing examples), lodged frivolous motions to strike Mr. Snell's testimony, *see* Cross-Mot. at 10–11, 30–31 (citing examples),[6] and threatened sanctions if Mr. Snell continued to use his notes, *see* Cross-Mot. at 10–11, 18 n.20, 26 n.29 (citing examples). Plaintiffs' claim that the questioning attorney was "calm and entirely professional" and "exercised restraint and professionalism" throughout the deposition, Pls.' Mot. at 39, Opp. at 40, is belied by the record, which shows his repeated and baseless threats of sanctions, interruptions, frivolous motions to strike, disregard of witness and counsel's clarifying questions, and lectures about proper deposition conduct that demonstrated a general lack

---

[6]   Plaintiffs complain that Exxon "discusses only one objection to strike the witness's testimony" in its Cross-Motion. Opp. at 42. Exxon selected one incident as an example and noted that "[t]he same thing happened repeatedly," citing additional examples both in the text and in an accompanying footnote. *See* Cross-Mot. at 30–31, 31 n.32. For the avoidance of doubt, the questioning attorney moved to strike the witness's testimony twenty-five times.

**Public**
**Redacted Copy**

of respect towards a professional adversary.  *See, e.g.*, Tr. at  26:2–27:3, 29:24–32:18,

34:6–38:6, 174:9–175:6, 184:4–185:13, 207:17–209:14.

        Plaintiffs now seek to justify counsel's conduct by claiming, essentially,

that the witness deserved his badgering because he was improperly using notes and

testifying falsely about them.  *See* Opp. at 2, 7, 12–13, 15–18, 18 n.20, 20, 24, 27, 31–32,

34, 40.  But the questioning counsel is a representative of a litigant, and cannot engage in

"self-help" because he does not like the witness's answers.  Moreover, it turned out that

questioning counsel was flatly wrong about the propriety of using notes during a Rule

30(b)(6) deposition, rending his baseless threats of sanctions made throughout the

deposition even more improper.  In any event, the questioning attorney scolded the

witness even when he was not using his notes.  *See, e.g.*, Cross-Mot. at 13 (citing

examples).

        The questioning attorney also pressured Mr. Snell into testifying about

documents without first reviewing them, which is itself sanctionable conduct.  *See, e.g.*,

Tr. at 21:13–16 ██████████████████████████████████████████████

████████████████████████████████████████[7]); *Peronis* v. *United States*,

No. 2:16-cv-01389-NBF, 2017 WL 696132, at *2 (W.D. Pa. Feb. 17, 2017) ("The

witness shall be afforded the opportunity to read [deposition exhibits] before answering

any questions.") (citations omitted); *Sedie* v. *U.S. Postal Serv.*, No. C-08-04417 EDL,

2009 WL 4021666, at *1 (N.D. Cal. Nov. 19, 2009) (imposing sanctions against counsel

who questioned witness about "selective portions of [an exhibit]" while "refusing to

---

[7]    Here, the "entire document" was merely five pages long (and was not identified in the
EMOI Notice).  *See* Tr. at 19:11–22:4.

**Public**
**Redacted Copy**

permit [the witness] to review the document, after he and his counsel rightfully asked several times to review it").

Although Plaintiffs complain about Exxon engaging in "self-help," the truth of the matter is that it was Plaintiffs' counsel who engaged in "self-help" by seeking to "discipline" and attack Mr. Snell and counsel throughout the deposition in order to prevent the witness from providing information in response to this Court's order to provide more discovery. This behavior cannot be countenanced.

## IV.   PLAINTIFFS UNILATERALLY CANCELLED THE EMC DEPOSITION WITHOUT CONFERRING WITH EXXON.

Compounding their misconduct, Plaintiffs unilaterally cancelled EMC's deposition without seeking to meet and confer in any way about the conduct of the deposition. This further act of inappropriate self-help rendered all of Exxon's work in preparation for that deposition a nullity. It provides an independently sufficient basis for sanctions.

Just hours after EMOI's deposition concluded, Plaintiffs notified Exxon that it was cancelling the EMC deposition—scheduled for three days later—and threatened that they were "evaluating our options for bringing these issues [related to the EMOI deposition] to the Court's attention." Anderson Decl. at Ex. 5. Plaintiffs did not ask to meet and confer before cancelling the EMC deposition, let alone request that Exxon provide any notes that the witness may use at the EMC deposition an hour in advance of the deposition, which is not required by the deposition protocol. *See* Pls.' Mot at 43.

Removing the EMC deposition from the calendar just days before it was scheduled to occur wasted months of preparation by Exxon. Plaintiffs' EMC Notice

**Public**
**Redacted Copy**

called for EMC's corporate representative to be prepared with all known and reasonably available information about one of the world's largest energy companies' policies and practices concerning locations across the globe during a several-year period more than twenty years ago.  For example, the EMC topics included:

- "Your policies and practices regarding the use of host government security, including any consideration or use of alternative security providers and the costs thereof."

- "Your policies and practices relating to the supervision of security personnel, including any standards, evaluations, and monitoring. . . ."

- "Any audits, inspections, third-party consultations, or draft or final risk assessments regarding security issues relating to the Arun Project by you, other Mobil or Exxon companies or third parties. . . ."

ECF No. 780-3 at Topics 4, 5, 7.  Plaintiffs knew full well the burden that Exxon had undertaken to prepare for the EMC deposition.  ███████████████████████████████

███████████████████████████████████  *See* Tr. at 9:12–16, 10:17–23.

Plaintiffs' excuses for their last-minute cancellation of EMC's deposition ordered by the Court—which both impeded EMC's ability to provide responses to the noticed topics and maximized the burden on EMC—are unavailing.  Plaintiffs' justification for cancelling the EMC deposition boils down to their claimed need for the witness's notes an hour ahead of time.  *See* Opp. at 37–38.  Yet, Plaintiffs declined to accept the witness's notes when they were offered in the first hour of the EMOI deposition and failed to even ask for them before cancelling the EMC deposition unilaterally.  Plaintiffs have yet to explain why they did not mark Mr. Snell's notes when

offered, and why Plaintiffs did not request the notes for the EMC deposition until *after* they had taken down the EMC deposition.  This strategic conduct demonstrates Plaintiffs' improper purpose.

Plaintiffs did not seek to obtain discovery through good-faith deposition questioning.  Instead, they abused the Court's order granting additional discovery to impose heavy preparation costs on Exxon only to use one deposition for a game of "gotcha" and then to abandon the other deposition entirely at the last minute.  Their misconduct is sanctionable under Rule 30(d)(2).

## CONCLUSION

Plaintiffs impeded and frustrated the witness's testimony, and indeed defeated the very purpose for which the Court permitted a second round of Rule 30(b)(6) depositions.  The questioning attorney sought to keep the witness in the dark about the topics to which his questions allegedly pertained, mistreated the witness for providing answers that the questioning attorney did not like, and then cancelled the EMC deposition and ran to the Court to baselessly complain about how the EMOI deposition proceeded— a situation of Plaintiffs' own making.  Plaintiffs should be sanctioned for the time and resources Defendants incurred preparing for the two additional Rule 30(b)(6) depositions and attending the EMOI deposition.[8]

---

[8]   Exxon is likewise entitled under Rule 37(a)(5)(B) to the attorneys' fees and costs incurred defending against Plaintiffs' Motion, *see* Cross-Mot. at 25–27, which is not only meritless but might have been avoided had Plaintiffs simply accepted Mr. Snell's notes when offered during the EMOI deposition and then asked to review his notes an hour prior to the EMC deposition.

**Public**
**Redacted Copy**

Washington, D.C.                          Respectfully submitted,
March 30, 2021


_____
                                         /s/ Alex Young K. Oh
Patrick J. Conlon (Bar No. 414621)       Theodore V. Wells, Jr. (Bar No. 468934)
patrick.j.conlon@exxonmobil.com          twells@paulweiss.com
EXXON MOBIL CORPORATION                   Jaren E. Janghorbani (admitted *pro hac vice*)
22777 Springwoods Village Parkway        jjanghorbani@paulweiss.com
N1.4B.388                                PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Spring, TX  77389                        1285 Avenue of the Americas
Telephone:  (832) 624-6336               New York, NY  10019-6064
                                         Telephone: (212) 373-3000

                                         Alex Young K. Oh (Bar No. 499955)
                                         aoh@paulweiss.com
                                         Justin Anderson (Bar No. 1030572)
                                         janderson@paulweiss.com
                                         Mitchell Webber (Bar No. 1024005)
                                         mwebber@paulweiss.com
                                         PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                         2001 K Street, N.W.
                                         Washington, DC  20006-1047
                                         Telephone:  (202) 223-7300

                                         *Attorneys for Defendants Exxon Mobil Corporation*
                                         *and ExxonMobil Oil Indonesia Inc.*

**Public**
**Redacted Copy**

## CERTIFICATE OF SERVICE

I, Alex Young K. Oh, hereby certify that on March 30, 2021, true and accurate copies of the foregoing Defendants' Reply in Support of Defendants' Cross-Motion for Sanctions ("Defendants' Reply") and the Declaration of Justin Anderson in support of Defendants' Reply, dated March 30, 2021, and exhibits attached thereto were electronically filed through the Court's ECF filing system, which sent notice to all counsel of record.

_____
/s/ Alex Young K. Oh
Alex Young K. Oh (Bar No. 499955)
aoh@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC  20006-1047
Telephone:  (202) 223-7300