# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN DOE I, *et al.*,

        Plaintiffs,

        v.

EXXON MOBIL CORPORATION, *et al.*,

        Defendants.

Case No. 01-cv-01357-RCL

## RESPONSE OF PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
## TO THE ORDER TO SHOW CAUSE DATED APRIL 26, 2021

Theodore V. Wells, Jr. (Bar No. 468934)
twells@paulweiss.com
Jaren Janghorbani (admitted *pro hac vice*)
jjanghorbani@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

Justin Anderson (Bar No. 1030572)
janderson@paulweiss.com
Mitchell Webber (Bar No. 1024005)
mwebber@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006-1047
Telephone: (202) 223-7300

## TABLE OF CONTENTS

Page

Preliminary statement ............................................................................................. 1

Relevant background ............................................................................................... 5

    A.    The Rule 30(b)(6) deposition of Mark Snell ........................... 5

    B.    The cross-motions for sanctions ................................................ 9

Further sanctions are not warranted ................................................................... 12

Conclusion ............................................................................................................. 21

## TABLE OF AUTHORITIES

## CASES

*Animal Welfare Inst.* v. *Feld Ent., Inc.*, 944 F. Supp. 2d 1 (D.D.C. 2013) ....................... 15

*Aviation Constructors* v. *Federal Express Corp.*, 814 F. Supp. 710 (N.D. Ill. 1993) ....... 19

*Black Horse Lane Assoc., L.P.* v. *Dow Chem. Corp.*, 228 F.3d 275 (3d Cir. 2000) ........... 6

*Braunstein* v. *Ariz. Dep't of Transp.*, 683 F.3d 1177 (9th Cir. 2012) ............................... 15

*Chum Ltd.* v. *Lisowski*, Civ. No. 98-5060,
    2001 WL 243541 (S.D.N.Y. Mar. 12, 2001) ................................................................. 19

*Cook* v. *American S.S. Co.*, 134 F.3d 771 (6th Cir. 1998) ................................................... 15

*DR Distributors, LLC* v. *21 Century Smoking, Inc.*, Civ. No. 12-50324,
    2021 WL 185082 (N.D. Ill. Jan. 19, 2021) ................................................................... 13

*Forrest Creek Assocs., Ltd.* v. *McLean Sav. & Loan Ass'n*,
    831 F.2d 1238 (4th Cir. 1987) ..................................................................................... 14

*Hedgeye Risk Mgmt., LLC* v. *Heldman*, 412 F. Supp. 3d 15 (D.D.C. 2019) ......... 13, 14, 18

*Hunter* v. *Earthgrains Co. Bakery*, 281 F.3d 144 (4th Cir. 2002) ..................................... 14

*Jones* v. *Bank of Am., N.A.*, Civ. No. 14-11531,
    2015 WL 1808916 (S.D. W. Va. Apr. 21, 2015) ................................................... 16, 17

*Kiobel* v. *Millson*, 592 F.3d 78 (2d Cir. 2010) ................................................................. 14

*Korn Techs., Inc.* v. *SKC Forspray, Ltd.*, Civ. No. 90-4722,
    1990 WL 181131 (E.D. Pa. Nov. 15, 1990) ................................................................. 19

i

Page

Cases—continued:

*LaPrade* v. *Kidder Peabody & Co.*, 146 F.3d 899 (D.C. Cir. 1998) ...............................15

*Leeks* v. *GeoPoint Surveying, Inc.*, Civ. No. 19-562,
   2020 WL 3316002 (M.D. Fla. June 18, 2020),
   *appeal dismissed*, 838 F. App'x 502 (11th Cir. 2021)................................................13

*Level 3 Commc'ns, LLC* v. *United States*, 724 F. App'x 931 (Fed. Cir. 2018)................15

*Lucas* v. *Duncan*, 574 F.3d 772 (D.C. Cir. 2009)........................................................*passim*

*Moeck* v. *Pleasant Valley School District*, 844 F.3d 387 (3d Cir. 2016) ..........................13

*Navarro-Ayala* v. *Hernandez-Colon*, 3 F.3d 464 (1st Cir. 1993).....................................13

*Parsi* v. *Daioleslam*, 778 F.3d 116 (D.C. Cir. 2015)........................................................15

*Patelco Credit Union* v. *Sahni*, 262 F.3d 897 (9th Cir. 2001)..........................................13

*Pennie & Edmonds LLP*, *In re*, 323 F.3d 86 (2d Cir. 2003)..............................................14

*Resol. Tr. Corp.* v. *S. Union Co.*, 985 F.2d 196 (5th Cir. 1993)..........................................6

*Rothberg* v. *Marger*, Civ. No. 11-5497,
   2013 WL 1314603 (D.N.J. Mar. 28, 2013) ......................................................18, 19

*Ted Lapidus, S.A.* v. *Vann*, 112 F.3d 91 (2d Cir. 1997).....................................................15

*TFT-LCD (Flat Panel) Antitrust Litig.*, *In re*, Civ. No. 10-1064,
   2012 WL 12919129 (N.D. Cal. Nov. 30, 2012) .............................................................13

*United States* v. *Melot*, 768 F.3d 1082 (10th Cir. 2014) ...................................................15

*United States* v. *Taylor*, 166 F.R.D. 356,
   *report and recommendation adopted*,
   166 F.R.D. 367 (M.D.N.C. 1996)...............................................................................16

*Valvoline Instant Oil Change Franchising* v. *RFG Oil, Inc.*,
   Civ. No. 12-2079, 2014 WL 12026073 (S.D. Cal. May 20, 2014) ...........................17

*Vitamins Antitrust Litig.*, *In re*, 216 F.R.D. 168 (D.D.C. 2003)..........................................6

*Zeng* v. *Elec. Data Sys. Corp.*, Civ. No. 07-310,
   2007 WL 2713905 (E.D. Va. Sept. 13, 2007) .....................................................16, 17

*Zuk* v. *E. Pennsylvania Psychiatric Inst.*, 103 F.3d 294 (3d Cir. 1996) ............................15

**STATUTE AND RULES**

28 U.S.C. § 1927.............................................................................................15

Fed. R. Civ. P. 11.................................................................................*passim*

Fed. R. Civ. P. 11(b)(3) .......................................................................*passim*

Fed. R. Civ. P. 11(c)(2)............................................................................14

Fed. R. Civ. P. 11(d) .............................................................................4, 12

Fed. R. Civ. P. 30(b)(6) .......................................................................*passim*

Fed. R. Civ. P. 30(d)(2) .........................................................................9, 13

Fed. R. Civ. P. 37................................................................................9, 12, 13

**MISCELLANEOUS**

Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse*
    (Lexis 2020 update) ...........................................................................15

Jay E. Grenig & Jeffrey S. Kinsler, *Handbook of Federal Civil Discovery
    and Disclosure* (4th ed. West July 2020 update)...................................5, 16

On April 26, the Court ordered the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP to show cause why it should not be sanctioned under Federal Rule of Civil Procedure 11(b)(3) for statements made in defendants' briefing on the parties' cross-motions for sanctions regarding the conduct of plaintiffs' counsel at the Rule 30(b)(6) deposition for ExxonMobil Indonesia Inc.

We respectfully submit this response.

## PRELIMINARY STATEMENT

At the outset, Paul, Weiss apologizes that it took an approach the Court disapproves of in the deposition at issue and in the briefing that followed.  Paul, Weiss and defendants in this action take seriously the Court's ruling, admonition, and the relief already awarded. For the reasons set forth below, however, we do not believe that the conduct at issue warrants Rule 11 sanctions.

This year marks the 20th year of this litigation.  The case concerns allegations regarding a decades-old project at a facility in Indonesia that ceased operations years ago. There are few remaining employees at defendants Exxon Mobil Corporation or ExxonMobil Indonesia Inc. (EMOI) with any personal knowledge of the project during the relevant time period.

The noticing of two new Rule 30(b)(6) depositions last year thus posed a distinct challenge for defendants and their counsel at Paul, Weiss.  For EMOI alone, plaintiffs noticed 34 broad deposition topics and subtopics, most relating to the time period 1999 to 2001.  Defense counsel was unable to find any corporate representative with personal knowledge of the wide array of topics covered.

1

Defendants ultimately selected Mark Snell as their designee for both depositions. Mr. Snell currently serves as the general counsel for all ExxonMobil affiliates in the Asia Pacific region. He has deep personal experience in the region and has spent several years as general counsel of EMOI and additional time at various other ExxonMobil affiliates. But he lacked personal knowledge of the vast majority of the noticed deposition topics, and he did not join EMOI until almost a decade after the events in question transpired.

Defense counsel was aware that parties are often reprimanded when their Rule 30(b)(6) representatives cannot sufficiently answer the deposing party's questions and that there is generally an obligation to educate a Rule 30(b)(6) witness on the designated topics. Defense counsel thus began meeting with Mr. Snell five months before the deposition in order to ensure that he could respond substantively and accurately to each of the noticed topics. But he could not do so without the assistance of notes, given his lack of personal knowledge, the number of broad deposition topics, and the vast amount of potentially responsive information that he would otherwise need to memorize.

Defense counsel and Mr. Snell thus worked together to prepare notes that would enable him to answer questions about which he had no personal knowledge. Defense counsel believed that, under the circumstances, it was appropriate for the witness to rely on the notes in his testimony, given the age of the events in question and his lack of personal knowledge. Defense counsel organized the notes by deposition topic number because, in the previous round of Rule 30(b)(6) depositions, plaintiffs' counsel had roughly followed the topics.

When the Rule 30(b)(6) deposition for EMOI began, it quickly became apparent that the parties and their counsel had differing views of how the deposition should proceed.

In defense counsel's view, the best way for Mr. Snell to provide information responsive to the noticed topics was for plaintiffs' counsel to identify questions by topic number and then for Mr. Snell to refer to his notes.  In plaintiffs' counsel's view, deposing counsel need not identify questions by deposition topic when asked, and the notes on which Mr. Snell relied were narratives prepared by counsel and thus untrustworthy.

Tensions flared at the deposition as a result of those differing views.  The defense attorney defending the deposition, Ms. Alex Oh, believed, based on her prior knowledge and her team's research, that Mr. Snell's use of notes was proper and that plaintiffs' counsel's refusal to identify questions by deposition topic was itself frustrating the ability of the witness to provide responsive answers to plaintiffs' counsel's questions.  Plaintiffs' counsel viewed Ms. Oh's position as improper and sanctionable.  Ms. Oh bristled at plaintiffs' counsel's suggestion and, based on her personal experience and perception of the conduct at the deposition, believed him to be acting aggressively and condescendingly.

The Court has reviewed the transcript and video recording of the deposition and determined that plaintiffs' expectations regarding the appropriate conduct of the deposition were correct.  Defendants and their counsel do not contest the discovery remedies imposed by the Court, and they have already scheduled the new Rule 30(b)(6) sessions.

In determining whether sanctions are warranted under Rule 11(b)(3), however, the context in which defense counsel's statements arose is crucial.  The statements in defendants' briefing about the conduct of plaintiffs' counsel were made from the perspective of attorneys who believed in good faith that Ms. Oh and Mr. Snell had acted properly in preparing for and conducting the deposition.  Indeed, defense counsel's sincerely held view was that a Rule 30(b)(6) deposition of a corporate representative with

3

no personal knowledge of events that happened two decades ago would be effectively meaningless unless the witness could rely on notes.  Believing its actions to have been proper, defense counsel viewed plaintiffs' counsel's conduct as inappropriate.

It is true that defense counsel characterized plaintiffs' counsel's conduct using sharp and pointed language.  Defense counsel regrets using that language.  But defense counsel genuinely believed that its descriptions fairly captured the tense and occasionally personal nature of the exchanges between opposing counsel, the first-hand experience of which was not entirely captured by the video the Court reviewed.  Defense counsel would not have made those statements and directed the Court to relevant portions of the record if they did not believe the statements were supported.

Under these circumstances, defense counsel respectfully submits that Rule 11 sanctions are not warranted.  As a preliminary matter, Rule 11(d) excludes discovery motions like those at issue here from Rule 11's scope.  But even if Rule 11 did apply, sanctions would still not be warranted.  Defense counsel was not attempting to mislead the Court or in any way hamper the judicial process by characterizing the conduct of plaintiffs' counsel as it did.  Rather, defense counsel's statements described plaintiffs' counsel's behavior as defense counsel honestly and in good faith perceived and remembered it. Defense counsel's statements were not statements of historical fact; they were argumentative statements of opinion made in the zealous representation of its client.  As to each assertion, defense counsel provided record support, knowing that the Court would review the citations carefully.  Defense counsel regrets that it characterized the record in a way with which the Court did not agree, but counsel respectfully submits that the facts here do not justify the imposition of Rule 11 sanctions.  Defense counsel takes to heart the

Court's admonition that counsel should "conduct themselves in a manner befitting their profession."  ECF No. 798, at 32.  Defense counsel is committed to proceeding in a spirit of cooperation with opposing counsel going forward.

## RELEVANT BACKGROUND

### A.    The Rule 30(b)(6) Deposition of Mark Snell

1.    In October 2020, plaintiffs served final Rule 30(b)(6) deposition notices for defendants Exxon Mobil Corporation and EMOI.  *See* ECF No. 780-3, Exs. 1–2.  Including subparts, the EMOI notice contained 34 broad topics.  Most of the topics related to defendants' natural-gas facility in Aceh, Indonesia, during the time period of 1999 to 2001; some were broader, seeking, for example, EMOI's "knowledge of abuses" by "Indonesian military personnel, including any history or reputation for such abuses" from 1998 to 2002.  *Id.*, Ex. 2, at 3; *see id.* at 3–9;  ECF No. 776-2, Ex. B, Tr. 14:2–6 (Snell Tr.).

When working with defendants to identify the appropriate corporate representatives for each deposition, defense counsel was unable to identify any current employee who could testify about the noticed deposition topics from personal knowledge.  *See* Oh Decl. ¶ 10.[1]  Former employees who may have relevant knowledge responsive to certain topics were unresponsive or unwilling to spend the time to sit for depositions.  *Id.*

Counsel was also aware of case law holding that, "[w]hen a witness is designated by a corporation to speak on its behalf, producing an unprepared witness is tantamount to a failure to appear that is sanctionable under [Federal Rule of Civil Procedure] 37(d)."  Jay E. Grenig & Jeffrey S. Kinsler, *Handbook of Federal Civil Discovery and Disclosure*

---

[1] Citations of the "Oh Decl." refer to the Declaration of Alex Young K. Oh dated May 6, 2021, to be filed in connection with Ms. Oh's response to the Court's order to show cause.

§ 5:8  & n.6 (4th ed. West July 2020 update) (collecting cases); *see, e.g.*, *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003); *Black Horse Lane Assoc., L.P.* v. *Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000); *Resol. Tr. Corp.* v. *S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).  Defense counsel concluded that, under the circumstances, it was reasonable and appropriate for EMOI to designate a witness who had no personal knowledge of the facts but was prepared to testify substantively and accurately regarding each of the noticed deposition topics.  Oh Decl. ¶ 9, 10.

2.      Defendants designated Mark Snell to serve as their corporate representative for both depositions.  Mr. Snell is the current regional general counsel of the Asia Pacific region for ExxonMobil and its affiliates.  *See* Snell Tr. 7:22–8:4.  Mr. Snell previously served as EMOI's general counsel in Jakarta for over four years and has worked for various affiliates of ExxonMobil for more than 20 years.  *See id.* at 8:7–9:4.  He did not join EMOI until 2007, however, and he lacked personal knowledge responsive to the vast majority of the noticed deposition topics.  *See id.* at 8:15–9:4.

Defense counsel began preparing Mr. Snell in September 2020, five months before the deposition was scheduled.  *See* Snell Tr. 10:17–23.  Mr. Snell, who is based in Singapore, met with counsel by videoconference for over 30 hours.  *See id.* at 10:17–11:20.  Mr. Snell also spent over 40 hours reviewing some 40 binders of documents including deposition transcripts, e-mails, and correspondence.  *See id.* at 12:6–11.  In addition, Mr. Snell spoke with two former employees of EMOI:  the country manager for the entire relevant time period and the principal security adviser on the ground in Aceh.  *See id.* at 159:9–11.

In defense counsel's opinion, no witness (Mr. Snell included) could substantively and accurately respond to each one of the 34 noticed deposition topics for EMOI by memory alone. *See* Oh Decl. ¶ 10. Defense counsel concluded that, under the circumstances, it was reasonable to equip Mr. Snell with notes of information gathered by the company and its counsel. *Id.* Based on a review of relevant case law, defense counsel also believed that there was no prohibition on a corporate representative reading from or otherwise relying on his notes to provide responsive information during the deposition. *Id.* at ¶ 11.

Defense counsel and Mr. Snell thus worked together to create a set of notes that Mr. Snell could bring with him to the Rule 30(b)(6) deposition. *See* Oh Decl. ¶ 15; Snell Tr. 71:10–19; *see* ECF No. 776-2, Ex. D (Mr. Snell's notes). Defense counsel organized those notes by topic in order to ensure that the deposition proceeded efficiently. *See id.* During three other Rule 30(b)(6) depositions taken previously in this case, plaintiffs' counsel, upon request, had identified the topic to be discussed before asking questions and sometimes asked the witness to state the information generally known to the corporate party about the relevant topic. Oh Decl. ¶ 12.

Mr. Snell's notes ultimately spanned 85 pages, and they contained detailed, substantive information, including sworn testimony, which was directly responsive to the noticed deposition topics. ECF No. 776-2, Ex. D; *see id.* at 42 (compiling information responsive to Topic 5, which concerned EMOI's knowledge of plaintiffs' claims); *id.* at 62–70 (compiling information responsive to Topic 8(a), which concerned the ownership, operations, and corporate structure of MAAPL). Defense counsel did not plan for Mr. Snell to respond by reading information from the notes that was nonresponsive to the

specific question; it expected him to refer to the notes as necessary and helpful.  Oh Decl. ¶ 21.  The notes themselves stated on the first page of each deposition topic that they were for "reference only" and were "not intended to be an exhaustive answer on behalf of EMOI."  *See, e.g.*, ECF No. 776-2, Exh. D, at 6, 10, 12.

3.      Ms. Alex Oh defended the Rule 30(b)(6) deposition of EMOI.  At the time, Ms. Oh was a partner at Paul, Weiss.  On April 22 of this year, Ms. Oh resigned from Paul, Weiss to accept a position with the federal government.  *See* Oh Decl. ¶ 2.  Ms. Oh resigned from that position on April 28, following the issuance of this Court's April 26 order.  *See id.*

Once the EMOI deposition began, it quickly became clear that Ms. Oh and plaintiffs' counsel had differing views of how the deposition should proceed.  Early in the deposition, Mr. Snell asked plaintiffs' counsel to identify the deposition topic to which an exhibit marked by plaintiffs' counsel pertained.  Snell Tr. 16:8–9.  Plaintiffs' counsel declined.  *Id.* at 16:10–18.  Ms. Oh expressed the view that plaintiffs' counsel should identify his questions by deposition topic when asked by Mr. Snell and that failure to do so would "mislead the witness by concealing the topic."  *Id.* at 16:24–17:3.  Soon thereafter, Mr. Snell read a portion of his prepared notes as a response to one of plaintiffs' counsel's questions; plaintiffs' counsel moved to strike the answer as nonresponsive, expressing his view that Mr. Snell was "filibustering" and engaging in "improper" and "sanctionable" conduct.  *See id.* at 27:24–29:25, 34:18–22.

Thus, within the first hour of the deposition, Ms. Oh believed that plaintiffs' counsel was accusing her of sanctionable conduct even though she believed, based on both research and past experience, that she and the witness were attempting to provide

responsive answers to questions on wide-ranging topics in a permissible and previously agreeable manner.  Oh Decl. ¶ 17; Snell Tr. 34:18–22.

The two disputes that arose early on—whether plaintiffs' counsel should organize or identify his question by topic, and whether Mr. Snell was allowed to rely on and read from his notes—pervaded the deposition.  *See, e.g.*, Snell Tr. 47:16–25, 207:10–210:2, 322:7–24 (disputes regarding identification of the deposition topic); *id.* at 59:8–73:21, 94:15–96:20, 172:24–176:5, 225:18–229:25 (disputes regarding the use of notes).  Both sides made numerous objections regarding those issues and disputed the other's interpretation of the rules governing the appropriate conduct of Rule 30(b)(6) depositions. *Id.* at 34:12–37:15, 39:24–40:14, 70:10–71:9.  As tensions rose at the deposition, the attorneys accused each other of lacking "professional" decorum; engaging in "sanctionable" conduct; deploying "improper" litigation tactics; and delaying the litigation unnecessarily.  *Id.* at 26:18–23, 34:12–22, 78:2–21, 209:5–210:15.  Both plaintiffs' counsel and Ms. Oh stated their beliefs that the video would demonstrate that the other attorney was acting improperly.  *See id.* at 182:21–183:7, 208:13–210:20.

B.      **The Cross-Motions for Sanctions**

1.      Nine days after Mr. Snell's deposition, plaintiffs filed a motion to compel discovery and to impose sanctions under Federal Rules of Civil Procedure 30(d)(2) and 37. *See* ECF No. 776-2.  Among other things, plaintiffs contended that EMOI and defense counsel planned for Mr. Snell to read from his notes and provide nonresponsive answers to questions in an effort to frustrate the deposition.  *See id.* at 2, 34–40.  Plaintiffs further asserted that Ms. Oh had falsely accused their counsel of becoming agitated and raising his

voice during the deposition.  *See id.* at 39.  Plaintiffs' counsel, they stated, had been "calm and entirely professional" throughout the deposition.  *Id.* at 6, 39.

Defendants opposed plaintiffs' motion and filed a cross-motion for sanctions.  *See* ECF No. 780-2.  Defendants viewed plaintiffs' request for sanctions as "offensive," strongly disputing that they had planned to disrupt the deposition, and instead contending that they and Mr. Snell had taken "their responsibilities seriously and prepared in good faith to respond to each of the deposition topics."  *Id.* at 23, 28.  Mr. Snell had relied on his notes, defendants stated, in order to answer plaintiffs' questions as completely and accurately as possible despite his lack of personal knowledge of the events in question.  *See id.* at 6–8, 16.

Defendants sought sanctions against plaintiffs on the ground that the deposition was not taken in good faith.  Defendants believed that plaintiffs' counsel had acted improperly by refusing to organize or identify his question by deposition topic, by not asking questions about many of the noticed topics, and by badgering Mr. Snell, primarily for his use of notes.  *See* ECF No. 780-2, at 28–31.  Defense counsel believed such a motion was warranted, as counsel believed in good faith that any other approach to the deposition would have resulted in frustration of plaintiffs' ability to receive responsive answers.  Oh Decl. ¶ 9.  Defense counsel further believed that the approach it had taken was supported by the law and that plaintiffs' rejection of that approach was frustrating the discovery process.  *Id.* ¶ 8–11, 17.

In response to plaintiffs' claim that their counsel had remained "calm" and "professional" throughout the deposition, defendants drew the Court's attention to portions of the deposition transcript that defense counsel believed evidenced plaintiffs' counsel

acting in a frustrated, condescending, or hostile manner.  ECF No. 780-2, at 18 & n.20.  In so doing, defense counsel used admittedly pointed language to describe plaintiffs' counsel's conduct.  Defense counsel expressed the opinion that, at certain points in the deposition, it perceived the conduct of plaintiffs' counsel as "agitated," "combative," "unhinged," "indignant," "adversarial," and "aggressive."  *See id.* at 9, 18 n.20, 29; ECF No. 792-2, at 8.  Defendants also stated that plaintiffs' counsel had "lashed out" at Mr. Snell; "repeatedly attacked and baselessly threatened to seek sanctions"; engaged in "browbeating and disrespectful behavior"; and "demonstrated a general lack of respect towards a professional adversary."  ECF No. 780-2, at 18 & n.20; ECF No. 792-2, at 13–14.  For each characterization of plaintiffs' counsel's conduct, defendants cited portions of the deposition transcript or video that they believed supported their view of the facts.  *See id.*

2.     The Court granted plaintiffs' motion to compel discovery and impose sanctions and denied defendants' cross-motion for sanctions.  *See* ECF Nos. 798, 799.  The Court ordered new seven-hour depositions for both defendants, as well as an untimed Rule 30(b)(6) session in which a representative for EMOI would be required to provide answers to questions not answered in a satisfactory manner in the February deposition.  ECF No. 799, at 1–2.

Toward the end of the Court's memorandum opinion, the Court addressed defendants' characterizations of the conduct of plaintiffs' counsel.  *See* ECF No. 798, at 30–32.  The Court stated that the evidence cited by defendants did not support their characterizations and that the Court had not located any other support for those characterizations elsewhere in the record.  *Id.* at 31, 32.  The Court *sua sponte* ordered

11

Paul, Weiss and Ms. Oh to show cause why they should not be sanctioned under Rule 11(b)(3), which requires an attorney to have "evidentiary support" for the factual assertions made in a written submission to the Court.  *See id.* at 32; ECF No. 799, at 3.

## FURTHER SANCTIONS ARE NOT WARRANTED

Federal Rule of Civil Procedure 11(b)(3) provides in relevant part that, by filing a "written motion" or "other paper" with a district court, an attorney "certifies to the best of [the attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the factual contentions have evidentiary support."  The Court has ordered defense counsel to show cause why the statements regarding plaintiffs' counsel in defendants' sanctions briefing do not violate Rule 11(b)(3).  *See* ECF No. 798, at 32.

Defense counsel respectfully submits that Rule 11 sanctions are not warranted.  As we show below, Rule 11 does not apply under the circumstances here.  But even if it did, defense counsel attempted to describe its honest and good-faith perception of the conduct of plaintiffs' counsel, providing citations to portions of the record that it genuinely believed supported its characterization of the conduct.  Defense counsel regrets that the Court found the record not to support defense counsel's view but submits that the facts do not present a case for sanctions under Rule 11.

1.     Rule 11(b)(3) applies generally to any "pleading, written motion, or other paper" presented to a court.  Rule 11(d), however, excludes "disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37" from Rule 11's scope. Fed. R. Civ. P. 11(d).  Based on that plain language, discovery motions are governed by "Rules 26 through 37, which are specially designed for the discovery process, . . . rather than the more general provisions of Rule 11."  Fed. R. Civ. P. 11 advisory committee notes

(1993); *see DR Distributors, LLC* v. *21 Century Smoking, Inc.*, Civ. No. 12-50324, 2021 WL 185082, at *70 (N.D. Ill. Jan. 19, 2021); *Leeks* v. *GeoPoint Surveying, Inc.*, Civ. No. 19-562, 2020 WL 3316002, at *3 (M.D. Fla. June 18, 2020), *appeal dismissed*, 838 F. App'x 502 (11th Cir. 2021); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Civ. No. 10-1064, 2012 WL 12919129, at *3 (N.D. Cal. Nov. 30, 2012); *see also Moeck* v. *Pleasant Valley School District*, 844 F.3d 387, 391 n.8 (3d Cir. 2016); *Patelco Credit Union* v. *Sahni*, 262 F.3d 897, 913 n.15 (9th Cir. 2001).  Because all of the briefing in question arose from motions under the discovery rules, Rule 11 does not apply here.  *See* ECF No. 776-2, at 34, 40, 42  (citing Rules 30(d)(2) and 37); ECF No. 780-2, at 15, 27–32 (citing Rule 30(d)(2)).

2.     Even if the Court were to conclude that Rule 11(b)(3) can apply here, defense counsel respectfully submits that sanctions would still not be warranted.  The "extreme punishment" of sanctions is appropriate under that provision only if the factual representations at issue are "sufficiently baseless."  *Hedgeye Risk Mgmt., LLC* v. *Heldman*, 412 F. Supp. 3d 15, 34 (D.D.C. 2019).  Some factual "support" is sufficient to satisfy the rule.  *See Lucas* v. *Duncan*, 574 F.3d 772, 778–79 (D.C. Cir. 2009).  For example, where each of a party's factual statements is "followed by record citations indicating which evidence" the party "thought supported the statement," sanctions are not warranted because there is "no possibility that the reader would be misled."  *Id.*

In addition, Rule 11 "neither penalizes overstatement nor authorizes an overly literal reading of each factual statement."  *Navarro-Ayala* v. *Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993).  Rule 11 sanctions are inappropriate for "one-sided characterizations" of the evidence that have some grounding in fact.  *Id.*  Nor are sanctions warranted for

inferences drawn from the factual record.  *See Lucas*, 574 F.3d at 778–79.  The "absence of any evidence of bad faith or an improper purpose" further weighs against imposition of sanctions under Rule 11(b)(3).  *Hedgeye Risk Mgmt.*, 412 F. Supp. 3d at 34; *cf. Kiobel* v. *Millson*, 592 F.3d 78, 83 (2d Cir. 2010); *Forrest Creek Assocs., Ltd.* v. *McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1245 (4th Cir. 1987).

Finally, plaintiffs themselves did not seek Rule 11 sanctions against defense counsel, meaning that defense counsel did not have the opportunity to avail itself of Rule 11's safe-harbor provision.  *See* Fed. R. Civ. P. 11(c)(2).  That provision is specifically available to allow parties to work out their differences without court involvement and to avoid the risk of chilling attorneys from providing zealous representation to their clients.  *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003).  Recognizing those concerns, a number of courts of appeals have required a heightened showing of subjective bad faith before imposing Rule 11 sanctions *sua sponte*.  *See id.* at 90 (noting that *sua sponte* Rule 11 sanctions are "akin to contempt"); *Kaplan* v. *DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (applying an "akin to contempt" standard); *Hunter* v. *Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (same).  The D.C. Circuit has never ruled on whether subjective bad faith is necessary to impose sanctions *sua sponte*, *see Lucas*, 574 F.3d at 776, but defense counsel submits that the better approach is to require such a finding, *see, e.g.*, *Pennie & Edmonds*, 323 F.3d at 90–91.

The Court has not indicated that it intended to impose sanctions for defense counsel's statements on any basis other than Rule 11(b)(3), and courts have held that a party must receive "specific notice" of the "sanctioning authority being considered" before

14

sanctions are imposed.  *Ted Lapidus, S.A.* v. *Vann*, 112 F.3d 91, 96–97 (2d Cir. 1997); *see Animal Welfare Inst.* v. *Feld Ent., Inc.*, 944 F. Supp. 2d 1, 19 (D.D.C. 2013); *United States* v. *Melot*, 768 F.3d 1082, 1085 (10th Cir. 2014); *Cook* v. *American S.S. Co.*, 134 F.3d 771, 775 (6th Cir. 1998); *Zuk* v. *E. Pennsylvania Psychiatric Inst.*, 103 F.3d 294, 298 (3d Cir. 1996); *Level 3 Commc'ns, LLC* v. *United States*, 724 F. App'x 931, 935 (Fed. Cir. 2018). While the Court noted in its memorandum opinion that it has the authority to impose sanctions under its inherent authority, *see* ECF No. 798, at 10, the Court did not indicate that it was considering sanctions on that basis for defense counsel's statements.  *See* ECF No. 798, at 32 (citing only Fed. R. Civ. P. 11(b)(3)).  Nevertheless, defense counsel notes that sanctions under the Court's inherent authority must be supported by a finding of "bad faith by clear and convincing evidence."  *Parsi* v. *Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015).[2]

Under the foregoing standards, defense counsel respectfully submits that it should not be sanctioned under Rule 11(b)(3) (or any other basis) for the statements it made about plaintiffs' counsel in the briefing on the cross-motions for sanctions.

a.      Defense counsel acted in good faith to describe the actions of plaintiffs' counsel at Mr. Snell's deposition as defense counsel honestly perceived them.

---

[2] The only other potential basis for sanctions that could theoretically apply (other than inherent authority) is 28 U.S.C. § 1927, which permits sanctions for "multipl[ying]" proceedings "unreasonably and vexatiously."  Section 1927 applies to behavior such as filing "repetitive motions," *Braunstein* v. *Ariz. Dep't of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012), or time-barred lawsuits, *see* Gregory P. Joseph, 1 *Sanctions: The Federal Law of Litigation Abuse* § 23(B)(1) (Lexis 2020 update) (listing additional examples), and it requires acting in bad faith, *see LaPrade* v. *Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998).  On its face, therefore, Section 1927 does not apply to the conduct referenced by the Court.

As defense counsel has explained, it believed that defendants were in a quandary when a new round of Rule 30(b)(6) depositions were noticed last year.  Plaintiffs' deposition notice for EMOI listed 34 broad topics (including subtopics) relating to conduct that took place 20 years earlier, and defense counsel was unable to identify any current employee who could testify about the noticed topics from personal knowledge.  *See* ECF No. 780-3, Exs. 1, 2; Oh Decl. ¶ 10.  Defense counsel confirmed through research that, "[w]hen a witness is designated by a corporation to speak on its behalf, producing an unprepared witness is tantamount to a failure to appear that is sanctionable under [Federal Rule of Civil Procedure] 37(d)."  Jay E. Grenig & Jeffrey S. Kinsler, *Handbook of Federal Civil Discovery and Disclosure* § 5:8 & n.6 (4th ed. West July 2020 update) (collecting cases); *see* Oh. Decl. ¶ 9.  Courts have recognized that "it is not uncommon to have a situation" where "a corporation indicates that it no longer employs individuals who have memory of a distant event."  *United States* v. *Taylor*, 166 F.R.D. 356, 361 (Magis. J.), *report and recommendation adopted*, 166 F.R.D. 367 (M.D.N.C. 1996).  But that does "not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."  *Id.*

Defense counsel concluded that, under the circumstances, it was reasonable and defensible for Mr. Snell to read from and otherwise rely on his notes where necessary during the Rule 30(b)(6) deposition for EMOI.  *See* Oh. Decl. ¶ 8–10.  Case law supported that approach, as the Court noted in its memorandum opinion.  *See* ECF No. 798, at 17; *see also Zeng* v. *Elec. Data Sys. Corp.*, Civ. No. 07-310, 2007 WL 2713905, at *4 (E.D. Va. Sept. 13, 2007) (approving of the use of a summary and compiled materials prepared by counsel); *Jones* v. *Bank of Am., N.A.*, Civ. No. 14-11531, 2015 WL 1808916, at *6 (S.D.

W. Va. Apr. 21, 2015) (acknowledging without disapproval the use of notes at a Rule 30(b)(6) deposition); *Valvoline Instant Oil Change Franchising* v. *RFG Oil, Inc.*, Civ. No. 12-2079, 2014 WL 12026073, at *4–5 (S.D. Cal. May 20, 2014) (similar).  Thus, defense counsel concluded that the use of notes is "consistent with the purpose of Rule 30(b)(6)." *Zeng*, 2007 WL 2713905, at *4.

Defense counsel's characterizations of the conduct of plaintiffs' counsel at the Rule 30(b)(6) deposition were made from the perspective of attorneys who believed in good faith that both Ms. Oh and Mr. Snell had acted properly and that plaintiffs' counsel had acted improperly.  Defense counsel did not attempt to mislead the Court or to conceal relevant facts.  To the contrary, defense counsel described specific statements by plaintiffs' counsel and directed the Court to precise passages in the deposition transcript and video that defense counsel believed justified its characterizations.  *See Lucas*, 574 F.3d at 778. Defense counsel did so with awareness that the Court had access to the full transcript and video, and would judge the record of the deposition for itself.  *See* ECF No. 776-2, Exs. B, C.[3]  And in fact, the Court recognized that there were at least three instances of plaintiffs' counsel raising his voice to ask Ms. Oh not to interrupt him.  *See* ECF No. 798, at 31.

Defense counsel would never have made characterizations of the record it felt were unjustified knowing that the Court could easily access the record itself.  Indeed, during Mr. Snell's deposition, Ms. Oh stated several times that the "video" would "make clear" that

---

[3] The Court has noted that the video recording of the deposition "did not show [plaintiffs' counsel's] face or body," requiring the Court to "rely only on audio to characterize his conduct."  ECF No. 789, at 31 n.14.  Defense counsel has been informed by the reporting service that it does not have a video recording of counsel at the deposition. Ms. Oh was also using noise-canceling headphones with an attached microphone, which may have both impacted the volume of the recording of Ms. Oh and permitted her to hear defense counsel more clearly than captured by the recording.  *See* Oh. Decl. ¶ 32.

plaintiffs' counsel's behavior was improper.  *E.g.*, Snell Tr. 208:19–20.  Ms. Oh's repeated references to the video—and her statements regarding the conduct of plaintiffs' counsel in real time—demonstrate her sincere belief that the record would vindicate both her first-hand perception of the deposition and her characterizations of the events that transpired. Such good-faith representations about the record, even if unconvincing in hindsight, do not merit the "extreme punishment" of Rule 11 sanctions.  *See Hedgeye Risk Mgmt.*, 412 F. Supp. 3d at 34.

b.      Defense counsel admits that it used sharp and pointed language to describe the conduct of plaintiffs' counsel at Mr. Snell's deposition.  In so doing, however, defense counsel was responding in good faith to what it perceived as plaintiffs' mischaracterization of their counsel's demeanor as "calm" and "professional" when accusing defense counsel of deliberately impeding and frustrating the deposition.  Defense counsel had spent a significant amount of time in a good-faith effort to prepare Mr. Snell to answer any questions about any of the noticed topics as completely and accurately as possible.  Defense counsel was thus deeply frustrated when plaintiffs' counsel claimed not only that Mr. Snell's preparation was insufficient and his answers were inappropriate but also that defense counsel's months of work and conduct at the deposition were so improper as to warrant sanctions.  Defense counsel sought to describe its honest perception of the tone of plaintiffs' counsel's statements and conduct.

While defense counsel regrets using such sharp language, courts have recognized that honest, though subjective, characterizations of facts are not the proper subjects of Rule 11 sanctions.  Such characterizations are not "strictly [] factual assertion[s]" but rather are "inherently argumentative in nature and no grounds for sanctions."  *Rothberg* v.

*Marger*, Civ. No. 11-5497, 2013 WL 1314603, at *2  (D.N.J. Mar. 28, 2013); *see Chum Ltd.* v. *Lisowski*, Civ. No. 98-5060, 2001 WL 243541, at *14 (S.D.N.Y. Mar. 12, 2001); *cf. Lucas*, 574 F.3d at 777 (holding that "inferences" drawn from the factual record did not warrant sanctions under Rule 11(b)(3)).  That is particularly so where, as here, the characterization is not of record evidence in support of either party's claims or defenses, but instead of opposing counsel's conduct or demeanor in the context of a long and contentious litigation.

Defense counsel understands and regrets that the Court did not find defense counsel's characterizations to be supported.  But given the extensive exhibits and record citations referenced in defendants' submissions, defense counsel respectfully submits that there was "no possibility that the reader would be misled" by its characterizations.  *Lucas*, 574 F.3d at 778.  Even where a Court deems a party's statements "selective" or "strained," those statements do not merit sanctions if the party does not "hide" the factual basis for those statements.  *Korn Techs., Inc.* v. *SKC Forspray, Ltd.*, Civ. No. 90-4722, 1990 WL 181131, at *2 (E.D. Pa. Nov. 15, 1990); *cf. Aviation Constructors* v. *Federal Express Corp.*, 814 F. Supp. 710, 716 (N.D. Ill. 1993) (awarding Rule 11 sanctions where the defendant "intentionally concealed" evidence damaging to its counterclaims).

c.      Defense counsel respectfully requests that the Court abstain from imposing additional sanctions in light of defendants' and defense counsel's response to this Court's ruling, and the adequacy of the discovery sanctions already imposed.  Defense counsel do not contest the discovery remedies imposed by the Court.  It has already scheduled the additional Rule 30(b)(6) sessions ordered by the Court and will strictly abide by the Court's instructions in the memorandum opinion and order.

Defense counsel thus submits that this is not a case in which a party or its counsel have shown defiance to court orders or have been generally unmanageable. Defendants and defense counsel do not contest the Court's discovery sanctions, which exceed the sanctions requested by plaintiffs, and are moving forward in a spirit of good faith and cooperation. Defense counsel respectfully ask that the Court take account of the severity and comprehensiveness of the already imposed sanctions, together with defendants' compliance with those terms, and refrain from imposing additional censure and sanctions.

*     *     *     *     *

In its memorandum opinion, the Court stated that it was "confident that it has made clear what it expects and that the defendants will abide by the Court's orders." ECF No. 798, at 21. We wish to assure the Court that its confidence is not misplaced. Paul, Weiss has always striven to treat opposing counsel with respect and civility while zealously defending its clients' interests, and it pledges to redouble its efforts to do so in this case. Even in the presence of distressing allegations of defendants' "complicity in heinous acts," defense counsel takes to heart the Court's admonition to "conduct themselves in a manner benefitting their profession." *Id.* at 32. Defense counsel agrees that "the law *is* a noble profession" and will "behave accordingly." *Id.* at 32, 33.

Defense counsel has already endeavored to put its words into action by readily complying with the Court's discovery sanctions and scheduling the additional Rule 30(b)(6) sessions to begin next week. Defense counsel's communications with plaintiffs' counsel have remained cordial, and defense counsel will endeavor to maintain a cooperative spirit going forward. Defense counsel agrees entirely that the case should be decided "based on the law and the fully developed record, not discovery games," and it

will keep that principle in mind as the litigation proceeds.   *Id.* at 32.   Under these circumstances, defense counsel respectfully submits that additional sanctions are not warranted.

**CONCLUSION**

Sanctions are not warranted against the law firm of Paul, Weiss, Rifkind, Wharton, & Garrison LLP under Federal Rule of Civil Procedure 11(b)(3) for the statements identified in the Court's April 26 memorandum opinion.

Washington, D.C.
May 7, 2021

Respectfully submitted,

/s/ Jaren Janghorbani
Theodore V. Wells, Jr. (Bar No. 468934)
twells@paulweiss.com
Jaren Janghorbani (admitted *pro hac vice*)
jjanghorbani@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  (212) 373-3000

/s/ Justin Anderson
Justin Anderson (Bar No. 1030572)
janderson@paulweiss.com
Mitchell Webber (Bar No. 1024005)
mwebber@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC  20006-1047
Telephone:  (202) 223-7300