# **Exhibit A**

5/5/2021  Zealous Advocacy Meets Corporate Criticism: What Happened With Paul Weiss' Alex Oh and the SEC? | National Law Journal

Case 1:01-cv-01357-RCL   Document 806-1   Filed 05/10/21   Page 2 of 5

# THE NATIONAL LAW JOURNAL

**NOT FOR REPRINT**

🖨 Click to print or Select **'Print'** in your browser menu to print this document.

Page printed from: *https://www.law.com/nationallawjournal/2021/05/04/zealous-advocacy-meets-corporate-criticism-what-happened-with-paul-weiss-alex-oh-and-the-sec/*

## Zealous Advocacy Meets Corporate Criticism: What Happened With Paul Weiss' Alex Oh and the SEC?

"From afar, it appears that this is Twitter mob purity butting up against the time-honored tradition of zealous advocacy, that is in fact required by ethical obligations," said one former chair of a Big Law firm.

By Jacqueline Thomsen | May 04, 2021



*Paul, Weiss, Rifkind, Wharton & Garrison offices in Washington, D.C. Credit: Diego M. Radzinschi/ NLJ*

When former Paul, Weiss, Rifkind, Wharton & Garrison partner Alex Oh abruptly left the Security and Exchange Commission last week, just days after joining to head the agency's enforcement division, it sent the legal community abuzz with questions about what happened.

A recent order from a federal judge raising sanctions in litigation where Oh played a leading role was immediately offered up as a possible explanation. Some progressives cheered her exit, regardless of the cause. And Paul Weiss threw its support behind Oh, with chairman Brad Karp calling her "a person of the utmost integrity and a consummate professional, with a strong ethical code."

While not all the facts are known about Oh's sudden exit from the Biden administration, legal experts said in interviews that a number of factors were likely in play, some of which may have taken place behind the scenes. The possible sanctions in a decades-long lawsuit against Exxon Mobil brought that case up into the limelight, showing that not only were Oh and other Paul Weiss attorneys going to the mat for the oil giant, but were putting on such a strong defense that an ethics question was raised.

In Big Law, that's not necessarily a bad thing. Some clients—especially ones in tricky cases who are looking to defend their reputations—are willing to pay top rates for the best (and most aggressive) legal team they can get. But for a new Democratic administration that is eyeing crackdowns on the top corporations, it might not have been an ideal fit: Oh reportedly didn't explicitly cite the Exxon Mobil case in her resignation note, but referred to a recent situation that could pose an "unwelcome distraction."

"I think most chairs and managing partners of law firms look at that case and would give their right arm to be in many like it. And if they got in those cases, they would do everything they can to zealously represent the clients and navigate for their interests within the bounds of the law and the rules that apply," said Kent Zimmermann, a management consultant who advises Am Law 100 firms.

"I think most people who run law firms look at this as not really a cautionary tale as much as, 'hey, we should have more cases like that,'" he added.

The Exxon Mobil case that Oh worked on has been in federal court for 20 years. Indonesian villagers, currently represented by attorneys with Cohen Milstein Sellers & Toll, allege that security forces hired by the oil company committed atrocities including torture, extrajudicial killings and cruel and inhuman treatment, in violation of the Alien Tort Statute.

The litigation is now in the discovery stages, and it was a deposition by one of Exxon's witnesses that spurred plaintiffs counsel to file (//storage.courtlistener.com/recap/gov.uscourts.dcd.14559/gov.uscourts.dcd.14559.777.0.pdf) a motion for sanctions in late February, alleging that Paul Weiss attorneys repeatedly engaged "in conduct that impeded, delayed and frustrated 'the fair examination of the deponent.'"

 "Defense counsel compounded this misconduct by also making demonstrably untrue accusations about plaintiffs' counsel on the record and threatening to seek sanctions, costs, etc.—i.e., threats that have become a far too frequent tactic in the defendants' playbook," the motion reads.

The Paul Weiss attorneys fought that motion, and filed their own cross-motion for sanctions in March. They alleged the deposition was "a bad faith effort to impose maximum burden on Exxon without any genuine discovery purpose," and that their opposing counsel "have gone on the offensive, making spurious allegations of misconduct against the witness, Exxon and their counsel."

U.S. District Senior Judge Royce Lamberth of the District of Columbia late last month rejected the Paul Weiss effort and sided with plaintiffs counsel in the spat. His opinion is currently sealed, but he directed defense counsel to say by May 14 why they shouldn't face sanctions "for alleging that plaintiffs' counsel was agitated, disrespectful, and unhinged during the deposition despite a lack of record evidence supporting those allegations."

Leah Wortham, a law professor emerita with Catholic University who has worked extensively on legal ethics, said the potential sanctions raised in the Exxon Mobil litigation likely wouldn't have resulted in lawyer discipline that would have blocked Oh from doing her job at the SEC.

"Lawyer discipline rules require lawyers to 'play by the rules' in discovery, expedite litigation, and avoid frivolous claims and disputing of others' assertions," Wortham said. She noted that Lamberth, the presiding judge, ordinarily is the best person to decide whether sanctions are appropriate in the suit, rather than a

discipline proceeding, because the trial judge is most familiar with the record and facts of the case.

The debate over which clients law firms should take on spiked after the 2020 presidential election, as several Big Law firms were criticized (https://www.law.com/americanlawyer/2021/01/07/how-will-history-remember-trumps-big-law-firms/) for their involvement in challenges to the election results. Jones Day sought to distance itself from former President Donald Trump's suits, even as it represented Pennsylvania Republicans in post-election litigation. Other firms, like in the case of Foley Lardner and former partner Cleta Mitchell, parted ways (https://www.law.com/americanlawyer/2021/01/05/foley-lardner-partner-who-sat-in-on-trumps-georgia-call-resigns-from-firm/) with attorneys after it was revealed they were involved in the post-election work.

Hogan Lovells' Neal Katyal also faced backlash from progressives last year as he defended Nestle and Cargill —accused of abetting child slavery—before the U.S. Supreme Court, on the question of whether the Alien Tort Statute blocked the corporations from facing the claims, as Katyal argued it did.

Some in Big Law, including Covington & Burling partner and former Attorney General Eric Holder, came to Katyal's defense. "This was ultimately a dispute about an interpretation of statutory law and not an examination of alleged conduct that endangers the lives of children," Holder wrote in a December piece (https://www.law.com/nationallawjournal/2020/12/29/lawyers-know-better-criticizing-lawyers-for-defending-unpopular-clients-is-risky-disturbing/) published in The National Law Journal. "It is important to understand what issue was joined before the court. And it is important to understand how unfounded criticisms of what lawyers ethically do in one case can have a chilling effect on other lawyers in other situations where they are even more needed."

Keith Wetmore, a managing director for the legal recruiting firm Major, Lindsey & Africa and a former chair for Morrison & Foerster, suggested that those who were already opposing Oh leading the SEC enforcement division because of her background as a corporate attorney could have seized on the recent show cause order as reason for her to not be in the job.

"From afar, it appears that this is Twitter mob purity butting up against the time-honored tradition of zealous advocacy, that is in fact required by ethical obligations," Wetmore said. "And yes, it does appear that Paul Weiss, at least in one judge's eyes, bumped up against the edges of the limits of zealous advocacy, but the allegations that at least are published are merely ones of tone as opposed to an ethical misstep."

He said that, generally, corporate law firms have different practices when they're deciding whether to take on clients that might be unpopular. But he said that going to the top firms is a priority for corporations like Exxon Mobil, which is facing allegations of torture in the lawsuit.

"You don't go to Paul Weiss when you have a hangnail," Wetmore said. "You go to the best firms in the country when the most awful things are being alleged against you."

"In short, Paul Weiss will be just fine," he added.

**Read more:**

**Alex Oh Abruptly Exits SEC After Judge Floats Sanctions in Past Paul Weiss Work** (https://www.law.com/nationallawjournal/2021/04/28/alex-oh-abruptly-exits-sec-after-judge-floats-sanctions-in-past-paul-weiss-work/)

**Alex Oh, 17-Year Paul Weiss Partner, Is Named SEC Enforcement Head** (https://www.law.com/nationallawjournal/2021/04/22/alex-oh-17-year-paul-weiss-partner-is-named-sec-enforcement-head/)

**Copyright 2021. ALM Media Properties, LLC. All rights reserved.**