UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOE I, et al.,

    *Plaintiffs,*

v.

EXXON MOBIL CORPORATION, et al.,

    *Defendants.*

Case No. 1:01-cv-1357-RCL

## MEMORANDUM OPINION

Following its resolution of cross-motions for sanctions stemming from a deposition, the Court ordered defense counsel—specifically the firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP and attorney Alex Young K. Oh—to show cause why they should not be sanctioned for impugning opposing counsel's character without evidentiary support. Order (May 6, 2021), ECF No. 799; *Doe v. ExxonMobil Corp.*, No. 1:01-cv-1357-RCL, 2021 WL 1840649, at *15–16 (D.D.C. May 7, 2021) ("Sanctions Op.").

Upon review of the responses to the show cause order and all other relevant papers of record, the Court will find that Paul Weiss and Ms. Oh violated Rule 11(b)(3) and admonish them for that violation.

### I. BACKGROUND

This litigation arises out of the plaintiffs' allegations that they (or their next-of-kin) suffered human-rights abuses because of the efforts of the defendants—ExxonMobil Corporation and Exxon Mobil Oil of Indonesia ("EMOI")—to secure a natural gas facility in Aceh, Indonesia.

As part of the litigation, the plaintiffs took the Rule 30(b)(6) deposition of EMOI's corporate representative, Mark Snell. In that deposition, Mr. Snell "refused to answer most of the substantive questions posed to him. Instead, he repeatedly read nonresponsive statements verbatim

1

from pre-prepared notes." Sanctions Op. at *1; *see id.* at *4. Following the deposition, the plaintiffs moved for sanctions and, in response, defendants cross-moved for sanctions. *See* Pls.' Mot to Compel and for Sanctions, ECF No. 777; Defs.' Opp'n/Cross-Mot. for Sanctions, ECF No. 782. The Court granted the plaintiffs' motion and denied the defendants'. Sanctions Op. at *16.

The Court also raised concerns about certain allegations that defense counsel made in their filings about opposing counsel Kit Pierson. The Court noted that the following statements had no apparent support in the record:

> Mr. Pierson was "agitated and combative." [Defs.' Opp'n/Cross Mot.] at 12 (citing Snell Tr. 47:16–25, 75:6–13, 207:10–210:2, 322:10–17), 13 (citing Snell Tr. at 34:9–22).
>
> Mr. Pierson "lashed out at the witness." *Id.* at 21 & n.20 (citing Snell Tr. 41:9–42:18; 47:16–48:25; 75:6–76:22).
>
> Mr. Pierson was neither calm nor professional but rather "became unhinged . . . and repeatedly attacked and baselessly threatened to seek sanctions against the witness and counsel." *Id.* at 21, n.20 (citing Snell Tr. 32:19–34:22; 51:20–57:7; 143:20–144:5).
>
> Mr. Pierson engaged in "browbeating and disrespectful behavior." *Id.* at 21 n.20 (citing Snell Tr. 56:19–59:5, 64:2–70:1, 80:11–81:25).
>
> Mr. Pierson became "indignant and adversarial." *Id.* at 32.
>
> Mr. Pierson became "agitated and aggressive." Defs.' Reply at 11 [ECF No. 792].
>
> Mr. Pierson "demonstrated a general lack of respect towards a professional adversary." *Id.* at 16–17 (citing Snell Tr. 26:2–27:3, 29:24–32:18, 34:6–38:6, 174:9–175:6, 184:4–185:13, 207:17–209:14).

Sanctions Op. at *15. The Court stated that "[b]ecause none of the evidence the defendants have cited supports their claims about Mr. Pierson's demeanor and because the Court can locate no support for those claims in the record, the Court has reason to believe that defense counsel violated

2

Rule 11(b)(3). For that reason, the Court will order Ms. Oh and Paul, Weiss, Rifkind, Wharton & Garrison LLP to show cause why it should not impose Rule 11 sanctions on them." *Id.* at *16.

The Court separately ordered "defense counsel to show cause by May 14, 2021 why sanctions should not be imposed under Rule 11(b)(3) for alleging that plaintiffs' counsel was agitated, disrespectful, and unhinged during the deposition despite a lack of record evidence supporting those allegations." Order 3 (Apr. 26, 2021) (citing *id.* at *15–16). By then Ms. Oh had withdrawn as counsel for the defendants and did not receive a notice of electronic filing when the Court docketed its order, so the Court also directed the defendants to serve a copy of the order on Ms. Oh. *Id.*

After the Court unsealed its Memorandum Opinion on the cross-motions for sanctions, both Paul Weiss and Ms. Oh responded. *See* Paul Weiss Resp., ECF No. 804; Oh Resp., ECF No. 805; Oh Decl., ECF No. ¶ 805-1. The plaintiffs also replied to those responses. Pls.' Reply, ECF No. 806. And Paul Weiss and Ms. Oh replied to the reply. Paul Weiss/Oh Reply, ECF No. 807.

The Court describes and addresses the parties' filings only to the extent they address the specific Rule 11(b)(3) issue raised in the show cause order. The limited show cause order did not offer a chance to relitigate the issues resolved in the Court's last opinion, and the Court will not retread that ground here.

Paul Weiss submitted a brief explaining and defending the statements. The firm "apologiz[ed] that it took an approach the Court disapproves of in the deposition at issue and in the briefing that followed," and noted that it "take[s] seriously the Court's ruling, admonition, and the relief already awarded." Paul Weiss Resp. at 5. (To be clear, the issue with the deposition and briefing lies in defense counsels' objectively improper conduct, not in the Court's offended sensibilities.) As to the relevant statements in its briefs, Paul Weiss explained that it cited portions

3

of the deposition transcript that it believed "evidenced plaintiffs' counsel acting in a frustrated, condescending, or hostile manner." *See id.* at 14–15. Paul Weiss asserted that it "acted in good faith to describe the actions of plaintiffs' counsel at Mr. Snell's deposition as defense counsel honestly perceived them." *Id.* at 19. It said that it made its statements from the "perspective of attorneys who believed in good faith that both Ms. Oh and Mr. Snell had acted properly and that plaintiffs' counsel had acted improperly," adding that "[d]efense counsel did not attempt to mislead the Court or to conceal relevant facts." *Id.* at 21. Finally, Paul Weiss expressed its "understand[ing] and regret[] that the Court did not find defense counsels' characterizations to be supported." *Id.* at 23.

Ms. Oh fully adopted the Paul Weiss response. Oh. Resp. at 1. She also presented a declaration in support of that response. In the declaration, Ms. Oh offered a sincere apology:

> I take to heart the Court's admonition that the law is a noble profession, and that attorneys should conduct themselves in a manner befitting that profession. I believe that I have lived by that maxim throughout my 27-year legal career. Other than by plaintiffs' counsel here, I am not aware of any accusations of sanctionable conduct—discovery or otherwise—against me by anyone.
>
> That said, I acknowledge and regret my role in the breakdown of civility that occurred during and after this unfortunate deposition. I have worked on this case for nearly 14 years, firmly believe in the merits of my former clients' case, and have sought to serve my former clients through zealous advocacy. Regrettably, on this occasion, I allowed my strong convictions to get the better of me. I believed in good faith that my approach to the deposition was appropriate, and that my characterizations of opposing counsel's demeanor, based on my personal observations, were fair and supported by evidence. But I regret using the language in question and should have let myself be guided by a higher standard.

Oh Decl. ¶¶ 4–5. She explains that she perceived Mr. Pierson's voice as louder during the deposition because she was using "noise-cancelling headphones." *Id.* ¶ 32. Ms. Oh recounts, "a vivid memory of perceiving the video of plaintiffs' counsel's face and body language as showing

4

anger and irritation in a non-verbal manner, including when counsel appeared to be glaring, shook his head, wore an angry or an irritated expression, and leaned forward." *Id.* According to Ms. Oh, when she submitted the briefs, she believed that her assertions were "supported by my own recollection, the transcript, and the video of the deposition." *Id.* ¶ 40.

In their submission, the plaintiffs argue that Rule 11 sanctions are appropriate. They point to what they characterize as defense counsels' "half-apologies," Pls.' Br. 1, and object to defense counsels' "doubling-down on their aspersions," Pls.' Br. 9. In a trio of declarations, the plaintiffs contest claims that Mr. Pierson displayed anger, glared at anyone, or raised his voice. Pierson Decl. ¶¶ 3, 5, 7, ECF No. 806-3; Fryszman Decl. ¶¶ 6–8, ECF No. 806-4; Chasek-Macfoy Decl. ¶¶ 3–4, ECF No. 806-5.

## II. LEGAL STANDARDS

To "deter baseless filings in district court," Federal Rule of Civil Procedure 11 permits courts to sanction those who engage in specified types of litigation misconduct. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The rule has four subsections.

First, Rule 11(a) requires the presenter—either an attorney of record or an unrepresented party—to sign every paper presented to a court.

Second, Rule 11(b) provides that by presenting a paper, the presenter certifies that he has complied with several duties. Relevant here is Rule 11(b)(3), which imposes two requirements on a presenter: a duty to make "an inquiry reasonable under the circumstances" into the facts and an obligation to believe reasonably that "the factual contentions [in the paper] have or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* Fed. R. Civ. P. 11(b)(3). If a presenter cannot meet either of those burdens, he cannot present the paper.

To determine whether a presenter has violated the twin requirements, courts apply an objective standard of reasonableness and look to the presenter's knowledge when presenting the paper. Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* §§ 6(D)(1)–(2) (6th ed., 2020). In deciding if an inquiry is reasonable under the circumstances, courts look to factors including time pressures, complexity, feasibility of additional investigation, accessibility of information, knowledge, reliance on others, notice, and available resources. *Id.* § 8A. But even if a presenter makes a reasonable inquiry, he still violates Rule 11(b)(3) if he makes a factual allegation that "is utterly lacking in support." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). While a presenter is free to assert litigable issues of fact, Joseph, *supra* § 8(c), he may not present a "baseless statement or deliberate misstatement," *id.* § 9(F). Evidence of a Rule 11(b) violation must be "patently clear." *Indep. Fed. Sav. Bank v. Bender*, 230 F.R.D. 11, 16 (D.D.C. 2005) (quoting *Eastway Constr. Corp.*, 762 F.2d at 254).

Third, Rule 11(c) authorizes courts to sanction Rule 11(b) violations. After providing notice and a reasonable chance to respond, courts may impose "appropriate sanction[s]" on offending presenters. Fed. R. Civ. P. 11(c)(1). Usually, a law firm bears joint responsibility for its attorneys' conduct. *Id.* While courts have broad discretion in imposing sanctions under Rule 11, sanctions may not exceed "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Courts may impose any type of sanction, subject to certain limits. *See generally* Joseph, *supra* § 16(B)(2)–(3).

Fourth, Rule 11(d) exempts "disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37" from its ambit.

## III. ANALYSIS

The Court will first establish that Rule 11 sanctions are available for the papers that defense counsel filed. It will then explain defense counsel violated Rule 11(b)(3). Finally, Court will conclude that admonishment is warranted.

### A. Availability of Rule 11 Sanctions

To begin, the Court determine whether Rule 11 applies to defense counsels' memorandum opposing plaintiffs' motion and supporting defendants' cross-motion and to the reply in support of that cross-motion. That inquiry has two parts. The first is easy: the opposition and reply briefs were papers presented to the Court. They thus fall within the scope of Rule 11(a) and (b). The second is harder: it requires the Court to decide whether the exclusion of discovery "motions" from Rule 11 covers the opposition and reply briefs.

If the opposition and reply briefs are "disclosures and discovery requests, responses, objections, [or] motions under Rules 26 through 37," then Rule 11 does not apply to them. Fed. R. Civ. P. 11(d). They are not disclosures or "discovery requests, responses, [or] objections." But defense counsel argue that they are motions under Rules 30 and 37. Paul Weiss Resp. at 12–13. While that argument has some appeal, it ultimately cannot overcome the text and purpose of Rule 11(d).

The problem with defense counsels' argument is that the relevant statements appeared in a brief, not a motion. That distinction matters. A motion is a written or oral request for a court to enter an order. *See* Fed. R. Civ. P. 7(b); *accord* Motion, *Black's Law Dictionary* (11th ed. 2019) ("A written or oral application requesting a court to make a specified ruling or order."). In contrast, a brief is a "document prepared by counsel as the basis for arguing a case, consisting of legal and factual authorities and the authorities in support of them." Brief, *Black's Law Dictionary* (11th ed. 2019). A motion is often supported by a brief. Indeed, in this Court, a brief must accompany all

7

motions, and parties may also file opposition and reply briefs. *See* LCvR 7.1(a)–(b), (d). And Rule 11(d) excludes discovery motions—but not briefs in support of discovery motions—from the other Rule 11 requirements.

A trio of interpretive canons support that reading of Rule 11(d). First, the whole-text canon directs courts to look to the entire text of a document in construing the meaning of one of its parts. *See, e.g., K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *see generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167–69 (2012). And the whole of the Federal Rules of Civil Procedure confirm that its drafters knew how to distinguish between motions and filings more broadly. They did just that in Rule 11(b), which applies to "a pleading, written motion, or other paper." In contrast, Rule 11(d) is a more narrowly tailored rule applying to an enumerated list: "discovery requests, responses, objections, and motions." In interpreting a document that distinguishes between specific, enumerated types of filings and all filings more broadly, the Court cannot expand the scope of the enumerated list.

Second, Rule 11(d)'s enumerated list brings into play the negative-implication canon, which states that the inclusion of one thing implies the exclusion of others. *See, e.g., Salinas v. U.S.R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021); *see generally* Scalia & Garner, *supra* at 107–11. In promulgating Rule 11(d), the Supreme Court included "discovery requests, responses, objections, and motions" and nothing else. The inclusion of those specific filings implies that other filings—like briefs—are excluded from the rule.

Third, the presumption of consistent usage counsels courts to presume that a word bears the same meaning throughout a text. *See, e.g., Env't Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007); *see generally* Scalia & Garner, *supra* at 170–73. And throughout the Federal Rules of Civil Procedure, a motion refers to a request for a court order together with an expression of its grounds

8

and the relief sought. *See, e.g.*, Fed. R. Civ. P. 7(b). Nowhere in the Rules does a reference to a "motion" include a brief. The Court will not presume that the meaning of "motion" changes in Rule 11(d) alone.

Thus, the text of Rule 11(d) does not cover the opposition and reply briefs.

This holding also tracks the purpose of Rule 11(d): to limit the certification standards and available sanctions for discovery disclosures, requests, responses, objections, and motions to those imposed by Rules 26(g) and 37. *See* Fed. R. Civ. P. 11, advisory committee's note to 2004 amendment. That limitation makes sense for those elements of discovery that are subject to Rules 26(g) and 37 because it avoids duplicative—and potentially contradictory—standards. *See, e.g.*, *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 392 (3d Cir. 2016) (holding that Rule 11 does not apply to statements made during depositions); *Back v. Allstate Ins. Co., Inc.*, No. S:04-cv-5-LKK-CMK, 2005 WL 8176575, at *1 (E.D. Cal. Feb. 22, 2005) (noting that Rule 11 does not apply to expert reports). But because neither Rules 26(g) nor 37 govern briefs in support of discovery motions, extending that limitation to briefs would provide no benefit. Nor would allowing attorneys free range in their discovery briefs serve the purpose of Rule 11 as a whole: deterring baseless filings. *Cf. Shim-Larkin v. City of New York*, No. 16-cv-6099-AJN-KNF, 2019 WL 5199419, at *9 (S.D.N.Y. Sept. 16, 2019) (holding that Rule 11(d) does not apply to motions based in part on Rules 26–37 and in part on other grounds), *aff'd in relevant part*, 2020 WL 5758751 (S.D.N.Y. Sept. 28, 2020). Thus, Rule 11(d) cannot be read to exclude discovery briefs.

The Court acknowledges that other district judges have come to the opposite conclusion. *See, e.g.*, *Lee v. Horton*, No. 2:17-cv-2766-JPM-TMP, 2018 WL 6323081, at *4 (W.D. Tenn. Dec. 4, 2018) (interpreting "motions" to include all legal and factual contentions made in support of motions); *Rogue Wave Software, Inc. v. BTI Sys. Inc.*, No. 16-cv-7772-VM-KNF, 2018 WL

1737132, at *1 (S.D.N.Y. Feb. 16, 2018) (interpreting "motions" to include material "related to" motions); *Bell v. Classic Chevrolet/Buick & BMW, Inc.*, No. 05-cv-2262-NLH, 2007 WL 9797530, at *1 (D.N.J. Sept. 27, 2007) (same); *Avent v. Solfaro*, 223 F.R.D. 184, 187–88 (S.D.N.Y. 2004) (interpreting Rule 11(d) to bar sanctions for any material "relate[d] to discovery disputes"). For the reasons stated above, the Court disagrees.

Rule 11(d) sanctions are available if defense counsel violated Rule 11(b)(3) in their briefs.

### B. Violation of Rule 11(b)(3)

The Court must next determine whether defense counsel violated Rule 11(b)(3). To do so, the Court must find that it is patently clear that defense counsel filed the briefs without first determining that "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Because defense counsel did not identify any statements as requiring more investigation, the Court concerns itself only with whether the contentions had evidentiary support when made.

A reasonable attorney would have reviewed the deposition video before making serious allegations about another attorney's professional conduct. Although defense counsel had access to the video, nothing in the record reflects that defense counsel took that simple step. *See* Defs.' Opp'n/Cross Mot. 12 (citing 1 Snell Video at 25:45–28:38), 13 (citing 1 Snell Video at 1:03:28–1:03:32). Defense counsel were not pressed for time: they had the standard two weeks to oppose the plaintiffs' motion, LCvR 7(b), and essentially unlimited time to file their cross-motion. And defense counsel had reason to return to the video, because the plaintiffs put them on notice that they believed the video did not support the defendants' contentions. *See, e.g.*, Pls.' Reply Supp.

Sanctions Mot. at 13, ECF No. 789. Moreover, as defense counsel noted, they defended the deposition in the middle of the night in a "heated" atmosphere. *See* Oh Decl. ¶¶ 30, 35, 37. Neither condition is conducive to a clear memory of the event, so returning to the video would have assisted defense counsel in providing an objective perspective on the deposition. The video was also indicative of the *evidence* defense counsel could have offered to support their claims. For all these reasons, a reasonable attorney would have reviewed the video. In failing to review the video, defense counsel violated Rule 11(b)(3).

Nor did the evidence that defense counsel presented at the time provide any support for their contentions. Indeed, by citing the transcript, instead of the video, defense counsel provided a misleading account of the deposition. *Compare, e.g.*, Snell Tr. 207:10–210:2 (cited in Defs.' Opp'n/Cross-Mot. 12) (accusing Mr. Pierson of needing to calm down), *with* 4 Snell Video 00:12–2:23 (showing Mr. Pierson's calm and steady voice). The Court will not weigh declarations against counter-declarations to ascertain Mr. Pierson's facial expressions (or lack thereof) during the deposition. Even taking defense counsels' assertions as true, they do not support the claims that:

> Mr. Pierson was neither calm nor professional but rather "became unhinged . . . and repeatedly attacked and baselessly threatened to seek sanctions against the witness and counsel." *Id.* at 21, n.20 (citing Snell Tr. 32:19–34:22; 51:20–57:7; 143:20–144:5).
>
> Mr. Pierson engaged in "browbeating and disrespectful behavior." *Id.* at 21 n.20 (citing Snell Tr. 56:19–59:5, 64:2–70:1, 80:11–81:25).
>
> Mr. Pierson became "indignant and adversarial." *Id.* at 32.
>
> Mr. Pierson became "agitated and aggressive." Defs.' Reply at 11.
>
> Mr. Pierson "demonstrated a general lack of respect towards a professional adversary." *Id.* at 16–17 (citing Snell Tr. 26:2–27:3, 29:24–32:18, 34:6–38:6, 174:9–175:6, 184:4–185:13, 207:17–209:14).

In making these claims without evidentiary support, defense counsel violated Rule 11(b)(3).

## C. Appropriate Sanctions

Even when the Court finds a violation of Rule 11, it has the discretion not to impose sanctions. *See* Fed. R. Civ. P. 11(c). "The imposition of Rule 11 sanctions is not something the [C]ourt takes lightly[;] rather the [C]ourt considers it 'an extreme punishment for filing pleadings that frustrate judicial proceedings.'" *Hedgeye Risk Mgmt., LLC v. Heldman*, 412 F. Supp. 3d 15, 23 (D.D.C. 2019) (quoting *Naegele v. Albers*, 355 F. Supp. 2d 129, 143–44 (D.D.C. 2005)) (quotation marks omitted).

The Court will consider three potential forms of sanctions to punish the Rule 11 violation: monetary penalties, referral to disciplinary authorities, and admonishment. It will conclude that only the last is warranted here.

First, monetary sanctions are effectively unavailable. While Rule 11 expressly authorizes courts to impose monetary sanctions, Fed. R. Civ. P. 11(c)(4)–(5), the Court may go no further than ordering compensation to "the wronged party for 'losses sustained.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017) (quoting *Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994)).[1] Here, the Court has already ordered the defendants to pay all the plaintiffs' expenses incurred in litigating the cross-motion for sanctions. Order at 2–3 (May 6, 2021). As no more compensation is possible, due process permits no further monetary sanctions.

Second, referral to the disciplinary authorities is not warranted. If an attorney's violation of Rule 11 also transgresses ethics rules, the Court may refer the attorney to the relevant disciplinary authority. Rule 3.3 of the D.C. Rules of Professional Conduct requires candor toward the tribunal. It prohibits an attorney from knowingly making or failing to correct a false statement

---

[1] While *Goodyear* considered courts' authority to impose inherent sanctions, nothing in its due process holding suggests that courts may impose punitive monetary sanctions under a statute or rule.

12

of fact to a tribunal. D.C. Rules of Professional Conduct 3.3(a)(1). The Court has not found a knowing violation of that obligation. Thus, the Court will not refer defense counsel to any disciplinary authority. *See* LCvR 83.16(d)(1) (permitting Court to refer attorneys to Committee on Grievances if it believes that the "attorney[s] ha[ve] engaged in conduct which, if substantiated, would warrant the imposition of discipline"); *see also id.* at 8.3(a) (requiring attorneys to refer other attorneys to "the appropriate professional authority" if they know that the other attorneys have violated ethical rules in a manner "rais[ing] a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects").

Third, admonishment is warranted. If a presenter apologizes, admonishment alone often suffices as a sanction for violating Rule 11(b). *See, e.g.*, *In re Kelly*, 808 F.2d 549, 552 (7th Cir. 1986). Ms. Oh has sincerely apologized for her conduct; Paul Weiss has also apologized. Both should have known better than to impugn another attorney's character without reviewing the entire record. And neither should have made those accusations without evidentiary support. The Court cannot allow such misconduct to occur without at least rebuking counsel, especially when the misconduct created a substantial complication in resolving the cross-motions for sanctions.

Defense counsel argue that sanctions are not appropriate for three reasons. None is availing.

First, they argue that they acted in good faith. Paul Weiss Resp. at 19–22. They essentially defend their characterization of Mr. Pierson and explain their conduct in the deposition. But bad faith is not a requirement under Rule 11. *Eastway Constr. Co.*, 762 F.2d at 253 ("Simply put, subjective good faith no longer provides the safe harbor it once did."). Defense counsels' assertion that it "did not attempt to mislead the Court or conceal relevant" facts because it "directed the Court to precise passages in the deposition transcript and video that defense counsel believed justified its characterizations . . . with awareness that the Court had access to the full transcript

13

and video[] and would judge the record of the deposition for itself," Paul Weiss Resp. at 17, is off base. Defense counsel only cited the video twice in their briefs, compared to scores of citations to the transcript. *See* Defs.' Opp'n/Cross Mot. 12 (citing 1 Snell Video at 25:45–28:38), 13 (citing 1 Snell Video at 1:03:28–1:03:32). And defense counsel assumes that its characterization of a cold transcript is irrelevant if the opposing party files a deposition video as an exhibit. That is simply not so. In most cases, courts must rely on counsel to provide candid accounts of depositions when supplying transcripts. And even when the Court has a video, its repeated viewing of a deposition to parse attorneys' tone of voice wastes judicial time and resources. Finally, *Lucas v. Duncan*, which defense counsel cites, is not on point because it held that citations to the record were sufficient to distinguish between direct and circumstantial evidence. 574 F.3d 772, 778 (D.C. Cir. 2009). It did not turn citations to the record into a Rule 11 get-out-of-jail-free card. Defense counsels' claims of good faith offer little support to their cause.

Second, defense counsel argues that subjective statements are not the proper target of Rule 11 sanctions. Paul Weiss Resp. at 18–19. They overread the cases they cite in support of that proposition. Defense counsel cites *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464 (1st Cir. 1993), for the proposition that "Rule 11 'neither penalizes overstatement nor authorizes an overly literal reading of each factual statement.'" Paul Weiss Resp. at 17 (quoting 3 F.3d at 467). But *Navarro-Ayala* actually says that courts must evaluate filings as a whole when considering Rule 11 sanctions and should not nitpick isolated statements. 3 F.3d at 467. (Note the irony in defense counsels' quoting out of context a statement cautioning against quoting out of context.) That rule does not bar sanctions when, as here, offensive statements recur throughout two briefs. Nor do defense counsels' claims about permissible inferences stand up to scrutiny. *See* Paul Weiss Resp. at 17–18, 23 (quoting *Lucas*, 574 F.3d at 777–79). Counsel may only draw an inference if enough

14

evidence to support that inference exists in the record. Finally, the defendants cite two unpublished cases from other district courts: *Chum Ltd. v. Lisowski*, No. 98-cv-5060 (KMW), 2001 WL 243541, (S.D.N.Y. Mar. 12, 2001) and *Rothberg v. Marger*, No. 11-cv-5497 RBK/KMW, 2013 WL 1314603, (D.N.J. Mar. 28, 2013). They draw from those cases the principle that "honest, though subjective, characterizations of facts are not the proper subjects of Rule 11 sanctions." Paul Weiss Resp. at 22–23. *Chum Ltd.* held that, in one instance, misleading but not directly false statements did not merit sanctions. 2001 WL 243541, at *14. It does not support a generalizable rule about subjective statements. So defense counsels' argument rests on *Rothberg* alone. That case held that "a characterization that Plaintiff has 'harassed' Defendant and other parties is not strictly a factual assertion[] but is inherently argumentative in nature and no grounds for sanctions." 2013 WL 1314603, at *2. *Rothberg* provides no support for that conclusory statement. But the Court need not linger on it, because the context of *Rothberg* materially distinguishes it from this case. It dealt with filings that showed nothing "more than the familiar back and forth about disputed issues of material fact attendant to most adversarial proceedings." *Id.* Conversely, the statements here were unsupported and abnormally rancorous, so *Rothberg*'s lenient rule does not apply. Defense counsels' broadly asserted subjective-statements exception to Rule 11 has no basis in case law.

Third and last, defense counsel argues that the sanctions the Court imposed in response to the plaintiffs' motion were adequate. Paul Weiss Resp. at 24–25. While the court criticized defense counsel in its prior opinion, it sanctioned the defendants alone—the clients, not the lawyers. *See* Order (May 6, 2021). Rule 11, however, seeks to deter attorney misconduct. To accomplish that goal, the Court must sanction the attorneys as well.

Thus, the Court will admonish defense counsel as a sanction for violating Rule 11(b)(3).