IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE I, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 01-1357 (RCL/AK) |
| ) | |
| v. ) | |
| ) | |
| EXXON MOBIL CORP., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFFS' MOTION FOR REASONABLE EXPENSES**

Plaintiffs respectfully submit this motion for the "reasonable expenses (including attorney's fees) incurred in litigating their motion to compel and for sanctions, in taking the compelled EMOI testimony, and in preparing for and taking the resumed EMOI deposition" that the Court awarded them in its Order of April 26, 2021, Dkt. 799. Plaintiffs request their lodestar of $186,273.75 for litigating their sanctions motion, their lodestar of $106,485.00 for preparing and taking the compelled EMOI testimony and resumed EMOI deposition, $13,656.25 for preparing this motion, and $7,461.53 in expenses, for a total of $313,876.53.

## I.     STANDARD OF LAW

Courts in the D.C. Circuit award attorney fees based on the lodestar method—that is, counsel are entitled to a reasonable hourly rate multiplied by the number of hours reasonably expended. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 11 (D.D.C. 2008) (Lamberth, J.), *amended in part on other grounds*, 786 F. Supp. 2d 110 (D.D.C. 2011). There is a "strong presumption" that the lodestar represents a reasonable fee. *Id.* "[A]n attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C.Cir. 1993).

## II. ARGUMENT

Counsel's lodestar is reasonable. Plaintiffs' attorneys and their paralegals spent 236.60 hours of compensable time litigating their sanctions motion and 121 hours preparing for and taking the compelled EMOI testimony and resumed EMOI deposition. A detailed accounting of this time is attached as Exhibit A. Counsel spent a reasonable amount of time on these tasks in light of the complexity of this matter, the seriousness of the conduct discussed in Plaintiffs' motion to compel the need to defend frivolous accusations lodged against counsel in Defendants' cross-motion for sanctions, and the potential repercussions to Plaintiffs' litigation position and Counsel's reputations and careers if Defendants' unfounded allegations were not addressed comprehensively and effectively. In order to ensure the facts of what happened at the February 15 EMOI 30(b)(6) deposition were accurately portrayed to the Court—especially in light of the defense's attempts to mischaracterize these facts—Plaintiffs filed a 43-page opening brief along with a 58-page annotation of the EMOI deposition testimony. Following EMOI's cross-motion for sanctions, Plaintiffs filed an additional 43-page reply brief. The Court's own 33-page opinion and 23-page appendix demonstrates Plaintiffs reasonably concluded that their motion and their response to EMOI's cross-motion required a careful and detailed discussion of the events that transpired during and around the February 15 deposition. *See* Dkt. 803. As explained in earlier submissions, this was not a motion Plaintiffs' filed lightly – Plaintiffs understood the seriousness of the conduct and ensuing motion and the importance of providing the Court with a careful and complete description of what had transpired.

Recognizing the seriousness and complexity of the party's dueling motions, Counsel also worked efficiently, billing fewer than 1.5 attorney and paralegal hours per page of their opening brief, annotation, and combined opposition and reply brief. This includes time spent strategizing, planning, researching, drafting, revising, editing, and cite checking both briefs as well as reviewing the deposition testimony and the defense's combined response and cross-motion. This reflects both the efficiency of the work done and the care required given the sensitivity and importance of Plaintiffs' motion and the potential damage the defense's cross-motion posed to counsel's reputation. This work was predominantly and appropriately done by the attorney who served as lead counsel for Plaintiffs at the deposition and was also the subject of Defendants' unfounded allegations.

In calculating their compensable time, Plaintiffs have included $26,285 worth of attorney time related to the briefing on the Court's show-cause order regarding appropriate sanctions. This is time that was spent in support of these sanctions and it would not have been expended but for the defense's deposition misconduct and related misconduct in seeking imposition of sanctions on Plaintiffs' counsel. It was required by the defense's continuing efforts to mischaracterize the demeanor and appropriateness of Plaintiffs' professional conduct during the deposition (inaccurately claiming that Plaintiffs' counsel was angry, glaring and otherwise acting inappropriately during the deposition). These were serious allegations filed on the public record and they required an accurate and appropriate response.

Counsel likewise spent a reasonable amount of time preparing for and taking the compelled testimony and resumed deposition. There is no doubt this litigation is complex. It is governed by Indonesian substantive law and raises complicated questions of personal jurisdiction and corporate-parent liability. The Defendants' answer asserts 65 affirmative defenses. The

EMOI depositions addressed a broad range of issues and thus required extensive preparation on counsel's part. Additionally, the conduct of EMOI's corporate witness during the February 15 deposition meant that significant preparation was required for the resumed depositions. Plaintiffs' counsel not only had to take into consideration the information included and/or referenced in the 85-page, single-spaced "script" that the witness had used at his original deposition, but also had to prepare for the renewed deposition with the understanding that the witness is combative and evasive (which had significant implications, in particular, for the renewed deposition).[1] We note, in this regard, that this does *not* include the very significant time preparing for and then taking Mr. Snell's original deposition, even though Mr. Snell's misconduct "severely, repeatedly, and perversely obstructed" that deposition. Dkt. 803 at 16.[2]

Lastly, Counsel have included $13,656.25 worth of attorney and paralegal time related to preparing this motion. It is well-settled in the D.C. Circuit that "[h]ours reasonably expended on preparing fee petitions are always compensable." *Cobell v. Norton*, 407 F. Supp. 2d 140, 163 (D.D.C. 2005) (Lamberth, J.). Plaintiffs made continuing efforts to keep the costs of the present

---

[1] Before the May 11 deposition of Mr. Snell (addressing questions identified by the Court), Plaintiffs' counsel reviewed the earlier transcript to identify material that had to be read into the record before a question was re-asked (e.g., a question asking a witness if he had been reading his answer would make little sense without including the preceding answer into the record; other questions required contextual material from the earlier transcript in order to make sense) and also tried to avoid re-asking questions that would simply be redundant. This process was handled cooperatively by the parties.

At the subsequent depositions (the renewed EMOI Rule 30(b)(6) deposition and the subsequent EMC Rule 30(b)(6) deposition), the witness continued to present significant challenges. There is no need to litigate those challenges again – the salient point is simply that this was an important, but quite difficult, witness and it required significant preparation to depose him effectively. It is also important to reiterate that both Plaintiffs' counsel and Defendants' counsel have had cooperative and collegial interactions both in the preparation for and the conduct of these depositions.

[2] Plaintiffs' motion for sanctions did not include this time in the request for relief.

motion reasonable. The motion for expenses was primarily prepared by the most junior associate on this case, and tasks were performed by a paralegal where appropriate.[3]

Counsel's lodestar is also based on their reasonable hourly rates. Plaintiffs calculated the lodestar by multiplying their reasonable compensable hours by Counsel's customary hourly rates. These rates are set annually by Counsel's law firm and are Counsel's ordinary and customary rates.[4] These rates reflect Counsel's substantial experience and expertise.[5] They are comparable to the rates set in the LSI *Laffey* Matrix, which the D.C. Circuit has found to be the appropriate benchmark for rates in complex federal litigation in the District of Columbia.[6] *See DL v. D.C.*, 924 F.3d 585, 592 (D.C. Cir. 2019).[7] Moreover, courts across the country have routinely found the rates charged by Counsel's law firm are reasonable. *See, e.g.*, Order & J. at 2-3, *LLE One, LLC v. Facebook Inc.*, No. 4:16-cv-06232-JSW, (N.D. Cal. Jun. 26, 2020) (Dkt. 211); Order at 2, *In re: Resistors Antitrust Litig.*, No. 3:15-cv-3820-JD, (N.D. Cal. Mar. 24,

---

[3] Plaintiffs have excluded time for the depositions expended on purely clerical matters, time spent for more than two attorneys to attend the resumed depositions, and other attorney and paralegal time that would not ordinarily be billed to a client.

[4] Mr. Pierson has only charged lower rates (or no rate) for work for a non-profit organization or pro bono clients.

[5] Short biographies of each attorney and paralegal demonstrating their experience and expertise are attached as Exhibit C. Prior to joining Cohen Milstein in 2009, Mr. Pierson also charged, for many years, market rates for partners of comparable experience at Am. Law 200 firms.

[6] *Compare* Exs. A & C, *with* Ex. D.

[7] Some courts in the D.C. Circuit previously applied the United States Attorney's Office's version of the *Laffey* Matrix over the so-called LSI *Laffey* Matrix. Following years of criticism that the USAO Matrix was not sufficiently keeping pace with the local rise in the cost of legal services, the USAO changed its methodology. *See DL*, 924 F.3d at 590. The D.C. Circuit has since found the USAO's new methodology does not adequately measure customary billing rates for complex federal litigation in the District of Columbia. *Id.* at 592. Courts in the Circuit, including this Court, have thus since abandoned the USAO Matrix in favor of the LSI *Laffey* Matrix. *E.g. Mattachine Soc'y of Wash., DC v. U.S. Dep't of Justice*, 406 F. Supp. 3d 64, 71 (D.D.C. 2020) (Lamberth, J.).

2020) (Dkt. 584); Mem. Op. & Order at 7, *Reynolds v. Fid. Inv. Inst. Op. Co*, No. 1:18-CV-423-CCE-LPA, (M.D.N.C. Jan. 8, 2020) (Dkt. 92); Order at 5, *In re: Air Conditioning Systems*, No. 2:13-cv-2701-MOB, (E.D. Mich. Nov. 22, 2019) (Dkt. 179); Tr. of Civil Cause for Fairness Hr'g at 21:12-20, *In re: Dental Supplies Antitrust Litig.*, No. 16-CV-696-BMC, (E.D.N.Y. June 24, 2019) (Dkt. 350).

### III.   CONCLUSION

Plaintiffs respectfully request the Court grant their Motion for Reasonable Expenses and award them $313,876.53.

Date:  June 23, 2021

Respectfully submitted,

/s/ Kit A. Pierson
Kit A. Pierson (# 398123)
Agnieszka M. Fryszman (# 459208)
Robert W. Cobbs (# 1045579)
Nicholas J. Jacques (#1673121)
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
Suite 500, East Tower
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
afryszman@cohenmilstein.com
kpierson@cohenmilstein.com
rcobbs@cohenmilstein.com
njacques@cohenmilstein.com

Poorad Razavi
**Cohen Milstein Seller & Toll PLLC**
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL. 33410
Tel: (561) 515-1400
Fax: (561) 515-1401
prazavi@cohenmilstein.com

Paul L. Hoffman (*Pro Hac Vice*)
**Schonbrun Seplow Harris Hoffman & Zeldes LLP**

11543 W. Olympic Blvd
Los Angeles, CA 90064
Tel: (310) 396-0731
hoffpaul@aol.com

Terrence P. Collingsworth (# 471830)
**International Rights Advocates**
621 Maryland Ave., N.E.
Washington, DC 20002
Tel: (202) 255-2198

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2021, I electronically filed the foregoing *Plaintiffs' Motion for Reasonable Expenses* with the Clerk of the Court using the ECF, who in turn sent notice to all counsel of record.


Dated:   June 23, 2021                                    /s/ Kit A. Pierson
                                                          Kit A. Pierson