UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JANE DOE I**, *et al.*,

    *Plaintiffs,*

v.

**EXXON MOBILE CORPORATION**, *et al.*,

    *Defendants.*

Case No. 1:01-cv-1357 (RCL/AK)

## MEMORANDUM OPINION

After this Court resolved the parties' cross-motions for sanctions resulting from a deposition, the Court awarded plaintiffs the reasonable expenses and attorney's fees that they incurred litigating these sanctions motions and taking resumed deposition testimony. Order, ECF No. 799. Before the Court are plaintiffs' motion for reasonable expenses, Pls.' Mot, ECF No. 812, defendants' opposition, Defs.' Opp'n, ECF No. 813, and plaintiffs' reply, Pls.' Reply, ECF No. 814. Plaintiffs' motion is ripe for review.

Upon consideration of the parties' filings (including the documentation submitted in support of plaintiffs' request), applicable law, and the entire record, the Court hereby **GRANTS** plaintiffs' motion for reasonable expenses and will award plaintiffs $288,900.78 in expenses and attorney's fees.

### I.  BACKGROUND

This case arises out of human rights abuses that plaintiffs allege they (or their next-of-kin) suffered because of the efforts by defendants ExxonMobil Corporation and Exxon Mobil Oil Indonesia Inc. ("EMOI") to secure a natural gas facility in Aceh, Indonesia. The Court's prior decisions discuss this case's factual background and procedural history at length. *See, e.g.*, *Doe*

*v. Exxon Mobil Corp.*, 391 F. Supp. 3d 76 (D.D.C. 2019); *Doe v. Exxon Mobil Corp.*, No. 01-cv-1357 (RCL), 2019 WL 2348100 (D.D.C. June 3, 2019); *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75 (D.D.C. 2014); *Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16 (D.D.C. 2008); *Doe v. Exxon Mobil Corp.*, No. 01-cv-1357 (LFO), 2006 WL 1193855 (D.D.C. May 3, 2006); *Doe v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20 (D.D.C. 2005).

In August 2020, the Court granted the parties leave to take remote depositions because of the COVID-19 pandemic and compelled defendants to designate representatives to give additional depositions pursuant to Federal Rule of Civil Procedure 30(b)(6).  *See* Order, ECF No. 720.  After the Court issued orders governing scheduling, the scope of the depositions, and the protocol for conducting the depositions remotely, *see, e.g.*, ECF Nos. 750, 751, 758, 767, & 774, plaintiffs noticed a deposition for Mark Snell, ExxonMobil's Asia Pacific regional general counsel.

That deposition—and the conduct of defense counsel during and following that deposition—kicked off the present sanctions litigation.  To summarize briefly, Mr. Snell "severely, repeatedly, and perversely obstructed his own deposition" by refusing to answer questions; "wast[ed] time" by "repeatedly read[ing] long answers directly from his notes"; and provided "inaccurate" and "evasive" answers about whether he was reading from his notes and about who prepared them.  *Doe I v. Exxon Mobil Corp.*, 539 F. Supp. 3d 59, 73–74 (D.D.C. 2021).  The Court concluded that defense counsel shared responsibility for Mr. Snell's conduct.  *Id.* at 75.

After the deposition, plaintiffs canceled the Rule 30(b)(6) deposition of ExxonMobil's designated representative—also Mr. Snell.  *Id.* at 69.  Plaintiffs then moved to compel responsive answers and for sanctions.  *Id.* at 64.  Then, in a move that this Court still considers "astonishing," defendants cross-moved for sanctions, contending that plaintiffs served the deposition notice in bad faith, that plaintiffs' counsel impeded his own deposition of Mr. Snell, and that plaintiffs

2

improperly canceled the subsequent Rule 30(b)(6) deposition. *Id.* at 64, 76. The Court granted plaintiffs' motion and rejected defendants' "meritless" cross-motion. *Id.* at 65. The Court agreed that plaintiffs were entitled to "reasonable expenses (including attorney's fees) incurred in litigating their motion to compel and for sanctions, in taking the compelled EMOI testimony, and in preparing for and taking the resumed EMOI deposition." Order, ECF No. 799.

The Court also ordered defense counsel—specifically the firm Paul, Weiss, Rifkind, Wharton & Garrison LLP and attorney Alex Young K. Oh—to show cause why they should not be sanctioned for impugning opposing counsel's character without evidentiary support. *Id.* After receiving responses from defense counsel and a reply from plaintiffs, ECF Nos. 804, 805, 806, the Court concluded that Ms. Oh and Paul Weiss engaged in litigation misconduct prohibited by Rule 11(b)(3) and admonished them, Order, ECF No. 809.

Plaintiffs have now moved for their expenses and attorney's fees. Pls.' Mot. Their motion reflects $186,273.75 in fees for the sanctions litigation, $106,485.00 in fees for preparing and taking the compelled EMOI testimony and resumed EMOI deposition, $13,656.25 in fees for preparing their fee motion, and $7,461.53 in expenses. *See id.* at 1. Defendants filed an opposition in which they contend (1) that plaintiffs are not entitled to fees for their show-cause response, (2) that the Court should exclude plaintiffs' requested fees based on "vague and generic" time entries, and (3) that the Court should correct two minor mathematical errors totaling $1,236.25 of plaintiffs' request for fees. Defs.' Opp'n 2–5. Plaintiffs filed a reply in support of their motion disputing the level of detail required to justify their request for fees. *See* Pls.' Reply 8–11. They also concede the mathematical errors, agree that an additional 1.25 hours billed by associate Nicholas Jacques (amounting to $631.25) should be struck, and request $9,858.75 in fees for

3

drafting their reply. Pls.' Reply 13 n.4, 17–18. Plaintiffs' total request amounts to $321,867.78 in attorney's fees and costs. *Id.* at 18.

Plaintiffs' motion for reasonable expenses is ripe for review.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 37(a)(5) provides that if a motion to compel "is granted— or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses in making the motion, including attorney's fees." Additionally, Rule 37 vests district courts with "broad discretion to impose sanctions for discovery violations." *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996). Here, the Court determined that awarding plaintiffs' their attorney's fees was not only necessary to penalize defendants, but also to serve as a deterrent for the future. *Doe I*, 391 F. Supp. 3d at 76.

"In general, a trial court enjoys substantial discretion in making reasonable fee determinations." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993). "[A] reasonable fee is one that is 'adequate to attract competent counsel, but that does not produce windfalls to attorneys.'" *West v. Potter*, 717 F.3d 1030, 1033–34 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum*, 465 U.S. at 888 (1984). A strong presumption exists that the product of these two variables—the "lodestar figure"—represents a "reasonable fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

The moving party bears the initial burden of proving that the requested amount of attorney's fees is reasonable. *See, e.g.*, *Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 159 F. Supp. 3d 5, 8 (D.D.C. 2015). "Courts have discretion to adjust the amount

requested in light of specific objections by the opposing party." *Id.* And the Court may reduce awarded fees by a percentage if "a large number of entries suffer from one or more deficiencies." *DL v. District of Columbia*, 256 F.R.D. 239, 245 (D.D.C. 2009).

### III.   ANALYSIS

For the reasons set forth below, the Court finds that plaintiffs are entitled to fees and costs totaling $288,900.78.   First, plaintiffs request $7,461.53 in expenses. *See, e.g.*, Pls.' Mot. 1; ECF No. 812-3 at 2 (listing expenses). Defendants do not object to these expenses, and the Court will award them to plaintiffs. In calculating the attorney's fee award, the Court's analysis proceeds in three steps. First, the Court will determine the "reasonable rate" for plaintiffs' counsels' services. Next, the Court will determine which of the claimed work hours were "reasonably expended on the litigation." Finally, the Court will calculate the lodestar amount and determine the amount of fees to be awarded. That amount is $281,439.25.

#### A. Reasonable Rate

In this Circuit, "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum*, 465 U.S. at 896 n.11). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavit—that the requested rates" align with prevailing rates. *Blum*, 465 U.S. at 896 n.11; *see Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C. Cir. 1995) ("[A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community."). District of Columbia courts generally accept the Matrix from *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 16 (D.C. Cir. 1984), in its

5

updated form, as an accurate reflection of reasonable hourly rates of comparable attorneys in the District. *See Commodity Futures Trading Comm'n*, 159 F. Supp. 3d at 8. But fee indices are "somewhat crude" in general, so fee applicants may also supplement fee indices with evidence of recent fees awarded by courts or paid by clients to attorneys with comparable qualifications and handling similar cases. *Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015) (citation omitted).

Here, plaintiffs represent that the requested rates reflect counsels' customary rates. Pls.' Mot. 5. In support of their argument that these rates are reasonable, plaintiffs compare the requested rates to those in the LSI *Laffey* Matrix, which they attach as an exhibit to their motion. ECF No. 812-5. Plaintiffs also provide counsels' backgrounds, *see* ECF No. 812-4, and cite to orders concluding that the rates charged by plaintiffs' counsels' law firm are reasonable, Pls.' Mot. 5–6. At the end of the day, defendants do not object to—and thus concede—the reasonableness of the requested rates. *See generally* Defs.' Opp'n. The Court will treat plaintiffs' counsels' requested rates as "reasonable" rates when calculating the lodestar amount.

### B. Reasonable Hours

The hours expended on the litigation must also be reasonable under the circumstances. *See Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). The Court will deduct from the lodestar amount fees that were not "reasonably expended." *Id.*

Several principles guide the Court's inquiry as to whether the claimed hours were reasonably expended. First, "[a]ttorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Next, there must be sufficient evidence to justify the number of hours that counsel

claims to have worked. *Id.* A "fee application need not present the exact number of minutes spent[,] nor the precise activity to which each hour was devoted[,] nor the specific attainments of each attorney." *Id.* (internal quotation marks omitted). Nevertheless, "the application must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Id.* If an attorney's time entries "are so vaguely generic" that the Court cannot determine whether the claimed hours were reasonably expended, the movant has not met his burden. *Cobell v. Norton*, 407 F. Supp. 2d 140, 158 (D.D.C. 2005). Third, the requested hours must reflect considered billing judgment. In other words, the requesting party "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.

To begin, the Court will exclude from the lodestar amount fees that were incurred preparing plaintiffs' show-cause filing. The Court's sanctions order awarded plaintiffs their expenses and fees (1) incurred in litigating the motion to compel and for sanctions and (2) related to the compelled depositions. ECF No. 799 at 2–3. Defendants are correct that plaintiffs' show-cause filing is disconnected from these tasks. *See* Defs.' Opp'n 2. Plaintiffs contend that they submitted their show-cause brief to "combat Exxon's continued efforts (on the public docket) to mischaracterize the demeanor and appropriateness of counsel's conduct during the EMOI deposition." Pls.' Reply 17. But as this Court previously stated, "[t]he limited show cause order did not offer a chance to relitigate the issues resolved in the Court's [prior] opinion." *Doe I v. Exxon Mobil Corp.*, No. 1:01-cv-1357 (RCL), 2021 WL 1910892, at *2 (D.D.C. May 12, 2021). And more importantly, the video and transcript of the deposition speak for themselves—defense counsels' claims were baseless. The Court needed no assistance from plaintiffs to reach that

7

conclusion. It was entirely unnecessary to "weigh declarations against counter-declarations to ascertain" plaintiffs' counsel's demeanor during the Snell deposition. *Id.* at *6. So not only were the fees incurred in briefing a show-cause response insufficiently related to the award in the Court's order, plaintiffs' submissions were unnecessary for the Court to conclude that defense counsel violated Rule 11. These fees will be deducted from the lodestar amount.

Plaintiffs claim that their counsel expended $26,285 related to briefing the show-cause order. Pl.'s Mot. 3. The actual amount expended, however, is higher. Attorney Robert Cobbs spent nine hours related to reviewing and preparing the show-cause response billing at $605 per hour, totaling $5,445. ECF No. 812-2 at 2. Attorney Agnieszka M. Fryszman appears to have spent 6.75 hours related to the show-cause briefing[1] billing at $885 per hour, totaling $5,973.75. *Id.* at 3. Attorney Kit Pierson spent seventeen hours related to the show-cause briefing billing at $1,045 per hour, totaling $17,765. *Id.* at 5–6. And paralegal Naomi Chasek-Macfoy spent 1.25 hours billing at $325 per hour drafting a declaration in support of plaintiffs' show-cause briefing, totaling $406.25. *Id.* at 7. Together, these amounts total $29,590, which will be deducted from the lodestar.

Beyond the show-cause briefing, the number of hours that plaintiffs' counsel devoted to the relevant tasks largely appears reasonable. The Court's consideration must take into account not only plaintiffs' submissions in support of their fee request, but also other contextual information, like plaintiffs' substantive filings, the stage of the litigation, the reputational concerns involved in this sanctions litigation, the legal issues presented, and the decision to delegate most of the drafting to the attorney who handled Mr. Snell's deposition.

---

[1] Ms. Fryszman's entries distinguish between sanctions-related billing and deposition-related billing. *Compare* ECF No. 812-2 at 3, *with id.* at 8.

8

Defendants do not contend that the number of hours that plaintiffs' counsel expended were unreasonable, but object that several of plaintiffs' timekeeping entries "are too vague or generic to allow the Court to determine if they are reasonable." Defs.' Opp'n 3–4. Defendants argue that these disputed entries should be excluded in their entirety. *Id.* Many of the disputed entries pertain to reading, researching, or drafting tasks related to the sanctions litigation. *See* Defs.' App'x. Specifically, the parties disagree whether there is sufficient detail in time entries that contain descriptions such as: "review draft sanctions reply/opposition"; "Preparation of sanctions motion; review transcript; review case law; preparation of annotation regarding deposition"; or "Preparation for EMOI 30(b)(6) deposition." ECF No. 812-2 at 2, 5, 8–9; *see* Defs.' Opp'n 4–5; Pls.' Reply 7–14. And both sides muster several examples from case law purportedly supporting their position about the level of detail required in timekeeping entries. *See* Defs.' Opp'n 3–5; Pls.' Reply 8–11, 14.

Most of defendants' objections are without merit. When considering these entries, the Court remains mindful that the "ultimate inquiry is whether the total time claimed is reasonable." *DL*, 256 F.R.D. at 246 (quoting *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006)). First, the Court is persuaded that entries reflecting an attorney's reading the relevant underlying materials—like the Snell deposition transcript or defendants' filings—before working on plaintiffs' filings provide sufficient detail for the Court to conclude that this time spent was reasonably expended. *See* ECF No. 812-2 at 3–5. Next, the Court need not address whether plaintiffs' time entries are independently sufficient when their attorneys' supplemental declarations place beyond doubt the reasonableness of most contested entries. For example, Mr. Jacques explains that on February 22, 2021, he spent additional time reviewing plaintiffs' draft sanctions motion because of subsequent changes that had been added to the draft. Jacques Decl.

9

¶ 4, ECF No. 814-6.  Robert Cobbs provides additional detail about his drafting and editing of plaintiffs' sanctions reply and opposition on March 16 and 17, and about the instructions given to him by partner Kit Pierson.  Cobbs Decl. ¶¶ 3–4, ECF No. 814-5.  And Mr. Pierson provides a 16-page declaration identifying the issues that he considered when preparing plaintiffs' motion to compel and for sanctions, Pierson Decl. ¶¶ 8–12, ECF No. 814-1; explaining his primary responsibility for drafting plaintiffs' motion and response to Exxon's cross-motion, *id.* ¶¶ 13–17, 24; and describing his process for preparing to take the EMOI 30(b)(6) depositions, *id.* ¶¶ 29–39.  A review of these statements, the time records, and the underlying filings provide sufficient detail for the Court to evaluate whether most of the contested entries reflect reasonably expended time.  Except for the entries identified below, plaintiffs have met their burden.

A handful of these contested entries suffer from another descriptive defect that the supplemental declarations do not completely rectify—block billing.  That is, these time entries aggregate the tasks performed into single entries without an indication as to how much time counsel spent on each individual task.  The D.C. Circuit has explained that block billing "make[s] it impossible for the court to determine, with any degree of exactitude, the amount of time billed for a discrete activity," leaving the court "to estimate the reduction to be made because of such insufficient documentation." *In re Olson*, 884 F.2d 1415, 1428–29 (D.C. Cir. 1989).  Some tasks—like research and writing—might necessarily be conducted simultaneously and be appropriately reflected together in a single billing entry.  But several entries in plaintiffs' submitted time records reflect wholly distinct tasks, like telephone conferences and reviewing deposition transcripts.  *See* ECF No. 812-2 at 5 (Kit Pierson entries for February 16 and 17).[2]  The Court will apply a

---

[2] While Kit Pierson's billing entry for February 15, 2021, also reflects improper block billing, defendants forfeited any objection to the reasonableness of these expended hours by not challenging it in their opposition.

percentage reduction to these entries, rather than excluding them in their entirety, because of the extended explanation in the supplemental declarations listing work done during this time. *See, e.g.*, ECF No. 814-1 at 6.

Finally, the Court will apply a reduction to hours that do not reflect accurate, contemporaneous billing. On March 22, 2021, attorney Robert Cobbs billed two hours to "[r]eview edits to sanction motion," ECF No. 812-2 at 2—but that motion was filed on February 23, 2021, *see* ECF No. 777. Cobbs explains in his declaration that this entry was misdated and mislabeled—it should instead state "March 20, 2021" and refer to plaintiffs' "opposition and reply." Cobbs Decl. ¶ 7. The Circuit has made clear that attorneys should maintain "contemporaneous, complete, and standardized time records which *accurately* reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327 (emphasis added). But this requirement should "not be imposed in a draconian manner" and outright denial of fees is not warranted here because plaintiffs have "proffered [] substantiation in the form of [an] affidavit[]." *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 220 (D.C. Cir. 1984). The Circuit has explained that in most cases, the proper course of action is a reduction in fees. *Id.* The Court will heed that directive here.

The remaining question is what reduction is proper under the circumstances here. Because this case does not implicate widespread billing problems or an outrageously highly fee request, the Court declines to apply a global deduction to the lodestar figure. *See DL*, 256 F.R.D. at 245–46. However, in light of the Circuit's clearly established instructions regarding block billing and contemporaneous timekeeping, the Court believes that a twenty-percent reduction to the contested entries that implicate these issues is justified here. The Court will accordingly deduct an additional $3,377 from the lodestar figure.

### C. The Lodestar Amount And Total Award

The final step is to calculate the lodestar amount. The Court has confirmed plaintiffs' calculations and will deduct the $29,590 expended on the show-cause briefing and $3,377 for the billing deficiencies identified above. The lodestar amount in this case is thus $281,439.25. As noted above, the Court sees no reason to apply a global reduction to the lodestar amount in this case. The Court will award this presumptively reasonable amount.

Accordingly, the Court will award plaintiffs $281,439.25 in attorney's fees and $7,461.53 in expenses, totaling $288,900.78.

## IV. CONCLUSION

Based on the foregoing, the Court will **GRANT** plaintiffs' motion and award $288,900.78 by separate order.

Date: 4/14/22

Royce C. Lamberth
United States District Judge