IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE I, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 01-1357 (RCL/AK) |
| ) | |
| v. ) | |
| ) | |
| EXXON MOBIL, CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**JOINT STATUS REPORT ADDRESSING MATTERS
SET FORTH IN COURT'S JULY 22, 2022 ORDER (DKT. 845)**

The parties have met and conferred regarding the matters set forth in the Court's July 22, 2022 Order. The parties have agreed that trial should begin on or after May 24, 2023. The parties support Plaintiffs' pending motion requesting letters from the Court. The parties are also substantially in agreement on pretrial scheduling dates. These issues, and the remaining areas of dispute, are set forth below.

**I.   THE PARTIES' PROPOSED TRIAL DATE.**

   A.   **Plaintiffs' Position on the Trial Date.**

Plaintiffs believe the parties agreed that trial should commence on May 24, 2023, or as soon thereafter as is convenient for the Court's schedule. The Court should be advised of the following:

Plaintiffs urged Exxon to agree to a mid-February trial date, but were advised last week that Defendants' lead counsel has a recently-scheduled criminal trial that would conflict with that trial date (or a trial in March). Exxon requested that trial proceed instead in mid- or late-May and the parties agreed that trial should commence on May 24, 2023, if this is practical for the Court. From Plaintiffs' perspective, this schedule takes into account the time necessary for the

1

government to resolve applications for entry to the United States; time for trial depositions of any Plaintiffs who are not granted entry; Defense counsel's conflicting criminal trial; and accommodation for the Muslim holy days of Ramadan, during which Plaintiffs' attendance at trial would be difficult, if not impossible; and other litigation and scheduling conflicts involving lead counsel.

The parties learned of defense counsel's criminal trial conflict late Wednesday, August 17, and this development pushed the parties' discussions about trial dates into May. Because this information was received so recently, Plaintiffs' counsel are currently checking to confirm Plaintiffs have no unmoveable commitments during this time, but counsel expect none. The only other scheduling consideration for the Plaintiffs of which the Court should be aware is that one of Plaintiffs' key experts cannot attend trial during the weeks of June 12 and June 19 due to pre-existing conflicts. The expert is expected to be Plaintiffs' first witness and without his testimony much of what follows will be difficult for the jury to understand; accordingly, Plaintiffs ask that the Court not schedule trial such that the first days of testimony fall on June 12 through June 23, when the anticipated lead-off witness is unavailable.

Although Defendants first proposed trial in mid- or late-May, and the parties agreed that May 24 would be workable, Defendants indicated for the first time yesterday afternoon, August 21, that two members of their trial team have *other* conflicts and—while they still support proceeding with trial on May 24—they have now suggested that their full trial team will not be available unless the trial proceeds in late July. Plaintiffs have informed Defendants that they oppose any further delay: Plaintiffs have already accommodated the conflict of Defendants' lead counsel, have agreed to commence trial in the May time period *proposed by Defendants,* and—because of the eleventh-hour nature of this new information, have not been in a position to

confirm the workability of this further delay with their experts or any other witnesses. Accordingly, Plaintiffs' respectfully request that the Court schedule trial to begin on May 24, 2023, if that is practical for the Court, or the first date thereafter that is consistent with the Court's schedule. As the Court is aware, this case has been pending for more than two decades and four of the plaintiffs have died in the interim. Defendants' late-breaking conflict should not further delay trial when Defendants concede that a May 24 trial date is possible.

B.      **Defendants' Position on the Trial Date.**

Plaintiffs initially informed Defendants of their preference for a mid-February trial date. Defendants did not believe that Plaintiffs' proposal allowed sufficient time for: Plaintiffs' visa and parole applications to be resolved; briefing and resolution of ExxonMobil's motion to dismiss, on due process grounds, the claims of any Plaintiff that will not attend trial; in-person trial depositions; and all other pretrial submissions. Defendants therefore proposed that trial begin in late March.

On August 17, 2022, the U.S. District Court for the District of New Jersey set March 2, 2023 as the date for jury selection in a criminal jury trial, expected to last three weeks, in which Ted Wells is lead trial counsel—as he is in this matter. Within hours, Defendants notified Plaintiffs of the conflict with their proposed mid-February trial date. To accommodate Plaintiffs' desire for an early trial date and their request not to proceed between March 22 and April 21 for Ramadan, Defendants proposed a mid- to late-May trial date, notwithstanding that two other members of their trial team would have conflicts if trial were to commence at that time.

To accommodate Plaintiffs' preference not to proceed from June 12 – 23 due to a conflict for one of their expert witnesses, Defendants' full trial team will be available for a trial commencing in early July. But Defendants are prepared to go forward with trial at any time on or after May 24.

confirm the workability of this further delay with their experts or any other witnesses. Accordingly, Plaintiffs' respectfully request that the Court schedule trial to begin on May 24, 2023, if that is practical for the Court, or the first date thereafter that is consistent with the Court's schedule. As the Court is aware, this case has been pending for more than two decades and four of the plaintiffs have died in the interim. Defendants' late-breaking conflict should not further delay trial when Defendants concede that a May 24 trial date is possible.

B.      **Defendants' Position on the Trial Date.**

Plaintiffs initially informed Defendants of their preference for a mid-February trial date. Defendants did not believe that Plaintiffs' proposal allowed sufficient time for: Plaintiffs' visa and parole applications to be resolved; briefing and resolution of ExxonMobil's motion to dismiss, on due process grounds, the claims of any Plaintiff that will not attend trial; in-person trial depositions; and all other pretrial submissions. Defendants therefore proposed that trial begin in late March.

On August 17, 2022, the U.S. District Court for the District of New Jersey set March 2, 2023 as the date for jury selection in a criminal jury trial, expected to last three weeks, in which Ted Wells is lead trial counsel—as he is in this matter. Within hours, Defendants notified Plaintiffs of the conflict with their proposed mid-February trial date. To accommodate Plaintiffs' desire for an early trial date and their request not to proceed between March 22 and April 21 for Ramadan, Defendants proposed a mid- to late-May trial date, notwithstanding that two other members of their trial team would have conflicts if trial were to commence at that time.

To accommodate Plaintiffs' preference not to proceed from June 12 – 23 due to a conflict for one of their expert witnesses, Defendants' full trial team will be available for a trial commencing in early July. But Defendants are prepared to go forward with trial at any time on or after May 24.

## II.   AGREEMENT ON PRETRIAL DEADLINES

The parties have agreed to deadlines for most pretrial matters. The parties agree that *unless* a pretrial deadline involves a filing with the Court, the parties' consent should be sufficient to modify deadlines as necessary.

| Category | Deadline Description | Proposed Days Before Trial |
|---|---|---|
| **Plaintiffs' Entry to U.S.** | Joint status report on Plaintiffs' attempts to obtain permission to enter the United States | [December 15, 2022] |
| **Expert Disclosures** | Identify expert if there is a reasonable possibility expert will be called at trial and information on material limitations on scope of testimony.[1] | 70 |
| **Exhibits** | Exchange exhibit lists | 70 |
| | Exchange objections to exhibits | 49 |
| **Witnesses** | Exchange witness lists | 70 |
| **Deposition Designations** | Exchange deposition designations | 63 |
| | Exchange objections and counter-designations | 49 |
| | Exchange objections and reply designations | 35 |
| **Motions** | Filing deadline for motions in limine and *Daubert* motions | 63 |
| | Oppositions | 42 |
| | Replies (should the Court wish to invite them)[2] | 35 |

---

[1] The parties have agreed to exchange information about the experts they may call at trial, and any subjects covered in their prior reports that are excluded from their trial testimony so that both sides can more efficiently proceed with any *Daubert* motions. This would not foreclose a party from further narrowing their expert list or proffered testimony at trial.

[2] Plaintiffs believe replies to pretrial motions are likely unnecessary, and in counsel's experience some courts do not allow them. Defendants believe reply briefs are customary, helpful to the Court, generally quite short, and need not be filed if unnecessary. Defendants

| Category | Deadline Description | Proposed Days Before Trial |
|---|---|---|
| **Jury Matters** | Exchange proposed jury instructions, verdict forms | 35 |
| **Pretrial Statement** | Joint pretrial statement pursuant to Local Rule 16.5 | 28 |
| **Final Pretrial Conference** | Final pretrial conference | 14 |

### III. PARTIES' ESTIMATES OF TRIAL LENGTH

Plaintiffs believe their case will require approximately 15 trial days. Defendants estimate their case will require approximately five to seven trial days. Thus, the parties expect trial to last 25 trial days (including jury selection, openings, closings and instructions to the jury) and the additional time required for jury deliberation.

### IV. AGREEMENT ON TRIAL DEPOSITIONS AS SECOND-BEST TO LIVE TESTIMONY

The parties agree that if obtaining live in-person testimony proves impossible, the trial testimony of any Plaintiff denied entry to the United States should be secured and presented by *de bene esse* (trial) depositions, rather than contemporaneous live transmission from Indonesia or another country to which Plaintiffs may be able to travel. As described below, Defendants' agreement on trial depositions is subject to and without waiver or any other prejudice to their due process objections which they intend to present to the Court at the appropriate time.

Plaintiffs believe, based on their experience and consultation with experts, that they will likely know whether Plaintiffs will be able to obtain access to the United States for trial by December 15, 2022. No later than that date, the parties propose to file a joint status report

---

believe seeking leave to file a reply on a case-by-case basis will only impose an unnecessary burden on the Court.

updating the Court on the status of Plaintiffs' applications. If Plaintiffs' applications to enter the country have not been granted, Defendants intend to move to dismiss the action under the Due Process Clause. And the parties agree, if Defendants' motion is denied, to take in-person trial depositions of Plaintiffs.

The parties disagree somewhat as to how Defendants' due process motion should be briefed and on how trial depositions should be approached, if necessary. The parties' positions on these matters are set forth below.

      A.      <u>Plaintiffs' Position on Disputed Trial Deposition and Due Process Matters</u>

Plaintiffs believe Defendants' due process objections to trial on any basis other than live, in-person testimony are meritless, for reasons substantially the same as the Court articulated in its opinion on Defendants' summary judgment motion. *See* Mem. Op., ECF No. 850 at 80-85. Nonetheless, Plaintiffs are prepared to brief the matter again to allow Defendants to preserve their objections and secure agreement (absent the possibility of live testimony) to proceed with trial depositions. Plaintiffs believe that the parties' December 15, 2022 submission should include briefing by each side addressing Defendants' due process objections to any trial testimony that is not live and in-person in the courtroom at trial.

The parties are in agreement that in-person trial depositions of the Plaintiffs are second-best to live in-person testimony. Plaintiffs have no objection to in-person depositions in Aceh, Indonesia, unless covid or other circumstances make in-person depositions or travel unsafe. Should that occur, then remote trial depositions of Plaintiffs (like the discovery depositions already taken by the parties of Plaintiffs and third parties) are the sensible alternative. Remote trial depositions, though third-best, are nonetheless preferable to live transmission from Indonesia, which would require elderly Plaintiffs to testify late at night and early in the morning

local time, and hold the Court's trial hostage to the vagaries of rural developing-world internet infrastructure (not to mention technical difficulties in the United States).

If trial depositions proceed in-person, they should proceed in Aceh, Indonesia. The parties successfully conducted roughly two dozen remote depositions from Aceh, indicating that the technology infrastructure there is sufficient to handle the task. The Court need not address this issue now, as it may be moot and the location of the depositions is capable of resolution by counsel. Plaintiffs note, however, that the cost and logistical burden of transporting the Plaintiffs to Singapore is significant, and far exceeds the cost and logistical burden of conducting the depositions in Aceh, where Exxon has had facilities for decades. Moreover, foreigners were barred from Singapore until very recently under that country's extremely strict COVID protocols and the entry requirements, including the stringent vaccine requirements, could change again if cases surge. There would be considerable risk that counsel or Plaintiffs would be denied entry or placed into quarantine, wreaking havoc with the schedule.

Each of the Plaintiffs has already been subject to a full discovery deposition, and Plaintiffs believe that, if necessary, reasonable time limitations should be imposed on trial depositions (e.g., a total of 1.25 hours for Plaintiffs' direct and re-direct, 2.5 hours for cross-examination), just as would be anticipated at trial. During discovery depositions, the directs of each Plaintiff and third party witness was completed within approximately 1.25 hours (including time for translations) and trial testimony should be expected to proceed as efficiently, or more efficiently, than discovery depositions.

B.     Defendants' Position on Disputed Trial Deposition and Due Process Matters

If Plaintiffs are unable to appear in person at trial, Defendants intend to move to dismiss the action as a violation of their right to due process. The Court has previously stated that the motion will be ripe at that time. *See* Memorandum and Opinion, ECF No. 850 at 83 ("As before,

the Court will wait until the appropriate time—when the trial date is approaching and there is sufficient clarity about the status of plaintiffs' applications for entry into the United States—to consider the outstanding issues pertaining to plaintiffs' trial testimony."). Defendants request two weeks following submission of the December 15 status report to file the motion, propose that Plaintiffs have two weeks to respond, and request one week to reply.

If Defendants' motion is denied, the parties have agreed to take in-person trial depositions of Plaintiffs. Those depositions should take place in Singapore, which does not impose a visa requirement on Indonesian citizens. Safety considerations should be paramount in the selection of a location. But more than that, Aceh does not have the reliable transportation, facilities, and technology infrastructure available in Singapore to support multiple weeks of depositions abroad. And any time restrictions imposed on cross examination must take into account the need to communicate through interpreters and the numerous misunderstandings, caused by language and cultural barriers, that impede cross-examination but do not hinder direct examination that has been prepared in advance.

Defendants do not agree to remote depositions in the event that in-person depositions are not possible. Given the many inconsistencies and irregularities in Plaintiffs' written discovery and deposition testimonies, it is absolutely critical that Defendants be allowed to confront their accusers in person at some point during the litigation (albeit preferably at trial). There is no reason to think that travel to Singapore would be unsafe from either a health or physical security standpoint.

### V. PLAINTIFFS' UPDATE REGARDING THEIR EFFORTS TO OBTAIN ENTRY INTO THE UNITED STATES FOR TRIAL

As noted in Plaintiffs' Motion for Letters from the Court (ECF No. 835) ("Mot. for Ltrs."), Plaintiffs strongly prefer to attend trial in the United States in person and are pursuing

two parallel paths by which they may be granted entry into the United States: visas issued by the Department of State, or significant public benefit parole administered by U.S. Citizenship and Immigration Services ("USCIS"). Mot. for Ltrs. 1-3. As noted in that motion, Plaintiffs' counsel's personal experience seeking visas for litigants, and official guidance from USCIS on parole, strongly suggest that Plaintiffs should not submit applications for visas or parole until after the Court has set a trial date and issued letters in support of their applications. Mot. for Ltrs. 2-4. Applying without the supporting documentation increases the risk of another denial and additional delay. Plaintiffs expect to submit their applications as soon as practicable after the Court's decision on supporting letters.

In the meantime, counsel and in-country Indonesian associates have been laying groundwork for Plaintiffs' travel to the United States.[3] Certain arrangements, such as housing, air travel, and confirmation of translators are dependent on a trial date. Nonetheless, counsel and Indonesian counterparts have ensured each Plaintiff's passport is up to date; have applied for a passport for a newborn that must accompany its mother; have wired visa application fees to Indonesia; have taken steps to ensure each Plaintiff's vaccines will be up-to-date and meet travel and U.S. entry requirements; and have generated a list of supporting necessities ranging from a rice cooker to clothing appropriate for the weather and shoes that will be required for Plaintiffs' stay.

---

[3] As Defendants are aware, Jane Doe VIII was too frail to be deposed and Plaintiffs agreed that they would not call her as a witness at trial. (Letter of Agnieszka Fryszman to Alex Oh of Sept. 29, 2020; Letter of Jessica Morton to Agnieszka Fryszman of Sept 30, 2020). Jane Doe VIII did not witness the attack on her husband and was solely a damages witness. An alternative damages witness was deposed. Accordingly, Plaintiffs are not seeking a visa for Jane Doe VIII, as she will not be testifying at trial.

Plaintiffs understand that the visa and public benefit parole applications must specify the entire time period that Plaintiffs will be in the United States. Accordingly, Plaintiffs intend to seek permission for entry two weeks prior to the commencement of trial to allow flexibility in connecting flights from rural Indonesia, the ability to deal with unexpected but increasingly common travel delays or flight cancellations, and acclimatization to United States time. Plaintiffs intend to seek permission to stay in the country until three business days after the expected competition of trial (e.g., May 10 to July 3, 2023, if trial is scheduled to begin on May 24).[4]

Plaintiffs remain hopeful that their entry to the United States for trial will be granted, but recognize that this depends on the exercise of discretion by government officials.

## VI. PLAINTIFFS' MOTION FOR LETTERS FROM THE COURT

For the Court's convenience, Plaintiffs have revised their proposed draft letters in support of the Plaintiffs' visa applications and are filing them contemporaneously with this status report as Exhibits A and B using HSD procedures. For the Court's convenience, Plaintiffs will include Word versions of their draft proposed letters on the physical media delivered to the Court under HSD procedures.

Defendants have reviewed the draft letters and do not oppose Plaintiffs' motion.

## VII. PLAINTIFFS' PROPOSALS ON PRETRIAL PROCEDURES

Plaintiffs have proposed, and the parties are continuing to confer about, the following pretrial procedures to Defendants. The parties recognize that the Court may have other procedures it prefers to use and therefore offer these as proposals only:[5]

---

[4] These dates assume a trial commencing on May 24, 2023, twenty-five trial days (excluding the Memorial Day and Juneteenth holidays), and a reasonable period for jury deliberations.

[5] The bracketed placeholders are under discussion by the parties.

- The parties should exchange exhibits and demonstratives to be used in opening statements 2 days before trial, and exchange objections 1 day before trial.

- The party presenting its case should provide to opposing counsel a list of deposition designations, in the order in which they will be played, at least [#] hours in advance of the trial date on which the party intends to show the designated deposition testimony. That party should, contemporaneously with its disclosure of designations, provide a list of exhibits to be proffered through the designated testimony.

- Any objections and/or completeness or counter-designations should be exchanged at least [#] hours in advance of the day on which the presenting party intends to show the designated deposition testimony.

- If the parties have unresolved objections regarding designations and exhibits, the parties should submit objections to the Court [__].

- At least [#] hours prior to the trial day on which a live witness will be called, the parties should provide opposing counsel with the identity of the witness and any exhibits or demonstrative exhibits it anticipates using on direct examination.

- At least [#] hours before the trial day on which that witness will be called, opposing counsel should provide, in writing, a brief statement of any grounds for objection to the proposed exhibits.

August 22, 2022                                        Respectfully submitted,

/s/ Agnieszka M. Fryszman                              /s/ Justin Anderson
Agnieszka M. Fryszman (#459208)                        Theodore V. Wells, Jr. (Bar No. 468934)
Kit A. Pierson (#398123)                               twells@paulweiss.com
Robert W. Cobbs (# 398123)                             Jaren E. Janghorbani (pro hac vice)
Nicholas J. Jacques (#1673121)                         jjanghorbani@paulweiss.com
Cohen Milstein Sellers & Toll PLLC                     PAUL, WEISS, RIFKIND, WHARTON &
1100 New York Ave. NW ● Fifth Floor                    GARRISON LLP
Washington, DC 20005                                   1285 Avenue of the Americas
Tel: (202) 408-4600                                    New York, NY 10019-6064
Fax: (202) 408-4699                                    Telephone: (212) 373-3000

afryszman@cohenmilstein.com                            Justin Anderson (Bar No. 1030572)
kpierson@cohenmilstein.com                             PAUL, WEISS, RIFKIND, WHARTON &
rcobbs@cohenmilstein.com                               GARRISON LLP
njacques@cohenmilstein.com                             2001 K Street, N.W.
                                                       Washington, DC 20006-1047

<div style="display: flex;">

Paul L. Hoffman (Pro Hac Vice)
Schonbrun Seplow Harris Hoffman & Zeldes
200 Pier Avenue, #226
Hermosa Beach, CA 90254
Tel: (31) 396-0731
hoffpaul@aol.com

Terrence P. Collingsworth (#471830)
International Rights Advocates
621 Maryland Ave., N.E

Brent Nelson Rushforth (#331074)
1112 Cripplegate Road
Potomac, MD 20854
Tel: (301) 943-7977
brentrushforth@icloud.com

Poorad Razavi
Cohen Milstein Sellers & Toll PLLC
2925 PGA Blvd. Suite 200
Palm Beach Gardens, FL. 33410
Tel: (561) 515-1400
Fax: (561) 515-1401
prazavi@cohenmilstein.com

*Attorneys for Plaintiffs*

</div>

Telephone: (202) 223-7300

Patrick J. Conlon (Bar No. 414621)
patrick.j.conlon@exxonmobil.com
EXXON MOBIL CORPORATION
22777 Springwoods Village Parkway
Spring, TX 77389
Telephone: (832) 624-6336

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2022, I electronically filed the *Joint Status Report* with the Clerk of the Court using the ECF, who in turn sent notice to all counsel of record in this matter.

Dated:   August 22, 2022                              /s/ Agnieszka M. Fryszman
                                                                          Agnieszka M. Fryszman