## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN DOE I, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>EXXON MOBIL CORPORATION, *et al.*,<br><br>            Defendants. | Case No. 01-cv-01357-RCL |

### DEFENDANTS' FIRST THROUGH ELEVENTH MOTIONS *IN LIMINE*

Pursuant to Federal Rules of Evidence 402, 403, and 802, Defendants Exxon Mobil Corporation and ExxonMobil Oil Indonesia Inc. respectfully move to exclude certain evidence that they anticipate Plaintiffs will attempt to introduce at trial.  In support, Defendants submit a memorandum of points and authorities, corresponding exhibits, the declaration of Justin Anderson, and a proposed order, which are being filed contemporaneously with this Motion.

Washington, DC
March 22, 2023

Respectfully submitted,

_____
/s/ Justin Anderson
Theodore V. Wells, Jr. (Bar No. 468934)
twells@paulweiss.com
Jaren E. Janghorbani (admitted *pro hac vice*)
jjanghorbani@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

Justin Anderson (Bar No. 1030572)
janderson@paulweiss.com
Mitchell Webber (Bar No. 1024005)
mwebber@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006-1047
Telephone:  (202) 223-7300

*Attorneys for Defendants Exxon Mobil Corporation
and ExxonMobil Oil Indonesia Inc.*

## CERTIFICATE OF SERVICE

I, Justin Anderson, hereby certify that on March 22, 2023, I caused true and accurate copies of the foregoing First Through Eleventh Motions *In Limine* of Defendants Exxon Mobil Corporation and ExxonMobil Oil Indonesia Inc., the proposed order attached thereto, Defendants' memorandum of points and authorities, the declaration of Justin Anderson and corresponding exhibits to be electronically filed through the Court's ECF filing system, which will provide notice to all counsel of record.

/s/ Justin Anderson
Justin Anderson (Bar No. 1030572)
janderson@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC  20006-1047
Telephone:  (202) 223-7300

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN DOE I, et al.,

     *Plaintiffs,*

v.

EXXON MOBIL CORP., et al.,

     *Defendants*.

**Case No. 1:01-cv-1357-RCL**

## OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' FIRST THROUGH ELEVENTH MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

I.  First Motion *In Limine*: Plaintiffs Should Be Precluded From Presenting Any Evidence About the Basis For Their Use of Pseudonyms In This Case or Otherwise Referring To Fear of Retaliation............................................................................................................. 1

II. Second Motion *In Limine*: Evidence of Defendants' Earnings and Profitability Should Be Excluded. ......................................................................................................................... 3

III. Third Motion *In Limine*: Plaintiffs Should Be Prohibited From Introducing Evidence or Testimony Regarding the Price of Gasoline. ......................................................................... 6

IV. Fourth Motion *In Limine*: Evidence About Climate Change and Environmental Issues Should Be Excluded............................................................................................................... 7

V.  Fifth Motion *In Limine*: The Court Should Exclude Accounts Contained In Newspapers and Other Media .................................................................................................................... 9

VI. Sixth Motion *In Limine*: Michael Shari's Testimony Should Be Excluded.. ..................... 14

VII. Seventh Motion *In Limine*: Plaintiffs Should Be Prohibited From Describing or Identifying Any Geographic Location As "Skull Hill." .......................................................................... 19

VIII. Eighth Motion *In Limine*: Plaintiffs Should Be Barred From Describing Their Assailants as "Exxon Soldiers." ................................................................................................................. 21

IX. Ninth Motion *In Limine*: Evidence of Other Lawsuits and Settlements Involving Exxon Mobil Corporation Should Be Excluded............................................................................... 23

X.  Tenth Motion *In Limine*: Plaintiffs Should Be Prohibited From Offering Non-Rebuttal Testimony From Plaintiffs' Proposed Witness Mark Cammack ........................................... 25

XI. Eleventh Motion *In Limine*: Plaintiffs Should Be Prohibited From Offering Documents Inadequately Described and Improperly Disclosed On Their Exhibit List.: ....................... 27

XII. Conclusion ......................................................................................................................... 29

Defendants Exxon Mobil Corporation ("EMC") and ExxonMobil Oil Indonesia, Inc. ("EMOI") respectfully submit this memorandum of law in support of their motions *in limine* to exclude inadmissible evidence at trial.

**I.    FIRST MOTION *IN LIMINE*: PLAINTIFFS SHOULD BE PRECLUDED FROM PRESENTING ANY EVIDENCE ABOUT THE BASIS FOR THEIR USE OF PSEUDONYMS IN THIS CASE OR OTHERWISE REFERRING TO FEAR OF RETALIATION.**

Plaintiffs have represented that their use of pseudonyms in this case is appropriate because, should their identities become publicly known, they fear retaliation from entities in Indonesia for bringing this lawsuit.  *See* Pls.' Ex Parte Mot. To Proceed Using Pseudonyms, ECF No. 1 (D.D.C. June 13, 2001).  The Court has permitted Plaintiffs' use of pseudonyms in this matter.  *See* ECF No. 2 (D.D.C. June 19, 2001).  Defendants do not contest Plaintiffs' continuing use of pseudonyms at trial.  But Plaintiffs should be precluded from offering evidence or argument related to the basis for their use of pseudonyms in this case because such information is irrelevant and unfairly prejudicial to Defendants.

**A.    Legal Standard.**

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Relevant evidence is evidence which has a "tendency to make a fact . . . of consequence  . . . more or less probable." Fed. R. Evid. 401.  If evidence fails that simple test, it should be excluded as irrelevant.  Fed. R. Evid. 402.

Even relevant evidence may be excluded when "its probative value is substantially outweighed by a danger of  . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403. "[E]vidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror,

provides its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Flythe* v. *District of Columbia*, 4 F. Supp. 3d 222, 226–27 (D.D.C. 2014).

### B. Argument.

Evidence related to the basis for Plaintiffs' use of pseudonyms should be excluded because it will not aid in the jury's determination of any fact at issue in this case. *See* Fed. R. Evid. 401. Here, the jury must determine whether Defendants can be held liable for injuries allegedly inflicted on Plaintiffs by members of the Indonesian military between 1998 and 2001. Plaintiffs' fear of retaliation in the future does not make it more or less probable that Defendants controlled the Indonesian military between 1998 and 2001. Similarly, the reason why Plaintiffs are using pseudonyms during this litigation does not make it more or less probable that the members of the Indonesian military inflicted the discrete injuries for which Plaintiff claim damages in the course of protecting the Arun Field facilities. Accordingly, evidence of this type is irrelevant to the factual determinations in this litigation and should be excluded under Rule 402.

Even if evidence related to the basis for Plaintiffs' use of pseudonyms has some probative value, which it does not, introduction of this evidence would unfairly prejudice Defendants, in violation of Rule 403. Evidence about the basis for Plaintiffs use of pseudonyms would improperly invoke a degree of sympathy by focusing the jury's attention on Plaintiffs' fears. *See Malka*, 602 F. Supp. 3d at 527. Consequently, such a focus may encourage the jury to determine liability based on something other than the merits of this case. *See Flythe*, 4 F. Supp. 3d at 226–27. Courts routinely exclude evidence under Rule 403 that is likely to "cause the jury to be influenced by sympathies having no bearing on the merits of the case," *United States* v. *Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991), such as information about "ailments likely to

invoke a certain understandable degree of sympathy," *U.S. ex rel. Miller* v. *Bill Harbert Intern. Const., Inc.*, No. 95-1231(RCL), 2007 WL 842077, at *1 (D.D.C. March 16, 2007) (Lamberth, J.). Because evidence of Plaintiffs' fears of retaliation would similarly invoke the jury's sympathy, thereby unfairly prejudicing Defendants, such evidence should be excluded.

Accordingly, Plaintiffs should be precluded under Rules 402 and 403 from presenting any evidence related to the basis for their use of pseudonyms in this matter because the evidence is irrelevant and unfairly prejudicial.

## II.   <u>SECOND MOTION *IN LIMINE*</u>: EVIDENCE OF DEFENDANTS' EARNINGS AND PROFITABILITY SHOULD BE EXCLUDED.

Defendants' earnings, profitability, market capitalization, and related metrics (collectively "financial condition") should be excluded for lack of relevance, unfair prejudice, or both. The jury will determine whether Defendants are responsible for Plaintiffs' alleged injuries and resulting damages. But the level of Defendants' earnings, profits, or market capitalization do not bear on their responsibility to Plaintiffs. None of those metrics relate to the injuries Plaintiffs' suffered—or to the causes or consequences of those injuries. And even if they possessed some probative value, it would be outweighed by the risk of unfair prejudice. Evidence about corporate earnings, profitability, and market capitalization tends to inflame jurors' passions, resulting in verdicts based on emotion rather than the merits. Whether for lack of relevance or unfair prejudice, the evidence should be excluded.

### A.   Legal Standards.

"As a general rule, it is error to admit evidence of a party's financial condition unless necessary to determine the damages sustained. . . .  To admit financial condition evidence, the damages to be determined must be punitive in nature." *Whiteley* v. *OKC Corp.*, 719 F.2d 1051,

1055 (10th Cir. 1983).  In *Fairholme Funds, Inc.* v. *Federal Housing Finance Agency*, this Court precluded defendants from introducing evidence of plaintiffs' wealth or sophistication because such evidence was irrelevant to claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unconstitutional taking, and breach of fiduciary duty.  *See* No. 1:13-mc-1288 (RCL), Omnibus Pretrial Order on Mots. In Lim. 2, ECF. No. 223 (D.D.C. Oct. 13, 2022).  In *Nurriddin* v. *Bolden*, the Court denied a defendant's motion to compel discovery about the plaintiff's financial condition as irrelevant because the plaintiff did not seek punitive damages.  *See* No. 04-2025 (JDB), 2012 WL 13129568, at *3 (D. D. C. Jan. 11, 2012).

> As the Supreme Court has cautioned, "the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses."  *State Farm Mut. Auto Ins. Co.* v. *Campbell*, 538 U.S. 408, 417 (2003) (citation omitted).  "It is established that appealing to the sympathy of jurors through references to financial disparity [of the parties] is improper, and may be grounds for reversal or a mistrial."  *Iacangelo* v. *Georgetown Univ.*, No. 05-2086 (PLF), 2011 WL 13247933, at *3 (D.D.C. Jan. 13, 2011) (alteration in original) (internal quotation marks omitted).  In *Storrs* v. *University of Cincinnati*, the defendant moved to preclude evidence of its financial resources and the plaintiff's "comparative lack of wealth or financial capacity" for risk of inflaming the jury.  The court agreed, excluding such evidence because "[a]ny slight probative value . . . [was] clearly outweighed by the real danger of unfair prejudice and misleading the jury."  No. 1:15-cv-136, 2018 WL 684759, at *7 (S.D. Ohio Feb. 2, 2018).

## B.   Argument.

> Evidence of Defendants' financial condition has no bearing on Defendants' legal liability.  In *Leftwich* v. *Lindsey*, the court found that "questions directed to the plaintiff's financial

condition ha[d] no bearing on whether defendant [was] liable" for breach of contract when the determination of liability turned on whether the defendant did or did not engage in certain conduct. *See* No. 87-347, 1988 WL 39855, at *1 (D.D.C. Apr. 21, 1988).  The same is true here.  Like the basis for the claim at issue in *Leftwich*, a determination of liability in this case turns on the jury's factual determination about the Indonesian military's conduct and Defendants' alleged control of the military.  Evidence of Defendants' financial condition does not make it more or less probable that members of the Indonesian military injured Plaintiffs in the course of protecting Arun Field. Nor does such evidence make it more or less probable that Defendants controlled the Indonesian military such that Defendants are responsible for the military's conduct.

Moreover, Defendants' financial condition does not bear on the potential damages award.  Here, Plaintiffs cannot seek punitive damages, which is the only type of damages for which evidence of financial condition may be admissible.  *See Whitely*, 719 F.2d at 1055.  Indonesian law governs this case.  *See Doe* v. *Exxon Mobil Corp.*, 654 F.3d 11, 70 (D.C. Cir. 2011), *vacated on other grounds* 527 F. App'x 7 (D.C. Cir. 2013).  Plaintiffs cannot seek punitive damages because Indonesian law does not recognize punitive damages.  *See Doe* v. *Exxon Mobil Corp.*, 1:01-cv-01357-RCL, Memorandum 3, ECF No. 137 (D.D.C. Mar. 2, 2006) ("Indonesian law does not recognize punitive damages.").  Therefore, evidence of financial condition cannot be admitted to demonstrate any potential damages in this case.  Because evidence of Defendants' financial condition has no bearing on Defendants' liability and a potential damages award, it is irrelevant.

Even if evidence regarding Defendants' financial condition was relevant, which it is not, it would unfairly prejudice Defendants for at least two reasons.  *See Flythe*, 4 F. Supp. 3d at 226-27.  *First*, admitting evidence of Defendants' financial condition will improperly highlight the parties' financial disparity—Plaintiffs are Indonesian villagers with minimal assets, while

Defendants are large corporations.  *See Storrs*, 2018 WL 684759, at *7.  Highlighting this disparity runs the risk of improperly inflaming the jury against Defendants or engendering the jury's sympathy in favor of Plaintiffs.  *See id.*; *Iacangelo*, 2011 WL 13247933, at *3.  *Second*, evidence of Defendants' profits would highlight that Defendants are large, profitable companies with deep pockets.  Such an emphasis could encourage the jury to use their verdict to express biases against Defendants because they are large corporations, and the jury may award damages to Plaintiffs simply because Defendants can pay.  *See State Farm*, 538 U.S. at 417.  Because evidence of Defendants' financial condition would risk inflaming the jury and engendering its sympathies and biases, any probative value evidence of Defendants' financial condition may offer is outweighed by unfair prejudice.  That evidence should be excluded.

III.   **THIRD MOTION *IN LIMINE*: PLAINTIFFS SHOULD BE PROHIBITED FROM INTRODUCING EVIDENCE OR TESTIMONY REGARDING THE PRICE OF GASOLINE.**

The Court should prohibit Plaintiffs from introducing evidence or testimony regarding the price of gasoline or referring to any increase in the price of gasoline because such evidence is irrelevant to Plaintiffs' claims.  Even if it were relevant, any probative value of such evidence is significantly outweighed by unfair prejudice to Defendants.

The current or historic price of gasoline has no bearing on any of Plaintiffs' claims because Plaintiffs do not assert any claim related to the buying and selling of oil or gasoline, where gasoline prices may be relevant.  That is especially so of the price of gasoline today, which has no possible bearing on events occurring in Indonesia more than 20 years ago.  Evidence of gasoline prices would only be used to draw the jury's attention to Defendants' industry, its status as a large corporation, or its financial condition as a result of the industry it occupies.  As discussed in

Defendants' [Third] Motion *in Limine*, any evidence or testimony of this nature is irrelevant and has no relation to Defendants' liability or an award of damages in this case.

Even if evidence regarding the price of gasoline were relevant, and it is not, any probative value of such evidence is significantly outweighed by the danger of unfair prejudice for at least two reasons. *First*, introducing such evidence would incite emotional responses by jurors who feel they are paying more at the pump, which runs the risk of encouraging the jury to improperly punish Defendants for their perceived role in the high price of gasoline. *See Flythe*, 4 F. Supp. 3d at 226-27. *Second*, introducing this evidence may unfairly highlight the financial disparity between the parties by emphasizing that Defendants profit from increased gasoline prices, *see Iacangelo*, 2011 WL 13247933, at *3, and highlighting such a disparity runs the risk of inflaming the jury against Defendants or appealing to the jury's biases about large corporations, *see Storrs*, 2018 WL 684759, at *7; *State Farm*, 538 U.S. at 417. Both of those reasons for Plaintiffs' introduction of evidence concerning the price of gasoline are impermissible and would unfairly prejudice Defendants. Accordingly, the Court should preclude references to the current or historical price of gasoline.

## IV.   <u>FOURTH MOTION *IN LIMINE*</u>: EVIDENCE ABOUT CLIMATE CHANGE AND ENVIRONMENTAL ISSUES SHOULD BE EXCLUDED.

Plaintiffs should be precluded from introducing evidence about climate change and environmental issues related to the oil and gas industry or Exxon Mobil Corporation because such evidence is irrelevant and unfairly prejudicial.

Evidence about climate change or the environment is irrelevant. This is not an environmental case and plaintiffs do not allege any claim relating to the environment or climate. The claims at issue in this case involve alleged bodily injuries inflicted against Plaintiffs by

Indonesian soldiers.  The decision in *Boweto* v. *Chevron Corp.*, NO. C 99-02506-SI, 2006 WL 2455752 (N.D. Cal. Aug. 22, 2006), is instructive.  The *Bowoto* plaintiffs alleged claims against Chevron, including allegations of extrajudicial killing and torture.  *See id.* at *1.  The events were alleged to have occurred during protests on Chevron's Parabe drilling platform in the Niger delta that resulted in civilian deaths.  *Id.*  In its order on Chevron's motion *in limine*, the court precluded evidence and testimony regarding environmental issues, including the environmental impact of oil drilling.  *See* 2006 WL 6051226, at *1.  The court explained that "[t]his case is not about what happened to the mangrove swamps of the Niger Delta or to the traditional fishing grounds of the people who live there; it is about what occurred on the Parabe platform and in the villages."  *Id.*[1] Here, as in *Boweto*, the Court should preclude evidence and testimony regarding climate change and environmental issues because such evidence does not bear on Plaintiffs bodily injuries. Additionally, evidence about the climate does not make Defendants' liability for Plaintiffs' alleged injuries more or less probable.  Like *Boweto*, this case is about what occurred "in the villages," not what occurred in the environment around those villages.  Therefore, evidence of climate change and environmental issues is irrelevant and should be excluded.

Moreover, even if evidence about climate change and environmental issues had probative value, which it does not, allowing plaintiffs to introduce this evidence would unfairly prejudice Defendants.  *See Flythe*, 4 F. Supp. 3d at 226–27.  Defendants are involved in the production and sale of fossil fuels.  Currently, the political tenor regarding fossil fuels is fraught, and climate change is a divisive social and political issue.  Permitting Plaintiffs to introduce

---

[1]  The court did allow plaintiffs to offer evidence "in support of the limited proposition that the environmental effects that plaintiffs *actually contend they witnessed* are consistent with the environmental effects of oil drilling operations," only because such evidence was relevant to establish the plaintiffs' motive for attending the protest.  *Boweto*, 2006 WL 6051226, at *2.

evidence about climate change or environmental issues runs the risk of inflaming jurors' individual passions regarding these issues. Jurors who feel strongly about fossil fuels, climate change, and other environmental issues may in turn be encouraged to improperly punish Defendants in this case by holding them liable for Plaintiffs' alleged injuries, or ignoring the evidence altogether when assessing liability. Either outcome would unfairly prejudice Defendants by causing the jury to "base its decision on something other than the established propositions in the case." *Flythe*, 4 F. Supp. 3d at 226–27.

Because evidence of climate change and environmental issues is irrelevant and its introduction would unfairly prejudice Defendants, it should be precluded.

## V.    <u>FIFTH MOTION *IN LIMINE*</u>: THE COURT SHOULD EXCLUDE ACCOUNTS CONTAINED IN NEWSPAPERS AND OTHER MEDIA.

Plaintiffs should be precluded from offering evidence of newspaper articles, media reports, and internet articles (collectively, the "Articles"), published between 1998 to 2001, to support their positions. *See* Exhibit ("Ex.") 1, Plaintiffs' Trial Exhibit 0145, *The Jakarta Post* article "ExxonMobil expected to restart operations soon," dated March 20, 2001[2] ("*Jakarta Post* Article"); Ex. 2, Plaintiffs' Trial Exhibit 0303, the *BusinessWeek* article "What Did Mobil Know?", dated December 28, 1998 ("*BusinessWeek* Article"),[3] Ex. 3, Plaintiffs' Trial Exhibit 0894, the *Wall Street Journal* article "Mobil Sees Its Gas Plant Become Rallying Point for Indonesian Rebels," dated September 7, 2000 ("*Wall Street Journal* Article"),[4] Ex. 4, Plaintiffs'

---

[2]    ExxonMobil expected to restart operations soon, THE JAKARTA POST, March 20, 2001.

[3]    What Did Mobil Know? Mass graves suggest a brutal war on local Indonesian guerrillas—in the oil giant's backyard, BUSINESSWEEK, December 28, 1998.

[4]    Jay Solomon, Mobil Sees Its Gas Plant Become Rallying Point for Indonesian Rebels, WALL STREET JOURNAL, September 7, 2000.

Trial Exhibit 0896, *The Atjeh Times* article "A Machination of ExxonMobil," dated November 18, 2000 ("*Atjeh Times* Article")[5].  The Articles contain a myriad of out of court statements rendering them unreliable under Rules 801 and 805.  And Plaintiffs do not have witnesses who could testify about the Articles pursuant to Rule 602's personal knowledge requirement.  Finally, the Articles' editorial positions and inflammatory language would unfairly prejudice Defendants, in violation of Rule 403.

"[N]ewspaper articles constitute inadmissible hearsay, and cannot be admitted into evidence to support the truth of the matter asserted."  *Atkins* v. *Fisher*, 232 F.R.D. 116, 132 (D.D.C. 2005).  And as this Court has explained, "[e]vidence constituting hearsay is normally inadmissible because it lacks sufficient guarantees of reliability."  *Hutira* v. *Islamic Republic of Iran*, 211 F. Supp. 2d 115, 123 (D.D.C. 2002) (Lamberth, J.).  In keeping with this view, "courts have specifically found that '[u]nsupported newspaper articles usually provide no evidence of the reporter's perception, memory or sincerity and, therefore, lack circumstantial guarantees of trustworthiness.'"  *Id*. (citations omitted).

The Articles are textbook hearsay and should be excluded under Rule 801.  The Articles are out of court statements because they are written statements made by the authors and published in various news publications from 1998 to 2001.  Additionally, Plaintiffs improperly attempt to offer the Articles for the truths asserted therein—that Defendants allegedly knew about human rights abuses in Aceh and promulgated violence. Fed. R. Evid. 801(c); *United States* v. *El-Mezain*, 664 F.3d 467, 496 (5th Cir. 2011) (stating that newspaper articles "constitute classic hearsay").  Because Rule 801 prohibits the use of hearsay statements for this purpose they should

---

[5]    Aguswandi BR, *A Machination of ExxonMobil*, THE ATJEH TIMES, November 18, 2000.

be precluded.  Additionally, because the Articles are hearsay, they provide no evidence of the reporters' perception, memory, or sincerity, and thereby, lack sufficient guarantees of reliability. They should be excluded on this ground alone.

But the Articles are inadmissible for several other reasons as well.

*First*, not only do the Articles constitute hearsay in and of themselves, they are also replete with hearsay within hearsay, in violation of Rule 805.  For example, in *The Atjeh Times* article, "A Machination of ExxonMobil," the author writes that ExxonMobil provided "TNI/POLRI troops operational cost[s] amounting to Rp 5 billion[ ] per month," and "an allowance of Rp 4000/soldier/day, transportation facilities, offices, guard-posts, barracks, radios, . . . and other equipment."  Ex. 4, *Atjeh Times* Article, at 2.  The author cites no sources for this information, other than a vague reference to an "investigation."  In *The Jakarta Post* article, "ExxonMobil expected to restart operations soon," the author attributes to Indonesia's then secretary-general Ministry of Mineral Resources the assertion that, "in response to ExxonMobil's request for security assurance, the government has decided to send 2,128 troops to safeguard all ExxonMobil's vital installation sites." Ex. 1, *Jakarta Post* Article.  These are just some examples of the hearsay within hearsay contained in the Articles that provide an independently sufficient reason to exclude them.

*Second*, the Articles also run afoul of Rule 602's personal knowledge requirement. The Articles contain composite accounts synthesized by the authors rather than first-hand accounts of the events at issue.  For example, a note at the end of *The Atjeh Times* article, "A Machination of ExxonMobil," represents that the article is a "report [that] was compiled" by an employee of The Aceh Commission for Disappearances and Victims of Violence, also known as Kontras, but lists none of the sources from which the report was compiled.  Ex. 4, *Atjeh Times* Article, at 3. In

11

Jay Solomon's article, "Mobil Sees Its Gas Plant Become Rallying Point for Indonesian Rebels," Mr. Solomon relays opinions that purport to reflect the perspective of the "guerillas and many Acehnese" associating ExxonMobil's operations with "Mr. Suharto's military-backed regime." *See* Ex. 3, *Wall Street Journal* Article.  Because Plaintiffs do not include any of the Articles' sources or the Articles' authors on their witness list, they lack witnesses with personal knowledge of the article's contents to lay a foundation for or authenticate the articles.  *See Anglin* v. *Pratti*, No. 1:19-cv-01334-JLT-SAB, 2022 WL 17405864, at *7 (E.D. Cal. Dec. 2, 2022) (excluding an article written by a third party because the defendant lacked witnesses with personal knowledge of the article's contents to lay a foundation for or authenticate the article).  Therefore, introduction of the composite accounts synthesized by the authors should be excluded pursuant to Rule 602.

   *Third*, several of the Articles take an editorial position that is generally hostile to Defendants or contain inflammatory allegations that violate Rule 403.  For example, Mr. Solomon implies that Exxon Mobil Corporation is the primary reason the Indonesian military was stationed in Aceh and that violence had promulgated in the region because of Exxon Mobil Corporation's presence.  *See* Ex. 3, *Wall Street Journal* Article.  Michael Shari's article, entitled "What did Mobil Know?", implies that Defendants both knew about human rights violations in Aceh and provided assistance in connection with those violations.  *See e.g.*, Ex. 2, *BusinessWeek* Article.[6]  Allowing the hostile editorial positions reflected in the Articles[7] to be presented to the jury would unfairly

---

[6] Michael Shari, Pete Engardio, & Sheri Prasso, What Did Mobil Know? Mass graves suggest a brutal war on local Indonesian guerrillas—in the oil giant's backyard, BUSINESSWEEK, December 28, 1998, at 1.

[7] The substance of the *Jakarta Post* article entitled "ExxonMobil expected to restart operations soon" implies that the violence in Aceh is attributed to a military presence associated with ExxonMobil.  *See* Ex. 1, *Jakarta Post* Article.  The subtitle of *The Atjeh Times* article "A Machination of ExxonMobil" states: "ExxonMobil involved in human rights violations in Aceh."  *See* Ex. 4, *Atjeh Times* Article.  This subtitle, coupled with the unsupported substance

prejudice Defendants because the jury may be inclined to credit the authors as honest and truthful based on societal expectations of journalistic integrity and neutrality. *See Harwood* v. *N. Am. Bancard, LLC*, No. 18-cv-12567, 2022 WL 2467722, at *4 (E. D. Mich. July 6, 2022) (excluding an article pursuant to Rule 403 because "[t]he jury is likely to believe the ostensibly neutral author's published speculation."). Additionally, the editorial positions contained in the Articles would be particularly prejudicial here because Defendants will not have the opportunity to cross examine the journalists or otherwise contest the assertions contained in the Articles. Permitting Plaintiffs to present the Articles to the jury would unfairly prejudice Defendants, and they should be excluded on this ground.

With respect to Mr. Shari's article in particular, this Court should exclude it for three additional reasons. *First*, Mr. Shari's article is irrelevant. It has no bearing on any fact at issue because the parties do not dispute the existence of this article or the fact that the Indonesian military is known to have committed acts of violence in Aceh. Defendants' position as articulated in Shari's article—that it did not know about human rights abuses committed by the Indonesian military in the early 1990s—is consistent with Defendants' position in this case. *Second*, Mr. Shari's article contains irrelevant photographs. Mr. Shari relies on accounts from named and unnamed sources and accompanying which are graphic images of human skeletons, human skulls with fleshy remains, and scarred bodies. Ex. 2, *BusinessWeek* Article, at CA0001078079, CA0001078081–83, These are not images of Plaintiffs or the family members on whose behalf they brought claims. In fact, they were taken years before the events at issue here. *Third*, even if these images were relevant, and they are not, the sole purpose of introducing them at trial would

---

of the article, links Exxon Mobil Corporation to human rights abuses based solely on the placement of Indonesian troops at Arun field. *See id.*

be to "arouse [the jury's] sense of horror," in violation of Rule 403. *See Flythe*, 4 F. Supp. 3d at 226–27. The photographs would arouse the jury's sense of horror because they are gory and depict non-Plaintiff victims' brutal injuries. Because the substance of Mr. Shari's article has no bearing on the merits of this case and contains irrelevant and unfairly prejudicial photographs, it should be excluded for these additional reasons.

## VI.   <u>SIXTH MOTION *IN LIMINE*</u>: MICHAEL SHARI'S TESTIMONY SHOULD BE EXCLUDED.

Plaintiffs should be precluded from offering Michael Shari's testimony for four distinct reasons. *First*, Shari's testimony is irrelevant, in violation of Rule 402. *Second*, Shari's testimony is inadmissible hearsay evidence, in violation of Rule 802, and Shari lacks personal knowledge, in violation of Rule 602, because his only knowledge is based on hearsay statements from other people. *Third*, his testimony amounts to impermissible propensity evidence, in violation of Rule 404(b). *Fourth*, any probative value Shari's testimony may offer would be outweighed by confusing the issues, misleading the jury, and unfairly prejudicing Defendants, in violation of Rule 403. For all those reasons, the Court should preclude Shari's testimony.

### A.   Legal Standards.

Hearsay evidence is not admissible. Fed. R. Evid. 802. Hearsay constitutes an out of court statement made by a declarant, and which a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c)(1)–(2). Out of court statements are traditionally excluded because they lack the conventional indicia of reliability: "they are usually not made under oath . . . ; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury." *Chambers* v. *Mississippi*, 410 U.S. 284, 298 (1973).

Certain types of out of court statements are not hearsay, and are admissible for the truth asserted therein.  Fed. R. Evid. 801(d).  Statements by an opposing party's agent are not hearsay.  Fed. R. Evid. 801(d)(2)(D).  The statement at issue, however, "does not by itself establish . . . the existence or scope of the relationship."  Fed. R. Evid. 801(d)(2).

**B.    Argument.**

Shari is a journalist who wrote the *BusinessWeek* article "What Did Mobil Know?" in 1998.  *See* Ex. 2, *BusinessWeek* Article.  That article purported to chronicle human rights abuses allegedly perpetrated by the Indonesian military against civilians in Aceh in the early 1990s.  *See id.*  Plaintiffs intend to offer Shari's testimony about "his investigation of human rights abuses in Aceh, Indonesia, in 1998; the investigation, information and related events described in *What Did Mobil Know*, [B]usiness [W]eek (Dec. 28, 1998); and his communications and contacts with present and former Mobil employees and officials, subcontractors and other persons regarding these matters."  Ex. 5, Plaintiffs' January 6, 2021 Rule 26 Supplemental Disclosure, dated January 6, 2021, at 1 ("Supplemental Disclosure").  Shari's testimony should be excluded because it is irrelevant under Rule 402 and concerns inadmissible hearsay under Rule 802.

*First*, Shari's testimony is irrelevant, in violation of Rule 402.   Information pertaining to Shari's 1998 investigation about alleged human rights abuses against civilians in Aceh from the early 1990s has no bearing on Plaintiffs' claims in this case.  Plaintiffs' claims are based on conduct allegedly perpetrated by the Indonesian military in December 1998 and onwards. Information that Shari may provide about distinct incidents from *before* December 1998 does not make events from December 1998 onwards more or less probable.  For example, there is no indication that the military leadership from the early 1990s that allegedly perpetrated the violence Shari describes was still in place during the relevant time period at issue here such that any of the

alleged acts in this case were perpetrated by the same leadership. In fact, in his article, Shari describes how the "strongman President Suharto" who was in power during the early 1990s fell from power in May 1998—several months *before* Plaintiffs' first alleged injury even occurred in December 1998. Ex. 2, *BusinessWeek* Article, at CA0001078079. And Shari describes how, by December 1998, Indonesian human rights organizations were subsequently investigating claims of human rights abuses with assistance from the military, indicating the same military leadership allegedly perpetrating human rights abuses in the early 1990s (the subject of Shari's article) was not the same military leadership participating in human rights abuses investigations in 1998. *See id*. More to the point, the incidents that Shari allegedly investigated neither involve Plaintiffs nor their family members. Information concerning incidents involving third parties does not make the occurrence of the underlying incidents involving Plaintiffs or their family members any more or less probable. In turn, Shari's testimony does not make the fact of Defendants' alleged control over the Indonesian military during the relevant time period *after* those events more or less probable either. Finally, any testimony Shari may provide about his article has no bearing on the facts at issue here, because the article *itself*—as demonstrated in Defendants' [Fifth] Motion *in Limine*—has no bearing on the facts at issue here.[8] Accordingly, Shari's testimony is irrelevant and should be excluded for this reason alone.

       *Second,* Shari's testimony regarding his "communications and contacts with present and former Mobil employees and officials, subcontractors and other persons" is inadmissible hearsay, in violation of Rule 802. *See* Ex. 5, Supplemental Disclosure, at 1. Any testimony Shari may provide about communications he had concerning "human rights abuses in

---

[8]   *See supra* Defs.' Fifth Motion *in Limine* to (arguing Shari's article "What Did Mobil Know?" is irrelevant and separately, that its introduction would violate Rule 403).

Aceh" would involve the recitation of out-of-court statements.  And Plaintiffs would seek to use the testimony about those communications for the truths asserted therein, to imply that Defendants knew about human rights violations in Aceh and provided assistance in connection with those violations.[9]

Plaintiffs have not even identified the people about whose communications Shari will testify, and out-of-court statements by anonymous declarants have no indicia of reliability because the declarants themselves will not testify in court and Defendants will not be able to probe the declarants' veracity or credibility.  *See Chambers*, 410 U.S. at 298.

Shari's own lack of personal knowledge about the subject matter for which Plaintiffs intend to offer his testimony compounds the lack of any indicia of reliability.  *See* Fed. R. Evid. 602.   Shari's knowledge about alleged human rights abuses in Aceh and events in the early 1990s is derived entirely from what other people told him.  Because Shari's testimony about "communications and contacts with . . . Mobil employees and officials, . . . and other persons" is necessarily hearsay and is particularly devoid of indicia of reliability, it should be excluded.

*Third*, even if Shari's testimony had some probative value, which it does not, it should still be excluded as impermissible propensity evidence, in violation of Rule 404(b).  *See Rawlings,* 2011 WL 5325531, at *1.   Admitting Shari's testimony about other violent acts allegedly perpetrated by the Indonesian military against civilians would only be used to demonstrate that the Indonesian military acted violently towards civilians in the past and, therefore, perpetrated the violence that Plaintiffs allege in this case. *See Hudson*, 558 F.3d at 532.  But Rule

---

[9]    *See supra* Defs.' Fifth Motion in Limine (explaining Shari's hostile editorial position in "What Did Mobil Know?" implies that Defendants both knew about human rights violations in Aceh and provided assistance in connection with those violations).

404(b) prohibits using character evidence in that manner, and there is no other permissible use for such evidence at trial.  *See* Fed. R. Evid. 404(b); *Montoya*, 2012 WL 1132505, at *6.  Shari's testimony would also not demonstrate Defendants' knowledge of the abuses against Plaintiffs, because Shari's investigation does not pertain to acts by the Indonesian military against Plaintiffs. Nor would Shari's testimony demonstrate Defendants' awareness that those Indonesian soldiers who allegedly harmed Plaintiffs were prone to violence, because Shari's article does not identify any members of the Indonesian military who allegedly perpetrated the violence described in his article.  Without some identification of those soldiers, there is no connection to the particular soldiers who allegedly harmed Plaintiffs.  Because Shari's testimony would only introduce impermissible propensity evidence it should be excluded pursuant to Rule 404(b).

*Fourth*, even if Shari's testimony had some probative value and permissible use, which it does not, its inclusion will confuse the issues, mislead the jury, and unfairly prejudice Defendants, all in violation of Rule 403.  Shari's article will confuse the issues by introducing collateral incidents that involved different people and occurred at some earlier time.  Introducing collateral issues unrelated to Plaintiffs' claims would only confuse the jury by creating the risk of mini-trials over these issues.  *See Grzadzinski*, 2023 WL 1815719, at *4.  The addition of such collateral issues may also mislead the jury into thinking those incidents *should* or *do* bear on its liability determination about Defendants, where in reality they are completely separate.

Shari's testimony will also unfairly prejudice Defendants by highlighting alleged violent acts perpetrated by the Indonesian military.  Shari's article contains gruesome photographs and describes violent incidents in detail.[10]  Permitting Shari to testify about that information would

---

[10]  *See supra* Defs.' Fifth Motion in Limine (describing the contents and substance of Shari's article).

arouse the jury's sense of horror and may cause it to improperly determine liability based on its emotional or punitive instincts that such testimony could evoke. *See Flythe*, 4 F. Supp. 3d at 226–27. Because the risk of such an improper determination unfairly prejudices Defendants, Shari's testimony should be excluded pursuant to Rule 403.

In sum, Shari's testimony is inadmissible because it is irrelevant and is improper propensity evidence, because it contains hearsay, and because Shari lacks personal knowledge about the subject matter. In addition, Shari's testimony would confuse the issues, mislead the jury, and unfairly prejudice Defendants. For all of those reasons, Shari's testimony should be excluded.

## VII.   SEVENTH *MOTION IN LIMINE*: PLAINTIFFS SHOULD BE PROHIBITED FROM DESCRIBING OR IDENTIFYING ANY GEOGRAPHIC LOCATION AS "SKULL HILL."

Plaintiffs should be prohibited from using the phrase "Skull Hill" to identify or describe any geographic location because there is no admissible evidence demonstrating any geographic location in Aceh is or was called "Skull Hill." Use of the phrase "Skull Hill" or evidence pertaining to "Skull Hill" is therefore irrelevant pursuant to Federal Rule of Evidence 401. Even if this phrase were relevant, it is unfairly prejudicial to Defendants under Rule 403 and should be excluded on this additional, independent basis.

The phrase "Skull Hill" seemingly originates from Mr. Shari's article discussed above. *See* Defs.' Fifth Mot. Lim., *supra* at p. 17.[11] In that article, Mr. Shari describes a location in Aceh "notable for its deep, wide crevices" and indicates "[t]he locals have since named it 'Skull

---

[11]   As Defendants demonstrated in their Fifth Motion *in limine*, the entirety of Shari's article is inadmissible for several reasons, including that (i) it is inadmissible hearsay; (ii) it is replete with hearsay within hearsay; (iii) it violates Rule 602's personal knowledge requirement; and (iv) its hostile editorial stance and inflammatory allegations violate Rule 403. *See id.* These grounds for exclusion apply with equal force to the article's references to "Skull Hill."

Hill.'"  Ex. 2, *BusinessWeek* Article, at CA0001078082.  Mr. Shari does not identify the specific geographic location of this place, nor does he identify (or even describe) the "locals" who purportedly referred to this area as "Skull Hill."  In fact, he provides no named source for this phrase at all, and the article contains no indication that the "locals" Mr. Shari refers to are Plaintiffs or their deceased family members.  *See id.*

Use of the phrase "Skull Hill" is irrelevant and should be precluded.  This phrase will not make any fact in this case more or less probable because none of the plaintiffs and none of their witnesses allege anything happened at "Skull Hill."  Neither Plaintiffs nor their witnesses use the phrase "Skull Hill" in their filings and testimony.  Therefore, the phrase "Skull Hill" does not pertain to Plaintiffs or any of their claims.  Additionally, there is no admissible evidence that "Skull Hill" accurately identifies or reflects any geographic location in Aceh, much less a location connected to any claims in this case.  For example, there is no admissible evidence indicating this location is in or related to the Indonesian government's facilities at Arun Field that Defendants were operating.  Likewise, there is no evidence demonstrating that any of the human remains allegedly discovered in the location Mr. Shari's article describes are in any way related to Plaintiffs' claims or those they pursue on behalf of their family members.  In fact, based on the article's December 28, 1998 publication date, the alleged human remains could not be related to Plaintiffs' claims because Plaintiffs' claims do not allege any injury occurring prior to that date.  Accordingly, the purported existence of a location identified as "Skull Hill" or any evidence about "Skull Hill" has no bearing on the facts of this case and should be excluded.

Moreover, even if evidence regarding a place in Aceh identified colloquially by unidentified persons as "Skull Hill" was relevant, and it is not, the Court should still preclude the use of the phrase "Skull Hill" because it is inflammatory and unfairly prejudicial to Defendants.

Indeed, any probative value would be substantially outweighed by the danger of unfair prejudice, as the sole purpose for the use of the phrase "Skull Hill" would be to "arouse [the jury's] sense of horror" because the phrase calls to mind graphic images.  *See Flythe*, 4 F. Supp. 3d at 226-27.

Use of the phrase would also run the risk of misleading the jury into believing this place actually exists and is, therefore, related to Plaintiffs claims. In *MF Global Holdings Limited* v. *PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558 (S.D.N.Y. 2017), the court prohibited the creditors from using phrases such as "vulture funds" or "treasure hunters" to describe the claim holders, finding that such "pejorative terms" were "inflammatory," in addition to being unrelated to the issues at trial and unnecessary to prove the claims.  *Id.* at 570.  The same logic applies here because the phrase "Skull Hill" is a pejorative description of a place, in addition to being unrelated to the issues and unnecessary for Plaintiffs to prove their claims.  Accordingly, use of this phrase would unfairly prejudice Defendants and mislead the jury.  Therefore, the phrase "Skull Hill" should be precluded for this independent reason.

## VIII.   EIGHTH MOTION *IN LIMINE*: PLAINTIFFS SHOULD BE BARRED FROM DESCRIBING THEIR ASSAILANTS AS "EXXON SOLDIERS."

Plaintiffs and their witnesses should be precluded from referring to their alleged assailants as "Exxon soldiers."  Exxon does not have an army, and the soldiers who allegedly injured Plaintiffs were members of the Indonesian military.  Those facts are not in dispute.  The question the jury must answer is whether the conduct of particular members of the Indonesian military, if proven, can be attributed to Defendants under governing law.  Allowing Plaintiffs to refer to those soldiers as "Exxon soldiers" would mislead and confuse the jury by obscuring the question it must answer, resulting in unfair prejudice to Defendants, in violation of Federal Rule of Evidence 403.

Use of the phrase "Exxon soldiers" would mislead the jury because this phrase is an inaccurate description of the soldiers.  In *Isbell* v. *John Crane, Inc.*, 74 F. Supp. 3d 893 (N.D. Ill. 2014), the court precluded the plaintiff from describing a defendant (who had been hired for a "one-time examination") as the "company doctor," because the description was factually inaccurate.  *Id.* at 900–01.  In *Anderson* v. *Ford Motor Co.*, No. 2:06-CV-741, 2014 WL 4655289 (D. Utah Sept. 16, 2014), the court granted the defendants' motion *in limine* to preclude plaintiffs from describing the defendants as part of an "asbestos company" or the "asbestos industry," because the plaintiff could not demonstrate that those phrases were accurate descriptions of the defendants and their use would risk confusing the jury and prejudicing the defendants.  *Id.* at *1. Like those inaccurate descriptions, the phrase "Exxon Soldiers" is also an inaccurate description: there is no such thing as an "Exxon soldier" because Defendants do not and have never had a military force, let alone one that is alleged to have harmed Plaintiffs.  Because the phrase "Exxon soldiers" is an inaccurate description, its use would mislead the jury about who or what entity allegedly carried out the injuries underlying Plaintiffs' claims.

Use of the phrase "Exxon soldiers" would also confuse the jury by obscuring the question it must answer.  Here, whether the soldiers who harmed Plaintiffs are "Exxon soldiers" is not a question of fact for the jury to decide.  In the first paragraph of their operative complaint, Plaintiffs themselves explicitly allege that all of the plaintiffs in this matter were injured by *Indonesian* soldiers.  *See* ECF No. 465, 2nd Am. Compl. ¶ 1 ("Plaintiffs [] bring this Complaint for equitable relief and for damages to remedy the injury they have suffered and continue to suffer for conduct inflicted by members of the Indonesian military[.]").  The jury must determine in this matter if Defendants can be held liable for the actions of those Indonesian soldiers.  Use of the phrase "Exxon soldiers" would confuse the jury by improperly suggesting that the soldiers were

employed by Defendants, rather than the Government of Indonesia.  This improper suggestion would obscure the very determination the jury must make.

Even if the use of the phrase "Exxon soldiers" were not an inaccurate description that would confuse and mislead the jury, its use would unfairly prejudice Defendants.  The phrase "Exxon soldiers" is inflammatory because introducing this misnomer at trial would cause the jury to wrongly associate Defendants with military operations, violence, and war.  *See Mf. Glob. Holdings Ltd.*, 232 F. Supp. 3d at 570.  These associations would risk improperly evoking the jury's instinct to punish Defendants for the harms allegedly inflicted against Plaintiffs.  Because the phrase "Exxon soldier" may encourage the jurors to base their decision on their instinct to punish rather than on the evidence in this case, the phrase is unfairly prejudicial.  *See Flythe*, 4 F. Supp. 3d at 226–27.

Any reference to Plaintiffs' alleged assailants as "Exxon soldiers" would be an inaccurate description of the assailants.  Such references would serve only to confuse and mislead the jury and arouse unfair prejudice against Defendants.  Accordingly, all such references should be precluded pursuant to Rule 403.

## IX.    <u>NINTH MOTION *IN LIMINE*</u>: EVIDENCE OF OTHER LAWSUITS AND SETTLEMENTS INVOLVING EXXON MOBIL CORPORATION SHOULD BE EXCLUDED.

Plaintiffs should be precluded from introducing evidence of unrelated lawsuits and settlements involving Defendants because such evidence is irrelevant and unfairly prejudicial.

Courts exclude evidence of other litigation involving a party to a dispute as irrelevant evidence when the other litigation is unrelated to the case at issue.  In *Flir Systems, Inc.* v. *Fluke Corporation*, 3:10-cv-00971-HU, 2012 WL 13054267 (D. Or. Nov. 29, 2012), the plaintiff alleged claims for false advertising, trade libel, and civil conspiracy, among other claims.

There, the court granted the plaintiff's motion *in limine* to exclude evidence of other, "unrelated litigation" involving the plaintiff, including litigation regarding trade secret misappropriation because "the prior decisions involving [the plaintiff] are not relevant."   at *4.   Additionally, evidence of previous litigation involving the parties to a case is "routinely excluded under [Federal Rule of Evidence 403] . . . when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha* v. *Raymark Indus.*, 972 F.2d 707, 516 (3d Cir. 1992).   In *Flir Systems*, the court also precluded evidence of other litigation involving the plaintiff because it would "be unfairly prejudicial" to the plaintiff. 2012 WL 13054267, at *4.   Additionally, "[e]vidence about unrelated lawsuits is inflammatory and likely to prejudice the jury." *Richards* v. *Par, Inc.*, No. 1:17-cv-00409-TWP-MPB, 2021 WL 4775350, at *8 (S.D. Ind. Oct. 13, 2021)  (internal quotation marks and citation omitted).

Evidence of any other litigation or settlements involving Defendants is irrelevant. *See Flir Sys.*, 2012 WL 13054267, at *4.   Decisions in other litigation involving Defendants do not make the question of Defendants' liability in this case more or less probable.   Other cases involving different people or entities and completely different claims are not probative of the specific fact determination the jury must make in this case regarding whether Defendants controlled the Indonesian military from the period of 1998–2001.   Similarly, settlements between Defendants' and other parties in any other type of litigation—including tort or personal injury— cases has no bearing on whether the Indonesian military injured Plaintiffs between 1998 and 2001. Because such evidence has no probative value, it is irrelevant and should be excluded.

Even if evidence of other litigation or settlements involving Defendants has some probative value, which it does not, its admission would unfairly prejudice Defendants. *See Flythe*, 4 F. Supp. 3d at 226–27.   Introduction of such evidence would inflame the jury by causing it to

draw associations between this case and other litigation or settlements involving Defendants.  *See Richards*, 2021 WL 4775350, at *8.  Putting these associations before the jury could lead the jury to "base its decision on something other than the established propositions in the case."  *Id.*  The jury may improperly (and incorrectly) infer that Defendants are liable for the claims in this case because they have been involved in other litigation or settled disputes in the past.  Additionally, permitting Plaintiffs to offer evidence of other litigation would confuse the jury with the introduction of collateral questions involving different parties and different claims.  *See Blancha*, 972 F.2d at 516.  The introduction of such questions would distract the jury from the actual issues in this case.  Because evidence of other litigation or settlements involving Defendants may cause the jury to assess Defendants' liability by improper means and would confuse and distract the jury it is unfairly prejudicial.  *See Flir Sys.*, 2012 WL 13054267, at *4.  Accordingly, it should be excluded pursuant to Rule 403.

X.   **TENTH MOTION *IN LIMINE*: PLAINTIFFS SHOULD BE PROHIBITED FROM OFFERING NON-REBUTTAL TESTIMONY FROM PLAINTIFFS' PROPOSED WITNESS MARK CAMMACK.**

In the event that Plaintiffs call their Indonesian law expert, Professor Mark Cammack, to testify at trial, his testimony should be limited in scope to rebuttal of the single, narrow topic for which Defendants may call their own Indonesian law expert, Professor Timothy Lindsey.

The Federal Rules permit a party to introduce rebuttal exert testimony "solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii).  A rebuttal expert may not "advance new arguments or new evidence."  *Blake* v. *Securitas Sec. Services, Inc.*, 292 F.R.D. 15, 17 (D.D.C., 2013) (quotations and citation omitted).  Rather, the rebuttal expert is limited to "explain, repel, counteract, or disprove evidence of the

adverse party." *Id.* (quotations and citation omitted).  If a rebuttal expert's testimony goes beyond the scope of the topic areas for which he or she has been called to rebut, the witness "may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a) and the Court's governing scheduling order." *Id.* at 18 (citations omitted).

Here, Defendants designated Professor Cammack as a rebuttal witness, and he should not be permitted to testify or opine about Indonesian legal authorities or other subject areas outside of the narrow, discrete topic for which Professor Lindsey has been noticed and will testify. During expert discovery in this matter, Defendants affirmatively disclosed Professor Lindsey as an expert in Indonesian law, and Plaintiffs disclosed Professor Cammack as a rebuttal expert.  In their reports, Professor Lindsey opined on, and Professor Cammack responded to, a number of topics, primarily related to the appropriate standard of care in this matter.  However, as a result of negotiations between the parties aimed to reducing the number of witnesses at trial and the duration of their testimonies, Defendants agreed to offer Professor Lindsey at trial on only a single topic covered in two pages of Professor Lindsey's 27-page report: "The constitutional, statutory, and regulatory basis for the Indonesian government's and military's obligation to control and secure Indonesia's natural resources and associated facilities."  Plaintiffs, in turn, provided notice on their Witness List that Professor Cammack "may testify as a rebuttal witness if Professor Timothy Lindsey is permitted to testify."

Accordingly, to the extent Professor Cammack seeks to testify about any topics or areas beyond the scope of Professor Lindsey's testimony, the Court should preclude him from doing so.

**XI.**     **ELEVENTH MOTION *IN LIMINE*: PLAINTIFFS SHOULD BE PROHIBITED FROM OFFERING DOCUMENTS INADEQUATELY DESCRIBED AND IMPROPERLY DISCLOSED IN THEIR EXHIBIT LIST.**

Plaintiffs' exhibit list fails to describe many of its entries with sufficient specificity, thereby failing to satisfy the requirements of Local Civil Rule 16.5(b)(6).  Plaintiffs should be precluded from introducing at trial any exhibits from their list that were not adequately described and identifiable in a timely manner or that have not been produced to Defendants.

Rule 16.5(b)(6) requires parties to "set forth a description of each exhibit the party may offer in evidence (other than those created at trial) [which] shall be listed by title and date." The exhibit lists must "clearly identif[y] the specific documents [the parties] intend[] to admit." *Klayman* v. *Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 144 (D.D.C. 2011).

Plaintiffs' exhibit list does not satisfy these requirements, and Plaintiffs have yet to cure its deficiencies.  Pursuant to the Court's pretrial scheduling order, on March 15, 2023, the parties exchanged their respective lists of exhibits to be used at trial.  *See* ECF No. 858.  Plaintiffs' exhibit list includes 92 entries with vague and inadequate descriptions, such as "Photograph of Jane Doe I" and "Waspada," that make  identification of the exhibit impossible.  None had a Bates number or any other indicia that it had been produced.[12]  In addition, Plaintiffs' exhibit list includes

---

[12]   Those 92 exhibits are: TPX 1036, 1037, 1038, 1045, 1076, 1078, 1079, 1085, 1086, 1087, 1088, 1089, 1090, 1091, 1092, 1094, 1095, 1096, 1097, 1099, 1100, 1102, 1103, 1107, 1111, 1113, 1114, 1117, 1121, 1122, 1125, 1164, 1165, 1166, 1167, 1169, 1185, 1189, 1192, 1193, 1194, 1195, 1196, 1201, 1203, 1204, 1205, 1206, 1208, 1209, 1211, 1212, 1213, 1214, 1215, 1216, 1217, 1218, 1219, 1220, 1221, 1222, 1223, 1224, 1225, 1226, 1227, 1228, 1229, 1230, 1231, 1232, 1233, 1234, 1235, 1236, 1237, 1238, 1239, 1240, 1241, 1242, 1243, 1244, 1245, 1246, 1247, 1248, 1249, 1250, 1254, and 1259.

12 facially improper entries that, rather than describing particular documents, describe broad categories of documents.  These entries state the following:[13]

1. Maps of Aceh, Indonesia and the areas surrounding
2. Any and all photographs, videos, and documents indicating damages suffered by Plaintiffs
3. Any and all photographs and videos of the sites of the Plaintiffs' injuiries [sic]
4. Any and all organizational charts produced by Defendants
5. Any and all documents attached as exhibits to any and all depositions taken in this action
6. Blow-ups or enlargements of any exhibits
7. Any and all exhibits listed by Defendants
8. All depositions taken in this case
9. Any records produced by any records custodian stated in the witness list of either party
10. Any and all exhibits presented for impeachment or rebuttal
11. Any and all production from third party subpoenas produced in a timely manner to the opposing side
12. Any and all answers to interrogatories, responses to requests for admissions or responses to request for production

Neither category of deficient entries put Defendants on notice as to which exhibits Plaintiffs intend to introduce at trial by "clearly identif[ying] the specific documents [they] intend[] to admit." *Klayman*, 802 F. Supp. 2d at 144.  Nor do they satisfy the specific requirements of Rule 16.5(b)(6) which requires exhibits to be listed by date and title.

Defendants asked Plaintiffs to address these and other deficiencies in their exhibit list.  Plaintiffs agreed to consider Defendants' request and have provided some information in response.  To date, however, Plaintiffs have not produced copies of or otherwise adequately identified the exhibits and categories of exhibits addressed in this motion.  In light of that record and to the extent Plaintiffs fail to address these deficiencies in a manner that avoids imposing undue burden, unnecessary costs, and unfair prejudice, Plaintiffs should be precluded from

---

[13] Plaintiffs included a thirteenth "categorical" entry for "Any and all documents produced in discovery by any and all parties," but have since agreed to remove this entry from their exhibit list.

introducing the 92 unidentifiable documents and anything falling under the remaining 12 facially improper entries.

## XII.  <u>CONCLUSION</u>

For the reasons stated above, the Court should grant ExxonMobil's motions *in limine*.

Washington, DC                                Respectfully submitted,
March 22, 2023

<u>        /s/ Justin Anderson        </u>
Theodore V. Wells, Jr. (Bar No. 468934)
twells@paulweiss.com
Jaren E. Janghorbani (admitted *pro hac vice*)
jjanghorbani@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

Justin Anderson (Bar No. 1030572)
janderson@paulweiss.com
Mitchell Webber (Bar No. 1024005)
mwebber@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006-1047
Telephone:  (202) 223-7300

*Attorneys for Defendants Exxon Mobil Corporation and ExxonMobil Oil Indonesia Inc.*