CONFIDENTIAL
FILED UNDER SEAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE I, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 01-1357 (RCL/AK) |
| | ) |
| v. | ) |
| | ) |
| EXXON MOBIL CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' MOTIONS IN LIMINE CONCERNING DEFENDANTS' ALLEGATIONS ABOUT PLAINTIFFS' COUNSEL OR THEIR CONDUCT

CONFIDENTIAL
FILED UNDER SEAL

## TABLE OF CONTENTS

1.      The Court Should Exclude Questioning, Testimony, Attorney Argument
        and Evidence Concerning Payments to Witnesses as Irrelevant and
        Prejudicial...........................................................................................................1

2.      The Court Should Exclude Questioning, Testimony, Attorney Argument
        and Evidence Concerning Compensation of Plaintiffs' Counsel's Agents
        in Indonesia as Irrelevant and Prejudicial. ............................................................6

3.      The Court Should Exclude Questioning, Testimony, Attorney Argument
        and Documentary Material Concerning Allegations of Impropriety
        Against Plaintiffs' Counsel Terrence Collingsworth as Irrelevant and
        Prejudicial.........................................................................................................14

4.      The Court Should Exclude Irrelevant, Prejudicial, and Unsupported
        Attorney Argument Concerning Plaintiffs' Counsel and Their Motives..............19

CONFIDENTIAL
FILED UNDER SEAL

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Betts v. City of Chicago*,
    784 F. Supp. 2d 1020 (N.D. Ill. 2011)..........................................................................5, 6, 10

*Consol. Rail Corp. v. CSX Transp. Inc.*, 2012 WL 511572, at *13 (E.D. Mich.
    2012)................................................................................................................................5, 6

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
    2022 WL 17403313 (D.D.C. 2022)......................................................................................17

*Democracy Partners, LLC v. Project Veritas Action Fund*,
    2022 WL 3334689 (D.D.C. 2022) .......................................................................................14

*Entrust Datacard Corp. v. Zeiser GmbH*,
    2019 WL 7472893 (M.D. Fla. 2019).....................................................................................17

*Fairholme Funds, Inc. v. FHFA*,
    2022 WL 13937460 (D.D.C. 2022) (Lamberth, J.).............................................................5, 12

*In re. General Motors LLC Ignition Switch Litig.*,
    2015 WL 8130449 (S.D.N.Y. 2015) ................................................................. 12, 13, 17, 18

*H&L Farms LLC v. Silicon Ranch Corp.*,
    2023 WL 1795705 (M.D. Ga. 2023) .....................................................................................17

*Hague v. Univ. of Tex. Health Sci. Ctr. At San Antonio*,
    2016 WL 206483 (W.D. Tex. 2016) (Lamberth, J.) .................................................. 5, 12, 17

*Hyatt v. Vidal*,
    2022 WL 17904225 (D.D.C. 2022) (Lamberth, J.)................................................................10

*Masters v. Safeco Ins. Co. of Am.*,
    2021 WL 4317112 (D. Colo. 2021)) ............................................................................. 13, 18

*Mattiaccio v. DHA Grp., Inc.*,
    2017 WL 6766296 (D.D.C. 2017) ......................................................................................17

*Mehle v. Saul*,
    2005 WL 8167653 (D.D.C. 2005) ........................................................................................4

CONFIDENTIAL
FILED UNDER SEAL

*Nunes v. Rushton*,
 2018 WL 2214593 (D. Utah 2018) ........................................................ 6, 13, 18

*Patsy's Italian Rest., Inc. v. Banas*,
 2008 WL 795341 (E.D.N.Y. 2008) ................................................................... 17

*Prasad v. MML Invs. Servs., Inc.*,
 2004 WL 1151735 (S.D.N.Y. 2004) ................................................................... 4

*Shannon v. Koehler*,
 2011 WL 10483366 (N.D. Iowa 2011) ............................................................... 5

*Tutein v. Ford Motor Co.*,
 2016 WL 9503687 (Super. Ct. V.I. 2016) ......................................................... 10

*U.S. v. Lin*,
 101 F.3d 760 (D.C. Cir. 1996) ......................................................................... 14

*U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*,
 289 F. Supp. 3d 118 (D.D.C. 2018) ........................................................... 16, 17

## Statutes

28 U.S.C. § 1821 ................................................................................................. 4, 5

## Other Authorities

D.C. Bar Ethics Opinion 233 ............................................................................... 8, 13

Fed. R. Evid. 104(b) ......................................................................................... 10, 19

Fed. R. Evid. 401 .............................................................................................. *passim*

Fed. R. Evid. 402 ................................................................................................. 7, 19

Fed. R. Evid. 403 .............................................................................................. *passim*

Fed. R. Evid. 404 .......................................................................................... 15, 16, 17

CONFIDENTIAL
FILED UNDER SEAL

Pursuant to the Federal Rules of Evidence, the Court's inherent authority to manage trial, and the Court's Order (Dec. 12, 2022, ECF No. 858), Plaintiffs respectfully submit the following motions *in limine* concerning allegations about Plaintiffs' counsel or their conduct. Because these motions address arguments and allegations and arguments Defendants have made over the course of the 22-year litigation history of this case that go to the core of counsel's integrity, Plaintiffs thought these motions were best addressed separately from the omnibus motions *in limine* filed concurrently under separate cover.

Plaintiffs wish to emphasize that these motions do not seek to litigate the propriety of Defendants' past allegations and arguments or relitigate Plaintiffs' counsel's integrity or the propriety of their conduct. Indeed, though Defendants' past litigation tactics suggest that the below motions *in limine* are a prudent precaution, Plaintiffs do not know if Defendants intend to pursue these issues at trial. In the wake of the Court's Opinions on sanctions in 2021, relations between the parties' counsel have been cordial and respectful. *See* Mem. Op., ECF No. 803 (May 7, 2021); Mem. Op., ECF No. 808 (May 12, 2021). Nonetheless, as a prophylactic measure the Court should draw clear lines that any attempts to impugn counsel's integrity or conduct will be viewed to be irrelevant and prejudicial.

1. **The Court Should Exclude Questioning, Testimony, Attorney Argument and Evidence Concerning Payments to Witnesses as Irrelevant and Prejudicial.**

The Court should prohibit Exxon from presenting evidence or argument about payments made to cover litigation-related expenses, including permissible reimbursements made directly to Plaintiffs or third-party witnesses.

It is beyond dispute that an attorney may provide for the expenses of litigation, including the costs of obtaining and presenting evidence. D.C. R. Pro. Conduct 1.8(d). Indeed, the Court

CONFIDENTIAL
FILED UNDER SEAL

previously declined to permit discovery on such legitimate litigation expenses. Mem. Op., ECF No. 586 (December 7, 2016) at 21 (hereinafter, "*Doe* 2016 Discovery Op."). Consistent with prevailing authority and applicable ethics rules, this Court explained "that such payments are in fact generally proper." *Id.* at 20; *see also id.* at 19 (noting that Exxon paid for witness' travel expenses to attend a deposition and meals during which litigation was discussed).

Nonetheless, Exxon aggressively and extensively questioned Plaintiffs and their witnesses during depositions about payments for litigation-related expenses and served Requests for Admission on the same topics. The Plaintiffs testified that they received payments to cover the expenses of obtaining visas and passports, to cover the expense of attending their depositions, and received meals at meetings. Likewise, the third parties testified that they received payments or were promised reimbursements to cover the cost of attending their depositions, including meals. The witnesses also testified that they did not pay for the hotel room where the depositions were held and were generally unaware of who paid for the cost of the room. This testimony, the Requests for Admission, and any other evidence regarding counsel's payment for reasonable litigation-related expenses should be excluded under Federal Rules of Evidence 401 through 403, as it is not relevant to Plaintiffs' claims, is potentially misleading (and therefore prejudicial), and would only serve to confuse the jury and waste time.

*Background*

Both Defendants and Plaintiffs paid for legitimate, litigation related expenses, such as witness transportation for interviews and depositions, food during meetings, and expenses attendant to obtaining passports and visas. *Id.* at 19-20.

Nonetheless, Exxon asked the Plaintiffs—at length—whether they had paid for these types of expenses. *See, e.g.*, Ex. 1, Jane Doe II Dep. 87:10-17 ("Q: Did you pay for your airplane

CONFIDENTIAL
FILED UNDER SEAL

fare to go to Jakarta [to interview for a visa]? A: No, I didn't. Q: Did you pay for the hotel you stayed in when you were in Jakarta? A: No, I didn't. Q: Who paid for it? A: I don't know who paid for it."); Ex. 2, Jane Doe V Dep. 57:9-17 ("Q: Did someone else pay for your trip to Jakarta? A: Yes, it is the lawyer who pay the trip. She doesn't have money for that. Q: And are there any other things that your lawyers have paid for you? A: No, it is just the food during the trip and then the passport and the ticket."); Ex. 3, Jane Doe VI Dep. 15:22-16:3 ("Q: Were there any fees that had to be paid for the passport? A: No, it was made by some—by other people. Q: Did you have to pay for it? A: No."); Ex. 4, John Doe IV Dep. 11:2-13 ("Q: How much did it cost for you to obtain your passport? A: 450. Q: 450 rupiah? A: 450,000. Q: Did you pay that fee? A: No. Q: Who paid the fee? A: I do not remember who was that. Q: You don't remember who paid the fee for your passport? A: I do not remember.").[1] Unsurprisingly, the witnesses often did not recall the name of the person who had made the payment for a hotel room or other expense.

Exxon also asked both Plaintiffs and the third-party witnesses whether they had been reimbursed for expenses related to their attendance at their depositions. *See, e.g.*, Ex. 4, John Doe IV Dep. 45:21-46:6 ("Q: Has [Agent] ever given you any money? A: Yes, he gave me 200,000. Q: When did he give you 200,000 rupiah? A: When I got home, he gave me 200,000 to go here and I spent it. Q: What did you spend it on? A: To get food, smoke, and a motorcycle taxi."); Ex. 5, Jane Doe IV Tr. 30:21-31:4 ("Q: Is [Counsel's agent] paying for the hotel today? A: I don't know about that. I was asked only to come to the hotel. I'm not a smart person. I don't know about that. Q: You're not paying for the hotel today, are you? A: Yes, I'm not."); Ex. 3, Jane Doe VI Dep. 38:22-25 ("Q: Who gave you 200,000 rupiah? A: It is not the lawyer. It is [Counsel's

---

[1] Objections are omitted throughout these motions.

agent]. It is for food and drinks when we travel, about 100 or 200,000 rupiah."); Ex. 6,

██████ Dep. 49:18-25 (Asking regarding deposition location, "Q: Are you paying for your

stay in the hotel? A: No. Q: who is paying that? A: I do – I do not know. Q: Did you pay for your

transportation to the hotel? A: No.); Ex. 7, ██████ Dep. 42:19-21 (Q: And who is paying for

the hotel room? A: I do not know who."). Unsurprisingly, the witnesses did not know who—

whether Exxon or Plaintiffs' counsel—was paying for the cost of the deposition hotel.

*Argument*

Exxon should not be permitted to play this testimony or elicit similar testimony at trial.

The payment of litigation-related expenses by an attorney is necessary and proper. *Doe*
2016 Discovery Op. at 20; *see also id.* at 19; D.C. R. Pro. Conduct 1.8(d) (a lawyer may pay or
otherwise provide "the expenses of litigation or administrative proceedings, including court
costs, expenses of investigation, expenses or medical examination, costs of obtaining and
presenting evidence"); *Mehle v. Saul*, 2005 WL 8167653, at *6 (D.D.C. 2005) (noting an
attorney may pay the costs of a lawsuit and citing Rule 1.8(d) of the D.C. Rules of Professional
Conduct).

Covering such expenses for a witness is not only proper, *see* D.C. R. of Pro. Conduct 3.4
cmt. 8 ("[I]t is not improper to pay a witness's expenses or to compensate a witness for loss of
time in preparing to testify, in attending, or in testifying."); *Prasad v. MML Invs. Servs., Inc.*,
2004 WL 1151735, at *5 (S.D.N.Y. 2004) (federal courts "are generally in agreement that a
witness may properly receive payment related to the witness' expenses . . . ."), but it is actually
required by law, *see* 28 U.S.C. § 1821.[2]

---

[2] Plaintiffs did not make the $40 payments to the Indonesian witnesses that § 1821(b)
requires as compensation for attendance at their depositions. Plaintiffs notified Exxon that they

Evidence about payments and reimbursements made to the Plaintiffs and third-party witnesses for reasonable litigation-related expenses are not relevant to show bias or any other issue. These are expenses the Plaintiffs and witnesses would not have incurred but for their participation in this litigation *See Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1029 (N.D. Ill. 2011) (prohibiting "any argument or testimony that Chicago Police Department personnel are being paid any amount less than or equal to the wages they are normally paid to do their jobs as compensation for appearing in court and testifying"); *Consol. Rail Corp. v. CSX Transp. Inc.*, 2012 WL 511572, at *13 (E.D. Mich. 2012) (precluding "Defendant from introducing evidence for the purpose of trying to show that Plaintiffs or their counsel 'bought' the testimony of Paul Carey or otherwise engaged in any unlawful or unethical conduct").

Here, the jury will not understand what the relevant ethical rules allow, and the specter of financial impropriety (even when there is none) poses a risk of prejudice. *See Shannon v. Koehler*, 2011 WL 10483366, at *8 (N.D. Iowa 2011) (excluding evidence that "creates the appearance that [the plaintiff] has used improper and deceitful means in securing evidence for trial"); *see also Fairholme Funds, Inc. v. FHFA*, 2022 WL 13937460, at *7 (D.D.C. 2022) (Lamberth, J.) (excluding evidence and arguments that did not serve "any purpose other than to make plaintiffs seem less sympathetic to the jury"); *Hague v. Univ. of Tex. Health Sci. Ctr. At San Antonio*, 2016 WL 206483, at *2 (W.D. Tex. 2016) (Lamberth, J.).

Moreover, the evidence would confuse the issues. If Exxon offered evidence of payments or reimbursements Counsel made for reasonable litigation-related expenses, Plaintiffs would

intended to make these payments, but Exxon objected. Out of an abundance of caution and in light of Exxon's history in this litigation of mischaracterizing Counsel's conduct, Plaintiffs refrained making the § 1821(b) payments and did not notify the witnesses they were entitled to or would receive any such payment. With the Court's approval, Plaintiffs propose making these payments at the conclusion of this litigation so they can fulfill their statutory obligation.

CONFIDENTIAL
FILED UNDER SEAL

need to offer evidence and argument that these payments were all ethically proper (and in some instances legally required). A lay jury cannot be expected to know the legal ethics involved, and Exxon has disclosed no expert that might explain it to them. Such evidence would confuse the issues (and the jury), needlessly distract from the merits of the case, and waste time. It should be excluded under Rules 401 through 403. *See Nunes v. Rushton*, 2018 WL 2214593, at *4 (D. Utah 2018) (excluding evidence of attorneys' litigation conduct as confusing, prejudicial, and a waste of time); *Betts*, 784 F. Supp. 2d at 1029; *Consol. Rail Corp.*, 2012 WL 511572, at *13.

Finally, evidence of reimbursements made to Plaintiffs and the Indonesian witnesses has the additional potential to mislead the jury because all such payments would have been made in Indonesian rupiah. The dollar-to-rupiah exchange rate is typically in the range of 14,000 to 15,000 rupiah per dollar, meaning a small amount of money in rupiah can appear quite large to an American not familiar with this exchange rate. For example, one Plaintiff testified that Counsel's agent gave him 200,000 rupiah for expenses incurred in travelling to his deposition. *See* Ex. 4, John Doe IV Tr. 45:23-46:10. This will sound like a large amount of money to the jury, but it converts to only about *$13.00 USD*. At the least, the jury would need to become familiar with the exchange rate—adding one more issue to a case with no shortage of complexities.

> **2.** **The Court Should Exclude Questioning, Testimony, Attorney Argument and Evidence Concerning Compensation of Plaintiffs' Counsel's Agents in Indonesia as Irrelevant and Prejudicial.**

Plaintiffs move the Court to exclude from trial any evidence, argument, and cross-examination concerning Plaintiffs' counsel's retention of Acehnese agents to assist with this litigation, including Plaintiffs' and third-party witnesses' interactions with those agents or counsel's contract with the agents, which Defendants have listed as DX0003 on their Exhibit List. *See* Ex. 8, Defs. Exhibit List (Mar. 15, 2023); Ex. 9, Contract. Exxon has throughout this litigation

sought to malign Plaintiffs' counsel and imply without evidence that they are guilty of an array of misconduct. Counsel's Acehnese staff have featured prominently in these narratives, though the Court has previously ruled that there is no evidence that Plaintiffs' counsel or their agents have committed any misconduct in this case, and, despite substantial effort, Exxon can still muster no such evidence (because there is none).

Because there is no evidence—at all—that the Acehnese staff have done anything improper, any documentary material, argument, and cross-examination about counsel's relationship the agents, including the contract, must be excluded under Federal Rules of Evidence 401 and 402. Even to the extent this evidence may be relevant (it is not), the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time, and should thus be excluded under Federal Rule of Evidence 403. Allowing Exxon to create a trial-within-a-trial about these individuals, even though their conduct falls squarely within relevant ethical rules, should not be permitted.

*Background*

In order to represent their clients and litigate this case, Plaintiffs' Counsel require the assistance of agents in Aceh. Plaintiffs' Counsel all live and work in the United States, while the Plaintiffs all live in rural parts of Aceh, Indonesia. None of Plaintiffs' Counsel speak Acehnese, and none of the Plaintiffs speak English. The Plaintiffs are not technologically literate, and with one exception, none can operate a computer without assistance, nor do they have easy access to the internet. The same is by and large true of the third-party witnesses Plaintiffs have relied upon to corroborate their allegations. These barriers make it impossible for Counsel to represent the Plaintiffs without the assistance of a small team in Aceh who perform tasks ranging from the fundamental, like translating Counsel's communication with Plaintiffs, to the mundane, like

CONFIDENTIAL
FILED UNDER SEAL

printing documents for the Plaintiffs to sign and sending the final version to Counsel, among all other tasks required for Counsel to represent indigent villagers on the other side of the world.

Due to the unusual length of this lawsuit and to incentivize prompt compliance with the Court's orders, including on seeking to obtain passports and visas on time, Counsel in 2015 entered into a deferred-compensation agreement with the Agents. *See* Defs.' Reply ISO Cross-Mot. for Prot. Order, ECF No. 682-3 at Ex. 5 (Mar. 19, 2020). Under this agreement, Counsel promised to offer the four staff people a lump sum payment at the conclusion of the litigation and a bonus.[3] Counsel modeled the deferred-compensation agreement in accordance with D.C. Bar Ethics Opinion 233, which found that a "success fee" could appropriately be paid to a nonlawyer agent, and Counsel strictly adhered to ethical requirements discussed in that opinion.

Exxon has repeatedly—and without support[4]—implied in filings before the Court that Counsel's retention of the Acehnese Agents is somehow improper or that the Acehnese Agents have engaged in some sort of unspecified misconduct. *See, e.g.*, Defs.' Mot. to Compel, ECF No. 558, at 6-7; Defs.' Cross-Mot. for Prot. Order, ECF No. 678, at 4 (Mar. 9, 2020).

Despite its posturing, Exxon has uncovered no evidence of impropriety—because there is none. In 2016, the Court ruled that "defendants have not convinced the Court that plaintiffs are hiding improper witness payments." *Doe* 2016 Discovery Op. at 21. In the time since, Plaintiffs have provided Exxon discovery into Counsel's retention of the Acehnese Agents, and Exxon extensively questioned the Plaintiffs and third-party witnesses about the Acehnese staff and the various bad acts Exxon speculates they may have committed. Unsurprisingly, the testimony

---

[3] When the agreement was signed in 2015, the maximum compensation amounted to $6,250 per person per year. In 2023 it amounts to approximately $4,000 per person per year.

[4] *See, e.g.*, *Doe* 2016 Discovery Op. at 20 ("Defendants have not introduced evidence" of misconduct).

CONFIDENTIAL
FILED UNDER SEAL

Exxon elicited merely confirmed that nothing untoward has occurred. For example, Exxon asked the Plaintiffs and the third-party witnesses whether they had received payment for their testimony: they had not. *See, e.g.*, Ex. 11, Jane Doe I Dep. 40:3-42:4 ("Q: Has ██████ ever offered you any money to join this lawsuit? A: No. Q: . . . Did █████ ever offer you money to join this lawsuit? No. . . . Q: Has ███████████ offered you anything for this case? A: No. Q: Has ████████ offered you anything for this case? A: No. Q: Have you received any payments from anyone for this case? A: No."); Ex. 10, John Doe II Dep. 38:18-39:4 ("Q: Has ██████ ██ or ████████ given you any money? A: No. Q: Has anyone given you any money for being a part of this case? A: No, I have never received anything."); Ex. 12, ████████ Dep. 42:5-9 ("Q: Did █████ ever give you money? A: No, sir. Q: Has █████ ever promised to give you money? A: No, sir."); Ex. 13, ██████ Dep. 24:12-13 (Q: Has ██████ given you any money? A: No."); Ex. 7, ██████ Dep. 43-5-10 ("Q: Has brother ██████ ever given you any money? A: No. Q: Are you being paid for testifying today? A: No.").[5]

Exxon also asked the Plaintiff about the Agents' compensation and about the contract Counsel had entered into with the Agents. For example, Exxon asked Plaintiff Jane Doe IV,

Q: Do you know how much ██████ is being paid by working on your case?

A: I don't know.

Q: Have you signed any documents in the case that talks about how much money ██████ could make by working on the case?

A: I do not remember. It's a long time.

---

[5] Plaintiffs have also filed a motion *in limine* on the appropriate payment of reasonable litigation expenses, *supra* MIL No. 1.

Ex. 5, Jane Doe IV Dep. 124:5-12. *See also* Ex. 14, Jane Doe III Dep. 31:19–32:10; Ex. 11, Jane

Doe I Dep. 43:22-45:5 (questioning witness about a document called a "contingency fee

contract"). Exxon spent a substantial portion of the depositions on these questions.

     *Argument*

     Although evidence of witness bias is relevant, evidence offered for this purpose must

actually have some tendency to show witness bias. *See, e.g.*, *Tutein v. Ford Motor Co.*, 2016 WL

9503687, at *2 (Super. Ct. V.I. 2016) ("[I]f the vehicles owned by Defendants' witness were not

provided by Defendants for free or at a reduced price, then this evidence does not show witness

bias, which makes the evidence irrelevant and therefore, inadmissible."). Thus, without more,

"evidence of non-witness bias" is not admissible. *Hyatt v. Vidal*, 2022 WL 17904225, at *17

(D.D.C. 2022) (Lamberth, J.) (holding evidence that defendant entity "as a whole" was biased

against plaintiff was not relevant to "the specific bias of the specific witnesses" plaintiff sought

to impeach); *see also Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1028 (N.D. Ill. 2011)

(holding that "generalized allegations" of police officer bias are "not helpful" to show witnesses'

bias).

     Here, Plaintiffs anticipate that Exxon will attempt to introduce evidence of the Acehnese

Agents' involvement and interest in this litigation to argue that this evidence somehow shows the

witnesses testifying against Exxon are biased. But Exxon cannot muster the facts needed under

Rule 104(b) to complete the causal chain necessary for this showing. It is one thing to argue that

the Acehnese Agents, who are not testifying witnesses, have an interest in Plaintiffs prevailing at

trial (just as any attorney and any of their regular employees and agents would—a fact rarely, if

ever, admissible at trial). But Exxon has no evidence through which it can show that the non-

testifying Agents' interest in this litigation somehow creates bias in any testifying witness.

CONFIDENTIAL
FILED UNDER SEAL

Exxon has in the past implied that the Acehnese staff may have bribed witnesses or committed other misconduct to encourage favorable testimony for the Plaintiffs. *See* Defs. Mot. to Compel, ECF No. 558 at 6-7 (Mar. 25, 2016); Defs.' Cross-Mot. for Prot. Order, ECF No. 678 at 4 (Mar. 9, 2020). But this Court has already found that Exxon has no evidence that this is true, *see Doe* 2016 Discovery Op. at 21, and Exxon has since failed to uncover any such evidence, despite its tremendous effort, *see supra* at 9-10. Exxon asked the Plaintiffs and Plaintiffs' witnesses that it deposed about their interactions with the Acehnese Agents, yet it failed to uncover any evidence to suggest that these individuals improperly influenced any testimony. To the contrary, Exxon elicited the opposite testimony: "Brother ██████ said I have to tell the truth. If I know the truth, then I have to tell the truth." Ex. 15, Jane Doe VII Dep. 19:2-4. Absent such evidence, the fact that Plaintiffs' Counsel engaged the Agents and the terms of that retention has no tendency to make any material fact more or less probable.

Alternatively, even if the Court determines that evidence regarding the Acehnese Agents could contain some probative value, the Court should nevertheless exclude such evidence under Federal Rule of Evidence 403. Here, even if evidence of the Acehnese Agents were relevant, it would provide minimal probative value because, for the reasons discussed above, any probative value this evidence could have would necessarily rest on a string of unfounded speculation. The probative value is especially dubious to the extent Exxon intends to argue the Agents exercised undue influence over the Plaintiffs who, as parties in a damages action, already have a substantial interest in the outcome of this litigation, which the jury will intuitively understand. Even if Exxon could prove that the Agents exercised some improper influence over the Plaintiffs (it cannot), this would add very little to the jury's assessment of the Plaintiffs' credibility.

Regardless, all the witnesses who were deposed—whether Plaintiffs or third parties—have emphatically denied that the Agents did anything to improperly influence their testimony.

On the other side of the balance, allowing Exxon to introduce evidence regarding the Acehnese agents will create a needless trial-within-a-trial about the manner in which Counsel have litigated this case. Such a sideshow would risk unfair prejudice to Plaintiffs, and would confuse the issues, mislead the jury, and waste everyone's time. These risks substantially outweigh the probative value.

Exxon's tactics throughout this litigation suggest that Defendants may seek to use the issues of the Acehnese Agents to portray Counsel, the Agents, and the Plaintiffs in a misleading and inflammatory manner. Exxon has repeatedly in pleadings before this Court and on the record in depositions wrongly implied that Counsel have used their Agents to improperly influence witnesses or commit other unspecified misconduct. *See, e.g.*, Defs. Mot. to Compel, ECF No. 558 at 6-7 (Mar. 25, 2016); Defs.' Cross-Mot. for Prot. Order, ECF No. 678 at 4 (Mar. 9, 2020). It bears repeating that **Exxon has no evidence to support any such supposition**, but the mere specter of such misconduct would allow Exxon to misdirect the jury and trade on popular stereotypes about plaintiffs' attorneys. *See In re. General Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *5 (S.D.N.Y. 2015) ("[D]espite the absence of evidence that New GM engaged in any litigation misconduct with the intent to conceal the ignition switch defect, jurors may seek to punish New GM for what they view as an overly aggressive litigation strategy . . . ."). The risk of this prejudice warrants exclusion. *See, e.g.*, *Fairholme Funds, Inc. v. FHFA*, 2022 WL 13937460, at *7 (D.D.C. 2022) (Lamberth, J.) (excluding evidence and arguments that did not serve "any purpose other than to make plaintiffs seem less sympathetic to the jury"); *Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 2016 WL 206483, at *2 (W.D.

Tex. 2016) (Lamberth, J.) (excluding under Rule 403 because of "salacious nature" of evidence and low probative value).

Prejudice aside, evidence regarding the Acehnese Agents would turn the trial into a multi-ring circus with speculation about the Agents' conduct serving as a distracting sideshow to the claims at stake: the conduct of Exxon and its paid military guards. Even when arguably relevant, such as in bad-faith insurance actions, courts are generally wary of the risks involved with airing evidence about attorneys' litigation conduct to the jury. *See, e.g.*, *Masters v. Safeco Ins. Co. of Am.*, 2021 WL 4317112, at *7 (D. Colo. 2021) ("Admitting a defendant insurer's litigation strategy as evidence of its bad faith 'could create potential conflicts with the attorney's litigation privilege,' 'result in ethical dilemmas for attorneys representing insurance companies.'" (quoting *Etherton v. Owners Ins. Co.*, 2013 WL 68702, at *6 (D. Colo. 2013))); *Nunes v. Rushton*, 2018 WL 2214593, at *4 (D. Utah 2018) ("[I]f the court permits a mini-trial in which the parties accuse each other of bad litigation conduct or running up the amount of attorney fees required to resolve this case, there is a substantial danger of confusing the jury, wasting time, and unfairly prejudicing the jury based upon the conduct of the attorneys, rather than the conduct of the parties."); *In re General Motors*, 2015 WL 8130449, at *5.

Here, given Exxon's lack of evidence that the Agents engaged in any actual litigation misconduct, its only plausible purpose for introducing evidence would be to suggest to the jury that Plaintiffs or their counsel engaged in improper behavior by agreeing to pay the Agents a success fee or through some other unspecified actions. Of course, a lay jury cannot be expected to understand the relevant professional and ethical rules that govern such agreements, yet Exxon has disclosed no expert who might explain it to them. The jury would thus be lost without a

guide miles away from the merits of the case—and all for naught, since D.C. Bar Ethics Opinion

233 expressly endorses the sort of success fee Counsel agreed to pay the Acehnese Agents.

For substantially the same reasons, because there is no good faith basis for such

questions, the Court should also prohibit Exxon from asking the Plaintiffs on cross-examination

if the Counsel or the Acehnese Agents made improper payments to the Plaintiffs or engaged with

them in other litigation misconduct. "While bias is always a relevant subject for cross-

examination, 'counsel must have a reasonable basis for asking questions on cross-examination

which tend to incriminate or degrade the witness and thereby create an unfounded bias which

subsequent testimony cannot fully dispel.'" *U.S. v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996)

(citation omitted) (quoting *U.S. v. Sampol*, 636 F.2d 621, 658 (D.C. Cir. 1980)). "The general

rule in such situations is that 'the questioner must be in possession of some facts which support a

genuine belief that the witness committed the offense or the degrading act to which the

questioning relates.'" *Id.* (quoting *U.S. v. Fowler*, 465 F.2d 664, 666 (D.C. Cir. 1972)); *see also,*

*e.g.*, *Democracy Partners, LLC v. Project Veritas Action Fund*, 2022 WL 3334689, at *3

(D.D.C. 2022) ("Counsel must have 'a good faith basis' for initiating a line of questioning in

cross-examination that has the potential to cause prejudice or mislead the jury.").

In sum, evidence, argument, and cross-examination on Counsel's relationship with the

Acehnese Agents and the Agents' interactions with the Plaintiffs and third-party witnesses is

irrelevant and could be used only to inflame, distract, and confuse the jury. The Court should

prohibit Exxon from injecting this issue into trial.

### 3. The Court Should Exclude Questioning, Testimony, Attorney Argument and Documentary Material Concerning Allegations of Impropriety Against Plaintiffs' Counsel Terrence Collingsworth as Irrelevant and Prejudicial.

Plaintiffs move to exclude any questioning, testimony, argument, or documentary

material regarding past allegations of litigation misconduct asserted or professional discipline

CONFIDENTIAL
FILED UNDER SEAL

taken against Terrence Collingsworth, the attorney who filed this case in 2001, but who has not recently played an active role in the litigation. Such material would be irrelevant to any question for the jury under Rule 401 and could only be used to invite the jury to infer, without any other evidence, that Mr. Collingsworth also committed misconduct in this case. Even if it were relevant, such material concerning Mr. Collingsworth's alleged bad acts would be squarely precluded under Federal Rule of Evidence 404 and would be prejudicial, confusing, misleading, and time wasting beyond any conceivable probative value under Rule 403.

The Court previously found that Defendants have not introduced evidence of misconduct in this case by any of plaintiffs' counsel and that it would not assume that any misconduct occurred here "simply because Mr. Collingsworth was reprimanded in a different case, in a different country, with different witnesses." *Doe* 2016 Discovery Op. at 20. In the years since the Court issued that order regarding Mr. Collingsworth, Exxon has still summoned no evidence of misconduct in this case. Nevertheless, Exxon has continued to highlight Mr. Collingsworth's reputation in pleadings and depositions. For example, Defendants asked Plaintiffs' expert Michael Posner:

Q. Have you ever worked with an attorney named Terry Collingsworth?

A. Have I worked with Terry Collingsworth?

Q. Yeah.

A. I know him. I don't think I have ever really worked with him.

…

Q. Are you familiar with Terry Collingsworth's reputation within the international human rights community?

A. You are asking me what I think of his reputation?

Q. If he has a reputation and if you are familiar with it.

A. I really can't say.

Q. You can't say, you don't know?

A. You know, I don't know him well enough, and I haven't really followed his work that closely.

Q. Do you have an opinion about his work?

A. I know he has been involved in a range of litigation, but I haven't really followed it closely.

Ex. 16, Posner Dep. 50:20 – 52:9.

Exxon likewise asked the Plaintiffs about Mr. Collingsworth. *See, e.g.*, Ex. 14, Jane Doe III Dep. 32:11-13 ("Q: Do you remember meeting a lawyer by the name of Terry Collingsworth? A: No"); Ex. 10, John Doe II Dep. 50:21-24 ("Q: Have you ever spoken with someone named Terry Collingsworth? A: There were many white people. I do not remember their names."); Ex. 4, John Doe IV Dep. 29:7-9 ("Q: Is Terry Collingsworth one of your lawyers? A: I do not know who is he"). By and large, Plaintiffs testified that they had not spoken to Mr. Collingsworth in quite some time or could not recall him. Ex. 1, Jane Doe II Dep. 73:10-16 ("Q: [O]n March 27th of 2001 you signed a retainer agreement with a lawyer named Terry Collingsworth. Do you remember that? A: I don't really remember. It was a long time ago. It has been a long time."); Ex. 5, Jane Doe IV Dep. 13:15-18 ("Q: My question is do you also know someone named Terry who is also a lawyer? A: I do not. I usually meet with Agnieszka and Anthony."). And, although this Court has previously rejected Exxon's attempt to distract from the merits of this case by focusing attention on Mr. Collingsworth, *see, e.g. Doe* 2016 Discover Op. at 19 (Dec. 7, 2016), Exxon has continued to garnish many of its filings with references to past allegations against Mr. Collingsworth, *see, e.g.*, Defs.' Opp. to Pls.' Mot. for Partial Reconsideration, ECF No. 610, at 1 (Feb. 1, 2017); Defs.' Opp. to Pls.' Mot. for Guidance, ECF No. 679 at 4, 9 (Mar. 9, 2020).

CONFIDENTIAL
FILED UNDER SEAL

To state the obvious, this lawsuit is not about misconduct Mr. Collinsworth allegedly committed in other cases; it is about the horrific abuses Plaintiffs allege they suffered at the hands of Exxon's paid miliary security guards. The sort of questioning and argument Exxon has previously pursued about Mr. Collingsworth's alleged past misconduct, all of which took place after the events Plaintiffs allege, has nothing to do with whether Plaintiffs or their family members were abused by members of Exxon's military security or whether Exxon is liable for those abuses, nor does it affect the reliability of Plaintiffs' or their witnesses' testimony.

Mr. Collingsworth's past conduct could only possibly be relevant to this case if Exxon intends to invite the jury to infer that Mr. Collingsworth must have committed misconduct in *this* case and that Plaintiffs' evidence should accordingly be viewed with suspicion. This is exactly what Rule 404(b)(1) prohibits. *See, e.g.*, *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 289 F. Supp. 3d 118, 120 (D.D.C. 2018) (evidence of prior accidents inadmissible where "incidents [were] irrelevant to the matters at issue in this False Claims Act case, and are not offered for any purpose other than as improper character evidence" (citations omitted)); *Mattiaccio v. DHA Grp., Inc.*, 2017 WL 6766296, at *2 (D.D.C. 2017) (excluding evidence under Rule 404(b) because "no other permissible purpose, such as 'proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident,' exists for introducing evidence of Defendants' alleged contacts with federal authorities, as it is not probative of the remaining issues in this case").

Even if somehow relevant to some issue besides Mr. Collingsworth's character, evidence of allegations of past misconduct or past professional discipline would be highly prejudicial to Plaintiffs, would mislead the jury, and would cause a trial-within-a-trial over Mr. Collingsworth's past conduct. Allegations of attorney misconduct pose a clear risk of prejudice.

CONFIDENTIAL
FILED UNDER SEAL

*See, e.g., Entrust Datacard Corp. v. Zeiser GmbH*, 2019 WL 7472893, at *5 (M.D. Fla. 2019)

("[T]he parties will not present evidence of alleged discovery or attorney misconduct in the

jury's presence."); *H&L Farms LLC v. Silicon Ranch Corp.*, 2023 WL 1795705, at *6 (M.D. Ga.

2023) (excluding "evidence of alleged attorney misconduct during discovery"); *In re. General*

*Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *5 (S.D.N.Y. 2015) (excluding

evidence of discovery violations in related case); *Patsy's Italian Rest., Inc. v. Banas*, 2008 WL

795341, at *2 (E.D.N.Y. 2008); *see also, e.g., Council on Am.-Islamic Relations Action Network,*

*Inc. v. Gaubatz*, 2022 WL 17403313, at *5 (D.D.C. 2022) (excluding evidence of allegations of

criminal conduct collateral to case as "far too likely to inflame the jury's passions"); *Westrick*,

289 F. Supp. 3d at 120 (alternatively excluding prior bad act evidence under Rule 403); *Hague v.*

*Univ. of Tex. Health Sci. Ctr. at San Antonio*, 2016 WL 206483, at *2 (W.D. Tex. 2016)

(Lamberth, J.) (excluding under Rule 403 because of "salacious nature" of evidence and low

probative value).

Prejudice aside, if Exxon were permitted offer evidence or argument Mr. Collingsworth's

alleged misconduct, Plaintiffs would need to rebut that evidence.[6] This would cause a trial-

within-a-trial over Mr. Collingsworth's past conduct that would confuse the issues and mislead

the jury, who cannot be expected to understand the professional and ethical rules implicated, and

would ultimately be a waste of time. *See, e.g., Masters v. Safeco Ins. Co. of Am.*, 2021 WL

---

[6] Indeed, Plaintiffs were previously forced to do so after Exxon filed a brief maligning
Mr. Collingsworth and co-counsel Paul Hoffman with allegations of misconduct that badly
exaggerated many allegations and took numerous facts out of context. Messrs. Collingsworth and
Hoffman were both forced to submit declarations defending themselves against Exxon's attempt
to assassinate their characters. *See* Decl. of P. Hoffman, ECF No. 490-4 (Apr. 16, 2015); Decl. of
Decl. of T. Collingsworth, ECF No. 490-5 (Apr. 16, 2015).

4317112, at *7 (D. Colo. 2021); *Nunes v. Rushton*, 2018 WL 2214593, at *4 (D. Utah 2018); *In re General Motors*, 2015 WL 8130449, at *5.

### 4. The Court Should Exclude Irrelevant, Prejudicial, and Unsupported Attorney Argument Concerning Plaintiffs' Counsel and Their Motives.

It is common for defense counsel at trial to seek to deflect the jury's attention from the facts of the case to the identities and alleged motives of Plaintiffs' attorneys. In this case, Defendants have not hesitated to accuse Plaintiffs' counsel of misconduct, even where they themselves are plainly at fault. *See* Mem. Op., ECF No. 803 (May 7, 2021); Mem. Op., ECF No. 808 (May 12, 2021). Apart from the specific issues discussed above, the Court should preclude Defendants from any attorney argument gratuitously characterizing Plaintiffs' counsel in a negative light or speculating as to counsel's motives; specifically, Defendants should be precluded from characterizing Plaintiffs' counsel as greedy, unprincipled, dishonest, pursuing a political agenda at the expense of the law or truth, or having an ax to grind against Defendants or corporations in general unrelated to this case. Such argument is unfounded, irrelevant, and prejudicial under Federal Rules of Evidence 104(b), 401, 402, and 403.

CONFIDENTIAL
FILED UNDER SEAL

March 22, 2023

Respectfully submitted,


/s/ Kit A. Pierson
Kit A. Pierson (#398123)
Agnieszka M. Fryszman (#459208)
Robert W. Cobbs (#1045579)
Nicholas J. Jacques (#1673121)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
afryszman@cohenmilstein.com
kpierson@cohenmilstein.com
rcobbs@cohenmilstein.com
njacques@cohenmilstein.com

Paul L. Hoffman (Pro Hac Vice)
Schonbrun Seplow Harris Hoffman & Zeldes
200 Pier Avenue, #226
Hermosa Beach, CA 90254
Tel: (31) 396-0731
hoffpaul@aol.com

Terrence P. Collingsworth (#471830)
International Rights Advocates
621 Maryland Ave., N.E
Washington, D.C. 20002
Tel: (202) 396-0731

Brent Nelson Rushforth (#331074)
1112 Cripplegate Road
Potomac, MD 20854
Tel: (301) 943-7977
brentrushforth@icloud.com

Leslie M. Kroeger (*pro hac vice*)
Poorad Razavi
Cohen Milstein Sellers & Toll PLLC
2925 PGA Blvd. Suite 200
Palm Beach Gardens, FL. 33410
Tel: (561) 515-1400
Fax: (561) 515-1401
LKroeger@cohenmilstein.com
prazavi@cohenmilstein.com

**CONFIDENTIAL**
**FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2023, I electronically filed the *Plaintiffs' Motions in Limine Concerning Defendants' Allegations About Plaintiffs' Counsel or Their Conduct* with the Clerk of the Court using the ECF, who in turn sent notice to all counsel of record in this matter.


Dated:    March 22, 2023                    /s/ Kit A. Pierson
                                            Kit A. Pierson