CONFIDENTIAL
FILED UNDER SEAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOHN DOE I, *et al.*,            ) | |
|          ) | |
|     Plaintiffs,     ) | Civil Action No. 01-1357 (RCL/AK) |
|          ) | |
| v.            ) | |
|          ) | |
| EXXON MOBIL CORPORATION, *et al.*,  ) | |
|          ) | |
|     Defendants.     ) | |
|          ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR *DAUBERT* MOTION TO EXCLUDE
THE EXPERT TESTIMONY OF JONATHAN R. MACEY**

Defendants' opposition to Plaintiffs' Motion to exclude the testimony of Professor

Jonathan Macey fails utterly to address Plaintiffs' arguments or to establish that Prof. Macey's

testimony is admissible.

**I.  DEFENDANTS FAIL TO ESTABLISH WHY PROF. MACEY'S TESTIMONY IS
RELEVANT TO INDONESIAN LAW.**

The main argument in Plaintiffs' Motion is that "[A]s an expert on *American* law,

Professor Macey's expertise is wholly irrelevant to this case, governed by the laws of Indonesia"

and that "Professor Macey's testimony on the empirical results of American veil-piercing cases

can have no relevance to a jury asked to determine Defendants' liability under Indonesian law."

Pls.' *Daubert* Mot. to Exclude the Expert Test. Of Jonathan R. Macey, ECF No. 884 (Mar. 22,

2023) (hereinafter, "Pls.' Mot.") at 1; *see also id.* at 6-15 (argument in detail).

The phrase "Indonesian law" appears nowhere in Defendants' brief; nor do they address

Plaintiffs' argument in other words. They suggest no question for the jury on which Prof.

Macey's testimony could be helpful, or even any logical connection between any fact to which

Prof. Macey might testify and a question for the jury. *Cf.* Defs.' Opp. to Pls.' *Daubert* Mot. to

CONFIDENTIAL
FILED UNDER SEAL

Exclude the Expert Test. Of Jonathan R. Macey, ECF No. 893 (Apr. 12, 2023) (hereinafter, "Defs.' Br.") at 8-11 ("Professor Macey's Testimony Is Relevant").

*Exxon* bears the burden of establishing by a preponderance of the evidence that Professor Macey's testimony "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a); *see Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127 & n.9 (D.C. Cir. 2001) (proponent of expert testimony bears burden of proving its admissibility). Exxon has failed to articulate any mechanism by which Professor Macey's discourse on "the unusual circumstances under which courts, in practice, actually pierce the corporate veil" will help the jury understand any evidence or determine any question. Ex. 1, Macey Rept. at ¶ 9.[1]

Defendants' gestures at the relevance of Prof. Macey's testimony both fail.

First, Defendants argue that Prof. Macey's testimony is relevant "[i]f Plaintiffs [o]pen the [d]oor," Defs.' Br. at 6, but fail to suggest *what* door Plaintiffs might open that might make Professor Macey's testimony relevant. Plaintiffs have been unequivocal in their representation to the Court that they are pursuing only two theories of "indirect liability" against Defendant Exxon Mobil Corporation ("EMC"): One under Indonesian Civil Code Art. 1367, and one under Indonesian Company Law 40/2007 Article 3(2)(c). Pls.' Mot. at 6. Plaintiffs have also made clear that they will not offer the testimony of Mr. Harris Devor, whose testimony Prof. Macey's was offered to rebut.[2]

---

[1] Exhibits are to the Declaration of Robert W. Cobbs (Mar. 22, 2023) filed with Plaintiffs' original motion.

[2] Mr. Devor was listed on Plaintiffs' witness list *only* "as a rebuttal witness if Professor Jonathan Macey is permitted to testify," *see* Pls.' Mot. at 4 & Ex. 4, so Defendants cannot have thought Mr. Devor would be offered in Plaintiffs' case-in-chief; in fact, Plaintiffs have since withdrawn him completely. *See* Decl. of Kit A. Pierson (Apr. 12, 2023), filed with Pls.' Suggestion of Mootnessas as to Defs.' Mot. to Exclude Test. of Harris Devor, ECF No. 888 (Apr. 12, 2023). As Mr. Pierson's declaration makes clear, Plaintiffs informed Defendants of this

Defendants seem to imagine that Professor Macey might nonetheless be permitted to testify as to some question that "sounds in" veil-piercing; at least, they concede that they will withdraw Professor Macey's testimony if "Plaintiffs are barred from raising any argument for liability that sounds in veil-piercing." Defs.' Br. at 1. They do not explain what argument that "sounds in veil piercing" Plaintiffs might offer or why Prof. Macey's testimony would be helpful in allowing the jury to understand any fact bearing on it.[3] This is their burden, and they have failed to discharge it.

Defendants' argument that "he is offering opinions as to facts related to corporate separateness, and particularly about the ordinary and customary relationship between parent companies and their subsidiaries" also does not establish the relevance of Prof. Macey's testimony. Defs.' Br. at 8. Indonesian Company Law 40/2007 art 3(2)(c) states that shareholders are not protected from the liabilities of a company whose shares it holds if "the shareholder concerned is involved in illegal acts committed by the Company." It neither requires nor admits any inquiry into "corporate separateness" between the shareholder and the company. *Compare* Defs.' Br. at 8. It certainly does not inquire as to the companies' adherence to "the ordinary and customary relationship between parent companies and their subsidiaries." *Compare id.* Neither does Indonesian Civil Code Art. 1367 inquire into either of these questions. *See Doe v. Exxon*, 2022 WL 304219, at *34 (D.D.C. 2022).

---

withdrawal a full week before their filing deadline for their opposition to this motion. Neither fact is mentioned in Defendants' opposition.

[3] Plaintiffs declined Exxon's stipulation language because of a similar amorphous quality in Exxon's proposal. Though Plaintiffs think stipulation negotiations should not be revealed to the Court, Defendants may not use the failure of these negotiations to establish that there exists some secret strategy Plaintiffs will pursue to which Professor Macey's testimony on American law would be relevant.

Again, it is Defendants' burden to explain why Prof. Macey's testimony will help a jury understand relevant facts or determine a question in issue.[4] They have not done so.

## II. DEFENDANTS FAIL TO ESTABLISH WHY PROF. MACEY'S TESTIMONY ON PATTERNS OF VEIL-PIERCING DECISIONS IN *AMERICAN* LAW ARE RELEVANT OR RELIABLE FOR DETERMINING ANY QUESTION FOR THE JURY.

Even if Indonesian Civil Code Art. 1367 or Company Law 40/2007 Article 3(2)(c) made some inquiry into "corporate separateness"—which they do not—Defendants fail to suggest why Prof. Macey's testimony, which (if Defendants' latest characterization of Prof. Macey's report is to be believed) opines on Professor Macey's factual evaluation of corporate separateness using a framework that "████████████████████████████████████████████

████████████████████████████████████" is relevant. Ex. 1, Macey Rept. at ¶ 9. Even if Indonesian law required some evaluation of corporate separateness as a predicate to shareholder liability, unless Indonesian law inquires first and foremost how *American* courts would answer a veil-piercing question as between the companies, the relevance of Prof. Macey's testimony is obscure. *See* Pls.' Mot. at 10-14.

To come at the point from a different angle: Even if we assume corporate separateness were an important inquiry to some question for the jury, analysis of the decisions of American

---

[4] Defendants argue that "Tellingly, Plaintiffs do not argue that Professor Macey is not qualified to be an expert and do not claim that the corporate separateness framework he utilizes is wrong of flawed in any way." Defs.' Br. at 7. This is an awfully sunny characterization of Plaintiffs' motion; Professor Macey is manifestly unqualified to testify on any matter of Indonesian law; and it is Exxon's burden to establish that the subjects he *is* qualified to testify on are helpful to the jury. So there are surely matters on which Prof. Macey is qualified to testify; he has done so dozens of times. But it is Defendants' burden to show why his expertise in *American* law qualifies him to testify to any fact that bears on the *Indonesian* law questions before the jury. Similarly, in addition to the fact that his report's "framework" is contradicted by Prof. Macey's own empirical work, *see* Pls.' Mot. 18-24—something Plaintiffs would probably characterize as a "flaw"—Plaintiffs are also at a loss to understand why it is not a flaw that Prof. Macey's framework considers no fact of any relevance to any question for the jury.

CONFIDENTIAL
FILED UNDER SEAL

courts are not a reliable method of offering opinions on those questions. *See* Pls.' Mot. 14-15.

Defendants fail to show otherwise.

### III. DEFENDANTS MISUNDERSTAND PLAINTIFFS' ARGUMENT THAT PROF. MACEY'S TESTIMONY USURPS THE ROLE OF THE COURT

Defendants suggest that Plaintiffs' argument that Professor Macey's testimony usurps the

role of the Court boils down to "Professor Macey's opinions on corporate separateness constitute

legal conclusions about piercing the corporate veil." Defs.' Br. at 1. This is wrong, and

Defendants have entirely missed the point.

Professor Macey's "opinions as to facts related to corporate separateness," Defs.' Br. at

8, and his ultimate evaluation that EMC and Exxon Mobil Oil Indonesia, Inc. ("EMOI") are



"█████████████," are arrived at through application of a "█████████

████████████████████████████████████

█████████████████████████████████

█████████████████████" Ex. 1, Macey Rept. at ¶ 9. The framework is "█

████████████████████" by courts. Ex. 3, Macey Dep. at 16:11-18:3.

The thrust of Plaintiffs' argument, which Defendants have failed to address, is that it is

not helpful to the jury for an expert to offer testimony about what courts do. It is the Court's job

to instruct the jury as to the law. Nor is it helpful to the jury or reliable for an expert to evaluate

corporate separateness using his own synthesis of what courts do. In essence, Prof. Macey's

testimony offers an expert opinion that "most courts would not pierce the veil between these two

companies." This is plainly not helpful to the jury.

Defendants' argument that Prof. Macey testifies only to "facts related to corporate

separateness," Defs.' Br. at 8, ignores that these facts are evaluated only with reference to the

empirical results of American judicial decisions.

IV.    **DEFENDANTS FAIL TO EXPLAIN PROFESSOR MACEY'S REPUDIATION OF HIS OWN REPORT AND THE CONTRADICTION BETWEEN HIS REPORT AND HIS EMPIRCAL WORK, OR WHY HIS TESTIMONY IS RELIABLE IN SPITE OF THOSE FACTS.**

In his deposition, Professor Macey completely recharacterized his testimony to repudiate the claim in his report that his " ██████████████████████████████ ████████████████████████████████████████████████████ ██████████████████ See Pls.' Mot. at 19-20; Ex. 3, Macey Dep. at 37:21-41:10. In testimony, he gave conflicting descriptions of what his framework was, sometimes describing it as a framework of ██████ or "████" and sometimes as the "████████" or "████████" between inputs and outputs See Pls.' Mot. at 15 n.8; *compare* Ex. 3, Macey Dep. at 21:12-22:7 *with id.* at 22:24-23:18.

His claim—that the framework is useful for predicting when courts will pierce the corporate veil—is also contradicted by his own empirical work, which finds that the reasons courts *say* they are guiding their veil-piercing decisions are actually irrelevant, and that three public policy rationales are the real drivers of veil-piercing decisions.[5] *See* Pls.' Mot. at 16-24.

---

[5] This is plainly what Prof. Macey originally meant in his report when he said ████████ ████████████████████████████████████████████████████████████ ████████ " Ex. 1, Macey Rept. at ¶ 45. This is consistent with his empirical work, which finds that the rationales courts "examine" (rationales Prof. Macey offers in his report framework) are not at all determinative of outcomes, and that outcomes are exclusively driven by the "public policy goals" Prof. Macey articulates. Defendants argue that it is "nonsensical[]" to read Prof. Macey's "████████████" in this quote as saying that the policy goals are necessary and sufficient conditions for veil-piercing. Defs.' Br. at 12. But that is what "██ ████" *means*. "If A is true, then B is true" is a statement that A is a *sufficient* condition for B. "B is true only if A is true" means that A is a *necessary* condition for B. "B is true if and only if A is true" means that A is both *necessary* and *sufficient* for B. It takes an Orwellian reading of Prof. Macey's statement to argue that a finding that corporations are insufficiently separate is necessary before Courts can move on to an analysis of whether public policy justifies veil-piercing.

CONFIDENTIAL
FILED UNDER SEAL

This published empirical work is the sole citation supporting Prof. Macey's opinion that his framework is useful, so the fact that it does not, in fact, support his opinion is fatal to the reliability of his testimony.[6]

## V. CONCLUSION

Defendants have failed to answer any argument set out in Plaintiffs' motion and have failed to meet their burden of establishing the admissibility of Professor Macey's testimony. It should be excluded.

---

Indeed, in their contortionate attempts to make sense of Prof. Macey's report, empirical work, and testimony, Defendants appear to have confused themselves, arguing that Prof. Macey was testifying that "Professor Macey's statement simply means that, after evaluating corporate separateness, courts then look to public policy rationales to determine whether—*despite* corporate separateness—they should pierce the veil." Defs.' Br. at 12. But this is obviously backwards—surely Prof. Macey meant, when he testified that ███████████████████ ████████████████████████████████ Ex. 3, Macey Dep. at 26:16-27:14, that a finding that corporations were *not* separate is the necessary condition. Most factors assessed in veil-piercing—inattention to corporate formalities, undercapitalization, etc.— assess whether a corporation is the "alter ego" of the shareholder. But Exxon here seems to claim that it is a finding that corporations *are* separate that is a necessary condition for veil-piercing. This is, to quote Defendants, "nonsensical[]." Defs.' Br. at 12.

[6] Defendants argue that Prof. Macey's framework is "███████████████████████████ ████████████████"—something Prof. Macey does in fact say. Defs.' Br. at 11; *see* Ex. 1, Macey Rept. at ¶ 9. But Prof. Macey neither cites to any other authority from his decades of research nor explains how that research and review of expert reports leads him to his conclusions. This is the very definition of *ipse dixit. See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

CONFIDENTIAL
FILED UNDER SEAL

April 12, 2023

Respectfully submitted,


/s/ Agnieszka M. Fryszman

Agnieszka M. Fryszman (#459208)
Kit A. Pierson (#398123)
Robert W. Cobbs (#1045579)
Nicholas J. Jacques (#1673121)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
afryszman@cohenmilstein.com
kpierson@cohenmilstein.com
rcobbs@cohenmilstein.com
njacques@cohenmilstein.com

Paul L. Hoffman (Pro Hac Vice)
Schonbrun Seplow Harris Hoffman & Zeldes
200 Pier Avenue, #226
Hermosa Beach, CA 90254
Tel: (310) 396-0731
hoffpaul@aol.com

Terrence P. Collingsworth (#471830)
International Rights Advocates
621 Maryland Ave., N.E
Washington, D.C. 20002
Tel: (202) 396-0731

Brent Nelson Rushforth (#331074)
1112 Cripplegate Road
Potomac, MD 20854
Tel: (301) 943-7977
brentrushforth@icloud.com

Leslie M. Kroeger
Poorad Razavi
Cohen Milstein Sellers & Toll PLLC
2925 PGA Blvd. Suite 200
Palm Beach Gardens, FL. 33410
Tel: (561) 515-1400
Fax: (561) 515-1401
LKroeger@cohenmilstein.com
prazavi@cohenmilstein.com

8

CONFIDENTIAL
FILED UNDER SEAL

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2023, I electronically filed the *Plaintiffs' Reply in Support of Their Daubert Motion to Exclude the Expert Testimony of Jonathan R. Macey* with the Clerk of the Court using the ECF, who in turn sent notice to all counsel of record in this matter.

Dated:    April 19, 2023                                  /s/ Agnieszka M. Fryszman
                                                          Agnieszka M. Fryszman

9